UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Steward Health Care System LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>American Guarantee and Liability Insurance Company and Zurich American Insurance Company,<br><br>    Defendants. | Civil Action No. 1:21-cv-11902 |

**STEWARD HEALTH CARE SYSTEM LLC'S OPPOSITION TO
DEFENDANTS' MOTION TO EXTEND SCHEDULING ORDER**
(L.R. 7.1(d) Oral Argument Requested)

  Steward Health Care System LLC ("Steward") submits this opposition to the motion filed by Defendants, American Guarantee and Liability Insurance Company's ("AGLIC") and Zurich American Insurance Company's ("ZAIC") (collectively, "Defendants"), seeking to modify the Court's Scheduling Order [ECF No. 84] (the "Motion").

### I. Introduction

  Not long ago, in late December, Defendants insisted that this case must proceed "in an expeditious and logical manner," [ECF No. 78, p. 4], and urged the Court to adopt an "expedited" schedule they themselves proposed—one that, according to them, provided "sufficient time for needed fact discovery . . . and for needed expert discovery to be completed in proper order[.]" *Id*. at 5. Now, with no material change in circumstances, they ask the Court to discard that very schedule in favor of one that would delay this litigation by nearly a year. The Court should reject this reversal as a transparent and unjustified effort to stall.

The prejudice to Steward and its creditors would be profound. This action—filed in 2021—arises from Defendants' refusal to timely adjust or pay Steward's insurance claim for the catastrophic storm that devastated Norwood Hospital on June 28, 2020. Their intransigence has already hindered reconstruction and, with Steward's bankruptcy filing in the Southern District of Texas on May 6, 2024, this litigation now plays a central role in Steward's proposed reorganization.[1] As set forth in the Declaration of John R. Castellano, Steward's Chief Restructuring Officer, a delay of the trial by up to eleven months will have a significantly negative impact on Steward's creditors, including approximately 900 Massachusetts claimants. **Exhibit A** ("Castellano Decl.") at ¶¶ 6-15.

These creditors include critical vendors that continue to provide supplies and services to Steward's former hospitals (which have been transitioned to new owners as part of the bankruptcy process). Ex. A, ¶ 7. Steward's remaining assets available to satisfy the claims of its creditors are primarily claims and causes of action against certain individuals and entities. *Id.* ¶ 8. Among the most valuable and important of such claims are Steward's claims against AGLIC and Zurich asserted in this lawsuit. *Id*.

It is critically important to the Debtors' ability to return value to creditors that the current timeline of this litigation is maintained. *Id*. ¶ 9. First, to monetize these litigation assets, Steward requires financing to cover the costs of litigation and other administrative expenses of its estate, and Steward lacks the liquidity to self-fund these costs. *Id*. Accordingly, Steward must borrow the funds required and thus incur financing costs. *Id*. That means the longer this case continues, the more costly it will be and the less creditors will receive on account of their claims. In fact, an eleven-month delay proposed by Zurich will cost tens of millions of dollars in

---

[1] *See* Chapter 11 Plan of Reorganization Filed by Steward Health Care System LLC in the Southern District of Texas, Bankruptcy Petition No. 24-90213, ECF No. 4743 (April 28, 2025).

financing costs even without including increased professional and administrative fees. *Id*. ¶ 14. Such delays in liquidating the Debtors' remaining assets will adversely impact Debtors' efforts to deliver creditor recoveries under the proposed chapter 11 plan of liquidation (which has been filed and will be subject to hearings early this summer). *Id*. ¶ 15.

To be clear: Steward does not oppose modest adjustments to certain internal deadlines, and has conveyed as much to Defendants through counsel. Steward consents to a limited extension of the fact discovery and expert disclosure deadlines to August 24, 2025—but opposes any delay to the trial date.

As explained more fully below, the Court should deny Defendants' Motion for four principal reasons: (A) Defendants have failed to show the requisite "good cause" to amend the Scheduling Order; (B) their claims that "extensive" discovery is necessary to defend against Steward's G.L. c. 93A and 176D claims is overstated; (C) further delay would substantially prejudice Steward's parallel bankruptcy efforts; and (D) rewarding Defendants' dilatory conduct with further extensions would be manifestly unjust. Should the Court find some adjustment warranted, Steward respectfully requests that only the fact discovery and expert disclosure deadline be extended—to August 24, 2025—while all remaining dates, including the trial date, remain undisturbed.

