# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| STEWARD HEALTH CARE SYSTEM LLC,<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN GUARANTEE AND LIABILITY INSURANCE COMPANY AND ZURICH AMERICAN INSURANCE COMPANY,<br><br>Defendants. | Civil Action No. 1:21-cv-11902 |

**DECLARATION OF JOHN R. CASTELLANO**
**IN SUPPORT OF PLAINTIFF'S OPPOSITION TO ZURICH'S MOTION TO EXTEND**
**THE SCHEDULING ORDER**

I, John R. Castellano, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury that the following is true and correct to the best of my knowledge, information, and belief:

1. I am the Chief Restructuring Officer of Steward Health Care System LLC and each of its debtor affiliates, as debtors and debtors in possession (collectively, the "**Debtors**" and, together with the Debtors' direct and indirect non-debtor subsidiaries, the "**Company**" or "**Steward**") in ongoing chapter 11 cases before the United States Bankruptcy Court for the Southern District of Texas Houston Division.[1] Prior to becoming the Debtors' Chief Restructuring Officer, beginning in October 2023, I advised the Company in my capacity as Managing Director of AlixPartners, LLP, an affiliate of AP Services, LLC. In these capacities, I am familiar with the

---

[1] *In re Steward Health Care System LLC, et al.*, No. 24-90213(CML) (Bankr. S.D. Tex.).

Debtors' day-to-day operations, books and records, business and financial affairs, and the circumstances surrounding these chapter 11 cases.

2. I submit this declaration (the "**Declaration**") in support of the *Plaintiff's Opposition to Zurich's Motion to Extend the Scheduling Order* (the "**Opposition**") filed by the Plaintiff.

3. I hold a bachelor's degree in Accounting from DePaul University and a master's degree in Management, Finance, and Strategy from the Kellogg School of Management at Northwestern University. I have over 28 years of financial restructuring and bankruptcy-related experience and over 25 years of experience with AlixPartners. I have served as a Managing Director in AlixPartners' Turnaround & Restructuring Group since 2007. Prior to joining AlixPartners, I worked at Ernst & Young LLP in its Assurance practice as an auditor, and in its consulting practice focusing on restructuring advisory services. I have served as Chief Restructuring Officer (or in an equivalent role) in numerous large-scale corporate restructurings, including: *In re Aearo Technologies LLC*, No. 22-02890 (JJG) (Bankr. S.D. Ind. 2022); *In re Footprint Power Salem Harbor Development LP*, No. 22-10239 (MFW) (Bankr. D. Del. 2022); *In re Alpha Latam Management, LLC*, No. 21-11109 (JKS) (Bankr. D. Del. 2021); *In re Lonestar Resources US Inc.*, No. 20-34805 (DRJ) (Bankr. S.D. Tex. 2020); *In re McDermott International, Inc.*, No. 20-30336 (DRJ) (Bankr. S.D. Tex. 2020); and *In re Aegerion Pharmaceuticals, Inc.*, No. 19-11632 (MG) (Bankr. S.D.N.Y. 2019).

4. AlixPartners specializes in designing and implementing business turnarounds, assisting companies with the administration of the bankruptcy process, and providing interim crisis management, among other things. AlixPartners provides these services for companies throughout the financial services industries and has an intimate understanding of the

2

economic, regulatory, operational, strategic, and financial factors that drive these businesses. AlixPartners' prior experience includes a range of activities and services targeted at restructuring, stabilizing, and improving a company's financial position. These services have historically included: (i) providing executive leadership to financially distressed companies; (ii) developing or validating forecasts, business plans, and related assessments of a business's strategic position; (iii) monitoring and managing cash, cash flow, and supplier relationships; (iv) assessing and recommending cost reduction strategies; and (v) designing and negotiating financial restructuring packages.

5. Except as otherwise indicated, the facts set forth in this Declaration are based upon my personal knowledge concerning the Debtors' operations and financial condition, my review of relevant documents, information provided to me by employees working under my supervision, my opinion based upon experience, knowledge, and information concerning the Company's operations and financial condition, my own reasonable inquiry, and/or my discussions with the Debtors' other officers, directors, and restructuring advisors. I am over the age of 18 and I am authorized to submit this Declaration on behalf of the Debtors. If called to testify, I would testify competently to the facts set forth in this Declaration.

