UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Steward Health Care System LLC,<br><br>        Plaintiff,<br><br>        v.<br><br>American Guarantee and Liability Insurance Company and Zurich American Insurance Company,<br><br>        Defendants. | Civil Action No. 1:21-cv-11902 |

**STEWARD HEALTH CARE SYSTEM LLC'S MEMORANDUM IN SUPPORT OF MOTION TO COMPEL COMPLIANCE WITH RULE 45 DOCUMENT SUBPOENAS TO EIGHT THIRD PARTIES REPRESENTED BY DEFENDANTS' COUNSEL**

Plaintiff Steward Health Care System LLC ("Steward") respectfully submits this memorandum in support of its motion, pursuant to Fed. R. Civ. P. 45(d)(2)(A)(i), to compel the production of plainly relevant documents from eight third parties—all represented by counsel for Defendants American Guarantee and Liability Insurance Company and Zurich American Insurance Company (collectively, "Zurich"). This bad-faith action—filed in 2021—arises from Zurich's refusal to timely adjust or pay Steward's insurance claim for the catastrophic storm that devastated Norwood Hospital on June 28, 2020. At the heart of the dispute lies a fundamental question: did Zurich conduct a fair and diligent investigation of Steward's claim, or did it choreograph a self-serving process to limit its financial exposure?

To answer that question, Steward served document subpoenas on Zurich's own agents and consultants—entities Zurich engaged to "investigate" and "adjust" the claim. These subpoenaed entities are:

1

- Shawmut Woodworking & Supply, Inc. d/b/a Shawmut Design and Construction ("Shawmut"),

- Sedgwick Claims Management Services, Inc. ("Sedgwick"),

- Matson, Driscoll & Damico, LLP ("MDD"),

- J.S. Held LLC ("J.S. Held"),

- DBI Construction Consultants LLC ("DBI"),

- Thornton Tomasetti ("TT"),

- Ruddy, Cassidy & Foster, LLC ("RCF"), and

- Meridian Restoration Consultants LLC ("Meridian") (collectively, the "Third Parties").

Yet rather than comply with these lawful subpoenas, the Third Parties have engaged in a coordinated campaign of non-compliance and delay. Six have produced only a limited subset of documents, all while asserting near-identical, boilerplate objections that seek—without justification—to narrow both the temporal and subject-matter scope of Steward's subpoenas. Two—Shawmut and Meridian—have failed to respond altogether.

This stonewalling is especially troubling given Zurich's reliance on Shawmut's flawed construction timeline to limit the period for which Steward could recover business interruption losses. On May 27, 2025, Steward sent a detailed deficiency letter identifying the uniform and repeated shortcomings in these productions. No response has been received.

The documents Steward seeks are essential to examining whether Zurich and its consultants (i) conducted a reasonable investigation of the June 28, 2020 loss, and (ii) treated Steward's claim differently than similar projects during the relevant period. These are not marginal questions. They go to the heart of Steward's claims and Zurich's defenses.

The close of fact discovery—already extended once—is imminent. The time for delay has passed. Steward would have filed this Motion sooner, however, during a hearing on June 2,

2

2025, Magistrate Judge Kelley instructed the parties to hold a comprehensive meet and confer on discovery matters this week. The parties met today and remain at an impasse. Steward respectfully requests that the Court enter an order compelling the Third Parties to comply fully with Steward's subpoenas and to produce all responsive documents, so that Steward may review and rely upon them in the remaining phases of fact and expert discovery.

## I. Relevant Background[1]

On June 28, 2020, a catastrophic storm unleashed approximately 5.75 inches of rainfall within 90 minutes, overwhelming Norwood, Massachusetts, and devastating Norwood Hospital ("Norwood"). Steward operated Norwood and leased the premises from Medical Properties Trust, Inc. ("MPT"). Zurich insured MPT, and AGLIC insured Steward. Despite collecting exorbitant premiums for an all-risk policy with $850 million in coverage limits, the defendants failed to honor their respective obligations to the insureds and forced them to resort to protracted and extensive litigation to receive what is owed.

