UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Steward Health Care System LLC,<br><br>        Plaintiff,<br><br>        v.<br><br>American Guarantee and Liability Insurance Company and Zurich American Insurance Company,<br><br>        Defendants. | Civil Action No. 1:21-cv-11902 |

**STEWARD HEALTH CARE SYSTEM LLC'S MEMORANDUM IN SUPPORT
OF ITS MOTION TO COMPEL DISCOVERY FROM DEFENDANTS**

Plaintiff Steward Health Care System LLC ("Steward") respectfully submits this memorandum in support of its motion, pursuant Fed. R. Civ. P. 33 and 34, to compel Defendants American Guarantee and Liability Insurance Company ("AGLIC") and Zurich American Insurance Company ("Zurich," and together with AGLIC, the "Defendants") to comply with their basic discovery obligations by providing complete responses to interrogatories and producing relevant documents in their possession, custody or control. This action—filed in 2021—arises from Defendants' refusal to timely adjust or pay Steward's insurance claim for the catastrophic storm that devastated Norwood Hospital on June 28, 2020. At the heart of the dispute lies a fundamental question: did Zurich conduct a fair and diligent investigation of Steward's claim, or did it choreograph a self-serving process to limit its financial exposure?

The discovery Steward seeks from the Defendants is central to that inquiry. Steward is entitled to explore why, after consistently paying Steward for losses covered under its insurance policy with the Defendants, the spigot suddenly went dry and, specifically, whether in abruptly

deciding to cut Steward off Defendants and their consultants (i) conducted a reasonable investigation of the June 28, 2020 loss, and (ii) treated Steward's claim differently than similar claims during the relevant period.

Yet, since Steward served its initial interrogatories and document requests on February 10, 2023, Defendants have responded with little more than boilerplate objections and bad-faith delay. They have refused to answer a *single* interrogatory substantively and have unilaterally imposed improper limitations on the scope of their document production, including arbitrary timeframes and categorical exclusions of key materials directly relevant to both Steward's claims and the Defendants' asserted defenses. And now, within just the past few days, AGLIC has stated that it will not answer any interrogatories in Steward's second and third sets, comprised of Interrogatories Nos. 16–23, improperly claiming that Steward has exceeded the limit of 25 under the Rules on the purported basis that certain of the interrogatories in its first set were compound.

On April 10, 2025, Steward sent Defendants a detailed letter outlining the numerous deficiencies in their discovery responses and production. Despite repeated assurances that they would respond, Defendants did not do so for more than two months. Nor have they supplemented their interrogatory answers, rescinded their improper objections, or produced the withheld documents.

With the close of fact discovery fast approaching—already once extended—further delay is untenable. The time for Defendants' stonewalling has passed. Steward would have filed this Motion sooner, however, during a hearing on June 2, 2025, Magistrate Judge Kelley instructed the parties to hold a comprehensive meet and confer on outstanding discovery matters. The parties met and conferred on June 11, 2025, and again on June 16, 2025, but they remain at an impasse. In fact, the Defendants were unable during the meet-and-confers to illuminate any

of their previous deficient responses. They finally responded to Steward's April 10 letter on June 12, 2025, but clarified very little, rectified none of their discovery deficiencies, and introduced new and absurd justifications for not responding to Steward's requests, including by incredulously suggesting that Zurich had nothing to do with the investigation and adjustment of Steward's claim despite evidence to the contrary and their prior representations.

Accordingly, Steward respectfully requests that the Court enter an order compelling Zurich and AGLIC to, within **five (5) days**:

(i) Serve complete and substantive answers to Steward's first, second, and third sets of interrogatories to AGLIC and first set of interrogatories to Zurich;

(ii) Produce all responsive documents, without the improper and unilateral limitations and redactions they have thus far imposed; and

(iii) Supplement their written responses to Steward's document requests to comply with Fed. R. Civ. P. 34(b)(2)(C), identifying any materials withheld, the basis for withholding, and the specific requests to which such withholdings pertain.

Prompt compliance is necessary to ensure that Steward has a fair opportunity to prepare its case during the remaining phases of fact and expert discovery.

