UNITED STATE DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| STEWARD HEALTH CARE SYSTEM LLC,<br><br>                Plaintiff,<br><br>                v.<br><br>AMERICAN GUARANTEE AND LIABILITY INSURANCE COMPANY and ZURICH AMERICAN INSURANCE COMPANY,<br><br>                Defendants. | Civil Action No. 1:21-cv-11902 – PBS |

**DEFENDANTS' MEMORANDUM OF LAW[1] IN SUPPORT OF
MOTION TO COMPEL PRODUCTION
AND TO EXTEND CASE DEADLINES**

During a meet-and-confer session on Wednesday, June 11, 2025, Plaintiff Steward Health Care System, LLC ("Steward") revealed for the *first time* that it did not search for, review, or produce *any* responsive internal corporate records maintained by Steward or *any* documents from the custodial files of current or former Steward employees. Instead, Steward searched for responsive records only in the electronic email files of five *non-employees* who *were never employed by Steward*, and a SharePoint file containing records previously provided to Defendants during the claim adjustment process. Nevertheless, during the meet-and-confer discussion, Steward maintained that its document production to the first set of discovery requests was "complete," that it would not search its own corporate files such as financial and regulatory records, and that it would not search any current or former Steward employee custodial files.

---

[1] After conferring, the parties agreed in writing that all exhibits attached to this Memorandum of Law may be filed publicly. Therefore, a Motion to File Under Seal is not necessary.

Further, during a meet-and-confer session on Monday, June 16, 2025, Steward confirmed that it would provide some additional records responsive to the second set of discovery requests, but it would not expand its search for responsive records beyond the same five non-employees' files, and that it categorically would not produce any additional financial statements, tax returns, or information about Steward's finances, even though it is seeking lost income damages.

Steward's astonishing disclosure—and abject failure to meet its obligations under Rules 26 and 34—requires this Court's prompt intervention. Accordingly, Defendants American Guarantee and Liability Insurance Company ("AGLIC") and Zurich American Insurance Company ("Zurich," and together with AGLIC, "Defendants") respectfully requests that this Court order that: (1) Steward search its corporate custodial files and non-custodial files, including, at a minimum, Steward's corporate leadership's files, for documents responsive to Defendants' first and second set of requests; (2) Steward produce responsive records, including its financial statements, tax returns, and documents related to plans for Norwood Hospital that pre-date the flood event; and (3) extension of all case deadlines, including the trial date, by a minimum of four months. Defendants simply cannot effectively begin depositions of party or non-party deponents, including Rule 30(b)(6) depositions, without access to documents in Steward's corporate files that are responsive to Defendants' document requests, some of which were served years ago.

Defendants acknowledge that this case, while administratively stayed for the majority of time before January 2025, has been pending since 2021. This request, however, is not based on any fault of Defendants and rather is necessary to allow Defendants to fairly and effectively defend the claims that Steward has made, and the extension is required based upon the newly discovered information regarding Steward's insufficient attempt to provide responsive discovery. Pursuant to Local Rules 7.1(a)(2) and 37.1(b), Defendants have attempted to resolve these issues through

2

meet-and-confer discussions with counsel but have been unable to reach agreement. Steward opposes this motion.

In support of this request, Defendants state as follows:

## PROCEDURAL BACKGROUND

1.      On May 6, 2022, Steward provided its initial Rule 26(a)(1) disclosures, identifying, in part, the following four individuals as: (1) "Scott Kenyon, Vice President, Steward;" (2) "Chris Kidney, Director – Emergency Project Management, Steward Corporate Real Estate and Facilities;" (3) "David T. Soucy, Senior Director, Steward Corporate Real Estate and Facilities;" and (4) "Robert Gendron, Executive Vice President, Steward Corporate Real Estate and Facilities." Steward did not provide telephone numbers or addresses for these individuals, as required by Rule 26(a)(1)(A), only that they were employed by "Steward." Steward did not list *any* other Steward employees in its initial Rule 26(a)(1) disclosures as likely to have discoverable information. A copy of that initial disclosure is attached as Exhibit A.

2.      On May 22, 2025, Defendants served notices of depositions to Steward's counsel for those four individuals, along with one additional witness, Michael Crowley. Steward's counsel did not object, did not inform Defendants that they could not accept service of the notices, and did not inform counsel that they did not represent or control the witnesses.

