# EXHIBIT H



March 5, 2021

<u>*Via Electronic Mail Only*</u>

John Doyle
CFO
Steward Health Care System LLC
1900 Pearl Street
Suite 2400
Dallas, TX 75201

Re:  Insured:         Steward Health Care System LLC
     Claim No.:       5630054105
     Policy No:       ZMD 1393138-00 (the "Policy")
     Date of Loss:    June 28, 2020
     Loss Location:   800 Washington Street, Norwood, MA 02062

Dear Mr. Doyle,

I write to address the signed, sworn Interim Proof of Loss and accompanying cover letter submitted on behalf of Steward Health Care System, LLC's ("Steward") to American Guarantee and Liability Insurance Company ("AGLIC") on February 5, 2021.[1]

As explained in detail within, this Interim Proof of Loss is rejected and returned because it does not comport with the coverage and provisions of the Policy.

First, with respect to Steward's Time Element claim, AGLIC has already advanced Steward $32 million based on AGLIC's initial loss measure. This amount reflects payments to Steward based on the loss of income data provided by Steward at the time and as measured by AGLIC. No formal business income loss calculation has been submitted by Steward. Steward's submission of an Interim Proof of Loss that includes projected BI through June 2023 and beyond is inappropriate, and the additional amounts claimed by Steward are not due and owing under the Policy. Despite the defects with the Interim Proof of Loss, AGLIC is now advancing a further $31,286,098.72 based on AGLIC's own measurement of the loss, bringing the total advances to date to $63,286,098.72. This advance reflects Steward's actual BI loss through January 2021 and projected BI loss through June 2021 as measured by AGLIC.

---

[1] The Proof is dated February 4, 2021.

March 5, 2021
Page 2

Second, with respect to Steward's claim for Business Personal Property, any amounts due to Steward under the Policy have already been paid or are included with the current advance. Extensive testing has revealed that only a small percentage of BPP was actually damaged as a result of the flood. Further, AGLIC is not aware that Steward has actually incurred any amount for the replacement of BPP, and the valuation of the BPP loss under the Policy is appropriate on an Actual Cash Value basis only.

Third, with respect to the amounts ($9.5M) sought by Steward in connection with "Building" and "Remediation and Clean-up", it is not at all clear that any amount is owed to Steward. As an initial matter, questions remain as to whether Steward may recover under the Policy for damage to a hospital building it does not own. Notably, AGLIC understands that both Medical Properties Trust, Inc. ("MPT") and Steward are seeking coverage under their respective property policies for "Building" and "Remediation and Clean-up." Despite repeated requests to both Steward and MPT regarding these aspects of their claims, neither insurer has been provided with any information shedding light on these claims. Steward's lack of cooperation in this regard has made it impossible to determine whether Steward and MPT are seeking coverage for the same line items.

AGLIC previously explained in detail its concerns with Steward's claim in our January 11, 2021 letter – the points of which have not been addressed by Steward except for unsupported and incorrect assertions about AGLIC, which ignore the merits. That letter is incorporated here. As previously noted, the Period of Liability asserted by Steward far exceeds the period of time to repair the damaged property with due diligence. Its claim has long since grown to a point that, it must be said, is unrelated to actual flood damage at the hospital. Steward continues to make every effort to maximize the amount of time required for the investigation and the adjustment of the claim with non-productive testing and purported adjustment activities that simply cannot be said to represent an effort to "understand the loss." On top of this, Steward's claim fails to correctly apply the applicable Flood sublimit in the Policy.

Steward boldly asserts that AGLIC's conduct violates Massachusetts General Law Chapters 93A and 176D. Nothing could be further from the truth. AGLIC has adjusted the loss in good faith despite Steward's lack of cooperation. AGLIC requests that Steward identify the specific, factual instances where it asserts that AGLIC has breached its duties so that AGLIC may refute those assertions.

