UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Steward Health Care System LLC,<br><br>   Plaintiff,<br><br>  v.<br><br>American Guarantee and Liability Insurance Company and Zurich American Insurance Company,<br><br>   Defendants. | Civil Action No. 1:21-cv-11902 |

**STEWARD HEALTH CARE SYSTEM LLC'S OPPOSITION TO
DEFENDANTS' MOTION TO COMPEL DISCOVERY AND EXTEND DEADLINES**
(L.R. 7.1(d) Oral Argument Requested)

  Steward Health Care System LLC ("Steward") respectfully submits this opposition to Defendants American Guarantee and Liability Insurance Company's ("AGLIC") and Zurich American Insurance Company's ("Zurich") (collectively, "Defendants") Motion to Compel Discovery and Extend Deadlines [ECF No. 126] (the "Motion").

**I. Introduction**

  Defendants' Motion represents yet another transparent attempt to extend the scheduling order—marking the fourth such request[1] in less than two months—under the guise of purported discovery deficiencies that are entirely of their own making. The Court should deny the Motion.

  When the discovery stay was lifted in January, Steward did what any rational litigant would do: it sought to confer promptly on custodians and search parameters. The logic is obvious: searching electronically stored information, particularly when it implicates privileged communications and protected health information, is a time-consuming and resource-intensive

---

[1] *See* ECF Nos. 84, 91 and 103.

task, and diverts valuable resources away from more substantive tasks, particularly in cases on a compressed schedule, like this one. Under these circumstances, any responsible party would want clarity at the outset. Defendants, however, rejected Steward's proposal out of hand. Their position was astonishing: the parties should not confer about custodians until *after* Steward had produced its documents. *See* **Exhibit A** ("[W]e can't confer [] until after we see both what parameters were used by Steward, and also review the documents that are produced by Steward.").

Predictably, the strategy has now come full circle. With the discovery deadline looming, Defendants cry foul—objecting to the scope of Steward's collection and demanding that ***ten new*** custodians be added. *See Motion* at 10, ¶ 18. That request—raised for the first time months after it could have been responsibly addressed—is not an effort to obtain necessary discovery. It is a thinly veiled attempt to create the appearance of a dispute and justify yet another extension request. But Steward made every effort to engage in February. Defendants refused. They cannot now complain about the consequences of their own obstinacy.

Exposing the weaknesses in Defendants' position is their false claim that Steward only searched "five *non-employees* who were *never employed by Steward*" (emphasis in original) and that "[i]t is unclear at this juncture what the relationship was between CREF and Steward[.]" *Motion* at 1; 4 n. 2.[2] That contention is not only inaccurate—it is disingenuous. Defendants themselves allocated half their permitted depositions to the very custodians Steward searched.[3] Steward has repeatedly made clear that these individuals were integral to the claim adjustment

---

[2] Exhibit G attached to Defendants' Motion shows that Michael Crowley, Robert Gendron and Scott Kenyon of CREF all utilized @steward.org email addresses.

[3] Scott Kenyon, David Soucy, Michael Crowley, Chris Kidney, and Robert Gendron.

process, and Defendants have long understood their connection to Steward. *See, e.g.*, Affidavit of Chris Kidney, ECF No. 26-1 ¶¶ 1–2 ("I am employed by [CREF], who is contracted with [Steward]… as Steward's Director – Emergency Project Management.").[4] Similarly, in his Examination Under Oath, David Soucy testified that he is employed by CREF. **Exhibit B** at 10:8–10; 11:2–6; 29:17–23. Defendants' newfound ignorance is contrived.

Steward incorporates by reference its prior briefing and supporting affidavit submitted in opposition to Defendants' prior motions to extend the scheduling order. ECF Nos. 85, 107. Steward has detailed the history of this case, and the prejudice Steward and its creditors will suffer from any further delay. ECF No. 85. The prompt resolution of this insurance coverage dispute is a critical component of Steward's pending Chapter 11 plan, currently before the United States Bankruptcy Court for the Southern District of Texas.[5] Any delay of the trial will inflict tangible financial harm, including to the nearly 900 Massachusetts-based creditors and service providers who stand to recover less from Steward's estate if this litigation is not resolved on schedule. ECF No. 85-1, ¶ 14.

As previously reiterated, Steward is ***not*** opposed to a modest and targeted adjustment of certain interim deadlines. For example, Steward does not object to an extension of the fact discovery and initial expert disclosure deadlines, to August 10 and August 24, 2025, respectively. What Steward opposes is a postponement of the January 2026 trial. Defendants' failure to act

---

[4] Filed in this matter on April 15, 2022.

[5] Following a hearing on May 29, 2025, the Bankruptcy court approved Steward's proposed form of disclosure statement to solicit votes from all creditors in regard to Steward's proposed Chapter 11 Plan. On June 1, 2025, Steward filed the solicitation version of the Disclosure Statement and related materials to be sent to stakeholders for voting, signaling that the case has entered the plan confirmation phase. *See* Bankruptcy case, ECF No. 5028.

diligently, and this case, to meet and confer regarding custodians four months ago, does not entitle them to strategic delay.

For these reasons and those set forth below, Steward respectfully requests that the Court deny Defendants' Motion and, at a minimum, not extend the trial date.

