UNITED STATE DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

STEWARD HEALTH CARE SYSTEM
LLC,

          Plaintiff,

          v.

AMERICAN GUARANTEE AND
LIABILITY INSURANCE COMPANY and
ZURICH AMERICAN INSURANCE
COMPANY,

          Defendants.

Civil Action No. 1:21-cv-11902 – PBS

**DEFENDANTS' RESPONSE IN OPPOSITION TO
STEWARD'S MOTION TO COMPEL DISCOVERY**

Steward Health Care System LLC ("Steward")—a bankrupt hospital operations company

backed by private equity firms that is no longer licensed to operate in Massachusetts—received

nearly $100 million in coverage paid out by its insurer, American Guarantee and Liability

Insurance Company ("American Guarantee") for losses arising from a storm that flooded Norwood

Hospital on June 28, 2020. That amount is divided between two types of loss for which Steward

had coverage: (1) "actual cash value" paid out for damage to business personal property (e.g.,

medical equipment and supplies) that Steward had in the Hospital, and (2) over $91 million in

business interruption losses arising from Steward's inability to operate due to damage to the

Hospital.

Zurich American Insurance Company ("Zurich")—a separate entity that owed Steward no

contractual obligations—has been named in this suit because Zurich, not American Guarantee,

insured the Hospital building. But that policy was issued by Zurich to MPT,[1] the entity that owned the Hospital building and from whom Steward leased space to operate its business. Nevertheless, Steward alleges that because the two claims were adjusted simultaneously, Zurich's refusal to agree with MPT's assessment that the Norwood Hospital should be demolished and replaced by an entire new facility interfered with American Guarantee's adjustment and payment of Steward's business interruption claim. Zurich, in consultation with three construction experts, assessed that the damage to the Hospital could be remediated without demolishing the Hospital, and that the construction could be completed by July 15, 2022, 25 months from the date of the loss.

American Guarantee agreed with Zurich's experts, concluded based upon its policy language that Steward was entitled to recover business losses up until July 15, 2022, and paid out over $91 million to reimburse Steward. In this lawsuit, Steward claims that it is entitled to more because the Norwood Hospital was never rebuilt (largely due to MPT's refusal to undertake any repairs of the property). Steward accordingly argues that the loss period should stretch until September 30, 2024, the date that Steward's license to operate within the state of Massachusetts was revoked.

At the end of the day, resolution of Steward's claims turns on the following issues:

- Whether Steward's statement of its losses, including its claimed monthly business interruption damages were accurate;

- Whether American Guarantee diligently and in good faith determined that July 15, 2022, was the proper cut off for Steward's business interruption damage (based upon the date by which the Hospital could have been repaired) or whether instead Steward is entitled to recover business losses up to September 30, 2024 (the final day Steward operated any Massachusetts facilities before its license to do so was revoked);

---

[1] The separate claims between Zurich and MPT have been resolved.

- Whether American Guarantee's payment of Actual Cash Value for Steward's business personal property (none of which was replaced by Steward) was consistent with its contractual obligations under its policy; and

- Whether Zurich's disputes with MPT regarding whether the Hospital should have been repaired or rebuilt rise to the level of a tortious interference with Steward's contractual rights under the American Guarantee policy.

This case is not about whether American Guarantee or Zurich are guilty of an amorphous allegation of "bad faith."[2] Nevertheless, Steward's Motion to Compel (ECF Nos. 122 ("Mot."), 123 ("Mem.")) ignores all this detail in attempting to justify the vague, irrelevant, unduly burdensome, and wide-ranging discovery that it has served on American Guarantee and Zurich. Under Rule 26(b)(1), discovery is limited only to that which is "relevant to any party's claim or defense and proportional to the needs of the case." Because the evidence sought by Steward goes well beyond those boundaries, the Court should deny Steward's Motion.

