UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Steward Health Care System LLC,<br><br>                       Plaintiff,<br><br>             v.<br><br>American Guarantee and Liability Insurance Company and Zurich American Insurance Company,<br><br>                       Defendants. | Civil Action No. 1:21-cv-11902 |

**PLAINTIFF'S OBJECTION TO DISCOVERY MASTER ORDER NO. 9 [ECF NO. 167]**

Pursuant to Fed. R. Civ. P. 53(f) and the Order Appointing the Honorable Faith S. Hochberg as Discovery Master (ECF No. 149) at § III, Plaintiff Steward Health Care System LLC[1] ("Steward") respectfully objects (the "Objection") to Discovery Master Order No. 9 (the "Order") (ECF No. 167).

The Order rests on a premise that cannot be reconciled with either the governing law or the factual record. In an insurance-indemnification action alleging bad faith, there is no category of discovery more central—or more routinely compelled—than the insurer's claim file. That file is the contemporaneous chronicle of what the insurer knew, when it knew it, and what it chose to do (or not do) in response. Steward has alleged, with substantial evidentiary support, that Defendants repeatedly violated their legal duties by refusing to pay Steward's claims as the policy requires, continuing their misconduct through today. This misconduct extends to their joint and concurrent

---

[1] Plaintiff's Motion to Substitute Mark Kronfeld, as Trustee of the SHC Creditor Litigation, filed on November 6, 2025 (ECF No. 165), is currently pending.

1

mishandling of the insurance claim filed by Steward's landlord, Medical Properties Trust, Inc. ("MPT"), which was only resolved in November 2024.

A crucial facet of Zurich's wrongdoing lies in its joint adjustment of Steward's and MPT's claims through the same adjuster, Mark Graves, acting for both Zurich and AGLIC. Delays in payment on both claims caused significant harm to Steward. As a result, Steward is entitled to full discovery regarding Zurich's handling of the MPT claim, including the circumstances surrounding its settlement months after Steward exited the Massachusetts market, and how that settlement influenced AGLIC's adjustment of Steward's claim.

Yet, seemingly without considering the time frame of Steward's actual claim, the Discovery Master arbitrarily ordered a cut-off date of August 2023 for the MPT claims file. This artificial boundary lacks any basis in fact or law and unjustly truncates Steward's access to highly relevant evidence.

Steward accordingly seeks an Order overruling the Discovery Master's ruling and (1) compelling Zurich to promptly produce its MPT claims file through October 31, 2024; and (2) clarifying that Steward may discover Zurich's settlement agreement with MPT and all related negotiations resolving MPT's insurance claim against Zurich arising from the same event underlying Steward's own claims through this lawsuit.

## I.   Relevant Background

On June 28, 2020, a devastating storm (the "Storm") released approximately 5.75 inches of rainfall within 90 minutes, significantly damaging Norwood Hospital ("Norwood") in Norwood, Massachusetts. ECF No. 61, ¶ 34. Steward operated Norwood, leasing the premises from MPT. *Id.*, ¶ 2. Zurich American Insurance Company ("Zurich") insured MPT, and American Guarantee

and Liability Insurance Company ("AGLIC") insured Steward, under separate but closely related insurance policies for Norwood. *Id.*

Although Zurich insured MPT and AGLIC insured Steward, both claims arising from the Storm were adjusted by the same person: Mark Graves of Zurich ("Mr. Graves"). Despite Defendants' attempts to distance themselves from one another, they simply cannot escape that one adjuster employed by Zurich adjusted both Steward's and MPT's claims concurrently. Zurich has expressly acknowledged that the two claims were adjusted "concurrently and jointly"—an admission signed by Mr. Graves himself. *See* **Exhibit A**, AGLIC's March 10, 2025, Responses to Steward's Interrogatory No. 6 ("AGLIC and Zurich adjusted the claims of both Steward and MPT arising out of the water loss at Norwood Hospital concurrently and jointly."). Indeed, MPT's and Steward's claims were interdependent. According to Zurich, MPT's alleged "lack of due diligence in testing and evaluating damage" and its "failure . . . to begin certain needed repairs" (in other words, MPT's progress on rebuilding Norwood) were "relevant . . . to the calculation of Steward's Time Element[2] loss." *See* **Exhibit B**, ZUR0080853 at ZUR0080854.[3] Separately, MPT's Senior Vice President and Senior Advisor to the CEO, Mr. Larry Portal, testified that the reconstruction delays at Norwood stemmed from Zurich's withholding of funds. **Exhibit C**, Portal Deposition, 207:3–208:25.

