UNITED STATE DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| STEWARD HEALTH CARE SYSTEM LLC,<br><br>        Plaintiff,<br><br>        v.<br><br>AMERICAN GUARANTEE AND LIABILITY INSURANCE COMPANY and ZURICH AMERICAN INSURANCE COMPANY,<br><br>        Defendants. | Civil Action No. 1:21-cv-11902 – PBS |

**DEFENDANTS' RESPONSE TO
STEWARD'S OBJECTION TO DISCOVERY MASTER ORDER NO. 9**

Through its objection to the Discovery Master's Order No. 9 (Dkt. 168, "Obj."), Plaintiff Steward Health Care System LLC ("Steward") seeks to obtain "full discovery" into the circumstances and details of a November 2024 confidential settlement between a third-party, Medical Properties Trust, Inc. ("MPT"), and Defendant Zurich American Insurance Company ("Zurich American") of litigation which Steward was not a party to, and arising out of an insurance policy that Steward had no rights under. Steward attempts to justify this request through an argument that real-world events surrounding the replacement of Norwood Hospital building—the subject of the insurance policy between MPT, the owner of the building, and Zurich American—are relevant to its business interruption loss claim under its policy with American Guarantee and Liability Insurance Company ("American Guarantee"). But this argument falls flat, as it must. Steward fully admits that its insurance policy calculates the period of liability for its business interruption claim as "the *hypothetical period* reasonably required to repair and restore *operations* at Norwood Hospital." Dkt. 168 at 10 (emphasis added). Rather than repairing the damage at

Norwood Hospital, however, MPT decided to raze the Norwood Hospital building and build an entirely new hospital facility. Nothing in the Steward insurance policy ties Steward's business interruption loss to how long it actually took MPT to complete this process. And Steward's argument is further undercut by the fact that Steward no longer has any interest in the new Norwood Hospital building. Indeed, as part of Steward's May 2024 bankruptcy, it relinquished any and all rights to occupy, lease or operate any newly-built hospital, and it formally lost its licenses to operate in Massachusetts effective September 30, 2024. Nothing about Zurich American's process of handling MPT's claim, or the settlement of the separate lawsuit between Zurich American and MPT, is relevant to this case under Fed. R. Civ. P. 26(b)(1). No further discovery is warranted.

## PROCEDURAL BACKGROUND

American Guarantee issued the relevant policy to Steward with an effective term of November 1, 2019 to November 1, 2020 (Dkt. 61-1, the "Policy"). After the June 2020 storm that flooded Norwood Hospital, Steward made a claim under the Policy, seeking coverage for business personal property, as well as Time Element loss.[1] **American Guarantee paid Steward more than $97 million**, net of deductibles, for its claims arising out of the June 2020 storm.[2] The bulk of these payments—totaling just over $91 million—are for Steward's loss of business income claim. These payments were based upon analyses performed by American Guarantee and its retained

---

[1] MPT, the owner of the Norwood Hospital building, was insured under a separate policy, issued by Zurich American, which provided coverage for the building. *See generally* Dkt. 61-2 (the "MPT Policy").

[2] Steward's Chief Restructuring Officer, John Castellano, confirmed that Steward had received these funds, but was unable to specify what, if anything, Steward had done with the funds and whether they'd been used to restore operations at Norwood Hospital. Rather, Mr. Castellano testified that the funds were "fungible" and could have been used to "fund [Steward] operating expenses." *See* Ex. A (Castellano Tr.) at 58:18-59:11.

consultants,[3] which determined that the appropriate Period of Liability (as defined in the Policy[4]) for the Time Element claim was from the date of the storm to July 15, 2022, a period of approximately 25 months. *See* Dkt. 61 ("SAC") Ex. F (Dkt. 61-6).

