# EXHIBIT A

```
                                                          Page 1
 1                                                        Page 1
 2
                    UNITED STATES DISTRICT COURT
 3              FOR THE DISTRICT OF MASSACHUSETTS
 4    STEWARD HEALTH CARE SYSTEM, LLC,  )
                                        )
 5                    Plaintiff,        )
                                        )
 6         vs                           )Civil Action No.
                                        )1:21-cv-11902-PBS
 7    AMERICAN GUARANTEE AND LIABILITY  )
      INSURANCE COMPANY and ZURICH      )
 8    AMERICAN INSURANCE COMPANY,       )
                                        )
 9                    Defendants.       )
      ----------------------------------)
10
11         The Video-Recorded Deposition of JOHN CASTELLANO
12         Date:      Thursday, July 3, 2025
13         Time:      9:48 a.m.
14         Place:     Riley Safer Holmes & Cancila, LLP
                      1 South Dearborn Street, Suite 2200
15                    Chicago, Illinois 60603
16
17      Called as a witness by the Defendants in accordance
        with the Federal Rules of Civil Procedure for the
18      United States District Court, District of
        Massachusetts, pursuant to Notice.
19
20
21
22      Reported Stenographically by
23      Angela J. Galipeau, RPR, CSR-IL
24      Notary Public, State of Indiana
25      Job No. 7445654
```

```
                                                          Page 2

 1        APPEARANCES:
 2           MR. SETH J. ROBBINS, ESQ.
                  Todd & Weld, LLP
 3                One Federal Street
                  Boston, Massachusetts 02110
 4                (617) 720-2626
                  srobbins@toddweld.com
 5
             MR. ROBERT S. BEREZIN, ESQ.
 6                Weil, Gotshal & Manges, LLP
                  767 5th Avenue
 7                New York, New York 10153
                  (212) 310-8884
 8                robert.berezin@weil.com
 9                For the Plaintiff;
10
             MR. NICK KAHLON, ESQ.
11           MS. AMY ANDREWS, ESQ.
             MR. STEVEN VOGEL, ESQ.
12                Riley Safer Holmes & Cancila, LLP
                  1 South Dearborn Street, Suite 2200
13                Chicago, Illinois 60603
                  (312) 471-8700
14                nkahlon@rshc-law.com
                  aandrews@rshc-law.com
15                svogel@rshc-law.com
16                For the Defendants;
17
             ALSO PRESENT
18
                  Mr. Nick Page, Videographer.
19
                              *     *     *
20
21
22
23
24
25
```

Page 58

1    bullet point to, "Regulatory mandates, COVID-19 supply
2    disruptions, and labor shortages."  Do you see that?
3  A. I do.
4  Q. What regulatory mandates contributed to the delay and
5    resumption of care at the Norwood Hospital?
6  A. I think regulatory mandates is more of a general -- kind
7    of just a general statement, just given everything that
8    happened to the health care industry post COVID, you know,
9    driving a number of changes, labor shortages, everything
10   else that's described in this bullet.
11 Q. Okay.  Not necessarily specific to Steward; is that what
12   you're saying?
13 A. Not necessarily specific to Steward, correct.
14 Q. The last bullet point refers to, "Failing to provide
15   Steward and MPT with the necessary funds owed under their
16   policies."  Do you see that?
17 A. I do.
18 Q. Do you know how much AGLIC has paid to Steward on its
19   insurance claim?
20 A. My understanding is it's about $90 million.
21 Q. And do you know how much Zurich paid to MPT on its
22   insurance claim?
23 A. I do not.
24 Q. Do you know what Steward did with the $90 million that
25   AGLIC paid on its insurance claim?

Page 59

1   A.  I do not, no.
2   Q.  And so you can't say whether or not any portion of it was
3       used to try to resume operations at Norwood Hospital,
4       right?
5   A.  Yeah.  Cash is fungible.  So my understanding is it's just
6       cash would come into the company, and they would use that
7       to fund operating expenses.
8   Q.  Okay.  Which may or may not have had to do with Norwood
9       Hospital, right?
10              MR. ROBBINS:  Objection.
11  A.  Correct.
12  Q.  If you can now go to Interrogatory 12, does this answer
13      fully and accurately describe all steps taken by Steward
14      to mitigate the losses caused by the storm that affected
15      the Norwood Hospital?
16              MR. ROBBINS:  Objection.
17  A.  To my knowledge, yes.
18  Q.  Just to short circuit this a little bit, if you look at
19      the -- I guess it's technically the fourth paragraph.  The
20      last paragraph at the bottom of page 13, it refers to
21      Steward's engagement of professional consultants and then
22      Steward's efforts to reopen the hospital.  Do you see
23      that?
24  A.  Yes.
25  Q.  When the answer here states that, "Steward's efforts to