UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| MARK KRONFELD, AS TRUSTEE OF THE SHC CREDITOR LITIGATION TRUST,<br><br>      Plaintiff,<br><br>v.<br><br>AMERICAN GUARANTEE AND LIABILITY INSURANCE COMPANY and ZURICH AMERICAN INSURANCE COMPANY,<br>      Defendants. | Civil Action No. 1:21-cv-11902-PBS |

**PLAINTIFF'S OBJECTION TO DISCOVERY MASTER ORDER NO. 15 (ECF NO. 187)**

      Pursuant to Fed. R. Civ. P. 53(f) and the Order Appointing the Honorable Faith S. Hochberg as Discovery Master (ECF No. 149) at § III, Plaintiff Mark Kronfeld, as Trustee of the SHC Creditor Litigation Trust ("Plaintiff"), respectfully objects to and seeks an order vacating Discovery Master Order No. 15 (the "Order" or "Order No. 15") (ECF No. 187).

      This objection concerns an order that imposes extraordinary relief where no discovery violation occurred, no cognizable prejudice has been shown, and no proportional basis for sanction exists. Order No. 15 rests on the premise that Defendants were surprised and prejudiced by Plaintiff's supplementation of its Rule 26 disclosures to include Lisa Martin, Mark Rich, and Victoria Lobban. The record, however, demonstrates the opposite: Defendants themselves repeatedly identified Martin and Rich as individuals with relevant information, sought their documents, subpoenaed their depositions, and represented their intent to depose them months before Plaintiff's supplementation. As to Lobban, her relevance emerged only as discovery unfolded, and Plaintiff timely supplemented once that information became apparent. Under Rule

1

26 and the governing authorities, information already known to a party through discovery does not trigger a duty to supplement, much less justify sanctions.

Order No. 15 imposes sweeping relief untethered to any actual harm. It compels the expedited collection, searching, and production of ten years of custodial emails for three individuals, using search parameters crafted solely by Defendants, and on a timeline that makes meaningful responsiveness, privilege, confidentiality, or HIPAA review impossible. The Order further prevents Plaintiff from redacting confidential patient information as required by the parties' confidentiality stipulation. The relief awarded is not only excessive—it is relief Defendants did *not* request. And it far exceeds the well-established, proportionate remedy recognized in this District for alleged late disclosures: allowing depositions, which the Order already permits.

Rather than curing prejudice, Order No. 15 *creates* it. It forces Plaintiff to divert immense resources to indiscriminate document production, threatens the orderly progress of this already compressed schedule, and imposes burdens vastly out of proportion to any alleged discovery misstep—of which there was none. The law is clear: sanctions must be proportional to actual misconduct and tailored to remedy real harm. Here, there was no Rule 26 violation, no surprise, and no impediment to Defendants' ability to pursue discovery. Fact discovery remained open for months, and Defendants had—and still have—ample opportunity to depose any of these witnesses.

For these reasons, and as set forth more fully below, Order No. 15 should be vacated. The Court should find that Plaintiff's supplementation did not violate Rule 26, that no prejudice resulted from the disclosures, and, with the exception of permitting the additional depositions, that the extraordinary relief ordered by the Discovery Master is unsupported,

disproportionate, contrary to fundamental principles of fair and efficient discovery, and unnecessarily risks upending the schedule.

## I. Relevant Background

Defendants' assertion of "surprise" and "prejudice" stems from Plaintiff's January 13, 2026 supplementation of his Rule 26(a) disclosures, which added six individuals—among others—not previously listed. At that point, **two full months of fact discovery remained** (the current deadline is March 13). Defendants nevertheless sought the most severe sanction available: preclusion of these individuals' testimony at summary judgment and at trial.

