UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MARK KRONFELD, AS TRUSTEE OF THE SHC CREDITOR LITIGATION TRUST,<br><br>        Plaintiff,<br><br>        v.<br><br>AMERICAN GUARANTEE AND LIABILITY INSURANCE COMPANY and ZURICH AMERICAN INSURANCE COMPANY,<br><br>        Defendants. | Civil Action No. 1:21-cv-11902 – PBS |

**DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S
OBJECTION TO DISCOVERY MASTER ORDER NO. 15**

The Discovery Master's Order No. 15 (Dkt. 187) must be considered in context. As this Court is aware (and as today's Order No. 17 (Dkt. 198) further demonstrates), Discovery Master Judge Hochberg has managed discovery while operating between a rock and a hard place. The "rock" is that, as she noted today, "virtually no document searches had been done by the Plaintiff until after the Discovery Master was appointed." Dkt. 198 at 1. Since Judge Hochberg's involvement, Plaintiff has produced hundreds of thousands of records. And the parties dispute whether Plaintiff has met its obligations. The "hard place" is that Judge Hochberg is doing everything humanly possible to keep Court deadlines, including summary judgment deadlines currently set at May 22, 2026. In that context, when Plaintiff Mark Kronfeld, as trustee of the SHC Creditor Litigation Trust ("Plaintiff") just recently served amended Rule 26(a)(1)

disclosures[1] that nearly tripled the number of potential witnesses that the Plaintiff may rely on for its claims and defenses, Judge Hochberg issued a ruling that was necessitated both by the prejudice impacting Defendants and the need to ensure fair and proportional discovery. Her ruling is part of the larger context of the discovery disputes that she is overseeing. It is fair and rational, and it should not be disrupted.

## Background

Plaintiff's objection provides a sanitized recounting of how discovery has proceeded in this case. Obj. at 3–8. The reality is that at every turn Plaintiff has delayed and resisted Defendants' attempts to obtain basic discovery, only to surprise Defendants with late disclosures on the eve of discovery deadlines.

**I.    Overview of Discovery to Date.**

It is simply inaccurate to say that discovery "began in earnest" in March 2025. *Compare* Obj. at 5 *with* Discovery Master Order No. 1 at 2, Dkt. 152. While the parties issued written discovery and began initial document productions in early 2025, Steward did not begin producing materials from its own custodial files until after it was compelled to do so. In the initial stages of discovery, Steward hid that it had not searched any of its employee files for documents responsive to Defendants' requests. Steward admitted this stunning failure in passing during a meet and confer one month before the close of fact discovery on July 10, 2025, but refused to supplement any of its prior document searches. *See* Defs.' Mem. Supp. Mot. Compel at 1, Dkt. 127. Defendants moved to compel disclosure of those relevant materials on June 18, 2025, and the Court appointed Judge Hochberg to resolve the dispute. July 18, 2025, Order, Dkt. 149. Judge Hochberg recognized

---

[1] The original initial disclosures were served by Steward Health Care System LLC. Plaintiff was substituted into this case after Steward Health Care System LLC entered bankruptcy. *See* Dkt. 172, 173.

Steward's failure to comply with its basic discovery obligations and, not surprisingly, ordered Steward to search its employee custodial files. Discovery Master Order No. 1 at 2, Dkt. 152 ("Steward had conducted some searches, and produced documents from a specified group of persons whom Steward contends are the persons most knowledgeable, ***but no search was done of the group of custodians who are Steward officers, managers, or key employees*** .") (emphasis added).

