UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MARK KRONFELD, AS TRUSTEE OF THE SHC CREDITOR LITIGATION TRUST,<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN GUARANTEE AND LIABILITY INSURANCE COMPANY and ZURICH AMERICAN INSURANCE COMPANY,<br><br>Defendants. | Civ. Action. No. 21-cv-11902-PBS |

**DISCOVERY MASTER ORDER NO. 18:**
**Defendants' Redactions of Reinsurance and Reserves Information**

Plaintiff challenges Defendants' redaction of documents related to reinsurance and reserves information, arguing that these documents are relevant to Plaintiff's claims in this matter, that Defendants previously agreed to un-redact them, and that they should be produced in their unredacted form. Defendants oppose Plaintiff's request, arguing that the documents at issue are not relevant to this case, and dispute that they agreed to produce non-relevant documents. Pursuant to the Court's Order appointing the undersigned as Discovery Master (ECF 149), the Discovery Master rules as follows.

Background of the Dispute Relating to Reserve and Reinsurance Information

On June 17, 2025, prior to the appointment of the undersigned Discovery Master, Plaintiff filed its original motion relating to this issue with the Court (ECF 122, 123). In that motion, Plaintiff argued that Defendants improperly withheld documents relating to reserves and reinsurance information on relevance grounds, and improperly redacted information relating to reserves and reinsurance from other documents that had been produced. Plaintiff at that time argued that this information is relevant to its claims that Defendants "acted with financial self-interest and improperly underpaid its loss." (ECF 123 at 15). Plaintiff further argued to the Court that Defendants were improperly withholding documents concerning whether Steward was treated disparately from similarly situated insureds, and that this information was relevant to Steward's claim that Defendants and their consultants failed to conduct a reasonable investigation and deviated from standard practices. (*Id*. at 15-16). Plaintiff asked the Court to order Defendants to "produce, in unredacted form, **all** documents concerning reserves, reinsurance, supplemental insurance, underwriting, and related subjects." (*Id*. at 15) (emphasis in original).

1

Defendants opposed Plaintiff's motion, arguing that evidence of Defendants' reserves and reinsurance information is irrelevant to Plaintiff's claims. (*See* ECF 140). Defendants argued that Plaintiff failed to explain how reserves, which are an insurer's best estimate of the maximum potential liability on a claim, are relevant to Plaintiff's claims against AGLIC, which primarily concern whether AGLIC diligently and in good faith adjusted Steward's claims. Defendants further argued that information relating to Zurich's reserves is even less relevant because Zurich insured Medical Properties Trust ("MPT") (which is not a party to this case), and not Steward. Defendants also disputed the relevance of reinsurance information, arguing that reinsurance is "based solely on business considerations," and is not relevant to insurer-insured bad-faith claims. (ECF 140 at 8).

The above motions to the Court were not ruled upon, and the Court in July, 2025 appointed the Discovery Master to handle discovery disputes in this case (ECF 149). The Discovery Master then quickly held several hearings on a multitude of disputes, reviewing briefing in July and holding oral hearings in August 2025. The issue of reserves and reinsurance was one of a great many discovery disputes argued in those hearings and briefs.

At a hearing with the parties on August 19, the parties informed the Discovery Master that they had reached a compromise on the issue of reserves and reinsurance information. When asked what compromise had been reached, Defendants' counsel explained that Defendants "made a proposal to Plaintiff [that Defendants] will remove the redaction for reserves and reinsurance," that Defendants will "re-review the documents collected for [their] custodians for information relating to these issues and produce that," and that Defendants "agreed to produce the reinsurance contracts." (Aug 19, 2025 Hrg. Tr. at 29:12-22). The Discovery Master asked the parties to submit a stipulation reflecting their agreement, and the parties did so.

On August 26, 2025, the Discovery Master entered a "Stipulation and Order Resolving Certain Issues Raised in Plaintiff's Motion to Compel Discovery from Defendants (ECF No. 122)" (ECF 151).

The Stipulation agreed to by the parties, in relevant part provides:

Defendants American Guarantee and Liability Insurance Company and Zurich American Insurance Company (collectively, "Defendants") shall:

A. Review all documents within their possession, custody, or control that were previously produced with redactions relating to reserves or reinsurance, and re-produce such documents in unredacted form (other than redactions for attorney-client or attorney work product or any other applicable privilege);

B. Review all documents previously collected from their identified custodians (subject to any expansion of the relevant period of time as may be directed by the Discovery Master or Court) for information concerning reserves or reinsurance, and produce all non-privileged responsive documents, and log any documents withheld on the basis of privilege[.]

2

(ECF 151).

