**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

MARK KRONFELD, AS TRUSTEE
OF THE SHC CREDITOR
LITIGATION TRUST,

      Plaintiff,

      v.

AMERICAN GUARANTEE AND
LIABILITY INSURANCE COMPANY
and ZURICH AMERICAN INSURANCE
COMPANY,

      Defendants.

Civil Action No. 1:21-cv-11902-PBS

**PLAINTIFF'S OPPOSITION TO DEFENDANT**
**AMERICAN GUARANTEE AND LIABILITY INSURANCE COMPANY'S**
**<u>MOTION TO AMEND ITS ANSWER AND DEFENSES</u>**

**Table of Contents**

I. Introduction.................................................................................................................... 1

II. Background .................................................................................................................. 3

    A. The Loss and the Two Insurance Claims—Separate but Intertwined................................. 3

    B. Steward's Clear Communication about Rebuilding and Repairing Scenarios ................... 5

    C. Defendants' Bad Faith Adjustment Comes to Light During Discovery ............................ 7

    D. The Lawsuit and Discovery ....................................................................................... 9

III. Argument ................................................................................................................... 11

    A. Standard of Review ................................................................................................. 11

    B. The Motion is Futile Because the Amended Answer Fails to State the Elements of
       a Legal Defense........................................................................................................ 11

        i. AGLIC Failed to Plead Any Actionable Misrepresentations or Concealment of
           Fact................................................................................................................... 13

           a. AGLIC Alleges No Misrepresentations or Concealment of Existing Facts ......... 13

           b. AGLIC Alleges No Authority for Steward to Rebuild the Hospital..................... 14

           c. AGLIC Fails to Plead Its Allegations with the Requisite Particularity ................ 15

        ii. AGLIC's Defense Fails to Allege the Materiality of Any Alleged
           Misrepresentation............................................................................................... 16

    C. The Motion and Amended Answer Are Prejudicial at This Late Stage of
       Discovery ................................................................................................................ 18

    D. There Is No Excuse for AGLIC's Delay...................................................................... 19

IV. Conclusion ................................................................................................................. 20

**Table of Authorities**

**Cases**

*Alt. Sys. Concepts, Inc. v. Synopsys, Inc.*,
    374 F.3d 23 (1st Cir. 2004) ................................................................................................ 15

*Bryan Corp. v. Chemwerth, Inc.*,
    C.A. No. 12-10446-MLW, 2013 WL 6489785 (D. Mass. Dec. 9, 2013) .............................. 12

*Calderon-Serra v. Wilmington Tr. Co.*,
    715 F.3d 14 (1st Cir. 2013) ................................................................................................ 19

*Glassman v. Computervision Corp.*,
    90 F.3d 617 (1st Cir. 1996) .......................................................................................... 11, 12

*Hatch v. Dep't for Child., Youth & Their Families*,
    274 F.3d 12 (1st Cir. 2001) ................................................................................................ 12

*Karth v. Keryx Biopharmaceuticals, Inc.*,
    6 F.4th 123 (1st Cir. 2021) ................................................................................................. 11

*Kaufman v. CVS Caremark Corp.*,
    836 F.3d 88 (1st Cir. 2016) ................................................................................................ 15

*Logan Equip. Corp. v. Simon Aerials, Inc.*,
    736 F. Supp. 1188 (D. Mass. 1990) .................................................................................... 14

*Maruho Co. v. Miles, Inc.*,
    13 F.3d 6 (1st Cir. 1993) .................................................................................................... 15

*Nikitine v. Wilmington Tr. Co.*,
    715 F.3d 388 (1st Cir. 2013) .............................................................................................. 11

*North Am. Catholic Educ. Programming Found., Inc. v. Cardinale*,
    567 F.3d 8 (1st Cir. 2009) .................................................................................................. 15

*O'Leary v. New Hampshire Boring, Inc.*,
    323 F.R.D. 122 (D. Mass. 2018) ......................................................................................... 12

*Palmer v. Champion Mortg.*,
    465 F.3d 24 (1st Cir. 2006) ................................................................................................ 11

*Resolution Trust Corp. v. Driscoll*,
    985 F.2d 44 (1st Cir. 1993) .......................................................................................... 12, 13

