**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| MARK KRONFELD, AS TRUSTEE OF THE SHC CREDITOR LITIGATION TRUST,<br><br>        Plaintiff,<br><br>        v.<br><br>AMERICAN GUARANTEE AND LIABILITY INSURANCE COMPANY and ZURICH AMERICAN INSURANCE COMPANY,<br><br>        Defendants. | Civ. Action. No. 21-cv-11902-PBS |

**DISCOVERY MASTER ORDER NO. 23:**
**Reserves Information**

Discovery Master Order No. 18 (ECF 202) addressed Plaintiff's challenges to Defendants' redaction of documents related to reinsurance and reserves information. Order No. 18 ruled on certain issues related to this dispute between the Parties, but also requested additional information to assist the Discovery Master in resolving other issues pertaining to these redactions. Pursuant to the Court's Order appointing the undersigned as Discovery Master (ECF 149), the Discovery Master rules as follows.

**Issues to Be Resolved**

The Discovery Master will not reiterate the entire history of Plaintiff's requests or the prior rulings made – this content can be found in Order No. 18. (ECF 202). The issues outstanding after the issuance of Order No. 18 are as follows:

(1) After the Discovery Master's request for such support, did Defendants provide sufficient authority establishing that "information about amounts that are paid by Zurich to retain counsel" is the type of information that may be protected by the attorney-client privilege and/or work product protection?; and

(2) Does the history of communications between the Plaintiff and Defendants show that the Stipulation between the Parties (ECF 151) set forth an agreement that Defendants would un-redact reserves/reinsurance information only as to the Steward reserve/reinsurance information, or does it also apply to MPT reserve/reinsurance information?

1

**Analysis**

The Parties submitted the information requested by the Discovery Master in Order No. 18.  Having reviewed those additional materials provided, the Discovery Master rules as follows:

1. Reserves for Amounts Paid to Retain Counsel or Non-Testifying Consultants or Experts

Defendants provided case law that they contend supports their argument that "expense reserves" are not relevant, and constitute privileged information that need not be disclosed to Plaintiff. Defendants explain that expense reserves are set to cover the expenses expected to be incurred but not yet paid, such as the fees paid to outside counsel, payments to non-testifying consulting experts, and other costs associated with the ongoing litigation concerning Steward's claim, and that these are different from "indemnity reserves," which are set to cover payments to an insured.

Although they concede that, generally, the amount and timing of payments to lawyers is not privileged, Defendants argue that here, the reserves include both amounts expected to be paid to attorneys and to non-testifying consultants. Defendants argue that the timing of these expenses would allow Plaintiff to glean information regarding strategy, and that the expense reserves set by Defendants forecast what Defendants anticipated potentially spending, as well as the amount actually spent.

Defendants cite *AMAG Pharmaceuticals, Inc. v. American Guarantee and Liab. Ins. Co.*, Case No. 21-cv-10618-LTS, 2022 WL 16950437 (D. Mass. Nov. 15, 2022) for the proposition that where reserves to pay counsel or third party non-testifying experts or consultants are set not in the ordinary course of business, but rather in anticipation of litigation or as part of a litigation, they are privileged and protected from discovery. In *AMAG Pharmaceuticals*, AMAG alleged breach of contract for Zurich's denial of an insurance claim. AMAG moved to compel production of certain information, including documents relating to Zurich's financial reserves in connection with AMAG's claim. The Court was not persuaded that financial reserves are *per se* beyond the scope of discovery.  However, the Court explained that "an insurer's decision on setting reserves may, in some circumstances, be an ordinary business judgment and, in other circumstances, may be made in anticipation of litigation," and found that "[o]nly in the latter case may attorney-client privilege and work product considerations shield such decisions from discovery." *AMAG Pharmaceuticals*, 2022 WL 16950437, at \*5. The Court then delineated between those reserves set prior to autumn 2018 (before the Parties anticipated litigation), which it found would have been created in the ordinary course of business, and those set after autumn 2018 (after there was "a risk of litigation"). *Id.* The Court ordered that for the pre-autumn-2018 documents, Zurich must change its redactions to disclose pertinent information about reserves. For post-autumn-2018 documents, Zurich must produce responsive documents setting reserves for the AMAG claim in the ordinary course of business, and must provide a privilege log for those withheld on ground of privilege or work product protection.

In another case cited by Defendants, 9*9 Wall Development Inc. v. Allied World Specialty Ins. Co.*, the Court explained that the "setting of litigation reserves sometimes is found to be protected from disclosure by the work product doctrine." Case No. 18-cv-126, 2019 WL

2

2482356, at *3 (S.D.N.Y. June 14, 2019)(internal citations omitted).  The Court then found that although "in the context of an insurance claim the proposition that reserve decisions are privileged holds less weight than in other litigation contexts, . . . where the information redacted appears to reflect advice of counsel about the rationale for the reserve level in the context of [the] litigation," it is privileged and/or work product. *Id*. at *5.

