**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| MARK KRONFELD, AS TRUSTEE OF THE SHC CREDITOR LITIGATION TRUST, <br><br> Plaintiff, <br><br> v. <br><br> AMERICAN GUARANTEE AND LIABILITY INSURANCE COMPANY and ZURICH AMERICAN INSURANCE COMPANY, <br><br> Defendants. | Civil Action No. 1:21-cv-11902-PBS |

**PLAINTIFF'S EMERGENCY MOTION TO STAY SECTION IV(B) OF DISCOVERY MASTER ORDER NO. 22 (ECF NO. 224) PENDING APPEAL TO THIS COURT**

Plaintiff Mark Kronfeld, as Trustee of the SHC Creditor Litigation Trust ("Plaintiff"), respectfully moves on an emergency basis for a stay of Section IV(B) of Discovery Master Order No. 22 (ECF No. 224) (the "Order" or "Order No. 22").  Section IV(B) governs Plaintiff's withholding of communications involving employees of CREF (the "CREF Ruling").  Plaintiff seeks a temporary stay solely for the limited period necessary for this Court to resolve Plaintiff's Objection, filed contemporaneously herewith (the "Objection").

A stay is necessary to prevent the imminent and irreversible disclosure of thousands of communications protected by the attorney-client privilege and the work product doctrine, and to preserve this Court's ability to conduct meaningful review of the CREF Ruling.  Absent a stay, Plaintiff will be required to produce the very materials subject to its Objection before the Court can rule—effectively nullifying that review.

1

As with Plaintiff's prior motion seeking a stay of a Discovery Master ruling—granted by Magistrate Judge Kelley (ECF Nos. 192, 196)—a stay is warranted here because Order No. 22 compels production of privileged materials based on an internally inconsistent and untenable framework. The Order simultaneously finds that "several high-level CREF employees served as the functional equivalent of Steward employees," yet requires production of the vast majority of communications involving those same individuals, including communications with in-house and outside counsel. Order at 35. That conclusion cannot be reconciled either with the Discovery Master's factual findings or with the governing law, as set forth in Plaintiff's Objection.

A stay is also necessary because compliance with the Order, even as narrowly challenged, is not feasible within the timeframe imposed. The May 14th Order requires Plaintiff, by May 29, to produce "any documents on [its] privilege log as to CREF that do not directly show work product requests by or responses to such requests from Todd & Weld," even where Steward's in-house or other outside counsel are included on the communication. Order at 37.[1] To comply, Plaintiff must re-review more than *4,000* documents on a document-by-document basis to determine whether each communication "directly" reflects a work product request—an analysis that differs materially from the privilege framework previously applied. This requirement not only makes timely compliance impracticable, but also underscores the Order's internal contradiction: it recognizes CREF employees as functional equivalents of Steward personnel while effectively limiting protection to communications satisfying a narrow work product standard, disregarding the attorney-client privilege.

Indeed, this request presents an even stronger basis for a stay than Plaintiff's prior emergency motion. Here, Plaintiff challenges only a discrete portion of Order No. 22—Section

---

[1] The Order originally required Plaintiff to produce all responsive documents by May 26. On May 21, however, the Discovery Master granted Plaintiff an extension, extending the production deadline to May 29.

IV(B)—and does not seek review of the Discovery Master's rulings concerning communications involving the 13 other third-party consultants at issue.[2]  Plaintiff is simultaneously working expeditiously to comply with the remainder of the Order, including rulings that will require disclosure of hundreds of privileged documents, subject to clawback protections and additional in camera review following a meticulous document-by-document reassessment.  Unlike Plaintiff's prior stay request, moreover, Order No. 22 compels the production of specific documents that have been confirmed as privileged communications; by contrast, the prior ruling involved the mass production of more than 100,000 documents without individualized review.

Against this backdrop, the factors governing issuance of a stay weigh heavily in Plaintiff's favor.  In particular: (1) the Order itself supports the relief sought in the Objection because its legal conclusions cannot be reconciled with its factual findings; (2) absent a stay, Plaintiff will suffer irreparable harm through disclosure of privileged materials, a harm that cannot be undone on appeal; and (3) compliance with the Order requires substantial additional time in any event.  For these reasons, and those set forth in Plaintiff's Objection, which is incorporated herein by reference, Plaintiff respectfully requests that the Court stay Section IV(B) of Order No. 22 pending resolution of the Objection.

