# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| MARK KRONFELD, as Trustee of the SHC Creditor Litigation Trust, <br><br> Plaintiff, <br><br> v. <br><br> AMERICAN GUARANTEE AND LIABILITY INSURANCE COMPANY and ZURICH AMERICAN INSURANCE COMPANY, <br><br> Defendants. | Civil Action No. 1:21-cv-11902 –PBS |

## DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO RECONSIDER EMERGENCY STAY

Plaintiff should be required to comply with the Special Master's Order compelling production of hundreds of records that Plaintiff improperly withheld as privileged. Accordingly, Defendants American Guarantee and Liability Insurance Company ("American Guarantee") and Zurich American Insurance Company ("Zurich American") (collectively, "Defendants") oppose Plaintiff's request that the Court reconsider its denial of an emergency stay of Section IV(B) of Discovery Master Order No. 22 (ECF No. 252).[1]

To date, Plaintiff has produced only 397 records of the 7690 records that it fully withheld as privileged, and it has not produced any of the hundreds of additional records that were partially redacted for privilege (though he committed to a production of unredacted records by Monday, June 8). Plaintiff moves to stay enforcement of the portion of the Special Master's ruling that is

---

[1] Defendants also oppose Plaintiff's Objection to Discovery Master Order No. 22 (ECF No. 237), and will respond to that objection in the time allowed by rule or as otherwise ordered by the Court.

most critical for discovery in this case to continue, as it determines discoverability of the *thousands* of records that Plaintiff withheld involving its third-party consultant, CREF. Time is critical given the many delays caused by Plaintiff's prior conduct, but rather than expeditiously request a stay of that ruling, Plaintiff waited until the very last minute of the very last day that they were to produce documents to seek "emergency" relief. The Court was right to deny Plaintiff's request for a stay as untimely.

Nonetheless, even on the merits, a stay in this case is not warranted, particularly because the Special Master's Order is subject to clawback, and Plaintiff's initial production demonstrates that Steward intentionally over-designated documents as protected by the attorney-client privilege and Plaintiff over-withheld documents that are not privileged. Accordingly, the Court should deny Plaintiff's request to reconsider and order that Plaintiff produce records consistent with the Discovery Master's Order.

## ARGUMENT

### I.    The Court was Right to Deny Plaintiff's Emergency Motion as Untimely.

"The granting of a motion for reconsideration is an extraordinary remedy which should be used sparingly." *Palmer v. Champion Mortg.*, 465 F.3d 24, 30 (1st Cir. 2006) (internal quotation and citation omitted). "Generally, a court will not allow a motion to reconsider an interlocutory order unless a movant can demonstrate (1) an intervening change in the law, (2) the discovery of new evidence not previously available, or (3) a clear error of law in the first order." *Monsarrat v. Zaiger*, 303 F. Supp. 3d 164, 166 (D. Mass. 2018) (Saris, J.). None of these factors weigh in favor of reconsidering the denial of a stay because the Court was right to conclude that Plaintiff's request for emergency relief was untimely.

Plaintiff's prior discovery misconduct has caused needless delays in the case schedule. *See, e.g.*, ECF No. 221 at 1 ("As discussed in the Court's Order, the Discovery Master has previously

2

found that 'Plaintiff made an 'unduly late' production of voluminous documents and privilege logs in late December 2025 and into 2026.'"); ECF No. 198 at 2 ("Due to the lateness of production of Plaintiff's privilege log, the Discovery Master must now work through copious privilege log withholding, which should have been ready for review last November/December."). And recently the schedule was extended, in part to allow the Discovery Master to assess Plaintiff's withholding of thousands of relevant documents on the basis of privilege and work product claims. ECF No. 223. The Discovery Master carefully reviewed Plaintiff's privilege assertions and crafted a detailed analysis of categories of privilege for each of Plaintiff's third-party consultants. Even where she ordered production, she did so pursuant to clawback, and she correctly concluded that the only way for this case to remain on schedule was if Plaintiff expeditiously produced the  scores of documents that they have withheld, subject to claw back.

