**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| MARK KRONFELD, as Trustee of the SHC Creditor Litigation Trust,<br><br>       Plaintiff,<br><br>       v.<br><br>AMERICAN GUARANTEE AND LIABILITY INSURANCE COMPANY and ZURICH AMERICAN INSURANCE COMPANY,<br><br>       Defendants. | Civil Action No. 1:21-cv-11902-PBS |

**DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S OBJECTION TO SECTION IV(B) OF DISCOVERY MASTER ORDER NO. 22 (ECF NO. 224)**

## INTRODUCTION

Discovery in this case is stalled—once again—because Plaintiff continues to withhold discoverable information. Plaintiff seeks to shield from discovery *thousands* of communications between Steward and CREF. In his Objection to the Special Master's Order (Dkt. 237), Plaintiff largely ignores his burden to establish attorney-client privilege or work-product protections for any withheld communication and instead challenges the framework supplied by the Special Master. The Special Master correctly concluded both that CREF is not the functional equivalent of the "client" for purposes of the attorney-client privilege analysis and that Plaintiff may claw back documents as alleged work product if he can link the communication to a work-product request from Steward's outside counsel, Todd & Weld. *See* Dkt. 224 at 34–37. The Special Master leniently afforded Steward some protection for communications with Chris Kidney, a CREF employee, and outlined a consistent, logical procedure for communications involving CREF generally (Discovery Master Order No. 22, Section IV(B)(1)) and for Mr. Kidney's direct communications with counsel or in response to work-product requests from counsel (Discovery Master Order No. 22, Sections IV(B)(2) and (B)(3)).

The Special Master's opinion is sound, supported by the law, and should not be disturbed. Defendants need to move forward with depositions. But given the volume of withheld and redacted records involving CREF—and their subject matter, including core factual disputes over the scope, schedule, and budget for the restoration of Norwood Hospital—Defendants cannot proceed until they receive and review the records. Defendants therefore respectfully request that the Court deny Plaintiff's request to vacate or modify Section IV(B) of Discovery Master Order No. 22.

1

## FACTUAL BACKGROUND

**I.    CREF**

3



## II.    CREF's Specific Involvement in Steward's Norwood Hospital Insurance Claim

On June 28, 2020, a weather event damaged portions of Norwood Hospital (the "Weather Event"). After the Weather Event, Steward hired outside contractors to help mitigate the damage, gather information, and assess the damage at Norwood Hospital. ▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

4



CREF was an involved third-party consultant performing contractual services for Steward. The fact that its work was extensive does not change the analysis. CREF and Steward maintained formalities—in both contract and practice—that confirm CREF was an independent third-party contractor, not the rare functional equivalent of the client for privilege purposes.

## PROCEDURAL BACKGROUND

On January 21, 2026, as document production was ending and fact-witness depositions were set to begin, Plaintiff served his first privilege log. Discovery Master Order No. 22, Dkt. 224 at 2–3.[3] That first log contained nearly *ten thousand*

---

[3] As the Court knows, Defendants had to press hard to obtain basic discovery in this case, including seeking orders compelling searches of Steward corporate records and Steward custodial files (Discovery Master Order No. 1, Dkt. 152), and document production for witnesses disclosed late in the day (Discovery Master Order No. 15, Dkt. 187; Order on Pl.'s Objection, Dkt. 205). Defendants' efforts continued after they received Plaintiff's privilege log.

*entries*.[4] Even at first blush, it was clear that Plaintiff utterly failed to satisfy his obligation to "describe the nature of the documents, communications, or tangible things not produced or disclosed . . . in a manner that . . . enable[s] [Defendants] to assess the claim" that the information is privileged or subject to protection as trial-preparation material. Fed. R. Civ. P. 26(b)(5)(A)(ii). The most apparent issue with Plaintiff's log was the withholding of communications involving third-party entities. By far, the largest group of those communications involved CREF employees, amounting to *nearly half* of the entries.

