# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

MARK KRONFELD, AS TRUSTEE OF THE
SHC CREDITOR LITIGATION TRUST,

        Plaintiff,

        v.

AMERICAN GUARANTEE AND LIABILITY
INSURANCE COMPANY and ZURICH
AMERICAN INSURANCE COMPANY,

        Defendants.

Civ. Action. No. 21-cv-11902-PBS

## DISCOVERY MASTER ORDER NO. 25:
### Clawback Documents

On June 4, 2026, Plaintiff notified Defendants that it is seeking to claw back an email dated July 14, 2021 (the "July 14 Email"[1]) produced to Defendants in Plaintiff's May 29, 2026 production. On June 10, 2026, the clawback request was expanded to include all copies of the July 14 Email, as well as all copies of two follow-up emails (the "July 18 Email" and the "July 26 Email") in chains of emails stemming from the July 14 Email (collectively, the documents that Plaintiff seeks to claw back are referred to herein as the "Three Emails") that were also part of Plaintiff's production.[2] Plaintiff does not claim any form of privilege as to the various vendors' responses to any of these Three Emails and there is no motion to claw back the responses to these emails that were sent by at least three of Steward's construction and architectural contractors; only Mr. Kidney's outgoing emails are sought to be clawed back.

---

[1] The July 14 Email was sent by Chris Kidney, Senior Director of Emergency Project Management at CREF, a third-party engaged by Steward. The July 14 Email was sent to 13 people and copied to two others: 3 individuals from Steward's contractor NFA (Ron Papa, Sean O'Mara, and Mason LeBlanc); 2 individuals from Steward's architectural contractor Array (John McCarthy and Michael Niehaus); 3 individuals from Steward's construction contractor Consigli (Stephanie O'Brien, John Anzalone, and Kelsey Holt); 3 individuals from Steward's engineering contractor BR+A (Michael Benjamin, Michael Prentice, and Reza Ghayspoor); 2 CREF employees (Scott Kenyon and Steve VanNess); and copied to: Hunter Cooney (an employee of CREF) and Nathalie Hibble (Steward's in-house attorney). None of the outside counsel from Todd & Weld, who were representing Steward at that time, was copied.

[2] Approximately 187 documents were identified by Defendants as falling within Plaintiff's clawback request. After review, Plaintiff does not seek to claw back the vast majority of the 187 of these documents, but does seek to claw back all copies of the July 14 Email, July 18 Email, and July 26 Email.

1

Many copies of these Three Emails were previously produced in this litigation, with at least 44 copies produced as early as November 2025, additional copies in January 2026, and still more copies of the same emails in March 2026. Plaintiff now contends that these Three Emails sent by Chris Kidney to several of Steward's construction and engineering vendors are protected from disclosure by the work product doctrine and attorney-client privilege.

On June 12, 2026, Defendants submitted a letter brief to the Discovery Master challenging Plaintiff's request to claw back all copies of the Three Emails produced pursuant to Discovery Master Order No. 22. (ECF 244). As stated in the preceding paragraph, numerous copies of the Three Emails were previously produced in this case, some pursuant to Discovery Master Order No. 4 (ECF 158), issued in October 2025. Plaintiff submitted a response brief on June 18, 2026 in support of its request to claw back these documents, and Defendants submitted a reply on June 21, 2026. The Discovery Master has reviewed the Parties' submissions, the disputed documents, and the relevant authority. Pursuant to the Court's Order appointing the undersigned as Discovery Master (ECF 149), the Discovery Master rules as follows.

Applicable Law and Analysis:

To obtain a claw back of documents produced, the party seeking the clawback bears the burden of showing privilege, by a preponderance of the evidence. *Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 190 F.R.D. 287, 289 (D. Mass. 2000) ("the party inadvertently disclosing attorney-client privileged communication bears the burden of showing by a preponderance of evidence that the communication should retain its privileged status."). Plaintiff contends that two grounds establish the right to claw back these documents: work product protection and attorney-client privilege.

