**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| MARK KRONFELD, AS TRUSTEE OF THE SHC CREDITOR LITIGATION TRUST,<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN GUARANTEE AND LIABILITY INSURANCE COMPANY and ZURICH AMERICAN INSURANCE COMPANY,<br><br>Defendants. | Civil Action No. 1:21-cv-11902 – PBS |

## PLAINTIFF'S OBJECTION TO DISCOVERY MASTER ORDER NO. 25

Plaintiff appeals Discovery Master Order No. 25 (ECF No. 270) (the "**Order**") to safeguard the attorney-client privilege and work product protection over various iterations of three emails (the "**Three Emails**"). *See* Ex. 1. The emails are a small fraction of the 377 documents Plaintiff was required to produce, subject to clawback, in late May 2026 under Discovery Master Order No. 22 (ECF No. 224). Plaintiff seeks relief only as to iterations of three emails because they matter and reveal privileged information.

The Order is not a discretionary discovery ruling that must receive substantial deference on appeal. Rather, a discovery master's order about privilege can be reversed or modified upon a showing of clear error. Fed. R. Civ. P. 53 and Adv. Comm. (noting that "clear-error review" is appropriate for matters such as privilege issues). Regarding the argument below—that Plaintiff did not waive attorney-client privilege under *Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 190 F.R.D. 287, 292 (D. Mass. 2000)—the Discovery Master's finding should be reviewed de novo

1

because the parties had not briefed the issue.[1] By deciding an issue without adversarial presentation, that finding was akin to a legal conclusion that is reviewed de novo. *Stauble v. Warrob, Inc.*, 977 F.2d 690, 697 (1st Cir. 1992).

Plaintiff understands that the Court has devoted substantial resources to this case; yet Plaintiff has no other choice, lest it waive privilege, but to preserve the record and object to an order that denies it the opportunity to claw back privileged documents. For the reasons explained below, the Order should be overturned or modified to allow Plaintiff to protect its privilege over the Three Emails.

## I.    The Order Erroneously Denied Clawback Because the Three Emails Are Protected Work Product.

The work product doctrine "encompasses documents that are prepared in anticipation of litigation by a party's representative, including a party's consultant or agent." *Bryan Corp. v. Chemwerth, Inc.*, 296 F.R.D. 31, 38 (D. Mass. 2013) (citing Fed. R. Civ. P. 26(b)(3)). The applicable standard—known as the "because of" test—asks "whether in light of the nature of the document and the factual situation in the particular case the document can fairly be said to have been prepared or obtained because of the prospect of litigation." *Colonial Gas Co. v. Aetna Cas. & Sur. Co.*, 144 F.R.D. 600, 604–05 (D. Mass. 1992). The "because of" standard is "intended to sweep in a broader universe of documents than simply those 'prepared primarily or exclusively to assist in litigation.'" *Doe v. Lahey Health Sys., Inc.*, 2020 WL 13561720, at *3 (D. Mass. Aug. 12, 2020); *see also Att'y Gen. v. Facebook, Inc.*, 164 N.E.3d 873, 889 (Mass. 2021) ("Anticipation of litigation does not have to be the primary purpose or motivation.").

---

[1] The Court can receive additional evidence not submitted to the Discovery Master under Fed. R. Civ. P. 53(f)(1). Even if that were not so, in these circumstances Plaintiff must present such evidence because the issue was never briefed below.

The Three Emails are protected work product since they were created "because of" the prospect of litigation. Chris Kidney's July 14, 2021 email explicitly references "ongoing legal efforts related to the MPT claim," for which a mediation had just failed and litigation was imminent given that Steward had already served a written demand putting its insurer on notice that it intended to bring a bad faith claim. The references in the email to "causation issues" and "how to prove the loss" reflect counsel's mental impressions and strategy—classic opinion work product. *Fleet Nat. Bank v. Tonneson & Co.*, 150 F.R.D. 10, 15 (D. Mass. 1993); *see also Kay v. Town of Concord*, 105 Mass. App. Ct. 366, 377 (2025) (work product doctrine applies to communications revealing "counsel's mental impressions" and "what counsel thought was important").

A.    **The Order errs because it denies work product protection to the Three Emails.**

The Order denies work product protection to the Three Emails from July 2021 on several erroneous bases.