## II.    Relevant Background

On June 28, 2020, a catastrophic storm unleashed approximately 5.75 inches of rainfall within 90 minutes, overwhelming Norwood, Massachusetts, and devastating Norwood Hospital. Steward operated Norwood Hospital and leased the premises from Medical Properties Trust, Inc. ("MPT"). Zurich insured MPT, and AGLIC insured Steward. Despite collecting exorbitant premiums for an all-risk policy with $850 million in coverage limits, Defendants failed to honor

their respective obligations to the insureds and forced them to resort to protracted and extensive litigation to receive what is owed. The funds that should have propelled a swift rebuilding effort—funds Steward relied upon—never materialized, despite the insureds' exhaustive efforts to supply every document and detail necessary to expedite the rebuilding process.

In October 2021, Zurich filed a declaratory judgment action against MPT in this Court, seeking to limit its exposure by invoking the policy's flood sublimit and disclaiming liability for Increased Cost of Coverage claims and damage to systems allegedly unaffected by the Loss. MPT responded with counterclaims alleging breach of contract and violations of G.L. c. 93A. Shortly thereafter, Steward filed this action on November 23, 2021, asserting claims for declaratory judgment, breach of contract, breach of the implied covenant of good faith and fair dealing, tortious interference, and violations of G.L. c. 93A, § 11.[2]

At the outset, the parties agreed—along with the Court—that a threshold legal question concerning the interpretation of "surface waters" in the definition of "Flood" should be resolved via cross-motions for partial summary judgment. The parties briefed their respective positions between April and June of 2022, and the Court heard argument in August 2022. On November 15, 2022, the Court granted Zurich's motion, concluding that the policy's flood sublimit applied to all water damage, including that caused by rainwater accumulating on elevated roofs structures (*i.e.*, top-down damage).

Given the importance of this legal determination, the Court certified the issue for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). The First Circuit in turn certified the following question to the Supreme Judicial Court of Massachusetts:

---

[2] Steward thereafter amended its complaint on January 24, 2022, and again on March 16, 2023, to set forth in greater detail AGLIC's bad faith conduct and mishandling of Steward's insurance claim. No new causes of action were asserted.

4

> Whether rainwater that lands and accumulates on either (i) a building's second-floor outdoor rooftop courtyard or (ii) a building's parapet roof and that subsequently inundates the interior of the building unambiguously constitutes "surface waters" under Massachusetts law for the purposes of the insurance policies at issue in this case?

Following full briefing and oral argument in April 2024, the Supreme Judicial Court issued a unanimous decision in *Zurich Am. Ins. Co. v. Med. Properties Tr., Inc.*, 494 Mass. 382 (2024), holding that the term "surface waters," as used in the policies, was ambiguous—ruling in favor of the insureds, Steward and MPT.

Thereafter, MPT and Zurich resolved their litigation. *Motion*, p. 6 n.1; *see also* 1:21-cv-11621-PBS, ECF Nos. 81-82. A status conference in this matter followed on November 4, 2024 [ECF. No. 74], with a Rule 16 Scheduling Conference held on December 5, 2024. *Id*. The Court then: (1) stayed discovery pending a mediation scheduled for January 22, 2025; and (2) ordered the parties to file a Proposed Joint Statement. ECF No. 77. The Joint Statement included competing proposed case deadlines. ECF No. 78.

Of particular importance here, the schedule *submitted by Defendants* contained the following proposed deadlines: fact discovery completed by **July 15, 2025**; expert disclosures by **August 18, 2025**; rebuttal expert disclosures by **September 15, 2025**; expert depositions completed by **October 15, 2025**; the filing of dispositive motions by **November 15, 2025**; and a pre-trial conference on **December 15, 2025**. *Id*. at 5. The Court then entered a Scheduling Order with different and *earlier* deadlines than what Defendants proposed. ECF No. 79.

After mediation proved unsuccessful, the Court lifted the discovery stay. Steward promptly issued 19 subpoenas to third party custodians beginning February 7, 2025.[3] Defendants

---

[3] Defendants' counsel represents eight of the third parties to whom Steward issued keeper-of-record subpoenas. As of this filing, objections and document productions were served on behalf of four of those entities; responses from the remaining four remain outstanding.

5

issued 23 such subpoenas on February 25, 2025. Both sides exchanged written discovery responses on March 10, 2025. Steward served a letter detailing the deficiencies in Defendants' discovery responses on April 10, 2025. *See* **Exhibit B**. Despite assurances of a response, Defendants have yet to address these deficiencies, having made only minimal additional document productions.

By contrast, Steward produced more than 31,000 pages of documents on April 9, 2025, and its production efforts are ongoing, aided by a team of 20 contract attorneys to expedite review and production. Additional document productions are forthcoming, and Steward is actively preparing to notice key depositions in the near term, including those of the Defendants.