**Facts Relevant to the Motion**

6. On May 6, 2024, Steward and several of its affiliates commenced chapter 11 cases in the United States Bankruptcy Court for the Southern District of Texas. At that time, Steward owned and operated more than thirty (30) hospitals, including eight (8) operating hospitals serving communities in Massachusetts and Norwood Hospital, which remained closed in the wake of the June 2020 storm. At the commencement of the chapter 11 cases, the highest priority of Steward and its advisors was to sell its operating hospitals to new owners. With the oversight of the Bankruptcy Court and other stakeholders, Steward was successful in selling nearly all of the

3

operating hospitals, including six (6) hospitals in Massachusetts, and nearly all of its other facilities to new owners. In doing so, Steward ensured continuity of healthcare and preservation of thousands of jobs in dozens of communities.

7. Steward and its advisors have also been focused on the critically important work of maximizing the recovery to Steward's tens of thousands of creditors. These creditors include critical vendors that continue to provide supplies and services to Steward's former hospitals, including those in Massachusetts. Collectively, these creditors are owed hundreds of millions of dollars. In addition, Steward must satisfy the claims of its senior secured lenders, which are also in the hundreds of millions of dollars.

8. As mentioned above, Steward has sold nearly all of its healthcare operations. Accordingly, Steward's remaining assets that are available to satisfy claims of its creditors consist primarily of claims and causes of action against certain individuals and entities. Among the most valuable and important of such claims are Steward's claims against AGLIC and Zurich asserted in this lawsuit.

9. It is critically important to the Debtors' ability to return value to creditors that the current timeline of this litigation is maintained. First, to monetize these litigation assets, Steward requires financing to cover the costs of litigation and other administrative expenses of its estate. Steward lacks the liquidity to self-fund these costs. Accordingly, Steward must borrow the funds required and thus incur financing costs.

10. In that regard, the Debtors recently reached an agreement (which is subject to bankruptcy court approval) with their secured lenders and unsecured creditors' committee on the terms of a chapter 11 plan, pursuant to which the Debtors' remaining assets, including the claims asserted in this lawsuit, will be assigned to a litigation trust funded by their secured lenders.

4

11. The Debtors entered into the agreement based, in part, on the anticipated timeline for monetizing the Debtors' remaining assets. Under the terms of the agreement, amounts owed to the secured lenders under the financing provided to the trust, as well as two other credit facilities provided to the Debtors by the lenders, accrete interest at a rate that increases the longer the facilities remain unpaid.

12. Second, the more quickly Steward is able to repay its senior secured lenders, the less it will have to repay to the secured lenders to the benefit of remaining creditors, including vendors and suppliers. For example, the secured lenders are entitled to a "multiple on invested capital" under their prepetition bridge credit facility that increases monthly while the facility remains outstanding at a rate of $1 million on April 1, 2026, $1.5 million on May 1, 2026, $2 million on June 1, 2026, $2.5 million on July 1, 2026, $3 million on August 1, 2026, and $3.75 million per month beginning on September 1, 2026.

13. Moreover, if the Debtors repay their secured lenders in full by October 1, 2026, Steward will retain 5% of gross litigation proceeds that would otherwise be paid to the secured lenders under the terms of the proposed financing arrangement with the litigation trust. If AGLIC and Zurich's schedule is adopted, this benefit may be lost.

14. The proposed 11 month delay, or even a six month delay, would cost tens of millions of dollars in incremental financing costs, professional fees and administrative costs compared to the current schedule. A delay in the trial would adversely impact Steward's creditors, including approximately nine hundred (900) creditors in Massachusetts who continue to service Steward's former hospitals. These creditors would be at risk of receiving reduced recoveries due to a delay in the trial timeline.

15. Accordingly, the timing of this trial is critically important to the Debtors and their creditors. I believe that the motion to extend the schedule is not in the best interest of Steward's estates and parties in interest in its chapter 11 cases.

I declare under penalty of perjury that the foregoing is true and correct. I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: May 9, 2025  
Dallas, Texas

*/s/ John R. Castellano*
John R. Castellano
Chief Restructuring Officer
Steward Health Care System LLC