In October 2021, Zurich filed a declaratory judgment action against MPT in this Court, seeking to limit its exposure by invoking the policy's flood sublimit and disclaiming liability for Increased Cost of Coverage claims and damage to systems allegedly unaffected by the Loss. MPT responded with counterclaims alleging breach of contract and violations of G.L. c. 93A. Shortly thereafter, Steward filed this action on November 23, 2021, asserting claims for declaratory judgment, breach of contract, breach of the implied covenant of good faith and fair dealing, tortious interference, and violations of G.L. c. 93A, § 11.[2]

---

[1] A more comprehensive background is set forth in the other pleadings in this matter, including Plaintiff's Second Amended Complaint [ECF No. 61] ("Complaint") and, more recently, Plaintiff's Opposition to Defendants' Motion to Extend Scheduling Order [ECF No. 85].

[2] Steward thereafter amended its complaint on January 24, 2022, and again on March 16, 2023, to set forth in greater detail Zurich's bad faith conduct and mishandling of Steward's insurance claim. No new causes of action were asserted.

As set forth in Steward's Complaint, the core of this dispute lies in Zurich's improper bad-faith adjustment of Steward's insurance claims following the June 2020 storm. Steward alleges that Zurich, without any explanation, abruptly terminated coverage for Steward's business interruption losses—referred to as "Time Element" losses—without disclosing the basis of that decision, despite Steward's express requests. *Complaint*, ¶ 9.

Central to Steward's claims is the assertion that Zurich's investigation and adjustment efforts were deliberately structured to exclude key facts and categories of information, thereby facilitating an unjustified reduction in the claim amount. Further, Zurich allegedly directed its consultants to disregard factors critical to determining a realistic repair timeline for Norwood (*i.e.*, the period during which Steward would be entitled to receive business interruption coverage). For example, in late 2020, Zurich asserted that Norwood could be re-opened in as-was condition in May 2022, supposedly based largely on construction schedules generated by Shawmut and DBI. *Complaint*, ¶¶ 72-76. Zurich deliberately relied on these inadequate recommendations and reports in order to artificially limit the Period of Liability for which Steward could collect business interruption losses. *Id.*, ¶¶ 77-81. The recommendations and reports contained numerous assumptions and estimates that had no basis in reality and puzzlingly excluded, for instance, during the height of the COVID-19 pandemic, *any* consideration of supply chain issues or staffing shortages that were rampant in the construction industry at the time. *Id.*, ¶ 76. Moreover, the schedule adopted by the Defendants:

(i) imposed an unrealistically compressed timeline for replacement of major mechanical and electrical systems;
(ii) failed to incorporate adequate time for engineering review and approval of critical infrastructure;
(iii) did not account for documented supply chain disruptions prevailing during the relevant time period; and
(iv) disregarded the necessity of rendering the building water-tight and implementing appropriate heat and humidity controls during the restoration process.

4

*Id.*, ¶ 76.

These glaring deficiencies raise several interrelated and troubling questions: Why did Zurich rely on such inadequate analyses to adjust a claim of this magnitude? Why did its consultants produce such flawed work? And were these failures merely negligent—or were they deliberate, done in bad faith, and in contravention of the consultants' own practices in other comparable matters. The answers to these questions are critical. To obtain them, Steward issued subpoenas to eight third-party consultants whom Zurich engaged to "investigate" and "adjust" Steward's losses. Steward seeks to assess whether these same consultants, in handling other claims ***during the same period***, accounted for the very factors they ignored here—and whether that differential treatment was designed to improperly suppress Steward's recovery.