## I. Procedural History

On June 28, 2020, a catastrophic storm unleashed approximately 5.75 inches of rainfall within 90 minutes, overwhelming Norwood, Massachusetts, and devastating Norwood Hospital ("Norwood"). Steward operated Norwood and leased the premises from Medical Properties Trust, Inc. ("MPT"). Zurich insured MPT, and AGLIC insured Steward. Despite collecting exorbitant premiums for an all-risk policy with $850 million in coverage limits, Defendants failed to honor their respective obligations to the insureds and forced them to resort to protracted and extensive litigation to receive what is owed.

In October 2021, Zurich filed a declaratory judgment action against MPT in this Court, seeking to limit its exposure by invoking the policy's flood sublimit and disclaiming liability for

3

Increased Cost of Coverage claims and damage to systems allegedly unaffected by the Loss. MPT responded with counterclaims alleging breach of contract and violations of G.L. c. 93A. Shortly thereafter, Steward filed this action on November 23, 2021, asserting claims for declaratory judgment, breach of contract, breach of the implied covenant of good faith and fair dealing, tortious interference, and violations of G.L. c. 93A, § 11.[1]

At the outset, the parties and the Court agreed to resolve via cross-motions for partial summary judgment the threshold legal question concerning the interpretation of "surface waters" in the definition of "Flood" within Steward's Policy. On November 15, 2022, following briefing and oral argument, the Court granted Zurich's motion, concluding that the policy's flood sublimit applied to all water damage, including that caused by rainwater accumulating on elevated roofs structures (*i.e.*, top-down damage).

Given the importance of this legal determination, the Court granted MPT and Steward's request for certification of a controlling question of law pursuant to 28 U.S.C. § 1292(b). The First Circuit in turn certified the following question to the Supreme Judicial Court of Massachusetts:

> Whether rainwater that lands and accumulates on either (i) a building's second-floor outdoor rooftop courtyard or (ii) a building's parapet roof and that subsequently inundates the interior of the building unambiguously constitutes "surface waters" under Massachusetts law for the purposes of the insurance policies at issue in this case?

On July 23, 2024, the Supreme Judicial Court issued a unanimous decision in *Zurich Am. Ins. Co. v. Med. Properties Tr., Inc.*, 494 Mass. 382 (2024), in Steward and MPT's favor holding that

---

[1] Steward thereafter amended its complaint on January 24, 2022, and again on March 16, 2023, to set forth in greater detail AGLIC's bad faith conduct and mishandling of Steward's insurance claim. No new causes of action were asserted.

the term "surface waters" as used in the policies was ambiguous and thus should be construed against Zurich who drafted the policies.[2]

Following a Rule 16 Scheduling Conference held on December 5, 2024, the Court: (1) stayed discovery pending a mediation scheduled for January 22, 2025; and (2) ordered the parties to file a Proposed Joint Statement.  ECF No. 77.  Zurich's proposed case schedule in the Joint Statement called for trial to begin at least two months later than Steward proposed.  ECF No. 78. On January 6, 2025, the Court adopted Steward's proposed discovery schedule and ordered that fact discovery be completed by June 10, 2025, with trial to begin in January 2026.  ECF No. 79.

Despite this clarity, Defendants have repeatedly sought to delay the progression of this case.  They moved on March 22, 2025, to extend all case deadlines—including trial—by *eleven months*.  ECF No. 84.  Steward opposed.  ECF No. 85.  The Court denied Zurich's motion, stating that "[t]his is an old case and a one-year delay is unwarranted." ECF No. 89.  Less than two months later, on May 28, 2025, Zurich again moved to extend deadlines, this time seeking a three-month delay.  ECF No. 103.

A few days later, on June 2, 2025, the parties appeared before Magistrate Judge Kelley. The Court denied, without prejudice, Defendants' two pending motions to compel, extended fact discovery by just one month (from June 10, 2025 to July 10, 2025), and ordered the parties to meet and confer the week of June 9, 2025 regarding outstanding discovery issues.  ECF No. 112. That conference occurred on June 11, 2025, but the parties were unable to fully resolve their disputes.  A follow-up meet-and-confer was held on June 16, 2025, specifically to address Steward's second and third sets of interrogatories and Zurich's position that Steward had exceeded the 25-interrogatory limit under the Rules.

---

[2] MPT and Zurich subsequently resolved their litigation.  *See* 1:21-cv-11621-PBS, ECF Nos. 81-82.