3.      On June 11, 2025, the parties met-and-conferred on a number of discovery-related issues. During that call, Steward disclosed for the first time two critically important things. *First*, counsel stated that contrary to the representations in Steward's initial Rule 26(a)(1) disclosures, its counsel did not believe that any of the four employees listed in their Rule 26(a)(1) disclosures are Steward's current *or* former employees. Counsel stated that Steward does not control these four witnesses or Mr. Crowley, that he cannot accept service of their deposition notices, and that

the witnesses are represented by separate counsel (which contact information counsel first shared on June 13). Given that none of these witnesses are represented by Steward's counsel as former Steward employees, any deposition of the witnesses must now proceed pursuant to a Rule 45 subpoena. *Second*, counsel disclosed that the only repositories that were searched for responsive records were the Steward-issued email accounts of the five non-employees listed above (including Michael Crowley), who apparently were employed by CREF, not Steward.[2] Meaning, despite its written representation in response to Defendants' discovery requests for Steward's records that its "scope of search" for responsive documents was Steward's "physical and electronic files," and in violation of Steward's obligations under Rules 26 and 34, Steward failed to search a single Steward-employee custodial file, or, therefore, *any* of the documents in the possession, custody or control of Steward's own employees.

4.      This recent development lays bare deficiencies in Steward's production, which Defendants were not aware of prior to Steward's disclosure of its limited searches for responsive records.

5.      *First*, the failure to search in Steward's file management systems and in its executive leadership's custodial files (at minimum) means that Steward's responses to Defendants' initial discovery requests are necessarily deficient. On November 3, 2023, AGLIC served its first set of requests for production of records to Steward, attached as Exhibit B. The discovery requests were tailored to the relevant disputes in this case, and sought information *from Steward* that is required to adequately discover Steward's claims and the available defenses to those claims. Steward produced its first batch of records responsive to this request in April 2025.

---

[2] All five of these individuals used Steward email addresses during the relevant time period, and their records were produced by Steward. *See* Exhibits K and L. It is unclear at this juncture what the relationship was between CREF and Steward, and given the information recently disclosed, Defendants anticipate needing additional discovery to address this topic.

6.      There are several categories of requests in the first set that necessarily require a good-faith search of *Steward's* internal corporate records (whether custodial or non-custodial files), including, as examples: *internal* communications regarding any loss, expense, or damage claimed (Request 6); documents and communications that concern the closure of or prohibiting access to Norwood Hospital (Request 7); and documents and communications related to Steward's efforts to mitigate the loss, including the use of other medical facilities to render care (Request 8). These are just examples, as every single request for production of records sought responsive records within the possession, custody, and control of Steward, and of course necessarily included Steward's relevant employees' custodial files and its relevant, corporate non-custodial files.

7.      *Second*, if Steward maintains its limited custodial searches, it will inevitably fail to produce corporate records responsive to Zurich's second set of requests, which were tendered in May 2025. For example, in its June 10, 2025 objections and responses, attached as Exhibit C, Steward agreed to produce responsive corporate records for some of the requests, including:

- Request 28: Documents sufficient to establish Steward's licensure to operate within the State of Massachusetts.

- Request 29: All documents and communications between Steward and any person regarding Steward's licensure to operate within the State of Massachusetts, including Communications with the Office of the Governor, the Executive Office of Health and Human Services, or the Massachusetts Department of Health concerning Steward's ability to own or operate a licensed medical facility in Massachusetts.

- Request 34: All Documents and Communications between Steward and the Massachusetts Division of Insurance.

8.      Steward has not yet produced any records responsive to the second set of requests, and it informed Defendants on June 16, that it intended to make a production within the coming weeks. Steward confirmed, however, that it would not search additional custodial or non-custodial files, and it intends to limit its search for responsive records to the Steward-issued email accounts

of the five non-employees, despite the fact that they were outside consultants without responsibility for the functions that are the subject matter of Requests 28, 29 and 34. There is no way that this production will be complete without a search of Steward's non-custodial files and the custodial files of its employees, including, at a minimum, its executive leadership.