Steward's claim that it is AGLIC that has somehow delayed forward progress at Norwood Hospital is off the mark. It is MPT's responsibility to repair the damage to the building. As to the claim of MPT (which will be addressed in a separate letter) the same disparity exists between MPT's assertions of a desire to restore the Norwood Hospital buildings to house Steward's operations, and the lack of progress by MPT in doing so. For example, MPT's insurer has accepted substantial sections of roof, including the main roof on the Lorusso building, the roof over the Emergency Department, the connector bridge between Lorusso and Draper and the roof area over Day Surgery, as requiring replacement, and advanced funds for roof damage. MPT has not repaired or replaced damaged roof sections, allowing additional water to enter the building long after the loss. MPT's insurer months ago accepted Mechanical, Electrical and Plumbing equipment in the basement of the buildings as requiring replacement and advanced funds for that

CONFIDENTIAL

damage. Yet, MPT has not replaced that equipment. We note these facts here given that Steward asserts in its letter that it is "helping to facilitate" MPT's claim.

### I. Response to Interim Signed Sworn Proof of Loss

#### A. Summary of Claim as Presented

As did Steward's December 4, 2020 claim submission, the February 5, 2021 Proof is accompanied by a document entitled "Claim Summary – Steward Health Care" which identifies the total amounts that Steward asserts it suffered from the June 28, 2020 flood event at the Norwood Hospital facility. Steward seeks an increased total of $220,693,373 from that event, of which Steward claims $124,965,010 for what it terms "Flood" and a further $95,728,363 for what Steward terms "Storm."

As part of its total claim Steward continues to seek $57.5 million for "Property Damage" consisting of $13.2 million asserted as "Flood" property damage and $44.3 asserted as "Storm" property damage. A majority of both claimed amounts are asserted to be loss of business personal property, although loss for Building and Remediation and Clean Up are also included. As noted, amounts claimed for Building and Remediation and Clean Up have not been fully documented by either Steward or MPT – both of whom are seeking coverage for such claimed costs under their respective property policies. AGLIC reiterates its prior request(s) for information supporting these claims.

AGLIC notes that in Item 3 (Title and Interest) of the signed, sworn Interim Proof of Loss, Steward represents that it is the "Owner" of the property described and that "[n]o other person or persons had any interest therein or incumbrance thereon . . ." Based upon current information, AGLIC understands that MPT – and not Steward -- is the owner of the "Hospital/Medical Facility" identified in Item 2 (Occupancy). If AGLIC's understanding is incorrect, kindly let AGLIC know.

The bulk of Steward's claim seeks a total of $162.7 million for Time Element loss. This is broken down by Steward as $111.5 million asserted for "Flood" time element loss and $51.1 million asserted for "Storm" time element loss. Of the total claimed Time Element loss, all but $15.3 million is asserted to be Business Interruption loss running from the date of loss, June 28, 2020, through June of 2023. A total of $10.3 million is claimed for Extra Expenses and $5 million for Extended Period of Indemnity; both are split between what Steward asserts as "Flood" and "Storm" loss.

#### B. Response to Steward Claim Points in February 5, 2021 Letter

AGLIC is deeply concerned that Steward would accuse AGLIC of violating Massachusetts General Law Chapters 93A and 176D. No such violation has occurred. It is well-documented that AGLIC has gone to great lengths to adjust the claim in good faith, fully following the Policy and Massachusetts law, despite the longstanding lack of cooperation from Steward. AGLIC has dedicated more than sufficient resources to adjust the loss. A Senior Executive General Adjuster is on-site three to five days a week, often with five to fifteen additional professional consultants working on the adjustment any given day. Steward's complaint that AGLIC employees should

March 5, 2021
Page 4

have disregarded the applicable governmental Covid-19 orders restricting travel and AGLIC's Covid-19 travel directives rings hollow, given the full-time, on site, experienced professional staff working on behalf and under the supervision of AGLIC.