## II.     Relevant Background

Steward collected documents from five custodians[6] covering the period from January 1, 2019 through December 31, 2024. These individuals were primarily responsible for adjusting Steward's insurance claim after Norwood Hospital was destroyed on June 28, 2020. Multiple search terms were applied, resulting in the collection of over 300,000 documents, which Steward then reviewed—at significant expense—using at times a team of twenty contract attorneys. Between April 9, 2025 and June 6, 2025, Steward made nine rolling productions totaling more than 137,988 pages of responsive material. These documents span the full range of requests made by Defendants and reflect Steward's diligent effort to comply with its discovery obligations.

## III.    Argument

### A. *Defendants' Untimely and Overbroad Discovery Demands Are Not Proportional to the Needs of the Case*

Defendants acknowledge they "declined" to negotiate custodians with Steward four months ago. *Motion* at 11, ¶ 19. Having done so, they cannot now be heard to complain about the scope of Steward's custodial search. Yet, less than one month before the close of discovery, Defendants demand that Steward search the email inboxes of ten additional custodians—a request that is neither timely nor proportionate. *See* Fed. R. Civ. P. 26(b)(1) ("[p]arties may

---

[6] *See* footnote 3.

4

obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense **and proportional** to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.") (emphasis added). Here, even setting aside the substantial burden and cost of processing and reviewing this new tranche of custodial data, Defendants' demand fails the proportionality test. Therefore, the Court should deny Defendants' motion to compel Steward to undertake a burdensome search of ten additional custodians at this late stage.

Separately, Defendants seek production of irrelevant financial documents under the guise of probing Steward's business interruption claim. That claim turns on one issue: the period of time it reasonable should have taken to bring Norwood Hospital back to its pre-loss condition. During the claim adjustment process, Defendants retained forensic accountants—Matson, Driscoll & Damico LLP ("MDD")—to evaluate Steward's business interruption losses through July 15, 2022. ECF No. 61-6, p. 4; ECF No. 120-1.[7] MDD relied on financial data Steward supplied at the time and, based on those materials, Defendants paid over $90 million on the claim. Steward has since produced the very same, but more recent source data supporting its calculations. **Exhibit C**. Defendants have not shown what additional data they need, why the materials already provided are insufficient, or how any newly requested financial records are

---

[7] Notably, MDD concedes it has access to the relevant financial information ("we projected loss period results based on the performance of the local Steward affiliates whose pre-loss revenues corelated **with the patient revenue at the loss location**… We performed a regression analysis of Norwood Hospital's inpatient and outpatient revenues[.]" ECF No. 120-1, p. 1 (emphasis added).

relevant to their defenses. Their assertion that they require additional financial discovery is both conclusory and implausible.

Defendants also claim a need to investigate "Steward's plans for the hospital prior to the flood." *Motion* at 13. But their vague suggestion that pre-loss planning is somehow relevant misses the mark. The question in this case is not what Steward may have contemplated *before* the storm, but what it intended—and reasonably endeavored—to do *after* Norwood Hospital was devastated. That intent was unequivocal: to rebuild and reopen the hospital.

### B. Defendants' Delay in Raising Custodian Issues and Renewed Bid to Extend the Schedule Prejudice Steward's Creditors

Steward cannot keep repeating the same argument, but the four-month extension of all scheduling order deadlines requested by Defendants is unworkable. Defendants have had ample time to prepare their case. They began adjusting the Norwood Hospital claim five years ago, in June 2020. Yet they continue to plead for more time to develop their defenses in a straightforward case. Steward has previously relayed to the Court that any further delay in the resolution of this matter will inflict tangible financial harm to those other than Steward, including to the nearly 900 Massachusetts-based creditors and service providers who stand to recover less from Steward's estate if this litigation is not resolved on schedule. ECF No. 85-1, ¶ 14; ECF No. 107.

### C. There is No Need to Extend the Scheduling Order Deadlines by Four Months

Nothing material has changed since the Court rejected Defendants' prior motions to extend the scheduling order. Nor has anything changed since Defendants themselves proposed a schedule in December 2024 that closely resembles the one now in effect. Their latest motion is not a good-faith effort to manage case complexity—it is a transparent effort to stall to force

Steward's capitulation. The Court should not endorse such tactics and hold Defendants to the current trial date.

## IV.  Conclusion

For the foregoing reasons and those set forth in Steward's prior submissions (ECF Nos. 85 and 107), Steward Health Care System LLC respectfully requests that the Court deny Defendants' Motion to Compel Discovery and Extend Deadlines [ECF No. 126].

## REQUEST FOR ORAL ARGUMENT

Pursuant to L.R. 7.1(d), Steward Health Care System LLC respectfully requests an oral argument on the issues presented in Defendants' Motion and Steward Health Care System LLC's opposition.

STEWARD HEALTH CARE SYSTEM LLC,

By their Attorneys,

*/s/ Seth J. Robbins*
Howard M. Cooper (BBO No. 543842)
Seth J. Robbins (BBO No. 655146)
William E. Gildea (BBO No. 699112)
TODD & WELD LLP
One Federal Street, 27th Floor
Boston, MA 02110
(617) 720-2626
hcooper@toddweld.com
srobbins@toddweld.com
wgildea@toddweld.com

Dated: June 25, 2025

## CERTIFICATE OF SERVICE

I, William E. Gildea, hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and that paper copies will be sent to those indicated as non-registered participants on June 25, 2025.

*/s/ William E. Gildea*
William E. Gildea

7