**ARGUMENT**

## I.    The Court Should Deny Steward's Request to Compel Production of Documents.

Steward has moved to compel production by both Zurich and American Guarantee of several sweeping categories of documents and information without meeting its burden to explain the relevance of that information to its claims. *See Close v. Account Resolution Servs.*, 557 F.Supp.3d 247, 250 (D. Mass. 2021) ("The party seeking an order compelling discovery response over the opponent's objection bears the initial burden of showing that the discovery requested is

---

[2] As to American Guarantee, the Second Amended Complaint asserts claims for declaratory judgment (Count I), breach of contract (Count II), and breach of the covenant of good faith and fair dealing (Count III). As to Zurich, the claims asserted are tortious interference with contract (Count IV). And as to both Defendants, Steward asserts a claim for violation G.L. c. 93A, §11 (Count V) which prohibits deceptive acts or practices in the engagement of commerce in Massachusetts, including deceptive practices in the business of insurance, *see* G.L. c. 176D, § 3(9)(d).

relevant."). Because the information sought is irrelevant and beyond the scope of permissible discovery under Rule 26(b)(1), the Court should deny Steward's motion.

**A.      Evidence of Zurich and American Guarantee's Reserves and Reinsurance Information is Irrelevant to Steward's Claims.**

As a preliminary point, Zurich and American Guarantee cannot parse what exactly Steward seeks to compel regarding reserves and reinsurance information. First, Steward's motion refers to compelling production of "documents concerning reserves." Mem. at 14. Then, it objects to Zurich and American Guarantee's redaction of "loss valuation, reserve figures, and settlement authority" from unspecified documents. *Id.* at 14. Then, Steward asks for an order compelling production of "**all** documents concerning reserves, reinsurance, supplemental insurance, underwriting, and related subjects." *Id*. at 15 (emphasis in original). And finally, Steward asks for an order compelling Zurich and American Guarantee to "produce all responsive documents, without the improper and unilateral limitations and redactions they have thus far imposed." *Id*. at 16. All the while, Steward's Motion (as well as its discovery correspondence) identifies no specific request for production that Zurich or American Guarantee purportedly failed to satisfy, and attaches no document that Zurich or American Guarantee allegedly improperly redacted. The lack of specificity underscores the prematurity of Steward's Motion and its failure to adequately meet-and-confer before seeking the involvement of the Court. The Court should not entertain, let alone grant, a motion to compel when Steward cannot adequately specify what it seeks to compel. L.R. 37.1(b)(4) (any motion to compel "shall state with particularity … [e]ach … request for production . . . raising an issue to be decided by the court, and the response thereto"); *see also* Fed. R. Civ. P. 34(b)(1)(A) (a request for production of documents "must describe with reasonable particularity each item or categories of items to be inspected").

4

And regardless of Steward's failure to specify the discovery at issue, they have failed to establish that they are entitled to the discovery that they seek. Steward argues that "Defendants" have improperly withheld and redacted documents regarding their reserves and reinsurance. Mem. at 14. Throughout its Motion Steward lumps together Zurich and American Guarantee and collectively argues that "Defendants" should be compelled to produce information because the information is "critical" and "particularly relevant" in "bad-faith insurance litigation." *Id.* at 14–15. But that is not how discovery works. The scope of discovery "is not unlimited," and "[t]he court is required to restrict discovery if it determines the request to be . . . outside the scope of discovery permitted by Rule 26(b)(1)." *Cumby v. Am. Med. Resp. Inc.*, No. 3:18-CV-30050-MGM, 2019 WL 1118103, at *3 (D. Mass. March 11, 2019). "Discovery is outside the scope of Rule 26(b)(1) if it is . . . not relevant to the claim or defense of any party, or disproportional to the needs of the case." *Id.* Steward offers no real explanation why either Zurich or American Guarantee's reserves and reinsurance are relevant to its claims. The Court should therefore deny Steward's motion, as it exceeds the scope of permissible discovery under Rule 26(b)(1). *Bonner v. Triple-S Management Corp.*, 68 F.4th 677, 685 (1st Cir. 2023) (affirming denial of motion to compel were plaintiff offered no explanation as to why requests were relevant to claims or defenses).