In October 2021, more than a year after the Storm and before MPT had even broken ground on the Norwood reconstruction, *Zurich filed* a declaratory judgment action against MPT seeking to limit its exposure for MPT's Storm-related losses. MPT asserted counterclaims against Zurich for breach of contract and violations of G.L. c. 93A. Three years later, as of September 2024, MPT had still only received approximately $36 million from Zurich. *See* **Exhibit D**, Zurich's

---

[2] This category of loss is also called "Business Interruption."
[3] Also attached to the Second Amended Complaint as **Exhibit D**. *See* ECF No. 61-4.

August 8, 2025, Responses to Steward's Requests for Admission Nos. 1, 3, 7.  Then, in November 2024, Zurich abruptly paid MPT an additional $124 million lump sum, resolving MPT's insurance claim arising out the Storm.  *See* **Exhibit C**, Portal Deposition, 193:3–205:19; **Exhibit E**, MPT Form 10-Q for the Quarter Ended June 30, 2024 (filed Aug. 9, 2024); **Exhibit F**, MPT Form 10-Q for the Quarter Ended Sept. 30, 2024 (filed Nov. 12, 2024).[4]

Shortly after Zurich commenced its declaratory judgment action against MPT, on November 23, 2021, Steward filed this action alleging, among other claims, that Zurich's bad-faith mishandling of MPT's claim directly harmed Steward.[5]  Steward's Second Amended Complaint explains that because Steward cannot generate income until MPT repairs the building, Zurich's calculated delays and underpayments to MPT necessarily hindered Steward's ability to restore hospital operations and prolonged its losses.  *See* ECF No. 61 ¶¶ 69–71.  Those specific allegations, which the Order does not acknowledge, are as follows:

> Just as Steward and MPT are partners in their ownership of the Hospital so too do they share in the Loss.  As a practical matter, Steward cannot actually repair, rebuild, and/or replace that portion of the Hospital damage covered under the Steward Policy (*i.e.*, business personal property, time element and medical equipment losses) until MPT begins the process of repairing, rebuilding, and/or replacing the structure and building systems of the Hospital, which are covered by the MPT Policy.  Accordingly, Zurich's

---

[4] The Q2 2024 10-Q disclosed that, "on the Norwood redevelopment," MPT had "approximately $150 million, net of payments received to date, due to us from a combination of recovery receivables . . . associated with the damage to the original facility in 2020 and a $50 million advance . . . made to Steward in the first half of 2023 that is secured by, among other things, proceeds from Steward's business interruption insurance claims."  Subtracting the $50 million advance, the portion of the recovery receivables attributable to MPT's Storm claim, as confirmed by Mr. Portal, appears to be $100 million.  As of August 9, 2024, MPT had only received approximately $36 million in payments from Zurich.  *See* **Exhibit E**.  Therefore, MPT's estimate of what it expected to recover from Zurich was $136 million, representing $36 million (already received) plus $100 million (from recovery receivables).  The Q3 2024 10-Q, filed after the settlement between Zurich and MPT, states that "on the Norwood redevelopment," MPT "recovered cash in November 2024 that was in excess of our recovery receivable . . . resulting in a $24 million additional recovery in the 2024 third quarter."  *See* **Exhibit F**.  This means that the actual cash received in November 2024 exceeded the earlier recorded recovery receivable by $24 million, implying a total recovery by MPT for its property insurance claim of approximately $160 million, with $124 million of that coming in the November 2024 settlement.