Steward contests American Guarantee's Period of Liability calculation but fails to clearly articulate its own position.[5] What is clear, however, is that neither MPT nor Steward ever repaired

---

[3] Throughout its submission, Steward incorrectly asserts that Mr. Graves was acting on behalf of Zurich American when handling Steward's claim. *See generally* Obj. at 2, 3, 9. Mr. Graves' correspondence, however, makes clear that he is acting on behalf of American Guarantee, and his signature block identifies him as a claims adjuster for that entity, not Zurich American. *See* SAC Exs. D (Dkt. 61-4), F (Dkt. 61-6); *see also* Plaintiff's Exs. B (Dkt. 168-2) at p. 4.

Steward similarly misstates Mr. Graves' sworn interrogatory responses on this point. American Guarantee's corrected response to Steward's Interrogatory No. 6—which Steward largely ignores—does not state that the claims were adjusted "concurrently and jointly," and it similarly makes clear that ***American Guarantee*** retained experts and consultants, which were shared with Zurich American. *See* Obj. Ex. K (Dkt. 168-11), 6/11/25 American Guarantee Corrected Objections and Responses to Steward Health Care System LLC's First Set of Interrogatories, No. 6. Steward cannot rely upon an interrogatory answer that has been withdrawn and corrected. *See, e.g., Freitas v. Emhart Corp.*, 715 F. Supp. 1149, 1151-52 (D. Mass. 1989) (granting motion to strike initial interrogatory answer and holding that plaintiff could not rely upon it in its summary judgment motion).

[4] Specifically, Section 4.03.01.01 of the Policy provides that the Period of Liability for building and equipment shall be the "period starting from the time of physical loss or damage of the type insured against and ***ending when with due diligence and dispatch the building and equipment could be repaired or replaced, and made ready for operations under the same or equivalent physical and operating conditions that existed prior to the damage***." *See* Dkt. 61-1 at p. 34 (emphasis added).

[5] Steward currently states that it is seeking to recover Time Element loss through September 30, 2024. Obj. at 11. Previously, however, it asserted a claim through June 2023 (SAC ¶ 74). Regardless, the September 2024 date is wholly unsupported.

Steward admits, as it must, that it was forced to cease operations at all hospitals it operated in the Commonwealth of Massachusetts in September 2024, after it lost its licenses to operate hospitals in the state. Obj. at 11; *see also* Ex. B, 10/11/24 ltr. to Mass. Dept. of Public Health (DPH023319-24) (announcing intent not to renew license to operate). However, documents produced by the Town of Norwood indicate that Steward relinquished its rights in Norwood Hospital more than six months earlier. *See* Ex. C, 4/10/24 ltr. to Town of Norwood (TOWNOFNORWOOD_00002241) ("As of March 5, 2024, MPT has accepted and assumed all of Steward's rights, interest. and obligations in all contracts, permits, and licenses related to the construction of the new replacement hospital on the Property, including the Construction Contract."). And once in bankruptcy in May 2024, Steward unequivocally announced its intent to withdraw from the Massachusetts market, including through the rejection of its leases with MPT. *See In re Steward Health Care Sys. LLC*,

Norwood Hospital to its pre-storm condition, nor did Steward ever resume operations at that facility.  Rather, less than one year after the June 2020 storm, on June 22, 2021—and after receiving tens of millions of dollars from American Guarantee—Steward and MPT jointly announced their intent to demolish Norwood Hospital, and replace it with an entirely new, "more modern facility."  Ex. D (ZUR0083298); *see also* SAC ¶ 5 ("Steward and MPT have determined that the best approach to resumption of health care operations at the Hospital is to remove the existing buildings and develop a new complex in its place.").  By this time, American Guarantee had advanced Steward more than $63 million as payment on its claim, including the business interruption claim.  *See* M. Graves 3/5/21 ltr., attached as Ex. E.  In December 2022, American Guarantee made its final payment to Steward for the Time Element loss (SAC Ex. F (Dkt. 61-6)), bringing the total payment to more than $97 million.  And while American Guarantee conducted limited claims activity thereafter—primarily in response to an additional submission made by Steward on May 9, 2023—no further claims correspondence was made after July 31, 2023.  *See* M. Graves 7/31/23 ltr., attached as Ex. F.