The Discovery Master correctly recognized that Defendants could not plausibly profess surprise as to three of the six individuals, because Defendants themselves had moved to compel the collection of their documents in June 2025 (a motion the Discovery Master granted) and had noticed their depositions. But as to Lisa Martin, Mark Rich, and Victoria Lobban, the Discovery Master concluded that Defendants were prejudiced and, on that basis, imposed extraordinary relief: Plaintiff was ordered to "forthwith" collect, search, and produce ten years of custodial email for each individual **within five days** of receiving search terms crafted solely by Defendants, with no opportunity to object, and was barred from proceeding with noticed depositions absent Defendants' consent—despite less than one month remaining in fact discovery. ECF No. 187 at 7.

To understand the magnitude and impropriety of that ruling, it is necessary to recount the relevant factual history.

### A. Plaintiff's Initial Disclosures

Plaintiff filed this action on November 23, 2021, asserting claims arising from the catastrophic June 28, 2020 storm and flood that destroyed Norwood Hospital and the denial of

3

insurance coverage for those losses. Pursuant to Rule 26, the parties exchanged Initial Disclosures on May 6, 2022.

- Plaintiff identified **12 individuals** likely to have discoverable information.
- AGLIC identified **6**.
- Zurich identified **2**, both of whom overlapped with AGLIC.

*See* **Exhibit A**.

### B. The Case is Stayed Pending Resolution of a Threshold Legal Issue

At this same time, the parties and the Court agreed to resolve via cross-motions for partial summary judgment the threshold legal question concerning the interpretation of "surface waters" in the definition of "Flood" within the applicable insurance policy. On November 15, 2022, following briefing and oral argument, the Court granted Defendants' motion, concluding that the policy's flood sublimit applied to all water damage, including that caused by rainwater accumulating on elevated roofs structures (*i.e.*, top-down damage). Given the importance of this legal determination, the Court granted MPT and Steward's request for certification of a controlling question of law pursuant to 28 U.S.C. § 1292(b), during which the case was stayed. ECF No. 51. The First Circuit in turn certified the following question to the Supreme Judicial Court of Massachusetts, which ultimately issued a ruling against Defendants, after which the First Circuit reversed and remanded the summary judgment decision, on July 29, 2024. ECF No. 70.

### C. The Stay is Lifted After Unsuccessful Mediation

Following a Rule 16 Scheduling Conference held on December 5, 2024, the Court: (1) again stayed discovery pending a mediation scheduled for January 22, 2025; and (2) ordered the parties to file a Proposed Joint Statement. ECF No. 77. Zurich's proposed case schedule in the

Joint Statement called for trial to begin at least two months later than Steward proposed. ECF No. 78. On January 6, 2025, the Court adopted Steward's proposed discovery schedule and ordered that fact discovery be completed by June 10, 2025, with trial to begin in January 2026. ECF No. 79.

### D. The Parties Exchange Written Discovery Responses and Commence Document Production (March 2025)

Discovery began in earnest in March of 2025. During which time the parties responded to each others' interrogatories and requests for the production of documents, subpoenaed numerous third parties, and began producing thousands of documents. Discovery proceeded for several months, until substantial disputes arose in May and June of 2025. AGLIC also amended its Initial Disclosures on June 10, 2025, adding two people to its list of individuals likely to possess relevant information.

### E. Defendants Move to Compel the Collection of 10 Individuals' Email Data

On June 18, 2025, Defendants filed a Motion to Compel Production and to Extend Case Deadlines. ECF No. 127. In that Motion, Defendants listed ten individuals—including Lisa Martin, the former CFO for the North Region (which included Norwood Hospital)—as "likely to have responsive information" and requested that their custodial files be collected, searched, and produced. ECF No. 127 at 10-11.

### F. Defendants Notice the Depositions of, and Serve Subpoenas on, 19 Individuals

On July 10, 2025, Defendants noticed the deposition and served subpoenas on 19 individuals and entities—including both Lisa Martin and Mark Rich, Steward Health Care's former President. *See* **Exhibit B**. On July 3, 2025, Defendants took the deposition of Steward's then-Chief Restructuring Officer, John Castellano, who testified that that Mr. Rich "probably would have" information related to the central issue in this case. *See* **Exhibit C**.