As ordered in Discovery Master Order No. 1, Plaintiff was to complete its document productions by October 24, 2025. *Id.* at 3 (ordering production within 45 days of order). Between September 9, 2025, and November 1, 2025, Plaintiff made the following productions:

| Date | Production Volume | Doc Count | Page Count |
| --- | --- | --- | --- |
| 09/12/25 | STEWARD VOL014 | 4,961 | 34,415 |
| 09/18/25 | STEWARD VOL015[2] | 191,232 | 192,398 |
| 09/19/25 | STEWARD VOL016 | 10,630 | 63,862 |
| 09/26/25 | STEWARD VOL017 | 11,555 | 33,414 |
| 10/03/25 | STEWARD VOL018 | 9,785 | 233,128 |
| 10/10/25 | STEWARD VOL019 | 43,511 | 144,023 |
| 10/17/25 | STEWARD VOL020 | 21 | 346 |
| 10/17/25 | STEWARD VOL021 | 16,276 | 56,692 |
| 10/24/25 | STEWARD VOL022 | 694 | 2,450 |
| 10/24/25 | STEWARD VOL023 | 19,973 | 88,887 |
| 10/31/25 | STEWARD VOL024 | 7,078 | 27,415 |
| 11/01/25 | STEWARD VOL025 | 14,274 | 110,402 |

Plaintiff represented in submissions to Judge Hochberg that it expected to be substantially complete with the production of all responsive, non-privileged documents by October 24, 2025. Dkt. 191-4 at 5. But Plaintiff did not meet that deadline, and it did not seek any extension. Then, on November 1, 2025, Plaintiff represented that "[t]his production substantially completes

---

[2] Steward described its production Volume 15 as 191,232 "non-substantive weekly email invitations that are arguably responsive to Defendants' requests for documents." Sept. 18, 2025 Steward Production Letter, **Exhibit B** hereto.

3

Plaintiff's productions pursuant to the search terms and custodians set forth in Discovery Master Order No. 1." Nov. 1, 2025 Steward Production Letter, **Exhibit A** hereto. Plaintiff stated that the remaining documents to be produced consisted of documents downgraded from privilege and redacted, partially privilege documents. *Id.*

Surprisingly, on December 1, 2025, Plaintiff represented that it had over 20,000 documents left to produce in addition to materials in a company shared drive that Plaintiff had neither collected nor produced.[3] Dec. 1, 2025, Launer Email, **Exhibit C** hereto. The parties met and conferred, and Plaintiffs assured Defendants that it would substantially complete its production by December 15, 2025. Based upon that promise, Defendants agreed to a new case schedule whereby fact discovery would end by March 13, 2026. Judge Hochberg agreed with this schedule and the Court adopted it. *See* Discovery Master Order No. 11, Dkt. 174 (recommending schedule); Order, Dkt. 175 (adopting schedule).

Incredibly, following December 15, 2025, in direct contradiction to its repeated assurances that its production was almost complete, Steward produced 54,556 documents totaling 361,050 pages:

| Date | Production Volume | Doc Count | Page Count |
| --- | --- | --- | --- |
| 12/15/25 | STEWARD VOL026 | 13,584 | 65,698 |
| 12/15/25 | STEWARD VOL027 | 572 | 3,049 |
| 12/16/25 | STEWARD VOL028 | 10,469 | 55,969 |
| 12/22/25 | STEWARD VOL029 | 7 | 1,509 |
| 12/24/25 | STEWARD VOL030 | 6,330 | 65,164 |
| 01/09/26 | STEWARD VOL031 | 21,452 | 159,253 |
| 01/10/26 | STEWARD VOL032 | 1 | 11 |
| 01/15/26 | STEWARD VOL033 | 140 | 688 |
| 01/26/26 | STEWARD VOL034 | 1,059 | 4,173 |
| 01/28/26 | STEWARD VOL035 | 1 | 6 |

---

[3] Defendants identified the apparent nonproduction of materials from the Shared Drive in September 2025 and promptly brought this issue to Plaintiff's attention. After meet and confer discussions, Plaintiff agreed to search and produce materials from that centralized repository.

4

| | | | |
|---|---|---|---|
| 01/29/26 | STEWARD VOL036 | 105 | 1,771 |
| 2/15/2026 | STEWARD VOL037 | 836 | 4,637 |

**This represents a quarter of Plaintiff's overall document production.**[4] These materials included highly relevant documents.