On October 17, 2025, Plaintiff filed a motion with the Discovery Master requesting that Defendants be ordered to produce their MPT claim file through October 31, 2024. Plaintiff argued that Defendants' adjustment of the MPT claim through October 31, 2024 was relevant to Plaintiff's claims in this case.

Defendants opposed extending the time window of the production of the MPT claims file beyond August 2023. Defendants argued that they consistently objected to the relevance of the resolution of the MPT claim, which involved a different insured and policy than the one at issue in this case. Defendants further argued that Zurich's agreement to produce the MPT claim file through August 2023 was a compromise by Zurich and that no further expansion was warranted.

The Discovery Master, in Order No. 9, found that the cutoff date for the MPT claim file production should be August 2023. (ECF 167). The Discovery Master stated that Plaintiff would have the chance to test through deposition testimony whether the routine MPT claims adjustment activity continued past August 2023, but ruled that questioning could not probe communications or documents about the MPT settlement negotiations.

On November 14, Plaintiff objected to the Discovery Master's Order No. 9 in a filing with the Court. (ECF 168). The Court (U.S.M.J. Kelley) considered Plaintiff's objection and adopted Discovery Master's Order No. 9, finding "the Discovery Master's approach reasoned and well- balanced, and no argument Kronfeld raises in his objection suggests that her decision to select August 2023 was 'arbitrary' or supports the conclusion that the Order should be disturbed." (ECF 178 at 8). The Court's ruling on December 22, 2025 also affirmed "the limitations imposed by the Discovery Master," finding that "Kronfeld does not demonstrate how these topics – Zurich and MPT's settlement negotiations, related communications, and Zurich's internal settlement discussions – are relevant to his claims concerning his own policy such that he may pry into them." (*Id.*).

On January 22, 2026, the Discovery Master again held a hearing with the parties on outstanding discovery disputes. At the hearing and in associated briefing, Plaintiff argued that Defendants' document production contained relevance-based redactions of reserve and reinsurance portions of documents, arguing that this violates the above-quoted Stipulation. Defendants argued that they re-reviewed the previously produced documents in accordance with the Stipulation, which applied to the documents containing such information about the Steward claim. The documents were re-produced by Defendants with substantial material unredacted as to the Steward insurance claim, but redactions continued for reserves and reinsurance information for the MPT claim on relevance grounds, and also for "information that pertains to the Steward reserves that is attorney client privileged and that specifically is reserve expense which would, if provided, disclose information about amounts that are paid by Zurich to retain counsel." (Jan. 22, 2026 Hrg. Tr. at 81:6-82:19, Defendants' argument at hearing). Defendants contend that all of these redactions are appropriate.

3

When asked by the Discovery Master to respond to Plaintiff's argument regarding the Stipulation language, Defendants replied:

> Our position is we have complied with the stipulation. As they said at the outset, the motion they filed that the stipulation was entered in response to sought production of reserves and reinsurance for the Steward claim. They have that information. . . . It's our position that we gave them what they asked for, and we complied with the stipulation. There is no relevance to the reserves setting for the MPT claim. This is frankly no different than the information they previously sought about the MPT of the settlement which both Your Honor as well as Magistrate Kelly held was not relevant and did not order production of. To the extent they want to understand how the MPT claim was handled and adjusted they have those documents, but the financial value of that is confidential in terms of the settlement, and the reserves that are set both for MPT and other Zurich insureds is confidential information that Zurich receives from its insureds in confidence.

(Jan. 22, 2026 Hrg. Tr. at 85:7-86:7).

In describing their arguments about the relevance of the reinsurance and reserve information of MPT to their case about the Steward claim, Plaintiff argued its relevance to its tortious interference claims as set out in Plaintiff's Second Amended Complaint (ECF 61). Specifically, Plaintiff argued that "Zurich intentionally interfered with the contractural (sic.) relationship between Steward and its company who issued the policy, American Guarantee," and that "the same person from Zurich and AGLIC were (sic.) designated to adjust both claims." (Jan. 22, 2026 Hrg. Tr. at 95:6-15). Plaintiff argues that the Steward and MPT claims were "interrelated" and adjusted "jointly and concurrently." (*Id*. at 95:16-96:1). The only issue before the Discovery Master on this matter is whether or not the Stipulation was entered as a compromise affecting the Steward document production, or whether it also was intended to apply to the Plaintiff's request for documents about the MPT insurance claim, which was in a separate case that has since been settled.

The second issue involved in the Plaintiff's dispute about redactions seeks un-redaction of a summary document of Zurich that tracked the status of multiple Zurich claims that have no connection other than being "large loss" claims. Plaintiff now seeks re-production in unredacted form of a document [alleged to be an example of several similar documents] contained in Defendants' previous production of documents. This document was produced by Defendants because it has a section that discusses the Steward reserves, but which also contained information about completely unrelated other insureds. The only connection between the Steward claim and these other claims is that both were included on this summary document in which the insurer tracked "large loss" claims. Plaintiff was never granted the right to production of these unrelated other insureds' claims nor their reserves information. That information just happened to be on this summary document that also includes information about the Steward claim, to which Plaintiff is entitled.