*Rodriguez v. Doral Mortgage Corp.*,
    57 F.3d 1168 (1st Cir. 1995) .............................................................................................. 19

*Rodriguez-Ortiz v. Margo Caribe, Inc.*,
    490 F.3d 92 (1st Cir. 2007) ................................................................................................ 12

*Transwitch Corp. v. Galazar Networks, Inc.*,
    377 F. Supp. 2d 284 (D. Mass. 2005) ................................................................................. 11

*Turner v. Liberty Mut. Ret. Benefit Plan*,
    350 F.R.D. 1 (D. Mass. 2025) ........................................................................................... 18

*Villanueva v. United States*,
    662 F.3d 124 (1st Cir. 2011) ............................................................................................ 19

**Statutes**

M.G.L.A. 176D,
    "Chapter 176D" ................................................................................................................. 7

**Rules**

Fed. R. Civ. P. 12,
    "Rule 12" .............................................................................................................. 11, 12, 16

Fed. R. Civ. P. 15,
    "Rule 15" ........................................................................................................................... 3

Fed. R. Civ. P. 9(b),
    "Rule 9(b)" .............................................................................................................. 2, 15, 16

Fed. R. Evid. 408 ................................................................................................................... 15

## I.    __Introduction__

Plaintiff Mark Kronfeld, as Trustee of the SHC Creditor Litigation Trust ("Plaintiff"), hereby opposes American Guarantee and Liability Insurance Company's ("AGLIC") Motion to Amend Its Answer and Defenses ("Motion") (ECF No. 207).

AGLIC's Motion arrives at the eleventh hour of a five-year litigation and seeks to inject an entirely new "concealment and misrepresentation" defense that is both legally defective and factually impossible. The Motion is the culmination—not the correction—of Defendants' prolonged bad-faith conduct in their handling of the Norwood Hospital claims and their litigation strategy in this case.

The underlying facts have been known since the beginning. A catastrophic storm shut down Norwood Hospital in June 2020, which was operated by the now bankrupt Steward Health Care System LLC (Steward"). Two related insurance claims followed: Medical Properties Trust ("MPT"), who owned the land and Norwood Hospital itself, submitted its claim to Zurich American Insurance Company ("Zurich") for building damage, and Steward submitted its claim to AGLIC—Zurich's wholly owned underwriting shell—for business-interruption losses and damage to its own property. Because the business-interruption period depended entirely on the timeline for repairing MPT's building, Zurich and AGLIC assigned both claims to the same adjuster, Mark Graves, and acknowledged repeatedly that the two claims were inseparable.

Steward and MPT, for their part, communicated repeatedly and transparently that the damage was catastrophic and that a full rebuild was fast becoming the only realistic path. Their December 2020 submissions made that clear, and their consultants' analyses said the same. But as discovery has now revealed, Defendants' response to this evidence was not to investigate it, reconcile it, or share it; it was to bury it.

**The turning point came in December 2020**, less than six months after the loss, when

1

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████

Rather than adjust the claim in accordance with this evidence, Defendants acted to suppress

it—████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████ Discovery has now revealed the full extent of that conduct,

including internal documents, consultant testimony, and Defendants' own admissions.

It is only in the face of this mounting record that AGLIC seeks to reinvent its theory of the

case. Yet the proposed affirmative defense is futile as a matter of law: it is unsupported by any

actionable misrepresentation; it fails to satisfy Rule 9(b); it ignores the undisputed fact that only

MPT—not Steward—had authority to ████████████████████████████████; and it is

contradicted by Defendants' own contemporaneous knowledge and documents.

Even if the proposed defense were viable—which it is not—AGLIC offers no justification

for its delay. The vast majority of the documents cited in its Motion have been in Defendants'

possession for five to ten months. Plaintiff even asked Defendants directly, in October 2025,

whether they intended to amend their Answer in light of their shifting theories; Defendants

remained silent while simultaneously seeking schedule extensions that placed Plaintiff's expert

2

disclosure deadline before the close of fact discovery. Only after securing that tactical advantage—and days before the scheduled Rule 30(b)(6) depositions of AGLIC and Zurich—did AGLIC unveil this new theory.