The Discovery Master finds that here, the case law cited by Defendants supports the conclusion that certain of Defendants' redacted reserves set for anticipated payments to counsel and non-testifying experts and consultants may reflect advice of counsel about the rationale for the reserve levels in the context of this litigation. For purposes of the various disputes in this case about when litigation became "anticipated," it is sensible to select the date of February 5, 2021, when Steward served Defendants its 93A/176D letter. While the litigation had not yet commenced, it did become "anticipated" at that date. Therefore, the reserve information regarding the payments anticipated for counsel and non-testifying experts and consultants may be redacted after that date, on grounds of privilege and/or work-product. Any such reserve information for payments to counsel/experts/consultants established earlier than February 5, 2021 shall be produced in unredacted form.

2. <u>The Stipulation and the MPT Reserve/Reinsurance Documents for the Total Potential Storm Damage Liability</u>

At the request of the Discovery Master, the Parties set out the following sequence of events leading up to the Stipulation regarding un-redacting reserve/reinsurance documents beyond those that reflect only payments to counsel or third party non-testifying experts:

- In February 2023, Plaintiff sent the following document requests to both Defendants to:

  Produce all documents constituting or reflecting AGLIC's reserves or accruals for Steward's losses caused by the Storm or Zurich's reserves or accruals for MPT's losses caused by the Storm.

  (Plaintiff's February 10, 2023 Request for Production No. 21).

- On March 10, 2025, both Defendants objected to Plaintiff's requests:

  o <u>Zurich's Objection</u>: Zurich objects because the Policy was issued by AGLIC, not Zurich and because Zurich responded to the claim made by Zurich's insured MPT as a result of the June 28, 2020 water loss at Norwood Hospital; AGLIC responded to the claim made by Steward for that water loss. Zurich objects to this Request because it seeks documents that are not relevant or proportional to any claim or defense in the instant action. Zurich further objects that the undefined term "accrual" is vague, ambiguous, and lacks particularity. Zurich further objects to the extent the Request seeks discovery of information and/or disclosure of trade secrets or information that is proprietary, confidential, or commercially sensitive to Zurich and/or its employees, clients and/or customers. Zurich further objects to the extent the

3

Request seeks information protected by the attorney-client privilege, work product doctrine, or any other privilege.

    o  <u>AGLIC's Objection</u>: AGLIC objects to this Request because it seeks documents that are not relevant or proportional to any claim or defense in the instant action. AGLIC further objects that the undefined term "accrual" is vague, ambiguous, and lacks particularity. AGLIC further objects to the extent the Request seeks discovery of information and/or disclosure of trade secrets or information that is proprietary, confidential, or commercially sensitive to AGLIC and/or its employees, clients and/or customers. AGLIC further objects to the extent the Request seeks information protected by the attorney-client privilege, work product doctrine, or any other privilege.

- On June 17, 2025, Plaintiff moved to compel the production of reserves documents as to both Defendants, in relevant part, arguing:

Defendants have redacted material from key documents, including loss valuations, reserve figures, and settlement authority—items directly relevant to Steward's claims under Chapters 93A and 176D. Defendants admit that many of these redactions concern reserves and reinsurance. But such materials are plainly discoverable. . . Indeed, numerous courts have held that Zurich's reserve and reinsurance information is particularly relevant in bad-faith insurance litigation. . . . .
These documents are critical to Steward's claims that Defendants acted with financial self-interest and improperly underpaid its loss. Steward therefore requests that the Court order both Defendants to (1) specifically identify each document request for which non-privileged materials have been withheld, and describe **every** category of information so withheld, and (2) produce, in unredacted form, **all** documents concerning reserves, reinsurance, supplemental insurance, underwriting, and related subjects.

(ECF 123 at pp. 14-15) (emphasis in original).