**BACKGROUND**

Order No. 22 decided competing requests by the parties for relief concerning improper privilege assertions.  The primary issues were the parties' communications with third-party consultants retained after the June 28, 2020 weather event that devastated Norwood Hospital.  Order at 1.  Both insureds, Steward Health Care LLC ("Steward") and Medical Properties Trust

---

[2] As noted in Plaintiff's Objection, certain issues relating to Order No. 22 are not yet ripe because the Discovery Master has ordered in camera submission of documents and conveyed that additional rulings will follow based on that review.  Plaintiff therefore reserves the right to object to Order No. 22, as well as any subsequent rulings arising from the in camera review process.

("MPT"), and both insurance companies, Zurich American Insurance Company ("Zurich") and American Guarantee and Liability Insurance Company ("AGLIC"), Zurich's wholly owned underwriting shell, retained numerous consultants to evaluate the damage to, condition of equipment at, and requirements related to repairing and rebuilding the Hospital.  The parties asserted privilege claims over communications with certain third parties under various theories, including the "derivative" attorney-client privilege, the "functional equivalent" doctrine, and the work product protection.

The majority of the Order dealt with Defendants' challenge to Plaintiff's privilege claims and thirteen separate third parties.  *See* Order at 15-37.  The final two pages dealt with Defendants' claims of privilege over communications with five third-party consultants. *Id*. at 37-39.  The Order made discrete rulings with respect to each of Plaintiff's consultants, ruling in all cases that numerous documents over which Plaintiff had claimed privilege needed to be produced.  *See id*.

Plaintiff is working to comply with nearly all aspects of the Order. But for now Plaintiff seeks review of one discrete but significant ruling concerning communications involving employees of CREF. Plaintiff withheld communications involving CREF employees because, following the June 28, 2020 weather event at Norwood Hospital, those individuals functioned both as the equivalent of Steward employees and as indispensable translators of highly technical information necessary for counsel to provide legal advice to Steward.

As explained more fully in Plaintiff's Objection, CREF personnel were deeply integrated into Steward's response efforts following the flooding event.  CREF employees responded immediately after the loss and coordinated virtually every stage of the post-storm process, including remediation, cleanup, claim adjustment, mediation preparation, and litigation strategy.

CREF personnel were centrally involved in communications with external parties, including

Plaintiff's consultants, Defendants, and Defendants' agents, while also working closely with

Steward's in-house and outside counsel, including Todd & Weld and other firms.  Indeed, CREF

employees routinely acted as the primary intermediaries between Steward's many consultants

and Steward's attorneys, translating and relaying highly technical information for use in

confidential mediation proceedings and litigation.

As noted in Plaintiff's Objection, the Discovery Master expressly recognized these facts

and concluded:

> Several high-level CREF employees served as the functional equivalent of Steward employees. This fact came into sharp focus during the first hearing between the Discovery Master and the Parties, when Defendants admitted that they initially thought that several high-level CREF employees were actually Steward employees, until Steward informed them otherwise. These high level CREF employees maintained steward.org email addresses, and regularly worked in collaboration with Steward employees and counsel. Thus, those CREF employees identified on Plaintiff's privilege log who acted "in a high-level, trusted decision-making or guiding role, equivalent to that of an employee," became a "functional employee."

Order at 35.  Yet the Discovery Master nonetheless ordered production of thousands of CREF

communications, including **<u>with counsel</u>**.

Apart from Plaintiff's disagreement with the substance of the ruling—and the need for

further review before privileged materials are produced—a stay is also warranted because the

Order imposes compliance obligations that cannot reasonably be completed within the timeframe

provided.  Specifically, the Order was entered on May 14 and requires Plaintiff, by May 29, to

produce "any documents on [its] privilege log as to CREF that do not directly show work

product requests by or responses to such requests from Todd & Weld," including where

Steward's in-house counsel or other outside counsel was included on the email.  Order at 37.