Nevertheless, Plaintiff waited two weeks until 6:00 p.m. on the day that document production should have been completed to seek emergency relief. *See* ECF No. 242. The breadth and scope of the Discovery Master Order, including the amount of documents that were to be reviewed and produced under the terms of the CREF order, was apparent. Under similar circumstances, this Court has found that a party seeking relief from a discovery order "has the duty to seek the stay sufficiently in advance of the date set for compliance so that the Court will have the opportunity to rule on the motion prior to the compliance date." *In re Lernout & Hauspie Sec. Litig.*, 219 F.R.D. 28, 30–31 (D. Mass. 2003) (Collings, M.J.), *objections overruled*, 2004 WL 3217802, at *1 (D. Mass. July 2, 2004) (Saris, J.) (request for stay of magistrate judge's discovery order was untimely when filed one day after compliance was required).

Any emergency should have been brought quickly to the attention of the Court. That Plaintiff waited two weeks to do so underscores that the Court was right to conclude that Plaintiff's

request was untimely. The Court made no mistake justifying the "extraordinary remedy" of a reconsideration.

## II.    Plaintiff Has Not Established the Need for a Stay.

Even if it were timely, Plaintiff's emergency stay request should have been denied because he failed to meet his burden to establish a need for a stay. ECF No. 236 at 7.

*First*, Plaintiff is not likely to succeed on the merits. It has become increasingly apparent that Plaintiff has engaged in a tactic of withholding otherwise relevant and discoverable documents on spurious assertions that documents are subject to the attorney-client privilege, attorney work product doctrine, or both. Pursuant to the provisions of Discovery Master Order No. 22 to which he has not objected, Plaintiff produced 397 communications that he previously withheld on the basis of those assertions. Defendants have conducted an initial review of the documents, and two things are clear: (1) Steward put itself in this position by design, meaning that Steward and CREF actively and intentionally attempted to shield documents from production by copying an in-house lawyer in the emails and instructing other third parties to label communications as privileged, regardless of whether the communications related to confidential legal advice; and (2) Plaintiff withheld documents that were not privileged, and only produced those documents following the Special Master's Order. For example:

- **Exhibit A** (STEWARD02051539) is an email from CREF-employee Chris Kidney to a group of third-party consultants who assisted Steward in preparing their claim for insurance. ███████████ The document does not reflect a confidential communication made for the purpose of obtaining legal advice. Steward described this document on its privilege log as an "Email with consultants hired by counsel to assist with insurance claim submission" and withheld it under the attorney-client privilege.

- **Exhibit B** (STEWARD02051532) is another example of CREF employee Chris Kidney instructing third-party consultants ███████████

4

████████████████████████ The document does not reflect a confidential communication made for the purpose of legal advice. Steward described this document on its privilege log as an "Email requesting/containing information to assist counsel with providing legal advice regarding insurance claim submission" and withheld it under the attorney-client privilege.

- **Exhibit C** (STEWARD01535466) is an email from NFA, Steward's independent public adjuster, to CREF employees ████████████████████████████ Steward in-house counsel Nathalie Hibble is merely copied on the email, and the document does not reflect a confidential communication made for the purpose of legal advice. Indeed, NFA produced this exact communication in this litigation (*e.g.*, NFA_00045676). Plaintiff described this document on its privilege log as an "Email providing legal advice regarding insurance claim submission" and withheld it under the attorney-client privilege.

- **Exhibit D** (STEWARD02053173) is an email sent by CREF employee Chris Kidney to a group of third-party consultants. The only attorney involved in the communication is Nathalie Hibble, who is copied. ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████ This email does not reflect legal advice ███████████████████████████████████ Plaintiff described this document on its privilege log as an "Email reflecting legal advice regarding insurance claim submission" and withheld under the attorney-client privilege and as attorney work product.

These few examples are emblematic of a larger problem where Plaintiff has withheld documents that should have otherwise been produced.

Further, the Discovery Master thoughtfully analyzed Plaintiff's assertions that certain third-parties did not presumptively break privilege, and she diligently provided a framework for production of other communications mindful of the very narrow exception for third parties who

are deemed the functional equivalent of the client. That framework was well-reasoned and correct, particularly given the volume of documents at issue and the need for discovery to proceed.