On February 5, 2026, Defendants raised their concerns regarding the adequacy of Plaintiff's privilege log with the Special Master. Objection Ex. 11, Dkt. 237-11. The parties submitted briefs to the Special Master. Objection Exs. 1 & 13, Dkt. 237-1 & 237-13. Plaintiff justified his withholding of the CREF communications with a declaration from former Steward in-house counsel Nathalie Hibble, who described CREF's work relating to the Norwood Hospital claim. Objection Ex. 1 at 29–30, Dkt. 237-1. Plaintiff also submitted contracts executed between Steward and CREF. *See* Objection Ex. 13 at 8, Dkt. 237-8 (reflecting submission of CREF Master Service Agreement and related amendments). Later, the parties responded jointly to questions raised by the Special Master. Discovery Master Order No. 22 at 4–9, Dkt. 224 (reflecting answers submitted to Special Master). Altogether, the record before the Special Master was substantial. *Id.* at 1 (noting the extent of the materials submitted regarding the discovery dispute).

The Special Master thoughtfully analyzed Plaintiff's assertions that certain third parties did not presumptively break privilege and provided a production framework mindful of the narrow

---

[4] Plaintiff's privilege log contains entries for documents fully withheld as privileged (not including documents partially redacted for privilege).

6

exception for third parties deemed functional equivalents of the client. As to CREF-Steward communications, the Special Master concluded the following:

1.      As to work product, Plaintiff may continue to withhold communications involving Todd & Weld attorneys that show work product requests by Todd & Weld or responses to such requests. *See* Discovery Master Order No. 22 at IV(B)(1), Dkt. 224. Further, Plaintiff may claw back and submit for *in camera* review communications between Mr. Kidney and third parties, if he can link the communication to a request for work product by Todd & Weld. *See id.* at IV(B)(2).

2.      As to the attorney-client privilege, the Special Master found that Chris Kidney's direct communications with Todd & Weld or Steward's in-house lawyer (Ms. Hibble) could be privileged, assuming that the communication was for the purposes of legal advice. *See id.* at 36 ("In this way, many of the emails in which Mr. Kidney communicates with counsel can remain attorney-client privileged under the functional equivalent doctrine."); *id.* at IV(B)(3).

3.      The Special Master concluded that other CREF employees are not within the attorney-client privilege, and that Mr. Kidney's communications with third parties did not cloak those communications in privilege. But the Special Master provided a clawback procedure for those productions, including for additional claims of work-product privilege. *Id.* at IV(B)(2).

There is nothing illogical or impractical about this procedure.

## SUPPLEMENTAL PRODUCTIONS FOLLOWING ORDER NO. 22

The only issue before this Court is Plaintiff's objection to the Special Master's ruling concerning the CREF-Steward records (Section IV(B) of Order No. 22). That said, Defendants provide the Court with an initial assessment of records recently produced under other portions of the Special Master's order because those records underscore the overbreadth of Plaintiff's privilege assertions. Before Order No. 22, Plaintiff withheld and redacted records on the assertion that they were protected by the attorney-client privilege or the work-product doctrine. Although Defendants' review of recent productions is ongoing, it is already clear that Plaintiff improperly withheld nonprivileged documents.

For example, the following documents were fully withheld by Plaintiff:

7



- **Exhibit K** (STEWARD02051539)
- **Exhibit L** (STEWARD02051532)
- **Exhibit M** (STEWARD01535466)
- **Exhibit N** (STEWARD01436765)
- **Exhibit O** (STEWARD02053103)
- **Exhibit P** (STEWARD02053220)

None of these documents reflects a confidential communication between Steward and its lawyers made for the purpose of requesting or providing legal advice. Nor does any email reflect a communication made at counsel's direction because of anticipated or ongoing litigation.

Plaintiff has also recently re-produced records falling within the scope of the Special Master's privilege rulings that previously had been produced with redactions. Although Defendants are still reviewing this production, their initial review shows that the records similarly lack any basis for redaction under the attorney-client privilege or work-product doctrine:



**Exhibit S** (STEWARD1362946)

**Exhibit U** (STEWARD01317628)

**Exhibit W** (STEWARD01326224)

In this context, Plaintiff's assertions that his withholding decisions can be trusted should be viewed with caution. *See, e.g.,* Objection at 10–11 (contending that "successive reductions reflect Plaintiff's ongoing, good-faith effort to ensure that privilege assertions were tailored, accurate, and consistent with governing law.").