In raising the issue of Plaintiff's attempt to claw back the disputed documents with the Discovery Master, Defendants argue that these documents are not subject to clawback because they were created during the insurance claim adjustment period as part of Steward's effort to maximize its insurance recovery, as well as other arguments summarized below. Defendants argue that Plaintiff has not met its burden to clawback the Three Emails, arguing that: (1) the communications do not reflect attorney work product, and would have been created irrespective of the litigation; (2) the documents are not attorney-client privileged communications because they neither seek nor give any legal advice, but instead ask for the type of information from Plaintiff's engineering and architectural vendors best described as "scope, budget and schedule" information for the hospital repairs; (3) Mr. Kidney's cc to Ms. Hibble does not, without more, establish any attorney involvement, for the reasons stated in Order No. 22; (4) the involvement of third-parties waived any privilege protection, because multiple parties were copied who were hybrid consultants doing actual work on the project, as opposed to litigation consulting, on the date of these emails; (5) the common interest privilege does not apply; (6) the prior productions underscore that these emails are not entitled to protection; and (7) Defendants have shown a substantial need for these emails in order to defend against the Plaintiff's claim of "bad faith" in the insurance adjustment process.

2

In the following paragraphs, the Discovery Master will discuss the cases cited by the Parties in their briefs in support of and in opposition to the clawback motion, followed by the analysis of each doctrine based upon what has been argued by each Party in support of its position on whether the Plaintiff has met its burden of proof to claw back the outgoing Three Emails; it bears repeating that there is no claim that the responses to Mr. Kidney's emails constitute any privileged communications.

Each legal basis claimed for the Three Emails sent by Kidney will be analyzed separately, based upon the applicable law and the facts proffered by the Parties' briefs and exhibits.

### A. Inadvertent Disclosure and Waiver

In evaluating the effect of inadvertent disclosure of privileged information, Massachusetts courts consider the following circumstances: "(1) the reasonableness of the precautions taken to prevent inadvertent disclosure, (2) the amount of time it took the producing party to recognize its error, (3) the scope of the production, (4) the extent of the inadvertent disclosure, and (5) the overriding interest of fairness and justice." *Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 190 F.R.D. 287, 291 (D. Mass. 2000).

Although here Plaintiff seeks to claw back those copies of the Three Emails it produced pursuant to Discovery Master Order No. 22, these *very same* documents were previously produced months earlier by numerous third parties in this litigation: 44 versions of the Three Emails were produced at least as early as November 12, 2025 in Consigli's production to Defendants. Yet almost four months elapsed after Consigli's production before Plaintiff noticed.[3] And even then, Plaintiff only did so on the eve of Consigli's 30(b)(6) deposition.[4]

---

[3] Nor did Plaintiff notice that BR+A produced duplicates of the Kidney Three Emails in February 2026 and NFA in March 2026.

[4] On the evening of March 4, 2026 – almost 4 months after Consigli's November 2025 production and less than 24 hours before the deposition of Consigli's 30(b)(6) witness – Plaintiff for the first time asked to claw back 44 duplicates of the Three Emails from Kidney produced to Defendants by Consigli. This was the first time that Plaintiff claimed that the Three Emails were privileged on the basis of attorney-client privilege and work product doctrine. The Parties submitted a dispute about these 44 documents to the Discovery Master at 7:27 PM on March 4, 2026, just hours before the deposition was set to commence the next morning. In an order issued the next morning, the Discovery Master instructed that the deposition shall proceed, "including questioning on the documents at issue pursuant to the procedure" set out in the Discovery Master's March 4, 2026 email response to Plaintiff's eleventh hour request, which provided:

> [T]he deposition shall proceed and the questioning on those exhibits shall occur, subject to a clawback of the questions pertaining to any exhibit that I deemed to be privileged upon receipt of counsel's arguments.

And privilege claims and disputes were top of mind from the outset of discovery. Privilege claims and disputes pertaining to the Consigli documents were ever-present in the discovery disputes in this case. Plaintiff's counsel sent a letter to Consigli in March 2025, issuing overly broad instructions to withhold documents because of privilege concerns.[5] Arguments pertaining to the appropriateness of these instructions were made at a hearing in October 2025, and the Discovery Master entered Order No. 4 (ECF 158), instructing Consigli to produce relevant documents to Defendants.