*First*, the Order incorrectly (and without citing any support) asserts that the Three Emails could not have been written in anticipation of litigation because a mediation had failed in late June 2021. Order No. 25 at 7 ("After the June mediation session failed, the Parties returned with their full attention to the insurance claim adjustment process and the assessment of the insurance loss."). On the contrary, the inability of the parties to resolve their nine-figure and high-profile dispute at mediation in June 2021 made litigation about the ongoing claim submission ***more likely***, not less. Indeed, Zurich sued MPT in early October 2021, less than three months after the Three Emails. Plaintiff's Original Complaint for Declaratory Judgment, *Zurich Am. Ins. Co. v. Med. Prop. Tr., Inc.*, No. 21-11621 (D. Mass, Oct 4, 2021). Steward then filed its own lawsuit about a month later.

In addition, the stated rationale in Order No. 25 about some supposed pacification that overcame prior reasonable anticipation of litigation contradicts Order No. 22. That Order held that work-product protection involving Todd & Weld began on February 5, 2021, the date of counsel's demand letter. Order No. 22 at 37 ("Work product attaches when a communication is in anticipation of litigation, which the Discovery Master has ruled starts on the date that Todd & Weld sent the '93A letter' to the Defendants, even though the actual litigation started much later than that date.").

**Second,** the Order incorrectly concludes that the Three Emails exclusively tie back to the business purpose of preparing an insurance claim, rather than work product prepared as part of an ongoing and contentious process in which Zurich had flatly denied MPT's claim and a mediation had just failed. Order No. 25 at 8. The July 14 Email refers expressly to furthering the "next steps with the ongoing legal efforts related to the MPT claim." That effort included preparing for the inevitable litigation. For an insurer, analyzing a submitted claim is part of the insurer's ordinary course of business. But for Steward, the loss was a one-off catastrophic event that was on a direct course to litigation. Finalizing the claim submission was not part of Steward's "ordinary course of business." Rather, it was the next step towards litigation in the wake of a bad faith letter.

**Third**, the Order erroneously denies work product protection for the Three Emails because the *responses* to the Three Emails are not themselves work product. Order No. 25 at 8 ("The responses received from Consigli and other third parties prepared in response to the July 14 Email (and all of the Three Emails) further indicate that the request was not created "because of" litigation."). The Order—without citing any authority—reasons that, because the third-party consultants responded to the Three Emails with budgets and schedules that "would have been

prepared in the same manner 'irrespective of the litigation,'" the Three Emails themselves—which reveal counsel's mental impressions and litigation strategies in addition to requesting the budgets and schedules—are also not protected. *Id.* That is not the law. Courts uphold work product privilege even for the one privileged side of a conversation. *See Frank v. L.L. Bean, Inc.*, No. CIV. 04-221-P-S, 2005 WL 2177062, at *1 (D. Me. Sept. 8, 2005) (permitting redaction of attorney's questions in an interview although the answers were discoverable). The Order's approach erroneously abrogates the heightened protection for opinion work product.

*Fourth,* the Order denies work product protection because in-house counsel, Ms. Hibble, is the only lawyer copied. Order No. 25 at 8.  Plaintiff agrees that copying a lawyer does not by itself make a document privileged.[2] But Order No. 25 errs by acting as though the inverse is true. It is not: a privileged communication does not lose protected status just because different attorney-client communications were for business purposes. *Szulik v. State St. Bank & Tr. Co.*, 2014 WL 3942934, at *3 (D. Mass. Aug. 11, 2014) (holding it "well-established" that the work product doctrine "protects writings made by a party, even without any involvement by counsel."); *see also Bryan Corp.*, 296 F.R.D. at 38; *Blattman v. Scaramellino*, 891 F.3d 1, 5 (1st Cir. 2018). The basis for work product here is the attorney strategy and mental impressions—not the recipients. The Three Emails stand alone and are protected work product.