### III. Argument

#### A. Defendants Have Failed to Demonstrate "Good Cause" to Justify a Sweeping Extension of the Scheduling Order

The extraordinary extension of the Scheduling Order proposed by Defendants is neither justified nor necessary. As an initial matter, their Motion fails to satisfy the "good cause" standard, which must be "supported by affidavits, other evidentiary materials, or references to pertinent portions of the record." *See* L.R. 16.1(g); *see also* Fed. R. Civ. 16(b)(4) ("[a] schedule may be modified only for good cause and with the judge's consent.").[4] Here, Defendants have not demonstrated diligence, nor have they shown that compliance with the existing schedule, or even a slightly modified one, is unfeasible.

---

[4] "The good cause test requires that the deadline in the scheduling order may not reasonably be met, despite the diligence of the party seeking the extension. The requirements of good cause are more liberal than a 'manifest injustice' or a 'substantial hardship' test. 'Nonetheless, this does not mean that scheduling orders will be modified simply upon request. In the absence of some showing of why an extension is warranted, the scheduling order will control.'" *Tele-Connections, Inc. v. Perception Tech. Corp.*, No. CIV.A. 88-2365-S, 1990 WL 180707, at *1 (D. Mass. Nov. 5, 1990) (Skinner, J.) (*quoting* 6A C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 1522.1, at 231 (2d. 1990)).

Defendants now seek to delay each deadline by an average of 254 days—with some pushed back almost eleven months. Their proposed schedule is as follows:

| **Deadline Description** | **Defendants' Proposed Deadlines in December 2024** | **Defendants' Proposed Deadlines in April 2025** | **Additional Number of Days** |
|---|---|---|---|
| Fact Discovery Deadline (all discovery other than expert discovery completed by) | July 15, 2025 | March 13, 2026 | 241 |
| Party with Burden of Proof Must Designate Trial Experts and Disclose Information Contemplated by Fed. R. Civ. P. 26(a)(2) by | August 18, 2025 | March 27, 2026 | 221 |
| Rebuttal Trial Experts Must be Designated and Information Contemplated by Fed. R. Civ. P. 26(a)(2) Disclosed by | September 15, 2025 | May 22, 2026 | 249 |
| All Trial Experts Deposed By | October 15, 2025 | July 24, 2026 | 282 |
| Dispositive Motions Filed By | November 15, 2025 | August 21, 2026 | 279 |

Steward, which bears the burden of proof in this action, is not opposed to a limited adjustment of the schedule—particularly with respect to fact and expert discovery. But Defendants' proposed overhaul of the litigation calendar is disproportionate and prejudicial—both to Steward and to its creditors, for whom further delay carries real-world financial consequences.

Defendants' assertion that their proposed extension "will not unreasonably delay the progress of the case" [ECF No. 84, p. 11], is belied by their own timeline, which would postpone resolution of this dispute by nearly a year. Since the Court entered the Scheduling Order in January, Steward has proceeded diligently in meeting its obligations. While the volume of

7

exchanged documents is significant, it is not exceptional and falls far short of justifying the expansive delays now requested.

Defendants attempt to justify their request by pointing to the previous stay on non-damages discovery pending resolution of the Flood sublimit issue. *Motion*, p. 10-11. But that argument is unavailing. The Flood sublimit issue was resolved six months *before* the Scheduling Order was submitted. Defendants had ample opportunity to account for discovery still to be completed at that time. Their newfound appreciation for the case's "complexity" is no more than buyer's remorse in the litigation calendar they helped set.

Nor is it true, as Defendants suggest, that Steward flatly "refused" any extension. *Motion*, p. 2. Rather, it engaged in good faith to accommodate Defendants' concerns. Prior to the filing of the Motion, counsel conferred, as required, and Steward offered a compromise: extend the fact discovery deadline and expert disclosure deadline to August 24, 2025, while holding the trial date. Defendants rejected this offer.

Finally, Defendants' assertion that the schedule must be delayed because "subpoena recipients served by Defendants are at various stages of compliance" (*Motion*, p. 8, ¶13) is a red herring. If responses are incomplete, it is Defendants' obligation—not Steward's—to compel compliance. Yet, they have not filed a single motion to do so. A party cannot decline to act and then plead delay. If this discovery were truly essential, Defendants would have already taken steps to pursue it.[5]

---

[5] Defendants point to purported difficulties with the Town of Norwood. *Motion*, pp. 8-9, ¶ 15. They claim to have served a "request for documents" on the Town, which allegedly agreed to comply upon payment of a $14,000 fee, but suggest that Steward's subsequent issuance of a subpoena somehow disrupted that production. *Id*. Steward has no record of Defendants serving the Town of Norwood with any "request for documents." More to the point, Defendants have taken no apparent steps to compel compliance from the Town of Norwood. In any event, the Town's objections to Steward's subpoena are wholly immaterial to Defendants' separate "request for documents[,]" which stands or falls on its own terms.