## II.     The Discovery Dispute at Issue

Despite Steward's targeted and reasonable efforts to obtain critical documents, the Third Parties, represented by Zurich's counsel ("Counsel), have universally refused to produce documents related to these central issues. Steward served subpoenas for the production of documents on February 10, 2025 (Shawmut and MDD), February 21, 2025 (Sedgwick, J.S. Held, DBI, and RCF), and April 1, 2025 (TT and Meridian). *See* **Exhibit A**. On April 25, 2025, Counsel represented that "with the exception of Shawmut," they "anticipate[d] being in a position to produce third-party documents from the entities" Steward had subpoenaed "within 7 to 10 days." *See* **Exhibit B**. To date, only six of the eight subpoenaed entities—MDD, Sedgwick, J.S. Held, DBI, RCF, and TT (the "Responding Third Parties")—have provided any form of response and/or production. On May 2, 2025, four of these parties (MDD, Sedgwick, J.S. Held, and DBI) served written objections and produced a limited subset of documents. *See* **Exhibit C**. Counsel subsequently represented, on May 7, 2025, that the productions for these

5

four were "complete," that productions for RCF and TT were forthcoming, and that an update on Meridian's production" would be provided "later th[at] week." *See* **Exhibit D**. On May 14, 2025, RCF and TT, responded with objections to substantial portions of the subpoenas and made only limited, partial productions. *See* **Exhibit E**.

On May 27, 2025, after months of delay and incomplete responses, Steward sent a detailed letter to Counsel outlining the specific respects in which each production remained inadequate (the "Deficiency Letter"). *See* **Exhibit F**. Following receipt of the Deficiency Letter, the Responding Third Parties made supplemental productions on May 29, 2025, from DBI, J.S. Held, RCF, and TT; on June 5, 2025, from DBI, J.S. Held, MDD, and Sedgwick; and on June 9, 2025, from DBI, J.S. Held, MDD, RCF, and Sedgwick. Yet despite these rolling productions, Counsel has never formally responded to the specific deficiencies identified in Steward's Deficiency Letter—despite representing as recently as May 30, 2025 that such a response would be forthcoming "shortly." *See* **Exhibit G**. To date, neither Shawmut nor Meridian has produced a single document or even served a written response to their subpoena.

On May 28, 2025, the day after Steward issued its Deficiency Letter, the parties conducted a Local Rule 7.1 conference in an effort to resolve their disputes without Court intervention. Those efforts proved unsuccessful. *See* **Exhibit H**. Although Plaintiff was preparing this Motion at that time, Magistrate Judge Kelley, during the June 2, 2025 hearing, directed the parties to engage in a comprehensive meet-and-confer regarding the outstanding discovery issues. *See* ECF No. 112 ("The parties agree that following plaintiff's completion of its current, ongoing production--which plaintiff represents it anticipates completing by June 6, 2025 the parties shall meet and confer with respect to any other outstanding discovery requests at a time early next week.").

6

Pursuant to that directive, the parties reconvened on June 11, 2025. Despite the opportunity to do so, during the June 11, 2025 conference according to Local Rule 7.1 Counsel again provided no substantive response concerning the Deficiency Letter and no updates at all as to either Shawmut, which has failed to produce a single document, or Meridian.

### III.    Argument

As Steward explained in its Deficiency Letter, and as set forth below, while the Responding Third Parties have produced some materials, they have withheld from production the very categories of documents that are both most critical to this dispute and least accessible from other sources. Their responses are replete with generic objections, and they have unilaterally and improperly limited both the temporal and substantive scope of their productions. Most notably, they refuse to produce any documents related to other bids, proposals, reports, or contemporaneous projects or claims—materials that bear directly on the disputed issues in this case. Astoundingly, they go so far as to assert that their discovery obligations do not extend to the files or communications of their own officers, employees, or agents.

These tactics—together with Shawmut and Meridian's total failure to respond to Steward's properly issued subpoenas—lack any legitimate basis in law. Instead, they appear to be part and parcel of Zurich's broader campaign of strategic delay, calculated to impede Steward's prosecution of its claims and to force further extensions of the case schedule. *See, e.g.*, ECF Nos. 84, 103.