## II.     **Defendants' Bad Faith Investigation and Adjustment of the June 28, 2020 Loss**[3]

As set forth in Steward's Complaint, the core of this dispute lies in the Defendants' improper and bad-faith adjustment of insurance claims following the June 2020 storm. Steward that, after making quarterly business interruption payments for nearly two years, Defendants abruptly and without explanation terminated coverage for its business interruption losses—referred to as "Time Element" losses—despite Steward's express requests for the basis of that decision. Defendants also denied Steward's valid claims for damaged medical and business equipment. Complaint, ¶¶ 9, 78.

Central to Steward's claims is the assertion that Defendants' investigation and adjustment efforts were deliberately structured to exclude key facts and categories of information, thereby facilitating an unjustified reduction in the claim amount. As part of this effort, Defendants allegedly directed their consultants to disregard factors critical to determining a realistic repair timeline for Norwood (*i.e.*, the period during which Steward would be entitled to receive business interruption coverage).

The only way the Defendants could have justified such a premature cessation of payments was by willfully ignoring glaring deficiencies in the reports they received and by employing investigative standards and practices that they neither used nor would accept in comparable policy adjustments. For example, in late 2020, Defendants asserted that Norwood could be re-opened in as-was condition in May 2022, supposedly based largely on construction schedules generated by Shawmut Woodworking & Supply, Inc. d/b/a Shawmut Design

---

[3] A more comprehensive factual background is set forth in the other pleadings, including Plaintiff's Second Amended Complaint [ECF No. 61] ("Complaint").

Constructions ("Shawmut") and DBI Construction Consultants LLC ("DBI").[4] Complaint, ¶¶ 72-76. Defendants deliberately relied on these inadequate recommendations and reports in order to artificially limit the Period of Liability for which Steward could collect business interruption losses. *Id.*, ¶¶ 77-81.

The reports included baseless assumptions and implausible estimates—such as excluding, at the height of the COVID-19 pandemic, any consideration of rampant supply chain disruptions or construction labor shortages. *Id.*, ¶ 76. Moreover, the schedule adopted by Defendants:

(i) imposed an unrealistically compressed timeline for replacement of major mechanical and electrical systems;

(ii) failed to incorporate adequate time for engineering review and approval of critical infrastructure;

(iii) did not account for documented supply chain disruptions prevailing during the relevant time period; and

(iv) disregarded the necessity of rendering the building water-tight and implementing appropriate heat and humidity controls during the restoration process.

*Id.*, ¶ 76.

The Defendants' conduct cannot be attributed to mere inexperience. The adjustment of its claim can only be explained by one of two possibilities: either the Defendants were grossly negligent in investigating the loss, or they deliberately conducted an inadequate investigation and willfully misapplied the Policy to avoid paying tens of millions of dollars in owed coverage.

Against this backdrop, Steward served targeted discovery requests. In response, the Defendants provided answers even more opaque and unsatisfactory than the justifications offered during the adjustment process itself.

---

[4] Zurich later revised its purported construction timeline, claiming—based on work by Katie Twomey, a consultant at J.S. Held LLC ("J.S. Held")— that Norwood could have resumed operations in its pre-loss condition by July 15, 2022.

7

**III.     The Discovery Dispute**

The Defendants have consistently sought to evade their most basic discovery obligations. They have refused to substantively answer the vast majority of Steward's interrogatories and have produced only a narrow—and strategically curated—subset of the documents Steward requested. Their approach has been marked by selective redactions, improper withholdings, and a persistent refusal to disclose information bearing directly on the most consequential issues in this case. These include:

(i) the basis upon which the Defendants concluded that Norwood Hospital could be reopened significantly earlier than projected by Steward's consultants;

(ii) a detailed account of how and why Defendants relied on reports and analyses that conspicuously omitted critical variables when calculating the applicable Period of Liability—omissions that ultimately benefited them financially; and

(iii) the specific grounds for their assertion that Steward failed to comply with the Policy or mitigate its losses.

Defendants have failed to provide meaningful answers to any of these inquiries, leaving Steward no closer to understanding how, after two years of acknowledged business interruption coverage, Defendants suddenly declared their obligations extinguished in November 2022.