9.      For example, on June 10, 2025, Defendants received an initial subpoena response from the Commonwealth of Massachusetts' Office of the Attorney General. Included in that initial response was an October 2024 letter from Steward's President and System Chief Medical Officer (Octavio Diaz) to the Massachusetts Department of Health, attached as Exhibit D. That letter, titled "Norwood Hospital – Notice of Hospital Closure" is plainly relevant in this litigation because (among other things) Steward addresses reasons for "formal closure" of that Hospital. The letter is responsive to a number of document requests from the first set of discovery, including Requests 4, 7. Yet, the letter **was not** produced by Steward. The letter is also responsive to requests in the second set of discovery requests, but it would not be captured in a search limited to the five non-employees' Steward-issued email account.

10.      As another example, attached as Exhibit E is a publicly available February 20, 2024 letter from the Commonwealth to Steward's then-CEO, Dr. Ralph de la Torre. In the letter, the Governor wrote this to Dr. de la Torre: "The time has come to move past our many months of discussions and begin executing a safe, orderly transition of your seven licensed facilities in Massachusetts to new operators as soon as possible." This letter, and all internal and external correspondence regarding Steward's ability to administer a licensed facility in the Commonwealth of Massachusetts, is obviously relevant to Steward's claim that it is losing tens of millions of dollars a month in income that it would have generated at Norwood Hospital but for the

Defendants' alleged tortious conduct. Yet, this letter **was not** produced by Steward, and Steward has no plans to search Dr. de la Torre's custodial files for responsive records.

11.    *Third*, there are other categories of document requests in Defendants' first set related to Steward's financial solvency, profits, and losses, which Steward flatly objected to and to which it has refused to produce *any* responsive records. On June 16, counsel indicated that they would not produce records responsive to these requests. Defendants note that production of these records would require searching for, reviewing, and producing records in Steward's corporate leadership's files (including, for example, the CEO, the CFO, and the COO) and its non-custodial databases and files. For example:

- Request 11: Steward's audited financial statements for each year from 2015 through the present.

- Request 12: Steward's corporate tax filings for each year from 2015 through the present, including both federal and state filings.

- Request 18: Documents and Communications relating to appraisals of the Norwood Hospital.

12.    As explained in further detail below, Steward's financial records, including its audited financial records that pre-date the flood event, are critically important to cross-examine the veracity of Steward's claim of lost business income (which Steward contends is ongoing and valued at hundreds of millions of dollars).

13.    *Fourth*, in response to AGLIC's interrogatory asking for the identity of individuals with information about Steward's claims against Defendants, attached as Exhibit F, Steward identified the following individuals:

- Dan Cheney, Director of Diagnostic Imaging & Radiation Therapy, Norwood Hospital

- Ronald Doncaster, Vice President, Corporate Real Estate & Facilities, Steward Health Care System

- Elizabeth (Beth) Ganem, Chief Financial Officer, Norwood Hospital

- Sean Staples, Project Manager, Steward Health Care Corporate Real Estate & Facilities

Despite identifying these individuals as knowledgeable about the matters at issue in this lawsuit, none of their files were searched by Steward. But Defendants did not know that these individuals were excluded from Defendants' production efforts until June 11, 2025.

14.    *Fifth*, now that Defendants know about the woefully inadequate production efforts, it can review Steward's documents with an eye toward that deficiency. Many documents support the conclusion that Steward's unilateral decision to exclude Steward's employees from its search resulted in a deficient document production. For example:

- AGLIC corresponded with John Doyle, Steward's Chief Financial Officer, regarding Steward's Interim Proof of Loss. *See* Exhibits G and H. Mr. Doyle is an obvious source of relevant information, and he can be reasonably expected to have responsive information. His files, however, were not searched.

- Many of the documents produced by Steward indicate that other Steward custodians were involved in relevant discussions regarding the renovation or repair plans for Norwood Hospital. For example, Stephen W. Van Ness had a Steward email address and listed his title as "Vice President – Planning & Design, Steward Health Care, Corporate Real Estate and Facilities." Mr. Van Ness authored several relevant emails, including, for example the email attached as Exhibit I. In this email, Mr. Van Ness states that he had preliminary conversations with Consigli and Array regarding the reactivation schedule for Norwood Hospital. Mr. Van Ness's files, however, were not searched.

- As another example, attached as Exhibit J is a September 2020 email from CMS regarding CMS's "determination to continue to keep Norwood Hospital certified." This email is addressed to John Polanowicz and Lisa Martin, both Steward employees. On information and belief, Mr. Polanowicz was Steward's Chief Operating Officer, and Ms. Martin was a regional chief financial officer. Neither Mr. Polanowicz nor Ms. Martin's files were searched.