Your letter asserts "significant informal efforts" by Steward to "advance this matter with Zurich." That is regrettably not the case. Steward's claim ignores Policy terms, conditions, and limits such as (for example) the Flood sublimit and the Period of Liability, as explained in detail in our January 11, 2021 letter. Indeed, Steward does not appear to acknowledge the need to establish damage from the June 28, 2020 flood event in order to seek money from AGLIC for replacement of equipment. Steward instead claims that all of its business personal property was "damaged" and does so without support. This conduct by Steward does not meet the Policy requirement of cooperation with AGLIC and cannot be said to be an effort by Steward to advance matters with AGLIC.

Your letter on page 2 states that AGLIC has suggested that "Steward is not authorized to act on behalf of MPT." That misstates our position. The point made is correct – MPT may not abandon its duties under its Policy any more than Steward may. Notably, the lack of delineation between Steward's efforts to advance its own claim as well as MPT's claim raises considerable questions about whether there is an intentional effort to "muddy the waters" to maximize recovery under Steward's and MPT's respective policies.

Your statement regarding AGLIC's scope of damage is incorrect and unsupported. AGLIC has measured the loss with professional consultants who have provided documentation to support their conclusions. For example, AGLIC has retained a preeminent forensic accounting firm who, in turn, assigned one of its most senior partners to oversee calculations regarding AGLIC's claimed time element loss. With regard to the building, MPT's insurer has retained similarly experienced and well-qualified consultants and contractors, including DBI Construction Consultants on lead to determine cost to repair damage to the hospital building.

Your letter states AGLIC has taken "changing and inconsistent" positions concerning the Policy, but (again) it does so without factual support. Please identify to AGLIC any positions concerning the Policy where Steward believes that it requires clarification as to AGLIC's position.

Your letter states that AGLIC has not "produced its own healthcare expert reports" or considered those prepared by Steward. AGLIC is unclear what point Stewart is attempting to make. However, AGLIC's consultants have significant experience in the healthcare industry and their inspection and assessment has been assisted by expertise provided by industry vendors. For example, Frontier Imaging and Ericsson have been involved with the inspection and testing of the diagnostic equipment, and IBS Electronics has assisted in the assessment and testing of the nurse call system. In contrast, the information provided by Steward to date has been completely lacking in detail or support.

Your letter states that AGLIC has been "disingenuous" because it "goes to great lengths to suggest" that the Policy flood sublimit applies, then (in italics) suggests that those limits should

CONFIDENTIAL

be tendered. Steward appears to be intentionally misreading AGLIC's letter. Please be reminded that AGLIC stated in its January 11, 2021 letter – quite clearly – entirely different points:

- "Based on all information available to AGLIC to date, substantially all of the damages incurred by Steward on June 28, 2020 are subject to the Flood sublimit contained in the Policy."

- "In addition to the fact that total claim amounts sought by Steward are substantially beyond covered losses, Steward has not identified a basis for claiming substantial outside of the applicable Flood sublimit."

The fact that a sub-limit applies as a matter of Policy interpretation does not, of course, of itself indicate that the full sublimit must be tendered where assessed damages are less than that sublimit, as is the case here. It is, regrettably, Steward that is disingenuous for suggesting such a misinterpretation of the Policy.

Regarding medical supplies, AGLIC notes that shortly post-loss, various suppliers, including Stryker and Alcon, retrieved consignment supplies from Norwood Hospital given that (like many of Steward's supplies) they were not damaged by the flood event. AGLIC of course does not suggest that Steward ought to use "compromised" supplies. Steward made no effort to mitigate damage to the medical supplies or to identify and separate any supplies that were not damaged by the June 28, 2020 loss.

Steward's February 5, 2021 letter notes a "robust monitoring" program of building temperature and humidity. Monitoring is beside the point. The issue is that Steward allowed undamaged supplies and equipment to remain exposed, potentially causing damage unrelated to the loss.