1. **Steward Fails to Explain why Reserves—An Insurer's Best Estimate of the Maximum Potential Liability on a Claim—are Relevant to its Claims.**

When attempting to evaluate the potential loss that could be associated with a claim, insurance companies establish "reserves," which are funds set aside to cover future financial obligations. *Signature Dev. Cos., Inc. v. Royal Ins. Co. of Am.*, 230 F.3d 1215, 1223–24 (10th Cir. 2000) (citing *Black's Law Dictionary* 1309 (7th ed. 1999)). "Defined in its simplest terms, a reserve is an insurer's own estimate of the amount which the insurer could be required to pay on a given claim." *Andrew Robinson Int'l, Inc. v. Hartford Fire Ins. Co.*, No. 07-10930-NMG, 2009

WL 10692782, at *4 (D. Mass. July 1, 2009) (internal citations and quotations omitted). Reserves are subject to statutory oversight in Massachusetts, but do not "automatically reflect an assessment of liability." *Id.* (citing M.G.L. c. 175, §206C(t); *Fidelity & Deposit Co. of Md. v. McCulloch*, 168 F.R.D. 516, 525 (E.D. Pa. 1996) (noting the "tenuous link between reserves and actual liability")). Instead, they are an "accounting technique" designed to estimate "*the maximum potential liability* on a claim." *Barr Co. v. Safeco Ins. Co.*, No. 83 C 2711, 1988 WL 64558, at *6 (N.D. Ill. June 15, 1988) (emphasis added); *see also UNUM Life Ins. Co. v. U.S.*, 897 F.2d 599, 601 (1st Cir. 1990) (noting that often times an insurance "company (perhaps following state regulators' properly conservative accounting practices) [will] put aside (as a reserve) considerably more money to pay future benefits than it actually needs.").

Steward's dispute with American Guarantee largely turns on the question of whether American Guarantee diligently and in good faith adjusted Steward's claim, and whether American Guarantee sufficiently reimbursed Steward for the interruption of its hospital business and business personal property loss. Indeed, American Guarantee, relying on the opinions of multiple construction professionals, determined that that the Hospital could have been repaired by July 15, 2022. Based upon that determination, American Guarantee paid Steward over $91 million to cover Steward's gross earnings business interruption loss during that time. Steward challenges this, arguing instead that it is entitled to business interruption loss until September 30, 2024. The extent to which American Guarantee set a reserve and the amount of that reserve does not bear on either of these questions, and Steward doesn't attempt to argue that it does.

Instead, Steward asserts that American Guarantee's reserves are relevant to show that it acted "with financial self-interest and improperly underpaid [Steward's] loss." Mem. at 15. But whether American Guarantee "underpaid" Steward's loss is a coverage question: was Steward

entitled to receive more or less than the nearly $100 million that it got under the terms of its policy? Courts are largely in agreement that "[n]either the existence nor amount of a reserve fund has any bearing on the legal question of coverage, which is determined by the language of the insurance contract." *United States Fire Ins. Co. v. City of Warren*, No. 2:10–CV–13128, 2012 WL 1454008, *10 (E.D. Mich. Apr. 26, 2012); *Plunkett v. Trustmark Ins. Co.*, No. 07-62-DLB, 2009 WL 10676035, at *1–2 (E.D. Ky. Jan 9, 2009) ("[R]equests for production of reserve information are not reasonably calculated to lead to the discovery of admissible evidence concerning insurance policy interpretation.")

Reserves are similarly irrelevant to the question of whether American Guarantee acted "with financial self-interest" in failing to diligently adjust Steward's claim. Instead, in first party claims where whether an insurer acted in good faith is at issue, courts recognize that reserves are not relevant. In these types of cases, "the issues are whether the claimed loss is covered and whether the insurer acted in good faith in investigating the loss and in denying coverage." *Am. Protection Ins. Co. v. Helm Concentrates, Inc.*, 140 F.R.D. 448, 449–450 (E.D. Ca. 1991). "Potential liability or the insured estimation as to its potential liability is marginally relevant at best" to that determination. *Id.*; *see also Savoy v. Richard A. Carrier Trucking, Inc.*, 176 F.R.D. 10, 12 (D. Mass. 1997) (refusing to allow discovery of insurer's reserve in first-party bad faith case); *Fidelity*, 168 F.R.D. at 525 (denying motion to compel production of reserve information because information would not bring insured "any closer to proving bad faith" on insurer's part). Because this dispute is the same type of case, the Court should similarly find that American Guarantee's reserves are irrelevant.