[5] Specifically, Steward asserted claims against AGLIC and Zurich (together, "Defendants") for declaratory judgment, breach of contract, breach of the implied covenant of good faith and fair dealing, tortious interference (against Zurich), and violations of G.L. c. 93A and 176D (against AGLIC and Zurich).

> mismanagement of MPT's claim has hindered Steward's ability to progress its own claim. Examples of Zurich's bad faith as to MPT, which has necessarily harmed Steward's interests in restoring Hospital operations as soon as is reasonably and safely practicable, include, without limitation:
>
> - Paying MPT only $36,093,766.95 [as of March 16, 2023] despite MPT's submission of well-supported evidence that the cost to restore the Hospital to its 'as was' pre-June 28, 2020 condition and functionality alone exceeds $180,000,000 (*not* including the additional estimate of approximately $83,000,000 to meet various code and other requirements); and
>
> - Otherwise needlessly delaying the adjustment of MPT's claim in a manner that has led to increased costs for Steward and extended the schedule for getting the Hospital back online.
>
> Zurich is fully aware that Steward desperately needs to get Norwood Hospital back up and running both for its own needs and the needs of the community it serves. Steward has repeatedly and forcefully communicated to Zurich and AGLIC from the outset both orally and in writing that time is of the essence. In response, however, Zurich has attempted in bad faith and with actual malice to leverage the fact that MPT owns the building and real estate and that as Steward's landlord, it is the resolution of MPT's claim which is driving Steward's ability to get back up and running. By improperly delaying and contesting MPT's claims in bad faith, Zurich has acted in bad faith to try and coerce both Steward and MPT to resolve their claims for less than their actual worth. In so doing, Zurich has demonstrated its ill will and actual malice.
> Defendants' claim that their adjustment of Steward's claim is ongoing.

ECF No. 61, Second Amended Complaint ¶¶ 69–71.

On July 30, 2024, while discovery was open, Zurich produced to MPT and Steward a copy of Zurich's MPT claims filed though September 2021, with the assurance that additional documents would be produced on a rolling basis. No further claims related documents were produced. On November 1, 2024, Zurich and MPT represented to the Court that they were negotiating a settlement. *See* Dkt. 1:21-cv-11621-PBS, ECF No. 80 ("[s]ettlement negotiations on-going, parties will file a stipulation of dismissal as soon as they reach an agreement."). On

5

November 13, 2024, a stipulation of dismissal was filed, and that case was dismissed. *Id*., ECF Nos. 81–82.

After the discovery stay was lifted after January 22, 2025, Defendants responded to Steward's written discovery requests on March 10, 2025.[6] Steward promptly sent Defendants a detailed deficiency letter on April 10, 2025, which asked Defendants to expand their search to include documents through November 30, 2024. *See* **Exhibit G**, April 10, 2025, Letter from William E. Gildea. On July 18, 2025, this Court entered an Order Appointing the Honorable Faith S. Hochberg as Discovery Master (ECF No. 149). On October 27, 2025, Steward and the Defendants jointly submitted the instant dispute, which *related solely to the proper cutoff date for Zurich's MPT claims-file production*, to the Discovery Master for resolution, via a Redfern chart. *See* **Exhibit H**, Parties' Redfern Chart. Steward also submitted a three-page letter brief—consistent with the Discovery Master's directives—further outlining its argument.[7] *See* **Exhibit I**, Steward's Letter Brief.

On November 7, 2025, without a hearing, the Discovery Master issued the Order. Although Zurich did not contend that no adjusting activity occurred after August 2023, the Order adopted Zurich's arbitrary August 2023 cutoff and further barred Steward from discovering Zurich's settlement negotiations, internal deliberations, or communications with MPT. The pertinent portion of the ruling is as follows:

> **The Discovery Master finds that the cutoff date for the production of the MPT claim file is August 2023**. Steward will have the opportunity to test through the deposition testimony of Mr. Graves, or another Zurich representative, whether MPT claims adjustment activity continued past August 2023 or whether the November 2024 payment by Zurich was the result of settlement negotiations between the parties. **The questioning,**

---

[6] To date, of the two Defendants, **only** Zurich has produced any documents in this case.