Steward initiated this suit in November 2021, asserting claims for breach of contract and bad faith against American Guarantee.  As part of the discovery process on those claims, American Guarantee has produced its claims file for Steward's claim from the date of submission through August 2023 (*i.e.*, beyond the date of the last adjustment activity on Steward's claim), and thus, Steward has the "contemporaneous chronicle of what [American Guarantee] knew, when it knew it, and what it chose to do (or not do) in response."  Obj. at 1.  Steward makes no assertion that

---

*et al.*, Case No. 24-90213 (S.D. Tex. Bkr.), Massachusetts' Statement in Further Resp. to Debtors' Emerg. Sale Mot. (Dkt. 2715) ("At the start of this case, [Steward] made clear [its] intent to exit the Massachusetts market."), Mot. of Debtors for Entry of an Order (I) Approving Procedures for Rejection of Executory Contracts and Unexpired Leases (Dkt. 752) (seeking to repudiate the Master Leases with MPT, including the portion relating to Norwood Hospital).

4

this production is lacking or insufficient, nor has it offered any evidence that *any* claims adjustment activity took place after August 2023.  Thus, it is undisputed that all information sought by Steward in connection with its Objection to Discovery Master Order No. 9 post-dates American Guarantee's last claims adjustment activity with respect to Steward's claims.

Based solely on conclusory allegations that Zurich American delayed the adjustment of MPT's claim under the MPT Policy (to which Steward was not a party), Steward now claims that Zurich American's alleged delays vis-à-vis MPT impacted American Guarantee's adjustment of Steward's claim under the Steward Policy (*see generally*, SAC ¶¶ 10, 69, 70), and therefore Steward has the right to pry into the MPT claim file and the terms of the November 2024 confidential settlement of the litigation between MPT and Zurich American.[6] And while Defendants have consistently objected to the relevance of this information to Steward's claims (*see* Obj. Ex. H (Dkt. 168-8) at p. 2), Defendants nevertheless *as a compromise* agreed to and did produce Zurich American's non-privileged claim notes from the MPT claim file through August 2023.  *Id.*  Unsatisfied with this eminently reasonable position, Steward submitted the dispute to Special Master Hochberg.[7]  *Id.*  Special Master Hochberg considered Steward's demand and ruled in a reasonable manner—namely, that discovery into the MPT settlement would not be allowed, but if subsequent discovery showed that "the claims adjustment process continued beyond August 2023, Steward may renew its request to the Special Master." (Dkt. 167). Steward now brings this objection before the Court seeking not only the MPT claim notes after August 2023, but also

---

[6] Despite submitting its demand for the MPT settlement-related materials to the Discovery Special Master and now this Court, Steward has not identified any Rule 34 request for production to which these materials would be responsive.

[7] On July 18, 2025, Judge Saris appointed Judge Hochberg as Special Master to handle "any and all discovery … issues and disputes ("Discovery Issues") between the Parties …."  Dkt. 149.

"Zurich's settlement agreement with MPT and all related negotiations resolving MPT's insurance claim against Zurich …." Obj. at 2.

## ARGUMENT

Consistent with its authority under Rule 53 of the Federal Rules of Civil Procedure, this Court entrusted to the reasoned judgment of the Discovery Master the adjudication of all outstanding discovery issues in this case. *See* Dkt. 149. Under the terms of that appointment, any objections to a ruling by the Discovery Master must be filed with this Court within seven days, and will be subject to the standard of review provided by Rule 53(f).  *Id.* at 4. Because the Order at issue here—Special Master's Order No. 9, *see* Dkt. 167—contains factual findings and legal conclusions regarding the discoverability of the MPT claim file in its entirety, this Court's review is *de novo.  See* Fed. R. Civ.  P. 53(f)(3); *accord Arkansas Teacher Ret.  Sys. v. State Street Bank & Tr. Co.,* 527 F. Supp.  3d 40, 54 (D. Mass. 2021); *Commonwealth v. ETrade Access, Inc.,* No. 03-11206-NMG, 2013 WL 4048189, at *2 (D. Mass. May 22, 2013).