5

**G. The Discovery Master is Appointed, Holds a Hearing on Defendants' Motion to Compel, and Enters Order No. 1 on September 9, 2025, Significantly Expanding the Scope of Discovery, and Leading to the Production of Hundreds of Thousands of Documents**

To address the parties' escalating discovery disputes, the Court on July 18, 2025 appointed the Honorable Faith S. Hochberg as Discovery Master. ECF No. 149.

The Discovery Master's first substantive ruling—Order No. 1, issued on September 9, 2025—dramatically expanded the scope of discovery in this case. ECF No. 152. Order No. 1 required Plaintiff to collect, search, and review the custodial files of thirteen individuals spanning a ten-year period, using thirty-one highly intricate search terms, all within forty-five days. The required searches included exceptionally broad terms applied to Steward's former CEO and CFO, resulting in the collection and review of hundreds of thousands of documents.

To meet these obligations, Plaintiff engaged dozens of contract attorneys and resulted in the review of approximately 600,000 documents and the production of roughly 400,000 of them.

During this period, the Discovery Master also directed the parties to identify, by October 15, 2025, the individuals they intended to depose. Defendants identified both Lisa Martin and Mark Rich in their submission. See **Exhibit D**.

**H. Plaintiff Supplements his Initial Disclosures (January 13, 2026)**

Around this time, Defendants asked whether Plaintiff intended to supplement both his Interrogatory Answers—originally served in March 2025—and his Initial Disclosures—originally served in May 2022. Plaintiff agreed to do so and, on January 13, 2026, served Supplemental Answers together with Amended Initial Disclosures. In those Amended Disclosures, Plaintiff identified 32 individuals, including every person Defendants had subpoenaed, *to ensure that Plaintiff would be able to rely at trial on the testimony of any witness Defendants ultimately chose to depose*. See **Exhibit E**.

### I. Defendants Submit Their List of Potential Deponents (January 14, 2026)

The next day, Defendants submitted to the Discovery Master a list of individuals whose depositions they had noticed and whose depositions were scheduled. *See* **Exhibit F**. Included in that list was a category entitled "Other Witnesses Previously Noticed by Defendants, But That May Not Be Deposed, Depending on Meet and Confer Efforts with Plaintiff's Counsel," which included both Lisa Martin and Mark Rich.

### J. Defendants Move for Sanctions, the Hearing, and Order No. 15

On January 26, 2026, Defendants moved for sanctions in response to Plaintiff's Amended Initial Disclosures, "seek[ing] to preclude only six new individuals" from testifying at trial—including Lisa Martin, Mark Rich, Victoria Lobban, Dr. Octavio Diaz, John Polanowicz, and Stephen Van Ness—on the ground that their disclosure purportedly caused surprise and prejudice. *See* **Exhibit G**.

This submission followed a January 22 hearing at which the Discovery Master directly asked Defendants' counsel: "[o]f the 24 added people, Ms. Andrews, how many of them are witnesses you never heard of before, that you never thought you would need to be deposed or have anything to do with this case?", to which Defendants' counsel responded "two"—Victoria Lobban and another individual whom Defendants ultimately did not seek to preclude. *See* **Exhibit H**.

### K. Information Learned Post-Order No. 15

On Friday afternoon, February 13, 2026, the Discovery Master issued Order No. 15. ECF No. 187. The Order directed Plaintiff to collect the custodial email files of the three individuals Defendants sought to preclude—Lisa Martin, Mark Rich, and Victoria Lobban—even though Plaintiff did not previously possess those files and even though they collectively comprise

7

millions of documents. The Order further required Plaintiff to apply search terms devised solely by Defendants, spanning a ten-year period, with no opportunity to object, and to produce *all* resulting documents—without withholding or redacting anything "except … direct communications between Plaintiff's counsel"—by Friday, February 20.