But even then Plaintiff's production was not complete. The entire case schedule relied on Plaintiff's pledge that it would substantially complete its document production by December 15, 2025. *See* **Exhibit C**; Dec. 3, 2025 Email from Mr. Launer to Judge Hochberg, **Exhibit D** hereto. The Parties agreed to exchange privilege logs on December 19, 2025. The Parties agreed to negotiate discovery disputes and bring any unresolved disputes to Judge Hochberg by January 12, 2026. The Parties agreed, with document production behind them, to complete fact witness depositions in the two-month window between January 13 and March 13, 2026. This schedule, assuming Plaintiff's document production was complete by December 15, 2025, was ambitious.

But with Plaintiff's document production stretching *two months* past their December 15 deadline, Defendants have been unable to evaluate strategically Plaintiff's immense document production in the time allowed. Further compounding the delays in the schedule, a number of discovery disputes are currently being decided by Judge Hochberg, who has had to deal with a crushing number of disputes because of Plaintiff's conduct, including Plaintiff's withholding of thousands of documents on deficient claims of privilege. Discovery Master Order No. 17 at 1–2, Dkt. 198 (identifying disputes and ongoing delays in Plaintiff's document production).

---

[4] Steward has produced 416,948 total documents. Setting aside the 191,232 "non-substantive weekly email invitations" in production volume 15, the total substantive production is 225,716 documents. 54,556 equals 24.1% of that total.

## II.      Plaintiff's Late Disclosure of Witnesses.

By the end of 2025, it became apparent to Defendants that Steward's Rule 26 disclosures were deficient, both with regard to witnesses and itemization of damages. Therefore, on December 1, 2025, Defendants requested that Plaintiff amend its initial disclosures by December 22, 2025. Dec. 1, 2025, Letter to Plaintiff at 2–3, **Exhibit E** hereto. Plaintiff did not supplement its disclosures by that date, and counsel for Defendants reiterated its request. Dec. 23, 2025 A. Andrews Email, **Exhibit F** hereto. On December 24, 2025, counsel for Plaintiff indicated that they would serve supplemental disclosures "next week subject to client approval." Dec. 24, 2025 Launer Email to Andrews, **Exhibit G** hereto. Plaintiff did not supplement its disclosures until three weeks later on January 13, 2026.

In its supplemental disclosures, Plaintiff's list of witnesses *upon whom it may rely for its claims or defenses* nearly tripled – from 12 to 33. Given the tight turnaround for fact discovery (even with the relief granted by the Court), Defendants relied upon Plaintiff's Initial Disclosure to determine which witnesses to prioritize for fact depositions, and Defendants did not intend to depose Dr. Octavio Diaz, Victoria Lobban, Lisa Martin, Jon Polanowicz, Mark Rich, and Stephen Van Ness.

When Defendants received Plaintiff's amended disclosure, which included those six witnesses as well as six others, Defendants promptly raised the issue with Judge Hochberg. Defendants requested that Judge Hochberg preclude Plaintiff from relying on testimony from the late-disclosed witnesses at trial as is allowed by 37(c)(1), *See* Jan. 26, 2026, Letter Brief at 2–3, **Exhibit H** hereto. Plaintiff opposed this relief.  Ultimately, Judge Hochberg found as follows: (1) Plaintiff had a duty to supplement their Rule 26(a)(1) disclosures, (2) Plaintiff supplemented their disclosures late in the discovery process "just under the wire" before discovery was set to close, and (3) Defendants were prejudiced by this late disclosure. Indeed, Judge Hochberg found that

Plaintiff's late disclosure adversely affected the pace of discovery by requiring Defendants "to take time late in the discovery phase of this case to turn their attention to reviewing documents involving the late-disclosed individuals; in making their decisions as to which of Plaintiff's potential witnesses to depose; and preparing for any necessary depositions of the late-disclosed individuals." Discovery Master Order No. 15 at 5, Dkt. 187. Judge Hochberg recognized that formal disclosure of the six witnesses "only occurred because the Defendants spurred the Plaintiff to supplement, when it had shown no inclination to do so on its own accord." *Id.* at 5.