Defendants had redacted this information when it produced the document at issue, and now Plaintiff argues that it is entitled to an unredacted version under the parties' August 25,

4

2025 Stipulation (ECF 151) regarding reserves for all of these other unrelated insureds. Defendants contend that this category of information is both irrelevant and confidential to Zurich and Zurich's other completely unrelated insureds.

After hearing the parties' positions on these various redaction disputes, the Discovery Master asked Defendants to send unredacted versions of the three documents cited by Plaintiff's briefing as examples of Defendants' improper redaction for *in camera* inspection. Defendant sent these documents for *in camera* review the evening of January 22.

Discovery Master Ruling

The Discovery Master has reviewed all submissions and arguments made on this issue, including Defendants' *in camera* submissions, as well as the relevant allegations made in Plaintiff's Second Amended Complaint. The Discovery Master finds as follows:

1. Defendants' redactions made to tracking information for "large loss" claims for unrelated insureds are entirely appropriate, and those portions of the challenged documents may remain redacted. These types of redactions are made in documents ZUR0152405-408 (at pages ZUR0152405-407) and ZUR0151830-854 (at pages ZUR0151834-854). These specific pages of these documents relate to other insureds that are completely unrelated to this matter – they reflect different types of properties, different locations, different claim events, and entirely different circumstances. Plaintiff makes no showing that anything about the nature of any of these insureds or their claims is in any manner comparable to Plaintiff's claims in this matter. Plaintiff has also not established that it is entitled to make arbitrary comparisons to other unrelated claims for purposes of showing disparate treatment, simply because they are large claims. There is also no indication that through the Stipulation that Defendants agreed to disclose the confidential information of insureds who have no relationship to this case whatsoever. Defendants may maintain these types of redactions for these specific documents and any other documents that contain this type of redacted information.

2. The Discovery Master does not find that Defendants have sufficiently shown that "information about amounts that are paid by Zurich to retain counsel" is information that is attorney/client privileged. Defendants offer no case law or other authority to support the assertion that this type of information is protected by the attorney client and/or work product privilege. This assertion is made for pages ZUR0151140 and ZUR0151141 of document ZUR0151139-143; page ZUR0152408 of document ZUR0152405-408; and page ZUR0151830 of document ZUR0151830-854. Thus, unless Defendants provide the Discovery Master with authority to the contrary by close of business on February 26, 2026, redactions based solely on the ground that knowledge of the information would permit the reader to calculate how much a defense attorney had been compensated shall be unredacted. If authority is provided to the Discovery Master, it will be reviewed promptly to assess if the above ruling should be amended.

3. The Discovery Master requires additional information to properly determine whether documents related to MPT reserves calculations can be redacted on the basis of the language of the parties' Stipulation (ECF 151). The original dispute pertaining to reserve and reinsurance documents as set out in Plaintiff's June 17, 2025 briefing (ECF 123) does not address the

5

relevance of MPT reserves and reinsurance information specifically, but instead more generally argued that Defendants' reserve and reinsurance information should be produced. At the January 22 hearing, Defendants' counsel argued that their compromise to remove redactions for reserve and reinsurance information was for the Steward claim only. Whether this recollection is correct will be based on the history and timeline of the Plaintiff's document demand; the Defendants' response; the briefs and argument to the Discovery Master last August; and the redactions actually made by Defendants before the Stipulation was agreed upon. Only with this information can the Discovery Master determine whether the language of the Stipulation was intended solely to apply to the Steward reserves/reinsurance calculations, or whether it was written in response to a production/redaction dispute about documents reflecting reserves/reinsurance for both Steward and MPT. That cannot be ascertained from the language of the Stipulation, without more.

      The Discovery Master therefore requires that Defendants provide the case-history communications necessary to support their position that the parties understood that this Stipulation only applied to the Steward reserves/reinsurance information. Plaintiff shall also submit the sentences or paragraphs from documents necessary to support its contention as to the contrary meaning of the Stipulation, within the context of the case history prior to the date of the Stipulation. Both submissions shall copy/paste the relevant paragraphs from these documents, properly cited by date and name of document preceding the Stipulation, but shall not send the entire documents. Nor shall documents post-dating the date of the Stipulation be submitted, unless they specifically refer to the Stipulation. These submissions shall be submitted by Feb 26, 2026.

**SO ORDERED**

Dated: February 24, 2026                /s/ *Faith S. Hochberg*
                                              Hon. Faith S. Hochberg, U.S.D.J. (ret.)