Allowing amendment now would be profoundly prejudicial. Plaintiff would need to pursue extensive new discovery from Defendants, MPT, and multiple consultants on issues never previously identified as disputed—all with only days remaining before expert disclosures are due and weeks before fact discovery closes. Rule 15 does not require courts to endorse trial by ambush. AGLIC's Motion is not a good-faith attempt to refine the pleadings; it is a last-ditch effort to delay resolution of a claim it has mishandled from the start. The Motion should be denied.

## II.    Background

### A.  The Loss and the Two Insurance Claims—Separate but Intertwined

On June 28, 2020, a once-in-a-generation flood and storm deluged Norwood, Massachusetts, causing 5.75 inches of rainfall in 90 minutes and massive flooding throughout Norwood Hospital. Second Amended Complaint and Jury Demand, ECF No. 61, ¶34. The damage was catastrophic. Power was lost, patients were evacuated, and by the next day, the Hospital was no longer in operation.

Two insurance claims resulted from the loss. MPT, the owner of the Hospital building, filed a claim with its insurer, Zurich, for the damage to the building itself. Steward, the tenant and operator of the Hospital, filed a claim with AGLIC—a wholly Zurich-owned shell company. Steward was insured for: (1) Time Element loss, consisting of the lost income attributable to the disruption of hospital operations and the extra expenses incurred to mitigate losses and maintain operations, and (2) Personal Property loss, consisting of the loss of business personal property it owned within and the improvements and betterments it had made to the Hospital.

A *single* person, Mark Graves, adjusted *both* claims on behalf of *both* Defendants. *See* **Ex.**

3

██████████  Steward's Time Element coverage extended from the date of the storm until the hospital could be restored to its pre-loss operating condition—a timeline that necessarily depended on MPT's ability to repair the building. Defendants themselves repeatedly acknowledged this dependency. ████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███

The claims process therefore required a full investigation into the extent of building damage, regardless of whether Steward had a claim itself, to determine the value of MPT's claim. And that is what they did. ██████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████  Had either MPT or Steward attempted to move forward with constructing a new hospital before that investigation was complete, they would have risked destroying critical evidence and voiding coverage under their policies.

The outcome of the MEP testing also bore directly on the parties' rights and obligations under the ███████████  ████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

4

███████████████████████████████ Nothing in the lease permitted Steward, as tenant, to elect to rebuild an entirely new hospital. Indeed, when AGLIC filed this Motion, it already possessed the master lease and Steward's sworn interrogatory response confirming that "the ultimate decision whether to tear down the existing facility and construct a new hospital rested with [MPT], as the property owner." *See* **Ex. D** at 7.

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

█████████████████████

## B. Steward's Clear Communication about Rebuilding and Repairing Scenarios

Despite the inherent complexity of assessing the Hospital's damage—including the condition of its interconnected MEP and medical-equipment systems—Steward maintained an open and transparent dialogue with AGLIC and Zurich regarding the likely path forward. From the earliest stages of the adjustment process, Steward consistently communicated its view that the extent of the destruction made a full rebuild far more probable than a repair (or as Defendants repeatedly stated, just be dried out and repaired).

███████████████████████████████████████████████

███████████████████████████████████████████████

███████

███████████████████████████████████████████████



Against this consistent record of transparency, AGLIC now relies on

███████████████████████████████████████████████████████████████████

██████████   *See* ECF 208-1, Ex. B at 1.  As Defendants have repeatedly attempted (and failed) to do throughout the litigation, they seize on this isolated statement and attempt to elevate it into evidence of concealment. But viewed in context—months before any meaningful damage assessment was complete, and in the face of the repeated, formal disclosures described above—the ████ cannot support the narrative AGLIC seeks to construct.