- On June 25, 2025, Defendants opposed Plaintiff's motion to compel, and, in relevant part, stated:

As a preliminary point, Zurich and American Guarantee cannot parse what exactly Steward seeks to compel regarding reserves and reinsurance information. First, Steward's motion refers to compelling production of "documents concerning reserves." Mem. at 14. Then, it objects to Zurich and American Guarantee's redaction of "loss valuation, reserve figures, and settlement authority" from unspecified documents. *Id*. Then, Steward asks for an order compelling production of "**all** documents concerning reserves, reinsurance, supplemental insurance, underwriting, and related subjects." *Id*. at 15 (emphasis in original). And finally, Steward asks for an order compelling Zurich and American Guarantee to "produce all responsive documents, without the improper and unilateral limitations and

4

redactions they have thus far imposed." *Id*. at 16. All the while, Steward's Motion (as well as its discovery correspondence) identifies no specific request for production that Zurich or American Guarantee purportedly failed to satisfy,and attaches no document that Zurich or American Guarantee allegedly improperly redacted. The lack of specificity underscores the prematurity of Steward's Motion and its failure to adequately meet- and-confer before seeking the involvement of the Court. The Court should not entertain, let alone grant, a motion to compel when Steward cannot adequately specify what it seeks to compel. L.R. 37.1(b)(4) (any motion to compel "shall state with particularity ... [e]ach ... request for production . . . raising an issue to be decided by the court, and the response thereto"); see also Fed. R. Civ. P. 34(b)(1)(A) (a request for production of documents "must describe with reasonable particularity each item or categories of items to be inspected")
. . . .

Reserves are similarly irrelevant to the question of whether American Guarantee acted "with financial self-interest" in failing to diligently adjust Steward's claim. Instead, in first party claims where whether an insurer acted in good faith is at issue, courts recognize that reserves are not relevant.
. . . .

The relevance of Zurich's reserves is even less. It is undisputed that Zurich did not insure Steward. Mot. at 3 ("Zurich insured MPT, and American Guarantee insured Steward.") Therefore, any reserves that Zurich set in relation to the Norwood Hospital are limited to what it expected to pay for MPT's loss. How Zurich valued MPT's loss has no bearing on whether Zurich tortiously interfered with Steward's contractual relationship or otherwise impeded American Guarantee from adjusting Steward's claim diligently and in good faith. Steward cites no case that holds otherwise.

(ECF 140 at pp. 4, 7-8).

- In July, 2025, the Discovery Master was appointed by the Court. (ECF 149).

- On August 15, 2025, after the Parties met and conferred on the issue, Defendants proposed the following in an email to Plaintiff:

Separately, as I mentioned during our call, we think we can reach a mutually agreeable position on the issue of reserves and reinsurance. In exchange for Plaintiff's withdrawal of its motion to compel on this issue, Defendants offer the following:

- Defendants will remove the redactions for these issues and reproduce the redacted documents in unredacted format (other than redactions for A/C or AWP privileges);

- Defendants will re-review its collected documents for documents relating to reserves/reinsurance not previously produced and produce responsive non-privileged materials; and

- Defendants will produce copies of the relevant reinsurance contracts.

(August 15, 2025 email from A. Andrews to Plaintiff's counsel).

- Plaintiff accepted the proposal and on August 25, 2025 circulated a first draft of the Stipulation

- On the same day (August 25, 2025), Defendants circulated a redline of Plaintiff's draft. (redline is by Defendants, on top of the underlying document by Plaintiff) as follows:

> **Reserves and Reinsurance Documents and Information**
>
> Defendants American Guarantee and Liability Insurance Company and Zurich American Insurance Company (collectively, "Defendants") shall:
>
> A. Review all documents within their possession, custody, or control that were previously produced with redactions relating to reserves or reinsurance, and re-produce such documents in unredacted form (other than redactions for attorney-client or attorney work product or any other applicable privilege);
>
> B. Review all documents ~~within their possession, custody, or control~~previously collected from their identified custodians for the period of time directed by the Discovery Master or Court ~~that contain~~for information concerning reserves or reinsurance, and produce all non-privileged re~~sponsive~~lated documents ~~in unredacted form~~, and log any documents withheld ~~or redacted~~ on the basis of privilege; and
>
> C. Produce complete copies of all responsive and applicable reinsurance agreements and contracts.

- Plaintiff accepted the proposed redlines; it was submitted to the Discovery Master and filed as a Stipulation between the Parties in this matter. (ECF 151).

- The current dispute thereafter arose between the Parties as to whether Defendants' August 25, 2025 Stipulation requires them to un-redact reserve and reinsurance documents setting the reserves for MPT's claim for damage to the building under its insurance policy with Zurich [settled in November 2024], as distinguished from the reserves set by AGLIC for Steward's business interruption and medical devices/machinery.

- At the January 22, 2026 hearing with the Parties, the Discovery Master asked about this issue. At that hearing, the Parties argued as follows:

6

o <u>Plaintiff's Argument</u>:

**Mr. Myers:**

We are seeking enforcement of the order that was entered by Your Honor in August of 2025. As Ms. Andrews indicated, the parties reached agreement and entered a very clear stipulation and order that did two things. It required defendants to first review all documents that they had already produced with redactions and, quote, reproduce such documents in unredacted form. It also required defendants to review documents that they had already collected and decided not to produce and produce those documents to produce all nonprivileged and responsive documents.