Because that standard differs materially from the privilege framework Plaintiff previously applied, compliance requires a document-by-document re-review of approximately 4,000 documents. In addition, Plaintiff must review an additional hundreds of additional documents that were redacted but, by the parties' agreement, were not previously logged.  Plaintiff is also simultaneously reviewing more than 1,000 additional documents and making in camera selections relating to the other thirteen third parties implicated by the Order.

## ARGUMENT

A ruling as broad and prejudicial as Order No. 22 must be heard by this Court before implementing it.  Under Fed. R. Civ. P. 53(f)(1), "[i]n acting on a master's order, report, or recommendations, ***the court must give the parties notice and an opportunity to be heard***; ***may receive evidence***; and may adopt or affirm, modify, wholly or partly reject or reverse, or resubmit to the master with instructions." (emphasis added).  *See also* ECF No. 149 (Order Appointing the Honorable Faith S. Hochberg as Discovery Master), § III.  Plaintiff requires that opportunity *now*, before the CREF Ruling irreparably harms Plaintiff by compelling production of thousands of privileged and/or work-product protected documents and communications.

As Plaintiff previously noted in requesting a stay of a Discovery Master order requiring production of thousands of privileged documents, the Sixth Circuit's decision in *In re FirstEnergy Corp.*, 154 F.4th 431, 436 (6th Cir. 2025), is instructive.  There, a special master ordered the wholesale disclosure of thousands of documents, including privileged materials.  The district court affirmed, but the Sixth Circuit granted a stay and ultimately mandamus, emphasizing that once privileged materials are produced, "[t]here is no way to unring those disclosure bells." *Id.* at 441.  The same danger exists here but more acutely.  The CREF Ruling does not just compel production of some privileged emails among thousands—it expressly

requires production of thousands of documents Plaintiff has designated as privileged, including numerous between in-house and outside counsel with individuals recognized by the Discovery Master to be the functional equivalent of Steward employees.

The CREF Ruling also mandates the production of an enormous trove of documents on an accelerated timetable of approximately two weeks. As in *FirstEnergy*, the compelled disclosure cannot be undone, and therefore a stay is necessary pending resolution of the Objection.

Although this is not an interlocutory appeal *per se*, the familiar criteria governing stays pending appeal reinforce why a stay is necessary. Courts consider:

(1) whether the movant is likely to succeed on the merits;

(2) whether the movant will suffer irreparable injury absent a stay;

(3) whether issuance of the stay will substantially injure other parties; and

(4) where the public interest lies.

The first two factors are the most critical. *Dist. 4 Lodge of the Int'l Ass'n of Machinists & Aerospace Workers Loc. Lodge 207 v. Raimondo*, 18 F.4th 38, 42 (1st Cir. 2021) (internal quotations omitted).

*First*, for the reasons set forth at length in Plaintiff's Objection, Plaintiff has more than demonstrated a likelihood of success. The CREF Ruling rests on several inherent contradictions.

Among other points of confusion, the Order properly concludes that "*[s]everal* high-level CREF employees served as the functional equivalent of Steward employees," but then inexplicably and contrary to all record evidence states that only Chris Kidney acted in "such 'high-level trusted decision-making or guiding role'" (emphasis added). Order at 35. *See also* Order at 13, citing *America's Test Kitchen, Inc. v. Kimball*, 35 Mass. L. Rptr. 75, *2 (Mass.

7

Super. Ct. April 2, 2018) (recognizing Massachusetts courts apply the "functional equivalent" doctrine).  The undisputed record shows that Defendants themselves identified Robert Gendron, Michael Crowley, Scott Kenyon, Chris Kidney, Steve VanNess, and Ronald Doncaster, among others, as Steward employees, and that the Discovery Master concluded these individuals "became a 'functional employee.'"  *Id.* at 35.  Having made such a finding, the Order's subsequent failure to protect any communications with CREF employees other than Chris Kidney cannot stand.