"Generally, disclosing attorney-client communications to a third party undermines the privilege." *United States ex rel. Wollman v. Massachusetts Gen. Hosp., Inc.*, 475 F. Supp. 3d 45, 66 (D. Mass. 2020) (quoting *Cavallaro v. U.S.*, 284 F.3d 236, 246–47 (1st Cir. 2002)). And under certain circumstances, work product protections can also be waived by disclosure to third-parties. *See Colonial Gas Co. v. Aetna Cas. & Sur. Co.*, 144 F.R.D. 600, 604–05 (D. Mass. 1992) (setting out factors evaluated to determine whether work product is waived when information is disclosed to a third party). Plaintiff did not—and cannot—meet his burden to show that all communications with CREF employees are subject to the seldom-invoked "functional equivalent" standard. For starters, Steward engaged CREF as a third-party, independent contractor. The work that CREF performed for Steward was governed by a Master Services Agreement, which expressly disclaimed any "association, partnership, joint venture, or relationship of principal and agent, master and servant, or employer and employee" or to provide the "right, power, or authority, whether expressed or implied, to create any duty or obligation on behalf of the other Party." Plaintiff has not met the very high burden of establishing that many additional CREF employees are in this same category.

Accordingly, Plaintiff is unlikely to succeed on the merits that privilege or work-product protection shield from disclosure the *thousands* of fully withheld and partially redacted documents at-issue in this dispute.

*Second*, there is no irreparable harm. The Special Master's order carefully broke the CREF records into categories. While she ordered that some records be produced, all production is subject to clawback. She also allowed for *in camera* review of some documents, which review is ongoing.

As the Discovery Master works to assess Plaintiff's privilege and work product claims, Plaintiff will continue to be allowed to argue that previously produced materials can and should be clawed back. This is not a case where production of records with a third-party contractor will have such grave impact that any improper production cannot be cured by clawback. Indeed, that is precisely what a clawback procedure is intended to do. *See* Fed. R. Evid. 502(d).

*Third*, in contrast, and as this Court is painfully aware, the issuance of the stay will substantially injure other parties. As noted above, this case has been delayed largely due to Plaintiff's discovery misconduct. Without finality on the privilege dispute, many depositions remain held open and other depositions are on pause. The documents at-issue in this dispute cover many topics and many witnesses (including, as the Special Master noted, discussions on scope, budget, and schedule, which are the core fact issues in the case (and generally not topics that are the focus of confidential *legal* advice)).

*Fourth*, and for similar reasons, the public interest lies in this litigation moving forward and coming to an end.

If the Court is nevertheless inclined to grant a stay of the Discovery Master's order, at a minimum all discovery should be stayed and the fact discovery cutoff should be extended.

Dated: June 4, 2026

Respectfully submitted,

*/s/Ronald S. Safer*

Ronald S. Safer (pro hac vice)
Amy C. Andrews (pro hac vice)
Abigail L. Peluso (pro hac vice)
Lucas T. Rael (pro hac vice)
RILEY SAFER HOLMES & CANCILA LLP
1 South Dearborn Street, Suite 2200
Chicago, Illinois 60603
Tel: (312) 471-8700
rsafer@rshc-law.com
aandrews@rshc-law.com

apeluso@rshc-law.com
lrael@rshc-law.com


Jonathan D. Mutch, Esq. (BBO No. 634543)
Timothy Wenger (BBO No. 674087)
ROBINS KAPLAN LLP
800 Boylston Street, 25th Floor
Boston, MA 02199
Tel: (617) 267-2300
JMutch@RobinsKaplan.com
TWenger@RobinsKaplan.com

Michael Menapace (BBO No. 568841)
Wiggin and Dana, LLP
20 Church Street
Hartford, Connecticut 06103
Telephone: (860) 297-3733
Facsimile: (860) 297-3799
mmenapace@wiggin.com


*Attorneys for Defendants American
Guarantee and Liability Insurance Company
and Zurich American Insurance Company*

8

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 4, 2026 a copy of the foregoing document was filed with the Court via the ECF filing system.  As such, this document will be electronically sent to the registered participants identified on the Notice of Electronic Filing (NEF) and paper copies will be sent by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.

*/s/Ronald S. Safer*