## LEGAL STANDARD

Under Rule 53(f), the Court decides *de novo* all objections to findings of fact and conclusions of law made or recommended by a master. Fed. R. Civ. P. 53(f)(3) & (4). However, "the court may set aside a master's ruling on a procedural matter only for an abuse of discretion." Fed. R. Civ. P. 53(f)(5).

The attorney-client privilege is "well-established and its rationale is straightforward. By safeguarding communications between client and lawyer, the privilege encourages full and free discussion, better enabling the client to conform his conduct to the dictates of the law and to present legitimate claims and defenses if litigation ensues." *In re Keeper of Records (Grand Jury Subpoena Addressed to XYZ Corp.)*, 348 F.3d 16, 22 (1st Cir. 2003) (citing *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)). Still, "the privilege is not limitless, and courts must take care to apply it only to the extent necessary to achieve its underlying goals." *Id.* at 22 (citing *In re Grand Jury Subpoena (Custodian of Records, Newparent, Inc.)*, 274 F.3d 563, 571 (1st Cir. 2001)). "In other words, the attorney-client privilege must be narrowly construed because it comes with substantial costs and stands as an obstacle of sorts to the search for truth." *Id*. (citing *United States v. Nixon*, 418 U.S. 683, 709–10 (1974)); *see also Cavallaro v. United States*, 153 F. Supp. 2d 52, 57 (D. Mass. 2001) (citation omitted) ("Although the attorney-client privilege is well established, it is narrowly construed because any expansion of the privilege hinders the Court in its search for the truth."), *aff'd* 284 F.3d 236 (1st Cir. 2002).

Plaintiff therefore bears the burden of establishing each of the following: (1) the communication was between an attorney and the client; (2) the communication was for the purpose of giving or obtaining legal advice; (3) the communication was confidential; and (4) the privilege has not been waived. *See Upjohn*, 449 U.S. at 389; *City of Springfield v. Rexnord Corp.*, 196 F.R.D. 7, 9 (D. Mass. 2000) (communications must "have been intended to be confidential and made for the purpose of giving or obtaining legal advice" to qualify as privileged); *Cavallaro*, 284 F.3d at 245; *Roberts v. U.S. Bank Nat'l Ass'n*, No. CV 13-11142-DPW, 2014 WL 12585793, at *3 (D. Mass. Oct. 31, 2014).

The "attorney-client privilege extends to communications between corporate officers and in-house counsel, but the communications must relate to legal matters, not business strategy or negotiation." *EEOC v. Texas Roadhouse, Inc.*, No. 11-cv-11732-DJC, 2015 WL 14031521, at *2 (D. Mass. Dec. 2, 2015) (citing *United States v. Windsor Cap. Corp.*, 524 F. Supp. 2d 74, 81 (D. Mass. 2007) (privilege does not apply when in-house counsel is engaged in nonlegal work, including business or technical advice unrelated to any legal issues)). Further, the "privilege applies to the communication itself, not the facts communicated. Facts gathered by counsel in the course of investigating a claim or preparing for trial are not privileged and must be divulged if requested in the course of discovery." *Id.* at *2 (citing *Upjohn*, 449 U.S. at 395–96).

Even where a party establishes that a confidential attorney-client communication occurred, the privilege is generally waived if the communication is shared with a third party. *See Cavallaro*, 284 F.3d at 246–47 ("Generally, disclosing attorney-client communications to a third party undermines the privilege"); *see also In re XYZ Corp.*, 348 F.3d at 22 ("When otherwise privileged communications are disclosed to a third party, the disclosure destroys the confidentiality upon which the privilege is premised.").

The work-product doctrine protects "(1) a document or tangible thing, (2) which was prepared in anticipation of litigation, and (3) was prepared by or for a party, or by or for a party's representative." *Colonial Gas Co. v. Aetna Cas. & Sur. Co.*, 144 F.R.D. 600, 604–05 (D. Mass. 1992). "Opinion work product revealing an attorney's mental impressions receives heightened protection." *Id.* at 605. The applicable test is "whether in light of the nature of the document and the factual situation in the particular case the document can be said to have been prepared or obtained ***because of the*** prospect of litigation." *Id*. (emphasis added). Even documents that

11

constitute work product are discoverable upon a showing of substantial need. Fed. R. Civ. P. 26(b)(3)(A)(ii).