On January 22, 2026, the Discovery Master held another hearing with the Parties regarding numerous discovery disputes. One of the issues addressed at the hearing was the privilege log produced by Consigli in mid-November 2025. Defendants challenged documents withheld by Consigli as purportedly privileged that were related to schedules that Consigli prepared for Plaintiff. (Jan 22, 2026 Hrg. Tr. at 127:9-18).[6] Plainly Consigli was the subject of

For this reason counsel shall permit questioning [of] this witness on all documents. The questions and answers on documents claimed to be privileged shall be deemed confidential until I am able to rule.

It is unreasonable to assert a privilege the night before the deposition commences, especially with respect to a party that is not a client. There may be grounds for privilege or there may not be, but nothing is so sacred that a deposition cannot continue, subject to clawback of relevant portions, if I rule that any portions are privileged.

As to any document that is claimed to be privileged, counsel shall state when the question is asked what the grounds for the privilege assertion are, and the facts to support it. You may ask questions about the dates on which that portion of the Consigli work was done, the purpose of the work, and such other matters as may affect the assertion of the privilege. There shall be NO speaking objections, nor instructions not to answer questions about these documents."

(Discovery Master March 4, 3036 Email).

[5] Plaintiff's March 17, 2025 letter instructed Consigli that any materials prepared after February 2021 were protected from disclosure. (Jan 22, 2026 Hrg. Tr. at 139:2-6). This instruction from Plaintiff's counsel to Consigli was overbroad, because it clearly covered many months of work when Consigli was not a non-testifying expert. (Jan. 22, 2026 Hrg. Tr. at 144:1-145:4).

[6] On the evening of January 22, several hours after the hearing concluded, Robert Lizza, the Chief Legal Officer at Consigli, emailed the Discovery Master directly, asking that Consigli be allowed additional time to assess whether it wished to raise any claim of privilege as to the documents at issue that may be unique to Consigli. The Discovery Master granted Consigli's request to review the documents solely for any privilege issues that may be unique to Consigli, but ordered that, in light of the undue delays in the production of these documents, Consigli must act with urgency and with no further delay, and that the documents should be ready for production by January 28, 2026. Discovery Master Order No. 13 (ECF 180). No assertion of any

many of the interactions the Parties had with the Discovery Master. This history was more than sufficient to alert Plaintiff to the importance of reviewing Consigli's November 2025 production to Defendants. Yet despite this sequence of events, Plaintiff waited until March to check Consigli's document production for any claims of privilege.

The Plaintiff draws a distinction between the Consigli document production that Plaintiff was given advance ability to review for privilege before production to Defendants, and the Consigli production in November that occurred without giving Plaintiffs an advanced period of time to review. But this distinction does not explain nor justify why the November production was not reviewed immediately after production to assert an argument for clawback.  If anything, production by a third-party vendor who denies advance review would elicit even greater urgency of the Plaintiff to do a prompt review.  To be sure, there was a lot of work being done at that time, but the teams were also large, and this issue of privilege was a constant source of disputes between the Parties — especially as to the many third-party vendors of Steward.

Comparing this case to the factors stated in *Hoechst v. Amgen,* the Plaintiff does not meet its burden of proof on factors (1), (2) and (4). Given the facts discussed above, waiting four months after the production to review the documents produced by Consigli's was not reasonable, particularly in light of the fact that these emails were produced 44 times by Consigli, and additional times by the other third-party vendors, before March 4, 2026. The Court in *Amgen* found that 5 days was too long to recognize that an error had been made in producing privileged documents. Although 5 days would be too harsh for the volume of documents in this case,[7] there is no justifiable basis for waiting four months to notice any of the over 50 copies of these emails that were produced by multiple third-party vendors.

While it is well understood that document review is time-consuming, there is no denying the fact that Plaintiff has been keenly aware of issues pertaining to Consigli documents for many months, even before the November 2025 document production by Consigli. The volume of that production was not so large that it was not possible to review it before the eve of a deposition 4 months later, in March 2026. At the January 22, 2026 hearing, Plaintiff stated that when it reviewed Consigli's January document production in advance, it considered 315 documents that may have been privileged.  (Jan 22, 2026 Hrg. Tr. at 152:16-24).  No reason was stated then, or now, as to why the November production was not promptly reviewed in December. No case has been cited to support a 4-month lag in reviewing a production of documents for privilege or work product. And no case has been cited for the proposition that, where a third party's production has not been reviewed in advance, a delay of 4 months in discovering these 44 copies of the same 3

---

form of privilege was claimed by Mr. Lizza on behalf of Consigli, but it is clear that Consigli and potential privilege issues were top of mind.