*Lastly,* the Order misapplies the principle that work product must be prepared "because of" likely litigation. The rule asks: would this party, *in its ordinary business operations*, have created this document—here, the Three Emails—in essentially the same form regardless of

---

[2] Back in July 2020, less than a week after the Loss, Chris Kidney instructed others to label Norwood communications as protected by the attorney-client privilege. Ex. 2. Plaintiff produced or withheld documents based on their *contents*, **not** based on that *instruction*. Regardless, the July 2020 email has no bearing on the privilege analysis for documents written a year later—after Zurich denied MPT's claim, after Steward sent a 93A letter, and after the failed mediation.

whether litigation was anticipated? Steward was in the business of running hospitals, not supporting claims for catastrophic, flood-related insurance losses. It would not have had a legal team with outside litigation counsel deeply involved in the claims process but for the imminent litigation. Emails about a legal team's goals and strategies are not ordinary-course documents. Plaintiff is not claiming work product over the proposals and schedules, just the attorney's views.

Thus, the Three Emails are protected work product, as shown by the First Circuit's analysis in its en banc ruling in *United States v. Textron Inc. & Subsidiaries*, 577 F.3d 21, 27 (1st Cir. 2009). In *Textron*, documents prepared for the purpose of fixing tax reserve on financial statements was an ordinary business purpose, even when litigation was a remote possibility. The documents in *Textron* were not work product because they were not something that would be necessary in litigation—where the tax filings themselves mattered, not the rationale. *Id.* Here, Steward's loss claim is at the center of the litigation, and it had a contractual obligation to provide a proof of loss before it could sue for breach of contract. *See, e.g.*, Ex. 3 at § 6.13.01.08 (requiring proof-of-loss submission).

The sole case cited in the Order for this point, *Maine v. U.S. Dep't of the Interior*, 298 F.3d 60, 70 (1st Cir. 2002), is not to the contrary. There, the First Circuit denied work product protection for documents about the Department of the Interior's "emergency listing process" for endangered species, which was a core part of the ordinary business of government entities subject to the Endangered Species Act. 50 C.F.R. § 424.20.

Lastly, there was no waiver of work product protection, which Plaintiff now points out although the Order did not find there was a waiver. *United States v. Massachusetts Inst. of Tech.*, 129 F.3d 681, 687 (1st Cir. 1997) (unlike for attorney-client privilege, the only way to waive work product is "disclosing material in a way inconsistent with keeping it from an adversary").

6

**B.**     **The Order errs because Defendants did not meet their burden to establish substantial need.**

Rule 26(b)(3) imposes a burden on the party seeking disclosure—here, Defendants—to establish a substantial need in order to overcome work product protection for non-opinion work product. Fed. R. Civ. P. 26(b)(3); *see Bryan Corp.*, 296 F.R.D. at 42. "Work product is generally discoverable if a party demonstrates that it has substantial need for the materials and cannot obtain, without undue hardship, their substantial equivalent by other means." *Doe*, 2020 WL 13561720, at *3 (citing Fed. R. Civ. P. 26(b)(3)(A)). "The substantial need inquiry requires a careful examination of whether non-disclosure will impair the truth-seeking function of discovery." *Id.* Courts in the First Circuit "distinguish between 'opinion' work product, which includes 'materials that contain the mental impressions, conclusions, opinions, or legal theories of an attorney,' and 'ordinary' work product, which includes everything else that is eligible for protection as work product, and accord greater protection to the former." *In re Grand Jury Subpoena*, 220 F.R.D. 130, 144 (D. Mass. 2004).

The Order correctly acknowledges that the bar to obtain opinion work product is much higher. Order No. 25 at 7 ("Discovery of opinion work product is subject to a higher standard than that of fact work product.") (citing *In re Grand Jury Subpoena*, 220 F.R.D. at 144). The Order is erroneous, and clearly so, however, because it applies the wrong standard to measure "substantial need" and misapplies the facts to the law.

***First,*** the Order incorrectly determines that the Three Emails are not opinion work product because they "do not reflect attorney mental impressions, and would not be entitled to any higher standards" under the substantial need inquiry. Order No. 25 at 10. The Clawback Documents contain opinion work product that reveals the MPT and Steward legal teams' mental impressions and thoughts on the information they believed was important and necessary for

7

litigating the case. *See Kay*, 105 Mass. App. Ct. at 377 (holding that work product doctrine applies to an email that "reveals . . . counsel's mental impressions" and "shows what counsel thought was important, and what information would be necessary or useful for litigating the case").