> B. *Defendants Do Not Require "Extensive" Discovery to Defend Against Steward's G.L. c. 93A and 176D Claims*

Defendants argue that Steward's allegations of bad faith adjustment require "thorough and complete discovery." *Motion*, p. 9, ¶16. But if these allegations are—as Defendants claim—"incorrect," then prolonged discovery is unnecessary. Under Massachusetts law, insurers are required to conduct prompt and reasonable investigations based on all available information. *See Terry v. Hosp. Mut. Ins. Co.*, 101 Mass. App. Ct. 597, 604–05 (2022) (*citing* G.L. c. 176D, § 3(9)(c)).

Defendants received (and rejected) Steward's consultants' reports as part of the claims process in 2020 and 2021. They engaged their own consultants, reviewed these materials, and reached a determination, namely that the Period of Liability—when Norwood Hospital should have been repaired and reopened by—concluded on July 15, 2022. These facts were the basis for Defendants' denial of Steward's business interruption claim and for their affirmative defenses to Steward's G.L. c. 93A and 176D causes of action. *See* ECF No. 62, ¶¶ 111-117; Affirmative Defenses Nos. 1-6; ECF No. 63, ¶¶ 111-117; Affirmative Defenses Nos. 1-4. They cannot now claim that they need nearly a year of additional discovery into facts they have long possessed and relied upon.[6]

To suggest otherwise is disingenuous. Steward's allegations are grounded in the record Defendants themselves created. Further delay to "develop" defenses to positions they have already taken is not only unnecessary—it is improper. As the Massachusetts Appeals Court has recognized, G.L. c. 93A and 176D were enacted precisely to prevent insurers from forcing claimants into needless litigation to secure relief. *See Caira v. Zurich Am. Ins. Co.*, 91 Mass.

---

[6] Indeed, Defendants have already produced reports from these very consultants, confirming that they have long possessed—and thoroughly analyzed—the information in question.

9

App. Ct. 374, 381 (2017); *Chiulli v. Liberty Mut. Ins. Co.*, 87 Mass. App. Ct. 229, 235 (2015). Defendants' handling of Steward's claim prompted this litigation. They should not now be rewarded with further delay and at the expense of Steward's creditors.[7]

        *C. Further Delay Will Unduly Prejudice Steward's Bankruptcy Proceedings*

Time is of the essence in bankruptcy. Extended delays in related litigation jeopardize the orderly administration of the estate and harm creditors. As one court observed, "[i]n virtually any bankruptcy proceeding, time is of the essence in avoiding prejudice to parties involved… This is so because each additional day of proceedings may accelerate the dissipation of the estate." *See In re Beck-Rumbaugh Assocs., Inc.*, No. CIV. A. 85-4233, 1985 WL 38, at *3 (E.D. Pa. Sept. 11, 1985) (Shapiro, J.) (*citing Pyramid Mobile Homes, Inc. v. Speake*, 531 F.2d 743 (5th Cir. 1976); *see also Smith v. Schmidt*, No. CIV.A. C-07-126, 2007 WL 3342224, at *4 (S.D. Tex. Nov. 6, 2007) (Jack, J.) (additional time "would prejudice the bankruptcy estate and creditors by prolonging this proceeding unnecessarily, delaying creditors' receipt of payment, and possibly depleting the assets of the bankruptcy estate.").

---

[7] Zurich is no stranger to liability under Chapters 93A and 176D for dragging its feet. *See Urb. v. Zurich Am. Ins. Co.*, No. 21-CV-11182-AK, 2024 WL 4379927, at *25 (D. Mass. Sept. 30, 2024) (Kelley, J.) ("Zurich wilfully and knowingly waged an unreasonable investigation, which if it had been conducted properly or with a modicum of objectivity earlier, in evaluating liability and comparative negligence, this case would have resolved far sooner… This matter needlessly dragged out for a number of years… The Court finds Zurich's actions warrant an award of double damages.").