#### A.    Shawmut and Meridian's Complete Non-Compliance Cannot be Allowed to Continue

While the Responding Third Parties' productions are grossly deficient, Shawmut and Meridian have produced nothing at all, despite months of repeated assurances that documents were forthcoming. As recently as June 9, 2025, counsel stated that they "expect to serve

documents from Meridian next week." *See* **Exhibit I**.  No such assurance was offered for Shawmut, and only a vague promise of an update was provided.  *Id.*

Shawmut's total noncompliance is especially prejudicial given Zurich's reliance on Shawmut's construction schedule to support its assertion that Norwood Hospital could be reopened "as-was" by July 15, 2022, thus capping Steward's business interruption losses as of that date.[3]  *See, e.g.,* Complaint, *Exhibit C*.  Without Shawmut's documents, Steward cannot evaluate whether Shawmut conducted a reasonable investigation of the June 28, 2020 loss or whether it treated Steward's claim differently from others for which it prepared construction schedules during the same period.

Third parties are not free to ignore subpoenas.  Shawmut and Meridian's response deadlines have long passed, and they have waived any objections they might have raised, including those asserted by the other Responding Third Parties.  *See* Fed. R. Civ. P. 45(d)(2)(B) ("The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served."); Fed. R. Civ. P. 45(g) (a court "may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it").  Accordingly, Steward respectfully requests an order compelling Shawmut and Meridian's full and unqualified compliance with the subpoenas.

  B. The Responding Third Parties' Responses and Productions Are Woefully Deficient and Reflect Bad Faith[4]

The Responding Third Parties' responses evince a calculated effort to delay and obstruct the production of highly relevant documents necessary for Steward to assess the adequacy of the

---

[3] Shawmut initially determined that Norwood could resume operations on an "as-was" basis as of May 2022.  Zurich later revised this estimate to July 15, 2022, purportedly based on the analysis of Katie Twomey at J.S. Held.

[4] The same legal and procedural considerations would apply to Shawmut and Meridian had they timely responded to the subpoenas and asserted objections in accordance with the applicable rules.

services they rendered on Zurich's behalf.  They have objected even to the most basic instructions and definitions and have unilaterally narrowed both the temporal and subject-matter scope of Steward's well-founded requests.

1. *The Responding Third Parties Assert Blanket, Improper Objections*

As an initial matter, the Responding Third Parties uniformly asserted blanket objections to standard subpoena instructions and definitions that serves no purpose but to delay and cause confusion concerning the breadth of their productions.  These include:

- **Instruction Nos. 4–7**, which describe basic ESI formatting and custodial requirements;
- **Instruction Nos. 8, 11, and 12**, which seek privilege logs and information about document destruction or qualifications in responses.

Similarly, the Responding Third Parties' objections to Steward's definitions of corporate entities such as "AGLIC," "Zurich," "Shawmut" and each of the other identified consultants on the grounds that they include their respective affiliated entities and representatives, agents, and employees are baseless.  *See LSI Corp. v. Vizio, Inc.*, No. 12-MC-91068-DJC, 2012 WL 1926924, at *5 (D. Mass. May 24, 2012) (holding discovery may be requested "from one corporation based on its relationship with, and ability to obtain documents from, a related corporate entity"); *see also Merchia v. United States Internal Revenue Serv.*, 336 F.R.D. 396, 398 (D. Mass. 2020).  These objections are even more absurd where Steward's formulation of these terms uses the same language used by Zurich.  *See, e.g.,* **Exhibit J** (Zurich's First Set of Requests for Document Productions defining AGLIC as including "all employees, agents, representatives, attorneys, affiliates, parent companies, and all other persons acting on its behalf, for its benefit, or within its control.").

These objections merely serve to frustrate Steward's right to discovery, muddle the Responding Third Parties' productions and shield Zurich's consultants from scrutiny.

2. *The Responding Third Parties Improperly Attempt to Restrict the Scope of Discovery*

Beyond their meritless objections to definitions and instructions, the Responding Third Parties seek to shield plainly relevant material by arbitrarily narrowing the scope of Steward's requests.