Steward served its first set of interrogatories and document requests on February 10, 2023—prior to the stay and certification to the SJC. *See* **Exhibit A, B**.[5] Zurich made its initial document production on July 30, 2024 in response to MPT's—not Steward's—document requests while the case remained administratively stayed (the "MPT Production"). The MPT Production consisted of 83,689 pages **from the files of just <u>two</u> custodians**—Mark Graves and Brian Rushlau. It was not until March 10, 2025, that both AGLIC and Zurich finally responded to *Steward's* written discovery. Zurich and AGLIC not only failed to provide a single substantive

---

[5] Steward subsequently served second and third sets of interrogatories on AGLIC on May 9, 2025 and June 9, 2025, respectively. *See* **Exhibit H**.

response to Steward's first set of interrogatories, but through their responses they also unilaterally and improperly narrowed the scope of the documents they would produce. *See* **Exhibit C, D**.

On April 10, 2025, Steward sent Defendants a detailed letter laying out their woefully inadequate discovery responses (the "Deficiency Letter"). *See* **Exhibit E**. Despite repeated assurances that a response was forthcoming, Defendants failed to provide any formal reply until June 12, 2025, more than two months later.[6] In the interim, Defendants made several supplemental productions totaling tens of thousands of pages, yet those productions left critical issues unresolved, and Defendants neither retracted their objections nor meaningfully expanded the scope of their production beyond what they initially committed to on March 10.

On June 11, 2024, Defendants served purportedly "Corrected" interrogatory responses, which offered even less detail than their prior submissions. **Exhibit F**. During a meet and confer the same day, Defendants disclosed for the first time that they withheld documents on unspecified "relevance" and "burden" grounds without identifying the requests or documents at issue, in direct contravention of Rule 34(b)(2)(C). Their eventual "Response Letter"—served June 12—did not address Steward's concerns in substance but instead functioned more as a defensive brief, complete with new obfuscatory positions such as the novel claim that Zurich had no involvement in adjusting Steward's claim. **Exhibit G**.

Later that day, AGLIC responded to Steward's Second Set of Interrogatories, insufficiently answering only one interrogatory and refusing to respond to the others incorrectly claiming that Steward had exceeded its permissible number of interrogatories. **Exhibit I**. The

---

[6] Steward refrained from filing this Motion solely based on repeated assurances that supplemental responses, along with a formal reply to Steward's letter, would be forthcoming. *See* **Exhibit J**. Moreover, on June 2, 2025, Magistrate Judge Kelley instructed the parties to further confer concerning all outstanding discovery matters.

parties then conducted another meet-and-confer pursuant to Local Rule 7.1 on June 16, 2025. During that meeting, no resolution of the issues identified below was reached.

## IV.     Argument

Defendants have abdicated their basic discovery obligations, offering only boilerplate objections in place of substantive responses and improperly withholding critical information. As explained below, their failures fall into three broad categories. *First*, as set forth in Section A, AGLIC has refused to provide meaningful answers to Steward's interrogatories—delaying for months, evading direct questions, and relying on contrived objections to avoid disclosure of core factual content—and only recently indicated that it intends to answer no more interrogatories. *Second*, as detailed in Section B, Zurich's interrogatory answers are completely evasive, internally contradictory, and facially deficient under Rule 33, as Zurich has essentially not answered a single interrogatory. And *third*, as described in Section C, Defendants have flatly refused to produce key documents and communications, including entire categories of plainly relevant materials, and have redacted or withheld others without justification. Their tactics are inconsistent with the letter and spirit of the Federal Rules, and court intervention is now required to compel compliance.

### A.     AGLIC Answered Three Interrogatories Across Three Sets—Deficiently—Before Invoking the Federal Limit

AGLIC has not provided a single adequate response to Steward's First Set of Interrogatories. Consider, for instance, **Interrogatory No. 6**, which seeks the factual basis for AGLIC's unilateral decision to terminate business interruption coverage as of July 15, 2022—a central issue in the case. AGLIC offered only boilerplate objections and vague references to "qualified professionals," without naming a single individual, document, or analysis. *See* Exhibit D. Steward pointed out this glaring deficiency in its April 10 letter. However, there is no

mention of their roles or the reasoning underlying the cut-off date. This answer is utterly lacking.

The same is true of **Interrogatory No. 13**, which requests the factual basis for AGLIC's assertion that Steward failed to cooperate with the investigation or resolution of its claim. AGLIC responded with conclusory statements that Steward failed to return Norwood Hospital to service, complete repairs, or support its claims—but failed to identify a single document, communication, or factual detail supporting these assertions. Exhibit D.[7] For example, what repairs were not completed? Which items lacked support? AGLIC does not say. It is unconscionable that at this late stage in discovery, AGLIC still has not provided any substantive information concerning these central issues in the case.