- Initial communications from AGLIC regarding the claim were directed to Ronald Doncaster, and a "daily huddle" call was established by Mr. Doncaster in July 2020, with participants from Steward, AGLIC, Sedgwick, and the consultants who were assisting the parties. *See* Exhibits K and L. Mr. Doncaster's relevance is established by his disclosure in Steward's interrogatory responses, where he is listed as someone who had communications regarding plans to rebuild or replace the Norwood Hospital. *See* Exhibit F at 6. Other Steward participants in the daily huddle included: Arlene Champey, Senior Director of Environmental Health and

Safety; Alyssa Merkle, Director of Biomedical Engineering; and Sheila Wallace, Senior Director of Regulatory Compliance. None of their files were searched.

15.    Defendants' review of Steward's written production is ongoing. Indeed, Steward produced a batch of documents as recently as June 6, 2025. While Defendants cannot identify each of the places that Steward should have searched for responsive records based on the limited visibility that Defendants have to Steward's files,[3] it is clear is that Steward is required to follow the law, and it must conduct a reasonable search of its records (including sources within its possession, custody or control), and produce non-privileged, responsive records to the Defendants. Because they have objectively failed to do so, and Defendants will suffer great prejudice if discovery continues before Steward complies with its obligations, Steward should be compelled to conduct additional searches and to produce responsive information, and the current case management schedule should be adjusted.

## **ARGUMENT**

### I.    **Steward Should Be Required to Search (at Minimum) Steward's and Norwood Hospital's Executive Leadership**

16.    Fed. R. Civ. P. 26(b)(1) allows a party to obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. Nevertheless, and without any explanation as to why it would be disproportionate to the needs of this case, Steward has refused to undertake even the most basic search for documents responsive to Defendants' requests: a search of its own corporate files or within the custodial files of its relevant current or former employees. The information that Zurich seeks is the most basic

---

[3] While Defendants have identified certain individuals in this motion that they believe should have been custodial sources, they do not concede that simply searching their files would be sufficient. As noted, Steward must also search its non-custodial corporate records. As for custodians, Defendants believe that *at a minimum*, the members of the Steward and Norwood Hospital senior executive teams who were involved in the matters at issue in this lawsuit, such as the CEO, CFO, CMO, and COO, should be included.

type of ESI that is rightly within the bounds of discovery under Rules 26 and 34: relevant documents within Steward's corporate files and within the custodial files of its current and former employees. The Court should compel Steward to conduct a search of those custodial files for information responsive to Zurich's requests.

17.     First, there is no question that Steward's corporate leadership is likely to possess relevant, responsive information. "At the discovery stage, relevance should be 'broadly construed,' and information should be deemed 'discoverable if there is any possibility it might be relevant to the subject matter of the action.'" *Roy v. FedEx Ground Package Sys., Inc.*, 675 F. Supp. 3d 140, 144 (D. Mass. 2023).

18.     As noted above, the limited information available to Defendants indicates that at least the following individuals are likely to have responsive information, which would not be available solely by a search of five non-employees custodial files: (1) Dr. Ralph de la Torre (the then-CEO, who received communications from the Massachusetts' AG's Office regarding Steward's ability to administer a licensed facility within the Commonwealth); (2) John Doyle (the then-CFO, who provided the Defendants with Steward's Interim Proof of Loss, documenting Steward's insurance claim); (3) Dan Cheney (Director of Diagnostic Imaging & Radiation Therapy at Norwood Hospital); (4) Ronald Doncaster (Vice President, Corporate Real Estate & Facilities, Steward Healthcare System, disclosed in response to an interrogatory response and involved in "daily huddle" calls); (5) Elizabeth Ganem (Chief Financial Officer, Norwood Hospital, who is disclosed by Steward in an interrogatory response); (6) Sean Staples (Project Manager, Steward Health Care Corporate Real Estate & Facilities, who is disclosed by Steward in an interrogatory response); (7) Stephen Van Ness (Vice President, Planning & Design, Steward Health Care, Corporate Real Estate & Facilities, who authored relevant remails regarding the renovation and

repair plans for Steward Hospital); (8) John Polanowicz (Steward's Chief operating Officer, who received correspondence from CMS regarding Steward's ability to administer a licensed facility); (9) Lisa Martin (Steward's regional Chief Financial Officer, including Massachusetts, who received correspondence from CMS regarding Steward's ability to administer a licensed facility); and (10) Octavio Diaz (Steward's President and System Chief Medical Officer), who corresponded with the Massachusetts Department of Health regarding the "formal closure" of the Norwood Hospital.