C.   Response to MPT-Related Claim Points in February 5, 2021 Letter

Beginning near the bottom of page two, and continuing to page three, Steward's letter delves into statements concerning the building which is MPT's claim. MPT's insurer will address those points, however, AGLIC notes that many of the "conclusions" of damage to building equipment stated by the consultants listed in Steward's letter are not supported by any testing. They rely entirely on a so-called "visual inspection." Actual testing of equipment – the process followed by MPT's insurer – reveals a very different conclusion: Much of the equipment at the Norwood Hospital operates the same as it did prior to the flood event.

Again, Steward (and MPT) insist on describing as "devastating" results of actual testing that show building systems and equipment functioning without damage, that is, they are the same as they were prior the flood event. Where the flood damaged equipment, MPT's insurer has acknowledged and accepted that damage and made advances accordingly. Where testing shows that the flood did not damage equipment, it is not accepted as damaged. Merely labeling claimed damage as "devastating" and relying on "visual inspections" does not alter the actual test results that show no damage.

March 5, 2021
Page 6

Steward (and MPT) continue to make reference to "building codes" but do so without reference to the applicable Policy provisions which (among all other terms, limits, and conditions) require consideration of the minimum requirements of applicable code. Steward (and MPT) have not demonstrated any effort to comply with that Policy requirement, among others.

Steward's letter concludes with a listing of detrimental impacts on the local community from the damage to the Norwood Hospital. It is without question that a re-opened Norwood Hospital would benefit the community. AGLIC, therefore, has advanced to Steward tens of millions of dollars including time element loss through the present. Despite this, Steward (and MPT) have not moved forward with making needed repairs, purchasing equipment, repairing roofs and the like. AGLIC is adjusting in good faith and making advances as supported. We can only encourage Steward (and MPT) to move forward with returning Norwood Hospital to operation.

## II.    Further Advance

As noted above, AGLIC previously advanced Steward $32 million. Despite the defects with the Interim Proof of Loss and Steward's continuing failure to cooperate with AGLIC, AGLIC will now advance a further $31,286,098.72 (again based on AGLIC's own measurement of the loss) bringing the total advances to date to $63,2286,098.72.

It is AGLIC's sincere hope that the additional advance being provided to Steward at this time signals to Steward AGLIC's ongoing commitment to working cooperatively with Steward to move the adjustment forward in good faith and achieve a resolution of Steward's claim that is consistent with the Policy's coverage.

Please be advised upon behalf of American Guarantee and Liability Insurance Company that anything done in connection with the claimed loss including any investigation into the cause or amount of loss or other matters relating thereto shall not act to waive, invalidate, forfeit, or modify any of their rights under the terms and conditions of the above numbered policy, and that American Guarantee and Liability Insurance Company reserves the right, if its investigation warrants, to claim that the loss asserted by you is not, or may not be, within the coverage of the involved policy.

Under such conditions, this letter is to make clear that any acts of investigation that may be performed are done without prejudice to any defense or rights, which American Guarantee and Liability Insurance Company may have, and without waiver of any of the terms, conditions, or provisions of the policy that you hold or applicable law.

Sincerely,

*[signature]*

Mark A. Graves, AIC, CPCU, AIC-M, RPA, PCLS
AVP, Executive General Adjuster
American Guarantee and Liability Insurance Company

CONFIDENTIAL                                                                                                                                                       ZUR0081203

cc:  Robert Gendron (Via email only)
     Steward Health Care System LLC

     Nathalie Hibble (Via email only)
     Steward Health Care System LLC

     Michael Crowley (Via email only)
     Steward Health Care System LLC

     Scott Kenyon (Via email only)
     Steward Health Care System LLC

     Ron Papa (Via email only)
     National Fire Adjustment

     Steven Richards (via email only)
     Optisure Risk Partners

     Sarah Finnegan (via email only)
     Optisure Risk Partners

CONFIDENTIAL

ZUR0081204