The relevance of Zurich's reserves is even less. ***It is undisputed that Zurich did not insure Steward.*** Mot. at 3 ("Zurich insured MPT, and American Guarantee insured Steward.") Therefore,

any reserves that Zurich set in relation to the Norwood Hospital are limited to what it expected to pay for MPT's loss. How Zurich valued MPT's loss has no bearing on whether Zurich tortiously interfered with Steward's contractual relationship or otherwise impeded American Guarantee from adjusting Steward's claim diligently and in good faith. Steward cites no case that holds otherwise.

Instead, Steward cites several distinguishable cases where Zurich's reserve information was found to be discoverable. Mem. at 14–15. Whether reserves are discoverable depends on the particular facts of a case. *Andrew Robinson*, 2009 WL 10692782 at *4 ("The discoverability [of reserves information] also turns upon the factual circumstances of each case"). None of those cases stand for the proposition that an insurer's reserves are relevant to a tortious interference with contract claim brought against it by an uninsured party.

Simply put, reserves are irrelevant, and Steward has not met its burden to establish otherwise. The Court should deny any request to compel production of American Guarantee and Zurich's reserve information.

### 2.    *Steward Fails to Explain Why Defendants' Reinsurance is Relevant.*

Steward's demand for information regarding reinsurance obtained by Zurich or American Guarantee is similarly irrelevant. Steward argues as though reinsurance agreements are indistinguishable from any other policy of insurance, and that discovery into reinsurance would somehow shed light on Steward's "bad faith" claims. Not so. Reinsurance agreements are not "insurance" as Steward suggests.    Instead, reinsurance is "based solely on business considerations," and is "irrelevant" to insured-insurer bad faith disputes. *Flintkote Co. v. Gen. Accident Assur. Co. of Canada*, 2009 WL 1457974, at *5 (N.D. Cal. May 26, 2009) (finding reinsurance evidence irrelevant despite plaintiff's argument that it is "relevant to determining the 'state of mind' or actual knowledge of the insurer" with respect to bad faith claim) (citing *Leksi, Inc. v. Federal Ins. Co.*, 129 F.R.D. 99, 106 (D.N.J. 1989)); *Great Lakes Dredge & Dock Co. v.*

*Comm. Union Assur. Co.*, 159 F.R.D. 502, 504 (N.D. Ill. 1995) (holding "the probative value of [reinsurance] information is little" despite plaintiff's argument that "reinsurance may show [defendant's] subjective belief or intention … [or] might suggest bad faith").

Steward makes no Rule 26(b)(1) argument to the contrary. The only explanation that Steward offers as to why documents "concerning" reinsurance are relevant and discoverable is an argument that insurance agreements are generally subject to disclosure under Rule 26(a)(1)(A)(iv). Mem. at 14. But Rule 26(a)(1) and the case law that Steward relies upon are inapposite, as they concern disclosure of insurance that would be used "to satisfy part or all of a judgment which may be entered in [this] action or to indemnify or reimburse for payments made to satisfy the judgment." *Id.* The discovery Steward seeks in its motion relates not to the ability of either Defendant to satisfy any judgment that Steward might obtain, and thus Rule 26(a)(1) is not implicated.

## II.    The Court Should Deny Steward's Motion to Compel Requests for Evidence of the Handling of Other Claims.

Steward also seeks to compel production of documents in response to Steward's document request nos. 22, 23, and 24, which it characterizes as seeking information concerning "whether Steward was treated disparately from similarly situated insureds." Mem. at 15. The requests served on Zurich and American Guarantee are the same:

> Request No. 22: Produce all documents evidencing procedures, policies, manuals, practices, and guidance for Zurich employees, agents or adjusters (including Sedgwick) concerning the proper evaluation of claimed losses and/or requests for coverage under policies of property insurance issued by Zurich or AGLIC that utilize some or all of the same policy forms and endorsements that are included in the Policy.[3]

---

[3] In both sets of requests, the "Policy" as defined is "policy number ZMD1393138-00, issued by American Guarantee to Steward for the Policy Period November 1, 2019 to November 1, 2020." Steward Mot. Ex. A at 15 and Ex. B at 15.