[7] The Discovery Master requires the parties to limit letter briefs to three pages and to submit a Redfern chart with entries of 50 words or fewer for each party.

> **however, may not probe the settlement negotiations, nor Zurich's internal discussions of its settlement positions nor communications with MPT regarding settlement.** If that deposition testimony reveals that the claims adjustment process continued beyond August 2023, Steward may renew its request to the Special Master.

Order (emphasis added).  Steward objects for the following reasons.

## II.     Argument

The Court should overrule the Order and enter an order compelling Zurich to produce its complete MPT claims file through October 31, 2024.  To the extent any documents reflecting claims activity exist beyond August 2023, those documents must be produced promptly—rather than through a renewed motion after the deposition of Mr. Graves, which is expected near the close of fact discovery.  Separately, the Court should permit discovery into Zurich's settlement and related negotiations with MPT.  These materials are plainly discoverable, directly relevant to Steward's claims of bad faith and tortious interference, and proportional to the needs of the case.  Fed. R. Civ. P. 26(b)(1).

"Rule 26(b)(1) generally permits liberal discovery of relevant information.  As the Supreme Court has instructed, because 'discovery itself is designed to help define and clarify the issues,' the limits set forth in Rule 26 must be "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case.'"  *In re New England Compounding Pharmacy, Inc. Prods. Liab. Litig.*, No. MDL 13-2419-FDS, 2013 WL 6058483, at *3 (D. Mass. Nov. 13, 2013) (Boal, J.) (*citing Baker v. Liggett Group, Inc.*, 132 F.R.D. 123, 125 (D. Mass. 1990) and *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)).  Steward has clearly demonstrated that the complete MPT claims file—including any post-August 2023 activity—and all documents and information relating to Zurich's settlement with

7

MPT are not only relevant but critical to its claims. Accordingly, Steward must be permitted full discovery into these materials to fairly litigate its case.

### A. Zurich and MPT's Settlement Agreement and Negotiations Are a Proper Subject for Discovery.

The Order's categorical prohibition on discovery into Zurich's settlement negotiations with MPT was premature and unwarranted. Issued without the benefit of briefing or argument on this critical evidentiary issue, the Order forecloses Steward's ability to examine a topic that lies at the very heart of its bad faith and tortious interference claims. ECF No. 167 at 2 (prohibiting inquiry into settlement negotiations, internal settlement deliberations, and communications regarding settlement). That prohibition cannot be reconciled with the broad discovery standards that govern here.

This Court's practice treats settlement negotiations no differently than any other subject of discovery under Rule 26(b)(1): if the information is relevant, it is discoverable. And here the relevance is indisputable. *See*, *e.g.*, *Fernandes v. Bouley*, No. CV 20-11612-GAO, 2022 WL 2915702, at *10–11 (D. Mass. July 25, 2022) (Kelley, J.) (ordering production of complete personnel files, including settlement negotiations related to rehiring, after finding them relevant to the claims in the case); *Atchison Casting Corp. v. Marsh, Inc.*, 216 F.R.D. 225, 227 (D. Mass. 2003) (Neiman, J.) (ordering discovery on a settlement relevant to claims in the case and commenting that it also "could reasonably be expected to lead to the discovery of other admissible evidence"). Zurich's settlement agreement with—and all related communications, analyses, and documents—bears directly on the claims at issue and is therefore discoverable. In November 2024—just weeks after Steward exited its hospital operations in Massachusetts—despite no change in circumstances as to MPT's claim submissions from 2020, Zurich settled with MPT and paid additional $124 million lump sum (**3.4 times the cumulative amount it had paid on MPT's**

**claim until that point**), resolving the claim arising out the Storm. In doing so, Zurich effectively acknowledged that its prior positions taken in adjusting MPT's claims were incorrect and additional sums were owed. Steward is entitled to discover Zurich's change in position after 3 years, since it adjusted MPT's and Steward's claim "concurrently" and "jointly."