Steward makes two arguments in support of its discovery demand.  *First*, it asserts that the confidential settlement negotiations and agreement are proper discovery under Rule 26(b)(1). *Second*, Steward asserts that the settlement between Zurich American and MPT is relevant to Steward's claims in this lawsuit.  Neither argument justifies the broad discovery Steward seeks here. The Objection should be overruled.

I.  **ZURICH AMERICAN'S POST-AUGUST 2023 ADJUSTMENT AND SETTLEMENT OF THE MPT LITIGATION IS NOT RELEVANT TO STEWARD'S CLAIMS.**

While Federal Rule of Evidence 408 governs the admissibility of settlement agreements and discussions, the discoverability of such information is governed by Federal Rule of Civil Procedure 26(b)(1): if it is relevant to the claims and defenses in the matter, and proportionate, it is discoverable.  *See generally 1611 Cold Spring Road Op. Co. v. Skinner*, 2023 WL 8720115, (D.

Mass. Dec. 18, 2023) (noting that settlement agreements can be discoverable under Rule 26(b)(1) if they are relevant, but denying motion to compel discovery into confidential settlement agreement between third-parties in 93A case, as movant did not establish relevancy, and noting that "[s]ettlement agreements reflect compromises that have been negotiated between parties to a litigation" and as such, "do not determine the outcome of factual disputes or establish an evidentiary record") (citing *Hayes v. Boston Pub. Health Comm'n*, 2013 WL 5564184 (D. Mass. Oct. 7, 2013). As the party seeking discovery, the burden is on Steward to establish that the MPT settlement is relevant to the claims at issue in this lawsuit. *Roy v. FedEx Ground Pkg. Sys., Inc.*, 675 F. Supp. 3d 140, 144 (D. Mass. 2023). It has not done so.

As an initial matter, information about whether, how, why, and for how much Zurich American settled a different lawsuit with MPT concerning a claim under a different policy is not relevant to Steward's claims asserted *here*. *See Sullivan v. Experian Info. Solutions, Inc.*, 2019 WL 12315947, at *2 (D. Mass. Apr. 8, 2019) (Kelley, J.) (settlement agreements involving other co-defendants not relevant as they were "based on different individual actions with damages that were separate and distinct"); *see also 1611 Cold Spring Road Op. Co., supra*. Just because the MPT claim generally related to the same hospital complex does not mean that the adjustment of that claim or resolution of a lawsuit concerning that claim is relevant to the claims asserted by Steward. The Zurich-American-MPT claim centered upon the cost of repairing the Norwood Hospital *building*—a determination not at issue here.

In contrast, the relevant questions here are (1) the value of Steward's business personal property that was damaged by the June 2020 flood, and (2) what is the duration of the Period of Liability for Steward's business interruption claim, an analysis that Steward admits turns on a hypothetical, and which "***does not hinge on whether repairs actually occurred*** …." Obj. at 10

(emphasis added); *see also* Policy § 4.03.01.01 (Dkt. 61-1 at p. 34).  In other words, the relevant analysis for the second question begins and ends with the question of how long it hypothetically would take, with due diligence and dispatch, to bring the operations of the Norwood Hospital back to its pre-Loss condition.  Inquiry into what actually happened to the Norwood Hospital *building* after the storm, or on what terms Zurich American and MPT settled their lawsuit, provides no answer to this question because the hospital building was torn down to build a new hospital building rather than brought back to its pre-Loss condition.  Nor can the facts surrounding the compromise and settlement of MPT's lawsuit "establish an evidentiary record," *1611 Cold Spring Road Op. Co., supra*, upon which it can be answered.  Thus, Zurich American's adjustment of MPT's claim or the terms of resolving the separate litigation has no bearing on the Period of Liability for Steward's business interruption claim.