By Tuesday afternoon, Plaintiff had managed to process the custodial data for Ms. Martin and Mr. Rich and apply Defendants' dozens of search terms. *See* **Exhibit I**. The results were staggering: **more than 104,000 documents** would need to be reviewed and produced in less than three days. As of the filing of this Objection, Plaintiff is still in the process of collecting and processing Ms. Lobban's custodial files.

## II. Argument

### A. Order No. 15 Should Be Vacated Because Plaintiff Complied With Rule 26 and Defendants Suffered No Prejudice

Neither Defendants nor the Discovery Master has identified a single authority supporting the proposition that a party may (1) move to compel the collection and production of an individuals' documents, and/or (2) notice that individual's deposition, and yet *six months later claim "surprise" and "prejudice" when the individual is identified in a Rule 26 disclosure*.[1] The argument is unprecedented—and untenable.

As a general matter, a party is required under Fed. R. Civ. P. 26(a)(1)(A)(i) to disclose "the name and, if known, the address and telephone number of each individual likely to have discoverable information--along with the subjects of that information--that the disclosing party may use to support its claims or defenses." Under Fed. R. Civ. P. 26(e)(1)(A), a party is only under an obligation to "supplement or correct its disclosure … if the party learns that in some

---

[1] Because the Discovery Master correctly concluded that the other three individuals whom Defendants sought to preclude from testifying at trial were not a surprise, for largely the same reasons as apply to the witnesses at issue here, Plaintiff does not address Dr. Octavio Diaz, John Polanowicz, or Stephen Van Ness. *See* ECF No. 187, p. 6.

8

**material** respect the disclosure or response is incomplete or incorrect, **and** if the additional or corrective information **has not otherwise been made known to the other parties during the discovery process or in writing**" (emphasis added).

Courts have long recognized that Rule 26 is a pragmatic rule, not a trap for the unwary. Its purpose is to ensure that parties can identify and locate relevant witnesses—not to penalize a party for failing to recite the name of someone the opposing party already knows, deposes, or affirmatively targets. As Magistrate Judge Collings put it, the rule exists "to give the opposing party information as to the identification and location of persons with knowledge so that they can be contacted in connection with the litigation, … for being interviewed or for being deposed or for doing background investigation." *Biltrite Corp. v. World Rd. Markings, Inc.*, 202 F.R.D. 359, 362 (D. Mass. 2001). Where that purpose has been satisfied, courts routinely hold that no supplementation is required and no violation exists. *White v. City of Middletown*, 45 F. Supp. 3d 195, 209 (D. Conn. 2014) (holding where "a party knew of the witnesses and the information they possessed, the duty to supplement disclosure under Rule 26(e) does not apply").

Thus, when a party already knows of the witness and has sought their deposition, the witness has unquestionably "otherwise been made known." *See Fiumano v. Metro Diner Mgmt. LLC*, No. CV 17-465, 2022 WL 2541354, at *7 (E.D. Pa. July 7, 2022) (finding no violation or duty to supplement disclosures where "Plaintiffs sought to depose" individual at issue); *United States ex rel. Landis v. Tailwind Sports Corp.*, 234 F. Supp. 3d 180, 192 (D.D.C. 2017) (finding party was on notice, even where individual was not listed on disclosures where, among other factors, individual was "designated … as a Rule 30(b)(6) witness"). This is especially so where the party claiming surprise possessed documents referencing the witness. *Koral v. Saunders*, No. 17-CV-7011, 2025 WL 1332017, at *3 (E.D.N.Y. May 7, 2025) ("As a result, the Court cannot

9

find Defendants violated their obligation to supplement their initial disclosures, since Plaintiff herself produced documents during discovery that included information about Mr. Pilevsky[.]").

Indeed, the Advisory Committee has expressly stated that there is "no obligation to provide supplemental or corrective information" regarding a witness whose identity has been made known *"during the taking of a deposition."*  Fed. R. Civ. P. 26 advisory committee's note (1993) (emphasis added).

Against this settled backdrop, Order No. 15's finding of a Rule 26 violation cannot stand.