Nevertheless, Judge Hochberg declined to preclude Plaintiffs from relying on the six late-disclosed witnesses at trial. *Id.* at 6. Instead, in reliance on case law recognizing her authority to impose alternative sanctions for non-compliance with disclosure obligations (*Id.* at 3 (citing *Lebada v. N.Y.C. Dep't of Educ.*, 2016 WL 626059, at *6 (S.D.N.Y. Feb. 8, 2016)), Judge Hochberg fashioned an alternative sanction. First, Judge Hochberg recognized that custodial records from three of the witnesses had already been produced by Steward: Diaz, Van Ness, and Polanowicz. Due to the prejudice of Plaintiff's late disclosure, Judge Hochberg ruled that Defendants would be permitted to depose these witnesses notwithstanding Defendants' prior decision not to depose them. *Id.* at 6 ("[I]t is also clear that the Defendants were prejudiced by the addition of these persons to Plaintiff's supplemental disclosures, because Defendants had relied on the absence of these names in Plaintiff's disclosures in making their choices as to whom to depose.") and 7 ("[F]or avoidance of doubt, the Discovery Master finds that Defendants may withdraw their earlier decision not to take the deposition of any of these individuals.")

Second, Judge Hochberg found that Defendants did not receive custodial documents nor fully appreciate the potential relevance of the three remaining witnesses: Lobban, Martin, and Rich. *Id.* at 6. Due to the prejudice, surprise, and fast-approaching discovery cutoff, Judge

7

Hochberg ordered Plaintiff to produce custodial records from three of the late-disclosed witnesses on an expedited basis. *Id.* at 6–7. Judge Hochberg explicitly recognized the importance of the compressed timeline: "Plaintiff's internal review shall be accomplished within this time period, because time is of the essence this late in the discovery phase of this case." *Id.* at 7. With fact discovery set to end by March 13, 2026, Judge Hochberg ordered Plaintiff to conduct its collection and search using terms identified by Defendants within 7 days, with allowance for claw-back of any inadvertently produced privileged materials. *Id.*

In compliance with Judge Hochberg's order, Defendants provided search terms for Lobban, Martin, and Rich on Sunday, February 15, 2026. The terms chosen largely followed those that were used to search other custodial emails pursuant to Special Master Order No. 1, with some supplementation to account for information uncovered in discovery.

### Argument

Steward makes three arguments in support of its objection to Discovery Special Master Order No. 15. *First*, it asserts that it complied with Rules 26(a)(1) and 26(e) and that Defendants suffered no prejudice. *Second*, Plaintiff argues that the relief ordered in Special Master Order No. 15 is grossly disproportionate to the harm suffered and prejudicial. *Third*, Plaintiff asserts that Defendants have "unclean hands." None of these arguments is sufficient to displace the reasoned and considered findings of the Discovery Special Master, and the Objection should be overruled.[5]

---

[5] Because the Order at issue here—Discovery Master's Order No. 15, *see* Dkt. 167—contains factual findings and legal conclusions regarding Plaintiff's compliance with Rules 26(a)(1) and 26(e), this Court's review is *de novo. See* Fed. R. Civ. P. 53(f)(3); *accord Arkansas Teacher Ret. Sys. v. State Street Bank & Tr. Co.,* 527 F. Supp. 3d 40, 77 (D. Mass. 2021); *Commonwealth v. ETrade Access, Inc.,* No. 03-11206-NMG, 2013 WL 4048189, at *2 (D. Mass. May 22, 2013)

I.      **Plaintiff Did Not Comply with Rule 26, Causing Defendants Prejudice.**

Judge Hochberg correctly concluded that Plaintiff's disclosure of Steward employees for the first time on January 14, 2025—years after this litigation commenced and mere weeks before the close of fact discovery—was untimely. Rule 26(a)(1) requires a party to disclose the name and contact information of any person that it may "use to support its claims or defenses." Fed. R. Civ. P. Rule 26(a)(1). Those disclosures are subject to supplementation "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. Rule 26(e)(1).