## C. Defendants' Bad Faith Adjustment Comes to Light During Discovery

Discovery has confirmed what Steward long suspected: Defendants' antagonistic and inconsistent adjustment of the Norwood Hospital claims was not the product of confusion, but of design. Although AGLIC now contends that Steward concealed information during the adjustment process, the record shows the opposite. Steward repeatedly disclosed its position; it was Defendants who concealed, disregarded, and distorted the facts. The evidence developed in discovery—much of it from Defendants' own witnesses and documents—reveals a pattern of bad-faith conduct, including:

- **Defendants adjusted both claims** ██████████████████████████ **:** One person adjusted both MPT and Steward's claims, ████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████

- **Failure to follow** ██████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████

- **Disregard of** █████████████████████████████████████████
███████████████████████████████████████████████████████████



- **Reversal of the loss-allocation position** ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

- **Defendants withheld material information from Steward**: Ironically, given AGLIC's proposed new concealment defense, Defendants never shared key information they received from consultants and third parties ████████████████████████████████████████████████████████████████████████████████████████████████████████

- **Defendants relied on** ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

8



- **Defendants** <span style="background:black">████████████████████████</span>

- **Defendants sought to improperly limit coverage:** <span style="background:black">████████</span>

## D. The Lawsuit and Discovery

This action was filed on November 23, 2021. The case was stayed after this Court granted summary judgment—on a threshold legal issue concerning the allocation of "flood" and "storm" damage, a position Defendants took only after learning the true magnitude of the loss at Norwood Hospital. The decision was appealed, and the question was certified to the Supreme Judicial Court, which found in favor of Plaintiff on the issue. ECF No. 51, 70.

Thereafter, discovery resumed in early 2025. Defendants had in their possession all but two of the documents AGLIC relies upon for its Amended Answer *by October 24, 2025*. And while AGLIC points to one document produced on January 9, 2026, attached as Exhibit B to the Motion itself, it attached a substantially similar email thread to its Amended Answer, which it possessed in *October 2025*. *Compare* ECF No. 208-2 *with* ECF 208-1, Exhibit N. AGLIC conceals this reality in the Motion, providing a chart of Plaintiff's productions beginning on December 15, 2025, which shows nothing about when AGLIC became aware of this supposed new defense.

On January 19, 2026, AGLIC served a Second Set of Interrogatories, seeking information

about Steward's decision-making regarding the repair or rebuild of Norwood Hospital and its communications with Defendants about the same. *See generally* **Ex. D**. Defendants were clearly aware by this time of their proposed new affirmative defense. Yet, they said nothing of it almost a month later in the joint submission to the Discovery Master on February 13, 2026, in which they sought a one-sided extension of the case schedule which has placed Plaintiff's expert disclosure deadline before the close of fact discovery. *See generally* **Ex. R**. The Defendants' failure to preview their proposed affirmative defense during recent briefing on the case schedule is even more telling in light of the fact Plaintiff specifically asked months earlier on October 8, 2025, "whether Defendants intend to seek leave to amend their Answer to Steward's Second Amended Complaint, *as any changes could affect the contours of the case—including the scope of permissible discovery*—and are essential to consider in evaluating an appropriate case schedule." **Ex. S** at 1. Plaintiff put Defendants on clear notice of the prejudice that would result from their delay in filing a new affirmative defense, yet Defendants declined to give even the courtesy of advance notice during scheduling discussions.

AGLIC filed the Motion on Friday evening before the week that both AGLIC's and Zurich's 30(b)(6) depositions were scheduled to take place, leaving Plaintiff no time to prepare to take discovery on Defendants' entirely new theory of the case. Those depositions went forward on Tuesday, March 10, and Thursday, March 12, respectively, and Plaintiff did not conclude. Plaintiff's expert disclosure deadline is now just a week and a half away, again affording Plaintiff no time to factor into his expert disclosures Defendants' late-stage attempt to inject an entirely new, significant, and likely fact-intensive issue into the case and the discovery process.

In recent weeks, the parties have taken numerous depositions in order to meet the fact discovery deadline of April 24, 2026. Discovery has been unfolding expeditiously following the

contours of the case as they had been understood up until this point, and there is no basis to throw a wrench into that process at this late hour of the litigation to accommodate Defendants' belated and baseless affirmative defense.

## III.   <u>Argument</u>

AGLIC's Motion should be denied. The record now before the Court demonstrates (1) **futility** of the proposed amendment as a matter of law, (2) **bad faith** in the Motion's timing and purpose, and (3) **significant prejudice** to Plaintiff were the Court to allow it.