(Jan. 22, 2025 Hrg. Tr. at 82:21-83:10)

**Mr. Myers:**

Most of these redactions are for relevance and nonresponsiveness as they put it. This is extremely problematic for two reasons. First, nothing in either of the stipulations and order entered in this case or the Federal rules permits redactions for responsiveness. Second, defendants are indicating that the so called irrelevant information in these documents relates to the MPT claim and reserves set in MPT's case. That information is actually highly relevant to this case. We spent a lot of time disputing how much of MPT's claim file is relevant. And Your Honor will recall that Your Honor's order set a cutoff of August of 2023 for the discoverability of the MPT claim file. There's no dispute that information in the MPT claim file before that is relevant, responsive and discoverable. We are merely seeking to enforce the order that was documented in this case and executed by Your Honor.

(Jan. 22, 2025 Hrg. Tr. at 83:17-84:12)

o <u>Defendants' Argument</u>:

**Ms. Andrews**:

[For] reserves and reinsurance information that relates to the MPT claim because given the fact that as you may recall MPT was the owner of the building in which Steward operated the Norwood Hospital and so for internal discussions purposes oftentimes the two claims were discussed jointly with respect to reserves and reinsurance.

In those cases, we produced those documents showing the information about the Steward reserves and reinsurance. We redacted the information related to MPT because it's not relevant.

(Jan. 22, 2025 Hrg. Tr. at 81:11-23).

**Ms. Andrews**:

Our position is we have complied with the stipulation. As they said at the outset, the motion they filed that the stipulation was entered in response to sought production of reserves and reinsurance for the Steward claim. They have that information. Nowhere in their submission or in Mr. Myer's discussion have they said anything to the contrary or that they are unable to determine the information they sought. We have provided that to them. It's our position that we gave them what they asked for, and we complied with the stipulation. There is no relevance to the reserves setting for the MPT claim. This is frankly no different than the information they previously sought about the MPT the settlement which both Your Honor as well as Magistrate Kelly held was not relevant and did not order production of.

To the extent they want to understand how the MPT claim was handled and adjusted they have those documents, but the financial value of that is confidential in terms of the settlement, and the reserves that are set both for MPT and other Zurich insureds is confidential information that Zurich receives from its insureds in confidence.

(Jan. 22, 2025 Hrg. Tr. at 85:7-86:7).

Having reviewed the Parties' submissions and the relevant transcripts, and having considered the underlying sequence of events, the Discovery Master finds that the Stipulation entered by the Parties (ECF 151) did not memorialize a meeting of the minds pertaining to the MPT reserves and reinsurance information.

Defendants have consistently argued that Zurich's reserves and reinsurance information for MPT are not relevant to the Steward claims. Plaintiff argues that in the Stipulation, Defendants agreed to un-redact and produce this information, but Defendants' actions and statements are to the contrary. They did not un-redact and produce these documents, and are continuing to argue that they are not relevant. In the Stipulation, the words do not clearly distinguish the Zurich reserves from the AGLIC reserves. The evidence of the apparent difference in current views about what the Stipulation covers is the use of the plural in the word "Defendants," and the redline striking of Plaintiff's language using the word "related" and replacing it with "responsive," referring back to the underlying dispute about relevance which had always been asserted as to the MPT claim, as well as the work product privilege as to the amounts set aside versus paid in settlement to MPT.  Hence, the arguments by counsel are ships passing in the night. Clearly, each Party in good faith believes that the text of the Stipulation means different things as to the MPT claim. The underlying correspondence between the Parties does not clarify the issue in that it does not explicitly address the issue of MPT information versus Steward information.  The Discovery Master is not persuaded that, reviewing the redline in the Stipulation, the conclusion can be reached that Defendants agreed to produce MPT reserve and reinsurance information. Given the ambiguity of the Stipulation, the Discovery Master finds

8

that it does not accurately reflect a meeting of the minds between the Parties and should be withdrawn.  The Parties are instructed to have it withdrawn from this case.

To the extent that Plaintiff wishes to pursue the arguments made in its original Motion to Compel (ECF 123) with the Discovery Master, it may do so. If the motions are re-filed, each Party shall support its position with germane case law and submit these motions no later than May 26, 2026.

**SO ORDERED**

Dated: May 14, 2026                    /s/ *Faith S. Hochberg*
                                       Hon. Faith S. Hochberg, U.S.D.J. (ret.)

-

9