Moreover, notwithstanding that the Order acknowledges that CREF employees were the functional equivalent of Steward employees, the Order then states that all communications between CREF employees and in-house counsel and outside counsel, including Todd & Weld, must be produced "subject to clawback" ***unless*** the communications "directly show work product requests."  Order at 37.  In other words, the Order appears to rule that the attorney-client privilege does not apply to CREF employees, and only work product protections do.  There is no basis for such a ruling, and Plaintiff is likely to prevail thereon.

*Second*, the Order will irreparably harm Plaintiff, including by forcing the disclosure of privileged and confidential material, on a highly expedited timeline.  As courts have repeatedly recognized, forced disclosure of privileged material constitutes irreparable harm because the disclosure cannot be undone.  *See In re Kellogg Brown & Root, Inc.*, 756 F.3d 754, 761 (D.C. Cir. 2014) ("On the other hand, appeal after final judgment will often come too late because the privileged materials will already have been released."); *In re Smith*, 397 B.R. 134, 146 (Bankr. D. Nev. 2008) ("Often, in the context of the appeal of a discovery order, the movant can make a strong showing of irreparable injury because once the allegedly privileged documents are disclosed, a reviewing court cannot provide effective relief.").  Once Defendants are allowed to

intrude upon the attorney-client privilege, the bell cannot be unrung.  Indeed, even if production were appropriate—which it is not—a stay is necessary to make compliance possible.  Plaintiff will continue to compile and review the documents subject to Order No. 22, and is currently doing so with the help of numerous contract attorneys, but additional time is needed beyond May 29 to prepare the productions as outlined in the Order.

*Third*, granting a stay will create no prejudice to Defendants.  According to the case schedule recommended by the Discovery Master, which was agreed to by the parties, fact discovery is now set to close on September 23, 2026.  ECF No. 223 at 2.  No depositions are currently scheduled in the immediate term, and the deadline to complete additional document productions related to AGLIC's newly asserted defense is July 31, 2026.  *Id*. at 1.  Efficient resolution of this highly important issue, especially if it can avoid protracted disputes over clawbacks, will benefit all parties.

*Fourth*, two public interests are paramount here: (a) protection of privilege, which is its own public interest; and (b) efficient management of the case.  Courts consistently recognize a strong public interest in safeguarding privileged communications—a principle directly imperiled by Order No. 22.  Further, the Order threatens unnecessary delay and satellite litigation over clawbacks and piecemeal implementation of Order No. 22's requirements.

These interests firmly support maintaining the status quo while the Court considers the Objection.

**CONCLUSION**

WHEREFORE, Plaintiff Mark Kronfeld, as Trustee of the SHC Creditor Litigation Trust, respectfully requests that this Court enter an order staying Section IV(B) of Discovery Master Order No. 22 pending resolution of Plaintiff's Objection thereto with this Court.

9

Respectfully submitted,

PLAINTIFF,

By its attorneys,

*/s/ Josh L. Launer*
Howard M. Cooper (BBO No. 543842)
Seth J. Robbins (BBO No. 655146)
Josh L. Launer (BBO No. 673661)
TODD & WELD LLP
One Federal Street, 27th Floor
Boston, MA 02110
(617) 720-2626
hcooper@toddweld.com
srobbins@toddweld.com
jlauner@toddweld.com

-and-

Barbara Whiten Balliette
Jeremy H. Wells
William T. Reid IV
Jeffrey E. Gross
Yonah Jaffe
Reid Collins & Tsai LLP
420 Lexington Avenue, Suite 2515
New York, NY 10170
Telephone: (212) 344-5209
bballiette@reidcollins.com
jwells@reidcollins.com
wreid@reidcollins.com
jgross@reidcollins.com
yjaffe@reidcollins.com

Dated: May 29, 2026

## RULE 7.1 CERTIFICATION

Pursuant to Local Rule 7.1(a)(2), counsel for the Plaintiff conferred with Defendants counsel and Defendants oppose this Motion.


*/s/ Josh L. Launer*
Josh L. Launer




## CERTIFICATE OF SERVICE

I, Josh L. Launer, Esq., hereby certify that the foregoing was filed through the Court's CM/ECF system on May 29, 2026, and will therefore be sent electronically to all counsel of record who have appeared in this matter as identified on the Notice of Electronic Filing (NEF).


*/s/ Josh L. Launer*
Josh L. Launer