## ARGUMENT

There is no question that CREF is an independent contractor that performed contractually defined services for Steward. As a rule, disclosing attorney-client privileged materials to CREF waives privilege. Plaintiff bears the burden to show that either of two narrow exceptions—the "functional-equivalent" exception or the "*Kovel* doctrine"[5] exception—applies to CREF. Plaintiff did not carry that burden before the Special Master, and his Objection does not carry it here. The Special Master correctly concluded that CREF's inclusion on communications generally waived any attorney-client privilege. Even so, the Special Master gave protection to one CREF employee, and she provided a framework to claw back records if Plaintiff could show that the communications were linked to an attorney request for work product in anticipation of litigation.

But that is only half of the equation. For the *thousands* of CREF-related communications Plaintiff seeks to withhold, he still must show that the communications either (a) were made for the purpose of obtaining or rendering legal advice, or (b) were prepared or obtained because of the prospect of litigation. Plaintiff made little effort to do that before the Special Master and makes no attempt to do so before this Court. Indeed, the records produced subject to clawback under the Special Master's rulings further confirm that Plaintiff withheld communications involving CREF employees that plainly were not (a) made for the purpose of obtaining or rendering legal advice or (b) prepared because of the prospect of litigation.

---

[5] The exception, which arose under *United States v. Kovel*, 296 F.2d 918 (2d Cir. 1961), is also known as the "derivative attorney-client privilege."

Given the need to proceed expeditiously with discovery, and given the balance of equities and risk of harm, this Court should at minimum uphold the Special Master's framework and order Plaintiff to comply forthwith. Given the serious questions raised about the nature of the CREF-related communications and Plaintiff's blatant over-withholding of discoverable communications, any error by the Special Master favored Plaintiff. In any event, Plaintiff's request for relief from Order No. 22 should be denied.

I.    **Plaintiff Has Not Established that CREF Meets Any Narrow Exception to the General Rule Regarding Privilege Waiver**

CREF was a third-party contractor that Steward used, in part, to coordinate information related to its insurance claim. CREF was not central to Steward's core business—administering health care services at hospitals—and according to CREF's CEO, CREF was not a critical decisionmaker for Steward. Nor was CREF employed to assist lawyers in rendering legal advice.

   A.    **Plaintiff Has Not Satisfied the Narrow "Functional-Equivalent" Exception**

Plaintiff has not established that CREF is the "functional equivalent" of Steward.

*First*, Plaintiff cites no Massachusetts case finding that a third party satisfied the functional-equivalent doctrine articulated in *In re Bieter*. Objection at 13–14 (citing *In re Bieter Co*, 16 F.3d 929, 937–938 (8th Cir. 1994)). Instead, the three Massachusetts cases that Plaintiff cites ***expressly reject*** application of the functional-equivalent doctrine. *America's Test Kitchen, Inc. v. Kimball*, 35 Mass. L. Rptr. 75, 2018 WL 2049490 (Mass. Super. Ct. April 2, 2018) ("But the CPK Media Parties have not shown that Sutton was the functional equivalent of an employee who could share or participate in communications about legal advice without thereby waiving any otherwise applicable privilege"); *Janssen Biotech, Inc.*, 788 F. Supp. at 172 (D. Mass. 2025) ("But close collaboration is not enough to invoke the functional-equivalent doctrine. It is incumbent on the party asserting the privilege to put forth sufficient evidence to demonstrate that specific third-

party individuals did in fact function as employees at the relevant time, and ***defendant has not done so here.***") (emphasis added); *Burke v. Gen. Hosp. Corp.*, No. 1784CV02876, 2019 WL 6197040, at *7–8 (Mass. Super. May 3, 2019) (concluding defendant did not meet burden of showing functional-equivalent doctrine applied).