[7] The Discovery Master does credit Plaintiff's argument that the document productions have been voluminous in this case. As has been noted in several of the 24 Orders entered by the Discovery Master since being appointed in August, 2025, that is primarily because virtually no documents had been produced by the Plaintiff or these third parties until the Discovery Master was appointed. The Discovery Master immediately held hearings; and document productions were ordered as early as September, 2025.

emails is "inadvertent" when there has been no proffer of facts that the production was reviewed at all until the eve of the deposition.

The facts of this case also do not involve a single email in a virtual "haystack" of documents. This same email chain was produced 44 times by Consigli. The same exact emails from Kidney were also produced by third-party BR+A. And it was missed again when NRA produced the same Kidney emails with its production. While the exact number of times these emails were missed — beyond the 44 from Consigli — has not been made known to the Discovery Master, it is almost certain that Plaintiff missed well over 50 documents produced of these same Kidney emails.

It is also questionable whether the disclosure was actually "inadvertent." Not only did Consigli produce 44 duplicates of the Three Emails in November, 2025, but other third parties produced the duplicates of the same outgoing emails by Kidney from their files when subpoenaed to do so later in the case. Mr. Kidney sent these emails to many recipients, so there is an untold number of duplicates produced, as stated above. BR+A produced duplicates of the Kidney emails in February 2026, and NFA produced duplicates in March of this year. Yet, there was no clawback sought timely as to these duplicates either. Moreover, none of these third parties sought to withhold these documents based on privilege. These facts further dilute Plaintiff's arguments that clawback should be permitted.

The Discovery Master finds that the inadvertent disclosure and waiver analysis counsels against clawback given the facts of this case.

### B. Work Product Doctrine

The work product doctrine "protects work done by an attorney in anticipation of, or during, litigation from disclosure to the opposing party." *State of Maine v. U.S. Dept. of Interior*, 298 F.3d 60, 67 (1st Cir. 2002). Work product protection "encompasses documents that are prepared in anticipation of litigation by a party's representative, including a party's consultant or agent." *Bryan Corp. v. Chemwerth, Inc.*, 296 F.R.D. 31, 38 (D. Mass. 2013). The doctrine "protects writings made by a party, even without any involvement by counsel," if those writings are made in anticipation of litigation. *Szulik v. State St. Bank & Tr. Co.,* 2014 WL 3942934, at *3 (D. Mass. Aug 11, 2014). The pertinent test for whether work product protection applies is "whether in light of the nature of the document and the factual situation in the particular case the document can fairly be said to have been prepared or obtained because of the prospect of litigation." *Colonial Gas Co. v. Aetna Cas. & Sur. Co.*, 144 F.R.D. 600, 605 (D. Mass. 1992). This is often referred to as the "because of" test for work product protection.

In order for a document to be eligible for protection as work product, a party need not establish that the document was prepared "primarily or exclusively to assist in litigation." *In re Grand Jury Subpoena*, 220 F.R.D. 130, 146 (D. Mass. 2004). The "because of" analysis used by Courts in this District is "intended to sweep in a broader universe of documents than simply those 'prepared primarily or exclusively to assist in litigation.'" *Doe v. Lahey Health Sys., Inc.*, 2020 WL 13561720, at *3 (D. Mass. Aug. 12, 2020). However, the "because of" standard does not protect from disclosure "documents that are prepared in the ordinary course of business or

that would have been created in essentially similar form irrespective of the litigation." *State of Maine v. U.S. Dept. of Interior*, 298 F.3d 60, 70 (1st Cir. 2002); *see also Doe v. Lahey Health System, Inc.*, 2020 WL 13561720, at *3 (D. Mass. Aug. 12, 2020).