In the Three Emails, Kidney recounts what "MPT Lawyers are looking for" including what he describes as "causation issues." Kidney describes how the legal team "want[s] to prove the loss." He conveys questions that the "legal team asked" and for which they sought the consultants' input. Kidney states the legal team's specific "direction," lists "Task[s] for the team," and anticipates "Next Steps" to implement counsel's directives. *See* Ex. 1; *see also Colonial Gas*, 144 F.R.D. at 606 (finding counsel's view of insurance coverage, after insured received insurer's reservation of rights, constitutes opinion work product). In other words, Kidney's communications were expressly prepared ***at the direction of MPT's and Steward's legal teams*** to "advance next steps" in their "ongoing legal efforts" just weeks after a failed mediation. Ex. 1; *see also* Order No. 22 at 11. The Order's conclusory finding that the Three Emails do not constitute opinion work product is thus clearly erroneous.

***Second,*** even if the Three Emails are fact work product—they are not—the Order misapplies the substantial need inquiry in finding that Defendants have a substantial need for the Three Emails. Order No. 25 at 9. The Order finds, without explanation, that the Three Emails "could not have been accessed any other way than through discovery." Order No. 25 at 9. But Defendants did not meet their burden in showing that they are unable to ask about the "timing of, accuracy of, and dollar amounts of the[] contractors' revised schedules and budgets" through other means, such as via depositions of the relevant third-party consultants. *Id.*

8

And contrary to the Order's finding, the Three Emails are ***not*** essential to any disputed issue in this case. Defendant's new fraud defense is about the decision to either repair or rebuild the hospital. The Three Emails are not directly relevant to that defense. Nor are the July 2021 emails essential to explaining a much later Consigli estimate revision in 2022. *See* Order No. 25 at 9 (finding that Defendants "have sufficiently stated a substantial need to understand the bases for these estimates and why they changed so significantly"). Critically, Defendants can obtain any underlying facts through non-privileged sources. Indeed, Defendants have already deposed Consigli about the changes over time to its analysis. Ex. 4, Consigli Dep. at 185:12–20, 186:12–19, 187:8–18. More testimony is far from essential. The actual loss calculations, Consigli's expert analyses, and the contemporaneous business records that formed the basis for the claim submission are all available through ordinary discovery without piercing work product protection.

Given that the substantial need standard for opinion work product is even more rigorous than the standard for fact work product, Defendants cannot come close to meeting it.

## II.    The Three Emails are Protected by the Attorney-Client Privilege.

Under Massachusetts law, "the [attorney-client] privilege attaches not only to communications between the client and the client's attorney, but also to communications 'between representatives of the client' that are 'made for the purpose of obtaining . . . legal services.'" *Kay*, 105 Mass. App. Ct. at 371 (quoting Mass. G. Evid. § 502(b)(4)). "Where a communication does not include an attorney, the ultimate standard for determining whether it was made for the purpose of obtaining legal advice is ***whether the communication revealed legal advice from, or the intent to request legal advice from, an attorney in some fashion***." *Id.* at 373 (emphasis added). So long as the communication is "primarily or predominantly of a legal character, the privilege is not lost merely because it also dealt with matters that might more fairly

be characterized as business matters." *Rain v. Conn. Gen. Corp.*, 2022 WL 2294061, at *3 (D. Mass. June 23, 2022); *see also United States v. Windsor Cap. Corp.*, 524 F. Supp. 2d 74, 81 (D. Mass. 2007).

The Three Emails are protected by attorney-client privilege because Kidney's communication conveys legal advice from counsel to the consultants who needed to implement that advice. *Kay*, 105 Mass. App. Ct. at 371 (under Massachusetts law, "the privilege attaches not only to communications between the client and the client's attorney, but also to communications 'between representatives of the client' that are 'made for the purpose of obtaining . . . legal services'"). The documents seek counsel's direction regarding what deliverables were needed to "advance next steps" with the ongoing legal efforts, a clear legal purpose. *Rain*, 2022 WL 2294061, at *3 (legal purpose need not be exclusive).