Nor is Zurich's disregard for its legal obligations confined to Massachusetts. Courts across the country have similarly condemned its practices. *See Norris Auto Sales L.L.C. v. Zurich American Ins. Co.*, No. CJ-2015-05686 (Okla. Dist. Ct. Apr. 13, 2018) ($8 million verdict for Plaintiff including $4 million in punitive damages for Zurich's failure to investigate and refusal to settle with clear liability); *MKB v. American Zurich Ins. Co.*, 2:13CV00611, 2014 WL 10385059 (W.D. Wash. Oct. 24, 2014) ($2.3 million verdict including $1.2 million for Zurich's failure to act in good faith and violation of state's Insurance Fair Conduct Act); *Hutton v. American Zurich Ins. Co.*, No. 2:16-CV-00539, 2018 WL 2431434 (D. Arizona Apr. 17, 2018) ($1.5 million verdict including $1 million in punitive damages for failing to investigate a workers' compensation claim and conducting its investigation in a manner calculated to deny the injured worker's benefits).

The eleven-month extension sought by Zurich and AGLIC threatens precisely this result. This case plays a central role in Steward's ongoing chapter 11 cases. *See* Ex. A, ¶¶ 8, 14. Steward recently reached an agreement with their secured lenders and unsecured creditors' committee on the terms of a chapter 11 plan pursuant to which Steward's remaining assets, including the claims asserted in this lawsuit, will be assigned to a litigation trust funded by their secured lenders. *Id*. ¶¶ 10-11. Steward entered into the agreement based, in part, on the anticipated timeline for monetizing Steward's remaining assets. *Id*. Under the terms of the agreement, amounts owed to the secured lenders under the financing provided to the trust as well as two other credit facilities provided to Steward by the lenders accrete interest at an increasing rate the longer the facilities remain unpaid. *Id*. The secured lenders are also entitled to a "multiple on invested capital" under their prepetition bridge credit facility that increases monthly while the facility remains outstanding at a rate of $1 million on April 1, 2026 increasing to $3.75 million per month beginning on September 1, 2026. *Id*. ¶ 12. Further, if Steward repay their secured lenders in full by October 1, 2026, they will retain 5% of gross litigation proceeds received that would otherwise be paid to the secured lenders under the terms of the financing arrangement with the litigation trust. *Id*. ¶ 13. The proposed eleven-month delay, or even a six-month delay, would cost tens of millions of dollars in incremental financing costs, professional fees, and administrative costs compared to the current schedule. *Id*. ¶ 14. Accordingly, the timing and outcome of this trial are critically important to Steward and its creditors. *Id*. ¶ 15.

### D.  *Defendants' Dilatory Tactics Should Not Be Rewarded with Further Extension*

Any additional delay in these proceedings would serve only to benefit Defendants—who have already delayed resolution for years—at the expense of Steward and its creditors, including

a broad range of businesses from small vendors such as pizzerias and linen services to substantial commercial entities, all striving to administer and preserve the value of the bankruptcy estate.

It is evident that Defendants seek to prolong this litigation in hopes of forcing Steward to convert its Chapter 11 bankruptcy into a Chapter 7 liquidation, thereby compelling Steward's creditors to accept mere pennies on the dollar of the sums owed by Defendants since 2020. Such tactics should not be rewarded with an eleven month delay. This case should proceed on an expedited basis, consistent with the Court's prior order setting trial for January.

## IV. Conclusion

For the reasons set forth above, Steward Health Care System LLC respectfully requests that the Court deny Defendants' Motion. Should the Court find that the current Scheduling Order should be amended, Steward respectfully requests that the Court modify the deadlines for fact and expert disclosures, extending them to August 24, 2025, while leaving all other deadlines, including the trial date, unchanged.

## REQUEST FOR ORAL ARGUMENT

Pursuant to L.R. 7.1(d), Steward Health Care System LLC respectfully requests an oral argument on the issues presented in Defendants' Motion and Steward Health Care System LLC's opposition.

        STEWARD HEALTH CARE SYSTEM LLC,

        By their Attorneys,

        */s/ Seth J. Robbins*
        Howard M. Cooper (BBO No. 543842)
        David H. Rich (BBO No. 634275)
        Seth J. Robbins (BBO No. 655146)
        Matthew S. Furman (BBO No. 679751)
        William E. Gildea (BBO No. 699112)
        Elizabeth L. Gardon (BBO No. 711867)
        TODD & WELD LLP
        One Federal Street, 27th Floor
        Boston, MA 02110
        (617) 720-2626
        hcooper@toddweld.com
        drich@toddweld.com
        srobbins@toddweld.com
        mfurman@toddweld.com
        wgildea@toddweld.com
        egardon@toddweld.com

Dated: May 9, 2025

## CERTIFICATE OF SERVICE

     I, William E. Gildea, hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and that paper copies will be sent to those indicated as non-registered participants on May 9, 2025.

        */s/ William E. Gildea*
        William E. Gildea