First, they improperly attempt to confine their productions their productions solely to documents related to the June 28, 2020 loss. But Steward's claims concern Zurich and its consultants' failure to account for pandemic-era realities such as supply chain disruptions and labor shortages. For that reason, the third instruction in the subpoenas defined the relevant period as extending from June 28, 2020 to the present. The Responding Third Parties objected to this scope, instead tethering their productions to Zurich's artificial cutoff of July 15, 2022, when they contend Norwood Hospital should have re-opened. This restriction is impermissible. While "[a] third-party subpoena is subject to the relevance and proportionality requirements of Rule 26(b)(1)," *Solamere Cap. v. DiManno*, 621 F. Supp. 3d 152, 158 (D. Mass. 2022), under Fed. R. Civ. P. 26 relevance is interpreted broadly "to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case," *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978); Fed. R. Civ. P. 26(b)(1). *See also* Fed. R. Evid. 401 (relevant evidence is that which "has any tendency to make a fact more or less probably than it would be without the evidence").

Second, their refusal to produce documents concerning other, comparable projects— especially those involving Zurich—is entirely improper. Steward alleges that Zurich and its consultants evaluated its claim in a manner inconsistent with their treatment of similar claims, thereby minimizing Zurich's liability. Documents evidencing how Responding Third Parties handled other claims—particularly regarding timelines, cost estimates, and supply chain

10

assumptions—are therefore central to Steward's claims that Zurich's and its consultants *knowingly* deviated sharply from standard practice in its handling of Steward's insurance claim. *See Nestle Foods Corp. v. Aetna Cas. & Sur. Co.*, 135 F.R.D. 101, 106 (D.N.J. 1990) (granting motion to compel where plaintiff sought "materials relating to the manner in which the[] defendants have handled the claims of other insureds with identical policy language" because "Plaintiff contends that this information is relevant to demonstrate that the defendants have acted in an inconsistent manner in resolving claims where similar policies were involved.").

Nevertheless, the Responding Third Parties categorically refused to produce these documents. For example, J.S. Held:

- Refuses to produce *any* bids or proposals it submitted for projects involving Zurich, AGLIC, or Sedgwick concerning water losses at healthcare facilities (**Request No. 12**);

- Refuses to produce construction schedules and estimates from any project since April 1, 2020 (**Request No. 17**); and

- Refuses to produce pleadings or other public documents from matters in which it served as an expert (**Request No. 21**).

**Exhibit C**.[5]

Likewise, in Request No. 10 to Sedgwick, Steward sought documents concerning Sedgwick's understanding of how business interruption is typically measured in healthcare construction projects—a routine inquiry in coverage litigation. *See, e.g., Zewdu v. Citigroup Long Term Disability Plan*, 264 F.R.D. 622, 628 (N.D. Cal. 2010); *see also Jackson v. Harvard University*, 111 F.R.D. 472, 476 (D. Mass. 1986) ("a comparison of [other projects and files] may raise a doubt as to whether the reasons offered by defendants for denying plaintiff [coverage] are

---

[5] Sedgwick likewise refused to comply with respect to Requests Nos. 14 and 17; MDD with respect to Request No. 11; DBI with respect to Request Nos. 4, 9, and 11; TT with respect to Requests No. 4 and 21; and RCF with respect to Request Nos. 7 and 8.

the real ones"). Sedgewick nonetheless limited its response to documents concerning only the Norwood Hospital incident.[6] But Steward should not be forced to assess whether Zurich and the Responding Third Parties failed to account for well-known, industry-wide delays in a vacuum.[7] If Zurich's consultants accounted for pandemic-related delays in other projects but ignored them in Norwood's evaluation, that disparity would bear directly on Zurich's liability under G.L. c. 176D, § 3(9)(d) and, by extension, G.L. c. 93A. *See, e.g., Bohn v. Vermont Mut. Ins., Co.*, 922 F. Supp. 2d 138, 149 (D. Mass. 2013) (recognizing that an insurer may violate § 3(9)(d) by "purposefully and strategically failing to pursue a line of inquiry because it would uncover unfavorable evidence").