AGLIC's response to **Interrogatory No. 14**—seeking the basis for its affirmative defenses, including that Steward's alleged failure to comply with the policy terms or mitigate losses—is similarly inadequate. These defenses are expressly asserted in AGLIC's Answer. ECF No. 62 at 13. These defenses are expressly asserted in AGLIC's Answer. *See* ECF No. 62 at 13. Yet AGLIC has declined to provide any factual support for them, despite Steward's documented efforts to retain experts and mitigate damages. *See* Complaint ¶ 45.[8] Notably, while

---

[7] If AGLIC intends to assert a cooperation defense, it must now articulate the factual basis for that defense. Vague generalities are insufficient to meet its burden. The argument is especially untenable in light of Steward's extensive cooperation during the claims process, which included the production of hundreds of analyses, reports, and other documents. In stark contrast, Defendants—both Zurich and AGLIC—have failed for years to produce basic documentation justifying their July 15, 2022 cutoff of liability. No meaningful explanation has been provided.

[8] AGLIC's responses to **Interrogatory Nos. 2, 4, 6, 7, 8, 11, 12**, and **13** are similarly deficient. Rather than answering substantively, AGLIC stated that it "is producing documents … from which, as provided in Federal Rule of Civil Procedure 33(d), Steward may determine the information sought." In their response letter, Defendants suggest that Steward has taken a similar approach and that a cooperative solution may be reached. This is the first time such a proposal has been mentioned—two months after Steward's deficiency letter was served. Given the delay and absence of agreement, an order from the Court is necessary to ensure compliance.

11

Zurich represented it would supplement its response to Interrogatory No. 14, AGLIC made no such commitment.[9]

More troubling still, AGLIC now claims that it will not substantively respond to Steward's Second Sets of Interrogatories (with the exception of one), invoking the erroneous argument that Steward has exceeded the 25-interrogatory limit by serving "compound" interrogatories. *See* Exhibit I. That objection is baseless. None of Steward's interrogatories are improperly compound. At most, they contain subparts seeking details tied to a common theme— a practice courts routinely accept as compliant with Rule 33. *United States ex rel. Long v. Janssen Biotech, Inc.*, No. CV 16-12182-FDS, 2022 WL 4124018, at *3 (D. Mass. Sept. 9, 2022) (holding "an interrogatory containing subparts directed at eliciting details concerning a common theme" "should be considered a single question."). Defendants do not even identify which interrogatories they believe exceed the limit, and, absurdly, object even to Interrogatory No. 14—which precisely tracks the model format in Local Rule 26.5—as "compound." *Id.* at *6 ("Local Rule 26.5(c)(8) provides for expansive interrogatory responses.").

Although AGLIC's responses to Steward's Third Set of Interrogatories are not due until July 9, 2025, AGLIC confirmed during the June 16 meet-and-confer that it intends to assert the same baseless objection and refuse to respond.

Accordingly, the Court should compel AGLIC to provide complete and substantive responses to Steward's First, Second, and Third Sets of Interrogatories.

B.  Zurich Has Yet to Answer a Single Interrogatory

Zurich's approach to interrogatories has been no more compliant. Despite Steward's detailed Deficiency Letter, Zurich has not provided a single substantive answer. Instead, Zurich

---

[9] Defendants' conflicting responses concerning Interrogatory No. 14 further evidence Zurich's sudden, bad-faith about-face claiming that it had no role in adjusting Steward's.

has pivoted to a contrived theory that AGLIC alone adjusted Steward's claim, thereby absolving Zurich of its discovery obligations. This newly minted theory is contradicted by the record and Zurich's own prior admissions.

Notably, in its original response to **Interrogatory No. 6**, AGLIC expressly stated that "AGLIC <u>***and***</u> Zurich adjusted the claims of both Steward and MPT…concurrently and jointly." <u>Exhibit D</u> (emphasis added). That language was conspicuously omitted from AGLIC's "corrected" response served the day after the June 11 meet-and-confer—evidently to support Defendants' new unfounded position. *Compare* <u>Exhibit D</u> *with* <u>Exhibit F</u>.[10]

Rather than use the intervening time to answer interrogatories, Zurich has spent its time devising this new theory and doubling down on baseless objections.[11] The Response Letter offers no substance. Zurich's extended lament that **Interrogatory No. 14** is a "blockbuster" betrays a misunderstanding of Local Rule 26.5, which explicitly contemplates interrogatories seeking the factual basis for a claim or defense, including identification of relevant documents and communications. The interrogatory is entirely proper. As discussed below, none of Steward's interrogatories to the Defendants is compound.