19.      Second, Steward offers no explanation as to why searches of its custodial and non-custodial records is not proportionate to the needs of this case. "Once a showing of relevance is made, the party opposing disclosure bears the burden of showing that the requested discovery is improper." *Roy*, 675 F. Supp. 3d at 144. The only excuse that Steward offers in opposing Defendants' request is that Steward claims that it offered to negotiate custodians with Defendants in the earlier stages of discovery, which Defendants declined to do, instead stating that Steward was in the best position to determine the appropriate custodians for its own records. Steward claims that this entirely reasonable position of Defendants somehow now excuses its inexcusable decision to unilaterally confine its search for responsive records to files of non-employees with Steward-issued email accounts. Not so. *See, e.g.*, *U.S. ex rel. Long v. Janssen Biotech, Inc.*, No. CV 16-12182-FDS, 2023 WL 2429358, at *4 (D. Mass. Mar. 9, 2023) (Kelley, M.J.) (noting that "in every case governed by the Federal Rules," a party "must make a reasonable inquiry and undertake a reasonable effort to produce requested documents possessed by current and former employees" regardless of whether the other party "happened to name such employees as ESI custodians"); *see also Bucceri v. Cumberland Farms, Inc.*, No. 1:15-cv-13955-IT, 2020 WL 58428, at *6 (D. Mass. Jan. 6, 2020) (noting obligation of producing party under Rule 26(e)(1)(A) to produce responsive

documents it is aware of even if "discovered ... outside of the agreed-upon searches"). Defendants simply declined an opportunity to *narrow* the scope of discovery to an agreed-upon list of custodians because Defendants could not possibly know where responsive records would be stored. This is especially true knowing what we know now, which is that Steward's Rule 26(a)(1) disclosures fail to name *even a single current or former Steward employee* who likely has discoverable information.

20.     "Rule 26(g) imposes an affirmative duty to engage in pre-trial discovery in a responsible manner that is consistent with the spirit and purposes of Rules 26 to 37." *Gonsalves v. City of New Bedford*, 168 F.R.D. 102, 109 (D. Mass. 1996)*.* This duty requires a lawyer to make a "reasonable effort to assure that the client has provided all of the information and documents *available to* [the client] that are responsive to the discovery demand." *Id* (emphasis in original). Steward has done the opposite. Rather than engage in good faith, Steward has attempted to hide its corporate records from discovery. And then when that was uncovered, it has further attempted to avoid fulfilling its obligations, by pointing to the impending fact discovery cut-off. The Court should enter an order requiring Steward to respond fully to Zurich's discovery through a search of its corporate custodial and non-custodial files.

## II.     Steward Must Provide Its Financial Records and its Pre-Flood Plans for Norwood Hospital.

21.     Publicly available information indicates that Steward was the largest private-equity-backed hospital system in America, with hospital systems around the country. Yet, in May 2024, Steward filed for bankruptcy. *See* https://restructuring.ra.kroll.com/Steward/.

22.     In this lawsuit, Steward claims that it is entitled to tens of millions of dollars per month in lost business income. Of course, Defendants are entitled to discovery on Steward's profits, losses, and financial plans for Norwood Hospital. Defendants must be able to test

Steward's assertion that it continues to lose income, and that Defendants must pay it for that loss. This information is plainly relevant.

23.    Further, Defendants are entitled to know the pre-flood condition of Norwood Hospital, and Steward's plans for the hospital prior to the flood. Steward must produce its appraisals, plans, or renovation estimates that it obtained for Norwood Hospital prior to the flood.