Request No. 23: Produce all documents concerning the wording of Sections 4.03.01.01. 5.03.03 or 6.23 of the Policy, including, without limitation, documents prepared or utilized by Zurich or AGLIC addressing the manner in which Zurich or AGLIC interprets and/or applies such wording in its policies of insurance.

Request No. 24: Produce any contract, communication, or document setting forth the terms of the agreement between Zurich or AGLIC, on one hand, and any other entity acting on AGLIC or Zurich's behalf, on the other, in connection with the adjustment or Investigation of Steward's or MPT's losses caused by the Storm, including, without limitation, Sedgwick and any of AGLIC or Zurich's Consultants.

Steward Mot. Ex. A at 19–20 and B at 19–20. But then in the Motion, Steward asks for the Court to compel production of "all responsive documents concerning comparable policies and claims, as applicable." Mot. at 16. Zurich and American Guarantee are left to guess at what exactly Steward is seeking to compel—the information requested by the Requests or "all responsive documents concerning comparable policies and claims as applicable." Again, the Court should not entertain, let alone grant, a motion to compel when Steward cannot adequately specify what it seeks to compel. L.R. 37.1(b)(4); Fed. R. Civ. P. 34(b)(1)(A).

In any event, Steward's request for documents concerning American Guarantee's "interpretation and application of identical or substantially similar policy language in connection with other claims" is irrelevant. This case is about whether American Guarantee properly calculated Steward's business losses after the flood event. The damages involved medical machinery and supplies (which American Guarantee valued and paid Steward for) and for Steward's business interruption. What matters here is whether American Guarantee acted with diligence in adjusting the claim, and whether its adjustment of the claim constituted a breach of the policy issued to Steward. How American Guarantee may have handled other property loss cases—even flood cases—has no bearing on this case. *See AKH Co., Inc. v. Universal Underwriters Ins. Co.*, 300 F.R.D. 684, 690–91 (D. Kansas 2014) (finding requests seeking documents regarding defendant insurance company had breached its duties under other policies

were overbroad and unduly burdensome because information regarding other policies "is irrelevant to whether or not Defendant breached the specific contract at issue" in present case); *Fidelity*, 168 F.R.D. at 526 (discovery of other actions which concerned completely different facts and circumstances "amount[ed] to nothing than [a] 'fishing expedition'"); *First Horizon Nat'l Corp. v. Houston Cas. Co.*, 2016 WL 5869580, at *8 (W.D. Tenn. Oct. 5, 2016) (insurer's conduct with regard to other insurance claims was "of no consequence to the instant case"); *Retail Ventures, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, No. CIV.A. 2:06-CV-443, 2007 WL 3376831 (S.D. Ochio Nov. 8, 2007)(discovery requests in a bad faith action regarding the defendant's treatment of similar claims of other policyholders overbroad, unduly burdensome, and irrelevant).

As for Zurich, information regarding how ***Zurich*** handled other claims is completely irrelevant. Mot. at 3 ("Zurich insured MPT, and American Guarantee insured Steward."). Steward asserts no theory of relevance as to Zurich, whose insurance coverage is not at issue in this case. Therefore, it has not met its burden to establish relevance.

And regardless of relevance, the burden of identifying, collecting, reviewing, and producing documents responsive to these requests requires denial of Steward's motion to compel. As detailed in the declaration of Linda Halpin,[4] identifying documents responsive to these requests would require a manual claim-by-claim search and review of thousands of files, many of which are extremely voluminous, in order to identify those policies and claims that could potentially be considered "comparable" to Steward's – an inherently vague criteria that would add to the difficulty of the search. Conducting such review would be not only time consuming, but also disruptive to the operations of American Guarantee and Zurich, as it would require the allocation of employee resources to search the relevant company systems for responsive materials. Given the

---

[4] The Declaration of Linda Halpin will be filed separately the day following filing of this Opposition.

marginal relevance of such materials to Steward's claims, proportionality considerations weigh against their production.  *See* Rule 26(b)(1).