The settlement itself—and the circumstances surrounding it—are especially probative. From the beginning, Zurich and its consultants closely monitored Steward's deteriorating financial condition. When Steward filed for bankruptcy in May 2024, there was elation. By September 2024, when Steward exited Massachsuetts, MPT had received only $36 million from Zurich on its claim. Yet, in October 2024—less than two months later, and more than four years after the Storm—Zurich abruptly settled MPT's claim for an additional $124 million. Given Zurich's documented monitoring and scrutiny of Steward's financial distress (confirmed through third-party discovery), this sequence of events supports Zurich's bad faith and will be a central focus of its expert testimony at trial. The settlement negotiations are thus integral to Steward's claims and squarely within the scope of proper discovery.

Further, Steward requires discovery regarding Zurich's settlement with MPT to effectively impeach Zurich's witnesses at trial. Should, for example, Mr. Graves testify that settlement discussions commenced prior to Steward's exit from Massachusetts to portray the timing as coincidental, Steward would be unfairly prejudiced without access to the underlying communications. While Federal Rule of Evidence 408 limits the *admissibility* of settlement evidence for certain purposes, it does not restrict the *discoverability* of such evidence. Rule 408(b) expressly permits the use of settlement evidence to prove bias, prejudice, or to negate claims of undue delay. Zurich's witnesses will undoubtedly testify regarding claims handling, timing, and financial assessments. Their credibility—and potential bias—cannot be tested without access to

9

the settlement communications that reveal how Zurich treated MPT compared to Steward, particularly while exploiting knowledge of Steward's financial condition. Courts routinely hold that impeachment material is discoverable even if not independently relevant to the merits. *See Newsome v. Penske Truck Leasing Corp.*, 437 F. Supp. 2d 431, 437 (D. Md. 2006) ("[i]nformation that could be used to impeach a likely witness… may be properly discoverable. **Production of impeachment evidence is required in the ordinary course of discovery**.") (emphasis added) (*citing* Commentary to Rule Changes, Court Rules, 192 F.R.D. 340, 389 (2000)).

Steward is entitled to probe why, when, and on what basis Zurich settled with MPT, especially given Zurich's contemporaneous monitoring of Steward's downward financial trajectory and its decision to force Steward to litigate while resolving MPT's claim for a nine-figure sum. The Order's restriction on this inquiry unfairly handicaps Steward and should be overturned.

**B. Zurich's Claims File for MPT is Relevant and Critical to Steward's Claims.**

Zurich's claims file for MPT's concurrent Storm-related claim lies at the core of Steward's bad faith and tortious interference claims against Zurich and AGLIC. Steward's allegations focus on Defendants' mishandling of the Storm claims, particularly as it relates to Steward's business interruption losses and Zurich's interference with Steward's recovery under AGLIC's policy. *See* ECF No. 61, ¶¶ 90, 96–97, 112.

Under the AGLIC policy, AGLIC was obligated to indemnify Steward for its Time Element losses, also known as business interruption losses, during the "Period of Liability" or "Period of Restoration"—the hypothetical period reasonably required to repair and restore operations at Norwood Hospital. *See* **Exhibit J**, Policy, § IV. This period does not hinge on whether repairs actually occurred; as courts have recognized, the failure to rebuild cannot extinguish coverage, which depends on the time a reasonable insured would have taken to rebuild

10

had it done so. *See Noranda Aluminum Holding Co. v. XL Ins. Am., Inc.*, No. CVN17C01152WCCCCLD, 2019 WL 1399956, at *4 (Del. Super. Ct. Mar. 21, 2019) ("[A] decision not to rebuild would not terminate coverage since it would in effect remove any benefit to Plaintiff for the premiums accepted by the Insurers.  Instead, coverage is determined by a hypothetical period of how long a reasonable entity would have taken to rebuild if they had decided to do so."); *see also B A Props., Inc. v. Aetna Cas. & Sur. Co.*, 273 F. Supp. 2d 673, 685 (D. V.I. 2003).