Furthermore, the Court should reject Steward's assertion that Zurich American's alleged delays in handling MPT's claim affected Steward's "ability to resume business operations and thereby mitigate damages."  Obj. at 12.  MPT made the voluntary decision to build an entirely new, modern facility.  The time for constructing such a new facility would have extended well beyond any plausible amount of time for the Period of Liability under the Policy, which is tied only to bringing the Norwood operations back to pre-loss condition with due diligence and dispatch.  *Compare* SAC ¶ 5 ("Steward and MPT have determined that the best approach to resumption of health care operations at the Hospital is to remove the existing buildings and develop a new complex in its place.") *with* Dkt. 61-1 at p. 34 (Policy setting the Period of Liability as the time it would take, "with due diligence and dispatch", to bring the building and equipment to just "the same or equivalent physical and operating conditions that existed prior to the damage").  And, before the new hospital could have opened under any circumstances, Steward in September 2024

ceased operations in the Commonwealth of Massachusetts, after it lost its licenses to operate hospitals in the state. Obj. at 8; *see also fn.* 5, *supra*. Thus, no delay by Zurich American in settling its lawsuit with MPT could have affected Steward's business interruption claim.

Likewise, Zurich American's purported delay in settling the MPT claim is irrelevant to Steward's tortious interference with contractual relations claim against Zurich American. To prove its tortious interference claim against Zurich American, Steward must show that Zurich American interfered with the contract between American Guarantee and Steward. *Conformis, Inc. v. Aetna, Inc.*, 58 F.4th 517, 538 (1st Cir. 2023); *Pierce v. Cotuit Fire Dist.*, 741 F.3d 295, 304 (1st Cir. 2014). Here, Steward is seeking information about the resolution of a lawsuit that arose out of a contract between Zurich American and MPT. As such, information in Zurich American's claim file about the settlement with MPT are irrelevant to Steward's tortious interference claim against Zurich American.

Steward's effort to cast this discovery as "impeachment evidence" similarly fails. Obj. at 9-10. The lone case cited by Steward is from the District of Maryland, and refers to the obligation of a party seeking to use impeachment evidence from its own records to produce it prior to trial. *Newsome v. Penske Truck Leasing Corp.*, 437 F. Supp. 2d 431 (D. Md. 2006). The case does not, however, justify a fishing expedition into an opposing party's records for information that is otherwise not relevant under Rule 26(b)(1) just because the requesting party has an unfounded belief that it might find something useful for impeachment of a witness in the future. *See generally Dzanis v. JPMorgan Chase & Co.*, 2011 WL 5979650, at *6 (S.D.N.Y. Nov. 30, 2011) (denying discovery where claim that it might be useful for impeachment purposes was purely speculative). Indeed, any such exception to the relevancy requirement of Rule 26(b)(1) would turn the concept of relevance on its head—a requesting party could always construct an argument of relevance by

9

asserting that it *might* need that discovery to impeach a witness in the future. Courts correctly reject such arguments. *Dzanis, supra* (collecting cases).

Finally, even if the information from the MPT claim entered in 2024 and the terms on which the Zurich American/MPT lawsuit were resolved had some marginal relevance, which they do not, public policy favors maintaining the confidential nature of settlement negotiations and agreements to avoid protected litigation and preserve Court resourced. *See, e.g.*, Federal Rule of Evidence 408. Steward had a contractual relationship with MPT, and negotiated a complete settlement of the claims arising out of that relationship as part of its bankruptcy proceedings. *See In re Steward Health Care Sys. LLC, et al.*, Case No. 24-90213 (S.D. Tex. Bkr.), Interim Order Approving (I) Global Settlement with Medical Properties Trust, Dkt. 2483. In connection therewith, Steward could have negotiated a provision that would have entitled it to information about settlements MPT reached concerning properties Steward was operating. It did not bargain for such a term. The Court should not void the confidential resolution of the litigation between Zurich American and MPT and undermine the reasonable expectations of confidentiality for parties who seek to avoid litigation, especially when doing so involves information that is neither relevant nor ultimately admissible.