### 1. *Lisa Martin*

The record leaves no doubt that Defendants were well aware of Ms. Martin's relevance long before Plaintiff's amended disclosures.  Defendants themselves placed her squarely at issue.  Their June 18, 2025 Motion to Compel identified Ms. Martin as an "individual[] … likely to have responsive information."  ECF No. 127, at 10.  They attached documents involving Ms. Martin to support her inclusion as a custodian.  *Id*., at Exhibit J .  Their own consultant identified Ms. Martin on a July 10, 2020 "List of Contacts" for Steward Health Care System LLC's "Business Interruption Team," which ***Defendants produced*** at **ZUR0003037**.

As in *Koral*, Defendants "produced documents during discovery that included information about [Ms. Martin]," foreclosing any argument that they lacked notice. *Koral*, 2025 WL 1332017, at *3.  They also served a subpoena for her deposition on July 10, 2025, *see* **Exhibit B**, discussed her relevance at the hearing on their Motion to Compel, and reaffirmed their intent to depose her in both their October 15, 2025 joint submission and their January 14, 2026 filing addressing deposition priorities.

No rule penalizes Plaintiff for failing to "disclose" a witness whom Defendants already sought to compel, noticed, and repeatedly identified as relevant.

>   2.   *Mark Rich*

The same is true for Mr. Rich, the former President of the now-bankrupt Steward Health Care System LLC ("Steward"). On July 3, 2025—two weeks Defendants first focused on Ms. Martin in their Motion to Compel—Defendants elicited testimony from Steward's Chief Restructuring Officer identifying Mr. Rich as an individual who "would probably know" about Steward's efforts to reopen Norwood Hospital, an issue the Defendants have been laser-focused on in this litigation. **Exhibit C**. Of course, Mr. Rich was no secret to Defendants: he was the President of Steward beginning in 2023.

As with Ms. Martin, Defendants subpoenaed Mr. Rich on July 10, 2025. *See* **Exhibit B**. And, as with Ms. Martin, they reaffirmed their intent to depose him—twice—through their October 15, 2025 and January 14, 2026 submissions to the Discovery Master. *See* **Exhibit D** & **F**.

On these facts alone, Defendants' cries of prejudice regarding Ms. Martin and Mr. Rich ring hollow and should have been rejected out of hand. These circumstances fall squarely within the Advisory Committee's contemplation: where a witness's relevance has been "otherwise made known" through discovery, there is no obligation to supplement—and thus no Rule 26 violation.

Despite this, the Discovery Master reasoned broadly that because Plaintiff included "new" individuals in his amended disclosures, Defendants were prejudiced because they now had to "turn their attention" to reviewing documents, deciding whom to depose, and preparing for potential depositions of the "late-disclosed individuals." ECF No. 187, p. 5. But the premise that Defendants "relied on the absence" of Ms. Martin and Mr. Rich in Plaintiff's disclosures to make deposition decisions, *id.* at 6, is demonstrably inaccurate. If that were true, Defendants

would not have subpoenaed Mr. Rich and Ms. Martin in July 2025—*when neither appeared on Plaintiff's disclosures*—and would not have twice reiterated their plans to depose them in October 2025 and January 2026—again *before they were listed in Plaintiff's disclosures*.

The record shows the opposite: Defendants made their own strategic choices about whom they regarded as significant witnesses and repeatedly represented their intent to depose Martin and Rich *until* January 14, 2026—the day *after* Plaintiff served his amended disclosures—when they abruptly reclassified both as "Other Witnesses Previously Noticed . . . But That May Not Be Deposed." **Exhibit F**. The only logical inference is that Defendants abandoned their interest in these witnesses not for lack of notice, but because Plaintiff had now formally disclosed them.

The unfortunate reality is that the Discovery Master accepted Defendants' unsupported narrative. But the evidence admits of only one conclusion: Defendants were fully aware of Martin and Rich, pursued their documents, noticed their depositions, and only disclaimed interest once Plaintiff's amended disclosures undermined their contrived claim of surprise.[2]

Accordingly, Plaintiff had no obligation to formally disclose Lisa Martin or Mark Rich, and Order No. 15's contrary premise cannot stand.