Plaintiff argues that Juge Hochberg erred in this conclusion because the identity of three witnesses was "otherwise made known" to Defendants in the discovery process. Obj. at 8–10. Knowledge that persons were involved in events or on documents is insufficient. Despite Plaintiff's assertions to the contrary, "knowledge of the existence of a witness is distinctly different from knowledge that the person will be relied upon as a fact witness," and the "otherwise made known" exception requires information in "such form and of such specificity as to be the functional equivalent" of a formal supplemental disclosure. *See, e.g., Lebada v. N.Y.C. Dep't of Educ.*, 2016 WL 626059, at *5 (S.D.N.Y. Feb. 8, 2016); *Poitra v. Sch. Dist. No. 1 in the Cnty. Of Denver*, 311 F.R.D. 659, 666 (D. Colo. Dec. 21, 2015); *Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 863 (9th Cir. 2014). The court in *Lebada* left no room for interpretation: Rule 26(a) "fulfills a critical function: transmitting formal notice from the disclosing party to the opposing party that the opposing party should be prepared for the disclosing party to use the information provided by the witness." 2016 WL 626059, at *5 (S.D.N.Y. Feb. 8, 2016).

At no point before their untimely disclosure did Plaintiff make known that Lobban, Martin, and Rich were potential witnesses upon which Plaintiff may rely for its claims or defenses. *Ollier*,

9

768 F.3d 843, 863, 867 (9th Cir. 2014) ("[A]n adverse party should not have to guess which undisclosed witnesses may be called to testify."); *Poitra*, 311 F.R.D. at 666 (D. Colo. 2015) ("a party's collateral disclosure of the information that would normally be contained in a supplemental discovery response must be in such form and of such specificity as to be the functional equivalent of a supplemental discovery response; merely pointing to places in the discovery where the information was mentioned in passing is not sufficient."). Plaintiff's assertions otherwise fall flat.

### A.     Lisa Martin

Plaintiff primarily argues that Martin was "otherwise made known" to Defendants because she was identified in Defendants' June 18, 2025 Motion to compel as an individual "likely to have responsive information," and otherwise mentioned in a "List of Contacts" produced by Defendants. Obj. at 10. As detailed above, Defendants' knowledge of the likelihood that Ms. Martin would have responsive information is not the same as understanding that Plaintiff would rely upon her to prove their claims or defenses. *See Reed v. Wash. Area Metro. Transit Auth.*, 2014 WL 2967920, at *3 (E.D. Va. July 1, 2014) (rejecting the notion that a party's knowledge of potential witnesses is a substitute for compliance with Rule 26). Plaintiff's reliance on *Koral v. Saunders*, 2025 WL 1332017, at *3 (E.D.N.Y. May 7, 2025) is misplaced. The witness at issue in *Koral* appeared on key documents "indicating [his] significance and involvement with" the property at issue in the lawsuit. *Id.* at *4. That Ms. Martin's name appeared as one of fifty names in a "List of Contacts" in no way put Defendants on notice as to her involvement in the issues of this case or the subject matters of information in her possession that Plaintiff would rely upon at trial.

### B.     Mark Rich

Plaintiff similarly argues that Mr. Rich was "otherwise made known" to Defendants because he was the president of Steward beginning in 2023, was mentioned in deposition

10

testimony, was subpoenaed by Defendants for deposition testimony, and because Defendants contemplated deposing him. Obj. at 11–12. As with Ms. Martin, that Defendants were aware that Mr. Rich had discoverable information is not the same as informing Defendants that Mr. Rich would be relied upon as a witness to support Plaintiff's claims.

Courts have rejected the notion that a witness has been sufficiently "otherwise made known" through a mention in deposition testimony. *Lebada*, 2016 WL 626059, at *5 (S.D.N.Y. Feb. 8, 2016) (holding the mere discussion of an individual in documents or deposition testimony is insufficient to create a duty on the opposing party to assume the witness will be relied upon to support the disclosing party's claims). That Mr. Castellano testified in a single line of his deposition that Mr. Rich "would probably know" about Steward's efforts to reopen Norwood Hospital was insufficient to put Defendants on notice that Plaintiff would rely on Mr. Rich in their case.