### A.  Standard of Review

A "district court may deny leave to amend when the request is characterized by 'undue delay, bad faith, futility, [or] the absence of due diligence on the movant's part.'" *Nikitine v. Wilmington Tr. Co.*, 715 F.3d 388, 390 (1st Cir. 2013), quoting *Palmer v. Champion Mortg.*, 465 F.3d 24, 30 (1st Cir. 2006). A motion to amend an answer to add a defense, or counterclaim, may also be denied because it would be futile under the standard applicable to a Fed. R. Civ. P. 12(b)(6) or 12(f) motion. *Transwitch Corp. v. Galazar Networks, Inc.*, 377 F. Supp. 2d 284, 294 (D. Mass. 2005). "Where, as here, there has been considerable written discovery," the Court must "look more closely at the factual allegations to see if they support the legal conclusions pled." *Karth v. Keryx Biopharmaceuticals, Inc.*, 6 F.4th 123, 134 (1st Cir. 2021), quoting *Glassman v. Computervision Corp.*, 90 F.3d 617, 628 (1st Cir. 1996).

### B.  The Motion is Futile Because the Amended Answer Fails to State the Elements of a Legal Defense

AGLIC's Motion should be denied because the Amended Answer fails to satisfy the minimum pleading requirements for the "Intentional Concealment and Misrepresentation of Material Facts Defense" it seeks to add.

In the context of a motion to amend, "futility means that the complaint, [or, in this case,

11

the answer], as amended, would fail to state a claim upon which relief could be granted." *O'Leary v. New Hampshire Boring, Inc.*, 323 F.R.D. 122, 126 (D. Mass. 2018), citing *Glassman*, 90 F.3d at 623. "If leave to amend is sought before discovery is complete . . . the accuracy of the 'futility' label is gauged by reference to the liberal criteria of Federal Rule of Civil Procedure 12(b)(6)." *Hatch v. Dep't for Child., Youth & Their Families*, 274 F.3d 12, 19 (1st Cir. 2001). This standard is the same as that applicable under Rule 12(f): on a "motion to strike the affirmative defense and motion to dismiss the counterclaim, dismissal is only appropriate if the pleadings fail to support a plausible entitlement to relief" (internal quotations omitted). *Bryan Corp. v. Chemwerth, Inc.*, C.A. No. 12-10446-MLW, 2013 WL 6489785, at *1 (D. Mass. Dec. 9, 2013), quoting *Rodriguez-Ortiz v. Margo Caribe, Inc.*, 490 F.3d 92, 95 (1st Cir. 2007). Although " at the start of complex litigation a party may not have all the facts, so courts normally hesitate to" exercise their Rule 12 power to limit the scope of the case early on, where litigation and discovery have been ongoing for years, a party's failure to plead a clear, coherent factual basis for an asserted legal conclusion should result in an exercise of that Rule 12 power. *Resolution Trust Corp. v. Driscoll*, 985 F.2d 44, 48 (1st Cir. 1993).

Tellingly, even with almost five years of litigation and half a million documents to work with (not even counting Defendants' own documents nor the voluminous third-party productions), AGLIC cannot manage to meet this standard in pleading its proposed affirmative defense, even resorting to pleading many of its core allegations "on information and belief"—making no use of extensive discovery that supposedly justifies AGLIC's delay in pleading this affirmative defense in the first place mere weeks before the close of all fact discovery. *See, e.g.*, ECF No. 208-1 at 44, ¶12; 47, ¶29; 49, ¶34; 50, ¶37; 51, ¶41. AGLIC's motion is futile because the allegations in its proposed new affirmative defense fail to allege any actionable misrepresentation, much less with

12

particularity, and further fail to allege the requisite materiality.

    i.    <u>AGLIC Failed to Plead Any Actionable Misrepresentations or Concealment of Fact</u>

AGLIC's *fifteen-page* proposed new affirmative defense does not contain a *single* actionable misrepresentation or concealment of material fact, so leave to amend should be denied. AGLIC's proposed new affirmative defense relies specifically on ███████████ ██████████████████████████████████████████████████ ███████████████████████████████████████

████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ██████████████████████████████