Plaintiff's lack of supporting authority is unsurprising because federal courts in Massachusetts have expressly *not* adopted the doctrine. *See Janssen Biotech, Inc.*, 788 F. Supp. 3d at 171 (D. Mass. 2025) ("The First Circuit has not adopted the functional-equivalent doctrine. This Court will nevertheless assume that under certain circumstances, third-party agents may essentially operate as employees, and that the disclosure to them of otherwise-privileged communications will not waive the privilege."); *Lynx Sys. Devs., Inc. v. Zebra Enter. Solutions Corp.*, No. 15-12297-GAO, 2018 WL 1532614 at *4 (D. Mass. March 28, 2018) ("As an initial matter, I note that the [functional-equivalent] doctrine has not been adopted within this Circuit or applied within this District.")[6]

*Second*, courts repeatedly note that the functional-equivalent doctrine is a narrow and exceedingly rare exception to the general rule that "disclosing attorney-client communications to a third party undermines the privilege." *United States ex rel. Wollman v. Massachusetts Gen. Hosp., Inc.*, 475 F. Supp. 3d 45, 66 (D. Mass. 2020) (quoting *Cavallaro*, 284 F.3d at 246–47). Plaintiff

---

[6] Although not cited by Plaintiff, Defendants located *one* Massachusetts Land Court decision applying the functional-equivalent doctrine to a third party. *One Ledgemont LLC v. Town of Lexington Zoning Bd. of Appeals*, No. 13 PS 477585(GHP), 2014 WL 2854788, at *1 (Mass. Land Ct. June 23, 2014). That case is easily distinguishable because it involved a real estate broker with "exclusive leasing and advisory opportunities" who was a "key decision leader for the most senior management" of the client. *Id.* at *3. The trial court also noted that the client had "unprecedented veto power over the [third-party consultant's] ability to serve other clients and participate in other deals." *Id.* Here, by contrast, Steward was a healthcare-services company that outsourced its real estate operations to CREF. According to CREF's CEO, Mr. Gendron ███████████████

14

has not met his burden to establish that CREF—including any of the specifically named individuals in Plaintiff's Objection—satisfies that narrow standard. *See Banco do Brasil, S.A. v. 275 Washington Street Corp.*, No. 09-11343-NMG, 2012 WL 1247756, at \*5–6 (D. Mass. April 12, 2012) (court found that the real estate broker did not satisfy "functional-equivalent" exception, even though, in her capacity as the defendant's leasing representative, she had procured the commercial leasing deal at issue, interacted with plaintiff's representatives on behalf of the defendant, and "served as a direct contact and liaison" between the defendant's lawyers and its principals on issues related to the disputed lease agreement).

*Third,* even where a third-party consultant is the "functional equivalent of an employee for some purposes, distribution of legal advice or other attorney-client communications to the consultant will only be privileged if the client needed the consultant to facilitate the rendition of legal advice by the lawyer or the implementation of the advice by the client." *America's Test Kitchen*, 2018 WL 2049490 at \*3 (citing *Federal Trade Comm'n v. GlaxoSmithKline*, 294 F.3d 141, 147–48 (D.C. Cir. 2002)). Plaintiff failed both before the Special Master and in his briefing to this Court to establish that communications with CREF were needed to facilitate the rendition of **legal advice** by counsel to Steward.

In light of this case law, Plaintiff's assertion that the Special Master "improperly narrow[ed] the functional equivalent doctrine" is striking. Objection at 13–14. The Special Master correctly concluded that Plaintiff had not demonstrated that communications between CREF and Steward were privileged, and she generously awarded Plaintiff privilege protection for one CREF employee, Chris Kidney. *See* Discovery Master Order No. 22 at 37, Dkt. 224. Plaintiff simply cannot meet his burden to establish that CREF, or any of its employees, is the functional equivalent of Steward. Nor can Plaintiff establish that distributing legal advice or other attorney-client

15

communications to CREF was necessary to help facilitate the rendition or implementation of legal advice.[7] Accordingly, the Court should not disturb the Special Master's ruling on the functional-equivalent doctrine.