A party "does not automatically waive work product protection by disclosing the information to another person, and "[t]he existence and extent of a waiver depends upon the following three factors: (1) whether the party claiming the privilege seeks to use it in a way that is inconsistent with the purpose of the privilege; (2) whether the party claiming the privilege had a reasonable basis for believing that the disclosed materials would be kept confidential; and (3) whether waiver of the privilege in these circumstances would trench on any policy elements inherent in the privilege." *Colonial Gas Co. v. Aetna Cas. & Sur. Co.*, 144 F.R.D. 600, 605 (D. Mass. 1992).

"Most courts distinguish between 'opinion' work product, which includes 'materials that contain the mental impressions, conclusions, opinions, or legal theories of an attorney,' and 'ordinary' work product, which includes everything else that is eligible for protection as work product, and accord greater protection to the former." *In re Grand Jury Subpoena*, 220 F.R.D. 130, 144 (D. Mass. 2004).

"Work product is generally discoverable if a party demonstrates that it has substantial need for the materials and cannot obtain, without undue hardship, their substantial equivalent by other means." *Doe v. Lahey Health System, Inc.*, 2020 WL 13561720, at *3 (D. Mass. Aug. 12, 2020)(citing Fed. R. Civ. P. 26(b)(3)(A)). "The substantial need inquiry requires a careful examination of whether non-disclosure will impair the truth-seeking function of discovery." *Id*. Discovery of opinion work product is subject to a higher standard than that of fact work product. *In re Grand Jury Subpoena*, 220 F.R.D. 130, 144 (D. Mass. 2004).

The Discovery Master considers whether the work product doctrine protects the July 14, July 18, and July 26 outgoing Kidney emails. The July 14 Email, which originates all of the email chains at issue, was sent shortly after the unsuccessful June 22, 2021 mediation session between the Parties. This mediation session was preceded by a series of claim adjustment meetings attended by the Parties and the mediator that the Parties explicitly considered part of the claims adjustment process. The Parties agree that statements made and materials shown at the meetings with the mediator were not confidential because they were part of the claim adjustment process.[8]

After the June mediation session failed, the Parties returned with their full attention to the insurance claim adjustment process and the assessment of the insurance loss. This process continued for many months afterwards, and litigation was not initiated until October 4, 2021. In "light of the nature of the document and the factual situation in the particular case," it is not at all clear that Plaintiff has fairly shown that the July 14 Email was created "because of the prospect of litigation." *Colonial Gas Co. v. Aetna Cas. & Sur. Co.*, 144 F.R.D. 600, 605 (D. Mass. 1992).

---

[8] The Three Emails are also dated after the "mediation window" that the Discovery Master presumptively allowed in Order No. 22 to seek *in camera* review of arguably privileged communications.

The July 14 Email requested input from third-party contractors involved in work on Norwood Hospital to get "greater accuracy in the cost model . . . and causation issues," and expressed a desire to "prove the loss based on facts not assumptions." The July 14 Email explained that "[s]ince the 12/4/20 claim submission and the 2/5/21 Interim proof of loss we have learned more through testing and visual investigation that will require use to update the Consigli As-Was and Code Estimates."

The expressed purpose in this email ties back to the "[insurance] claim submission" and "the Interim 2/5/21 proof of loss" and therefore does not significantly help Plaintiff meet its burden of proof to show work product privilege; these statements are more indicative of the ongoing effort by Steward, in collaboration with its vendors, to supplement its insurance claim Proof of Loss statement with defensible positions in seeking the insurance claim payout. This is closer to the ordinary course of business of insurance claim adjustment, despite references in the July 14 Email to "Legal Teams" and "MPT Lawyers." "It is not enough to trigger work product protection that the subject matter of a document relates to a subject that might conceivably be litigated," nor "is it enough that the materials were prepared by lawyers or represent legal thinking." *Felisberto v. Dumdey*, 541 F.Supp.3d 142, 148 (D. Mass. 2021). The stated objective was to effectively adjust the claim, not to seek or provide legal advice or legal direction.

The July 14 Email also involves no outside counsel, and merely copies Ms. Hibble. As stated in prior orders, Mr. Kidney gave direction to his staff to routinely copy Ms. Hibble. In July 2021, none of the third-party contractors who were asked to refine their cost estimates in terms of scope and budget were engaged as non-testifying expert consultants; it was not for over half a year later, in spring 2022, that any of these third parties was retained by MPT's counsel as such. These facts suggest that the efforts and requests set out in the July 14 Email were more likely made for purposes of insurance claim adjustment and not in anticipation of litigation.