The Order errs by relegating Steward's engineering and architectural professionals to mere "vendors." Order No. 25 at 10. But these professionals are agents of the principals who hire them in privileged communications. As licensed professionals subject to registration requirements, disciplinary oversight, and professional malpractice liability under Massachusetts law, architects and engineers occupy a recognized professional status that supports their treatment as agents rather than mere independent contractors. Mass. Gen. Laws Ann. ch. 112, § 60G (architects); ch. 112, § 81P (engineers); *see also LeBlanc v. Logan Hilton Joint Venture*, 463 Mass. 316, 974 N.E.2d 34 (2012) (architects are expected to exercise skill and judgment as is expected from similar professionals). On the Three Emails, the architects and engineers here functioned as extensions of Steward's internal team for purposes of the MPT claim rather than arm's-length vendors providing commodity services. Moreover, the purpose of the communication supports their privileged nature: the Three Emails reflect transmitting counsel's

10

directives, not gathering business information. For these reasons, and notwithstanding the broad-brush ruling about attorney agents in Order No. 22, these specific emails fall within the ambit of attorney-client privilege under Massachusetts law.[3]

### III. Plaintiff Had Not Previously Waived Attorney-Client Privilege over the Three Emails.

The Order is clearly erroneous where it found that Plaintiff waived attorney-client privilege for the Three Emails under *Amgen*.

#### A. The Order incorrectly calculates the passage of time for the waiver analysis—the correct approach under applicable law is that the clawback happened after one week, not the four months applied in the Order.

Plaintiff produced documents under Order No. 22 on May 29, 2026; Plaintiff clawed back the subject email ***just hours*** after Defendants said on June 4 that they intended to file the document with the Court. Plaintiff acted promptly because "delay is measured from the time the producing party learns of the disclosure, not the time of the disclosure itself" and the "relevant analysis begins" when the party becomes aware that privileged material was disclosed. *Kaneka Corp. v. Cocrystal Tech. (Jiaxing) Co.*, 801 F. Supp. 3d 164, 173–74 (E.D.N.Y. 2025). The passage of a mere six days between May 29th and June 4th makes the clawback timely. *See, e.g.*, *United States ex rel. Omni Healthcare, Inc. v. MD Spine Solutions LLC*, 736 F. Supp. 3d 75, 84–85 (D. Mass. 2024) (holding that waiver turned on defendants' failure to review for two years ***after the government made the party aware of the privileged documents***, not on when the documents were first produced). The Order relies on *Amgen* for denying the clawback, but that case does not suggest a different timing analysis. The *Amgen* court did not hold that five days was a legally meaningful period of time; rather, it noted that—unlike here—it was opposing

---

[3] *See* Order No. 22 at 17 (applying overarching rules to certain categories of documents instead of on a document-by-document review basis).

counsel who drew the producing party's attention to the privileged documents. *Id.* at 292–93. Thus, Consigli's November 2025 production could not start the clock for Plaintiff's later clawback, and using that November 2025 third-party production renders the Order clearly erroneous. And even if the Court considered Consigli's production as starting the clock for clawback, the totality of the circumstances support Plaintiff's clawback.

      **B.**       **On de novo review, there was no waiver under *Amgen*.**

The *Amgen* factors—reasonable precautions, timing, scope of production, extent of disclosure, and fairness—support only one result here: Plaintiff did not waive privilege or work-product protection. *Amgen*, 190 F.R.D. at 291. The clawback was timely for the above reasons; the other relevant *Amgen* factors also support a finding that there was no waiver here:

*The precautions were reasonable*. The clawback is modest given: (i) the vast size of potentially responsive documents, (ii) the very short deadlines, (iii) Steward's status as an insolvent company; and (iv) the Court's use of a "quick peek" procedure by which documents were ordered to be produced before a full pre-production privilege check. The parties, their primary consultants, and key unaffiliated third parties have produced nearly half a million documents totaling more than 3 million pages. The Order relies heavily on the fact that Consigli produced various versions of the emails, but Consigli did so in response to a subpoena for which it had separate counsel who did not give Steward an opportunity to review in advance the documents that would be produced.

*The scope and extent of the clawback are narrow*. The Three Emails are part of one group of emails on the same subject matter very close in time. *Cf. Amgen*, 190 F.R.D. at 293 (denying clawback for about 200 documents covering nearly 4,000 pages).