Third, the Responding Third Parties have neither met not attempted to meet their burden to justify their objections. The party resisting discovery must demonstrate that the requests are irrelevant, overly broad, or unduly burdensome. *See Solamere*, 621 F. Supp. 3d at 158-159; *Rockstar Consortium US LP*, No. 14-91322-FDS, 2015 WL 5972422, at *5 (D. Mass. Oct. 14, 2015) (The party "resisting discovery bears the burden of showing that [it] imposes an undue burden, and it cannot rely on a mere assertion that compliance would be burdensome without showing the manner and extent of the burden and the injurious consequences of insisting upon compliance") (internal quotations omitted). Mere assertions of burden are insufficient without detailed explanation. *See In re New England Compounding Pharmacy, Inc. Prods. Liab. Litig.*, No. MDL 13-2419-FDS, 2013 WL 6058483, at *7 (D. Mass. Nov. 13, 2013); *see also Katz v. Shell Energy N. Am. (US), LP*, 566 F. Supp. 3d 104, 107 (D. Mass. 2021) ("It is not enough to

---

[6] The Responding Third Parties follow this pattern of broad and repeated objections, including: Sedgwick with respect to Requests Nos. 1, 10, 11, and 13; MDD with respect to Nos. 6, 7, and 12; J.S. Held with respect to Nos. 3, 8, 16, 18; DBI with respect to Nos. 3 and 8; TT with respect to Nos. 3 and 6; and RCF with respect to No. 6.

[7] The same reasoning applies to Steward's requests seeking documents, policies, practices, and communications concerning the third parties' evaluation and calculation of critical matters such as code compliance, regulatory compliance, business interruption, procurement, construction—issues that lie at the very heart of this dispute.

merely assert overbreadth, burden, or oppression; instead, the party resisting discovery must specifically show how each request for production is either not relevant or overbroad, burdensome, or oppressive.")

Finally, their refusal to produce public pleadings from matters where they served as experts also lacks merit. Steward is plainly entitled to these materials that bear directly on issues of bias, credibility, and the reliability of the methodologies the Responding Third Parties have employed in this case. Contrary to the Responding Third Parties' contentions, these matters are not more easily discoverable by Steward, which cannot easily determine all legal proceedings in which the third parties have been retained as experts, as there is no publicly available database for this information. *See Chen-Oster v. Goldman, Sachs & Co.*, 285 F.R.D. 294, 305 (S.D.N.Y. 2012) (granting substantial discovery requests where "[t]he plaintiffs have not previously had the opportunity to obtain the information contained in the databases, and that information is not available from other sources"). The Responding Third Parties, on the other hand, clearly have this information readily available.[8]

## IV.   Conclusion

For the foregoing reasons, Plaintiff requests that this Court enter an order compelling the Responding Third Parties produce all documents responsive to the subpoenas in form requested. Additionally, Plaintiff asks the Court to find that Shawmut and Merdian have waived any objections they may have had by failing to timely respond.

---

[8] Additionally, TT's objection to Request No. 22, which seeks CVs or resumes for personnel involved in the Hospital engagement, is without merit and lacks any persuasive basis. TT contends that such documents are "outdated," but the qualifications of individuals at the time of their engagement are plainly relevant to assessing both the reliability of their analysis and the competence of their work. Moreover, the burden of production is minimal burden, likely involving only a limited to number of readily accessible documents.

13

        STEWARD HEALTH CARE SYSTEM LLC,

        By its Attorneys,

        */s/ Seth J. Robbins*
        Howard M. Cooper (BBO No. 543842)
        Seth J. Robbins (BBO No. 655146)
        Samuel M. Myers (BBO No. 711471)
        TODD & WELD LLP
        One Federal Street, 27th Floor
        Boston, MA 02110
        (617) 720-2626
        hcooper@toddweld.com
        srobbins@toddweld.com
        smyers@toddweld.com

Dated: June 11, 2025

## CERTIFICATE OF SERVICE

     I, Seth J. Robbins, hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and that paper copies will be sent to those indicated as non-registered participants on June 11, 2025.

        */s/ Seth J. Robbins*
        Seth J. Robbins