It strains credulity that two months of delay have produced nothing more than equivocation and empty assertions. Zurich must be compelled to answer Steward's First Set of Interrogatories.[12]

---

[10] Despite Zurich's effort to distance itself from prior representations, the record makes plain that Zurich and AGLIC jointly adjusted Steward's claim throughout the investigation. For example, Mark Graves responded to Chapter 93A demand letters from both MPT and Steward on the same day, using identical letterhead and signing on behalf of both Zurich and AGLIC. *See* **Exhibit K**.

[11] Unbelievably, for example, both Zurich and AGLIC have objected to Steward's definitions of the Defendants in its written discovery requests where Steward's definitions include their "affiliates", "agents", and "employees" even though Defendants use the exact same language to define themselves in written discovery to Steward.

[12] Particularly troubling are Zurich's objections to **Interrogatory Nos. 7, 8, 10**, and **14**, all of which seek information central to Steward's claims. For instance, **Interrogatory No. 7** requests the identities and roles of those

13

C.    <u>Defendants' Withholding of Critical Documents and Improper Redactions</u>[13]

Defendants' noncompliance extends beyond interrogatories. They have improperly withheld entire categories of plainly relevant documents and applied redactions without legal justification.

Most notably, during the June 11 meet-and-confer, Defendants for the first time admitted that they are withholding broad classes of documents based on unspecified relevance and burden objections. When asked to identify the categories, they offered only one example—documents concerning reserves—but claimed there were many more. This admission was confirmed in their June 12 Response Letter. *See* <u>Exhibit G</u> ("reserves and reinsurance information is not relevant to Steward's claims"). This eleventh-hour revelation is in plain violation of Rule 34(b)(2)(C), which requires a party to state whether responsive materials are being withheld and, if so, which portions of the request are implicated. Defendants have done neither. Instead, they have offered only blanket objections and vague assurances. That is not sufficient.

In addition, Defendants have redacted material from key documents, including loss valuations, reserve figures, and settlement authority—items directly relevant to Steward's claims under Chapters 93A and 176D. Defendants admit that many of these redactions concern reserves and reinsurance. But such materials are plainly discoverable. Rule 26(a)(1)(A)(iv) mandates disclosure of relevant insurance agreements, including reinsurance contracts. *Tardiff v. Knox Cnty.*, 224 F.R.D. 522, 523–24 (D. Me. 2004). Indeed, numerous courts have held that Zurich's reserve and reinsurance information is particularly relevant in bad-faith insurance litigation. *See,*

---

who participated in Zurich's investigation of the claim. **Interrogatory No. 10** seeks Zurich's understanding of "all state, federal and local permits or approvals required to reopen Norwood Hospital"—a matter essential to assessing when operations reasonably could have resumed.

[13] The discovery deficiencies described herein apply equally to both Zurich and AGLIC.

14

*e.g.*, *Jackson Fam. Wines, Inc. v. Zurich Am. Ins. Co.*, No. 22-CV-07842-AMO (DMR), 2024 WL 3325382, at *3 (N.D. Cal. July 8, 2024) (granting plaintiff's motion to compel and rejecting Zurich's relevance objections to producing documents concerning reinsurance where Zurich's state of mind is at issue to plaintiff's allegation of bad faith withholding of insurance benefits); *Lamar Advertising Co. v. Zurich Am. Ins. Co.*, Civ. A. No. 18-1060-JWD-RLD, 2020 WL 448243, at *10 (M.D. La. January 28, 2020) (compelling Zurich to produce reinsurance agreements and communications with reinsurers as they are relevant to plaintiff's bad faith claim); *Patti's Hold. Co., LLC v. Zurich Am. Ins. Co.*, 2025 WL 976294, at *2 (W.D.Ky. March 31, 2025) (reaffirming prior order compelling Zurich to produce reserve information in light of plaintiff's bad faith claim).[14]

These documents are critical to Steward's claims that Defendants acted with financial self-interest and improperly underpaid its loss. Steward therefore requests that the Court order both Defendants to (1) specifically identify <u>each document</u> request for which non-privileged materials have been withheld, and describe **every** category of information so withheld, and (2) produce, in unredacted form, **all** documents concerning reserves, reinsurance, supplemental insurance, underwriting, and related subjects.