24.    Steward may want to hide its employees, its records, its financial history, and its behavior from disclosure in this lawsuit. But in seeking hundreds of millions of dollars of allegedly lost income before and after its bankruptcy filing, and in alleging that AGLIC acted in bad faith in adjusting its claim, it put at issue its financial plans for Norwood, its financial solvency, its ability to operate a licensed facility within the Commonwealth, and all of its internal documents and communications regarding the same. Steward must be required to search its corporate records, its current or former employees' files and any other location where it is reasonable to believe that responsive records may exist. *See Merchia v. U.S. Internal Revenue Serv.*, 336 F.R.D. 396, 398–99 (D. Mass. 2020) (recognizing that Rule 34(a)(1)'s language allowing a party to request production of documents "in the responding party's possession, custody, or control" extends to all responsive documents that the party has the "right, authority, or ability to obtain") (internal quotations omitted) (collecting cases).

**III.    Steward's Calculated Decision to Exclude Its Employees and Files from its Searches Requires an Extension of All Deadlines.**

25.    There is no justifiable reason for Steward's decision to limit its custodial searches to five non-employees and to fail to conduct searches of Steward's corporate files or databases. Steward may claim that the five email accounts they searched were likely to cover the bases, but that is disingenuous. Internal records and communications about the flood event (which necessarily would not involve those five non-employees), internal discussions about plans to restore or

renovate and the time it would take, discussions with government licensing bodies, and financial documents relevant to loss and damages would simply never be captured in such limited searches.

26.     The astonishing decision to so severely limit discovery must be met with allowing Defendants access to the information and time to review the responsive records. This is not a motion that Defendants could have made sooner. Defendants relied on Steward's representations that it conducted good-faith searches for records. Simply put, they failed to do that.

27.     Accordingly, Defendants request a four-month extension of all deadlines, including the trial date.

28.     Defendants request oral argument on this motion at the Court's earliest opportunity. Fact discovery is set to close on July 10, and Steward cited this deadline as a reason that it could not revisit its custodial searches. Given that Defendants cannot effectively depose witnesses without access to discoverable information in Steward's relevant employees' files and in its internal non-custodial files, Defendants request time before the Court as soon as the Court is available. As to Steward's argument as to the prejudice it will suffer if it is required to conduct good-faith searches of the places likely to have discoverable information at this stage of discovery, it is a prejudice of Steward's own making. It did not begin document production until April 2025, and it did not disclose its decision to limit its custodial searches to five non-employees until June 11, 2025. Defendants filed this motion as soon as possible following its meet-and-confer obligations.

WHEREFORE, Defendants respectfully request that the Court order Steward to search its corporate custodial and non-custodial files (including, but not limited to its corporate records, and the custodial files of Steward and Norwood Hospital's executive leadership) for responsive records; to produce financial records and records regarding plans for Norwood Hospital that pre-

date the flood; and to modify the current Scheduling Order to allow for completion of written discovery, as outlined above.

Respectfully submitted,


_/s/ Jonathan D. Mutch_
Jonathan D. Mutch, Esq. (BBO No. 634543)
Timothy Wenger (BBO No. 674087)
ROBINS KAPLAN LLP
800 Boylston Street, 25th Floor
Boston, MA 02199
Tel: (617) 267-2300
Email: JMutch@RobinsKaplan.com
       TWenger@RobinsKaplan.com


Ronald S. Safer (*pro hac vice*)
Nick Kahlon (*pro hac vice*)
Amy Andrews (*pro hac vice – pending*)
Abigail L. Peluso (*pro hac vice*)
RILEY SAFER HOLMES & CANCILA LLP
1 South Dearborn Street, Suite 2200
Chicago, Illinois 60603
Tel: (312) 471-8700
Email: rsafer@rshc-law.com
       nkahlon@rshc-law.com
       aandrews@rshc-law.com
       apeluso@rshc-law.com


*Attorneys for Defendants American Guarantee and Liability Insurance Company and Zurich American Insurance Company*


Dated: June 18, 2025

**Local Rule 7.1(a)(2) Certification**

I hereby certify that the undersigned conferred and attempted in good faith to resolve or narrow the issue presented in this Motion with counsel for Steward Health.

/s/ Jonathan D. Mutch
Jonathan D. Mutch

**CERTIFICATE OF SERVICE**

I hereby certify that on this 18th day of June, 2025, a copy of the foregoing Memorandum of Law was filed with the Court via the ECF filing system. As such, this document will be electronically sent to the registered participants identified on the Notice of Electronic Filing (NEF) and paper copies will be sent by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.

/s/ Jonathan D. Mutch
Jonathan D. Mutch

96216560.1

16