## III. The Court Should Deny Steward's Motion to Compel Further Interrogatory Answers.

Steward represents to the Court that Defendants "refused to answer a single interrogatory substantively" and "evad[ed] direct questions" and even "delay[ed]" responding to Steward's interrogatories.  Mem. at 2, 10. But none of Steward's sweeping accusations are accurate. The parties simultaneously exchanged responses to written discovery on a set date, by agreement.[5] Defendants' responses to Steward's interrogatories are substantively appropriate. Many of Steward's Interrogatories are substantially overbroad and call for extended narratives or prematurely ask Defendants to state the basis for issues and defenses that remain the subject of ongoing discovery. As to interrogatories directed to Zurich, most all of Steward's interrogatories fundamentally misapprehend that American Guarantee – not Zurich – insured Steward and adjusted Steward's claim. As shown below, Defendants provided meaningful responses to Steward's interrogatories subject to valid objections that Defendants properly raised:

### 1. American Guarantee's Interrogatory Answers are Substantive, Proper and Complete.

Steward's accusation that American Guarantee's interrogatory responses are "evasive" or lacking in substance is meritless. Steward's memorandum cites three examples but offers no explanation as to why it asserts that these answers are supposedly deficient. Indeed, the three examples Steward highlights not only fail to support Steward's assertion, they refute it because Defendants' responses are appropriate.

---

[5] The parties mutually agreed to exchange responses to written discovery on March 10, 2025.  In other words, Steward served its responses to Defendants' first sets of Requests for Production and Interrogatories on the same day that Steward says reflects "delay" on the part of Defendants.

Steward claims that American Guarantee failed to adequately respond to Interrogatory No. 6, which concerns American Guarantee's determination that the Period of Liability for Steward's business income loss ended on July 15, 2022. According to Steward, American Guarantee offered only "boilerplate objections and vague references to 'qualified professionals,' without naming a single individual, document, or analysis." *Id*. at 10. That assertion is simply incorrect. American Guarantee's response specifically identify both professionals and documents that American Guarantee considered, including: (i) DBI Construction's scope of work outlining necessary repairs; (ii) Shawmut Design & Construction's construction schedule indicating that repairs could be completed by May 13, 2022; and (iii) Katie Twomey of J.S. Held, who reviewed Shawmut's scheduling assumptions. *See* Ex. F (ECF No. 123-6) to Mem. at 15 (Resp. to Int. No. 6). On its face, American Guarantee's response plainly sets forth the very information that Steward asserts is missing.

Steward then asserts that American Guarantee failed to respond adequately to Interrogatory No. 13, which broadly asked American Guarantee to set forth the ways in which Steward failed to cooperate in the investigation or settlement of its claim. In response, American Guarantee provided a detailed, multi-part answer identifying five separate and specific instances of non-cooperation, including: (i) Steward's failure to timely return Norwood Hospital to service; (ii) its submission of incomplete monthly business loss data; (iii) its unsupported assertion that its business personal property was a total loss; (iv) its failure to ensure that repairs were funded through insurance proceeds; and (v) its failure to substantiate various claim items, including incomplete repair estimates and the absence of any basis for its claimed "Building" and Extra Expense losses. *Id*. at 22 (Resp. to Int. No. 13). American Guarantee's response is sufficiently thorough and appropriate, particularly given the breadth of the interrogatory. *Cynosure, LLC v. Reveal Lasers LLC*, 708 F.

Supp. 3d 186, 190 (D. Mass. 2023) (noting that a broad interrogatory necessarily calls for a broad response). If Steward genuinely needs clarification or further detail regarding these examples of non-cooperation, the proper course is to seek that information during depositions.

The final interrogatory in this category complained of by Steward is Interrogatory No. 14, a contention interrogatory asking American Guarantee to identify the factual bases for each of its affirmative defenses. American Guarantee objected to the request as premature. *See* Ex. F (ECF No. 123-6) to Mem. at 23 (Resp. to Int. No. 14). Steward served an identical interrogatory on Zurich, which similarly objected. During the parties' recent meet and confer—and as Steward acknowledges—Zurich agreed to provide a supplemental response as discovery has progressed. Mem. at 12. While Interrogatory No. 14 directed to American Guarantee was not raised during that discussion, American Guarantee will also serve a supplemental response.