The proper length of the Period of Restoration—and thus the extent of Steward's business interruption damages—is hotly contested.  Defendants maintain that restoration could have been completed by July 15, 2022, while Steward contends it extends through September 30, 2024, the date Steward exited the Massachusetts market.  Defendants themselves recognize that the "resolution of Steward's claims turns," in large part, on whether AGLIC "diligently and in good faith determined that July 15, 2022, was the proper cut off for Steward's business interruption damage (based upon the date by which [Norwood] could have been repaired) or whether instead Steward is entitled to recover business losses up to September 30, 2024." ECF No. 140 at 2–3. This latter date, to which Steward's experts will testify, coincides with Steward's market exit— not because Norwood could have hypothetically been repaired by that date (it could not), but because that marks the date Steward exited the Massachusetts market, having sold its remaining hospitals still in operation.

AGLIC further represents that, in adjusting Steward's claim, it "retained and relied upon qualified professionals to assist in determining the Period of Liability." *See* **Exhibit K**, AGLIC's June 11, 2025, Corrected Response to Steward's Interrogatory No. 6.  Yet those very professionals—DBI Construction, Shawmut Design and Construction, and J.S. Held—were

11

retained not by AGLIC, but by **Zurich**. *See* ECF No. 140 at 2 (explaining that Zurich, with its consultants, set the July 15, 2022 date, and AGLIC merely "agreed with Zurich's experts"). Because AGLIC adopted Zurich's analyses wholesale, discovery into Zurich's handling of MPT's claim after August 2023 is essential: the same consultants, data, and assessments informed Zurich's and AGLIC's adjustment of Steward's claim.

AGLIC's determination of the Period of Liability cut-off was not made in a vacuum. Mr. Graves, who adjusted MPT's <u>and</u> Steward's claims "concurrently and jointly,"[8]—and signed both Zurich's and AGLIC's answers to interrogatories—acknowledged that MPT's progress in rebuilding Norwood was "relevant . . . to the calculation of Steward's Time Element loss." *See* **Exhibit B**, ZUR0080853 at ZUR0080854. In other words, Defendants—through Mr. Graves—recognized that any delays or obstructions in handling MPT's claim would directly affect Steward's (as MPT's tenant at Norwood Hospital) ability to resume business operations and thereby mitigate business interruption losses. Indeed, MPT's Mr. Portal testified that Zurich's withholding of funds contributed to reconstruction delays at Norwood. **Exhibit C**, Portal Deposition, 207:3–208:25.

Accordingly, the complete MPT claims file is highly relevant to Steward's claims against *both* Defendants for bad faith claims handling, its claim for tortious interference against Zurich, and the consequences of Defendants' claims adjustment decisions on Steward's ongoing business interruption losses. The Order's imposition of an August 2023 cutoff is therefore erroneous and should be overturned.

---

[8] *See* **Exhibit A**, AGLIC's March 10, 2025, Responses to Steward's Interrogatory No. 6.

12

### C. Zurich Has Offered No Basis for Its August 2023 Cutoff of Production of the MPT Claim File.

The Order, without making any explicit finding regarding relevance, adopts the August 2023 cutoff for production of the MPT claim file proposed by Defendants. However, Defendants failed to offer any record support or rationale for this cutoff before the Discovery Master, while Steward presented ample justification for extending the production through October 31, 2024.