## II. THE SPECIAL MASTER'S RULING IN DISCOVERY ORDER NO. 9 REPRESENTS A REASONABLE AND FAIR RESOLUTION OF STEWARD'S REQUEST FOR DISCOVERY.

Rule 26(b)(1), while broadly construed, does not require production of all evidence. Rather, courts faced with discovery disputes are empowered under Rules 1 and 26(b)(1) to determine what is relevant *and* proportionate, and will ensure that the matter is adjudicated in a way that is "just, speedy, and inexpensive." Here, Special Master Hochberg did just that. Recognizing the irrelevance of the requested information—as well as Defendants' agreement to provide information about MPT's claim handling during the period of time that Steward's claim

was being adjusted, *i.e.,* prior to August 2023—the Special Master held that discovery about the MPT-Zurich American settlement would not be compelled at this time, but that if subsequent discovery showed that there was adjustment of Steward's claim at the time that MPT's claim was in final settlement discussions and agreement, the issue could be resubmitted for further consideration.

Steward offers nothing that warrants overturning this reasonable and well-considered ruling. It first asserts that the August 2023 cut-off date was unwarranted. Obj. at 13. But as noted above, it is undisputed that there was no further correspondence between American Guarantee and Steward about its claim after July 2023, and no further claims handling activity took place after that time. It was on the basis of this representation that Judge Hochberg adopted the August 2023 cut-off. Notably, Steward does not contest that no further claim handling took place after that time, nor has it presented any information to the contrary. The wholly unfounded assertions that Zurich American and American Guarantee were monitoring "Steward's precarious financial condition" (Obj. at 13; *see also id.* at 9) and that this informed Zurich American's decision making in the MPT litigation need not be afforded any weight.

Steward next asserts that the production of the post-August 2023 MPT claim notes would be proportionate, and that it need not first establish through deposition testimony that any such information would be relevant. Obj. at 15-16. This argument assumes that the settlement of MPT's suit is relevant, which it is not. And in any event, requiring a party to first establish through depositions or other discovery that the additional document discovery is warranted under Rule 26(b)(1)—as Judge Hochberg did here—is well within the Court's discretion under Rules 1 and 26.

11

**CONCLUSION**

Discovery Order No. 9, which represents a reasonable and proportionate resolution of Steward's request for full discovery into the settlement of the litigation between non-party MPT and Defendant Zurich American, should be adopted and upheld by this Court.

Dated: November 28, 2025

    Respectfully submitted,

    *Amy C. Andrews*

    Ronald S. Safer (*pro hac vice*)
    Nick Kahlon (*pro hac vice*)
    Amy C. Andrews (*pro hac vice*)
    Abigail L. Peluso (*pro hac vice)*
    RILEY SAFER HOLMES & CANCILA LLP
    1 South Dearborn Street, Suite 2200
    Chicago, Illinois 60603
    Tel: (312) 471-8700
    Email: rsafer@rshc-law.com
           nkahlon@rshc-law.com
           aandrews@rshc-law.com
           apeluso@rshc-law.com

    Jonathan D. Mutch, Esq.  (BBO No. 634543)
    Timothy Wenger (BBO No. 674087)
    ROBINS KAPLAN LLP
    800 Boylston Street, 25th Floor
    Boston, MA 02199
    Tel: (617) 267-2300
    Email: JMutch@RobinsKaplan.com
           TWenger@RobinsKaplan.com

    *Attorneys for Defendants American Guarantee and Liability Insurance Company and Zurich American Insurance Company*