    3.    *Victoria Lobban*

The circumstances surrounding Ms. Lobban differ somewhat from those of Ms. Martin and Mr. Rich, but they similarly reveal no Rule 26 violation. As Plaintiff explained to both Defendants and the Discovery Master, Ms. Lobban did **not** work at Norwood Hospital at the time of the June 28, 2020 loss. She was employed at an entirely different Steward facility—St. Elizabeth's Medical Center—and remained there until May 2021, nearly a year after the loss.

---

[2] Defendants never genuinely viewed Plaintiff's Disclosures as the lodestar of witness relevance. If they had, they would be seeking to depose Chris Kidney, David Soucy, Jeff Williams, Ronald Papa, Sean O'Mara, Bright Wright, and Don Simmons—all of whom were disclosed in Plaintiffs' disclosures since 2022. They are not.

12

Unsurprisingly, therefore, Ms. Lobban appeared only rarely in Plaintiff's early productions: across the first twelve volumes—comprising more than 24,000 documents—only twenty even mentioned her. It was not until Plaintiff's thirteenth production volume, served on September 4, 2025, and in subsequent productions *following the Discovery Master's significant expansion of the scope of permissible discovery*, that Ms. Lobban appeared with any meaningful frequency, reflecting her later role in assembling financial materials provided to Defendants during the 2021 claim-adjustment period.

Plaintiff promptly amended his disclosures upon learning, through the discovery process, that Ms. Lobban played a role relevant to the issues in this case. This is precisely the scenario contemplated in *Koral*, where supplementation is not required until a party "had no way of knowing [the witness] was a person likely to have discoverable information . . . until discovery." *Koral*, 2025 WL 1332017, at *3. It should not be lost on the Court that, in addition to only recently learning about the Discovery Master's expansive view of discoverability (at least as to Defendants' defenses), Steward's bankruptcy has left the company largely hollow, meaning Ms. Lobban is no longer an employee of the company and that Plaintiff was learning of Ms. Lobban's involvement in real-time as documents were identified, collected, and reviewed.

At the time Plaintiff supplemented, two full months of fact discovery remained—more than sufficient time for Defendants to depose Ms. Lobban had they wished to do so. Yet Defendants have never indicated any genuine desire to depose her.

In short, Plaintiff timely disclosed Ms. Lobban once her relevance emerged, and Defendants suffered no prejudice whatsoever.

      B.      <u>Order No. 15 Should be Vacated Because the Relief Imposed is Grossly Disproportionate to any Alleged Harm, Inflicts Irreparable Prejudice, Will Unduly Delay This Case</u>

Order No. 15 does not merely accept Defendants' unfounded claims of prejudice—it amplifies them into a remedy as severe, in these circumstances, as outright preclusion. The problems with the Order are manifold. At a minimum, it (1) disregards the most common, proportional, and appropriate remedy for alleged late disclosures; (2) threatens enormous delay and severe prejudice to Plaintiff by destabilizing the discovery schedule; (3) awards relief Defendants stated they did not want; and (4) compels the production of potentially privileged material under impossible conditions.

Sanctions for purported discovery violations must be tailored to the actual harm and "imposed in proportion to the magnitude of the misconduct." *Gonsalves v. City of New Bedford*, 168 F.R.D. 102, 116 (D. Mass. 1996). That principle is why courts overwhelmingly treat depositions—not punitive document-production orders—as the proper remedy for late-identified witnesses. Indeed, courts in this District have authorized depositions even when the disclosure occurred after the close of discovery and at the summary judgment stage. In *Williams v. City of Bos.*, No. CIV.A. 10-10131-PBS, 2012 WL 3260261, at *4-5 (D. Mass. Aug. 7, 2012) (Dein, M.J.), the court refused to impose severe sanctions despite the total failure to disclose a critical witness until summary judgment, holding that a deposition cured any prejudice because defendants already "knew of her existence" and "knew she was a key witness."