Again, Plaintiff relies on inapposite case law in *Fiumano v. Metro Diner Mgmt. LLC*, 2022 WL 2541354, at *8 (E.D. Pa. July 7, 2022) for the proposition that a party seeking to depose an individual at issue satisfied Rule 26 disclosure requirements. In *Fiumano*, while defendants had not disclosed a witness in their Rule 26 disclosures, that witness was identified in interrogatory responses that he had verified. *Id.* at *3 The witness also submitted an affidavit in which the witness identified himself as the CEO of the defendant and, most importantly, discussed his personal knowledge of issues related to the litigation. *Id.* at *7. Based upon those written disclosures, the court found that the plaintiff was placed on sufficient notice of the witness's involvement in the case and defendants' intention to rely upon him to support their defenses. *Id.* (concluding that plaintiffs sought to depose witness because of interrogatory responses and affidavit, which sufficiently placed them on notice for purposes of Rule 26). Here, Mr. Rich is one

of 26 newly disclosed witnesses, he was not involved in any prior court submissions, and he was not mentioned in any interrogatory response. His involvement does not rise to the same level of the declarant in *Fiumano* such that Defendants would be on notice of Plaintiff's intention to rely upon him to prove their case.

### C.    Victoria Lobban

As for Ms. Lobban, Plaintiff claims that they were unaware of her involvement in this case until they began their custodial document searches and production in September 2025, after which they "promptly" amended their disclosures. Obj. at 12–13. While Defendants acknowledge that some information can only be gleaned during discovery, Plaintiff's argument that it could not have known it would rely upon Victoria Lobban until late in the discovery period, just before discovery will close, rings hollow in light of the record of delay and concealment throughout discovery. It is undeniable Plaintiff has approached its discovery production as though it has no responsibility to gather information from its own employees. Had Plaintiff properly complied with discovery from the outset in 2021, Plaintiff would have known, likely *years* ago, Ms. Lobban's significance to its claims. This matter has been pending since 2021, and Plaintiff did not declare bankruptcy until 2024. Plaintiff had sufficient time to gather and produce discovery requested from it that would have revealed Ms. Lobban's significance well before Plaintiff went bankrupt, such that Defendant would not be prejudiced by the surprise of the disclosure of Ms. Lobban at the eleventh hour.

**II.    Discovery Master Order No. 15, Which Requires Plaintiff to Search and Produce Records from Witnesses that Plaintiff will "Use to Support its Claims," Constitutes a Reasonable Resolution to the Prejudice Caused by Plaintiff's Failure.**

Federal Rule of Civil Procedure 37(c)(1) vests a court overseeing discovery with great discretion, and it provides that where a party fails to make or supplement a disclosure required by Rule 26(a) or (e), "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial …." Fed. R. Civ. P. 37(c)(1). Consistent therewith, Defendants

12

sought an order directing that the Special Master preclude only six of the 23 belatedly disclosed witnesses: specifically, (1) Dr. Octavio Diaz, (2) Victoria Lobban, (3) Lisa Martin, (4) John Polanowicz, (5) Mark Rich, and (6) Stephen VanNess.  Defendants believed that preclusion of these witnesses was warranted given that none had been identified in Plaintiff's prior Rule 26(a)(1) disclosures nor had they been noticed for deposition by Defendants.

While Judge Hochberg recognized that preclusion *could* be an appropriate remedy under Rule 37(c)(1), the Discovery Special Master nevertheless chose to invoke that Rule's explicit less extreme alternative to "impose other appropriate sanctions."  Fed. R. Civ. P. 37(c)(1)(C).  The decision to do so was clearly within the Special Master's discretion, and Plaintiff makes no argument to the contrary.

The remedy she selected was equally reasonable: the Discovery Special Master noted that of the six witnesses at issue, three had been custodians for purposes of the additional document production that was the subject of Discovery Master Order No. 1, and therefore, no additional discovery was needed.  For the other three witnesses, the Discovery Special Master ordered that the witnesses' files should be part of the document production efforts.  This was soundly within the Special Master's discretion and given the role that the witnesses had at Steward Health, and the way that the witnesses are described in Plaintiff's Amended Disclosures, the witnesses' custodial files should absolutely be provided in discovery.  Further, given the timing of the case, and the delay by Plaintiff in disclosing the witnesses, the process whereby those materials were searched and produced was ordered to be completed on an expedited basis.  When viewed in the overall procedural context of the case, this relief is more than reasonable.