ECF No. 208-1 at 43, ¶10 (bolded emphasis supplied). Noticeably absent from the proposed defense is any allegation that Steward concealed or misrepresented any *actual fact or circumstance*, and none of the allegations are pled with the requisite particularity for a defense alleging fraud. "[T]his litigation has persisted for almost [five] years; and yet even now [AGLIC] is still unable to explain what exactly it is that [Steward] did" to ████████████████ ████████████. *See Resolution Trust Corp*, 985 F.2d at 48. "No amount of embellished attack . . . can replace what [AGLIC] has still not supplied: a single, coherent, specific description of what [Steward] has done" that is fraudulent. *See id.*

    a.    <u>*AGLIC Alleges No Misrepresentations or Concealment of Existing Facts*</u>

AGLIC has alleged, at best, vague and implied representations related to *future* events. Specifically, AGLIC focuses on ███████████████████████████████████████ ███████████████████████████████ *See* ECF No. 208-1 at 51–52, ¶¶40–46. According to AGLIC's own allegations, ██████████████████████████████████ █████████ *See id.* at 55, ¶57 ("███████████████████████████████████



"). Even stretching to draw every possible inference in AGLIC's favor ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮, "statements of opinion or judgment relating to future events are generally not actionable." *Logan Equip. Corp. v. Simon Aerials, Inc.*, 736 F. Supp. 1188, 1200 (D. Mass. 1990). The exceptions are where an individual "misrepresents his actual present intent to perform a future act" or where "the future event is fully within the declarant's control." *Id*. While AGLIC alleges that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ECF No. 208-1 at 47, ¶27, a fatal flaw in its proposed defense is that it makes no particularized allegation that Steward intended to proceed down a path contrary to any of its representations to AGLIC. Further, as outlined in more detail below, there is no allegation that Steward had the authority to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ AGLIC's allegations about ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ therefore cannot avoid the usual rule that representations about future events are not actionable.

b. *AGLIC Alleges No Authority for Steward to Rebuild the Hospital*

AGLIC seeks to hold Steward responsible for a decision that it had no authority to make. As AGLIC alleges, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ECF No. 208-1 at 43, ¶8. And while AGLIC takes care to allege that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, *see id.* at 47, ¶29, notably absent is any allegation that Steward, the tenant, had authority to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮ AGLIC's allegations that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *id.* at 48, ¶31 (emphasis added)—even taken as true and drawing all inferences in favor of AGLIC—ring hollow because Steward simply did not have authority to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ AGLIC's

14

proposed defense further fails as a matter of law because it cannot "show that [Steward] had the legal right to control" ██████████████████ *See Maruho Co. v. Miles, Inc.*, 13 F.3d 6, 11 (1st Cir. 1993).

### c. *AGLIC Fails to Plead Its Allegations with the Requisite Particularity*

AGLIC has also failed meet the heightened pleading requirement of Rule 9(b), pursuant to which a complaint alleging fraud must state "the who, what, where, and when" of the alleged deception. *Kaufman v. CVS Caremark Corp.*, 836 F.3d 88, 91 (1st Cir. 2016), quoting *Alt. Sys. Concepts, Inc. v. Synopsys, Inc.*, 374 F.3d 23, 29 (1st Cir. 2004). This requirement applies to general claims of fraud and to "associated claims where the core allegations effectively charge fraud." *North Am. Catholic Educ. Programming Found., Inc. v. Cardinale*, 567 F.3d 8, 15 (1st Cir. 2009).

AGLIC alleges generally that  ECF No. 208-1 at 43–44, ¶11. However, its only relevant specific allegation is ██████████████████████ *Id.* at 50, ¶39. This is fully consistent with ████████████████ ██████████████████████████ *See* ECF No. 208-1, Ex. P at 4.[1] AGLIC alleges repeatedly that ██████████████████████████████

---

[1]    Further, Exhibit P to the Proposed Amended Answer reflects ████████████████ ████████████, and Plaintiff asks that the Court, if it allows the Motion, strike that exhibit and all descriptions of it in AGLIC's Proposed Amended Answer, pursuant to Federal Rule of Civil Procedure 12(f) and Federal Rule of Evidence 408. ████████████████████████████ *See* **Ex. V** at 2.