### B.    Plaintiff Fails to Establish that CREF Was Employed to Assist a Lawyer in Rendering Legal Advice

The "*Kovel* doctrine" extends the attorney-client privilege to include "third parties employed to assist a lawyer in rendering legal advice." *Cavallaro*, 284 F.3d at 247. "[T]he exception applies only to communications in which the third-party plays an interpretive role"; that is, "the third party's communication must serve to translate information between the client and the attorney." *Dahl v. Bain Capital Partners, LLC*, 714 F.Supp.2d 225, 228 (D. Mass. 2010). In addition, "the third party's communication must be made for the purpose of rendering legal advice, rather than business advice." *Id.* This doctrine does not apply to CREF, which was retained beginning in 2018 to provide project-management services to Steward. *See, supra* at 2–5.

Order No. 22 correctly concluded that Plaintiff failed to meet his burden to establish that communications between Steward and CREF translated any information to aid an attorney

---

[7] This gap in Plaintiff's analysis explains why the Special Master noted that "several" CREF employees served as the functional equivalent of Steward employees, but that communications with those employees did not fall within the attorney-client privilege. The Special Master noted that none of the "CREF employees, however, were handling any esoteric complex area of expertise; they handled real estate management matters at the ground level." Discovery Master Order No. 22 at 35–36, Dkt. 224. Thus, while she afforded Mr. Kidney protected status, the Special Master correctly concluded that communications between other CREF employees and Steward were not privileged regardless of functional-equivalent status. *See America's Test Kitchen*, 2018 WL 2049490 at *2 ("If otherwise privileged communications are shared willy-nilly among the client's employees or functionally equivalent agents, even though their participation is not necessary to obtain or implement legal advice from an attorney, the privilege will be lost.") (citing *Commonwealth v. Senior*, 433 Mass 453, 457 (2001) ("the privilege is destroyed when such communications *are* made in the presence of a non-necessary agent of the attorney client")). If anything, the Special Master was overly generous in affording protection to Steward's communications with Mr. Kidney.

16

providing legal advice to Steward. Dkt. 224 at 36. The Special Master noted that "Scope, budget, and schedule are not the types of activities that require 'translation' for the attorney and client to seek or understand legal advice given," and that "no CREF employee has the status of 'translator'." *Id.*

The Special Master did not improperly collapse the *Kovel* doctrine with the functional-equivalent doctrine as Plaintiff contends. Objection at 17. Rather, the Special Master correctly found that Plaintiff failed to show CREF's communications facilitated legal advice or helped counsel translate information necessary to provide it. Accordingly, the Special Master appropriately found that communications with CREF were generally not protected by the attorney-client privilege.

## II.      The Special Master Correctly Analyzed the Work-Product Claims Involving CREF

Plaintiff also fails to establish that the withheld communications are attorney work product or that the Special Master "improperly conflates the attorney-client privilege and work product doctrine" by "require[ing] the involvement of Todd & Weld" on communications. Objection at 17–18. Plaintiff misstates the Special Master's ruling. The Special Master concluded that Plaintiff *could* demonstrate a work-product claim over communications involving Mr. Kidney, but Plaintiff had to link the withheld communication to "requests by or responses to such requests from Todd & Weld for work product information." Discovery Master Order No. 22 at 37, Dkt. 224. Requiring Plaintiff to demonstrate work-product requests for communications with CREF is simply what the law requires. *Colonial Gas Co.*, 144 F.R.D. at 605 (D. Mass. 1992) (the applicable test is "whether in light of the nature of the document and the factual situation in the particular case the document can be said to have been prepared or obtained because of the prospect of litigation."). The Special Master's process allows Plaintiff to claw back documents he claims are subject to work product, and that process allows Defendants to challenge any work-product assertion, including on the

grounds that the communication was not created because of anticipated litigation or that Defendants have a substantial need for the materials to prepare their case.

### III.    The Special Master's Procedure, Which Allows for Clawback Under Rule 502(d), Provides Plaintiff with the Opportunity to Establish Privilege Claims

Separate from any factual or legal objections, Plaintiff also objects to the procedural aspects of the Special Master's Order. Plaintiff asserts that the Special Master's order is "impossible to apply" and that this supposedly warrants rewriting it entirely. Objection at 19. But Plaintiff identifies nothing in the procedure adopted by the Special Master that amounts to an abuse of discretion. *See* Fed. R. Civ. P. 53(f)(5) ("[T]he court may set aside a master's ruling on a procedural matter only for an abuse of discretion.").