Perhaps more significant, the Discovery Master has considered that, even if the July 14 Email could be said to have been created "because of" anticipated litigation, it would still not be protected from disclosure because the work product doctrine does not cover documents "that would have been created in essentially similar form irrespective of the litigation." *State of Maine v. U.S. Dept. of Interior*, 298 F.3d 60, 70 (1st Cir. 2002).  Here, Steward and its counsel would have requested that their contractors' input into the insurance proof of loss to be "based on facts not assumptions" irrespective of the litigation. Such proof is necessary for an insured to successfully set forth its insurance claim and achieve the payout to which it is entitled.

The responses received from Consigli and other third parties prepared in response to the July 14 Email (and all of the Three Emails) further indicate that the request was not created "because of" litigation.  The third parties were asked for, and responded with, prepared budgets and schedules for the rebuilding of Norwood Hospital. As stated above, Plaintiff does not claim that the responsive third-party documents are covered by privilege or work product protection. These responses from Steward's vendors actually working on the job would have been prepared in the same manner "irrespective of the litigation," because this was required to make a valid and supportable insurance claim.

8

The argument that the July 18 Email and July 26 Email constitute work product is not even debatable, as these documents convey no mention of lawyers and are mere follow-ups about the cost and schedule information that the contractors were to provide.

Finally, even if a colorable claim could be made that the mention of "Lawyers" or the "Legal team" in the July 14th email were sufficiently stated to meet Plaintiff's burden of proof to claim work product protection, this case is one which requires a serious look at Defendants' proffered need for the documents. Plaintiff does not contest that the only way that Defendants were able to see these documents was through the discovery process with third party vendors of construction and architectural services. In this case, Defendants must defend a claim of "bad faith" in the insurance adjustment process.  Plaintiff has previously stated that these claims are premised on the allegations of the Amended Complaint. *See, e.g.,* Second Amended Complaint (ECF 61) at ¶¶ 9-10; 49, 68-70, 112. These paragraphs accuse the Defendants of what could colloquially be described as deliberately "slow-walking" Steward's insurance claim for the damage to Norwood Hospital.

These emails, that could not have been accessed any other way than through discovery, shed light on whether the claim was processed improperly slowly, or whether the revised insurance claim submission based on "fact, not assumptions," was a factor in the timeline of the claims processing. The Court permitted Defendants to file an Amended Answer and Defenses, raising their contentions that Steward intentionally concealed and misrepresented material facts relating to its insurance claim. The jury will decide the merits of these questions, and they are certainly not within the purview of the Discovery Master. But the Discovery Master must decide whether the Defendants should be afforded access to documents that they cannot get in any other way that are directly probative of this factual dispute.  The timing of, accuracy of, and dollar amounts of these contractors' revised schedules and budgets based on "facts not assumptions" after learning more as the claims process proceeded are directly relevant to a defense to the Plaintiff's alleged "bad faith" insurance claim. Who knew what, and when, and in what amounts, will be litigated in order to determine whether these insurers acted in bad faith or not.  These emails are significant to the ability to present a defense on these issues, and could not have been obtained any other way.

These documents are directly relevant to the defenses now pled by Defendants, which are based on Steward's own alleged actions in the course of claim adjustment, to rebut the Plaintiff's claims of bad faith by the Defendants. Defendants contend that it was not until 2023 that they first learned that Consigli had revised its loss estimates for an as-was repair from $180,704,632 (as presented to the insurers on November 24, 2020), down to $77,944,656 nearly 3 years later (on August 18, 2023). This is a dramatic change in the estimates known to Plaintiff, but alleged by the Defendants not to have been previously made known to them until discovery yielded this information.

Defendants have sufficiently stated a substantial need to understand the bases for these estimates and why they changed so significantly, particularly in light of Plaintiff's accusations of bad faith. Thus, even if the July 14th outgoing email could arguably  be viewed as a close case of work product, Defendants are nevertheless entitled to them under FRCP 26(b)(3)(A), because Defendants have a "substantial need for the materials and cannot obtain, without undue hardship,

their substantial equivalent by other means." *Doe v. Lahey Health System, Inc.*, 2020 WL 13561720, at *3 (D. Mass. Aug. 12, 2020)(citing Fed. R. Civ. P. 26(b)(3)(A)). They also do not reflect attorney mental impressions, and would not be entitled to any higher standards.