*Fairness supports clawback here*. Clawback would not prejudice Defendants given that a duplicate copy of the Three Emails was asked about at a deposition, and the testimony did not

establish a basis for further discovery. *See* Ex. 5 at 16–17 ("If [Defendants] want to use something that's actually deemed to be privileged, then, you know, once – you will have the right to claw back any documents that you have a legitimate claim as to privilege about. They can go through the documents. And you know, if in fact it comes up at a deposition or later that some of the documents they are relying on have something that you are claiming is privilege . . . . But they can go through it. If they are using a document that there is a claw back on, you will make your claw back. That's the whole purpose of a claw backs."); Ex. 4, Consigli Dep. at 185:12–20, 186:12–19, 187:8–18.  Defendants remain free to obtain the facts and nonprivileged consultant work through ordinary discovery.

*Clawback is proper because the Three Emails go directly to the kind of candid communications between lawyers and clients that courts hold sacrosanct*. On their face, one of the emails at issue followed a "call just hosted with the MPT/Steward Legal Teams" concerning "ongoing legal efforts related to the MPT claim," conveyed what the "MPT Lawyers are looking for," identified "causation issues," described how the legal team wanted to "prove the loss," relayed questions the "legal team asked," stated counsel's "direction," and assigned tasks to implement counsel's directives.

In sum, permitting clawback is the only result that can be squared with *Amgen*'s adoption of a "middle test" based on the totality of the circumstances and its rejection of a more extreme approach that always finds a waiver. *Amgen*, 190 F.R.D. at 291 (noting that Massachusetts applies "middle test").

IV.    **CONCLUSION**

The Order contains many errors regarding both the attorney-client privilege and the work product doctrine as applied to the Three Emails. The Order's proposed redaction remedy does not undo, let alone mitigate, the effect of the errors. Order No. 25 at 11. The Order's proposed redaction remedy does not cure the prejudice because the privileged content is not merely the labels "legal team(s)" or "lawyers," but counsel's substantive direction about what issues mattered, what facts needed development, and what deliverables were needed to make Steward's loss position defensible. Substituting "Steward" for counsel would still disclose counsel's mental impressions and strategy. Thus, the proper remedy is clawback or, at minimum, redaction of all language revealing counsel's direction, causation framing, and "defensible position" analysis.

For these reasons, the Order should be overturned or modified either to protect the Three Emails as privileged under the attorney-client privilege and/or the work-product doctrine, by finding that privilege was not waived, and in the alternative, that Defendants did not meet their burden to prove a substantial need for the Three Emails. Thus, Plaintiff's clawback of the Three Emails should be allowed.

14

Respectfully submitted,

**MARK KRONFELD, AS TRUSTEE OF THE SHC CREDITOR LITIGATION TRUST,**

By his Attorneys,

*/s/ Jeffrey E. Gross*
Howard M. Cooper (BBO No. 543842)
Seth J. Robbins (BBO No. 655146)
Josh L. Launer (BBO No. 673661)
Widmaier M. Charles (BBO No. 705208)
**TODD & WELD LLP**
One Federal Street, 27th Floor
Boston, MA 02110
Tel: (617) 720-2626
hcooper@toddweld.com
srobbins@toddweld.com
jlauner@toddweld.com
wcharles@toddweld.com

William T. Reid IV (*pro hac vice*)
Jeremy Wells (*pro hac vice*)
Barbara Whiten Balliette (*pro hac vice*)
Julia P. Gokhberg (*pro hac vice*)
**REID COLLINS & TSAI LLP**
1301 S. Capital of Texas Hwy.
Building C, Suite 300
Austin, Texas 78746
Tel: (512) 647-6100
wreid@reidcollins.com
jwells@reidcollins.com
bballiette@reidcollins.com
jgokhberg@reidcollins.com

Jeffrey E. Gross (*pro hac vice*)
Yonah Jaffe (*pro hac vice*)
**REID COLLINS & TSAI LLP**
420 Lexington Avenue, Suite 2515
New York, NY 10170
Tel.: (212) 344-5200
jgross@reidcollins.com
yjaffe@reidcollins.com

Dated: July 14, 2026

15