Second, Defendants have made clear their intent to withhold information concerning whether Steward was treated disparately from similarly situated insureds. This is particularly apparent with respect to Document Request Nos. 22, 23, and 24, which seek documents concerning Defendants' interpretation and application of identical or substantially similar policy

---

[14] Courts in jurisdictions across the country have reached the same conclusion and compelled insurers to produce such documents when a claim of bad faith is alleged. *See, e.g., Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. H & R Block, Inc.*, No. 12 CIV 1505 AT HBP, 2014 WL 4377845, at *4-5 (S.D.N.Y. Sept. 4, 2014) (granting motion to compel production of documents concerning insurer's reserves "where, as here, a bad faith refusal to pay is alleged" and identifying cases reaching the same conclusion from multiple jurisdictions); *Bernstein v. Travelers Ins. Co.*, 447 F. Supp. 2d 1100, 1107-1108 (N.D. Cal. 2006) (granting plaintiff's motion to compel discovery concerning insurer's reserves because such information is relevant when a claim of bad faith is alleged).

15

language in connection with other claims.[15] These documents are essential to Steward's claim that Defendants and their consultants failed to conduct a reasonable investigation and deviated from standard practices. *Nestle Foods Corp. v. Aetna Cas. & Sur. Co.*, 135 F.R.D. 101, 106 (D.N.J. 1990) (compelling production of materials concerning "the manner in which defendants have handled the claims of other insureds with identical policy language" to show inconsistent treatment). Accordingly, Steward requests that the Court order the Defendants to produce responsive documents to Requests Nos. 22, 23, and 24 without further delay, and search for and produce all responsive documents concerning comparable policies and claims, as applicable.[16]

## V. Conclusion

For all of the reasons contained herein, Plaintiff requests that this Court enter an order compelling Zurich and AGLIC to, within **five (5) days**:

(i) Serve complete and substantive answers to Steward's first, second, and third sets of interrogatories to AGLIC and first set of interrogatories to Zurich;

(ii) Produce all responsive documents, without the improper and unilateral limitations and redactions they have thus far imposed; and

(iii) Supplement their written responses to Steward's document requests to comply with Fed. R. Civ. P. 34(b)(2)(C), identifying any materials withheld, the basis for withholding, and the specific requests to which such withholdings pertain.

---

[15] These include internal policies, procedures, and guidance used by Defendants and their consultants in comparable circumstances. Defendants have objected. Yet these materials are vital for assessing whether Steward was treated differently than similarly situated insureds—an issue central to liability under G.L. c. 176D, § 3(9)(d), and, by extension, G.L. c. 93A, which prohibits insurers from engaging in discriminatory claim practices or failing to conduct reasonable investigations. *See*, e.g., *Bohn v. Vermont Mutual Insurance Co.*, 922 F. Supp. 2d 138, 149 (D. Mass. 2013) (recognizing that an insurer may violate § 3(9)(d) by "purposefully and strategically failing to pursue a line of inquiry because it would uncover unfavorable evidence").

[16] While Steward does not waive its objection to Defendants' failure to produce a privilege log, that issue appears to be the sole area in which the parties have reached tentative agreement: both sides have committed to producing privilege logs in short order.

STEWARD HEALTH CARE SYSTEM LLC,

By their Attorneys,

*/s/ Seth J. Robbins*
Howard M. Cooper (BBO No. 543842)
Seth J. Robbins (BBO No. 655146)
Samuel M. Myers (BBO No. 711471)
TODD & WELD LLP
One Federal Street, 27th Floor
Boston, MA 02110
(617) 720-2626
hcooper@toddweld.com
srobbins@toddweld.com
smyers@toddweld.com

Dated: June 17, 2025

**CERTIFICATE OF SERVICE**

I, Seth J. Robbins, hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and that paper copies will be sent to those indicated as non-registered participants on June 17, 2025.

*/s/ Seth J. Robbins*
Seth J. Robbins