### 2.    *Both Parties Invoked Federal Rule of Civil Procedure 33(d) in Similar Manners.*

Steward also takes issue—briefly, in a footnote—with American Guarantee's invocation of its right under Rule 33(d) to respond to certain interrogatories by identifying business records from which the answers may be derived. Mem. at 11 n.8. Steward acknowledges that it has done the same. As Steward further concedes, American Guarantee proposed – prior to Steward filing its motion – that both parties agree on a reasonable approach and timeline for identifying key documents under Rule 33(d). *Id*. Rather than engage in that discussion, Steward moved unilaterally to compel American Guarantee's compliance, while declining to commit to completing the same itself.

This is not a genuine dispute. Defendants will supplement responses that invoke Federal Rule of Civil Procedure 33(d) – and Steward should do the same.

3.      *Steward Exceeded the Permissible Number of Interrogatories to American Guarantee.*

Under Rule 33(a)(1), Steward is limited each to "no more than 25 written interrogatories, including all discrete subparts." As the Advisory Committee Notes to the 1993 amendment explain, this limit cannot be circumvented by combining multiple questions into a single interrogatory: "[p]arties cannot evade this presumptive limitation through the device of joining as 'subparts' questions that seek information about discrete separate subjects."

Local Rule 26.1(c) reinforces this principle, stating that subparts which are not logical extensions of the main interrogatory, or which seek separate and distinct information, should be counted individually. Interrogatories that exceed this numerical cap need not be answered. *Traina v. Blanchard*, No. CIV.A. 97-348, 1998 WL 178762, at *4 (E.D. La. Apr. 15, 1998). When faced with excessive interrogatories, courts have made clear that a party may either seek a protective order or object to the surplus requests without answering them. *Capacchione v. Charlotte-Mecklenburg Schools*, 182 F.R.D. 486, 493 n.4 (W.D.N.C. 1998); *Superior Sales West, Inc. v. Gonzalez*, No. 19-CV-329-KC, 2020 WL 2761156 (W.D. Tex. 2020).

Although Steward's first set of interrogatories to American Guarantee is styled as containing fourteen interrogatories, four are properly considered as compound – Steward's First Set of Interrogatories comprises 24 separate questions when counted properly. American Guarantee specifically objected to the compound nature of these interrogatories because their subparts are not "logical extensions of the basic interrogatory" but instead constitute separate, distinct questions that must be counted individually.

Specifically, American Guarantee objected to and identified as compound the following Steward interrogatories:

- **Interrogatory No. 7** contains three interrogatories. First, it asks American Guarantee to identify all individuals who participated in the investigation and analysis of Steward's claim and to describe the role each played. Second, it separately requests that American Guarantee identify the actions it took in response to Steward's claim, including any investigation it conducted. Third, it asks American Guarantee to identify the procedures it used to determine whether coverage would be provided for the claimed losses. *See* Ex. F (ECF No. 123-6) to Mem. at 15.

- **Interrogatory No. 8** also contains three separate interrogatories. First, it asks American Guarantee to state in complete detail the nature and extent of damage to Steward's personal property and equipment. Second, it separately requests American Guarantee to state in complete detail the scope and cost of work required to repair, rebuild, or replace that property. Third, it asks American Guarantee to identify the total amount of Steward's personal property and equipment losses that American Guarantee contends is recoverable under the policy. *Id*. at 16.

- **Interrogatory No. 10** counts as at least two interrogatories. First, it asks American Guarantee to state in complete detail all state, federal, and local permits or approvals required to reopen Norwood Hospital, the time required to obtain each, and the basis for American Guarantee's response. Second, it separately requests that American Guarantee describe the prerequisites that must be satisfied before applying for or seeking each permit or approval. *Id*. at 18.

- **Interrogatory No. 14** comprises at least six interrogatories.  It asks American Guarantee to provide, for each of its six affirmative defenses, (a) the factual basis for the defense and (b) the identity of all individuals with knowledge of those facts,

including the specific facts and defenses about which each person has knowledge. *Id*. at 22.