As detailed in Steward's letter brief, by September 2024, MPT had received only approximately $36 million from Zurich for its Storm-related losses at Norwood, with the last payment issued in December 2021. *See* **Exhibit D**, Zurich's August 8, 2025, Responses to Steward's Requests for Admission Nos. 1, 3, 7. Then, in November 2024—just weeks after[9] Steward exited its hospital operations in Massachusetts—Zurich settled with MPT, paying an additional $124 million (**more than three times the cumulative amount paid up to that date**), thereby resolving the claim arising from the Storm. This belated settlement, occurring over four years after the Storm and extensive litigation, effectively acknowledges that Zurich's prior positions in adjusting MPT's claim were seriously flawed.

Steward intends to demonstrate that this timing was not happenstance, but part of a deliberate strategy. Zurich's communications after August 2023 reveal an acute awareness of Steward's precarious financial condition—a vulnerability Zurich exploited by using MPT's claim as leverage to delay payments (and thereby delay reconstruction at Norwood) in bad faith, trying to pressure Steward into a reduced settlement of its own claims. Steward anticipates that the MPT claim file contains additional information relevant to this bad-faith exploitation of Steward's

---

[9] Steward notes for the record an important factual error on this point in the Order. The Order incorrectly states that the November 2024 payment was made "a few weeks *before* Steward ceased operations in Massachusetts and relinquished future occupancy of Norwood Hospital" (emphasis supplied). ECF No. 167 at 2. As noted in Steward's letter brief, that final settlement payment was made very shortly *after* Steward exited Massachusetts.

financial distress, which informed Defendants' conduct regarding the MPT claim and their pressure tactics in settlement negotiations. These communications, all occurring in 2024, well after the August 2023 cutoff proposed by Defendants, underscore why production through October 31, 2024, is necessary.

By contrast, Defendants' sole representation in their Redfern submission to the Discovery Master was that: "[a]s a compromise, Zurich recently agreed to produce non-privileged claim notes and non-privileged claim documents from the MPT claim file through August 2023." Notably, Defendants did *not* represent that their adjustment of MPT's claim ended in August 2023, nor have they offered *any* basis justifying this arbitrary cutoff. Indeed, Defendants have *never* provided any basis for this specific cutoff date.

Zurich's initial response to Steward's request for "Zurich's claim file or 'Claim Documents' concerning the Storm and/or Steward's or MPT's claims for coverage under policies issued by AGLIC or Zurich for losses sustained as a result of the Storm," agreed to produce documents subject to a cutoff date of August 31, 2022—again, without explanation or justification. *See* **Exhibit L**, Zurich's March 10, 2025, Responses to Steward's First Request for Production of Documents, at 12–14. Since then, Defendants have offered no reasoning supporting this cutoff. Just as with the handling of Steward's business interruption claim—where Defendants set a cutoff date of July 15, 2022, for the Period of Liability without any explanation or discussion in support of that date, *see* **Exhibit M**, December 23, 2022, Letter from Mark A. Graves at 3; ECF No. 61, Second Amended Complaint ¶¶ 79–80—the Defendants' approach here has been to unilaterally select a cutoff date without any explanation or response to Steward's grounds for another date. Such unilateral and unexplained cutoff dates, imposed without engagement or response to

Steward's reasoned objections, should not be permitted—whether in discovery or in claims handling.

Given the relevance of the MPT claim file to Steward's claims, *see supra* Part II.A, and material significance of the November 2024 settlement with MPT shortly after Steward's Massachusetts exit, the August 2023 through October 31, 2024 period is critical to Steward's bad faith allegations. Defendants cannot simply offer a "compromise" that withholds core discovery to which Steward is entitled. Rather, Steward should receive the full production of all non-privileged documents in the MPT claim file through October 31, 2024.

### D. Steward's Request to Expand Zurich's Production Through October 31, 2024, Is Proportional and Designed to Minimize Burden, Delay, and Expense.