The cases cited in Order No. 15 are nothing like this one. *Poitra* involved a witness disclosed **four months after** discovery closed; *Lebada* concerned plaintiffs who never made **any** Rule 26 disclosures despite multiple court orders; *Ollier* affirmed preclusion where witnesses were disclosed **15 months after** the close of discovery; and *Fiumano* reopened discovery only

14

for 35 witnesses who had **never** been disclosed at all.  In each case, the prejudice was real, profound, and long-festering.

Here, by contrast, the three individuals at issue were identified with approximately two months left in discovery—far from the extreme circumstances warranting draconian sanctions. The factors governing proportional sanctions—ability to cure, available time, and impact on the docket—all point sharply toward the least severe remedy, not the most.  *See Williams*, No. CIV.A. 10-10131-PBS, 2012 WL 3260261, at *4 (listing factors).  Defendants have ample time to depose these three individuals, and there will be no effect on the case's docket.[3]

Against this backdrop, Order No. 15's sweeping relief cannot be justified.  Issued Friday afternoon, February 13, 2026, the Order mandates "expedited" collection, searching, and production of **ten years** of custodial email for three individuals.  It requires Defendants to provide search terms within two days and assumes—counterfactually—that Plaintiff can collect all custodial data within that window.  For Mr. Rich alone, this is impossible: he joined Steward in early 2013 as Chief Financial Officer, later assumed expanded executive roles including Executive Vice President of Global Operations and Chief of Staff to the Chairman, left at the end of 2020 after periods of consulting and semi-retirement, and ultimately returned to be named President and a member of the Board of Directors on November 20, 2023.  His emails *number in the millions*, most wholly irrelevant.  Moreover, Steward's liquidation means that even accessing historical email data requires navigating multiple third-party service providers.

---

[3] Plaintiff respectfully notes only in a footnote—without presuming any outcome—that the parties have engaged in discussions about a limited extension of the fact-discovery deadline.  No order has been entered as of the time of filing.

Plaintiff received Defendants' search terms on Sunday night—dozens of broad, indiscriminate terms that sweep in massive amounts of irrelevant and privileged information. *See* **Exhibit I**. One illustrative example: any document containing both "Steward" and "@mass.gov" from 2015–2024—a term guaranteeing the capture of hundreds of thousands of irrelevant communications concerning unrelated administrative matters.

The Order then compounds these defects by directing that Plaintiff must produce all resulting documents within **five days** and "complete its internal review within this period." ECF No. 187, at 7. Given that processing alone consumes most of that window, the only plausible interpretation is that Plaintiff is expected to produce hundreds of thousands of documents **without any review at all**. Worse, the Order bars Plaintiff from asserting any privilege other than for "direct communications between Plaintiff's counsel." This unprecedented limitation ensures the disclosure of vast quantities of privileged, confidential, and likely HIPAA-protected material—harm that cannot be undone, even with clawback. Indeed, despite the parties' carefully negotiating an Addendum to the Confidentiality Stipulation entered in this case that specifically provides for mechanisms to protect and redact confidential patient information protected by HIPAA and other state and federal statutes, *see* ECF No. 187. Order No. 15 provides no time or authority for Plaintiff conduct this review. Compliance with the Order would therefore mean, in all likelihood, violation of state and federal laws and exposure of thousands of people's confidential health information, for no reason whatsoever.

The prejudice is not theoretical; it is immediate and overwhelming. Plaintiff was scheduled to take four third-party depositions this week—depositions of individuals retained by Defendants in the underlying adjustment. One has already been rescheduled because Defendants belatedly realized the witness had produced none of their internal emails. Yet Order No. 15

requires Plaintiff simultaneously to divert all resources to an impossible document-review exercise while still proceeding with depositions—unless Defendants agree otherwise, a concession they have not given.