### III. Plaintiff's Unclean Hands Argument Is Without Basis and Does Not Justify Overturning Judge Hochberg's Order.

Finally, Plaintiff asserts that the relief awarded in Special Master Order No. 15 should be vacated because of Defendants' alleged "unclean hands." Obj. at 18–19. Plaintiff's entirely novel theory is that because JS Held—a third party not affiliated with or controlled by Defendants[6]—in response to the 21 topics in Plaintiff's Rule 30(b)(6) deposition notice, chose to designate three separate witnesses to address those issues, Defendants were obligated to update its own Rule 26(a)(1) disclosures to specifically name each of these individuals. This argument has no merit. J.S. Held designated witnesses who consented to testify on its behalf as to topics described by Plaintiff. American Guarantee is not obligated to add those witnesses to its Rule 26 disclosures.

Further, of course, J.S. Held is listed on Defendant American Guarantee's Amended Rule 26(a)(1) disclosure. Plaintiff has had that disclosure since June 2025, and it never raised concern about any deficiencies in the notice provided by the disclosure. Further, the lone case cited by Plaintiff, *Fiumano v. Metro Diner Management LLC*, is inapposite. There, the parties never provided Rule 26(a)(1) disclosures at all. *Fiumano*, 2022 WL 2541354, at *2 (E.D. Pa. July 7, 2022). Rather, the "blanket categories" that were at issue came not from a Rule 26(a)(1) disclosure, but from an interrogatory response and a court-ordered list of more than 3,400 names of individuals with potentially relevant information. *Id.* at *3–4. The court correctly found that providing the information in that format was not an adequate substitute for a Rule 26(a)(1) disclosure, and it allowed plaintiffs to conduct depositions of defendants' summary judgment

---

[6] Plaintiff misleadingly asserts that JS Held is "represented by Defendants' counsel." Obj. at 18. As Plaintiff is aware, Defendants are jointly represented by three separate firms. Only one of these firms, Robbins Kaplan, also represents certain of the third parties engaged by Defendants to provide consulting services in connection with the adjustment of Plaintiff's claim, including JS Held.

14

affiants. In short, Plaintiff has provided no support for its assertion that Defendants were under an obligation to identify specific witnesses for each of the disclosed third party consultants.

## Conclusion

For these reasons, Defendants respectfully request that the court overrules Plaintiff's objection and adopt Discovery Master Order No. 15, Dkt. 187, in its entirety.

Respectfully submitted,

February 20, 2026        By:    *Ronald S. Safer*
                                Jonathan D. Mutch, Esq. (BBO No. 634543)
                                Timothy Wenger (BBO No. 674087)
                                ROBINS KAPLAN LLP
                                800 Boylston Street, 25th Floor
                                Boston, MA 02199
                                Tel: (617) 267-2300
                                Email: JMutch@RobinsKaplan.com
                                       TWenger@RobinsKaplan.com


                                Ronald S. Safer (*pro hac vice*)
                                Nick Kahlon (*pro hac vice*)
                                Amy Andrews (*pro hac vice*)
                                Abigail L. Peluso (*pro hac vice)*
                                Lucas T. Rael (*pro hac vice*)
                                RILEY SAFER HOLMES & CANCILA LLP
                                1 South Dearborn Street, Suite 2200
                                Chicago, Illinois 60603
                                Tel: (312) 471-8700
                                Email: rsafer@rshc-law.com
                                       nkahlon@rshc-law.com
                                       aandrews@rshc-law.com
                                       apeluso@rshc-law.com


                                *Attorneys for Defendants American Guarantee and Liability Insurance Company and Zurich American Insurance Company*

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was filed electronically using the Court's CM/ECF system, which will send electronic notice to all parties of record.

*Ronald S. Safer*

Ronald S. Safer