15

██████████████████████████████████████████████████████████

██████ *See* ECF No. 208-1 at 55, ¶56; 45, ¶15. AGLIC has failed to make any particularized allegations in support, however. A close review of AGLIC's fifteen-page proposed affirmative defense still leaves all the relevant questions under Rule 9(b) unanswered: ***Who*** ████████████ ██████████—and ***when***? ***When*** was it ████████████████████████ ██████? ***What***, exactly, were ██████████████████? *Id.* at 45, ¶15. At this late stage of litigation, AGLIC's allegations are patently deficient even under Rule 12(b)—even more so under Rule 9(b), the applicable standard to the proposed affirmative defense.

ii.    AGLIC's Defense Fails to Allege the Materiality of Any Alleged Misrepresentation

In an effort to distract from its pleading deficiencies, AGLIC cherry-picks and indulgently quotes from a handful of emails. But held up against the required legal elements, the razzle-dazzle falls far short of a plausible affirmative defense. The most these documents can be inferred to show is ██████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████ evident in the wording of AGLIC's own allegations. AGLIC alleges that

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

ECF No. 208-1 at 46, ¶21. It then alleges that ██████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████ *id.*

at 54, ¶52 (emphasis in original)—in other words, ██████████████████████

██████████████████████████████ It makes sense, then, that AGLIC does ***not*** allege that

16

it ever asked Steward or MPT, during the insurance coverage investigation process, ███████████

███████████████████████████████████████████—that was not material

to the claim or coverage determination.

Even assuming for the sake of argument that AGLIC *did* adequately allege any actual

misrepresentations or concealment—it did not, *see* § II.B.i, *infra*—it would not meet the required

threshold of materiality. According to AGLIC, ███████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████ *Id.* at 46–47, ¶26; *see id.* at 55, ¶55. The *only* possible inference

is that any alleged misrepresentation or concealment █████████████████████ *could*

*not be*—and *was not*—material to the adjustment of Steward's claim.

Similarly, AGLIC alleges that ███████████████████████

███████████████████████████████████████████

███████████████████████████████████████, *id.* at 53,

¶49, ███████████████████████████████████

███████████████ *See id.* at 52, ¶45. Where AGLIC does not allege ███████████

███████████████████████████████████████████

███████████████████████—there can be no materiality. Even

more so where ███████████████████████████████████

█████████████

Left grasping at straws, AGLIC half-heartedly tries to plead materiality by alleging that █

███████████████████ *See id.* at 55–56, ¶¶59–63. But ███████████

███████████████████████████████████████████

17

██████████████████████████████████ What AGLIC now says █████████████

████████████████████████ is plainly not a fact and therefore need not be accepted as

true under Rule 12(b)—and common sense dictates that AGLIC's incredible version of

hypothetical events cannot support a core element of its proposed defense.

AGLIC has failed to adequately plead its proposed new defense, even with the benefit of

extensive discovery in this case that has been pending resolution since 2021. It should therefore

not be permitted to interject its new defense, which would also prejudice Plaintiff at this late stage.

## C. The Motion and Amended Answer Are Prejudicial at This Late Stage of Discovery

With his expert reports due in twelve days, and fact discovery ending just over three weeks

thereafter, Plaintiff will be significantly prejudiced if the contours of the case are allowed to expand

at this late stage. Had Plaintiff known that this defense would be raised, he would have sought

significant additional discovery long ago, including at least the following:

- *Defendants*—including through interrogatories, document requests, requests for admission, and deposition testimony specifically concerning AGLIC's allegation that, ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████

- *MPT*—including of the executives who had ultimate authority over the building. Discovery sought from MPT thus far in the case—including the deposition of Larry Portal, which Defendants noticed—has not covered the facts that would be relevant to the proposed defense.

- *Defendants' consultants (especially, but not limited to, ████████████████)*—as to their understanding of ████████████████████ ████████████████████████ is scheduled to be deposed on Tuesday, March 24, 2026.

Granting this Motion now "would therefore unfairly prejudice [Plaintiff] by forcing [him] to

substantially alter [his] litigation tactics and strategy five years into the case." *Turner v. Liberty*

*Mut. Ret. Benefit Plan*, 350 F.R.D. 1, 8 (D. Mass. 2025).