*First*, Plaintiff asserts that Section IV(B)(1) and Section IV(B)(2) are inherently contradictory. Not so. These two sections fit within the Special Master's overall analysis of how (a) with the exception of Mr. Kidney, the involvement of CREF employees categorically results in a waiver of the attorney-client privilege; (b) Mr. Kidney's involvement in communications with other CREF employees or other third parties does not cloak those communications in privilege; (c) Plaintiff may be able to demonstrate that CREF was directed by counsel to provide information because of anticipated litigation; and (d) the evidence suggested that Ms. Hibble was merely copied on communications to shield them from discovery. The result is straightforward: Section IV(B)(1) sets the standard for CREF employees generally; Section IV(B)(2) sets the standard for Mr. Kidney; and Section IV(B)(3) specifically allows for a showing that Ms. Hibble was actually providing legal advice.

*Second*, Plaintiff asserts that the Special Master should have requested CREF materials for *in camera* review before ordering production, Objection at 12, and that producing records subject to clawback will result in "immediate irreparable harm," *id.* 19–20. Because the Special Master

18

ruled correctly that CREF was a third party not protected by privilege, there was no requirement to review documents *in camera*. The Special Master made a categorical determination, just as she did for the other third-party consultants. Although she ordered Plaintiff to produce certain records, all production is subject to clawback. She also allowed *in camera* review of certain documents, and that review is ongoing. As the Special Master assesses Plaintiff's privilege and work-product claims, Plaintiff remains free to argue that particular materials can and should be clawed back. That is precisely what a clawback procedure is intended to do. *See* Fed. R. Evid. 502(d).

## **CONCLUSION**

Discovery in this case must resume. Defendants cannot effectively prepare their defense or depose remaining witnesses without the thousands of critical records Plaintiff has withheld or produced with redactions. Plaintiff has not met his burden to demonstrate that communications with CREF fall within the attorney-client privilege or are categorically protected by the work-product doctrine. Accordingly, the Court should deny Plaintiff's objection and decline to vacate Section IV(B) of Discovery Master Order No. 22. Plaintiff should be ordered to produce the withheld records forthwith, subject to the clawback procedure outlined by the Special Master.

If the records are not produced forthwith, the Court should extend discovery commensurate with the delay caused by Plaintiff's continued withholding.

Dated: June 12, 2026

Respectfully submitted,

/s/Ronald S. Safer

Ronald S. Safer (pro hac vice)
Amy C. Andrews (pro hac vice)
Abigail L. Peluso (pro hac vice)
Lucas T. Rael (pro hac vice)
RILEY SAFER HOLMES & CANCILA LLP
1 South Dearborn Street, Suite 2200
Chicago, Illinois 60603
Tel: (312) 471-8700
rsafer@rshc-law.com
aandrews@rshc-law.com
apeluso@rshc-law.com
lrael@rshc-law.com


Jonathan D. Mutch, Esq. (BBO No. 634543)
Timothy Wenger (BBO No. 674087)
ROBINS KAPLAN LLP
800 Boylston Street, 25th Floor
Boston, MA 02199
Tel: (617) 267-2300
JMutch@RobinsKaplan.com
TWenger@RobinsKaplan.com

Michael Menapace (BBO No. 568841)
Wiggin and Dana, LLP
20 Church Street
Hartford, Connecticut 06103
Telephone: (860) 297-3733
Facsimile: (860) 297-3799
mmenapace@wiggin.com


*Attorneys for Defendants American
Guarantee and Liability Insurance Company
and Zurich American Insurance Company*

20

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on June 12, 2026 a copy of the foregoing document was filed with the Court via the ECF filing system.  As such, this document will be electronically sent to the registered participants identified on the Notice of Electronic Filing (NEF) and paper copies will be sent by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.

*/s/Ronald S. Safer*