All of the above factors lead the Discovery Master to conclude that the Plaintiff is not entitled to claw these emails back on the basis of work product privilege.

### C. Attorney-Client Privilege

Plaintiff also argues that the Three Emails are protected by the attorney-client privilege on the ground that Mr. Kidney's communications convey legal advice from counsel to the consultants who needed to implement that advice. While the policy supporting attorney-client privilege is well-established to protect full and free discussion between attorney and client, the privilege protects "only those communications that are confidential and are made for the purpose of seeking or receiving legal advice." *In re Keeper of Records (Grand Jury Subpoena Addressed to XYZ Corp.),* 348 F.3d 16, 22 (1st Cir. 2003. "[T]he party who invokes the privilege bears the burden of establishing that it applies to the communications at issue and that it has not been waived." *Id*.

Plaintiff relies on *Kay v. Town of Concord* for the proposition that the attorney-client privilege attaches "not only to communications between the client and the client's attorney, but also to communications 'between representatives of the client' that are 'made for the purpose of obtaining . . . legal advice." 105 Mass. App. Ct. 366, 371 (2025). That proposition is certainly correct, but Plaintiff's brief has not made the case that the Three Emails were created for the purpose of obtaining or providing legal advice. The July 14 Email is a communication among Steward's third-party contractors, including Mr. Kidney's employer CREF, about improving the accuracy of their insurance claim submission, and ensuring that it is made based upon facts and not assumptions.

 "The privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney." *Upjohn Co. v. United States*, 449 U.S. 383, 395 (1981). Here, there is no effort by Plaintiff to claw back the responses from all of the many architectural and engineering consultants to Steward, presumably because their responses did not seek nor implement any attorney advice, but rather consisted just the underlying facts. These third-party engineering and architectural consultants were working in the role of vendors of services to Steward at the time of this email:  none were non-testifying litigation consultants nor "translators" to the client nor agents of Steward.  A vendor is not an agent of the entity who asks it to do work.

For this reason, the issue in this clawback motion is solely whether the outgoing request from Mr. Kidney to elicit those underlying facts meets the criteria to be attorney-client privileged. The Discovery Master finds that it does not.

10

Conclusion

For the many reasons articulated above, the Discovery Master has concluded that Plaintiff is not entitled to claw back the Three Emails. To summarize:

(1) The information conveyed and sought by Mr. Kidney, even if at the instruction of Ms. Hibble or her team, falls into the category of documents that would have been created irrespective of the litigation and therefore, is not protected by the work product doctrine;
(2) Plaintiff fails to demonstrate that the Three Emails were created for the purpose of obtaining or providing legal advice;
(3) Plaintiff fails to show that the 44-50 duplicates of the Three Emails were "inadvertently" produced by multiple third parties; and if any privilege arguably applied, it was waived by the failure of Plaintiff to meet its burden of proof that it timely sought clawback of any of these 44-50 duplicates; and
(4) In light of the claims of "bad faith" insurance claims processing, and the recently filed Amended Answer and Defenses, the documents meet the Defendants' work product exception for "substantial need" and "lack of other sources" for this information.

The Final *Hoechst* Factor (5) Calls for the Discovery Master to Consider What is "Just and Fair" – A Potential Resolution to this Dispute on This Basis:

The only words in the July 14 Email that have given the Discovery Master any pause are the words "legal team(s)" and "lawyers." Without those words, this is not even a close case. The Plaintiff may apply to seek redaction of those particular words, substituting the word "Steward" as the entity that wants the information sought. If Plaintiff does wish to make this request, it shall do so within 5 days from the date of this Order, and Defendants shall respond within 5 days thereafter as to whether their substantial need is satisfied without the specific reference to "lawyers" or "legal team(s)," and substituting "Steward" as the entity seeking the information.

**SO ORDERED**

Dated: July 7, 2026                    /s/ *Faith S. Hochberg*_____
                                       Hon. Faith S. Hochberg, U.S.D.J. (ret.)

-

11