In addition, the first interrogatory in Steward's second set, Interrogatory No. 15, counts as multiple interrogatories, as it seeks the nature and scope of services provided by multiple consultants, including JS Held, DBI Construction, Thornton Tomasetti, Shawmut Design and Construction, and Ruddy, Cassidy & Foster, LLC, including the specific purpose for which each consultant was retained, their respective areas of expertise, and the distinctions among the services each provided to American Guarantee and/or Zurich. *See* Ex. I (ECF No. 123-9) to Mem. at 10-11. American Guarantee responded as to one sub-part, thus answering 25 Steward interrogatories. *Id*. Accordingly, American Guarantee's objection to responding to any additional interrogatories is proper and should be upheld.

### 4. *Zurich's Interrogatory Responses are Proper Because Zurich Neither Issued the Policy nor Adjusted Steward's Claim.*

Steward devotes a portion of its memorandum to criticizing Zurich's interrogatory responses and broadly demands that Zurich be compelled to re-answer every interrogatory served upon it. Mem. at 13. Yet Steward identifies only a few specific interrogatories—in a footnote—for which it claims Zurich's responses are deficient. *Id*. at 13, n.12. Steward offers no meaningful explanation of how Zurich's answers are supposedly lacking. Steward fails to articulate any basis under the Rules for compelling further responses.

Zurich's answers to Steward's interrogatories are appropriate because American Guarantee – not Zurich – issued the policy at issue and American Guarantee adjusted Steward's claim. While certain information was shared between Zurich (which adjusted MPT's separate claim) and American Guarantee, the adjustments proceeded separately. Most of Steward's interrogatories

directed at Zurich ignore this, and consequently they defy a further response beyond that already provided, or were properly objected to by Zurich.

For example, Steward Interrogatory No. 7 asks Zurich to identify individuals involved in the investigation of Steward's claim. But American Guarantee investigated and adjusted Steward's claim. Interrogatory No. 8 seeks Zurich's position on the extent of damage to Steward's personal property and equipment; Interrogatory No. 10 asks Zurich about information regarding governmental permits required to reopen Norwood Hospital operations. In each instance, Zurich correctly explained that American Guarantee—not Zurich—adjusted the Steward Health claim. There is nothing more Zurich could provide, nor is anything more required. Interrogatory No. 2 asks Zurich for the identity of individuals involved in underwriting the policy at issue here – but American Guarantee issued the policy at issue to Steward. Interrogatory No. 3 requests a history of all insurance relationships between Zurich and Steward involving Norwood Hospital – again, American Guarantee insured Steward. Interrogatory No. 4 seeks information about the "derivation" of policy language. Steward offers no explanation as to how that information – even if directed to American Guarantee which issued the policy to Steward – could bear on the case at hand. These inquiries have no bearing on the actual dispute in this case.

In sum, Steward's criticisms of Zurich's interrogatory responses are unfounded. Zurich has responded fully and appropriately based on its limited role, and no further supplementation is warranted.

## REQUEST FOR ORAL ARGUMENT

Pursuant to Rule 7.1(d) of the Local Rules of the United States District Court for the District of Massachusetts, Defendants respectfully request oral argument on the present Motion.

Respectfully submitted,

 /s/ Jonathan D. Mutch
Jonathan D. Mutch, Esq. (BBO No. 634543)
Timothy Wenger (BBO No. 674087)
ROBINS KAPLAN LLP
800 Boylston Street, 25th Floor
Boston, MA 02199
Tel: (617) 267-2300
JMutch@RobinsKaplan.com
Dated:  June 25, 2025                  TWenger@RobinsKaplan.com

*Attorneys for Defendants American Guarantee and Liability Insurance Company and Zurich American Insurance Company*

## CERTIFICATE OF SERVICE

I, Jonathan D. Mutch, hereby certify that on this day, I electronically filed the within document with the Clerk of the Court using the CM/ECF system that will send notification of such filing(s) to all counsel of record. The document is available for viewing and downloading through the ECF system.

Dated: June 25, 2025                   */s/ Jonathan D. Mutch*
                                        Jonathan D. Mutch