The Order directs Steward to rely initially on depositions to establish the full time frame during which MPT's claim was adjusted, permitting Steward to renew its request for a supplemental production of the MPT claim file through October 31, 2024, only if deposition testimony reveals activity beyond August 2023. ECF No. 167 at 2. This approach, however, disregards the existing deposition testimony from MPT's Mr. Portal cited in Steward's letter brief, which already supports the requested extended period. Requiring Steward to await depositions before obtaining these documents risks imposing unnecessary burdens, delays, and expense on the parties and the Court.

A sequential process of this kind risks prolonging the case significantly. It may necessitate reopening written discovery after depositions conclude and potentially recalling witnesses once documents are finally produced—further delaying resolution.[10] Likewise, denying Steward access

---

[10] Most of the depositions that will be needed in this case have not yet been taken. At the June 26, 2025, status conference, this Court directed the parties to move forward with depositions while the disputes over written discovery progressed with a Discovery Master. *See* **Exhibit N**, June 26, 2025, Status Conference Transcript at 11:22-24. Steward sought to move forward promptly with third-party depositions, deposing Philips Healthcare Informatics, Inc. on July 31, 2025, and MDD on August 7, 2025. On August 12, 2025, the Discovery Master directed Steward not to take its intended 30(b)(6) deposition of GE—or any other depositions—until it had completed its ongoing document

at this phase of the case to Zurich's settlement negotiations with MPT could lead to late-stage reopening of discovery if this Court determines that such matters are relevant to the trial of this case.

In contrast, the relief that Steward seeks promotes a more efficient and predictable case schedule by reducing needless delay and minimizing burdens on all parties. If there is, in fact, minimal activity on the MPT claim between August 2023 and October 31, 2024, then the supplemental production Steward seeks will be small in volume and not burdensome for Defendants to collect, review, and produce. If there is significant activity on the MPT claim during that period, however, that is all the more reason why Steward's request for the documents through October 31, 2024, is proportional given the significance of that discovery to its bad faith claims.

In either event, the most efficient and least burdensome course is for the Court to order Defendants to promptly produce the MPT claim file through October 31, 2024.

### III.     Conclusion

This case has been pending for four years. In that time, Steward has relinquished operations of its Massachusetts hospitals and filed for bankruptcy—and MPT has received a significant settlement from Zurich. At every turn, the Defendants have failed to provide explanations for their unilateral decisions, and they have created unnecessary—and, at times, devastating—delays in both claim adjustment and this litigation. Through this Objection, Steward seeks just a small part of what it is entitled to, without further delay.

For all of these reasons, Steward respectfully requests an Order from this Court (1) requiring Zurich to promptly produce its MPT claims file through October 31, 2024; and (2)

---

productions. *See* **Exhibit O**, August 12, 2025, Discovery Master Hearing Transcript at 21:23-22:8, 27:4-5, 28:8-18. Steward has followed that instruction, reviewing 568,795 documents for responsiveness, of which 335,016 were ultimately produced to Defendants, with 191,232 of those arguably responsive documents being exclusively non-substantive weekly email invitations.

clarifying that Steward may discover Zurich's settlement agreement and associated negotiations with MPT that resolved MPT's insurance claim against Zurich arising out of the same event that Steward is pursuing insurance recovery through this lawsuit. A proposed order is attached as **Exhibit P**.

                          Respectfully submitted,

                          PLAINTIFF,

                          By its attorneys,

                          */s/ Howard M. Cooper*
                          Howard M. Cooper (BBO No. 543842)
                          Seth J. Robbins (BBO No. 655146)
                          William E. Gildea (BBO No. 699112)
                          Aedan R. Dunn (BBO No. 709129)
                          TODD & WELD LLP
                          One Federal Street, 27th Floor
                          Boston, MA 02110
                          (617) 720-2626
                          hcooper@toddweld.com
                          srobbins@toddweld.com
                          wgildea@toddweld.com
                          adunn@toddweld.com

Dated: November 14, 2025

## CERTIFICATE OF SERVICE

      I, William E. Gildea, hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and that paper copies will be sent to those indicated as non-registered participants on November 14, 2025.

                          */s/ William E. Gildea*