In short, Order No. 15 requires Plaintiff to accomplish *in one week* what no firm could reasonably complete in a month: collect millions of documents; process, search, and review hundreds of thousands; produce materially irrelevant and privileged material; and prepare for and conduct multiple depositions.

And for what? Defendants never sought this relief. They sought only to preclude testimony. Defendants did not include Mr. Rich in any request for custodial documents—not even when they moved to compel the custodial files of Steward's CEO and CFO and Ms. Martin's emails in June 2025. As for Ms. Lobban, she surfaced only through later productions, as do countless others. Nothing in the record supports forcing the collection and production of ten years of her emails.

Given these realities, the only proportional remedy—if any—is the one Defendants themselves originally sought in July 2025: the opportunity to depose the three individuals. If, after doing so, Defendants can articulate a good-faith basis grounded in specific, relevant needs for additional documents, they may bring such a request to the Court. Until then, the sweeping, punitive, and wholly unnecessary remedy embodied in Order No. 15 must be vacated.

C. <u>Defendants Have Unclean Hands</u>

Finally, even setting aside the reasons Defendants cannot plausibly claim surprise as to the individuals referenced in Order No. 15, their attempt to weaponize Rule 26 must be rejected for an additional reason: Defendants themselves have failed to comply with the very disclosure obligations they accuse Plaintiff of violating. Their gamesmanship cannot be rewarded.

17

AGLIC's Initial Disclosures identified only six individuals as likely to possess discoverable information, and AGLIC's amended Disclosures, served three years later, contained only two new names. *See* **Exhibit A** & **J**.  Yet when served with a Rule 30(b)(6) deposition subpoena, third-party consultant for Defendants, JS Held—represented by Defendants' counsel—designated multiple witnesses who were never identified in those disclosures. Defendants plainly knew who these witnesses were, and their lone, catch-all reference to "Consultants and Experts That Work with or Were Retained By AGLIC" cannot satisfy their obligations under Rule 26.  Courts reject such blanket categories because they obscure, rather than reveal, who actually possesses relevant information.  *See Fiumano*, No. CV 17-465, 2022 WL 2541354, at *8 (reopening discovery with respect to "Thirty-Five Managers and Servers" where "[t]he problem with all of Defendants' purported 'disclosures' is that none of them actually disclosed the identities of any of the Thirty-Five Managers and Servers or the specific subjects of discoverable information they possessed.").

Unlike Plaintiff—who supplemented disclosures promptly upon learning new information—Defendants have not updated their disclosures.  If Defendants' theory were taken seriously, they would be categorically barred from calling anyone at trial beyond the six individuals listed by name in their own Initial Disclosures.

Defendants' noncompliance underscores the baselessness of their criticism. Plaintiff should not be punished for acting in good faith and amending disclosures while meaningful discovery time remained, particularly when Defendants refused to do the same.  Far from supporting sanctions against Plaintiff, Defendants' conduct demonstrates why their accusations should be rejected—and why Order No. 15 must be vacated.

### III. Conclusion

For all of these reasons, Plaintiff respectfully requests that this Court vacate Discovery Master Order No. 15 and enter an order finding that there was no violation or prejudice as a result of the disclosures of Lisa Martin, Mark Rich, or Victoria Lobban.

        Respectfully submitted,

        PLAINTIFF,

        By its attorneys,

        */s/ Samuel M. Myers*
        Howard M. Cooper (BBO No. 543842)
        Seth J. Robbins (BBO No. 655146)
        Samuel M. Myers (BBO No. 711471)
        TODD & WELD LLP
        One Federal Street, 27th Floor
        Boston, MA 02110
        (617) 720-2626
        hcooper@toddweld.com
        srobbins@toddweld.com
        smyers@toddweld.com

Dated: February 18, 2026

### CERTIFICATE OF SERVICE

I, Samuel M. Myers, hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and that paper copies will be sent to those indicated as non-registered participants on February 18, 2026.

        */s/ Samuel M. Myers*
        Samuel M. Myers