18

### D. There Is No Excuse for AGLIC's Delay

Finally, the Motion should be denied as AGLIC has no legitimate justification for waiting until March 6, 2026, to raise its new affirmative defense. *See Calderon-Serra v. Wilmington Tr. Co.*, 715 F.3d 14, 20 (1st Cir. 2013) ("Appreciable delay alone, in the absence of good reason for it, is enough to justify denying a motion for leave to amend."); *see also Rodriguez v. Doral Mortgage Corp.*, 57 F.3d 1168, 1178 n.11 (1st Cir. 1995) (Rule 15(a) "frowns upon undue delay in the amendment of pleadings, particularly if no legitimate justification for the delay is forthcoming."). AGLIC's assertion that it could only recently piece together this purported "new" defense is a fallacy, and its recitation of recent document production history is plainly irrelevant. "This is not a case of new allegations coming to light following discovery, or of previously unearthed evidence surfacing." *Villanueva v. United States*, 662 F.3d 124, 127 (1st Cir. 2011). Rather, AGLIC has had almost all the documents it relies on for at least *five months*—and seven of them for at least *nine months*—see **Ex. T** at ¶¶3–5, and even now, it does not hesitate to rely on making allegations on "information and belief." Nothing stopped it from doing so months earlier.

The real reason for AGLIC's delay is more apparent from the ***untold*** recent discovery history. In August 2025, counsel for Defendants represented to the Discovery Master that there were "communications maybe back as far as 2018 or maybe even farther about plans to modernize or replace the hospital building," and Defendants sought discovery that they hoped would show a pre-existing plan to replace Norwood Hospital. **Ex. U** at 107:13–108:6. Having still found no evidence of such plan with the benefit of extensive discovery, and at the eleventh hour, Defendants shift gears to allege instead ███████████████████████████████ ██████████████████████████████████████████████████ A last-ditch effort to distract from the growing mountain of evidence of its own bad faith is not a justification to

19

throw a wrench into this case which is finally proceeding expeditiously. Plaintiff is eager to bring the case to a resolution, and AGLIC's improper delay should not be rewarded by giving it exactly what it really wants—further delay of its day of reckoning, brought on by further unnecessary discovery in an already document-heavy case over a relatively simple insurance claim.

## IV.   <u>Conclusion</u>

WHEREFORE, Plaintiff requests that this Court deny the Motion.

In the alternative, Plaintiff requests that this Court make appropriate orders to mitigate some of the prejudice to Plaintiff caused by AGLIC's undue delay, including:

1. Order the following depositions—which were already properly suspended including due to ongoing discovery and pending disputes—to resume at Plaintiff's convenience:

    a.  AGLIC 30(b)(6): Mark Graves

    b.  Zurich 30(b)(6): Brian Rushlau

    c.  Sedgwick 30(b)(6): Cliff Hyde

    d.  J.S. Held 30(b)(6): Katie Twomey

2. Extend Plaintiff's expert disclosure deadline to April 24 after the close of fact discovery.

    a.  In recognition of the time constraints of this case, Plaintiff seeks, in the alternative, the right to later supplement his expert disclosures to incorporate any additional fact discovery obtained after the current April 1, 2026 deadline.

    b.  Plaintiff further seeks confirmation that Defendants will not make any affirmative expert disclosures in light of this new proposed affirmative defense.

3. Order AGLIC to answer up to five new interrogatories and five new requests for admission, and produce documents in response to up to five new requests for production, regarding this new affirmative defense, within ten days of this Order.

Respectfully submitted,


MARK KRONFELD, AS TRUSTEE OF THE
SHC CREDITOR LITIGATION TRUST,

By his attorneys,

*/s/ Aedan R. Dunn*
Howard M. Cooper (BBO No. 543842)
Seth J. Robbins (BBO No. 655146)
Aedan R. Dunn (BBO No. 709129)
Samuel M. Myers (BBO No. 711471)
TODD & WELD LLP
One Federal Street, 27th Floor
Boston, MA 02110
(617) 720-2626
hcooper@toddweld.com
srobbins@toddweld.com
adunn@toddweld.com
smyers@toddweld.com


Dated:  March 20, 2026

21

## CERTIFICATE OF SERVICE

I, Aedan R. Dunn, hereby certify that on March 20, 2026, a copy of the foregoing motion was filed with the Court via the ECF filing system. As such, this document will be electronically sent to the registered participants identified on the Notice of Electronic Filing (NEF), and paper copies will be sent by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.

/s/ Aedan R. Dunn
Aedan R. Dunn (BBO No. 709129)

22