# Exhibit K

Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS (BOSTON)

MARK KRONFELD, as Trustee of          )
the SHC Creditor Litigation           )
Trust,                                )
                                      )
                 Plaintiff,           )
                                      )
vs.                                   ) 1:21 CV 11902
                                      )
AMERICAN GUARANTEE AND                )
LIABILITY INSURANCE COMPANY,          )
et al.,                               )
                                      )
                 Defendants.          )

                   Report of Proceedings of the
hearing before JUDGE FAITH HOCHBERG pursuant to
Notice and pursuant to the Federal Rules of Civil
Procedure for the United States District Courts,
taken before Victoria D. Rocks, CSR, and Notary
Public in and for the County of Cook, State of
Illinois, commencing at 7:30 o'clock a.m., on the
22nd day of January 2026, A.D.

Page 2

APPEARANCES:

TODD & WELD, LLP
MR. JOSHUA LAUNER
MR. SETH J. ROBBINS
MR. WILLIAM GILDEA
MR. SAMUEL MYERS
MS. AEDAN DUNN
One Federal Street
27th Floor
Boston, MA  02110
jlauner@toddweld.com

appeared on behalf of the Plaintiffs;

RILEY SAFER HOLMES & CANCILA, LLP
MS. AMY ANDREWS
MS. ABIGAIL PELUSO
MS. JESSIE MICHELIN
MR. LUCAS RAEL
One S. Dearborn Street, Suite 2200
Chicago, Illinois  60603
aandrews@rshc-law.com
appeared on behalf of the Defendants;
ROBINS KAPLAN, LLP
MR. JONATHAN MUTCH
800 Boylston Street, Suite 2500
Boston, MA 02119
jmutch@robinskaplan.com
appeared on behalf of Shawmut;
McDONOUGH HACKING & LAVOIE, LLC
MR. MARK B. LAVOIE
27 Congress Street, Suite 404
Salem, MA 01970
mlavoie@mhlattys.com
appeared on behalf of Shawmut.

I-N-D-E-X

Report of Proceedings:    4 - 196

Page 4

JUDGE HOCHBERG:  If anyone is going to be speaking, tell the court reporter who you are and who you represent.

MR. LAVOIE:  Mark Lavoie.  I represent Shawmut Design Construction.  They're not a party to the case, but there's been a request for their deposition again.

JUDGE HOCHBERG:  Shawmut is a third party --  a nonparty entity.  They call it parties.  A nonparty to the case from whom discovery is sought.  We'll get to Shawmut in due course.

MR. LAUNER:  We'll go first as the plaintiff.  This is Josh Launer.  I will be speaking today as will my colleagues Samuel Myers, Aedan Dunn, and William Gildea.

JUDGE HOCHBERG:  They're all going to have to come on camera, say who they are and spell their name for the court reporter.  She hasn't been given this information in advance.  So who will be speaking in addition to you -- is it you?

MR. MYERS:  Samuel Myers, on behalf of plaintiff as well.

JUDGE HOCHBERG:  What topic are you on, Mr. Myers?

Page 5

MR. MYERS:  That will be issue one and issue two identified in the joint red fern.

JUDGE HOCHBERG:  Who else?

MR. GILDEA:  William Gildea, on behalf of plaintiff.

JUDGE HOCHBERG:  What topics will you be speaking on?

MR. GILDEA:  The deposition of Shawmut.

JUDGE HOCHBERG:  And who else for the plaintiff?

MS. DUNN:  Good morning.  Aedan Dunn for the plaintiff.

JUDGE HOCHBERG:  What topics will you be speaking on?

MS. DUNN:  I will be speaking on issue three in the joint red fern.

MR. MYERS:  I apologize.  I'll also be speaking on issue four.

JUDGE HOCHBERG:  Issues one, two and four for Mr. Myers. And I have issue three is covered.  Is there anybody else speaking for the plaintiff today?

MR. ROBBINS:  By way of introduction, this is Seth Robbins on behalf of plaintiff.

JUDGE HOCHBERG:  Good morning, Mr. Robbins.

Page 6

Are you speaking today?

MR. ROBBINS:  Not unless asked to speak.

MR. LAUNER:  I'll be addressing defendant's issues one through three, the 26a1 issue and perhaps anything else that may arise during the hearing.

JUDGE HOCHBERG:  Okay.  So is it fair to say, Mr. Launer, that you will be the primary advocate for the plaintiff?

MR. LAUNER:  That's correct

JUDGE HOCHBERG:  So far I have five counsel for the plaintiff.  Are there any other plaintiff's counsel present on this call who don't have a speaking role at the moment so that we know who you are?

MR. LAUNER:  No.

JUDGE HOCHBERG:  For the defendants.

MS. ANDREWS:  Amy Andrews of Riley Safer Holmes and Cancila.  I'll be Mr. Launer's counter point and I'll be doing the primary speaking on behalf of defendants.

I have some colleagues with me.  I'll let them identify themselves.  In terms of specific issues I will be addressing on the red fern chart plaintiff's topics one, two and three.  On the red

Page 7

fern chart defendant's topics I will be addressing one.

I'll also be addressing defendant's position with respect to the Rule 26a1 disclosures by plaintiff.  And then to the extent that the Court has general questions about the status of discovery that will largely be handled by me.

I will let my colleagues, Mr. Rael and Ms. Michelin introduce themselves.

MR. RAEL:  Good morning, Your Honor.  This is Lucas Rael, on behalf of defendants.  I will be speaking to issue three, defendant's issue three in the red fern chart.

JUDGE HOCHBERG:  There's another attorney for defendants?

MS. MICHELIN:  Jessie Michelin on behalf of defendants.  I will be speaking to plaintiff's number issue six and defendant's issue number two.

JUDGE HOCHBERG:  Okay.  I think by now you now understand, everyone, the reason for red fern charts, it does help us with organization.  I appreciate it.

I'm going to be ruling very quickly. After this conference I'll be entering a ruling in

Page 8

the next day or two that will set forth all the new rules to make this thing moves apace.  I'm no longer able to rely on you to raise issues to me timely because I haven't been for months.

And whenever you have raised them, then you have canceled them.  We cannot proceed like that. So that is the reason for the relatively stern tone of my recent communications, and I will explain to you more in a moment.  Let me make sure I have gotten through all of the introductions.

Is there anybody else who is present on the line and representing any entity or party?

MR. MUTCH:  Yes, Jonathan Mutch from the Robbins Kaplan Law Firm.  I represent the defendants as well as certain nonparties who were consultants to the defendants during the claim adjustment.

I will today be speaking only with respect to those nonparty consultants.  Those are plaintiff's issues seven and eight, Your Honor.

JUDGE HOCHBERG:  Thank you, Mr. Mutch.  Is there anyone else present who may be speaking today and who the court reporter needs to know or I need to know even if you are not speaking so that I know you're here.

MS. PELUSA:  Abbie Pelusa.  I also represent the defendants.  I don't intend to have a speaking role this morning unless I could be of assistance to Your Honor or the parties.

MR. VOGEL:  Stephen Vogel, also representing defendants.  I do not intend to be speaking.

MS. ANDREWS:  I will just identify for the record Katherine Frost who is an inhouse attorney with Zurich. She has appeared before you previously, Your Honor.  She won't be speaking, but for purposes of identifying everybody who is participating in the call.

JUDGE HOCHBERG:  Ms. Frost, there is no objection to your participation today.  Now, I have a full road map to the participants.  I don't have room around me for all of the screens I have going, as well as the main screen that I am on now.

Just so you know, if I look down or to my right or left I have two other screens on two separate ipads so that I could pull up things as necessary.  In the interest of time, obviously, there's not a comprehensive single outline.  So first a word about what you will see in greater detail when I rule.

Page 10

It will go through the history of my efforts to get this case ready for trial as ordered by the Court. The Court appointed me last summer. I believe it was in July, perhaps late June with instructions that the case had -- she set aside a week or more, probably more, in January of 2026, where we are right now, you'd be on trial and expected the case to be ready by then.

When I got involved in the case and saw how early the parties were in discovery, notwithstanding how old this case is, I was astonished frankly and we had to essentially start from scratch almost with custodians terms, all those traditional sources of discovery that generally are done long before six months before trial. We had hearings quickly.

You wanted to know would I be available for you quickly, and I said yes, and I was. I was very available. And in the beginning so were you. Then shortly after we became clear during the fall that I would help you get an extension of the trial date by recommending a new schedule to the Court, all of a sudden everything started lagging.

There were times when I would hear nothing from you and therefore assume that everything was

Page 11

going along smoothly.  And then I get a request for hearings.  I got a request for an October 31st hearing date.  That was set for November 3.  It was canceled by the parties.  Then I heard nothing through November.

Then in discovery, I get asked for two hearing dates, one in December and one in January because issues had arisen that required me to get involved and resolve.  I set a hearing date in December.  I set another one in January.  Everyone agreed.  And then the December hearing was canceled, claiming that issues, quote, weren't ripe.

I never want to hear the word not ripe again.  They should have been ripe.  Then I was told that everything would be presented in the January hearing.  The January hearing was set.  I believe it was January 16 for the hearing date with briefs to arrive, red fern chart to arrive and all of the issues that required resolution by January 6.

So on January 6, nothing arrives. January 7th, I contact the parties as I wrote in order 10. I got the response from the defendants and nothing from the plaintiffs.  Then I was told as silence continued that the January 16 hearing date

was canceled.  The parties were not going to appear.

They had obviously blown through the due date for the briefing and not going to appear, but nobody told me.  You may not know this, but I had been asked to mediate on an urgent basis, and the only available date to do it was the hearing date.  So I had turned it down.

I don't know if they found somebody else, I hope so.  But that is the reason out of common courtesy putting side the scheduling issues, you normally inform someone.  And finally you inform the person presiding that you decided you're not going to have a hearing.

The other thing about that is the hearing was set.  It's a court date.  This is not just a casual day, it's a court date.  Special masters are an arm of the Court, and you don't blow through a court date and sort of forget to tell the judge.

So that explains the tone of my more recent e-mails.  I no longer can count on the parties to promptly meet and confer and make the unripe issues ripe.  Finally, Mr. Launer, to you, saying the reason you couldn't get the privilege log done is because you were spending time responding to

Page 13

order number ten.  I don't buy that.

Order number ten was the order saying hello, you've blown through your briefing dates.  You canceled a hearing date without telling me.  And all of the things that are past due.  That is not an excuse for not getting the privilege log done.  That should have been done before.

Saying that compliance with an order chiding counsel for lateness is not met by saying, well, I had to comply with your order saying I'm late.  So I couldn't do something else.  So I'm even later on that.  That is not a reason to not do precurser things that are necessary, urgent and must be done, compulsory in order to have the current case schedule met.

The current case schedule is not going to be as if you are going to get there and say oh, gee, we need an extension, no.  Let me be crystal clear because the Court has been crystal clear with me.

You will be ready to file your summary judgment motions when they are due.  On behalf of the plaintiffs, Mr. Launer, do you understand that and agree?

MR. LAUNER:  Yes, Your Honor.

Page 14

JUDGE HOCHBERG:  You will not seek an extension, correct?

MR. LAUNER:  We will not seek an extension of the summary judgment, no.

JUDGE HOCHBERG:  Or of any other deadlines set by the Court, correct?

MR. LAUNER:  At this time that is correct, Your Honor.

JUDGE HOCHBERG:  I don't like at this time.  It has to be something extraordinary to seek an extension. We already extended this case at least eight months.

A January trial is now going to be in September or October, I believe, from memory.  That is a long extension.  Don't expect another one.  The same question, Ms. Andrews.

MS. ANDREWS:  Your Honor, yes.  Defendants do not and will not seek an extension of any of the deadlines that have been set in this case.

That said, Your Honor, as I previewed in my e-mail to you, I believe late last week probably on Friday, we do have significant concerns about the delay in plaintiff's completion of its discovery obligations, and the resulting prejudice.

Page 15

We are working, as you probably can see from the deposition schedule that we sent last night, we have scheduled depositions.  We are preparing for those.  We are moving forward, but we are also dealing with the reality of having received over 300,000 documents from them since December 15.  We received a privilege log late last night, which we were told is not final.  It has 700 plus pages.  It has 10,000 plus entries on it.

We have outstanding issues with respect to our ability to get discovery from third parties, which we understand the issues are being created by plaintiff's indication of privilege over materials possessed by those third parties.

So we are working towards the discovery deadline, Your Honor.  We have no intention of seeking any extension of it.  But one of the issues we would like to raise today is what steps can be taken to address the ongoing prejudice to defendants and their ability to properly prepare for defense in this multi million dollar lawsuit.

JUDGE HOCHBERG:  Understood.  And the damages issue, and the escalation of it will be touched on I believe in one of the Red Fern issues.  Am I

Page 16

correct, Ms. Andrews, or it's one of the more recent issues added?

MS. ANDREWS:  We raised an issue.  Defendants provided us an update to the Rule 28a1 disclosures last week on the 14th.  That was the first update we had received since the disclosure were initially served in 2022.

JUDGE HOCHBERG:  January 14?  I don't have that document.  I don't seem to be getting the filings, nor I guess do I need to.  But I need to be sent them from counsel.  In other words, I am not on the docket sheet.  When I am a special master in many cases I'm on the docket sheet, and I see stuff that rolls in.  There is one attorney that will forward to me by e-mail attachment whatever the document is if it's something that I need to be addressing.

That has not been happening in this case. I'm not asking to change the process.  Massachusetts may have different processes than Pennsylvania or some of the other places where I have been a special master.  I am not intruding on that, but I'm expecting counsel to, if there is a significant court filing that affects my role as special discovery master, I need to know about it.  On

Page 17

January 14, what was filed?

MS. ANDREWS:  Nothing was filed, Your Honor.
Defendants served and amended and updated Rule 26a1
disclosures.  I don't believe those are typically
filed in the District of Massachusetts.  They are
not in the Northern District of Illinois.

MR. LAUNER:  Ms. Andrews, I apologize for
interrupting.  It was the 13th, not the 14th.

MS. ANDREWS:  You're correct, it was the 13th.
To back up, Your Honor, we sent plaintiff
correspondence on December 1 of 2025 asking them to
update their Rule 26a disclosures, which were
originally served in 2022 and have not been updated
since.

We asked them to do that by December 21st.
We received it, as Mr. Launer indicates, January 13.
I believe I e-mailed you shortly thereafter
indicating we had some concerns about updates and in
particular the significant expansion of their
witness list.

They disclosed at least 22 new people while
we were in the midst of trying to schedule
depositions for completion by March 13.  We also
have concerns about the adequacy of their damages

Page 18

disclosure and whether it complied with the rules.

Mr. Launer and I met and conferred at length about that over the past six days. We have reached an agreement on the damages point. So I think to your question about an issue with damages, you probably saw my e-mail on that. I don't believe we intended to raise that.

We would like to address what relief is available for the belated disclosure of additional witnesses at this juncture. And that was -- you're right, not an issue in the Red Fern chart because it had not arisen at the time we submitted that. We are happy to submit the documents to you, but we think it's an issue we could get some guidance around today if Your Honor is willing to have the conversation.

JUDGE HOCHBERG: We're beyond the guidance stage now. It appears that I need to basically take control. Things will be more controlled, and they will be more controlling. I will be setting schedules, not you.

If there are things that are not happening fast, you'll see in the procedures I set up they're going to be mandated to happen fast because I think

Page 19

a lot of the problems here arise from slowness in the parties getting back to each other on meet and confers.  That's what is accounting for months of delay, which cannot happen.

What is the agreement on damages?  Can you set it out on the record, please.

MS. ANDREWS:  Certainly, Your Honor.

JUDGE HOCHBERG:  This is the damages disclosure?

MS. ANDREWS:  It's the damages disclosure required by 26a1, which our position is that it requires a computation of the categories of damages. Plaintiff in their original May of 2022 Rule 26 disclosure had included that computation and had included a number.

An updated disclosure provided to us last week removed the number and took the position that the damages calculation was not ascertainable because it would be the subject of expert discovery.

We disagree with that.  We had discussions last night.  Mr. Launer committed to provide a supplement and updated damages disclosure.  And, Josh, you're going to have to remind me of the date that you agreed to do it by, but I believe it may be

Page 20

January 30.

JUDGE HOCHBERG:  Is that correct, Mr. Launer? You'll update and be more specific about your damages demand?

MR. LAUNER:  That is correct, but I need to address a few things.

JUDGE HOCHBERG:  So January 30th it's due?

MR. LAUNER:  Yes, Your Honor.

JUDGE HOCHBERG:  Copy me when you send it.

MR. LAUNER:  Certainly, Your Honor, but I want to be clear there are --

MS. ANDREWS:  I'm looking at Mr. Launer's e-mail from last night.  He agreed to supplement it January 26.

JUDGE HOCHBERG:  Okay.  January 26, Mr. Launer. That date isn't changing.

MR. LAUNER:  That is the date Ms. Andrews asked, and I think we accepted her date.  That's right.

I do want to say for the record that plaintiff set forth four buckets of damages, two of which to the penny had the exact computation of damages, while identifying all of the documents that will be relied upon for the damages.

Page 21

There are two other categories of damages for which plaintiff said would be the subject of expert testimony, while at the same time identifying at least for one of them the documents that as of this date the plaintiff will be relying on for those damages.  We have agreed --

JUDGE HOCHBERG:  I didn't mean to interrupt. Please finish.

MR. LAUNER:  I'm trying to find my e-mail to Ms. Andrews so I could say what we agreed to, which is we will amend our disclosures to compute the plaintiff's losses as precisely as possible based on reasonably available information by January 26 as Ms. Andrews requested.

And that is based on the language we took from the case law, Your Honor.

JUDGE HOCHBERG:  The two other buckets done by experts, what's the agreement as to those?

MR. LAUNER:  So we are going to provide information to calculate, to provide a number to defendants as precisely as we can, but ultimately again, as the case law permits those final computations and the bases on which they are derived are the subject of expert testimony.

Page 22

As Your Honor knows, the deadline for the disclosure of experts under Rule 26 is March 20.

JUDGE HOCHBERG:  Wait a minute.  Mr. Launer, that is where you are incorrect.  That is a huge source of delay potential.

You're not correct that that is the date for identifying experts.  That is the date when the experts have to disclose the reports.  That's the expert reports due date.  This is not when you say this is my expert, and this is the topics they're going to talk about.  If you wait until March -- what was the date, 20th?

MR. LAUNER:  Correct.

JUDGE HOCHBERG:  -- to say these are my experts and then we have this whole issue.  You're looking confused.

It is not the date to say who your expert is.  It is the date to serve your expert report and to identify that this is the expert who is testifying, and here is his or her report.  The issue of nontestifying experts and whether they were retained in anticipation of litigation needs to be resolved now, much sooner.

This is my turn to speak, and you will get

Page 23

-- in the order you'll get deadlines for this.  It is necessary in order to keep discovery moving quickly and orderly to decide the issue that was the same issue I decided months ago when there was a third party that was claiming privilege on this nontestifying expert issue.

In this case, we already had it arise once. I am expecting it may be arising again.  You're shaking your head no.  I'm shaking my head yes.

It is arising again because if you have withheld as privileged documents from experts that you say are 26b4 experts retained in anticipation of litigation, there's an analysis that needs to be gone through to determine whether, in fact, some of that person's entities or documents must be disclosed.

That needs to happen now as we are in our final phases of discovery, not on an expert report due date.  That is a key potential delay factor I identified from reading your briefs, and it is not what you think it is.  It's the expert reports due date, it's not the date to begin to argue about what nontestifying experts' documents have been withheld and whether they were, in fact, retained in

Page 24

anticipation of litigation or not. And that is a fact based inquiry that I need to do much sooner, which means that you need to tell me on both sides what person's documents are being withheld who are nontestifying experts because then we need to go into the same kind of analysis we went into in the prior order I did dividing up that particular nontestifying expert's document discovery obligations based on which documents need to be produced because they were done in connection with being perhaps a percipient witness or somebody actually investigating the flood loss.

I'm not talking about an insurance adjustor, I'm talking about someone retained as an engineer, something like that. And those documents cannot be withheld. They need to be produced now and early so that we don't have to redo depositions down the road.

If I were to determine that some other documents need to be produced, I have no idea who they are and what documents are being withheld on that basis. But that needs to be quickly teed up if there's a dispute about them. So they need to be identified way before expert witness reports are

Page 25

due.

They're a key factor in whether there's additional document discovery that must occur or not about which I don't know because I don't know who is who. So that box on the Red Fern chart when we get to it, you'll see me saying this is a huge potential delay piece of this case that has to be changed.

The Court schedule remains as it is, but the wording should not be confused with that means when that says disclosures, those are talking about the disclosures under the rules that govern expert testimony under the Federal Rules of Civil Procedure. That is essentially an expert report due date, and there's a rebuttal expert report due date.

Cross out the word disclosure and put in report because that is in reality what it is and what it means and refers to in the schedule.

In order to do that right, in advance of that we need to know who is going to be writing an expert report and who is not, but has had documents withheld on the basis that they are a nontestifying expert retained in anticipation of litigation.

If they're potentially a two hat non-testifying expert, I need to know that so I could

Page 26

determine where the dividing line is between the documents that must be produced and are not privileged and the ones that are.

So that can't happen when we are already in the expert phase of this case, which is just two months before the summary judgment deadline.  So let me ask both counsel.  I have said that is essentially what my ruling is going to be.

Just know that, and know that in advance.  It makes no sense to do it any other way, and no court would so do because then they're going to be hit with, well, we didn't know, and it takes me a month.  And my calendar is very, very crowded in May.

May and June, I have a crowded calendar.  I have been wide open and available to you for eight or nine months.  I am still available, but it's now.  In May when my calendar is jammed you have your summary judgment motions going to the Court.  It's the perfect month for my calendar to be busy.

Will some of those cases go away, sure.  Regardless of my calendar, I'm not going to decide last minute issues of whether somebody should be redeposed because key documents were withheld as a nontestifying expert and lo and behold some of the

Page 27

work that that entity or person did was precipient witness work and not engaged with an engagement letter as a nontestifying expert.  There has to be a line drawn.  You've all been aware of this issue since I wrote my ruling on it.  Ms. Cohen, what ruling number was that?

MR. LAUNER:  It was the BRSA ruling.

MS. COHEN:  I believe that was order 10 -- I think it was order number 12.  Order 12 is the most recent one.  Order number 10 is the one that addresses this issue.

JUDGE HOCHBERG:  Thank you.  So in my prior comments to you, Mr. Launer, when I referred to order number ten, it was order number 12.  That was essentially everybody has blown through the dates that were required without anybody even asking for leave to blow through them.

I didn't get any request for that, nor asking for leave to cancel a hearing date that had been set aside for a long time, no request for that either. Order 12 went into those details.

What I was discussing with you is please don't tell me the reason you are delayed on some other task is because you had to comply with my

Page 28

order, chiding both sides for undue delays.

You can't say that because I was responding to a delay problem that you did more delay. That just doesn't ring with me.

MR. LAUNER: May I respond?

JUDGE HOCHBERG: Yes.

MR. LAUNER: The parties did notify Your Honor on the 6th that we did not intend to go forward. There was an email at 6:00 p.m.

JUDGE HOCHBERG: You didn't ask. And I don't know if you -- I remember you said we may or won't be prepared.

Your briefs were due. When was the last time you had court briefs due on both sides where you didn't file them or didn't ask or do anything?

MR. LAUNER: I thought we had, Your Honor, by that e-mail.

I think Ms. Andrews would agree the parties have been working nonstop on both sides. We meet and confer regularly. Your Honor said you don't think we do whether by e-mail, phone call, formal meet and confers by video conference. We've been trying to resolve issues to save judicial resources and save our clients time and money.

Page 29

We've been working around the clock through the holidays to do that.  I want to make sure that Your Honor is aware of that because Your Honor stated it was your impression that we were not doing that, and both parties haven't engaged in that process.

And the reason we asked and stated on the 6th that we wanted to postpone that hearing is because we were continuing to engage in that process on the 7th.  And we had a nearly two hour meet and confer that day.  The parties agreed we would get back to each other and keep working through issues.

JUDGE HOCHBERG:  Time out.  I don't recall seeing any request for leave to extend the hearing date on the 6th.  That is when your briefs were due. Did anybody request leave to file your briefs late? Their due date was January 6.  So I don't want to get into an argument about this, it wastes valuable time.

I am saying we are now at a critical moment in this case where we have simply got to not be a month between an issue arising and a meet and confer.  And some of the time dates that have been put into various of the events that were described

Page 30

to me in the submissions, there's a lag time, a significant lag time between an issue arising and the meet and confer on it.

That can't happen.  And both sides knew that you had issues in early December sufficient to say we need two hearing dates, one in December and one in January.  So you knew that there were issues and yet, two dates got canceled.  That can't happen.

If you know there are issues, the meet and confers are going to need to be within three days of knowledge of the issue.  If you reach an impasse you're going to have to send a joint Red Fern within five days because I need to know when things are getting slowed down in this case because the meet and confers are getting put off.

Normally you leave this to counsel to work out on their own, and I did for eight months.  But leaving it to counsel to work out on their own is not achieving the goal of being trial ready after the 8 month extension the judge has already granted for this case.

That is why I am being so stern.  I cannot do that again.  It's my job to get this case trial ready.  It's not my job to be annoyed with counsel.

If you hear it in my voice it is because I now have to take a much more active role in essentially policing the calendar so the dates don't slip up because dates are slipping by.

If you knew there were disputes in early December when you asked for hearing dates, those should have been ready for a Red Fern chart in time for the December hearing. And if not the December hearing at least in time for the January hearing. And nothing happened. I thought I was getting this briefing.

I did not get any request saying we need three months dates to send in our brief, Judge. Nothing like that happened. So I don't mean to sound like a scolding school marm, but any issue that is going to cause delay jumps off the page at me that is going to cause delays, and it's going to be resolved because that is my job here. It is going to be resolved by order.

The reason for that is the -- I'm sorry, the new issue that hasn't even been briefed yet, and I don't have time for briefing. You're going to get a schedule that is going to require you to let me know who those entities or people are very very soon.

Page 32

January 30th roughly, something like that. Maybe February 2. I need to know on both sides if there are nontestifying experts engaged or retained for purposes of litigation whose documents are being held on grounds of privilege to make sure that the case law on that privilege withholding ground is applied.

So this all goes for you, Ms. Andrews, as well.

MS. ANDREWS: Understood, Your Honor. Mr. Rael is the master of our privilege log. So if you have specific questions, I defer to him. But I will say at a high level to my knowledge defendants are not withholding documents on the basis of a nontestifying expert consultant privilege. We do expect to disclose rebuttal testifying experts in response to plaintiff's disclosure of its testifying experts.

But we have one nontestifying consulting expert that we retained in the course of this litigation, but we rely on her work, and it was disclosed to the plaintiff, and we produced her documents, and I'm not aware of any others.

As you have alluded to, Your Honor, the

Page 33

issue we have is defendants' use of the non-testifying consulting expert privilege with respect to entities such as Consigli, who are first party witnesses and will be deposed and provide services beginning in August of 2020 with respect to the adjustment of the claim who then were brought in under a claim of nontestifying expert and significant documents are being withheld.

So I don't want to jump ahead on that, but that is my understanding of where we're at on that. To back up with respect to the submission, I will fall on the sword for defendants. I hear what you're saying. I apologize that we didn't communicate more formally with you. You're correct, we certainly would have done so if we were standing up in a courtroom before a judge.

And we'll afford you the same respect going forward. Again, I'm sorry for that. Mr. Launer is correct. We have been meeting and conferring. I think he and I have fairly collaborative working relationship.

Defendants did have issues in December, which is why we reached out and asked for dates. Again, I will lay the blame here. In our

Page 34

discussions with plaintiff about them, their position on much of what we were raising was, well, we are still producing the documents.  We're still downgrading privileged documents.  A lot of what you're talking about will be addressed in these forthcoming productions.

We have demurred and said okay, we'll look to see what you're giving us.  We had no idea that on December 5 that we were going to receive the documents that we did after December 15.

In January, once we started to go through things and were able to meet and confer with some of the other third parties, we came to the conclusion that downgraded productions were not, in fact, addressing our issues, and we quickly moved to tee those things up.

In hindsight, we would have been better served if we had come to you as we originally planned in December, and we will not make that mistake going forward.

JUDGE HOCHBERG:  You will not.  I need to know what the issues are.  Even if I have to have a hearing on a Saturday or a Sunday or a holiday, I am committed to doing that even though I am so called

Page 35

retired. Obviously, I'm not.

Obviously, I'm working way harder than I worked as a judge.  To be clear, I will do that if it is necessary to keep this going forward.  I'm willing to do it in the past, and I'll do it in the future. The problem is that these issues need to be ruled on.  I would have thought that the document production was done long ago.

MR. LAUNER:  Your Honor, so I want to back up on experts.  First, when I was talking about disclosures, I was specifically talking about testifying experts who will be providing reports on damages.  So full stop, that's what I was talking about with March 20 because we were talking in the context of the Rule 26a disclosure.

I agree with Ms. Andrews, we are not.  I said it in my papers and I said it to Ms. Andrews repeatedly.  Plaintiff is not withholding documents on the basis that there is a nontestifying expert retained in the course of litigation.  We have not done that.  I can give you stats.  Consigli is a big one.  It's not that we withheld documents involving Consigli just like defendants withheld documents that involve some of their consultants, but they're

Page 36

specifically related to litigation issues created in anticipation of or during the litigation.

JUDGE HOCHBERG: Then you are withholding documents on the basis of someone being a non-testifying expert?

MR. LAUNER: We are not. For instance, there was a mediation process, if you will, beginning in March of 2021 and went through June or July of 2021. That is a key event. Both parties have withheld documents from their consultants who were involved in that, not the underlying work product.

Not documents created in the process of the claim adjustment, but communications related to the provision or the assistance of providing counsel with advice for the purposes of the mediation. We had produced over 9,000 documents involving Consigli. We withheld 315. We are just not doing what defendants say we're doing, and it stems from -- I know we're jumping ahead, but I have to respond.

It stems from a conversation that defendants had with Consigli that we were not involved in. We were asked to participate. We didn't participate. Consigli chose to withhold a file. The file they

Page 37

withheld was their file that Consigli created following their retention as an expert back in 2022. It's the same thing with BR Plus A. Nonetheless, we have been asking Consigli for those documents. They gave them to us last week. We reviewed them. Again, there's multiple balls in the air.

We told Consigli yesterday we're asserting privilege over a single document. It's up to Consigli whether they are going to produce them. We have no control over that, but we're not claiming privilege on documents based on the fact that they were retained later on in the process as a nontestifying consulting expert.

We are producing documents that were done in the course of the claim adjustment process, which extends beyond May of 2022, when that engagement with Consigli occurred. There are documents. They'll see hundreds of documents produced after that date. We're just not doing what they say we are.

JUDGE HOCHBERG: Let's put Consigli aside for one minute. Are there any nontestifying experts or nontestifying entities that you have engaged in anticipation of litigation as to who they are and

Page 38

are there any documents in this case?

MR. LAUNER:  So there were three engagements in May of 2022:  Consigli, Array.  Forgive me, I will find it.  NGRNA.

MS. ANDREWS:  NGRNA also sent a letter to Greenfield.

MR. LAUNER:  They're not a nontestifying consulting expert.  Array and BR plus A, they have been noticed for deposition and as Consigli, I'm not sure what the nature of the dispute is.  Again, I will reiterate defendants have withheld numerous, countless communications with consultants.

Again, we looked at their log, and we had just begun.  I know I gave them their log last night, and the parties need time to digest it, but around the same time period that mediation.  The parties are doing the exact same things.

JUDGE HOCHBERG:  You're talking about a window around a mediation in 2021?

MR. LAUNER:  There are other time periods, but that is a key one.  In that three month period 25 percent of our log is around that mediation.

I haven't done the stats on defendants, but there is a big group in those same two or three

month period, which is reasonable and appropriate. But again, even where there's been communications Your Honor that we have withheld with consultants, if the attachments were the work product that the consultants did earlier for the purposes of the claim adjustment, we slip sheeted, we produced the work product.

JUDGE HOCHBERG: We're trying to identify who the entities are. Consigli I have seen so many times that I could spell it. But for the benefit of the court reporter, spell Array for her, and you will have to help her with BR plus A. It's capital B capital R plus sign capital A. How do you spell Array?

MR. LAUNER: A-r-r-a-y. And again, just because we are talking about it for point of reference we produced 1,451 e-mail communications with Array and withheld 284.

When I give you the numbers of what had been withheld, they're not cumulative. Many of these communications involve multiple consultants.

So let me jump to the end. We produced 160,756 documents with these consultants. I could list the other names and withhold 1,260. It's less

than 1 percent.

JUDGE HOCHBERG:  Who has decided who gets withheld? Why don't we get through all the list. Any entity that exists where there has been privilege withholding let's get that complete list from plaintiffs and then we'll get it from defendants.

MR. LAUNER:  Certainly.

JUDGE HOCHBERG:  Consigli, Array and BR plus A.

MR. LAUNER:  That's correct.

JUDGE HOCHBERG:  Who else?

MR. LAUNER:  Code Red.

JUDGE HOCHBERG:  Who else?

MR. LAUNER:  EH and E.  Marsh FACTS is all in capitals.  That's the name of the entity.  NFA, which is National Fire Adjustors, I believe.  If somebody wants to correct me on that.  I believe that is their official name.  They go by NFA, and CMC, Continental Machinery.

The last entity I'll point out is not an outside consultant.  It would be CREF who was internal adjacent with Steward during the entire process.  But the outside consultants are the eight I just named.

Page 41

JUDGE HOCHBERG:  Can you spell that internal Steward?

MR. LAUNER:  CREF, C-R-E-F.  The real estate facilities is the REF.

JUDGE HOCHBERG:  Don't worry about it.  You can't possibly figure that out.  I don't need that. I wanted to be sure that it wasn't Ty CREF.

MR. LAUNER:  No.

JUDGE HOCHBERG:  And those are treated the same way.  The internal ones are all getting disclosed because they were not engaged in anticipation of litigation, they are part of Steward?

MR. LAUNER:  Correct.  So if there are communications that are protected under general principals of work product and privilege they have been withheld.

JUDGE HOCHBERG:  And those are identified --

MR. LAUNER:  Unless it's specifically related through the claim adjustment process they have not been withheld.

JUDGE HOCHBERG:  Obviously, nothing is to be withheld with respect to the claim adjustment process.

MR. LAUNER:  On both sides.

Page 42

JUDGE HOCHBERG:  Correct.  I think I already ruled on that.  I will keep ruling on that.  All I'm saying is I am not waiting until March to decide this issue because there's too great a danger that all of a sudden there's a new document production.

I thought that the documents, Mr. Launer, that were being produced by the plaintiff were pursuant to my August 19th order.

MR. LAUNER:  I believe it was September.  But they were Your Honor's order number one.

JUDGE HOCHBERG:  What's the December production?  This is a long time later.  That's too slow for this case.  It's not too slow for a basic case just getting off the ground, but this one is not a basic case just getting off the ground.

MR. LAUNER:  The case was stayed until July of 2024.  I know it was filed in 2021, but the case was stayed.  No discovery happened until the SJC decision came down.  In that regard, it is not a five year old case.

JUDGE HOCHBERG:  You can argue that to the judge if you want.  I can't change those.

MR. LAUNER:  I didn't mean to argue.  It's not like we've been delaying discovery for five years.

Page 43

JUDGE HOCHBERG:  When I got involved I found that some discovery had happened.  Maybe it was discovery before I got involved that started in 2024, I don't know.

But it's now 2026, and the last extension I have got for you is the last extension we are working towards.  We have to get this done.

The point of all of this about these non-testifying experts, and I am glad to hear that you don't think you have any, but the rules remain about what is permissible to disclose and if there are going to be disputes about that I need to know it now, not in March.

That assumption that an expert report due date is the first date to tell somebody these are my experts and these were my nontestifying experts and this is the subject matter that they're going to talk about is way before that.  Why is that?  That is so there's no surprises.

If we went with everybody just filing reports for the first time in March, not knowing the subject, the general subject matter of the opinion to be provided by those experts, then all of a sudden people have to scurry around and get rebuttal

Page 44

experts that they didn't think they would need.  And some rebuttal experts will bring new names to the plaintiff and wait a minute, we want to do a sur report.  No.  We need to know that information now to minimize the chances that that kind of scheduling disruption happens down the road.  That's my job.

MR. LAUNER:  Understood.  All I can reiterate is plaintiff is not withholding documents on the basis of a nontestifying expert rule.

JUDGE HOCHBERG:  You're withholding documents as I understand it, none are being withheld under that rule.

The withholding is only for consultants engaged during a mediation.  Is that the basis?

MR. LAUNER:  Not just the mediation, but other.  So, for instance, there is preparation of the 93a demand letter to the extent that there were communications to provide counsel with information in order to prepare the 93a/176d demand letter which is the first step in litigation.

I would imagine that there are documents withheld around that time, but the underlying work product, the reports.  Defendants know this, Consigli went in.  Other consultants went in and

Page 45

examined the loss.  Those have been produced.  They have not been withheld.

JUDGE HOCHBERG:  Okay.  So Ms. Andrews, I'll give you a brief response on this issue and then we have to move to the existing issues, but I don't have time to have you say we're going to meet and confer and then tee up a Red Fern on this.

So you're going to see in the ruling I'm going to enter, there are dates in there when you each need to tell each other various things including who your testifying experts are and the subject matter of their reports.  Not what the reports say, but the subjects on which they will testify, a very short one or two sentences about what the subject matter is so that there are no surprises about rebuttal experts.  So that God forbid there's no request for sur rebuttals, so that the schedule doesn't have room in it for that and there won't be.

So I am very attuned to this issue.  I look at anything on the schedule that jumps off at me that says oh, this one could be a delay.  So by now I only must assume, and you could answer yes or no that you will have experts that are already working

Page 46

on reports.  Correct, Mr. Launer?

MR. LAUNER:  That's correct.

JUDGE HOCHBERG:  How many do you have?

MR. LAUNER:  I will answer reserving all rights that we may retain additional experts testifying, report writing experts in advance of our disclosure.

But as of this time I believe the answer is five, Your Honor.

JUDGE HOCHBERG:  And can you tell me without -- I recognize this is not a Red Fern topic, but it's important to me for purposes of the schedule because I have seen this issue destroy schedules years ago, and I have in my own cases have been very attuned to it.

The general topics of expertise, not the credentials, what they will be opining about.

MR. LAUNER:  There will be two experts that will be opining as to damages.  As I said earlier, there are four categories of damages.

The plaintiff's position is for two buckets. It's not the subject of expert testimony.  That is why we gave to a penny computation of damages.  Two experts will be opining on two other documents.

JUDGE HOCHBERG:  What are the other buckets so

Page 47

that it's not murky?

MR. LAUNER:  One is business interruption loss, which is the, I think all parties would agree kind of the primary, the largest bucket in the case.

And I misspoke.  There are two experts involved with business interruption.  One is on the period of liability or the period of restoration, which is the time period in which the plaintiff is entitled to business interruption loss, which is one of the more hotly contested issues in the case.

The other is the actual computation of damages.  So there are two experts on business interruption loss.

JUDGE HOCHBERG:  One of them is on these two time periods, and one of them is on just the calculation of damages, the dollar figures?

MR. LAUNER:  Correct.  And then the remaining bucket of damages is called business personal property.  That involves valuation of property, and plaintiff has retained and is working with an expert doing valuation of the property that plaintiff claims was damaged and lost under the terms of the policy as a result of the loss of that back in June of 2020.

Page 48

JUDGE HOCHBERG: So we have three damages experts?

MR. LAUNER: We also have an expert on bad faith. As Your Honor knows, plaintiff has asserted a claim that defendants have engaged in bad faith in their conduct of adjusting the claim, which leads to an important and I apologize for jumping round, an important issue of privilege, which I would be remiss if I didn't just talk to you about it now Your Honor, because what I said earlier is plaintiffs and defendants are taking the same position with regard to privilege and nonprivilege and for testifying experts, which is correct.

There is one key distinction. In response to our assertion of the bad faith claim defendants have stated in their answers to interrogatories that they did not engage in bad faith because they relied on industry leaders or consultants.

I can pull the exact phraseology in their interrogatory answer. And they had therefore put their communications with those experts and consultants on whom they rely. So this is not whether there was a original basis for privilege or withholding, it's whether or not there is an at

Page 49

issue waiver.

So that issue does need to be resolved if Your Honor is putting together a schedule we understand it was not part of the red fern, we ask that that issue be included as part of your schedule.

JUDGE HOCHBERG:  When was I going to be told about all this?

MR. LAUNER:  We just received their log last week and saw they're withholding communications with consultants on whom they said they had not engaged in bad faith because they relied on those consultants.

JUDGE HOCHBERG:  So right now we're on what testifying experts there are and what non-testifying consultant experts, whatever you want to call them, engaged in anticipation of litigation.

You're saying as to the latter group you have engaged no consultants in anticipation of litigation or what is your position on those?

MR. LAUNER:  There were three consultants engaged in March of 2022 who we talked about that were engaged as consulting experts.

What I am saying is we have not withheld

Page 50

communications on the grounds that they were engaged as consulting experts.

JUDGE HOCHBERG:  Were any of them?

MR. LAUNER:  Nontestifying consulting experts I think is the issue that we've been addressing.

JUDGE HOCHBERG:  None of those names are the same names as the people who are experts?

MR. LAUNER:  The ones who will be testifying, no.  They are not.

JUDGE HOCHBERG:  These are the ones that you identified, Consigli, Array, BR Plus A, Code Red, E H and E, Marsh NFCS and FCA? That is a longer list of consultants than three.

MR. LAUNER:  Correct, that were engaged back at or near the time of the loss.  I want to be clear.  I think we set forth our position in our letter for purposes of having the record in case I kind of misstated anything, but plaintiff is not withholding documents involving or created by Consigli Construction related to adjustment of plaintiff's insurance claim.

Nor is plaintiff attempting to shield factual information from discovery under the guise of Federal Rules of Civil Procedure, 26b4. The

Page 51

plaintiff has never taken that position, and we are not taking that position.

JUDGE HOCHBERG:  So the position that you are taking is the Consigli documents that are withheld are the ones that they provided service in connection with a mediation?

MR. LAUNER:  I'm not limiting it just to the mediation.  Again, there was the 93a demand letter. There may be other events that were for the provision of legal advice, but t's not being withheld on the grounds of Federal Rules of Procedure 26b4.

MR. ROBBINS:  This is Seth Robbins.  I want to direct you to the key sentence in the response. Privilege has been applied narrowly and only to communications involving consultants where those communications were made with or at the direction of plaintiff's counsel for the purpose of providing legal advice in anticipation of or during the litigation.

That language appears on the first page of Mr. Launer's letter dated January 22 of 2026.  That is the position.

JUDGE HOCHBERG:  What is the rule of privilege

on which you are relying for that category?  It's not client, is it work product?

MR. LAUNER:  Work product and possibly attorney clients, yes.

JUDGE HOCHBERG:  How can they be attorney client if they're attorney client, and they're testifying that is an issue, isn't it?

Are they going to testify, any of these people?

MR. LAUNER:  Some may.  Some might not.  I don't know if defendants are going to call them Your Honor.  I don't know at this time.

JUDGE HOCHBERG:  I don't see how it's attorney client.  They're not your client.

MR. LAUNER:  There's a derivative privilege, Your, Honor, which can apply in certain situations such as where you rely on an outside third party to provide guidance on technical matters and technical issues.  But yes.

JUDGE HOCHBERG:  In those cases is that entity or person actually then testifying about those matters, I don't know?  This is a deep well that we are jumping into.

The colloquy we're having now is exactly why

Page 53

this issue cannot wait until expert reports are due. And we have to get to today's topics or we're never going to get done. Ms. Andrews, do you already have experts lined up and are they working on reports?

MS. ANDREWS: Your Honor, obviously we have lined up, but we are tasked with providing rebuttal disclosures to whatever testifying experts plaintiffs disclose.

We have made educated guesses up to now about what experts they were likely to put forth to support their case in chief. And yes, we have retained anticipated rebuttal testifying experts, and they are working.

They generally encompass the topics that Mr. Launer referred to with respect to their business interruption claim, the period of liability and the bad faith allegations and the personal property claim.

Who we actually disclose, Your Honor, the schedule currently, they disclose their testifying experts on March 20. We then disclose our rebuttal experts 30 days later. Who we disclose will in part be informed by the disclosures that the plaintiff makes on the 20th of March.

Page 54

JUDGE HOCHBERG:  Except I'm moving it up.  The word disclosure there means the disclosure required by the rule, the expert testifying rule, an expert report due date.  That is what it means.  And you know what it means.  That is the only logical reading of the word.  Why don't you change that around and make it report due date.

The disclosures of who your experts are and the topics including rebuttal experts, the topics of which they will be -- first, I agree with you.  You should disclose yours after he discloses his.  But we need quickly for you to know who these experts are and a general description of the subject matter or the terrain of their opinion.  Not the reasoning, not the report.  Just two sentences, a paragraph, something like that and who it is.

Then you'll have to say what you got.  This is done to make sure that you don't come back to me and say gee, I didn't know he was going to have something on this issue.  Now I need another person.  I need a chance to do another rebuttal expert report.

We need to have clarity on what topics the experts will be speaking about and who they are so

Page 55

we don't have surprises down the road.  Okay.
Enough on that.  So the order will have instructions
in it for that.  And they're going to be very short
due dates.

MS. ANDREWS:  Your Honor, on the non-
testifying consultant expert privilege, I don't know
if you want to take that up when we get to the Red
Fern chart, that is keyed up as defendant's topic
one.  I am happy to wait for that.

I want an opportunity to respond to what
Mr. Launer said because frankly -- well, I think the
position they're taking is indicative of why we're
here.  It's simply not consistent with the record,
and there are large categories of information that
is being withheld and hasn't been provided to us.
So I would like clarity around that.

I'm happy to do it in the context of the Red
Fern chart or address it now.  I would like to say I
know that Shawmut's counsel, he had a very narrow
issue that needs to be prioritized.  I should have
communicated that earlier.  I wanted to make sure
that I didn't forget about Mr. Lavoie.

JUDGE HOCHBERG:  Yes, we'll get to your issue
at that point in the red fern chart.  Just be clear

Page 56

about what you are seeking.

MR. LAVOIE:   My experience is a microcosm of yours.  I attended a hearing in August of last year, at which point the plaintiff were seeking very broad discovery of our client based on a construction schedule they had prepared for an entity called DBI, which apparently was doing work with Zurich.  They were hired to make a preconstruction schedule, what the cost would be and the timing for that, for repairing the damage to the hospital after the flood.

They were not hired for that work ultimately.  So they basically prepared a schedule. They were not requested by anybody to be an expert. They're not an expert in this case.  They had no communications with Zurich.  There's no dispute the schedule was provided.

So fast forward to last week.  I get an e-mail from plaintiff's counsel seeking Shawmut's deposition saying we need this done before March 13. We have X number of dates in February and give us a date.  Otherwise, we'll just notice it and go to the special master.

I at that point said where's the discovery

Page 57

order on this because my memory of the hearing and we asked for the transcript to confirm it. You had put this off. At the time you agreed with our assessment that we are not basically an expert to play any role in this case based on where our situation was, a supply chain expert was what they were seeking us to be, and we were not that, and we did not play that role.

In your hearing you said to the plaintiff's counsel if you want to take Shawmut's deposition you have to put it off, wait until you've taken Zurich's deposition. Figure out if there is any communication.

They were trying to suggest we were involved in some bad faith allegation, which is patently false and then come back to me. So I said to counsel, well, give me the order from the judge that says that this deposition can now go forward. They provided instead some supplemental answers that were provided by Zurich on December 10 of 2025, which identified that DBI had obtained the scope of work from Zurich, outlining the repair to restore buildings damaged by the water.

Shawmut Design prepared a construction

Page 58

schedule outlining the time necessary to complete the repairs needed to address the water damage. They sent me that snippet and said that is why we need Shawmut's deposition. What they didn't include in the snippet, I asked can you provide the entire disclosure, and they finally did.

The disclosure continued to say Shawmut Construction prepared a schedule outline of the time necessary.

JUDGE HOCHBERG: You have to read more slowly because we have a court reporter. Lawyers speed up to double time when they read, and it drives court reporters mad.

MR. LAVOIE: Shawmut prepared a construction schedule outlining the time necessary to complete the repairs needed to address the water damage, concluding that construction could be completed by May 13, 2022.

American Guarantee, Zurich, retained an executive director at GSL to review Shawmut's scheduling assumptions. So I read that to be that Zurich retained GSL to use this document that Shawmut prepared to opine on.

Shawmut is not opining on it, but some other

Page 59

entity.  So, of course, my position is the parties could stipulate to the fact that there is a conceptual construction schedule prepared by Shawmut at the very outset after the damage before construction was done.  We don't need Shawmut to come and say this is our schedule.  So that would be my suggestion the parties do that.

But if the Court is going to allow a deposition of Shawmut at any time there needs to be guardrails.  We're not experts.  We are not going to be -- questions shouldn't be asked to become an expert on opinions on any of this because we're trying to go build buildings.  We already produced 3,000 pages of documents on this case and really want nothing to do with it.

JUDGE HOCHBERG:  So there's no dispute about document production, correct, Mr. Launer?

MR. LAUNER:  Your Honor, this is an issue that William Gildea is handling.

JUDGE HOCHBERG:  Mr. Gildea, no dispute as to document production, correct?

MR. GILDEA:  No dispute other than no privilege log was produced by Shawmut.

JUDGE HOCHBERG:  What is the obligation of a

Page 60

nonparty to produce a privilege log?  Shouldn't that be a categorical log at best?

MR. GILDEA:  We have received that.  That is not an issue before the Court today.

JUDGE HOCHBERG:  I don't want to get it later. It's now or never.

MR. GILDEA:  We're not bringing it now.  I'll accept Mr. Lavoie's representation.

JUDGE HOCHBERG:  Do you really need a privilege log?

MR. GILDEA:  No.

JUDGE HOCHBERG:  They don't need to produce a privilege log, Mr. Lavoie.  What is this proposed scope of the Shawmut deposition and why do you need a deposition of Shawmut?  What date was this conceptual schedule prepared?

MR. GILDEA:  On November 12, 2020.  I would add Mr. Lavoie did not tell the Court we provided a revised topic of schedule to him that addressed and removed many of the topics he had previously objected to such as about these supply chain issues.

It was narrowly targeted to discuss and seek the discovery of what Shawmut did in the schedule that it provided.  I would add that Shawmut produced

Page 61

e-mails that say they just need a construction schedule at this point to validate the GCS that the insurance agent will use to negotiate with Norwood.

Another email says this schedule would not have a traditional schedule, and a third one said this project will never happen the way we are currently pricing it.

The discovery is key to plaintiff's claims against the defendant about bad faith, how they received the schedule, how it was not reliable. They didn't ask any questions.  They knew about it and then they used the schedule to justify cutting off plaintiff's business interruption loss.

JUDGE HOCHBERG:  I understand that, but those are questions, aren't they, for whichever insurance company you're attacking, right?

MR. GILDEA:  No.  We need to depose Shawmut to understand why they drafted the schedule the way they did, the documents that they relied on and how they understood the purpose of this was for insurance negotiations and how it's not a real schedule.

MR. LAVOIE:  Your Honor, the e-mails speak for themselves.  I am not here to argue the emails.  I

Page 62

am here to say Shawmut was hired by DBI.  They produced a schedule.  They put qualifications on it. That is all out there.  I don't know if there is a need for a deposition by Shawmut to explain an e-mail that speaks for itself.

MR. GILDEA:  Respectfully, all other consultants in this case are being deposed:  DBI, GSL, Consigli, all the consultants that perform the underlying work the parties rely on and Shawmut is the only one that objected to it when their schedule is the most important piece in the restoration and key fact of the bad faith claim.  The time line is important.

JUDGE HOCHBERG:  This is not a Shawmut related comment, but I saw the number of third party depositions you wish to have.

Do you have dates for all those?  That is an extraordinarily large number of third parties.

MR. GILDEA:  I will let other attorneys answer, but I believe that we have collaboratively prepared a schedule for all depositions for the discovery deadline.

JUDGE HOCHBERG:  There's an agreed deposition date for every one of those long list?  It was a

Page 63

very long list.  I didn't see the dates.  That would have been done last night?

MR. GILDEA:  I did for almost all parties, I believe.

JUDGE HOCHBERG:  We'll get to that in a minute.

MR. LAUNER:  On behalf of plaintiffs, there are in addition to Shawmut's deposition there is one third party that we are working with their counsel to schedule.  That is GE Healthcare.

We have served subpoenas on four other of defendant's consultants, and we have scheduled dates for all of the designees except for one.  One entity designated five different people that testified to different topics, and we need to work on a date for the fifth.

Four of the five designees we have dates and we have dates for the other 30b6 depositions of nonparties on behalf of plaintiff.  I know that defendants are working with third parties that they have noticed for deposition or subpoenas for deposition.  So I could let Ms. Andrews speak to that.

JUDGE HOCHBERG:  We will get back to her.  Let's go to Shawmut.  We don't need to keep

Page 64

Mr. Lavoie on the line for the entire morass we're dealing with.

Mr. Gildea, what number of topics are you seeking testimony from Shawmut for?

MR. GILDEA:  If I can have one moment.

MR. LAVOIE:  Your Honor, there are 11.  I got this last night.  I sent it to my client.

MR. GILDEA:  That was sent Tuesday night, Your Honor.

JUDGE HOCHBERG:  I rest my case about the late time that everything is happening.  Eleven topics is way too many for a third party to be burdened with, especially one as marginally involved.

I recognize it's an important piece for you. It sounds like you have very targeted questions you want to ask.  The 11 topics need to be pared way down.  What were they originally?

MR. GILDEA:  I believe the original one was over 30.

JUDGE HOCHBERG:  That's the problem with the way a lot of this is.  There's overkill.  Crazy amounts of overkill and that begets delay and that begets issues I need to address.

First of all, to tell him 30 topics, no

Page 65

wonder there's an objection.  There is a point where counsel have to be sensible and reasonable about not just what you want, but what the role is of somebody who is not even at war with you.  They're just an innocent bystander that had some work in the case.  And yes, the people do get called, and there are provisions for that, but you can't overly burden them.  What are the 11 topics?

MR. GILDEA:  I can address that quick.  We served the documents subpoena to Shawmut late last year, and Attorney Mutch indicated he was representing Shawmut.  We never received a response to that documents only subpoena.  So we issued a 30b6 notice with a Schedule A with the topics because we didn't know the extent of the documents and what they said.  Since we received those documents after Mr. Lavoie came in and started representing Shawmut, we pared down those topics.

JUDGE HOCHBERG:  Mr. Lavoie, are there certain topics to which you object?

MR. LAVOIE:  Yes.  Maybe we could do it this way because I have a suggestion.  Mr. Gildea cited a number of e-mails he says suggest that conceptual schedule wasn't reliable.  Why doesn't he produce to

Page 66

me the documents he wants to use in the deposition. I will forward them to my client, and we will have a witness who is prepared to respond to the questions directly concerning the documents. We have no issue in this case, plaintiff or defendant. We're neutral. We're Switzerland, and we would like to make this as short and sweet as possible.

We don't need to be talking about our internal guidelines for estimating for this and that. Give us the documents that they want to use to get their case prepared, and we'll work with them, but I don't think this is a seven hour deposition. It should be two hours.

JUDGE HOCHBERG: It is not going to be seven hours. So it won't be seven hours. It doesn't make sense for a seven hour deposition for this degree of involvement.

So my inclination was to ask Mr. Gildea next whether one hour is sufficient. It sounds like you're willing to give him two. Mr. Gildea, can you get your questions asked and answered in two hours?

MR. GILDEA: I talk quickly, and I have experienced depositions with Mr. Layvoie previously

Page 67

where he moves them along, but I need at best three to four.

JUDGE HOCHBERG: I can't give you three or four. That is too much, too burdensome. You're going to get two and a half hours. You don't need all the usual background questions, education questions, any of that stuff. Person, job title, connection to the document you want to ask him about.

Send Mr. Lavoie a subset of the documents he produced that will be the focus of your questions, and he will have the client identify who should answer those questions. Mr. Lavoie, make sure that whoever testifies is able to answer questions about those documents. Mr. Gildea, you mentioned three documents. I'll give you up to ten.

MR. GILDEA: Respectfully, Your Honor, I have to object because I can't just take the ten documents. There's multiple documents that I have to use.

JUDGE HOCHBERG: How many do you need to use? Use? Twenty-five, that's it. This is an ancillary witness that was never engaged.

MR. GILDEA: They were engaged. They were paid

Page 68

$22,500 by DBI to produce this schedule.  This is not a small company that got a bid that wasn't accepted. They are a major construction company in Boston.  They have 15 offices nationwide.  There are three different Answers to Interrogatories that show that AGLIC relied on the schedule that Shawmut created.

JUDGE HOCHBERG:  You have your schedule and AGLIC witnesses.  To be paid $22,500 in a case of this magnitude is an ancillary player.

You can get your deposition.  A lot of judges wouldn't even give you a deposition, but you could get your deposition.  But it makes sense to focus in on the pieces that are of importance to you.  You can do it in two and a half hours.

You send your subset of documents to Mr. Lavoie.  If you can cover them in two and a half hours, I don't know how many you're talking about. You mentioned a few e-mails.  You've gone through the documents.  You've had them for a while.  What number do you think you need?

MR. GILDEA:  I can't put a number on it.

JUDGE HOCHBERG:  25 documents.  Send your key 25 documents to Mr. Lavoie.  If a day or two before

the deposition there's something else related to those 25, you can show them to Mr. Lavoie in advance so that he could prepare the witness. But the key documents you have cannot be more than that. I would be surprised. If you think there are, reapply. But do it quickly with a real basis for why.

Mr. Lavoie, there has to be some limit to the quantity of everything. There has to be reasonable limits. If 25 is not enough and you could get Mr. Lavoie to agree to others, great.

MR. GILDEA: I'm confident we can work it out.

JUDGE HOCHBERG: I want to know well in advance of the fight date if you have another fight about this. Of course, you can ask AGLIC all the questions you want about it. They're the ones you're accusing. And yes, you have of the right to ask about this small category of documents you talked about. That is key to your case, I understand it.

I understand why you want to do it and you have the right to question on that, but it can't be a free wheel multi hour questioning of someone that worked for a company that never was hired and

Page 70

produced a schedule way back however many years ago. What is next?

MR. LAVOIE:  I don't think you need me anymore.

JUDGE HOCHBERG:  You need to give Mr. Gildea a date.  You need to agree on a date.

MR. LAVOIE:  I'll speak with the client and find a date that works, and we'll accommodate this between now and the end of March.  I must say you run a very tight ship and a very good one.  Thank you.

JUDGE HOCHBERG:  You're welcome, Mr. Lavoie. This ship has seen a lot of activity.  What's next?

MS. ANDREWS:  It depends on what order you would like to go in.  I think that was topic five.

JUDGE HOCHBERG:  Not surprisingly we are now an hour and a half into it, and I haven't made it to the red fern chart yet.

There are some other topics that haven't made it on the red fern chart.  Ms. Andrews, we talked about the amended damages issues, and the agreement on that has been put on the record.  We haven't started the Rule 26 disclosures.  We are going to get to that hopefully by the time we get to your chart.  If not, remind me.  It looks like the

Page 71

privilege logs have finally been exchanged.

MS. ANDREWS:  Correct.  We received the plaintiff's log last night.  As I noted, they did indicate it was preliminary.  I'm not sure what that means.

JUDGE HOCHBERG:  That means it's their privilege log.  We're way too far in this case to be preliminary.  So you need to review it promptly, submit any challenges or issues by February 4.  Meet and confer on this on the revised privileged log within three days of today's date.

There is also plaintiff's amended interrogatory responses on January 13.  Defendants have to my knowledge raised no objections thus far. I need to know any objections that defendants have to the plaintiff's interrogatory responses.

I don't understand.  Amending interrogatory responses now seems odd to me, but they were just amended.  I would like to know that also, Ms. Andrews.  When can you get me any objections on that?

MS. ANDREWS:  I believe we received on the 13th the amended Rule 26a disclosures.

MR. LAUNER:  It was a second supplemental

Page 72

answers to interrogatories, and the amended Rule 26a disclosures.

MS. ANDREWS:  We raised concerns about the 26a1 disclosures, in particular the significant expansion and the number of witnesses that they may rely upon.

JUDGE HOCHBERG:  We're going to talk about that.

MS. ANDREWS:  That is something we would like to talk about.  We could on the same schedule, Your Honor, the privilege log address any issues we have with supplemental and amended interrogatory answers and bring those to you next week.  I'm not aware of any, but I don't want to confidently say without consulting with my team that there is any.

JUDGE HOCHBERG:  State the date by which you will do this for the record.

MS. ANDREWS:  We'll meet and confer on the plaintiff's amended interrogatories responses within three days and submit any issues on that by February 4.

JUDGE HOCHBERG:  The same as the prior topic?

MS. ANDREWS:  Correct.  One other issue, Your Honor, that I don't believe we've e-mailed you about.  I have had communications with Mr. Launer

Page 73

that relates to what we contend are related fact deposition notices that they issued to us on Friday which I think was the 16th.

JUDGE HOCHBERG:  What deposition?

MS. ANDREWS:  Fact deposition notices for Zurich employees.  I have told Mr. Launer I accepted service of those subpoenas, but we are intending to object to them.

We could submit that to you by the 4th.  We have met and conferred I believe on it.  I don't think we agree.  We could submit that next week.

JUDGE HOCHBERG:  I want a joint red fern chart. The instructions will say that these issues have to be joined within three days of a dispute arising.

And then a joint red fern within five days thereafter.  If any red fern needs to be a column for the opposing party on it, if they don't fill it and one party who has a deadline and is worried about meeting their deadlines then you have to send it to me without the other column filled in, but there will be an immediate response probably from Ms. Cohen saying the other parties need to enter its column in the red fern chart tomorrow the next day. So it would be best to just get it done.

Page 74

MS. ANDREWS:  We could move forward with the red fern chart on this issue and give it to Mr. Launer if you prefer to receive red ferm charts.

JUDGE HOCHBERG:  I don't like getting multiple charts.  What happens when I get to it counsel alone I get long delays.  So they had a meet and confer on day X.  Let me give you an example if I could find it.

The problem was I couldn't color code this.  Several examples where over a month goes by between a request for a meet and confer and an actual meet and confer.  I see you nodding yes.  That cannot happen.  It has to be immediate.

One side can't hold up the other by not being immediate.  If that happens the one side that is ready to go is sitting on its hands and late.  Only in that circumstance do I want a single side and single red fern chart with an empty column.  That is a reminder to me that someone is not doing something on time.

MS. ANDREWS:  Understood.

JUDGE HOCHBERG:  I don't want to have to be the traffic cop at the corner level.  That is what I turned into.  Otherwise I can't get this case ready

Page 75

for trial.

If I left it to you we'd have issues arise on the date the expert reports are due and all of a sudden we would have discovery battles.  And if I read that some document was withheld that shouldn't have been someone going to ask me to redo a deposition.

I can't run a case that way and say to the judge it's ready for trial and your date for filing the summary judgment will not change. And that is a date that is very important to the Court, to have it scheduled on those dates in May, so she has the time to review it prior to the trial date.  That is sacrosanct and cannot change.  That is why I'm being so firm.

MS. ANDREWS:  With respect to the issues of these subpoenas, I do believe this has been pretty prompt.  I received the subpoenas on Friday and responded to Mr. Launer about them Monday or Tuesday.  And addressing it now, we could submit a red fern chart ahead of February 4.  That's the only offer I was making.

If you prefer the next one be joint, and we include it on the 4th.

Page 76

JUDGE HOCHBERG:  The 4th is fine, but get it done.

MR. LAUNER:  I need to correct one thing.

JUDGE HOCHBERG:  One other thing.  I don't want substantive e-mails.  I can't store them easily.  In the storage system I use it's easier to store pdfs than e-mail.

Ms. Cohen can store everything, but I have a particular storage system I use because I handle a lot of matters, and it has to stay extremely organized.  What we normally do is say if you have something substantive to say then in the subject matter line of the e-mail will say see attached, the subject.  Whatever the subject is of the letter and then it says see attached letter regarding the subject topic.  That way I know to open the letter and where to put it.  It's a lot easier than rolling through email than try to find out what Mr. Launer sent to me on December 18 or what you sent Ms. Andrews on December 14

MR. LAUNER:  Briefly.  For the record, I asked Ms. Andrews if she would accept service during our meet and confer on the 7th.  When she agreed to accept service we served the subpoena, the two

Page 77

people and we'll put in on the red ferm, the 30b6 designees for AGLIC and Zurich respectively, and we ask that they be done the same day or back to back days they will be in the red fern.

JUDGE HOCHBERG:  You're saying they're coming to the deposition anyway?

MR. LAUNER:  Correct.  They're the 30b6 designees of the defendants.

JUDGE HOCHBERG:  Understood.  Hopefully you can work this out in the meet and confer that is going to happen within three days.

Otherwise, I'll get a red fern.  Let me go back to the beginning and go into that.  Thank you for reminding me.

MR. LAUNER:  I apologize.  One other thing because we are talking about interrogatories, so I think it needs to be raised.  Defendants served a second set of new interrogatories.  I think there are eight of them if I recall just this Monday.  So the 30 days it would be due February.

We have not had a chance to decide whether or not we're going to object on timeliness grounds.  I want to raise that for Your Honor that they were served three days ago.

Page 78

JUDGE HOCHBERG:  You have raised it.  Again, you're going to have one meet and confer on all of this stuff.  See if you can work it out, determine what your objections are before the meet and confer.  And then tee it up.  If I have to rule, I will rule.

We're now at the stage where these rulings are going to have to be done swiftly in order to keep the case on track.  I think the principals I apply, you have known now since last August.  The deposition schedule I got late last night.  I haven't had a chance to look at it.

Are there any deposition schedule issues I need to know whether before I head into the actual red fern chart?  We're going to go past 11:00. It is not my goal, but I assume that this line stays open.

MS. ANDREWS:  Correct.

JUDGE HOCHBERG:  Any issues that need to be resolved regarding the scheduling of depositions?  So I have no deposition scheduling problems?

MR. LAUNER:  I think the parties have been working cooperatively.  There are a few dates we are trying to resolve.  I will note there is one third party that the plaintiff has a conflict, but it was a tentative date.

Page 79

So I can circle back up with Ms. Andrews and work to schedule that. But we have scheduled most of the deposition as the chart reflects.

JUDGE HOCHBERG: Who has conflicts, the third party?

MR. LAUNER: The plaintiff. But it is a tentative date. It hasn't been confirmed yet.

JUDGE HOCHBERG: Hopefully, I will not get that far down into the weeds, but I'll do it and quickly. Let's get it done.

I urge you also in the third party depositions don't use the seven hours unless it's a really important party, do it faster. Now, we're going to issue one of the plaintiff's requests on the red fern chart. This has to do with the plaintiff's position with respect to Zurich's production of its reserves documents. Ms. Andrews, do you want to respond to that?

MS. ANDREWS: Certainly. This issue arose just prior frankly to your honor's involvement. The plaintiff filed a motion to compel that was on the record in June.

In that motion to compel they sought production of reserves and reinsurance information

Page 80

relating to their client Steward's claim. We had resisted discovery of that information because the case law is clear that it's not relevant.

In any event, in an offer of compromise I believe just as your honor was brought on board we agreed to do two things for documents that were previously produced that had redactions of reserves and reinsuurance information. We would unredact that relating to Steward, and we conducted additional searches and gathered additional information relating to reserves and reinsurance for Steward and for both we agreed to produce information that was nonprivileged. We did that. We completed that production quite sometime ago.

They have the information in their possession that shows the reserves that were set and the reinsurance as relates to Steward's claim. The argument that they are making --

JUDGE HOCHBERG: When did they have that information? When was that?

MS. ANDREWS: I believe it was October. I would have to look back exactly, but I can recall going through those documents in about the October time frame.

Page 81

JUDGE HOCHBERG:  When were the unredactions as to Steward done?

MS. ANDREWS:  They were produced either late October or early November.

JUDGE HOCHBERG:  So what's being sought now?

MS. ANDREWS:  There are additional redactions in the documents that were produced Your Honor that fall into two categories.  One relates to reserves and reinsurance information-- three categories, Your Honor.

I apologize.  The first category is reserves and reinsurance information that relates to the MPT claim because given the fact that as you may recall MPT was the owner of the building in which Steward operated the Norwood Hospital and so for internal discussions purposes oftentimes the two claims were discussed jointly with respect to reserves and reinsurance.

In those cases, we produced those documents showing the information about the Steward reserves and reinsurance.  We redacted the information related to MPT because it's not relevant.  The second bucket of information that is redacted in certain documents.

Page 82

There are slide decks and other tracking documents within Zurich that track sort of large loss claims of which the Steward claim may be one of 20. Those have nothing to do with this lawsuit.

They deal with all sort of other Zurich insurance. Again, we redacted that information. It's not relevant, and it's confidential not only to Zurich, but to Zurich's insureds.

We don't have authority to disclose that information in this litigation. The last bucket your honor, there is some information that pertains to the Steward reserves that is attorney client privileged and that specifically is reserve expense which would if provided disclose information about amounts that are paid by Zurich to retain counsel, and we maintain that is privileged, and it's not necessary for them to understand the reserve setup which was the information sought in the initial motion to compel.

JUDGE HOCHBERG: Mr. Myers, you're on this.

MR. MYERS: We are seeking enforcement of the order that was entered by Your Honor in August of 2025.

As Ms. Andrews indicated, the parties reached

agreement and entered a very clear stipulation and order that did two things. It required defendants to first review all documents that they had already produced with redactions and, quote, reproduce such documents in unredacted form.

It also required defendants to review documents that they had already collected and decided not to produce and produce those documents to produce all nonprivileged and responsive documents.

As you just heard defendants recently revealed to us that these documents are still heavily redacted and just putting aside what Ms. Andrews said at the end about attorney client privilege and whether the documents reveal anything having to do with attorney billing.

Most of these redactions are for relevance and noneresponsiveness as they put it. This is extremely problematic for two reasons. First, nothing in either of the stipulations and order entered in this case or the Federal rules permits redactions for responsiveness.

Second, defendants are indicating that the so called irrelevant information in these documents

Page 84

relates to the MPT claim and reserves set in MPT's case.  That information is actually highly relevant to this case.  We spent a lot of time disputing how much of MPT's claim file is relevant.  And Your Honor will recall that Your Honor's order set a cutoff of August of 2023 for the discoverability of the MPT claim file.

There's no dispute that information in the MPT claim file before that is relevant, responsive and discoverable.  We are merely seeking to enforce the order that was documented in this case and executed by Your Honor.

And we think that it's highly inappropriate that defendants have chosen to redact for responsiveness or relevance when no party has been doing that in this case, and the Federal rules don't permit it.

I want to make one more important note about this so called proprietary or sensitive financial information.  There is a confidentiality stipulation entered in this case, number 66 that specifically deals with those types of documents and that type of information.  If the defendants want, they could mark all these documents as confidential if there is

any sensitive information in them, but they're not able under that stipulation either to redact for relevance or responsiveness.

JUDGE HOCHBERG: Ms. Andrews, do you want to reply with respect to the stipulation? Is there anything else you want to say?

MS. ANDREWS: Sure. Our position is we have complied with the stipulation. As they said at the outset, the motion they filed that the stipulation was entered in response to sought production of reserves and reinsurance for the Steward claim. They have that information.

Nowhere in their submission or in Mr. Myer's discussion have they said anything to the contrary or that they are unable to determine the information they sought. We have provided that to them.

It's our position that we gave them what they asked for, and we complied with the stipulation. There is no relevance to the reserves setting for the MPT claim. This is frankly no different than the information they previously sought about the MPT of the settlement which both Your Honor as well as Magistrate Kelly held was not relevant and did not order production of.

Page 86

To the extent they want to understand how the MPT claim was handled and adjusted they have those documents, but the financial value of that is confidential in terms of the settlement, and the reserves that are set both for MPT and other Zurich insureds is confidential information that Zurich receives from its insureds in confidence.

Some of them are actually former Steward competitors. We are not in a position to disclose the information even under the guise of a protective order, and they don't need a showing that they need this information or lack this information that they sought by way of their motion to compel.

JUDGE HOCHBERG: So what are you showing of need for it, Mr. Myers? Why do you need the MPT information? That MPT case is settled. It had its own value that has been settled. How will knowing that advance your case here ?

MR. MYERS: I will speak on that in a moment.

JUDGE HOCHBERG: Answer that question now when it's asked, and then you'll make something clear. This is just like being in court.

MR. MYERS: I understand that. I would have said the same thing in court. I'm happy to answer

Page 87

it in that order.

First, we obviously disagree on the relevance of the MPT claim. It's no secret these two claims were according to defendant's own interrogatories jointly and concurrently adjusted by the same adjustor on behalf of AGLIC and Zurich.

MPT owned the building that Steward operated, a hospital, and Steward owned most of the property within it and had business interruption insurance coverage. Steward could not reopen its business until the claim related to MPT's ownership of the hospital was adjusted and settled.

If the building wasn't reopened we couldn't operate the business. We therefore think that the manner in which Zurich handled MPT's claim is highly relevant. If they were setting high reserves and offering MPT pennies on the dollar, that is highly relatable and going to the bad faith claim and also the tortious interference claim that we have in this case.

Whatever Zurich was doing with respect to MPT's reopening of a hospital drastically affected Steward's ability to maintain and open and resume operations. So we think for that reason it's highly

relevant. And Your Honor entered master order number nine, which I think we disagreed with it but struck a balance between the discoverability of the MPT claim filed and the potentially attenuated relevance of going into that file past August of 2023. There has not been as far as I'm concerned a major dispute about whether MPT's claim is relevant at all.

It's just the extent of it, and these documents we attached as tabs are communications from a week or three weeks after the storm are very relevant and not past that cutoff date at all.

JUDGE HOCHBERG: What documents that she has redacted is coming three weeks after the storm?

MR. MYERS: We have attached these as tabs to the consolidated letter brief. Tabs three, four, five and six are examples of the types of documents that remain heavily redacted. These are e-mail communications between nonlawyers at Zurich discussing the claim, discussing the loss, discussing the reserves. And there are numerous redactions in each of them.

There are also entire internal documents where almost the entire document is redacted

Page 89

including sections that say things like key factors and part of a normal claims file not only in MPT's claim file, but Steward's claims file.

These appear to be, and this is the last point I want to make on this, documents that are generated in the ordinary course of business and the Federal Rules are extremely clear on this, and the District of Massachusetts cases are extremely clear when a document is created in the ordinary course of business and contains relevant responsive information, in this case Ms. Andrews was just saying oftentimes the MPT and Steward claims were discussed and analyzed together.

So the document is relevant because it pertains to the Steward claim.  If in the ordinary course of business MPT claims information was also included in that document, they're not allowed to redact that either according to the Federal Rules of Civil Procedure or the stipulation and orders executed and entered in this case.

There's no basis for responding in that context.

JUDGE HOCHBERG:  I will go ahead and take a look at those tabs.  I will review three of your

Page 90

examples in camera.  So pick three examples that you want me to review in camera to understand the quote relevant, responsiveness, unquote, of the information that's been redacted.

MR. MYERS:  We'll refer to tabs three, four and five at this point are attached to our consolidated letter brief.

JUDGE HOCHBERG:  Go ahead, Ms. Andrews.

MS. ANDREWS:  I want to make one thing abundantly clear.  There has been no finding by you, the master judge, or the District Court judge that any of this information is relevant under Rule 26.

When plaintiffs filed their motion to compel, the reserves and reinsurance information related to Steward we opposed that motion.  And one of the arguments we asserted, and we provided case law is this type of information is not relevant to bad faith claims, and it's typically not produced.

We entered into a stipulation as a means of compromise on this issue, but we did not concede the relevance of it, nor have we ever conceded the relevance of anything to do with the MPT claim.  We made that clear in submissions to you.  We made that clear in our briefing to Master Kelly on their

Page 91

demand for settling.  Mr. Myers is making an argument that it's all relevant. There's been no finding to that effect.  There was an offer of compromise.  So I wanted the record to reflect that.

To clarify Your Honor, example three, four and five you'd like defendants to submit those to you in camera for your review?

JUDGE HOCHBERG:  I'll take a look at them in camera to see if I find a basis on which to order them to be unredacted.  Those are exemplars that will apply to the entire group.

Mr. Myers, be clear that's what I'm asking for.  These were bell weather examples that will be applied to the entire group.  They're your best examples of why you claim that the redacted information would be relevant and responsive based on my ruling, and the stipulation that was entered. So tabs three, four and five are your exemplars.

MR. MYERS:  Well, if I may, Your Honor.  It was a significant production.  These were examples.  If Your Honor would permit us to --

JUDGE HOCHBERG:   Mr. Myers, let me be clear. These are going to be your exemplars, okay?

MR. MYERS:  Okay.

Page 92

JUDGE HOCHBERG:  If you want to pick three other exemplars, pick them.  You pick three exemplars.  I will look at your three exemplars and make a decision on this.

It's a bit of a stretch, but I'm willing to look at them to take a look and see whether I think this information should be unredacted or not, and I will use my best judgment on that.  So that is my answer.

Those exemplars you already picked Mr. Myers, correct:  Three, four and five.  If you haven't, say the other one.  Say it.  You must know, you looked at them.

I'm not giving you more time.  We don't have time and say I'm going to go back and look. This is today, this is your chance.

MR. MYERS:  I'm not prepared at this moment to cite another exhibit.  So we will rely on those tabs.

JUDGE HOCHBERG:  Yes.  Three, four and five are the best ones you picked to attach.  So I'm assuming they're your best ones.  I will take a look at them and I will ask Ms. Andrews to get them to me by close of business today in an unredacted format.

Page 93

If you are concerned about emailing them I'm sure that you and Miss Cohen can work out a password protected way if they are that confidential to get them to me.

MS. ANDREWS:  Yes, I will coordinate with Ms. Cohen.

JUDGE HOCHBERG:  I will need hard copies of them.  If you are concerned about the e-mail situation or if they are extremely long.  I understand that -- I often get documents in sharing file attachments, but it's easier not to, but I could get them.  That way it requires the involvement of Danella Thomas my administrator.  She and I share another whole file system on a share drive that is confidential for all of my arbitrations and things.   I could have her do that but if it's possible to work it out with Ms. Cohen. If you want to send me a hard copy.  I don't know how sensitive they are.  I'm just saying get them to me in the safest manner your client deems appropriate.  You know how to get them to me by Fed Ex.

MR. ROBBINS:  Sure.  There is one more thing before we move from this topic.  Mr. Myers did an

Page 94

admirable job summarizing the bases for why we believe this information is discoverable.  I would like to note we have a claim for tortious interference, and I would encourage Your Honor, it is a very long and detailed complaint, second amended complaint.  That's the operative complaint. This is an active claim in the case, they never moved to dismiss it.

This is the type of stuff we need in order to prove our case.  So I think I want to refer your honor to those allegations.

JUDGE HOCHBERG:  Have you sent me that?  I don't think you sent me that.

MR. ROBBINS:  It was part of the original package.  We're more than happy to send you the second amended complaint.  It's easy enough.  What I was referring to is prior to the initial conference way back when, the parties collectively provided your honor with a set, a smaller set of the important pleadings.  But having said that, for ease of reference we are more than happy right after this hearing to send you a copy of the complaint.

JUDGE HOCHBERG:  If you want to excerpt out the tortious interference claim and send that in an

email to me, attachment, that's fine.

So you're saying that your tortious interference claim requires you to know the reserve information for all of Zurich's other claims that might be in these documents?

MR. ROBBINS: The problem is these are redactions. Mr. Myers can talk more specifically about the nature of the redactions. Without belaboring the point the tortious interference point claims that Zurich intentionally interfered with the contractural relationship between Steward and its company who issued the policy, American Guarantee. Zurich is the parent of American Guarantee, and Zurich is the same person from Zurich and AGLIC were designated to adjust both claims.

So the actions of the adjustor, Mr. Graves, relates to MPT's claim was having an affect, we intend to prove in the manner he was adjusting the Steward claim, and they were interrelated, and it's their answers to interrogatories that Mr. Myers put in the letter to set forth concedes that this person adjusted both claims jointly and concurrently. They were effectively consolidated, maybe not by file number but by actions. That is the nature of the

Page 96

tortious interference thing.

JUDGE HOCHBERG:  What forms a good faith basis to say they tortiously did?

MR. ROBBINS:  Because the interactions, this was actually provided -- there was details.  This was provided in connection with I think it was discovery master order number nine.  But we went into detail about the work that MPT did, the fact that for instance --

JUDGE HOCHBERG:  The work that MPT did?

MR. ROBBINS:  The work Zurich did.

JUDGE HOCHBERG:  Several times people are using the wrong words.  I need to know exactly what it is you're alleging.

MR. ROBBINS:  Your question is the reason why I brought up the issue of the complaint.  The complaint sets forth in detail all of the bases for which -- Mr. Myers already said that.  If Zurich is slow rolling its claim with MPT and knowingly not paying MPT enough money to rebuild the hospital, which MPT has under oath said contributed to delays in construction, that had an impact on Steward.

They were no longer able to -- they can't operate this hospital until it's built.  And so

Page 97

there is a direct correlation, and there are internal e-mails acknowledging this correlation.

We attached one to our prior briefing and if your honor would like it's a single letter from Mr. Graves, two pages where he notes the correlation between the two, and the impact that one claim adjustment is having.

JUDGE HOCHBERG:  Again, from Graves to who?

MR. ROBBINS:  In that case, it was either MPT or Steward.  It was to the policy holders saying listen, you guys want to conduct all of this testing and do all this work.  Well, the longer that takes, that is going to have a direct impact on how we adjust the claim, the other claim.

I'm paraphrasing, of course.  That's not a direct quote.  This is the type of thing we can provide to you between the complaint.

JUDGE HOCHBERG:  I understand what you're saying.  I just don't understand I guess somehow the MPT case is long settled, right?

MR. ROBBINS:  It settled within a month after Steward exited Massachusetts.  They forked over $125,000,000.  They had previously paid 30.  The day or month after Steward left and was out of the

Page 98

picture they suddenly came up with $130,000,000 or so to pay off MPT.

And it's that type of joint relationship that we are going to expose to the jury. It's that inter-relationship.

JUDGE HOCHBERG: So you are essentially saying that Zurich withheld settlement of the claim in order to get Steward to leave Massachusetts?

MR. ROBBINS: No. They were fully aware of Steward's precarious position financially. They slow walked this on purpose.

JUDGE HOCHBERG: What is your basis -- do you have other documents to suggest slow walking?

MR. ROBBINS: Yes. The questions you are asking, and I apologize. Mr. Myers can correct me, the documents that we are relying on at least now to make out this argument were attached and were the subject matter of our submission for discovery order, Mr. Myers, was it number nine?

MR. MYERS: Yes.

MR. ROBBINS: If Your Honor would be so inclined to just review that submission you will see it is all laid out there in the three page letter brief with attachments.

Page 99

The attachments include not our summaries, but AGLIC's own words, Zurich's own words.

JUDGE HOCHBERG: So now what you're saying is that where we are now after that there is a order and there's a stip between the parties. You're now saying that Ms. Andrews has violated the stip. How?

MR. ROBBINS: If we look at the stipulation and not to --

JUDGE HOCHBERG: Ms. Andrew's client.

MR. ROBBINS: I understood as much. The stipulation is clear. First, they had already reviewed the documents, and it only allowed them to conduct redactions or withhold documents on the basis of privilege.

There was no window or no opening for them to make a relevance determination. That was the whole point of our motion to compel. So that it is relevant. By the way, I heard, well, it was a compromise. The last time I checked it's not an excuse not to comply with a stipulation or order because this was the result of a compromise. It is a court order, and I know that Your Honor indicated you're going to look at it. I want to give you the benefit of that Mr. Myers read from it.

Page 100

You'll see in our letter brief where we quote it in violation of the order because this was a long drawn out process where we put aside the issue of relevance only to find out just recently that they have actually redacted on the basis of relevance.  That is the frustration here.

JUDGE HOCHBERG:  How recently did you just find this out?

MR. ROBBINS:  Keep in mind when they redact things there's no log to tell us why it's redacted. We assume it's privileged, and we find out -- I believe Mr. Myers can confirm at the January 7 meet and confer that in fact many of these redactions were based on relevance.

JUDGE HOCHBERG:  So you are saying the stip specifically says relevant and responsive is the category, right?

MR. ROBBINS:  Right.

JUDGE HOCHBERG:  So I ordered that regarding Steward.  And I certainly put in some order, and I will reread my own order regarding MPT.

Ms. Andrews, he's saying there was an agreement never to do a redaction based on relevance, is that correct?

MS. ANDREWS:  No, Your Honor.  As I said, if you go back to look, Mr. Robbins is really conflating multiple issues and multiple time frames. I understand why, but I don't think it's an accurate representation.

The motion to compel that started this issue that was filed in June related to the Steward's reserves and reinsurance.  That's the information we agreed to provide to them.  We have provided that. They have that information.

At no point did we ever agree nor would we have agreed to provide reserves and redaction information for other of Steward's interests, including, but not limited to MPT.

That is what they're now seeking.  As for the alleged relevance --

JUDGE HOCHBERG:  You said MPT is a Steward reserve?

MS. ANDREWS:  Sorry.

JUDGE HOCHBERG:  No one is giving me a clear record here.  I have it on both sides.

MS. ANDREWS:  I apologize.  Let me start over. We produced reserves and reinsurance information as relates to the Steward's claim.

We did not agree at any time, nor would we, to have produced reserve and reinsurance information for another Zurich insured and that includes, but is not limited to MPT.

JUDGE HOCHBERG:  What did I rule with respect to MPT that the plaintiffs are relying on?

MS. ANDREWS:  That was an issue that they raised subsequent to this stipulation.  They raised it subsequent to the production of the documents that we are talking about now.

At that time they were seeking information relating to the settlement between Zurich and MPT of MPT's claim under its separate policy.  We resisted production of that.

We objected in the entirety to the production of anything relating to the MPT claim as not relevant, but we particularly objected to the production of confidential settlement information.

Your Honor agreed and did not order the disclosure of that.  The plaintiff filed an objection to your order, and that was ruled upon by Magistrate Kelly recently. I don't have the docket number, but she upheld your order and also held the Zurich MPT settlement was not relevant to Steward's

Page 103

claim and did not order production of that information.

JUDGE HOCHBERG:  Did anybody send me that?  I didn't know any of that happened.  I'm not on the docket sheet.  I'm not asking to be.  Lord knows I have an in box that has hundreds of things in it every single day.

MR. ROBBINS:  We'll get that over to you.

JUDGE HOCHBERG:  I want to get the magistrate judge's ruling and the objection to my ruling so that I could read and understand what she ruled on.

MR. ROBBINS:  The important piece Ms. Andrews omitted is the following.  There was a bigger part of your ruling.

Your ruling was that it was fair game because they produced documents about MPT's adjustment of the claim through August 20 something, 2023.  And Mr. Myer's point is that all of this reserve talk is prior to that date.

The issue that we brought to Your Honor is why are we stopping in August of 2023 if there's adjustment activity after August of 2023.  And you said okay, plaintiff's counsel, I'm drawing a line there.  But you can revisit this with me after you

Page 104

take Zurich's deposition.  And that is what we intend to do.

If it turns out there was adjustment activity after that date, we'll revisit it.  The more important point is that everyone has agreed --

JUDGE HOCHBERG:  You're not revisiting it again.  This is your revisit.

MR. ROBBINS:  Your order.

JUDGE HOCHBERG:  This is after Zurich.  You've had Zurich's deposition.

MR. ROBBINS:  No, we haven't.

JUDGE HOCHBERG:  I thought it occurred.

MR. ROBBINS:  It has not.  I'm glad I was able to clarify that.  So this issue is discoverable. You have granted us the right to sit down with Zurich and ask Zurich, in this case, Mr. Ruslov (phonetic), the designee, about their claims adjustment activity and can ask were there any after this deadline date that Your Honor has imposed.

So that we have the right to come back if there was such activity.  This all comes back to the purpose of this motion.  The reserves tend to prove how people adjust claims.  They help dictate that. So the reserves are an important factor in

Page 105

establishing the conduct, the intent, the state of mind if you will of the adjustors, who are the key witnesses in this case.

And so this period of time you have already determined is discoverable through August of 2023. We are not asking for anything beyond that date.

JUDGE HOCHBERG:  Which portion of my order are you relying on?  First of all, which order number and which portion so I could go check what I wrote?

MR. ROBBINS:  I believe it's discovery order number nine.  Mr. Myers, is that correct?

MR. MYERS:  Yes.

MR. ROBBINS:  I think it might be a single sentence that made that ruling as relates to the date.

And why is that the case, because Ms. Andrews, she will concede they agreed to produce MPT claims adjustment activity through that date. That is not an issue.  This is highly discoverable stuff.  The question of how MPT handled the claim is relevant to our tortious interference and bad faith claim which they never moved to dismiss.

We need this motion in order to prevail at summary judgment.

Page 106

JUDGE HOCHBERG:  You have to have a basis for your allegations.

MR. ROBBINS:   That's where I was referring, Your Honor, to the complaint as well and to the pleadings in support of your order number nine.

Go back and look at our pleadings in support of order number nine.

JUDGE HOCHBERG:  I'm not doing that.  I am looking at my ruling.  I'm not going back and revisiting pleadings.

You canceled two hearing dates.  Three hearing dates have been canceled since those rulings.  I can't keep going backwards.  I have to have clear, timely production of issues to me and that has not happened.

So now you're arguing all sort of things, but nothing was done on time.  Nothing.

MR. ROBBINS:  All I'm saying is --

JUDGE HOCHBERG:  Would you agree nothing was done on time, yes or no?

MR. ROBBINS:  Respectfully I think that there's a lot going on behind the scenes here Your Honor that justifiably, so you are not aware of.  The people on this conference call I don't --

Page 107

JUDGE HOCHBERG:  Mr. Robbins, you are a wonderful advocate, but you're not answering a yes or no answer.  So I am going to move on.

MR. ROBBINS:  I said respectfully I disagree.

JUDGE HOCHBERG:  Your answer is no, everything was timely submitted to me?

MR. ROBBINS:  I can't speak for Ms. Andrews. I could speak for my people.

JUDGE HOCHBERG:  The plaintiff's timely provided the information and the briefs and everything I needed?

MR. ROBBINS:  Yes.

JUDGE HOCHBERG:  So let me tell you --

MR. ROBBINS:  If I could please --

JUDGE HOCHBERG:  One of us talks at a time. You were told to answer yes or no.  You were told at the outset I want a concise answer to my questions. I ask you a yes or no question.

You're a wonderful advocate.  You do a great job for your clients, but it wasn't a short yes or no answer.  That is the reason I am expressing annoyance.  We don't have endless time.  We are already practically at the time limit of this hearing, and I have not gotten into several of the

Page 108

red fern issues.

You're saying yes, the plaintiffs timely produced the filings that I needed.

MR. ROBBINS:  Correct. You have already ruled on this.

JUDGE HOCHBERG:  I'm talking about open issues now.  I got no brief on time on the issue that you are raising now.

MR. ROBBINS:  Yes, in that case if the standard is when did we raise these issues collectively as parties and if the standard is there was an issue as of January 13 that we could have raised a day or two earlier then yes, every single thing on this red fern chart is untimely.  If that is the standard, then that's the case.

JUDGE HOCHBERG:  You don't even know the standard.  The standard was an order saying yes, you have issues.  I will grant you two hearing dates, one in December which I gave you a date for and one on January 16 that I gave you a date for.  And the briefs will be submitted ten days before the hearing date so that I have all of the information I need for that hearing on that date. I got nothing.

The date wasn't what you mentioned.  January 6

was the date the briefs were to arrive.  I got nothing about this issue.

MR. ROBBINS:  Prior to January 6 we informed you Your Honor, that we were having a meet and confer on the 7th.  Your response was okay, have your meet and confer.  If you can submit everything to me by the 8th, we will go forward.  We had the meet and confer.  And I'm not going to speak to -- I want to say if I could get this on the record in under 30 seconds.

All I'm referring to when I refer back to these documents is you had asked me earlier what is the good faith basis for the suggestion we are making, and I said for ease of reference it is everything we submitted in connection with order number nine.

And I thought Your Honor indicated that Your Honor was pleased to hear that so Your Honor could go back and see that and maybe to appreciate why all of this is discoverable.  That's the only reason why I referred back to those pleadings.

As far as this motion that is currently before you we learned on January 7 at the meet and confer that they had violated your order which does

not draw a distinction between MPT and Steward.

It says they will produce all responsive documents, responsive without redactions, without withholding except for attorney client or attorney work product or any other applicable privilege.

They had every opportunity to put in that stipulation and except for anything relating to MPT because if that was their position we would have come back to Your Honor.  We wouldn't have had a stipulation.  That is it.

MS. ANDREWS:  Your Honor if I may, we produced as I said these documents in October.  The first time that plaintiff raised a question about those redactions was in a deficiency letter we received from Mr. Gildea in early January.

We promptly met and conferred about it.  They have had those documents for at least two months before we received a letter asking for clarification about the redactions.  So we would have been happy to provide that information.  And we did as soon as we were asked.

But it is patently untrue to say they timely raised that issue with us and that they only learned about it on January 7.  That is because that was the

Page 111

first time they asked.

JUDGE HOCHBERG:  No more.  I will say for the record that by January 7 those briefs were already overdue, and nobody had even asked for an extension. The briefing due date was January 6, ten days before the January 16th hearing, and nobody submitted a thing.

Ms. Andrews submitted a response saying we're ready, but the plaintiffs are not.  And I waited until the 7th, and I still got nothing from the plaintiff.  So I then generously said how about the 8th, and I still got nothing.

These issues are coming too disorganized and too late, and the answer to my question was that it was not timely, Mr. Robbins.  I'm not saying I won't look at it but I don't need a half hour or 15 minute spiel when I ask you a yes or no question and that will go from now on through the end of my involvement with this case.

I understand you are a ferocious advocate and I admire that, but I have a job to do.  And I will do that job and laying down a speech quote for the record unquote is not one that I will agree with.  I am not agreeing to the accuracy.

Page 112

You're contending it.  Ms. Andrews is saying not, and I'm not involved in that.  I am trying on a timely basis to get this case ready for trial and it has not been handled fast enough to do that for the last several months, and that is why I got terse in my e-mails to send a message loud and clear you're not doing the same old same old here.  It's resulting in delays.

If you had these documents since October 13, where was Mr. Gildea, like raising it in January a day after the briefs were due on any issue.

MR. ROBBINS:  We assumed they were attorney client privilege redactions because that is what your orders was.  We didn't know they violated the order.

JUDGE HOCHBERG:  You could have asked about it a lot sooner.

MR. ROBBINS:  Why would I ask counsel --

JUDGE HOCHBERG:  Let's move on.

MR. ROBBINS:  Why would I ask counsel if they violated an order?

JUDGE HOCHBERG:  We are already at 10:57.  I am done with issue one.  I understand.  I want

Page 113

Ms. Andrews, when you're sending me this stuff I want a copy without digging in the past for months. I need whatever I allegedly ruled -- not allegedly. Strike allegedly.

I need to see the rulings that the plaintiff is relying on and the rulings that you are relying on.  I will compare them all, and I will decide this issue, and it will not a long reasoned decisions. There is not time for that.

And henceforth Mr. Gildea, no more waiting from October to January to ask a question.  If you have a question ask it within seven days.  This case is not going to be run this way any longer.  I can rule on the papers, on the manuals two and three.

I am ruling on the papers on those that you have --

MS. DUNN: May I make an offer of proof?

JUDGE HOCHBERG:  An offer of proof whether -- what do you want to offer?

MR. ROBBINS:  I think our points are on there, Attorney Dunn.

JUDGE HOCHBERG:  What would you like to say is your offer of proof?

MS. DUNN:  Briefly, the claims manuals are

Page 114

critically relevant to the bad faith claims.  It's Count V of our second amended complaint, which we will send to your honor after the hearing.

The allegations involve claim investigation and the handling of MPT's claims as well articulated by Mr. Myers and Mr. Robbins.  Those manuals, if they exist, which we have asked the defendants to confirm that they do exist are critically relevant and we need them to prepare effectively for deposition and set for trial.

JUDGE HOCHBERG:  How can you say something is critically relevant if you don't even know if it exists?

In order to have a good faith basis for a claim you have to have a fact basis that there is such a manual and that at least it exists and addresses this issue.

MS. DUNN:  We do have a good faith basis to believe it exists.

JUDGE HOCHBERG:  Based on?

MS. DUNN:  That's based on the references in the best practices manual, which is attached to our submission to you.  It's found at tab six, and it's tab six is the best practices manual that was

produced that references multiple other policies that were not produced to us that are relied on by the adjustors.

JUDGE HOCHBERG:  What are the other policies it references?

MS. DUNN:  It references the Zurich GI claims policy, the Zurich GI claims policy guidelines, IPZ best practices and marine general salvage claims and privacy claims.

JUDGE HOCHBERG:  What is IPC?

MS. ANDREWS:  It's IPZ, as in Zurich.  If I can, the first, the Zurich GI claims policy and the GI claims policy guidelines are no longer in effect. They were not in effect at the relevant time period.

We did our investigation.  Those documents do not apply here.  They would not have been relied upon or used by the claims handling professional. IPZ stands for international, and it applies to international claims.

Again, that is not applicable here.  I think the other thing that is referenced in there is marine in general, average and salvage -- some sort of marine claims.  Again, this is not a marine policy.  Just for the record and for clarity, what

Page 116

plaintiffs asked for in discovery were the claims handling materials that have would been relied upon by the claim handling professional in this case, Mr. Graves.

The documents that are responsive to that have been produced.  So the best practices manual they included as tab six of their submission we have done an investigation, and they have those materials that would have been available to him.

JUDGE HOCHBERG:  The best practices manual is being produced?

MS. ANDREWS:  It's been produced.  They have it.  They include it as tab 67 in their submission.

We concluded our investigation based on their request for additional things and have determined there are not additional documents.  In terms of manuals relied upon or utilized by a claims professional's handling of a claim of this nature, they have that document.

And they have all versions of it that were in effect during the relevant time period.

JUDGE HOCHBERG:  Anything further from the plaintiff on topic 4?

MS. ANDREWS:  That was topic three.

Page 117

JUDGE HOCHBERG:  Sorry. Anything further on topic three?

MR. ROBBINS:  One thing.  I want to make sure we are clear or the record is clear to make sure I understood Ms. Andrews' representation.

We have requested materials, specific materials whether or not they were relied on by this specific adjustor and whether they exist.  I would request your honor to ask Ms. Andrews whether those documents exit, whether or not they were relied on or not.

JUDGE HOCHBERG:  What documents are you referring to?

MR. ROBBINS:  If we look at our letter  --

JUDGE HOCHBERG:  No.  Ms. Andrews sounded like she was about to answer the question.  Let's get the answer first and then we will see if we need to dig into the letter brief.

MS. ANDREWS:  To the extent that they have raised specific items that were referenced in the best practices manual, we investigated those.  The other categories of information are -- I mean they're just so broad.  They say things like conflicts of interest policy, health care sector

Page 118

supplements.

I don't know what they're referring to, but in terms of as I understand the ask based upon the meet and confer they want to know when a Zurich claims handling professional is handling a claim of this nature what information is available to them to advise them on how to handle the claim.  That is the best practices manual.  We have produced that document.  They have the information that they are seeking.

JUDGE HOCHBERG:  Does that answer your question?

MR. ROBBINS:  No, it doesn't because what we asked for specifically are policies, manuals that deal specifically with large loss major cases, specifically with health care and conflict of interest adjustment policies.

We know that we have cited to in our brief the fact that those apparently do exist.  What I'm asking counsel, we don't want a fight if they don't exist.  The question, the threshold question simply is what we are requesting, large loss, health care, conflicts of interest and joint adjustment.

We heard your honor talk about the joint

Page 119

adjustment that Mr. Graves did and the conflict of interest that can arise.  Do those internal policies exist.  If the answer is no, then we are done.  That is all we have been waiting on is confirmation as to whether those things exist.

MS. ANDREWS:  I think I answered that question.

JUDGE HOCHBERG:  Pardon.

MS. ANDREWS:  I believe I've answered that question.

JUDGE HOCHBERG:  Mr. Robbins, is there anything about her answer that you didn't understand?

MR. ROBBINS:  She said what's available to people.

JUDGE HOCHBERG:  That is what's available. Mr. Robbins, she is not saying that he actually or she actually relied on it.  She's saying would have been available, whether he chose to rely on it or not is how I construed her word available in her prior answer.

MR. ROBBINS:  We will take that representation. I just hope at a deposition --

JUDGE HOCHBERG:  Ms. Andrews, is that correct?

MS. ANDREWS:  Yes, Your Honor.  I'm not aware of a conflict of interest manual along the lines

Page 120

that they have been discussing. Zurich supposedly the company has what all public traded companies should have, but that is not what they're asking. The way they word it is so broad.

What plaintiffs were asking for here we have done our due diligence and provided them with the documents that would be used in this case or a similar case to adjudicate this kind of claim and provide guidance to the claim handling professional.

JUDGE HOCHBERG: All right. Are there any other questions on this topic?

MR. ROBBINS: I would ask are there any protocols or manuals relating to the health care sector?

JUDGE HOCHBERG: That wouldn't be a property loss claim. You're talking about a damaged equipment claim?

MR. ROBBINS: Yes, that is part of it, absolutely.

JUDGE HOCHBERG: Would a damaged equipment claim be in a health care manual?

MS. ANDREWS: We don't have anything that is a health care loss protocol.

MR. ROBBINS: A large loss or major case

Page 121

manuals, we've been informed by our investigation that most insurance companies have these and that's the basis for them.

JUDGE HOCHBERG:  Understood.  I'm not saying I know that, but I understand the basis for it.  I assume that you had a consultant somewhere tell you to ask for these things.

So Ms. Andrews, the request -- you have looked at there's no separate set of policies regarding losses above a certain dollar threshold, a large loss so to speak?

MS. ANDREWS:  Not that I'm aware of.

JUDGE HOCHBERG:  Has any policy regarding joint adjustment of claims been supplied if there's a policy on that?

MS. ANDREWS:  Again, I am not aware of a policy along those lines.  I'm not even sure what they're asking for.  But again, to the extent they're trying to understand how, as they say, it's somebody like Mr. Graves wearing two hats in this situation and now he's supposed to conduct it, that is the best practices manual we provided them.

JUDGE HOCHBERG:  We are going to move on now to, it looks like we've got topic four which is the

Page 122

30b6 deposition notices.  This is the one with 41 topics.  I'm not sure how anyone can get through 41 topics in seven hours.

What are the current status of the negotiations about 30b6 topics in topic number four on the red fern?

MR. ROBBINS:  My understanding is the parties are going to be meeting expeditiously to work through those issues.

JUDGE HOCHBERG:  This is the February 4th deadline, the same February 4th deadline.  I don't want a brief.  I want how far you've gotten.  If you haven't settled it, I will decide it based on what I have already been submitted.

I'm not asking for full submissions of any arguments.  Just if you resolved it, the extent of the resolution and what remains undecided.  I will decide on the basis of the red fern chart that I have and also what's the difference between the original 30b6 notices and the amended ones?

MR. ROBBINS:  They were cut in about half. They had 80 topics.  They were around 73, 74, and we used your guidance and cut them down, and we served them and complied with the spirit of what your honor

Page 123

ruled and we are going to endeavor to reach a resolution of counsel over it.

JUDGE HOCHBERG: Good. Everybody work on it. Include how many hours this deposition is going to be. The challenge, of course, is that in a seven hour deposition you know that the person -- and this applies to 30b6 depositions going either way. I don't know if the defendants have anything, but it would apply to them as well.

You know what you're going to be asking questions about. The problem is the burden of the deponent is preparing for a whole range of topics that may never even be reached. This is a matter of common courtesy to say seriously, this topic I'll have five minutes on because otherwise I'm going to get a complaint that somebody wasn't prepared to answer question 38 of 41 topics.

There is nothing clearly being requested here. I don't like reservations of rights. If there's an issue don't reserve your rights, bring them to the table. I mean they're fine to have reservations of rights earlier in a case. This is not early in a case.

So if you got an issue, raise it.

Page 124

February 4 is your day.  So bring them in a joint red fern chart.  I don't know what they are but bring them in. I'm sure I'm going to have them bilaterally because Ms. Andrews, I understand you just got a big slew of documents as well.

MS. ANDREWS:  Correct.

JUDGE HOCHBERG:  The reason for speed about it which is paramount because you want the document production to be done ideally as the depositions are beginning.

So I'm looking at number seven.  I don't know what the request is.  There's no place holder reservation of rights here.  But it sounds like there's no issue here that all the third parties for whom subpoenaed documents are sought have got dates and their document production is done.  So I don't have to dig into this, right?  That is what this seems to be telling me.  I don't have any request to do anything.

MR. LAUNER:  That's correct.

JUDGE HOCHBERG:  Good.

MR. LAUNER:  If there is anything we'll raise it by February 4 with everything else.  But I don't believe there is.

Page 125

JUDGE HOCHBERG:  Let's hope not.

MR. LAUNER:  Eight and nine easy.  They have been resolved.

JUDGE HOCHBERG:  My question is all good with this question?  Yes, that sounds like that's a good answer.

Waiting from December 10 to January 7 for a meet and confer to happen, that's too slow.  Those kinds of things, it's one thing in the first year of a case.  It's another thing entirely when you're heading to trial.

MR. LAUNER:  So we had meet and confers between that period of time.  We did not wait.

JUDGE HOCHBERG:  So my guess is that this issue was known. It's one of the many issues on why you asked for a December hearing.  They were known issues.   They could have been raised.

I'm not going to keep playing the same tune over and over again.  But I can't be asked to turn on a dime.  And I've got to get these things ruled on in order for the case to proceed on time.  So it can't be months and months of delay waiting to present an issue to me.

I know you're working with each other.  I

assume so and I'm glad to accept you but if you are not raising these issues when you have three hearing dates during the fall, December and January that were canceled.  That is why I am using an tone of urgency that I don't normally use.  So defendant agrees -- according to the plaintiff defendants agree to investigate whether there were any communications.

What did you find, Ms. Andrews, on topic number nine, intercompany service agreements?

MS. ANDREWS:  There are not communications that relate to this case about the intercompany servicing agreement.

JUDGE HOCHBERG:  Is that satisfactory for the end of number nine?  Who has number nine?  I don't have anybody.

MR. GILDEA:  It's satisfactory just like this.

JUDGE HOCHBERG:  Now let's go to defendants number one.  This is the one I was talking about earlier.  This is what I write in column one major potential delay issue.  I heard at length from plaintiffs about this at the beginning. Ms. Andrews, now is your chance.

MS. ANDREWS:  I think, and I said this to

Mr. Launer, I believe the parties having been talking past each other on this one.  Also I thought Mr. Gildea's comments during the Shawmut portion were interesting because the reason they want to depose Shawmut is with respect to the schedule.  Consigli developed the multiple schedules that plaintiff has relied upon for purposes of their business interruption loss claim.

So from our perspective, Consigli is a critical witness.  We subpoenaed them in February of last year.  We received document production over the summer, another one in November.  A privilege log in mid November.  When we received their privilege log it became apparent that significant portions of Consigli's documents relating to the schedules that they prepared that are at issue and that plaintiff has relied upon were being withheld on a claim of privilege.

We immediately sent deficiency letters to both Consigli as well as Steward.  Consigli was not available to meet and confer with us until early January.  We held that I believe on January 6.  On that January 6 meet confer we learned for the first time Your Honor that in March of last year

Page 128

Mr. Gildea sent a letter to Mr. Consigli, which we were not copied on and had not received directing them to object to defendant's subpoena.

I'm going to read from the letter. It states Consigli is not a testifying expert for Steward, and Steward's position is that the issue is impermissible discovery under Federal Rules of Civil Procedure 26b4d.

So I am frankly flabbergasted and confused by the repeated statements that have been made by plaintiff in our meet confers and to you today that they are not withholding anything on the basis of 26b4d because they instructed Consigli and apparently as we learned yesterday one other consultant to do exactly that.

During our meet confers with Consigli they informed us that they were withholding entire portions of their case files on that basis. More broadly, let me start with it's clear that the privilege was invoked which is how we got here. More broadly as we said in our submission, use of the nontestifying consulting expert role in this situation is improper. Consiglia, Array, BR plus A who were discussed by Mr. Launer earlier as their

Page 129

nontestifying consulting experts, each of them were brought on by Steward in the wake of the loss in 2020 to conduct work relating to Steward's adjudication of its claim.

They are percipient first party fact witnesses.  They maintain and possess relevant factual information related to the claim handling and we are entitled to discovery on that basis. Nevertheless in May of 2022, these three and maybe others, I'm not sure, were retained by Foley Hoag, who is counsel for MPT.

JUDGE HOCHBERG:  May of what year?

MS. ANDREWS:  2022, as nontestifying consulting experts.  In looking at the consulting expert's letter that was produced and the underlying proposal from Consigli that is attached to that it's clear that the work that they were retained to do purportedly as nontestifying consulting experts therefore immune from discovery is identical to the work that they were performing prior to that time. The proposal in 2022 for Consigli, for example, states that they will be preparing an as was and code compliant scope and schedule.  We have compared that to the reports that Consigli prepared in

Page 130

September of 2020 when they were first brought on, and it states they're doing the exact same work.

So just as an initial matter I have no problem with nontestifying consulting experts. That's certainly a proper thing for an attorney to do. The issue we have here is that there was clearly a concerted effort to take percipient fact witnesses, put them under a guise nontestifying consulting expert privilege and then have the work that they were already doing under that scope of privilege in order to immunize it from discovery.

And we have laid that out in our papers. The second point, even if that were proper, we don't concede that to be true, but even if it were they have waived it. The schedules that were prepared by Consigli, the as was and the code compliance schedules have been produced by plaintiff. They have been relied upon by plaintiff.

The documents that we have received are dated from 2023. They stated that they are from based on facts from 2021. So they have already turned over to us information that was prepared by Consigli subsequent to their purported retention and relied upon it. We are entitled now to discovery about how

Page 131

those schedules were prepared.

We know that we don't have all of the information on that. Just as one data point, we do not have from either plaintiff or Consigli a single communication between Steward and Consigli that post dates May of 2022. It's impossible that there are not communications given the amount of work that was done and Consigli's extensive privilege log indicates that they withheld.

And they told us on the phone that they withheld documents on the basis of an invocation of privilege by Steward. So it's unfathomable to me that a subpoena that was issued in February or March of last year, we are sitting in late January fighting over what we're going to get in response, and we just learned two weeks ago the scope of Steward's invocation of this privilege. And we still do not have their complete file.

So putting that all aside Your Honor I think I the broader question and the one that you posed to me at the outset of this discussion is what is our request. My concern is throughout the undeniable prejudice to defendants that we do not have this information at this juncture, and we're in the

Page 132

process of trying to prepare for the Consigli deposition as well as 30b6 of Steward's representatives, plaintiff has said while we are reviewing their documents we've turned them over to you. That should have happened ages ago.

JUDGE HOCHBERG: I agree with that. The timing here is terrible. When is the Consigli deposition?

MS. ANDREWS: It was just set Your Honor.

MR. LAUNER: We don't represent Consigli. They just gave us the documents, and we reviewed them in a week.

JUDGE HOCHBERG: I understand you don't represent Consigli, but Mr. Gildea was writing to them. Mr. Gildea, you're on the hot seat on this one.

MR. GILDEA: What Ms. Andrews did not tell you is that the letter says Steward requests the opportunity to review and assess any documents.

JUDGE HOCHBERG: When did they turn over the documents to you to review and assess?

MR. GILDEA: Last week.

JUDGE HOCHBERG: So you're saying you first got the Consigli documents last week?

Page 133

MR. GILDEA:  Yes.

MR. LAUNER:  Yes.

JUDGE HOCHBERG:  Any documents after May of 2022 you say you just got them last week?

MR. GILDEA:  We didn't know what documents they had. We tried to work with Consigli to work with this privilege, that is why we asked to look at them.

When we looked at them we had a much different interpretation of what the privilege was versus what Consigli does.

JUDGE HOCHBERG:  Time out.  I'm talking to Mr. Gildea.  So Mr. Gildea, you were the point person with Consigli, correct?

MR. GILDEA:  I believe it was a team effort as always.

JUDGE HOCHBERG:  You write them a letter and is it correct what Ms. Andrews says that in your initial letter to them you tell them that you want to review under the nontestifying consultant witness, the expert rule?  Is that what your letter says?

MR. GILDEA:  Yes.

MS. ANDREWS:  I'm happy to put it on the screen

Page 134

if that will be helpful.  I have it.

MR. GILDEA:  Ms. Andrews identified that there was an engagement letter of May of 2022 for litigation purposes.  That is what the letter is in reference to.

JUDGE HOCHBERG:  Who retained them?

MR. GILDEA:  On behalf of MPT and Steward.

JUDGE HOCHBERG:  So they're retained for not you, for MPT?

MR. GILDEA:  Both parties.

JUDGE HOCHBERG:  Foley was representing Steward as well?

MR. GILDEA:  There was a joint agreement to retain this expert.

JUDGE HOCHBERG:  So that's been produced. You've seen that, Ms. Andrews, this joint agreement?

MS. ANDREWS:  No.  I saw a retention letter between Foley Hoag and Consigli.  And if there was a joint or joint defense agreement or an agreement to jointly retain nontestifying consulting experts, I'm not aware of it.

I haven't seen that.  If it's been produced they could point me to a number.

JUDGE HOCHBERG:  Has it been produced yes or no

Page 135

Mr. Gildea?

MR. GILDEA:  I'm not aware if there is a written agreement.

JUDGE HOCHBERG:  Produce it today.

MR. LAUNER:  May I interject here because there's a few key points.  Mr. Gildea's letter was in March of 2025, nearly a year ago.  It was at the outset of discovery.

It was sent as an abundance of caution.  As Mr. Gildea said we asked them to provide us the documents.  They finally did last week.  As I told you at the outset of this call, we have asserted a claim of privilege over a single document, one.  I don't know what else we can do.  Plaintiff is not doing what we are being accused or alleged to have done.

JUDGE HOCHBERG:  Basically you're withholding only one document you got from Consigli.  Everything else has gone over to Ms. Andrews?

MR. LAUNER:  No.  We wrote them a letter yesterday.  We reviewed them within less than a week.  Your Honor, they gave us the documents last week.  We reviewed them and wrote them a letter.

JUDGE HOCHBERG:  If this is a third party I've

Page 136

been getting third party requests from parties all the time.  If Consigli is being this slow, there is something I don't like about this situation.  It's not sitting well with me.  I have to dig into this one.  This is an important witness.  It's an important entity.  It's not clear to me.  Are they going to testify?

MS. ANDREWS:  Yes.

MR. LAUNER:  They're scheduled for a 30b6.

MS. ANDREWS:  On February 26 they're scheduled for a 30b6.

JUDGE HOCHBERG:  As I understand, we don't know Mr. Launer, what Consigli has not sent over to you based on Mr. Gildea's letter.  Last March wasn't that long ago.  I need to see this letter so I understand what he told them.

Then I need to talk to Consigli to talk about what they have or haven't given to you to review.

MR. LAUNER:  Consigli withheld a single file, the same file that BRA plus held that you already ruled on.  Mr. Consigli called it a file they created for purposes of litigation.  They had 1100 documents.  They gave it to us last week.  We could read our letter to them and we are happy to provide

Page 137

it to you.

JUDGE HOCHBERG:  So the documents that file has been or hasn't been produced?

MR. LAUNER:  If Your Honor wants to order Consigli to do so, I cannot.  Except for one document we are asserting privilege on.

JUDGE HOCHBERG:  Which is what?

MR. LAUNER:  Which is the one document a November 9, 2022 email with Foley Hoag.  That's it. I have to go back to something Your Honor said because it was conflating issues.

When Ms. Andrews said there's been no documents communications produced with Consigli, that is not accurate.  There's been hundreds after May of 2022.  It's just wrong.  There were few if any e-mails in Consigli's file.  All I can tell you is what we produced.  So there's two separate issues.  Plaintiffs produced hundreds of conversation with Consigli after 2022 and hundreds after May of 2022.  We are not doing what they think we're doing.

As I stated we have produced over 9,000 documents with Consigli and withheld 315.

JUDGE HOCHBERG:  Go ahead Ms. Andrews.

Page 138

MS. ANDREWS:  The letter, and we'll send this to you promptly from Mr. Gildea states "Steward instructed Consigli not to produce any  --

JUDGE HOCHBERG:  Why don't you put it up on the screen and obviously that I assume it's not long. So put it on the screen.

MS. ANDREWS:  Are you able to see it?

JUDGE HOCHBERG:  Sort of.

MS. ANDREWS:  It's March 17, 2025 from Mr. Gidea to Mr. Foley, general counsel of Consigli. Here is the body of the letter.

JUDGE HOCHBERG:  So this is concerning.  I need to speak with someone from Consigli.  If you don't have the ability to do it tell me what to order them to do.

MR. LAUNER:  Can I show you what I wrote to Consigli yesterday?

JUDGE HOCHBERG:  No.  I am looking at -- if you scroll down what they were told by Mr. Gildea.  This is a problem.

MR. LAUNER:  It said don't produce anything that is privileged.

JUDGE HOCHBERG:  No, it doesn't.  It goes way beyond that.  It tells them to decide what they

Page 139

think your work product would be.

It tells Consigli that any materials prepared after February of 2021 are protected from disclosure. There was some earlier materials were omitted, also protected. In paragraph two it's invoking 26b4d.

MR. ROBBINS: Before they fire off a production because we don't control Consigli. It's out of an abundance of caution to talk with us before they send out potentially privileged material.

One thing no one mentioned, which is so important to this context. You have already entered an order regarding Consigli. That why we have the documents.

JUDGE HOCHBERG: Listen, I didn't know we had this complication where Consigli is being instructed by Mr. Gildea. And now you're saying that is not correct that you are not -- you're essentially withdrawing that advice to them or that notice to them. A company that gets a notice letter like this is extremely cautiousness.

Did you ever send them a letter saying you are not a nontestifying expert for Steward?

MR. ROBBINS: That is what Mr. Launer was about

Page 140

to read to you.  There are communications.  It is not that months went by without active communication between our office, Mr. Mutch's ofice and Consigli's counsel.  This has been going on for some time.  Mr. Mutch wrote letter after letter after letter to Consigli challenging their assertion of the privilege.  And as we have indicated there is one document that we have asserted the privilege over.  Yes, we are asserting the privilege over one.

So to say there wasn't any would be incorrect.  There was one.  So what we did was we said can you Consigli please send us the documents and finally after your honor entered an order as a result of Mr. Mutch moving to compel Consigli, your honor entered an order.  It was order number three, four, five or six I forget which one.  They then created a privilege log.

They were not even giving Mr. Mutch a privilege log in response to their subpoena.  So you ordered they do a privilege log.  We then saw the privilege log and said oh that's great.  Can you now send us everything that you have now taken the time to finally list out as the documents that you are withholding on the basis of privilege.  They

Page 141

finally got around to sending that to us last week. And in under a week again one of the things they have done, we went through it and this requires a careful document review.

As a result of that some of which by the way have taught my firm that we are producing because they're not in furtherance of my office rendering legal advice in order to demonstrate the careful review that has been undertaken, you will see e-mails or they will with Todd and Weld, a lot of them.

Now we are armed with all of that information, Mr. Launer wrote to Consigli and says thank you for the documents. Thank you for producing them to us. We have reviewed all 1100. There is a single document that we are asserting privilege over. Please produce the other 1099. That is what Mr. Launer was saying is if your honor is going to order us, if you want us to produce those documents we can do that, but they're not our documents. They were Consigli's documents they gave to us for a privilege review.

We are happy to produce those if you want to order us to do so. We didn't want to violate the

Page 142

relationship with Consigli.  They may have other bases that they want to assert to withhold the documents beyond privilege.

JUDGE HOCHBERG:  I'm not hearing anything that says you won't produce them.  So produce them.

MS. ANDREWS:  Consigli produced their privileged log on November 19.  We sent letters within two weeks of that to plaintiff and to Consigli. Consigli's privilege log is 12 pages long with hundreds of documents on it, many of which we could not understand why they were being withheld as privileged.

I talked to Mr. Launer about this issue in December.  There was no mention by them of Mr. Gildea's letter.  I didn't learn about this letter until I was finally able to connect with Consigli's counsel after the holidays, and they said we are withholding documents on instruction by Steward and on the basis of a letter.  We will turn all these over to us.  We don't have any fight in this but for Steward's instructions.

And the next day I received this letter for the first time and last night in response to my question of are there other letters like this,

Page 143

received another letter that they sent.  I still do not have a good sense of which third parties they are instructing to withhold information.  And this like process that Mr. Robbins just described that they have undertaken in the last week and now they're going to produce all of this feels to me like a band aid on a gapping wound.

We've been trying to get this information for months now and have frankly not been provided accurate information about the position plaintiff was taking with respect to the privilege and have been stymied at every turn.  And I am sitting here with their deposition and a promise to produce documents at some point in the future.

Frankly your honor I don't think it's productive to continue to argue the facts of this. I would like to turn to what do we do about this because it is undeniable that we are suffering extreme prejudice on a key issue, which is how long is the period of restoration.

JUDGE HOCHBERG:  I understand.  I find this very very troubling, Mr. Gildea.  Very troubling. At a minimum, if you were withdrawing that instruction you had to do it immediately.

Page 144

It is outrageous that I am hearing now that the instructions that were given to Consigli are not right. Maybe you thought they were at the time, but they changed. No one ever seems to have told them except maybe last week. This is bad. I want from you, Ms. Andrews, a chronology, a time line on this issue of who did what when so I could see what the delay was and to whom it is attributable. I will consider cost shifting on this issue at a minimum.

MR. LAUNER: There are some things that need to be corrected because those are not the facts.

JUDGE HOCHBERG: You can correct in her time line if you want to send me your amended time line or add to hers, send it to me in Word, and you could add to it if you wish. But this letter from Mr. Gildea is different from what I'm hearing now.

Consigli has now produced to you as I understand it every document that they have and you're saying you are asserting a privilege.

MR. LAUNER: No. The documents they withheld, the file they withheld, they gave us last week. We reviewed them and wrote them a letter. I'm happy to share my screen which clearly sets forth our position on privilege, which is identical to the one

Page 145

I wrote to you on January 6.

JUDGE HOCHBERG:  Mr. Launer, last week isn't good enough to overcome the problem that your firm has created by Mr. Gildea's letter.

MR. ROBBINS:  What if we didn't write the letter?  If we didn't write the letter, privileged documents would have been produced by Consigli.  We had to inform them of the privilege.  The consequences of not writing to them are drastic.  It would cause a major -- having to pull back.  We don't know what they have.  We have no idea.

I think what's getting lost in this we cannot physically go to Consigli and steal what they have to review it.  It takes them giving them to us to review it.  It took until last week to do that.

JUDGE HOCHBERG:  Why didn't you ask me for an order to order them?  I've done orders before.  I would do one for them.  They would have an order that you could bring to the judge if they objected or they could come to me if they objected. I could order them like with the other third parties. Nobody brought this to me from your firm.

More importantly and significantly from the candor issue, that is a timing issue.  As I see it

Page 146

right now, there was a failure on someone from your firm to say help, we can't get the Consigli documents and we want them to turn over the ones we are not claiming privilege over.  I didn't get that. Months and months went by.

That is issue number one, to timely bring issues to me so I could order a response to them. Order compliance with what I believe should happen and most importantly get the information to the party that needs to take the deposition of Consigli in time to prepare for that.

None of that happened. This timing issue is an ambush.  Secondly Mr. Gildea, did a retraction letter ever come back to them saying don't do this. Mr. Gildea, did you ever send one?

MR. GILDEA:  No, your honor.

JUDGE HOCHBERG:  Why would you send one because you would be saying we're no longer calling you. You're no longer for us as an expert, non-testifying expert.  We withdraw that request.

MR. ROBBINS:  But we have never withdrawn that question.  That is where the confusion lies.

JUDGE HOCHBERG:  So they're still your non-testifying expert,t but you're not withholding any

Page 147

documents?

MR. ROBBINS:  No. Mr. Launer repeatedly stated there's a single document.

JUDGE HOCHBERG:  One document.  With the exception of one document, you have no privilege claim?

MR. ROBBINS:  The other point Mr. Launer made if Consigli were writing to my office before.  Here's what you should cover when writing your--

JUDGE HOCHBERG:  That's one document.

MR. ROBBINS:   I'm sorry.

JUDGE HOCHBERG:  How many documents is that?

MR. LAUNER:  Your Honor, there are two universes of documents.

JUDGE HOCHBERG:  The mediation and privilege.

MR. LAUNER:  No, I'm sorry.  That is not correct.  There are concise documents.  We have asserted privilege over a single document that is in the possession, custody and control of Consigli full stop.  That's it.

MS. ANDREWS:  Can I ask if you have given Consigli instruction to produce everything else to us because they told us they would but for your direction.

MR. LAUNER:  Yes.  Allow me to share my screen. and we could look at the three paragraph letter.

MS. ANDREWS:  This is the first time that we have been told that they are withdrawing their privilege and allowing Consiglia --

MR. LAUNER:  That is not true.  I told Ms. Andrews that repeatedly as soon as Consigli gave us our documents we'll do what we did, and we did that.  I told Ms. Andrews, and there were other people that we were not asserting that as a basis for privilege.  Let me share my screen and show you the letter.

JUDGE HOCHBERG:  I have multiple concerns about timing because timing involves prejudice.  That's my concern, how quickly was the incorrect impression left by Mr. Gildea corrected.  This is a question for Mr. Launer.

MR. LAUNER:  We are not withholding documents on the basis that they are a nontestifying expert. I don't know how else to say that.

JUDGE HOCHBERG:  Are they going to be a non-testifying expert?

MR. LAUNER:  No.  That is why they're being deposed by Ms. Andrews.

Page 149

MR. ROBBINS:  We are withholding some documents with Consigli on them.  I want to make sure we're clear, not just a single document.  You clarified the basis on which we are withholding documents with Consigli.

JUDGE HOCHBERG:  The basis is the mediation?

MR. LAUNER:  And other aspects throughout the litigation.

JUDGE HOCHBERG:  That's not what you said earlier.

MR. LAUNER:  That is exactly what I said.  The mediation, I gave the example of the 93a/176d letter.  I read you what I wrote.

JUDGE HOCHBERG:  How many Consigli documents are you withholding?

MR. LAUNER:  Plaintiff is withholding 315 out of 9,000.

JUDGE HOCHBERG:  315 Consigli documents, but we don't know whether Consigli has produced its documents too that you are not withholding. Ms. Andrews says she doesn't have anything.

MR. LAUNER:  May I share my screen.  There's two universes.

JUDGE HOCHBERG:  I feel like I'm on a different

Page 150

planet with this case.

MR. LAUNER:  Ms. Andrews is raising the issue of Consigli documents in their possession, custody or control.  Ms. Cohen, I am sending you a request.

MS. ANDREWS:  You should be able to share now.

MR. LAUNER:  Can you see this letter?

JUDGE HOCHBERG:  I can't see a thing except your charming face.

MR. LAUNER:  I appreciate that.  It's a grand total of three paragraphs.  Let me know when you would like me to scroll.

MS. ANDREWS:  I can't see the right part of it.

JUDGE HOCHBERG:  The date on this letter is what?

MR. LAUNER:  Yesterday, because we received the documents less than a week ago.  I assume you're going to say it's not an issue, but we are only human.  We were working on a 10,000 privilege entry log within less than five business days.

JUDGE HOCHBERG:  When did you ask Consigli for these documents that you got only yesterday?

MR. LAUNER:  I don't know the answer to that. I know we've had other requests to them and said we would review them to insure that we wanted, that

Page 151

there was a privilege that plaintiff --

JUDGE HOCHBERG:  I want to see all of your communications with Consigli.  There's nothing privileged about them.  That goes to the timing issue.  And Ms. Andrews from you when you first raised this issue with counsel for the plaintiffs.

MS. ANDREWS:  Would you like us to put that in the time line we are preparing?

JUDGE HOCHBERG:  Yes.

MS. ANDREWS:  May I add one point to this before I move on?

JUDGE HOCHBERG:  I haven't read the letter yet.

MR. LAUNER:  Shall I scroll down?

JUDGE HOCHBERG:  You can scroll up five lines.  I'm trying to see the second part.  So you are alerting them as a nontestifying consultant?

MR. ROBBINS:  What we are doing is we are saying that when you helped us, when you aided us in providing legal advice to our client, that was opposed to doing work in connection with the adjustment of the claim.  We are withholding it.

If it's an e-mail for instance, as Mr. Launer put in his letter about the chapter 93a demand letter, preparation for and participation in

the mid 2021 party presentations.  The same entries that Ms. Andrews has logged with their consultant and the mediation and other litigation matters that come up, that amounts to a total 300,000 documents on our end, on our server that we have.

And from Steward and the one document of the 1100 from Consigli.  So we looked at it through a very narrow lens, these thousands upon thousands upon thousand of documents and we produced everything relating to adjustment of the claim and only withhold exactly what you see in that second paragraph.

That takes time.  There were hundreds of thousands of documents to go through that level of a review.  It cannot be done quickly.  And we can only perform what's possible.  So less than five days we took a close look at 1100.  I would imagine we can get these documents, the 1099 promptly to opposing counsel.  There would be no prejudice whatsoever.

The deposition is not for another month.  It was only scheduled I think yesterday or we got dates yesterday and that's it.  They will have our log of 315 documents.  If they take issue with it,  I don't think they will.  They're asserting the same type of

Page 153

privilege with their consultants.

JUDGE HOCHBERG:  The concern I have quite honestly is what Consigli has decided to send to you based on the advice and direction they got from Mr. Gildea last year.

MR. ROBBINS:  It's not at our direction, it's your direction.  You entered an order of what they have to do.  I understand that Mr. Gildea sends that letter and thank God he did because it turns out there would have been one document they produced that would be privileged.  So I'm glad he did.

They said we're not giving you the documents, we're not doing this work.  We didn't get the bid for this project.  Stop bothering.  So Mr. Mutch filed a motion to compel, and Your Honor issued an order that said exactly what they have to do.

When that privilege log was issued, it was the first time we were able to see, look at what they're withholding and candidly as what Ms. Andrews stated I agree completely.  It was confusing.  It was not a model of clarity.  There are e-mails from Mr. Mutch's law firm to them saying what are you guys doing at Consigli.  We can't make rhyme or

Page 154

reason of anything.  There's a court order from Judge Hochberg.  You have to do this.

When they finally got around to doing this, this took time.  That process needed to sort out, but to suggest that defense counsel were in the dark on everything going on, they were the active participants.

JUDGE HOCHBERG:  Mr. Robbins, I am not saying they're in the dark.  They didn't get the information they were entitled to in a timely way. You're saying it's Consigli's fault.  I don't have Consigli in front of me.  The date I entered that order was what?

MR. LAUNER:  I do not have it in front of me.

JUDGE HOCHBERG:  Ms. Andrews, what date did I enter the order?

MR. LAUNER:  October 17.

MR. ROBBINS:  And they arguably didn't comply with your orders.

JUDGE HOCHBERG:  They did not comply with the orders.  Did anybody bring that issue?  That is why all of these hearings that didn't happen are a source of concern to me.

MR. LAUNER:  Mr. Mutch and his office wrote a

Page 155

letter to Consigli counsel saying what are you doing.  You are not complying with the judge's orders.  The procedure he's played out your order was in response to a specific -- to a subpoena issued by defendants.

It didn't come from my office, we did not subpoena them.  It was their subpoena which you ruled on and which Consigli took a fair amount of time respectfully to comply with.

When they finally did, we said okay, can you send us the documents now that you have listed on them, and you have worked this out with counsel. They had a meeting that we were not even invited to. We could have said this during the meeting.

JUDGE HOCHBERG:  We can't go on forever. We are an hour past the end time for this hearing.  We have not covered every topic.

MR. LAUNER:  I want to be clear.  I am not sure that we can produce these documents because they were given to us to review.  They are Consigli's documents.

JUDGE HOCHBERG:  Tell Consigli I order you produce the ones you are not claiming privilege over.  You have been ordered.  They know how to

Page 156

reach me just like everybody else.  They are ordered.  You are to turn them over to Ms. Andrews. That is an order from me.

MR. LAUNER:  If they give us authority to do that, we will do that as well.

JUDGE HOCHBERG:  I'm sorry, what?

MS. ANDREWS:  Consigli expressed to us on January 6, but for the instructions of Steward they would turn them over.

I assume that Mr. Launer can work that out. I would like the documents no later than Monday if possible.

JUDGE HOCHBERG:  I want to see all of the instructions they got from Mr. Gildea or otherwise.

MR. ROBBINS:  But for the instructions, they would have produced them directly to Ms. Andrews. It's not but for the instructions they would have produced them to us.  We asked them for them all along.

We concede we asked them to withhold documents on the basis of privilege to allow us the opportunity to review them.  If they don't get them -- I don't want to rehash old ground. Consigli is right, if they had their way they would have just

Page 157

produced everything on day one, which is precisely why Mr. Gildea's letter was so important to get out to stop any sort of review of privileged material. There is no ambushing on here. We produced this letter to them before it was even requested. We produced it.

Attorney Dunn did in an effort for transparency. There is nothing hidden. We respect Your Honor that this has frustrated things. It's been frustrating for the lawyers as well, all lawyers. But Your Honor has been clear, our directive moving forward. We will absolutely move expeditiously from this point on whether we want to or not. It's the subject of your order. We'll get this done by the discovery deadline. I'm not sure what the prejudice is right now.

JUDGE HOCHBERG: What do you mean get this done by the discovery deadline?

MR. ROBBINS: We'll get to everything we have to get done by the discovery deadline that Your Honor indicated is a firm date. What I'm not clear on is what is the prejudice.

There are no depositions that have taken place in this case.

JUDGE HOCHBERG:  She doesn't have the documents yet.

MS. ANDREWS:  I spent two months fighting this issue to try to get these documents, and I have spent an hour on it this morning.  I don't want to --

JUDGE HOCHBERG:  Have a courier bring them to her today.

MR. LAUNER:  We'll produce them as we produced every other document.  Both sides with a load file that we'll process it with the vendor and then we put it on a share drive.

JUDGE HOCHBERG:  Don't send a share file. What does process it with a vendor mean?  I want her to have them not later than tomorrow morning.

MR. ROBBINS:  This is a technical issue.  This is not an attorney issue.

JUDGE HOCHBERG:  She doesn't need hard copies. Can't you deal with electronic copies?

MR. ROBBINS:  That's the processing piece for the digital copies to get over.  This is the way in which the parties have been producing this by request unless Ms. Andrews wants us to change the process, which I don't think she does.  We'll order

Page 159

our vendor to produce those documents today.  How long it takes, we're at the mercy of a vendor to do the job.

JUDGE HOCHBERG:  Before we go to this vendor, I'm still getting vague answers here.  Is there another way that you can get them more quickly to Ms. Andrews?

MS. ANDREWS:  Your Honor, in all candor we prefer them processed by the vendor to get metadata and other information that is useful to us.  I understand it could take 24 hours to turn that around.

JUDGE HOCHBERG:  24 hours is fine.  Is that what we are talking about?

MR. LAUNER:  I've had this issue before. I would love it to be 12 hours.  It's called vendor time.  Since the vendor has it we'll give the instruction immediately.

JUDGE HOCHBERG:  Immediate highest speed. Good, that's done.  The only other issue, Ms. Andrews, for you is if you look at the privilege log for the 315 that have been withheld on the basis to prepare the Todd and Weld attorneys for legal work that if you think any of those are wrongly

Page 160

claimed as privileged, it's your obligation quickly to raise it first to Mr. Launer and then to me the same thing, three days of an issue being discovered by you.

You and he are to meet and confer no matter what else you're doing.  Five days.  If you haven't reached an agreement by five days after that I am to have a joint red fern chart explaining the dispute.

MS. ANDREWS:  Yes.

JUDGE HOCHBERG:  If you need a three page letter to supplement the red fern chart, you may have that, but you are not allowed to enlarge that schedule on any side.

That's the reason for my order number 12 telling you this is coming for exactly what was shown, and the hour we spent on this issue at least.

MR. LAUNER:  So this is not subject to the February 4th red fern.  If there is a dispute you want it separate?

JUDGE HOCHBERG:  Yes, faster.  February 4, that's your outside date.  That takes care of one. Issue number two now.

MS. ANDREWS:  Yes.  My colleague, Ms. Michelin, is going to handle that.

Page 161

MS. MICHELIN:  Issue number two, defendants have sought discovery of Steward's pre loss plans for Norwood Hospital both through request for production, 30b6 deposition topics and then our interrogatories that we recently served as well.

And we have been reviewing the documents produced by plaintiff and have identified gaps in production of materials related to pre loss plans despite there being other documents that indicate pre loss plans do exist.

So there are two issues we want to address. First, the production of documents and then plaintiff's relevance objection to this issue.  So on the production of documents plaintiff has represented multiple times that they have produced everything as requested per your discovery master order one that is not privileged, and that is responsive to defendants' request for production.

Despite that, we have identified these gaps even though there's e-mails and other documents produced that indicate these preloss plans do exist. So we would ask Your Honor if you could review the document protocol that plaintiff did submit in connection with the review to assess whether their

Page 162

response in this criteria does call for production of these pre-loss plans or if it is considered to be not responsive per the guidance given in the document protocol.

JUDGE HOCHBERG:  When did this document review protocol become established?  How long was it out there?

MS. MICHELIN:  Plaintiff sent it to you over e-mail per our records on September 15 last year. We received a redacted version, but you had received one that was not redacted.

MR. LAUNER:  You ordered us to provide it to you.

JUDGE HOCHBERG:  I haven't read it in a while.

MR. LAUNER:  Without waiving I can tell you that there is a specific instruction to the reviewers of not waving privilege.

We instructed the reviewers that everything having to do with pre-loss redevelopment of Norwood, it is to be marked responsive full stop.

JUDGE HOCHBERG:  So they are saying that they marked it to respond to you with those pre-loss plans for redevelopment of Norwood Hospital.

Are you saying you have reason to think

Page 163

that some of the withheld documents are such plans?

MS. MICHELIN:  Yes, based on other documents that indicate that pre-loss plans exist.  I can walk through some of the those, and I've not seen in a document --

JUDGE HOCHBERG:  Show them so we could see what that is about.

MS. MICHELIN:  One is the Smith Group agreement which I can pull up.  We did receive the Smith Group agreement, who is an architect in recent production of material, but we did not receive communication from prior to the loss, which was June 28, 2020.

We recently received this agreement, and it predates the loss.

JUDGE HOCHBERG:  Are you putting it on the screen?

MR. LAUNER:  The agreement is not about Norwood, it's a general MSA.  They had over 30 hospitals.  There are documents that have been produced that are specific addendums to that January 20, 2020 agreement that relates to Norwood, and it post dated the loss. We reviewed over 750,000 documents and over 30 search terms.  We complied with the order.

Page 164

We produced 350 document requests.  There is nothing left for plaintiff to do.

JUDGE HOCHBERG:  I'm asking Ms. Michelin why she thinks that something still exists.

MS. MICHELIN: One example is the Smith Group agreement.  We very recently received production, but have no communications with the Smith Group despite the fact this agreement started in 2019 and then was later revised in 2020, all before the loss.

JUDGE HOCHBERG:  What else is there in this document?  Can we see the rest of this document?

MS. MICHELIN:  It's a contract for architectural services.  So to provide perform design administration services.

MR. LAUNER:  Will you do a control F for Norwood.  This is a general MSA for the company, and they're free to ask the witness about it.

JUDGE HOCHBERG:  That's what I was going to suggest, which witness would be the right witness, Mr. Launer?

MR. LAUNER:  Why we objected, I told Ms. Andrews and Ms. Michelin we're withdrawing the objection, and you're free to ask Mr. Crowley, who is designated to testify to a portion of topic six.

Page 165

They're free to ask him.  There are no plans to redevelop or shut down Norwood.  They're free to ask him those questions we said, and I'm going to provide it in writing, but things were moving quickly yesterday that we will go back two years before the storm, and he will be prepared to answer their questions and specifically about this general MSA.

I will refer Your Honor back to the issue at hand.  We produced everything that was responsive to this document request.

JUDGE HOCHBERG:   I hear you.

MS. ANDREWS:  Ms. Michelin can speak to this. She said at the outset it was a two bucket thing. We want to know if the responsiveness criteria was for the documents because it did seem incomplete to us.

We have a broader position regarding the relevance of this pre-loss information.  Plaintiffs have consistently objected to it in total as not relevant.  And we set out in our letter brief why such discovery is relevant, again, in the hopes of minimizing disputes going forward because we have served written interrogatories that seek information

Page 166

about topics, and we have 30b6 topics about this. And we don't want there to be disputes going forward about whether or not this is relevant and appropriate discovery.

JUDGE HOCHBERG:  I understand from Mr. Launer's representation a few moments ago that he instructed the screeners to produce any of these pre-loss plans.  That is what he just represented.

MS. ANDREWS:  He instructed them to produce them to the extent they hit upon the custodians and search terms related to that.

I don't think there's a representation that they have done any other searches of Steward documents to look for pre-loss plans.  I think he would be relying upon the search terms that they were forced to implement as a result of your order.

JUDGE HOCHBERG:  Right, but you're asking me to broaden the search terms of my prior order.  I'm not inclined.

MS. ANDREWS:  I'm not making that request.  I wanted to be clear about the scope of search that they conducted for those documents.

JUDGE HOCHBERG:  If you are generally saying is this topic fair game for questions for witnesses and

Page 167

ask Mr. Crowley about pre-loss redevelopment plans at his deposition as a 30b6 or whatever he is.  I think you heard the answer is yes, you may do so. In other words, there will not be a relevance objection to questions on this topic at depositions, correct, Mr. Launer?

MR. LAUNER:  Correct.  And we did make a relevance objection which I explained for the purpose of document review.  Responsive does not mean relevance.

We'll make a relevance objection I would assume at the time of trial.  But we did not do relevance objections on document review apparently unlike defendants did.

JUDGE HOCHBERG:  I knew you were going to add that.

MR. LAUNER:  I had to add that because they did and we didn't.  If you want to look at what was provided to us with our protocol it's pages 12 and 13.

The responsive tag for proposed contemplated, planned or actual construction at Norwood Hospital before or after June 28, 2020.  It's on page 12 and 13.

Page 168

And again, I didn't read them this, but I repeatedly told counsel that we marked these as responsive and produced what we had.  It wasn't just your search terms.  Your Honor, counsel came to us with this share drive at that point, and we produced tens of thousands from the universe.

There is nothing left for plaintiff to do unless Your Honor wants us to go back and look through hundreds of thousands of documents, which we would object to.

JUDGE HOCHBERG:  I think Ms. Andrews understands I'm not going back and redoing my order unless something glaring shows up in a deposition that makes me wonder whether the search term was somehow wrong.  Not having an objection to it all these months since the order came down, I would not be inclined to do that.

MR. LAUNER:  This is their search terms, Your Honor.

JUDGE HOCHBERG:  I know.  I did some of my own. If this sounds like this is not one of them, I accept your representation.  It's a fair game for questions of witnesses, Ms. Andrews.  Okay.  Let's go to the next one.  Number three, Lucas Rael.

Page 169

MR. RAEL:  I could speak to that.  Issue three was related in part to issue number two where issue two looks before the loss.  Issue three looks after the loss.

We sought discovery of relevant information here which were plans, decision making by Steward with regard to the decision whether or not to repair Norwood Hospital or to rebuild it.  I can direct Your Honor to their complaint, paragraph five.

We noted this in our papers to you where they have allegations that in consultation with professionals and in consideration of data due to the severity of the loss they had, the decision was made that the hospital had to be torn down and replaced.  These are relevant topics for discovery in this case because it goes to the question of what the business interruption time period was, and we are entitled to explore the decisions made by Steward with regard to whether or not to repair the hospital and reopen it or tear it down and replace it.

Now, in our discussions and meet and confers before this issue was presented to Your Honor, opposing counsel represented that they had run

Page 170

search terms and produced documents, but they were maintaining in part an objection to this on the grounds of relevance.

We have looked at the document productions that have been made. There are significant documents produced, a significant quantity of documents produced since mid December that in meet and confers counsel pointed to say hey, this is where there's responsive information out there.

We anticipate it will be in these productions. We have looked at those productions, and we're seeing gaps in the materials. We have not seen the types of decision making types of documents documenting decision making by people at Steward by their consultants advising them as to whether or not it was feasible to keep the hospital open or to repair the hospital or whether or not it was necessary to tear it down.

Those are the types of documents we would expect to be out there and to be seeing it, and we're not seeing them.

JUDGE HOCHBERG: What is your request for relief? The plaintiffs are saying they produced whatever they had.

Page 171

MR. RAEL:  The representations made with regard to item number two, this may be wrapped into that. The fact from what I heard, the reviewers were instructed to mark as responsive information regarding or relating to plans to renovate or repair the hospital after 2020.

That's the first time we've heard that.  If that is the case and that is the guidance they were giving then I understand that, but we hadn't heard that before today.  And I think if the guidance that Your Honor gave with regard to issue two is the same for issue three regarding relevance that we should be permitted to inquire as to the decisions that were made, when those decisions were made.  Who made them as to whether to tear down or repair the hospital.  I think that may satisfy the issue as long as it's applicable equally here.

MR. LAUNER:  It is unequivocal I repeatedly said the documents were marked as responsive.  We believe they're relevant because the hypothetical period under the case law is the hypothetical period, but we have not withheld that document on that ground, nor do you make relevance objections during depositions.  That is reserved for the time

Page 172

of trial, and we haven't withheld a document on relevance.  Enough said.

MS. ANDREWS:  Just to put a pin in this.  We have served interrogatories as Mr. Launer noted I believe at the beginning of this week that have specific interrogatories related to topic two, topic three in an effort to get at some of the information that we haven't seen in documents.

For instance, who made the decision with respect to tearing down the hospital.  We think that it's in their complaint.  It's a fact we're entitled to discover, but concluding or holding that information is relevant, and we're entitled to discovery on it.  We are hopeful that means we'll get that in an interrogatory answer to the extent they rely upon documents to prepare the interrogatory answer.  Obviously, they need to produce all the documents if not already.  So some of what we're seeking here, I'll hear Mr. Launer about, we've given you the documents that hit on the search terms, and we are grateful for that guidance.

We want to make sure that there are not issues on these topics going forward, and we had a basis for believing that there might be given the

Page 173

position that plaintiff has taken in the past.  So your ruling that these are relevant and responsive topics to which we are entitled to discovery, we believe is an appropriate topic to have brought to you, but will also be helpful going forward to minimize disputes.

JUDGE HOCHBERG:  Mr. Launer acknowledged it's fair game for questioning for deposition or interrogatories.  He's not making an objection on relevance, and he's stating he's produced all the documents he has that were hit on by this search term.

MS. ANDREWS:  I will have the transcript, and I think at this juncture that is sufficient.  If we need something further we'll bring it to you promptly.

MR. LAUNER:  To be clear, just because it's subject to discovery under Rule 26 doesn't make it relevant.  I want to make sure we're not conflating words.

We are going to talk about timing, defendants had our amended complaint for years, and they just served 8 interrogatories on us days ago.  We may look to answer those, maybe not.  We'll meet

Page 174

and confer.  It's late in the game to be serving interrogatories, but nonetheless let the parties talk about it.

JUDGE HOCHBERG:  Let's see if you can work it out. I'll be asking questions about timing, Ms. Andrews, you'll know that.  That is done with defendant's number three.

MR. LAUNER:  Yes.

JUDGE HOCHBERG:  Have we covered all of the issues that we had?

MS. COHEN: Yes, we have covered everything.

JUDGE HOCHBERG:  The one thing we put a pin in was 26a, new disclosures.  Why now?  What's the point, Mr. Launer?

MR. LAUNER:  Your Honor, the point of the disclosures was to add people that arose during discovery we were not obligated to do under the rules, although we did.

As we stated or as I stated in my e-mail and I apologize, I'll use a PDF, if all of the individuals were known to defendants they demanded and Your Honor ordered we search those files.  They were consultants that their clients worked with going back years.

Page 175

All we did was add those individuals that have been throughout this case.  They were individuals that they have noticed for depositions already.  They were individuals on prior submissions from defendants to Your Honor.  They were individuals that we identified in written discovery responses.  I'm happy to go one by one.

JUDGE HOCHBERG:  You're not asking for any other dep on the basis of this amendment, are you?

MR. LAUNER:  We're not.

JUDGE HOCHBERG:  I don't understand what legal significance it has to this case to do it.  That is what I'm puzzled by.

MR. ROBBINS:  They requested that we supplement.

JUDGE HOCHBERG:  They asked you to?

MR. ROBBINS:  Yes.  Apparently what they're issue is is that there are people who we have identified who we have listed who were not in our initial disclosures, and they're claiming some type of I guess prejudice.

For instance, one of the people that we listed in our supplemental disclosures before they submitted the deposition chart to Your Honor was the

Page 176

CEO, Ralph Delatori.  Of course, they knew about him and we had to search the mailboxes of 11 people. So we thought it would have been odd given their request that we supplement initial disclosures to not add the people that they have already noticed depositions for and that Your Honor has already ordered that we search --

JUDGE HOCHBERG:  Let me ask them what they're objecting to and what the relief is that they are seeking.

MS. ANDREWS:  As I said at the outset, the original Rule 26a disclosures were from May 2022. They had 12 witnesses that they had identified as individuals with knowledge that they may rely upon. That is the key piece of the 26a1 disclosure.  It's not just individuals that may have relevant knowledge, but it is the listing of the individuals that you may rely upon in a hearing, in dispositive motion practice or at trial.  I think that everybody on this call knows you can't put a witness on to testify other than for impeachment.  You cannot put them on to testify if they're not on your 26a1 disclosures.

We learned after meeting and conferring with

Page 177

plaintiffs over the summer that individuals who they identified on their initial disclosure as Steward employees were not actual Steward employees, they're CREF employees.  So they had errors on there that they needed to correct.  More broadly, in looking at their list we could not ascertain who they actually intended to rely upon at trial.

We are entitled to know that before taking depositions so we could assure that any witness they may call in their case in chief, we had the opportunity to depose them.  So we asked on December 1 to please update their 26a1 disclosures.  We received those last week on the 13th of January, and their number of identifying witnesses went from 12 to 35.

To Mr. Launer's point, sure, they are individuals that were known through discovery, but we had not previously been advised, for instance, that they rely upon at trial some of these witnesses and others were not known to us and have not previously been custodians.

There is a difference between an individual who might be a repository of relevant information and a witness you put in your 26a1 disclosures as

Page 178

someone you may rely upon. And the case law, I know we didn't brief this, but we would be happy to submit it. There's plenty of case law that draws that distinction, and the rules committee as to why you make this additional disclosure. It is not just you knew that these people might be out there. It is to make the disclosure.

This is someone we may rely upon. That changes the calculus honestly in terms of who you may want to depose. By adding 24 people, they greatly broadened two months before discovery cutoff the list of people that we may need to take depositions of.

So the proposal I made to plaintiffs last night, which we thought was quite reasonable to resolve this prejudice and to prevent us from being forced to go take 10, 15, 20 additional depositions, was to enter into an agreement whereby plaintiffs would not seek to rely upon any of the newly added witnesses. Some individuals who were not previously disclosed by them who either we had not previously noticed for a deposition, but we noticed but deprioritized and were not seeking to schedule. And this was a total of 11 out of the ten plus newly

added people.  That struck us as a fair compromise that was rejected.

JUDGE HOCHBERG:  What was your proposal?

MS. ANDREWS:  It was 11 individuals.

JUDGE HOCHBERG:  In other words, remove from the 26a list 11 of the newly added 24 people?

MS. ANDREWS:  Correct, Your Honor.  I think the committee notes and case law is clear that when you belatedly add to your 26a1 disclosures without adequate time even before the cutoff of discovery a month or two before the cutoff of discovery in many cases is deemed inadequate where you belatedly disclose that is prejudicial to the other party and the remedy is preclusion of the related disclosed witnesses under Rule 137.

We have a right to seek that remedy.  In the spirit of compromise we offered, like I said, this proposal where the newly added people who either had not previously been noticed for a deposition or may have been noticed.  This was four people that we noticed, but we had sort of taken off of our list of people that we were actively seeking to depose that they would simply tell us they're not going to rely upon those people at trial.

Page 180

Some of those are people like Mr. DeLatori, who frankly they conceded we have no ability to call at trial and they're not friendly to the current trustee.  So they rejected it.

So we have now 20 plus additional witnesses. Do we have to try to schedule all of these people? I don't know how we do that in the next two months. We barely have a free day.  As you saw from the schedule we submitted last night or if we seek from the Court, they are not able to rely on these people. There's no good resolution for us here, frankly, which is why we hope to find a compromise, but that appears not to be the case.

JUDGE HOCHBERG:  This is one more thing where the timing got botched up by counsel's efforts to work together ended up with an incredible delay here.

MR. LAUNER:  Can I respond to some of the things Ms. Andrews said?

JUDGE HOCHBERG:  Just a minute.

MR. LAUNER:  I apologize for interrupting.

JUDGE HOCHBERG:  Of the 24 added people, Ms. Andrews, how many of them are witnesses you never heard of before, that you never thought you

Page 181

would need to be deposed or have anything to do with this case?

MS. ANDREWS:  I think in terms of the names we had not seen before, at least two.

JUDGE HOCHBERG:  Who were those?

MS. ANDREWS:  Victoria Robbin, former chief financial officer, Steward.  And another third party consultant Gayle Associates.  The others we were loosely aware of given the role of the third party consultants or seeing names on documents.

JUDGE HOCHBERG:  Are these the same I just heard of a new one I never heard about, Gayle Associates, when I asked about this earlier today?

MS. ANDREWS:  According to their disclosure, an engineering consulting firm retained by Steward to provide an analysis of flood and for water damage.

MR. GILDEA:  That is 45 of the amended complaint.

JUDGE HOCHBERG:  I'm not talking about that. I'm asking whether when we talked about who were your nontestifying experts, no one said anything about a Gayle Associates.

MR. ROBBINS:  I'm surprised to hear Ms. Andrews say they never heard of Gayle Associates.  They sent

Page 182

them a subpoena for documents.

MS. ANDREWS:  Let's be clear.  Your Honor, like I said, the case law is really clear.  It's not simply that you are aware of an individual.

JUDGE HOCHBERG:  I want to understand what happened.  Who is who, what is what.  This thing says you're going to rely on Gayle Associates, Mr. Launer?

MR. LAUNER:  No, it says that we may rely on them.  They were known to everybody from the outset.  From June of 2020 they were certainly submitted as part of our initial claims submission to Ms. Andrews' client on December 4, 2020.  Nobody here is new.

The information that we have to select now that Ms. Andrews is reasonable that we're going to choose 11 people now that we will rely on months before dispositive motions before trial, there is nothing reasonable about that.

This is the height of hypocrisy.  This is Ms. Andrew's position.  There are eight people on their disclosures that they served last June.  So is Ms. Andrews going to make a representation to Your Honor they will not call anybody other than those 8

Page 183

at trial because this is just it's kind of an absurdity.  And it's just one example.

They identified three people from JS Held, who was a key person.  Yesterday they designated five people, two of whom were not on their amended disclosures.  They're going to rely on those people.

MS. ANDREWS:  I don't control that third party. That was in response to plaintiff's 30b7 subpoena. I had nothing to do with that.

MR. LAUNER:  It was in the initial disclosures. What is lost here, Your Honor, is the point of the Rule 26a1 disclosure.

It is to identify -- I'm reading from the column notes -- the witnesses that the disclosing party may use to support its claims or defenses. Those have to be the people that you may call at trial.  Does it have to be narrowed down to your trial list, no.  But if they're not on there, you can't rely upon them for a dispositive motion or trial.  They went from 12 to 35 people.  That is an additional 23 depositions that I potentially need to take in the next two months.  These people have been equally known to plaintiff since 2022.  And they never saw fit to amend their disclosures until we

Page 184

asked them to do so.  It took them over six weeks to do it.

JUDGE HOCHBERG:  Why did you ask them?  What is the practice in Massachusetts about this disclosure list?

MR. LAUNER:  Rule 46a1 doesn't require us to do it.  It does not permit the party to supplement disclosure if the additional corrective information has not only been a name known to the parties during the discovery process or in writing.

All we did was amend at their request to confirm with what has happened in discovery at their request.

The notion that they wouldn't know these people who they have moved the Court and argued to Your Honor were key individuals --

JUDGE HOCHBERG:  We're taking those out. I asked who was really new.  That it was a surprise that you had to take a deposition of, Ms. Andrews.

MS. ANDREWS:  People that we didn't notice for depositions.  That we knew of these people is separate and apart from knowing that they would potentially call them as a witness at trial. Dr. Ocavio Diaz is a good example.  We knew of him.

Page 185

They disclosed him as a 30b6 witness.  Then they withdrew him.

He wasn't on their disclosures previously and now he is.  So we had not sought to take his deposition.  Now we feel that we probably do need to go take his deposition.  That is information they could have provided us previously.

MR. LAUNER:  I'm so glad Ms. Andrews raised that because a week before our amended initial disclosure I personally emailed her and said we did the designated two people, Perla and Octavio Diaz. If they wanted to reach out to them she could contact our office.  The very next day she did about Sal Perla and asked for a deposition date even though they were not noticed last year.  They were never noticed.

MS. ANDREWS:  We did notice.

MR. LAUNER:  We didn't see the notice or subpoena.  We looked again this morning.  The point is she asked, and we gave her a deposition date.

MR. ROBBINS:  I think the question is what are we going to do about this.

JUDGE HOCHBERG:  That's right.  That is the question.

Page 186

MR. ROBBINS:  I think if Ms. Andrews wants to notice additional depositions, as Your Honor heard they're being scheduled now.  Then she should ask. We have not objected to one deposition.  No one has sought relief.  If Ms. Andrews wants to take Dr. Diaz's deposition as Mr. Launer said, let us know.

MS. ANDREWS:  I have to interject here.  I respect Mr. Robbins, but his continued minimization of the prejudice to us during this call is starting to wear on me.  And frankly, I do not think that this issue should be viewed in a vacuum.

JUDGE HOCHBERG:  The question is what rely --

MS. ANDREWS:  And I proposed.

JUDGE HOCHBERG:  I am familiar with law in almost every other topic.  This one I have not addressed before.

In other words, what the ramifications would be if I granted you the relief you're asking for. You have to be clear to me what relief you're asking for.  And what I have the authority to rule and what the law is, neither side has briefed the law.  I was hoping we wouldn't have to because you would meet and confer.  Obviously, that failed.  So I will take

Page 187

the step of saying you can't call a witness at trial is a big step, and I need to know that there is really a support for doing that.

Or I could say bring it to the Court.  She's the one that is supposed to manage the trial.  I'm a master, not pretrial master.  I don't know what the judge would do with this.  I don't even know that this is a discovery issue.  It's a pretrial issue. It clearly has an effect on discovery.  They added a whole bunch of people.  There's no question about it,  some of whom wouldn't be a surprise because they were people on the original custodian list.  I recognize some of the names.  I think Diaz was one of them, I'm not sure, but I think so.  And so I did order the discovery from the ones I thought were appropriate or I let them pick or select.

The question really is how strong is the authority to say you must strike them and what's the effect of that.

MS. ANDREWS:  We'll be happy to submit authority to you and brief it for you if that would be useful.

JUDGE HOCHBERG:  I can't decide this before you have to decide what depositions to take because this

Page 188

is to be a court issue. I don't want to step on the toes of a judge who might say no, I don't want that issue in any case of whether I wrongfully barred somebody from testifying.

MS. ANDREWS: Understood. We'll brief it. The case law is clear. This is a Rule 36 and Rule 37 issue which falls in the realm of discovery.

I appreciate Your Honor wants to operate within the scope of the authority delegated to her. The broader point, Your Honor, which I think is important here because I continually hear this minimization, you knew about this, you knew about that is the reality of the situation that the defendants are currently sitting in.

They have produced to us since December 15 over 300,000 pages of documents, which I have a team that has been working around the clock and through the holidays to get through so that we can take depositions.

We have had to fight, as you heard this morning, tooth and nail to get discovery from third party consultants that have been improperly shielded under a claim of prejudice, which we still don't have, which is now hopefully coming to us in 24

Page 189

hours, but I had to expend tremendous amounts of resources to get this information, time that is being taken away again from deposition preparation.

We now have a 10,000 plus entry privilege log, which we should have had months ago.  I discussed privilege logs with Mr. Robbins for their first production of documents back in June.  They then at that time said they were going to produce it and then said they couldn't.

I asked for rolling privilege logs, they were not willing to do that.  They said they could not give it to us until it was done.  I got it last night.  We should have had this information months ago.  I'm having to now deal with it.

And on top of that, they identified 20 plus additional witnesses they may rely upon that I may need to try to depose.  It's not too much to ask them to prioritize them or identify some of those witnesses outside the subpoena power of the Court, and they cannot reasonably compel them to come to trial.

They could identify that for us which ones they control, which ones they don't.  Mr. Launer started to give me that information.

JUDGE HOCHBERG:  That seems reasonable, Mr. Launer.  Why don't you give her that information?

MR. LAUNER:  I did, except for two people who I said I was inquiring as to whether or not we had control over them.  I don't know what else I could provide.  I don't have an answer to that yet.

But briefly because the reason the privilege log took so long, and I'll fully acknowledge they were working over the holidays, as Ms. Andrew's team was.  We produced 2800 e-mails that had title of attorneys on the two to from cc.  You have to look at each one.

We produced 6400 e-mails that had inhouse counsel from Steward in the to from.  Because counsel is there doesn't make it privilege.  It requires a document by document level review.  We produced 4,276 that said some form of protected by privilege, but when we assessed it, it was not privileged, so we produced it.  That takes time, a lot of time.  We can only do what we can do.  We produced over 450,000 documents, 262 something documents that have the consultants we've been talking about.

Page 191

MS. ANDREWS:  The only reason we got those documents is because we moved to compel, and you ordered them to produce that to us.  We have the statistics, but your involvement, they only produced 24,000 documents, 140,000 pages.

JUDGE HOCHBERG:  Ms. Andrews, I hear your pain. The question is what's the appropriate-- I started this hearing talking about my dismay about the slowness.  I could only rule on things that are brought to me.  When it's silent, I assume everything is copasetic.  It clearly was not.

I can't go back and rewind the clock, and I can't change the trial schedule.  I have a limited amount of relief that I can offer you for this.  If I have appropriate relief on this issue, let me know, but I don't know if it is a discovery issue. I think it's an issue you need to bring to the Court if it's going to affect who they call as a witness or be courteous enough to let you know sooner than depositions if there is someone on that list that will not go so you don't take a deposition.

MR. ROBBINS:  I will represent we will do that and tell Ms. Andrews and her colleagues who we represent.  And they could coordinate any deposition

Page 192

with us.  I look forward to try to determine who they would like to depose, what additional people they would like to depose so we could get that on the calendar as soon as possible.

JUDGE HOCHBERG:  I understand that.  This is a two sided issue.  Why not want this Rule 26a disclosure updated a longer time ago?

MR. ROBBINS:  Because it's not required.

MS. ANDREWS:  We disagree.

MR. ROBBINS:  They requested it so we did it. That is the level of cooperation.  All we did is because I know when you hear the words 24 people it sounds like we tripled the size of this case.  Most of them are the people you ordered who they argued to you likely had discoverable information.

JUDGE HOCHBERG:  That is a little different from who you are likely to call at trial.

MR. ROBBINS:  Respectfully, this is what I would say to Ms. Andrews, I have no idea.  We have a general sense, but I haven't taken a single deposition yet to know who is going to be the person that we are likely going to call at trial.  I would would be disingenuous if we suggested anything else. I expect the same.  This is being glossed over.

Page 193

They listed 8 people.  So are they not calling any additional?  Could we apply this equally?  Could they amend their disclosures, list all the people they may call at trial because we just got notices we were just informed that there's now at least five more people we never heard of that Mr. Mutch represents that are now going to appear at depositions as the people most knowledgeable on certain topics.

So I don't want it to be glossed over.  We're being punished in some way for --  I'm not saying punished.  But we are being criticized for actually being more transparent at this point where they have not disclosed those additional people.  They are getting the benefit of not acting, so they can't talk out of both sides.

JUDGE HOCHBERG:  Are you asking them to update their Rule 28a?

MR. ROBBINS:  I absolutely am.  I do want to know about the additional people that they are aware of who may testify.  I'm not saying that is a final witness list.  I am not holding them to that, but if there are people they know of applying their own logic they should be supplementing as well because

Page 194

there's more than eight people.  As Your Honor heard, there were tens of consulting agencies that came through.

Forget about the employees of the parties. So I think -- I don't want to belabor the point but I think Your Honor's guidance is right.  I do think this is a trial judge issue.  This is a Judge Saris issue, if that's the direction they want to go. They want to pick the most extreme remedy available which is that these people before we embarked on depositions these people are foreclosed from testifying at trial, then that is a Judge Saris issue.

If they want to talk with us about hey, can we take these depositions even though we are limited to ten, can we take 20.  If there is a dispute, I would hope we bring it to Your Honor's attention promptly.

JUDGE HOCHBERG:  There's a lot on this issue. I am not ruling on it now until I get clarity on what I am authorized to do and act on.  It may be that Judge Saris, if you bring it to her she sends this issue to a magistrate judge.  It will probably be bilateral.

Page 195

Ms. Andrews, if you are planning on augmenting your list beyond the 8 people that Mr. Robbins states, you probably ought to do that sooner rather than later or the magistrate judge --

MS. ANDREWS:  I believe we evaluated ours before we made the request of them.  As you said, it's two sided.  We are happy to get a letter briefed to Your Honor by Monday, if that would be of use to you.

JUDGE HOCHBERG:  I will look at it.  As I said, my initial inclination is this is likely a judge issue.  I am reluctant to be in a position about which witness can take the stand in a trial of hers.  That is beyond the purview I think of what I've been appointed to.

MS. ANDREWS:  Understood.  We will submit and discuss further.

JUDGE HOCHBERG:  She will probably send it to a magistrate judge.  If you are going to not take a deposition in reliance on an assumption that these people wouldn't testify unless counsel gives you other assurances, you may have to and then you may exceed given the huge number that have been added you could exceed your ten deposition limit.  If you

need to do that you could come to me on that. Anything else?

If there is one marching rule I don't want any delay. You're going to get let me say the ruling and then they will be in the order. If you have a dispute, raise it with each other within three days. If you can't work it out, you have to raise it by red fern five days after that, and it's got to be a joint red fern which means both sides have to fill in their column. That's an order.

This delay ends up with me now having a flood of stuff that I could have been doing in a timely way and instead I had to pull the rip cord and say the way this is being managed is not going to get us to the finish line on time. So therefore I abruptly say we have got to get this started. And I don't want to see any repeat of this.

STATE OF ILLINOIS )

) ss:

COUNTY OF C O O K )

VICTORIA D. ROCKS, C.S.R., Notary Public, being first duly sworn, deposes and says that she is a Certified Shorthand Reporter, doing business in the  City of Chicago, County of Cook, State of Illinois,  and reported proceedings in the Courts in said    County;

That she reported in shorthand and thereafter transcribed the foregoing proceedings;

That the within and foregoing transcript is a true, accurate, and complete record of the proceedings had upon the hearing in the County of Cook, State of Illinois, on this 28th day of January, 2026.

*Victoria Rocks*

VICTORIA D. ROCKS, C.S.R.

License No. 084-002692

**[& - 262]**                                                    Page 1

**&**

**&** 2:2,9,19

**0**

**01970** 2:20
**02110** 2:6
**02119** 2:16
**084-002692**
  197:21

**1**

**1** 17:11 40:1
  177:12
**1,260** 39:24
**1,451** 39:17
**10** 11:22 27:8
  27:10 57:20
  125:7 178:17
**10,000** 15:9
  150:18 189:4
**1099** 141:17
  152:18
**10:57** 112:23
**11** 64:6,16 65:8
  176:2 178:24
  179:4,6 182:17
**1100** 136:22
  141:15 152:7
  152:17
**11902** 1:5
**11:00** 78:14
**12** 27:9,9,14,21
  60:17 142:9
  159:16 160:14

167:19,23
176:13 177:15
183:20
**125,000,000**
  97:23
**12754** 197:20
**13** 17:16,23
  56:20 58:18
  71:13 108:12
  112:10 167:20
  167:24
**130,000,000**
  98:1
**137** 179:15
**13th** 17:8,9
  71:22 177:13
**14** 16:8 17:1
  76:20
**140,000** 191:5
**14th** 16:5 17:8
**15** 15:6 34:10
  68:4 111:16
  162:9 178:17
  188:15
**16** 11:17,24
  108:20
**160,756** 39:23
**16th** 73:3 111:6
**17** 138:9
  154:17
**176d** 44:19
  149:12
**18** 76:19

**19** 142:7
**196** 3:3
**19th** 42:8
**1:21** 1:5

**2**

**2** 32:2
**20** 22:2 35:14
  53:21 82:4
  103:17 163:21
  178:17 180:5
  189:15 194:16
**2019** 164:8
**2020** 33:5
  47:24 60:17
  129:3 130:1
  163:12,21
  164:9 167:23
  171:6 182:11
  182:13
**2021** 36:8,8
  38:19 42:17
  130:21 139:3
  152:1
**2022** 16:7
  17:13 19:13
  37:2,16 38:3
  49:22 58:18
  129:9,13,21
  131:6 133:4
  134:3 137:9,15
  137:19,20
  176:12 183:23

**2023** 84:6 88:6
  103:18,21,22
  105:5 130:20
**2024** 42:17
  43:4
**2025** 17:11
  57:20 82:23
  135:7 138:9
**2026** 1:17 10:6
  43:5 51:22
  197:17
**20th** 22:12
  53:24
**21st** 17:15
**22** 17:21 51:22
**22,500** 68:1,9
**2200** 2:12
**22nd** 1:17
**23** 183:21
**24** 159:11,13
  178:10 179:6
  180:22 188:24
  192:12
**24,000** 191:5
**25** 38:22 68:23
  68:24 69:2,10
**2500** 2:16
**26** 19:13 20:14
  20:15 21:13
  22:2 70:22
  90:12 136:10
  173:18
**262** 190:22

**[26a - above]**

**26a** 17:12 35:15 71:23 72:1 174:13 176:12 179:6 192:6

**26a1** 6:4 7:4 17:3 19:11 72:3 176:15,22 177:12,24 179:9 183:12

**26b4** 23:12 50:24 51:12

**26b4d** 128:8,13 139:6

**27** 2:20

**27th** 2:5

**28** 163:12 167:23

**2800** 190:11

**284** 39:18

**28a** 193:18

**28a1** 16:4

**28th** 197:16

**3**

**3** 11:3

**3,000** 59:14

**30** 20:1 53:22 64:19,24 77:20 97:23 109:10 163:18,23

**300,000** 15:6 152:4 188:16

**30b6** 63:17 65:14 77:1,7 122:1,5,20 123:7 132:2 136:9,11 161:4 166:1 167:2 185:1

**30b7** 183:8

**30th** 20:7 32:1

**315** 36:17 137:23 149:16 149:18 152:23 159:22

**31st** 11:2

**35** 177:15 183:20

**350** 164:1

**36** 188:6

**37** 188:6

**38** 123:17

**4**

**4** 3:3 71:9 72:20 75:21 116:23 124:1 124:23 160:20 182:13

**4,276** 190:18

**404** 2:20

**41** 122:1,2 123:17

**45** 181:17

**450,000** 190:22

**46a1** 184:6

**4th** 73:9 75:24 76:1 122:10,11 160:18

**5**

**5** 34:9

**6**

**6** 11:19,20 29:17 108:24 109:3 111:5 127:22,23 145:1 156:8

**60603** 2:12

**6400** 190:14

**66** 84:21

**67** 116:13

**6:00** 28:9

**6th** 28:8 29:8 29:15

**7**

**7** 100:12 109:23 110:24 111:3 125:7

**700** 15:8

**73** 122:22

**74** 122:22

**750,000** 163:22

**7:30** 1:16

**7th** 11:21 29:10 76:23 109:5 111:10

**8**

**8** 30:20 173:23 182:24 193:1 195:2

**80** 122:22

**800** 2:16

**8th** 109:7 111:12

**9**

**9** 137:9

**9,000** 36:16 137:22 149:17

**93a** 44:16,19 51:8 149:12 151:23

**a**

**a.d.** 1:17

**a.m.** 1:16

**aandrews** 2:13

**abbie** 9:1

**abigail** 2:10

**ability** 15:11,20 87:23 138:14 180:2

**able** 8:3 34:12 67:14 85:2 96:23 104:13 138:7 142:16 150:5 153:19 180:10

**above** 121:10

**abruptly** 196:15

**absolutely** 120:19 157:12 193:19

**absurdity** 183:2

**abundance** 135:9 139:9

**abundantly** 90:10

**accept** 60:8 76:22,24 126:1 168:22

**accepted** 20:18 68:3 73:6

**accommodate** 70:7

**accounting** 19:3

**accuracy** 111:24

**accurate** 101:4 137:14 143:10 197:14

**accused** 135:15

**accusing** 69:17

**achieving** 30:19

**acknowledge** 190:9

**acknowledged** 173:7

**acknowledging** 97:2

**act** 194:21

**acting** 193:15

**actions** 95:16 95:24

**active** 31:2 94:7 140:2 154:6

**actively** 179:22

**activity** 70:12 103:22 104:4 104:18,21 105:18

**actual** 47:11 74:11 78:13 167:22 177:3

**actually** 24:12 52:21 53:19 84:2 86:8 96:5 100:5 119:15 119:16 177:6 193:12

**add** 60:17,24 144:14,15 151:10 167:15 167:17 174:16 175:1 176:5 179:9

**added** 16:2 178:19 179:1,6 179:18 180:22 187:9 195:23

**addendums** 163:20

**adding** 178:10

**addition** 4:20 63:7

**additional** 18:9 25:3 46:5 80:10,10 81:6 116:15,16 178:5,17 180:5 183:21 184:8 186:2 189:16 192:2 193:2,14 193:20

**address** 15:19 18:8 20:6 55:18 58:2,16 64:23 65:9 72:10 161:11

**addressed** 34:5 60:19 186:17

**addresses** 27:11 114:17

**addressing** 6:3 6:23 7:1,3 16:16 34:15 50:5 75:20

**adequacy** 17:24

**adequate** 179:10

**adjacent** 40:22

**adjudicate** 120:8

**adjudication** 129:4

**adjust** 95:15 97:14 104:23

**adjusted** 86:2 87:5,12 95:22

**adjusting** 48:6 95:18

**adjustment** 8:16 33:6 36:13 37:15 39:6 41:19,22 50:20 97:7 103:17,22 104:3,18 105:18 118:17 118:23 119:1 121:14 151:21 152:10

**adjustor** 24:14 87:6 95:16 117:8

**adjustors** 40:16 105:2 115:3

**administration** 164:14

**administrator** 93:13

**admirable** 94:1

**admire** 111:21

**advance** 4:19 25:18 26:9 46:6 69:2,13 86:18

**advice** 36:15 51:10,19

139:19 141:8 151:19 153:4

**advise** 118:7

**advised** 177:18

**advising** 170:15

**advocate** 6:7 107:2,19 111:20

**aedan** 2:4 4:14 5:11

**affect** 95:17 191:18

**affected** 87:22

**affects** 16:23

**afford** 33:17

**agencies** 194:2

**agent** 61:3

**ages** 132:5

**aglic** 68:6,9 69:15 77:2 87:6 95:14

**aglic's** 99:2

**ago** 23:4 35:8 46:12 70:1 77:24 80:14 131:16 132:5 135:7 136:15 150:16 166:6 173:23 189:5 189:14 192:7

**agree** 13:23 28:18 35:16 47:3 54:10

69:11 70:5 73:11 101:11 102:1 106:19 111:23 126:7 132:6 153:21

**agreed** 11:11 19:24 20:13 21:6,10 29:11 57:3 62:23 76:23 80:6,12 101:9,12 102:19 104:5 105:17

**agreeing** 111:24

**agreement** 18:4 19:5 21:18 70:21 83:1 100:23 126:13 134:13,16,19 134:19 135:3 160:7 163:8,10 163:13,17,21 164:6,8 178:18

**agreements** 126:10

**agrees** 126:6

**ahead** 33:9 36:19 75:21 89:23 90:8 137:24

**aid** 143:7

**aided** 151:18

**air** 37:6

**al** 1:7

**alerting** 151:16

**allegation** 57:15

**allegations** 53:17 94:11 106:2 114:4 169:11

**alleged** 101:16 135:15

**allegedly** 113:3 113:3,4

**alleging** 96:14

**allow** 59:8 148:1 156:21

**allowed** 89:17 99:12 160:12

**allowing** 148:5

**alluded** 32:24

**ambush** 146:13

**ambushing** 157:4

**amend** 21:11 183:24 184:11 193:3

**amended** 17:3 70:20 71:12,19 71:23 72:1,11 72:18 94:6,16 114:2 122:20 144:13 173:22 181:17 183:5 185:9

**amending** 71:17

**amendment** 175:9

**american** 1:6 58:19 95:12,13

**amount** 131:7 155:8 191:14

**amounts** 64:22 82:15 152:4 189:1

**amy** 2:10 6:17

**analysis** 23:13 24:6 181:16

**analyzed** 89:13

**ancillary** 67:22 68:10

**andrew's** 99:9 182:21 190:10

**andrews** 2:10 6:17,17 9:7 14:16,17 16:1 16:3 17:2,7,9 19:7,10 20:12 20:17 21:10,14 28:18 32:8,10 35:16,17 38:5 45:3 53:3,5 55:5 63:21 70:13,19 71:2 71:20,22 72:3 72:8,17,22 73:5 74:1,21 75:16 76:20,22

**[andrews - appreciate]**

78:16 79:1,17
79:19 80:21
81:3,6 82:24
83:14 85:4,7
89:11 90:8,9
92:23 93:5
99:6 100:22
101:1,19,22
102:7 103:12
105:17 107:7
110:11 111:8
112:1 113:1
115:11 116:12
116:24 117:5,9
117:15,19
119:6,8,22,23
120:22 121:8
121:12,16
124:4,6 126:9
126:11,23,24
129:13 132:9
132:17 133:18
133:24 134:2
134:16,17
135:19 136:8
136:10 137:12
137:24 138:1,7
138:9 142:6
144:6 147:21
148:3,7,9,24
149:21 150:2,5
150:12 151:5,7
151:10 152:2
153:20 154:15

156:2,7,16
158:3,23 159:7
159:8,21 160:9
160:23 164:22
165:13 166:9
166:20 168:11
168:23 172:3
173:13 174:6
176:11 179:4,7
180:19,23
181:3,6,14,23
182:2,13,16,23
183:7 184:19
184:20 185:8
185:17 186:1,5
186:8,14
187:20 188:5
191:1,6,23
192:9,19 195:1
195:5,16
**annoyance**
107:22
**annoyed** 30:24
**answer** 45:23
46:4,7 48:20
62:19 67:13,14
86:20,24 92:9
107:3,5,16,17
107:21 111:14
117:16,17
118:11 119:3
119:11,19
123:17 125:6
150:22 165:6

167:3 172:15
172:17 173:24
190:7
**answered**
66:21 119:6,8
**answering**
107:2
**answers** 48:16
57:19 68:5
72:1,11 95:20
159:5
**anticipate**
170:10
**anticipated**
53:12
**anticipation**
22:22 23:12
24:1 25:22
36:2 37:24
41:11 49:17,19
51:19
**anybody** 5:21
8:11 27:16
29:16 56:14
103:3 126:16
154:21 182:24
**anymore** 70:3
**anyway** 77:6
**apace** 8:2
**apart** 184:22
**apologize** 5:17
17:7 33:13
48:7 77:15
81:11 98:15

101:22 174:20
180:21
**apparent**
127:14
**apparently**
56:7 118:19
128:14 167:13
175:17
**appear** 12:1,3
89:4 193:7
**appearances**
2:1
**appeared** 2:8
2:14,18,22 9:9
**appears** 18:18
51:21 180:13
**applicable**
110:5 115:20
171:17
**applied** 32:7
51:15 91:14
**applies** 115:18
123:7
**apply** 52:16
78:9 91:11
115:16 123:9
193:2
**applying**
193:23
**appointed** 10:3
195:15
**appreciate** 7:22
109:19 150:9
188:8

**appropriate**
39:1 93:21
166:4 173:4
187:16 191:7
191:15
**arbitrations**
93:16
**architect**
163:10
**architectural**
164:13
**arguably**
154:18
**argue** 23:22
42:21,23 61:24
143:16
**argued** 184:15
192:14
**arguing** 106:16
**argument**
29:18 80:18
91:2 98:17
**arguments**
90:16 122:16
**arisen** 11:8
18:12
**arising** 23:8,10
29:22 30:2
73:14
**arm** 12:16
**armed** 141:12
**arose** 79:19
174:16

**array** 38:3,8
39:11,14,17
40:9 50:11
128:23
**arrive** 11:18,18
109:1
**arrives** 11:20
**articulated**
114:5
**ascertain** 177:6
**ascertainable**
19:18
**aside** 10:5
27:20 37:21
83:13 100:3
131:19
**asked** 6:2 11:6
12:5 17:15
20:18 29:7
31:6 33:23
36:23 57:2
58:5 59:11
66:21 76:21
85:18 86:21
109:12 110:21
111:1,4 112:17
114:7 116:1
118:14 125:16
125:19 133:7
135:10 156:18
156:20 175:16
177:11 181:13
184:1,18
185:14,20

189:10
**asking** 16:18
17:11 27:16,18
37:4 91:12
98:15 103:5
105:6 110:18
118:20 120:3,5
121:18 122:15
123:10 164:3
166:17 174:5
175:8 181:20
186:19,20
193:17
**aspects** 149:7
**assert** 142:2
**asserted** 48:4
90:16 135:12
140:8 147:18
**asserting** 37:7
137:6 140:9
141:16 144:19
148:10 152:24
**assertion** 48:15
140:6
**assess** 132:19
132:21 161:24
**assessed** 190:19
**assessment**
57:4
**assistance** 9:3
36:14
**associates**
181:8,13,22,24
182:7

**assume** 10:24
45:23 78:15
100:11 121:6
126:1 138:5
150:16 156:10
167:12 191:10
**assumed**
112:13
**assuming** 92:21
**assumption**
43:14 195:20
**assumptions**
58:21
**assurances**
195:22
**assure** 177:9
**astonished**
10:11
**attach** 92:21
**attached** 76:13
76:15 88:10,15
90:6 97:3
98:17 114:22
129:16
**attachment**
16:15 95:1
**attachments**
39:4 93:11
98:24 99:1
**attacking** 61:16
**attempting**
50:22
**attended** 56:3

**attention** 194:17
**attenuated** 88:4
**attorney** 7:14 9:8 16:14 52:3 52:5,6,13 65:11 82:12 83:14,16 110:4 110:4 112:13 113:21 130:5 157:7 158:17
**attorneys** 62:19 159:23 190:12
**attributable** 144:8
**attuned** 45:20 46:13
**augmenting** 195:2
**august** 33:5 42:8 56:3 78:9 82:22 84:6 88:5 103:17,21 103:22 105:5
**authority** 82:9 156:4 186:21 187:18,21 188:9
**authorized** 194:21
**available** 10:16 10:18 12:6 18:9 21:13

26:15,16 116:9 118:6 119:12 119:14,17,18 127:21 194:9
**average** 115:22
**aware** 27:4 29:3 32:23 72:12 98:9 106:23 119:23 121:12,16 134:21 135:2 181:9 182:4 193:20

**b**

**b** 2:19 39:13
**back** 17:10 19:2 29:12 33:11 35:9 37:2 47:23 50:14 54:18 57:16 63:23 70:1 77:3,3,13 79:1 80:22 92:15 94:18 101:2 104:20 104:21 106:6,9 109:11,19,21 110:9 137:10 145:10 146:14 165:5,9 168:8 168:12 174:24 189:7 191:12

**background** 67:6
**backwards** 106:13
**bad** 48:3,5,15 48:17 49:12 53:17 57:15 61:9 62:12 87:18 90:18 105:21 114:1 144:5
**balance** 88:3
**balls** 37:6
**band** 143:7
**barely** 180:8
**barred** 188:3
**based** 21:12,15 24:2,9 37:11 56:5 57:5 91:16 100:14 100:23 114:20 114:21 116:14 118:3 122:13 130:20 136:14 153:4 163:2
**bases** 21:23 94:1 96:17 142:2
**basic** 42:13,15
**basically** 18:18 56:13 57:4 135:17
**basis** 12:5 24:22 25:21

32:14 35:19 36:4 44:9,14 48:23 69:6 89:21 91:9 96:2 98:12 99:14 100:5 106:1 109:13 112:3 114:14 114:15,18 121:3,5 122:18 128:12,18 129:8 131:11 140:24 142:19 148:10,19 149:4,6 156:21 159:22 172:24 175:9
**battles** 75:4
**begets** 64:22,23
**beginning** 10:18 33:5 36:7 77:13 124:10 126:22 172:5
**begun** 38:14
**behalf** 2:8,14 2:18,22 4:21 5:4,23 6:19 7:11,16 13:21 63:6,18 87:6 134:7
**behold** 26:24
**belabor** 194:5

**belaboring** 95:9

**belated** 18:9

**belatedly** 179:9 179:12

**believe** 10:4 11:16 14:14,21 15:24 17:4,17 18:6 19:24 27:8 40:16,17 42:9 46:7 62:20 63:4 64:18 71:22 72:23 73:10 75:17 80:5,21 94:2 100:12 105:10 114:19 119:8 124:24 127:1,22 133:15 146:8 171:20 172:5 173:4 195:5

**believing** 172:24

**bell** 91:13

**benefit** 39:10 99:24 193:15

**best** 60:2 67:1 73:24 91:14 92:8,21,22 114:22,24 115:8 116:6,10 117:21 118:8 121:21

**better** 34:17

**beyond** 18:17 37:16 105:6 138:24 142:3 195:2,14

**bid** 68:2 153:14

**big** 35:21 38:24 124:5 187:2

**bigger** 103:13

**bilateral** 194:24

**bilaterally** 124:4

**billing** 83:16

**bit** 92:5

**blame** 33:24

**blow** 12:17 27:17

**blown** 12:2 13:3 27:15

**board** 80:5

**body** 138:11

**boston** 1:1 2:6 2:16 68:4

**botched** 180:15

**bothering** 153:14

**box** 25:5 103:6

**boylston** 2:16

**br** 37:3 38:8 39:12 40:9 50:11 128:23

**bra** 136:20

**brief** 31:13 45:4 88:16 90:7 98:24 100:1 108:7 117:18 118:18 122:12 165:21 178:2 187:21 188:5

**briefed** 31:21 186:22 195:8

**briefing** 12:3 13:3 31:11,22 90:24 97:3 111:5

**briefly** 76:21 113:24 190:8

**briefs** 11:17 23:20 28:13,14 29:15,16 107:10 108:21 109:1 111:3 112:11

**bring** 44:2 72:12 123:20 124:1,3 145:19 146:6 154:21 158:7 173:15 187:4 191:17 194:17,22

**bringing** 60:7

**broad** 56:4 117:23 120:4

**broaden** 166:18

**broadened** 178:11

**broader** 131:20 165:18 188:10

**broadly** 128:19 128:21 177:5

**brought** 33:6 80:5 96:16 103:20 129:2 130:1 145:22 173:4 191:10

**brsa** 27:7

**bucket** 47:4,18 81:23 82:10 165:14

**buckets** 20:21 21:17 46:20,24

**build** 59:13

**building** 81:14 87:7,13

**buildings** 57:23 59:13

**built** 96:24

**bunch** 187:10

**burden** 65:7 123:11

**burdened** 64:12

**burdensome** 67:4

**business** 47:2,6 47:9,12,18 53:16 61:13 87:9,11,14

89:6,10,16
92:24 127:8
150:19 169:17
197:8
**busy** 26:19
**buy** 13:1
**bystander** 65:5

**c**

**c** 41:3 197:3
**c.s.r.** 197:5,20
**calculate** 21:20
**calculation**
19:18 47:16
**calculus** 178:9
**calendar** 26:13
26:14,17,19,21
31:3 192:4
**call** 4:9 6:12
9:12 28:21
49:17 52:11
106:24 135:12
162:1 176:20
177:10 180:2
182:24 183:16
184:23 186:10
187:1 191:18
192:17,22
193:4
**called** 34:24
47:18 56:6
65:6 83:24
84:19 136:21
159:16

**calling** 146:18
193:1
**camera** 4:17
90:1,2 91:7,9
**cancel** 27:19
**canceled** 8:6
11:4,11 12:1
13:4 30:8
106:11,12
126:4
**cancila** 2:9 6:18
**candidly**
153:20
**candor** 145:24
159:8
**capital** 39:12
39:13,13
**capitals** 40:15
**care** 117:24
118:16,22
120:13,21,23
160:21
**careful** 141:4,8
**case** 4:6,10
10:2,5,8,9,11
13:14,16 14:11
14:19 16:17
21:16,22 23:7
25:7 26:5
29:21 30:14,21
30:23 32:6
38:1 42:13,14
42:15,16,17,20
47:4,10 50:17

53:11 56:15
57:5 59:14
62:7 64:10
65:5 66:5,11
68:9 69:19
71:7 74:24
75:8 78:8 80:3
83:21 84:2,3
84:11,16,21
86:16,18 87:20
89:11,20 90:16
94:7,10 97:9
97:20 104:16
105:3,16 108:9
108:15 111:19
112:3 113:12
116:3 120:7,8
120:24 123:22
123:23 125:10
125:21 126:12
128:18 150:1
157:24 169:16
171:8,21 175:2
175:12 177:10
178:1,3 179:8
180:13 181:2
182:3 188:3,6
192:13
**cases** 16:13
26:20 46:13
52:20 81:19
89:8 118:15
179:12

**casual** 12:15
**categorical**
60:2
**categories**
19:12 21:1
46:19 55:14
81:8,9 117:22
**category** 52:1
69:18 81:11
100:17
**cause** 31:16,17
145:10
**caution** 135:9
139:9
**cautiousness**
139:21
**cc** 190:12
**ceo** 176:1
**certain** 8:15
52:16 65:19
81:24 121:10
193:9
**certainly** 19:7
20:10 33:15
40:8 79:19
100:20 130:5
182:11
**certified** 197:7
**chain** 57:6
60:21
**challenge** 123:5
**challenges** 71:9
**challenging**
140:6

**chance** 54:21 77:21 78:11 92:16 126:23
**chances** 44:5
**change** 16:18 42:22 54:6 75:10,14 158:23 191:13
**changed** 25:7 144:4
**changes** 178:9
**changing** 20:16
**chapter** 151:23
**charming** 150:8
**chart** 6:23 7:1 7:13 11:18 18:11 25:5 31:7 55:8,18 55:24 70:17,19 70:24 73:12,23 74:2,18 75:21 78:14 79:3,15 108:14 122:18 124:2 160:8,11 175:24
**charts** 7:21 74:3,5
**check** 105:9
**checked** 99:19
**chicago** 2:12 197:8
**chiding** 13:8 28:1

**chief** 53:11 177:10 181:6
**choose** 182:17
**chose** 36:24 119:17
**chosen** 84:14
**chronology** 144:6
**circle** 79:1
**circumstance** 74:17
**cite** 92:18
**cited** 65:22 118:18
**city** 197:8
**civil** 1:12 25:12 50:24 89:19 128:7
**claim** 8:16 33:6 33:7 36:13 37:15 39:6 41:19,22 48:5 48:6,15 50:21 53:16,18 62:12 80:1,17 81:13 82:3 84:1,4,7,9 85:11,20 86:2 87:3,11,15,18 87:19 88:4,7 88:20 89:3,15 90:22 91:15 94:3,7,24 95:3 95:17,19 96:19 97:6,14,14

98:7 101:24 102:13,16 103:1,17 105:20,22 114:4,15 116:3 116:18 118:5,7 120:8,9,16,17 120:21 127:8 127:17 129:4,7 135:13 147:6 151:21 152:10 188:23
**claimed** 160:1
**claiming** 11:12 23:5 37:10 146:4 155:23 175:20
**claims** 47:22 61:8 81:16 82:3 87:4 89:2 89:3,12,16 90:18 95:4,10 95:15,22 104:17,23 105:18 113:24 114:1,5 115:6 115:7,8,9,12,13 115:17,19,23 116:1,17 118:5 121:14 182:12 183:15
**clarification** 110:18

**clarified** 149:3
**clarify** 91:5 104:14
**clarity** 54:23 55:16 115:24 153:22 194:20
**clear** 10:19 13:18,19 20:11 35:3 50:15 55:24 80:3 83:1 86:21 89:7,8 90:10 90:23,24 91:12 91:22 99:11 101:20 106:14 112:6 117:4,4 128:19 129:16 136:6 149:3 155:18 157:11 157:21 166:21 173:17 179:8 182:2,3 186:20 188:6
**clearly** 123:18 130:7 144:23 187:9 191:11
**client** 52:2,6,6 52:14,14 56:5 64:7 66:2 67:12 70:6 80:1 82:12 83:14 93:20 99:9 110:4 112:14 151:19

182:13
**clients** 28:24
  52:4 107:20
  174:23
**clock** 29:1
  188:17 191:12
**close** 92:24
  152:17
**cmc** 40:19
**code** 40:12
  50:11 74:9
  129:23 130:16
**cohen** 27:5,8
  73:22 76:8
  93:2,6,17
  150:4 174:11
**collaborative**
  33:20
**collaboratively**
  62:20
**colleague**
  160:23
**colleagues** 4:14
  6:21 7:8
  191:23
**collected** 83:7
**collectively**
  94:18 108:10
**colloquy** 52:24
**color** 74:9
**column** 73:16
  73:20,23 74:18
  126:20 183:14
  196:10

**come** 4:17
  34:18 54:18
  57:16 59:6
  104:20 110:9
  145:20 146:14
  152:4 155:6
  189:20 196:1
**comes** 104:21
**coming** 77:5
  88:14 111:13
  160:15 188:24
**commencing**
  1:16
**comment** 62:15
**comments**
  27:13 127:3
**committed**
  19:21 34:24
**committee**
  178:4 179:8
**common** 12:9
  123:14
**communicate**
  33:14
**communicated**
  55:21
**communication**
  57:13 131:5
  140:2 163:11
**communicati...**
  8:8 36:13
  38:12 39:2,17
  39:21 41:14
  44:18 48:21

49:10 50:1
  51:16,17 56:16
  72:24 88:10,19
  126:8,11 131:7
  137:13 140:1
  151:3 164:7
**companies**
  120:2 121:2
**company** 1:7
  61:16 68:2,3
  69:24 95:12
  120:2 139:20
  164:16
**compare** 113:7
**compared**
  129:23
**compel** 79:21
  79:23 82:19
  86:13 90:14
  99:17 101:6
  140:14 153:15
  189:20 191:2
**competitors**
  86:9
**complaint** 94:5
  94:6,6,16,22
  96:16,17 97:17
  106:4 114:2
  123:16 169:9
  172:11 173:22
  181:18
**complete** 40:5
  58:1,15 131:18
  197:14

**completed**
  58:17 80:14
**completely**
  153:21
**completion**
  14:23 17:23
**compliance**
  13:8 130:16
  146:8
**compliant**
  129:23
**complication**
  139:16
**complied** 18:1
  85:8,18 122:24
  163:23
**comply** 13:10
  27:24 99:20
  154:18,20
  155:9
**complying**
  155:2
**comprehensive**
  9:22
**compromise**
  80:4 90:20
  91:4 99:19,21
  179:1,17
  180:12
**compulsory**
  13:14
**computation**
  19:12,14 20:22
  46:22 47:11

computations 21:23

compute 21:11

concede 90:20 105:17 130:14 156:20

conceded 90:21 180:2

concedes 95:21

conceptual 59:3 60:16 65:23

concern 131:22 148:15 153:2 154:23

concerned 88:6 93:1,8

concerning 66:4 138:12

concerns 14:22 17:18,24 72:3 148:13

concerted 130:7

concise 107:17 147:17

concluded 116:14

concluding 58:17 172:12

conclusion 34:13

concurrently 87:5 95:22

conduct 48:6 97:11 99:13 105:1 121:21 129:3

conducted 80:9 166:22

confer 12:21 28:20 29:11,23 30:3 34:12 45:7 71:10 72:17 74:6,11 74:12 76:23 77:10 78:2,4 100:13 109:5,6 109:8,24 118:4 125:8 127:21 127:23 160:5 174:1 186:24

conference 7:24 28:22 94:17 106:24

conferred 18:2 73:10 110:16

conferring 33:19 176:24

confers 19:3 28:22 30:10,15 125:12 128:11 128:16 169:22 170:8

confidence 86:7

confident 69:12

confidential 82:7 84:24 86:4,6 93:3,15 102:18

confidentiality 84:20

confidently 72:13

confirm 57:2 100:12 114:8 184:12

confirmation 119:4

confirmed 79:7

conflating 101:3 137:11 173:19

conflict 78:23 118:16 119:1 119:24

conflicts 79:4 117:24 118:23

confused 22:16 25:9 128:9

confusing 153:21

confusion 146:22

congress 2:20

connect 142:16

connection 24:10 51:6 67:8 96:6 109:15 151:20

161:24

consequences 145:9

consider 144:9

consideration 169:12

considered 162:2

consigli 33:3 35:21,23 36:17 36:22,24 37:1 37:4,7,9,17,21 38:3,9 39:9 40:9 44:24 50:11,19 51:4 62:8 127:6,9 127:20,20 128:1,5,13,16 129:16,21,24 130:16,22 131:4,5 132:1 132:7,10,14,24 133:6,11,14 134:18 135:18 136:2,13,17,19 136:21 137:5 137:13,19,23 138:3,10,13,17 139:2,8,13,16 140:6,12,14 141:13 142:1,6 142:9 144:2,17 145:7,13 146:2 146:10 147:8

147:19,22 148:7 149:2,5 149:14,18,19 150:3,20 151:3 152:7 153:3,24 154:12 155:1,8 155:22 156:7 156:23

**consigli's** 127:15 131:8 137:16 140:3 141:21 142:9 142:17 154:11 155:20

**consiglia** 128:23 148:5

**consistent** 55:13

**consistently** 165:20

**consolidated** 88:16 90:6 95:23

**construction** 4:5 50:20 56:5 57:24 58:8,14 58:17 59:3,5 61:1 68:3 96:22 167:22

**construed** 119:18

**consultant** 32:15 40:21 49:16 55:6

121:6 128:15 133:20 151:16 152:2 181:8

**consultants** 8:15,18 35:24 36:10 38:12 39:3,5,21,23 40:23 44:13,24 48:18,22 49:11 49:13,19,21 50:13 51:16 62:7,8 63:11 153:1 170:15 174:23 181:10 188:22 190:23

**consultation** 169:11

**consulting** 32:19 33:2 37:13 38:8 49:23 50:2,4 72:14 128:22 129:1,13,14,18 130:4,9 134:20 181:15 194:2

**contact** 11:21 185:13

**contains** 89:10

**contemplated** 167:21

**contend** 73:1

**contending** 112:1

**contested** 47:10

**context** 35:15 55:17 89:22 139:12

**continental** 40:19

**continually** 188:11

**continue** 143:16

**continued** 11:24 58:7 186:9

**continuing** 29:9

**contract** 164:12

**contractural** 95:11

**contrary** 85:14

**contributed** 96:21

**control** 18:19 37:10 139:8 147:19 150:4 164:15 183:7 189:23 190:6

**controlled** 18:19

**controlling** 18:20

**conversation** 18:16 36:21 137:19

**cook** 1:15 197:8 197:16

**cooperation** 192:11

**cooperatively** 78:21

**coordinate** 93:5 191:24

**cop** 74:23

**copasetic** 191:11

**copied** 128:2

**copies** 93:7 158:18,19,21

**copy** 20:9 93:18 94:22 113:2

**cord** 196:13

**corner** 74:23

**correct** 6:9 14:2,6,7 16:1 17:9 20:2,5 22:6,13 33:14 33:19 40:10,17 41:13 42:1 46:1,2 47:17 48:13 50:14 59:17,21 71:2 72:22 76:3 77:7 78:16 92:11 98:15 100:24 105:11 108:4 119:22 124:6,20

133:14,18 139:18 144:12 147:17 167:6,7 177:5 179:7

**corrected** 144:11 148:16

**corrective** 184:8

**correlation** 97:1,2,5

**corresponden...** 17:11

**cost** 56:9 144:9

**counsel** 6:10,12 13:9 16:11,22 26:7 30:16,18 30:24 36:14 44:18 51:18 55:19 56:19 57:10,17 63:8 65:2 74:5 82:15 103:23 112:19,21 118:20 123:2 129:11 138:10 140:4 142:17 151:6 152:19 154:5 155:1,12 168:2,4 169:24 170:8 190:15 190:16 195:21

**counsel's** 180:15

**count** 12:20 114:2

**counter** 6:18

**countless** 38:12

**county** 1:15 197:3,8,10,16

**courier** 158:7

**course** 4:11 32:20 35:20 37:15 59:1 69:15 89:6,9 89:16 97:15 123:5 176:1

**court** 1:1 4:2 4:18 7:5 8:22 10:3,3,21 12:15,16,17,17 13:19 14:6 16:23 25:8 26:10,18 28:14 39:11 58:11,12 59:8 60:4,18 75:11 86:22,24 90:11 99:22 154:1 180:10 184:15 187:4 188:1 189:19 191:17

**courteous** 191:19

**courtesy** 12:10 123:14

**courtroom** 33:16

**courts** 1:13 197:10

**cover** 68:17 147:9

**coverage** 87:10

**covered** 5:20 155:17 174:9 174:11

**crazy** 64:21

**created** 15:12 36:1,12 37:1 50:19 68:7 89:9 136:22 140:17 145:4

**credentials** 46:16

**creditor** 1:3

**cref** 40:21 41:3 41:7 177:4

**criteria** 162:1 165:15

**critical** 29:20 127:10

**critically** 114:1 114:8,12

**criticized** 193:12

**cross** 25:15

**crowded** 26:13 26:14

**crowley** 164:23 167:1

**crystal** 13:18 13:19

**csr** 1:14

**cumulative** 39:20

**current** 13:14 13:16 122:4 180:3

**currently** 53:20 61:7 109:22 188:14

**custodian** 187:12

**custodians** 10:13 166:10 177:21

**custody** 147:19 150:3

**cut** 122:21,23

**cutoff** 84:6 88:12 178:11 179:10,11

**cutting** 61:12

**cv** 1:5

**d**

**d** 1:14 3:1 197:5,20

**damage** 56:10 58:2,16 59:4 181:16

**damaged** 47:22 57:23 120:16 120:20

**damages** 15:22 17:24 18:4,5

19:5,8,10,12,18
19:22 20:4,21
20:23,24 21:1
21:6 35:13
46:18,19,22
47:12,16,18
48:1 70:20
**danella** 93:13
**danger** 42:4
**dark** 154:5,9
**data** 131:3
169:12
**date** 10:20 11:3
11:9,17,24
12:2,6,6,15,16
12:18 13:4
19:23 20:16,17
20:18 21:5
22:6,7,9,12,17
22:18 23:19,22
23:22 25:14,14
27:19 29:15,17
37:19 43:15,15
54:4,7 56:22
60:15 62:24
63:15 69:14
70:5,5,7 71:11
72:15 75:3,9
75:11,13 78:24
79:7 88:12
103:19 104:4
104:19 105:6
105:15,18
108:19,20,22

108:23,24
109:1 111:5
150:13 154:12
154:15 157:21
160:21 185:14
185:20
**dated** 51:22
130:19 163:22
**dates** 11:7 13:3
27:15 29:23
30:6,8 31:3,4,6
31:13 33:23
45:9 55:4
56:21 62:17
63:1,12,16,17
75:12 78:21
106:11,12
108:18 124:15
126:3 131:6
152:21
**day** 1:17 8:1
12:16 29:11
68:24 73:23
74:7 77:3
97:23 103:7
108:12 112:11
124:1 142:22
157:1 180:8
185:13 197:16
**days** 18:3 30:10
30:13 53:22
71:11 72:19
73:14,15 77:4
77:11,20,24

108:21 111:5
113:12 150:19
152:16 160:3,6
160:7 173:23
196:7,8
**dbi** 56:6 57:21
62:1,7 68:1
**deadline** 15:16
22:1 26:6
62:22 73:18
104:19 122:11
122:11 157:15
157:18,20
**deadlines** 14:5
14:19 23:1
73:19
**deal** 82:5
118:15 158:19
189:14
**dealing** 15:5
64:2
**deals** 84:22
**dearborn** 2:12
**december** 11:7
11:10,11 15:6
17:11,15 30:5
30:6 31:6,8,8
33:22 34:9,10
34:19 42:11
57:20 76:19,20
108:19 125:7
125:16 126:3
142:14 170:7
177:12 182:13

188:15
**decide** 23:3
26:21 42:3
77:21 113:7
122:13,18
138:24 187:23
187:24
**decided** 12:12
23:4 40:2 83:8
153:3
**decision** 42:19
92:4 169:6,7
169:13 170:13
170:14 172:9
**decisions** 113:8
169:18 171:13
171:14
**decks** 82:1
**deemed** 179:12
**deems** 93:20
**deep** 52:22
**defendant** 61:9
66:5 126:5
**defendant's** 6:3
7:1,3,12,18
55:8 63:11
87:4 128:3
174:7
**defendants** 1:8
2:14 6:16,20
7:11,15,17
8:14,16 9:2,6
11:22 14:17
15:19 16:3

17:3 21:21
32:13 33:1,12
33:22 35:23
36:18,21 38:11
38:23 40:7
44:23 48:5,11
48:15 52:11
63:19 71:13,15
77:8,17 83:2,6
83:11,23 84:14
84:23 91:6
114:7 123:8
126:6,18
131:23 155:5
161:1,18
167:14 173:22
174:21 175:5
188:14

**defense** 15:20
134:19 154:5

**defenses**
183:15

**defer** 32:12

**deficiency**
110:14 127:19

**degree** 66:16

**delatori** 176:1
180:1

**delay** 14:23
19:4 22:5
23:19 25:7
28:3,3 31:16
45:22 64:22
125:22 126:21

144:8 180:16
196:4,11

**delayed** 27:23

**delaying** 42:24

**delays** 28:1
31:17 74:6
96:21 112:8

**delegated**
188:9

**demand** 20:4
44:17,19 51:8
91:1 151:24

**demanded**
174:21

**demonstrate**
141:8

**demurred** 34:7

**dep** 175:9

**depends** 70:13

**deponent**
123:12

**depose** 61:17
127:5 177:11
178:10 179:22
189:17 192:2,3

**deposed** 33:4
62:7 148:24
181:1

**deposes** 197:6

**deposition** 4:7
5:8 15:2 38:9
56:20 57:10,12
57:18 58:4
59:9 60:14,15

62:4,23 63:7
63:20,21 66:1
66:13,16 68:11
68:12,13 69:1
73:2,4,5 75:7
77:6 78:10,12
78:19 79:3
104:1,10
114:10 119:21
122:1 123:4,6
132:2,8 143:13
146:10 152:20
161:4 167:2
168:13 173:8
175:24 178:22
179:19 184:19
185:5,6,14,20
186:4,6 189:3
191:21,24
192:21 195:20
195:24

**depositions**
15:3 17:23
24:17 62:16,21
63:17 66:24
78:18 79:12
123:7 124:9
157:23 167:5
171:24 175:3
176:6 177:9
178:13,17
183:21 184:21
186:2 187:24
188:19 191:20

193:8 194:11
194:15

**deprioritized**
178:23

**derivative**
52:15

**derived** 21:23

**described**
29:24 143:4

**description**
54:13

**design** 4:5
57:24 164:14

**designated**
63:13 95:15
164:24 183:4
185:11

**designee**
104:17

**designees** 63:12
63:16 77:2,8

**despite** 161:9
161:19 164:8

**destroy** 46:12

**detail** 9:24 96:8
96:17

**detailed** 94:5

**details** 27:21
96:5

**determination**
99:16

**determine**
23:14 24:19
26:1 78:3

85:15 192:1
**determined**
  105:5 116:16
**developed**
  127:6
**diaz** 184:24
  185:11 187:13
**diaz's** 186:6
**dictate** 104:23
**difference**
  122:19 177:22
**different** 16:19
  63:13,14 68:5
  85:21 133:10
  144:16 149:24
  192:16
**dig** 117:17
  124:17 136:4
**digest** 38:15
**digging** 113:2
**digital** 158:21
**diligence** 120:6
**dime** 125:20
**direct** 51:14
  97:1,13,16
  169:8
**directing** 128:2
**direction** 51:17
  147:24 153:4,6
  153:7 194:8
**directive**
  157:12
**directly** 66:4
  156:16

**director** 58:20
**disagree** 19:20
  87:2 107:4
  192:9
**disagreed** 88:2
**disclose** 22:8
  32:16 43:11
  53:8,19,20,21
  53:22 54:11
  82:9,14 86:9
  179:13
**disclosed** 17:21
  23:16 32:22
  41:10 178:21
  179:14 185:1
  193:14
**discloses** 54:11
**disclosing**
  183:14
**disclosure** 16:6
  18:1,9 19:9,10
  19:14,16,22
  22:2 25:15
  32:17 35:15
  46:6 54:2,2
  58:6,7 102:20
  139:4 176:15
  177:2 178:5,7
  181:14 183:12
  184:4,8 185:10
  192:7
**disclosures** 7:4
  16:4 17:4,12
  21:11 25:10,11

35:11 53:7,23
54:8 70:22
71:23 72:2,4
174:13,16
175:20,23
176:4,12,23
177:12,24
179:9 182:22
183:6,10,24
185:3 193:3
**discover**
  172:12
**discoverability**
  84:6 88:3
**discoverable**
  84:10 94:2
  104:14 105:5
  105:19 109:20
  192:15
**discovered**
  160:3
**discovery** 4:10
  7:6 10:10,14
  11:6 14:23
  15:11,15 16:24
  19:19 23:2,18
  24:8 25:3
  42:18,24 43:2
  43:3 50:23
  56:5,24 60:23
  61:8 62:21
  75:4 80:2 96:7
  98:18 105:10
  116:1 128:7

129:8,19
130:11,24
135:8 157:15
157:18,20
161:2,16
165:22 166:4
169:5,15
172:14 173:3
173:18 174:17
175:6 177:17
178:11 179:10
179:11 184:10
184:12 187:8,9
187:15 188:7
188:21 191:16
**discuss** 60:22
  195:17
**discussed** 81:17
  89:13 128:24
  189:6
**discussing**
  27:22 88:20,20
  88:21 120:1
**discussion**
  85:14 131:21
**discussions**
  19:20 34:1
  81:16 169:22
**disingenuous**
  192:23
**dismay** 191:8
**dismiss** 94:8
  105:22

**[disorganized - doing]**

| | | | |
|---|---|---|---|
| **disorganized** 111:13 | 116:19 118:9 124:8,16 | 51:4 59:14 61:19 65:10,13 | 145:7 146:3 147:1,12,14,17 |
| **dispositive** 176:18 182:18 183:19 | 127:11 135:13 135:18 137:6,8 140:8 141:4,16 | 65:15,17 66:1 66:4,10 67:10 67:15,16,19,19 | 148:8,18 149:1 149:4,14,18,20 150:3,16,21 |
| **dispute** 24:23 38:10 56:16 59:16,20,22 73:14 84:8 88:7 160:8,18 194:16 196:6 | 144:18 147:3,4 147:5,10,18 149:3 152:6 153:10 158:10 161:23 162:4,5 163:5 164:1,11 | 68:16,20,23,24 69:4,18 79:17 80:6,23 81:7 81:19,24 82:2 83:3,5,7,8,10 83:12,15,24 | 152:4,9,14,18 152:23 153:13 155:11,19,21 156:11,21 158:1,4 159:1 161:6,9,12,14 |
| **disputes** 31:5 43:12 165:23 166:2 173:6 | 164:11 165:11 167:9,13 170:4 171:22 172:1 190:17,17 | 84:22,24 86:3 88:10,13,17,23 89:5 93:10 95:5 98:13,16 | 161:20 163:1,2 163:19,23 165:16 166:14 166:22 168:9 |
| **disputing** 84:3 | **documented** | 99:12,13 102:9 | 170:1,6,7,13,19 |
| **disruption** 44:6 | 84:11 | 103:16 109:12 | 171:19 172:8 |
| **distinction** 48:14 110:1 178:4 | **documenting** 170:14 | 110:3,12,17 112:9 115:15 | 172:16,18,20 173:11 181:10 |
| **district** 1:1,1 1:13 17:5,6 89:8 90:11 | **documents** 15:6 18:13 20:23 21:4 | 116:5,16 117:10,12 120:7 124:5,15 | 182:1 188:16 189:7 190:22 190:23 191:2,5 |
| **dividing** 24:7 26:1 | 23:11,15,23 24:4,9,15,20,21 | 127:15 130:19 131:11 132:4 | **doing** 6:19 29:4 34:24 36:17,18 |
| **docket** 16:12 16:13 102:22 103:5 | 25:20 26:2,23 32:4,14,23 33:8 34:3,4,10 | 132:11,19,21 132:24 133:3,5 135:11,22 | 37:19 38:17 47:21 56:7 74:19 84:16 |
| **document** 16:9 16:15 24:8 25:3 35:7 37:8 42:5 58:22 59:17,21 67:8 75:5 88:24 89:9,14,17 | 35:18,22,23 36:4,10,12,16 37:4,11,14,17 37:18 38:1 39:23 42:6 44:8,10,21 46:23 50:19 | 136:23 137:2 137:13,23 139:14 140:12 140:23 141:14 141:20,21,21 142:3,10,18 143:14 144:20 | 87:21 106:8 112:7 130:2,10 135:15 137:20 137:21 151:17 151:20 153:13 153:24 154:3 155:2 160:6 |

187:3 196:12 197:7

**dollar** 15:21 47:16 87:17 121:10

**double** 58:12

**downgraded** 34:14

**downgrading** 34:4

**dr** 184:24 186:6

**drafted** 61:18

**drastic** 145:9

**drastically** 87:22

**draw** 110:1

**drawing** 103:23

**drawn** 27:4 100:3

**draws** 178:3

**drive** 93:15 158:12 168:5

**drives** 58:12

**due** 4:11 12:2 13:5,21 20:7 22:9 23:19,21 25:1,13,14 28:13,14 29:15 29:17 43:14 53:1 54:4,7 55:4 75:3 77:20 111:5

112:11 120:6 169:12

**duly** 197:6

**dunn** 2:4 4:14 5:11,11,15 113:17,21,24 114:18,21 115:6 157:7

**e**

**e** 3:1 12:20 14:21 16:15 17:17 18:6 20:13 21:9 28:17,21 39:17 40:14 41:3 50:11,12 56:19 61:1,23 62:5 65:23 68:19 72:23 76:5,7 76:13 88:18 93:8 97:2 112:6 137:16 141:10 151:22 153:22 161:20 162:9 174:19 190:11,14

**earlier** 39:5 46:18 48:10 55:21 108:13 109:12 123:22 126:20 128:24 139:4 149:10 181:13

**early** 10:10 24:17 30:5 31:5 81:4 110:15 123:23 127:21

**ease** 94:20 109:14

**easier** 76:6,17 93:11

**easily** 76:5

**easy** 94:16 125:2

**educated** 53:9

**education** 67:6

**effect** 91:3 115:13,14 116:21 187:9 187:19

**effectively** 95:23 114:9

**effort** 130:7 133:15 157:7 172:7

**efforts** 10:1 180:15

**eh** 40:14

**eight** 8:19 14:12 26:15 30:17 40:23 77:19 125:2 182:21 194:1

**either** 27:20 81:3 83:20 85:2 89:18

97:9 123:7 131:4 178:21 179:18

**electronic** 158:19

**eleven** 64:11

**email** 28:9 61:4 76:18 95:1 137:9

**emailed** 185:10

**emailing** 93:1

**emails** 61:24

**embarked** 194:10

**employees** 73:6 177:3,3,4 194:4

**empty** 74:18

**encompass** 53:14

**encourage** 94:4

**endeavor** 123:1

**ended** 180:16

**endless** 107:22

**ends** 196:11

**enforce** 84:10

**enforcement** 82:21

**engage** 29:9 48:17

**engaged** 27:2 29:5 32:3 37:23 41:11 44:14 48:5

49:11,17,19,22
49:23 50:1,14
67:23,24
**engagement**
  27:2 37:16
  134:3
**engagements**
  38:2
**engineer** 24:15
**engineering**
  181:15
**enlarge** 160:12
**enter** 45:9
  73:22 154:16
  178:18
**entered** 82:22
  83:1,21 84:21
  85:10 88:1
  89:20 90:19
  91:17 139:12
  140:13,15
  153:7 154:12
**entering** 7:24
**entire** 40:22
  58:5 64:1
  88:23,24 91:11
  91:14 128:17
**entirely** 125:10
**entirety** 102:15
**entities** 23:15
  31:24 33:3
  37:23 39:9
**entitled** 47:9
  129:8 130:24

154:10 169:18
172:11,13
173:3 177:8
**entity** 4:9 8:12
  27:1 40:4,15
  40:20 52:20
  56:6 59:1
  63:13 136:6
**entries** 15:9
  152:1
**entry** 150:18
  189:4
**equally** 171:17
  183:23 193:2
**equipment**
  120:17,20
**errors** 177:4
**escalation**
  15:23
**especially**
  64:13
**essentially**
  10:12 25:13
  26:8 27:15
  31:2 98:6
  139:19
**established**
  162:6
**establishing**
  105:1
**estate** 41:3
**estimating** 66:9
**et** 1:7

**evaluated**
  195:5
**event** 36:9 80:4
**events** 29:24
  51:9
**everybody** 9:11
  27:15 43:20
  123:3 156:1
  176:19 182:10
**ex** 93:22
**exact** 20:22
  38:17 48:19
  130:2
**exactly** 52:24
  80:22 96:13
  128:15 149:11
  152:11 153:16
  160:15
**examined** 45:1
**example** 74:7
  91:5 129:21
  149:12 164:5
  183:2 184:24
**examples** 74:10
  88:17 90:1,1
  91:13,15,20
**exceed** 195:23
  195:24
**except** 54:1
  63:12 110:4,7
  137:5 144:5
  150:7 190:4
**exception**
  147:5

**excerpt** 94:23
**exchanged** 71:1
**excuse** 13:6
  99:20
**executed** 84:12
  89:20
**executive** 58:20
**exemplars**
  91:10,18,23
  92:2,3,3,10
**exhibit** 92:18
**exist** 114:7,8
  117:8 118:19
  118:21 119:3,5
  161:10,21
  163:3
**existing** 45:5
**exists** 40:4
  114:13,16,19
  164:4
**exit** 117:10
**exited** 97:22
**expansion**
  17:19 72:4
**expect** 14:15
  32:16 170:20
  192:24
**expected** 10:8
**expecting**
  16:22 23:8
**expeditiously**
  122:8 157:13
**expend** 189:1

expense 82:13
experience 56:2
experienced
  66:24
expert 19:19
  21:3,24 22:9
  22:10,17,18,19
  23:6,18,21
  24:24 25:11,13
  25:14,20,22,24
  26:5,24 27:3
  32:15,20 33:2
  33:7 35:19
  36:5 37:2,13
  38:8 43:14
  44:9 46:21
  47:20 48:3
  53:1 54:3,3,21
  55:6 56:14,15
  57:4,6 59:12
  75:3 128:5,22
  130:9 133:21
  134:14 139:23
  146:19,20,24
  148:19,22
expert's 24:8
  129:14
expertise 46:15
experts 21:18
  22:2,7,8,14,21
  23:11,12,23
  24:5 32:3,16
  32:18 35:10,12
  37:22 43:9,16

43:16,23 44:1
44:2 45:11,16
45:24 46:5,6
46:17,23 47:5
47:12 48:2,13
48:21 49:15,16
49:23 50:2,4,7
53:4,7,10,12,21
53:22 54:8,9
54:12,24 59:10
129:1,14,18
130:4 134:20
181:21
explain 8:8
  62:4
explained
  167:8
explaining
  160:8
explains 12:19
explore 169:18
expose 98:4
expressed
  156:7
expressing
  107:21
extend 29:14
extended 14:11
extends 37:16
extension 10:20
  13:18 14:2,3
  14:11,15,18
  15:17 30:20
  43:5,6 111:4

extensive 131:8
extent 7:5
  44:17 65:15
  86:1 88:9
  117:19 121:18
  122:16 166:10
  172:15
extraordinarily
  62:18
extraordinary
  14:10
extreme 143:19
  194:9
extremely
  76:10 83:19
  89:7,8 93:9
  139:21

f

f 41:3 164:15
face 150:8
facilities 41:4
fact 23:14,24
  24:2 34:14
  37:11 59:2
  62:12 73:1,5
  81:13 96:8
  100:13 114:15
  118:19 129:5
  130:7 164:8
  171:3 172:11
factor 23:19
  25:2 104:24

factors 89:1
facts 40:14
  130:21 143:16
  144:11
factual 50:23
  129:7
failed 186:24
failure 146:1
fair 6:6 103:15
  155:8 166:24
  168:22 173:8
  179:1
fairly 33:20
faith 1:11 48:4
  48:5,15,17
  49:12 53:17
  57:15 61:9
  62:12 87:18
  90:18 96:2
  105:21 109:13
  114:1,14,18
fall 10:19 33:12
  81:8 126:3
falls 188:7
false 57:16
familiar 186:15
far 6:10 71:7
  71:14 79:9
  88:6 109:22
  122:12
fast 18:23,24
  56:18 112:4
faster 79:13
  160:20

fault 154:11
fca 50:12
feasible 170:16
february 32:2
56:21 71:9
72:20 75:21
77:20 122:10
122:11 124:1
124:23 127:10
131:13 136:10
139:3 160:18
160:20
fed 93:21
federal 1:12 2:5
25:12 50:24
51:11 83:21
84:16 89:7,18
128:7
feel 149:24
185:5
feels 143:6
ferm 74:3 77:1
fern 5:2,16
6:23 7:1,13,20
11:18 15:24
18:11 25:5
30:12 31:7
45:7 46:10
49:4 55:8,18
55:24 70:17,19
73:12,15,16,23
74:2,18 75:21
77:4,12 78:14
79:15 108:1,14

122:6,18 124:2
160:8,11,18
196:8,9
ferocious
111:20
fifth 63:15
fight 69:14,14
118:20 142:20
188:20
fighting 131:15
158:3
figure 41:6
57:12
figures 47:16
file 13:20 28:15
29:16 36:24,24
37:1 84:4,7,9
88:5 89:2,3,3
93:11,14 95:23
131:18 136:19
136:20,21
137:2,16
144:21 158:10
158:13
filed 17:1,2,5
42:17 79:21
85:9 88:4
90:13 101:7
102:20 153:15
files 128:18
174:22
filing 16:23
43:20 75:9

filings 16:9
108:3
fill 73:17
196:10
filled 73:20
final 15:8 21:22
23:18 193:21
finally 12:11,22
58:6 71:1
135:11 140:13
140:23 141:1
142:16 154:3
155:10
financial 84:19
86:3 181:7
financially
98:10
find 21:9 38:4
70:7 74:7
76:18 91:9
100:4,7,11
126:9 143:21
180:12
finding 90:10
91:3
fine 76:1 95:1
123:21 159:13
finish 21:8
196:15
fire 40:16 139:7
firm 8:14 75:15
141:6 145:3,22
146:2 153:23
157:21 181:15

first 4:12 9:23
16:5 33:3
35:10 43:15,21
44:20 51:21
54:10 64:24
81:11 83:3,19
87:2 99:11
105:8 110:12
111:1 115:12
117:17 125:9
127:23 129:5
130:1 132:23
142:23 148:3
151:5 153:19
160:2 161:12
171:7 189:7
197:6
fit 183:24
five 6:10 30:13
42:20,24 46:8
63:13,16 67:22
70:14 73:15
88:17 90:6
91:6,18 92:11
92:20 123:15
140:16 150:19
151:14 152:16
160:6,7 169:9
183:4 193:5
196:8
flabbergasted
128:9
flood 24:12
56:11 181:16

196:11
**floor** 2:5
**focus** 67:11
  68:14
**foley** 129:10
  134:11,18
  137:9 138:10
**following** 37:2
  103:13
**forbid** 45:17
**forced** 166:16
  178:17
**foreclosed**
  194:11
**foregoing**
  197:12,13
**forever** 155:15
**forget** 12:18
  55:22 140:16
  194:4
**forgive** 38:3
**forked** 97:22
**form** 83:5
  190:18
**formal** 28:21
**formally** 33:14
**format** 92:24
**former** 86:8
  181:6
**forms** 96:2
**forth** 8:1 20:21
  50:16 53:10
  95:21 96:17
  144:23

**forthcoming**
  34:6
**forward** 15:4
  16:14 28:8
  33:18 34:20
  35:4 56:18
  57:18 66:2
  74:1 109:7
  157:12 165:23
  166:2 172:23
  173:5 192:1
**found** 12:8
  43:1 114:23
**four** 5:18,19
  20:21 46:19
  63:10,16 67:2
  67:4 88:16
  90:5 91:5,18
  92:11,20
  121:24 122:5
  140:16 179:20
**frame** 80:24
**frames** 101:3
**frankly** 10:11
  55:11 79:20
  85:20 128:9
  143:9,15 180:2
  180:12 186:11
**free** 69:23
  164:17,23
  165:1,2 180:8
**friday** 14:22
  73:2 75:18

**friendly** 180:3
**front** 154:12,14
**frost** 9:8,13
**frustrated**
  157:9
**frustrating**
  157:10
**frustration**
  100:6
**full** 9:15 35:13
  122:15 147:19
  162:20
**fully** 98:9 190:9
**further** 116:22
  117:1 173:15
  195:17
**furtherance**
  141:7
**future** 35:6
  143:14

**g**

**game** 103:15
  166:24 168:22
  173:8 174:1
**gapping** 143:7
**gaps** 161:7,19
  170:12
**gathered** 80:10
**gayle** 181:8,12
  181:22,24
  182:7
**gcs** 61:2

**ge** 63:9
**gee** 13:17 54:19
**general** 7:6
  41:14 43:22
  46:15 54:13
  115:8,22
  138:10 163:18
  164:16 165:7
  192:20
**generally** 10:14
  53:14 166:23
**generated** 89:6
**generously**
  111:11
**getting** 13:6
  16:9 19:2
  30:14,15 31:10
  41:10 42:14,15
  74:4 136:1
  145:12 159:5
  193:15
**gi** 115:6,7,12
  115:13
**gidea** 138:10
**gildea** 2:3 4:15
  5:4,4,8 59:19
  59:20,22 60:3
  60:7,11,17
  61:17 62:6,19
  63:3 64:3,5,8
  64:18 65:9,22
  66:18,20,23
  67:15,17,24
  68:22 69:12

70:4 110:15 112:10 113:10 126:17 128:1 132:14,15,17 132:22 133:1,5 133:13,13,15 133:23 134:2,7 134:10,13 135:1,2,10 138:2,19 139:17 143:22 144:16 146:13 146:15,16 148:16 153:5,8 156:14 181:17

**gildea's** 127:3 135:6 136:14 142:15 145:4 157:2

**give** 35:21 39:19 45:4 56:21 57:17 66:10,20 67:3 67:16 68:12 70:4 74:2,7 99:23 156:4 159:17 189:12 189:24 190:2

**given** 4:18 81:13 131:7 136:18 144:2 147:21 155:20 162:3 172:20 172:24 176:3

181:9 195:23

**gives** 195:21

**giving** 34:8 92:14 101:20 140:18 145:14 153:12 171:9

**glad** 43:9 104:13 126:1 153:11 185:8

**glaring** 168:13

**glossed** 192:24 193:10

**go** 4:12 10:1 24:5 26:20 28:8 34:11 40:18 56:22 57:18 59:13 63:24 70:14 74:16 77:12,13 78:14 89:23 90:8 92:15 101:2 105:9 106:6 109:7,19 111:18 126:18 137:10,24 145:13 152:14 155:15 159:4 165:5 168:8,24 175:7 178:17 185:6 191:12 191:21 194:8

**goal** 30:19 78:15

**god** 45:16 153:9

**goes** 32:8 74:10 138:23 151:4 169:16

**going** 4:1,16 7:23 9:16 11:1 12:1,3,12 13:16,17 14:13 18:24 19:23 21:19 22:11 25:19 26:8,11 26:18,21 30:10 30:12 31:16,17 31:17,19,22,23 33:17 34:9,20 35:4 37:9 43:12,17 45:6 45:8,9 49:7 52:8,11 53:3 54:19 55:3 59:8,10 66:14 67:5 70:23 72:6 75:6 77:10,22 78:2 78:7,14 79:14 80:22 87:18 88:5 91:23 92:15 97:13 98:4 99:23 106:9,13,22 107:3 109:8 113:13 121:23 122:8 123:1,4

123:7,10,15 124:3 125:18 128:4 131:15 136:7 140:4 141:19 143:6 148:21 150:17 154:6 160:24 164:18 165:3 165:23 166:2 167:15 168:12 172:23 173:5 173:21 174:24 179:23 182:7 182:16,23 183:6 185:22 189:8 191:18 192:21,22 193:7 195:19 196:4,14

**good** 5:11,24 7:10 70:9 96:2 109:13 114:14 114:18 123:3 124:21 125:4,5 143:2 145:3 159:20 180:11 184:24

**gotten** 8:10 107:24 122:12

**govern** 25:11

**grand** 150:9

**grant** 108:18

**granted** 30:20 104:15 186:19

**grateful** 172:21
**graves** 95:16
  97:5,8 116:4
  119:1 121:20
**great** 42:4
  69:11 107:19
  140:21
**greater** 9:23
**greatly** 178:11
**greenfield** 38:6
**ground** 32:6
  42:14,15
  156:23 171:23
**grounds** 32:5
  50:1 51:11
  77:22 170:3
**group** 38:24
  49:18 91:11,14
  163:8,9 164:5
  164:7
**gsl** 58:20,22
  62:8
**guarantee** 1:6
  58:19 95:12,13
**guardrails**
  59:10
**guess** 16:10
  97:19 125:14
  175:21
**guesses** 53:9
**guickly** 165:5
**guidance** 18:14
  18:17 52:18
  120:9 122:23

162:3 171:8,10
  172:21 194:6
**guidelines** 66:9
  115:7,13
**guise** 50:23
  86:10 130:8
**guys** 97:11
  153:24

**h**

**h** 50:12
**hacking** 2:19
**half** 67:5 68:15
  68:17 70:16
  111:16 122:21
**hand** 165:10
**handle** 76:9
  118:7 160:24
**handled** 7:7
  86:2 87:15
  105:20 112:4
**handling** 59:19
  114:5 115:17
  116:2,3,18
  118:5,5 120:9
  129:7
**hands** 74:16
**happen** 18:24
  19:4 23:17
  26:4 30:4,8
  61:6 74:13
  77:11 125:8
  146:8 154:22

**happened**
  31:10,14 42:18
  43:2 103:4
  106:15 132:5
  146:12 182:6
  184:12
**happening**
  16:17 18:22
  64:11
**happens** 44:6
  74:5,15
**happy** 18:13
  55:9,17 86:24
  94:15,21
  110:19 133:24
  136:24 141:23
  144:22 175:7
  178:2 187:20
  195:7
**hard** 93:7,18
  158:18
**harder** 35:2
**hat** 25:23
**hats** 121:20
**head** 23:9,9
  78:13
**heading** 125:11
**health** 117:24
  118:16,22
  120:13,21,23
**healthcare** 63:9
**hear** 10:23
  11:13 31:1
  33:12 43:9

109:18 165:12
  172:19 181:23
  188:11 191:6
  192:12
**heard** 11:4
  83:11 99:18
  118:24 126:21
  167:3 171:3,7
  171:9 180:24
  181:12,12,24
  186:2 188:20
  193:6 194:2
**hearing** 1:11
  6:5 11:3,7,9,11
  11:16,16,17,24
  12:6,13,14
  13:4 27:19
  29:8,14 30:6
  31:6,8,9,9
  34:23 56:3
  57:1,9 94:22
  106:11,12
  107:24 108:18
  108:21,23
  111:6 114:3
  125:16 126:3
  142:4 144:1,16
  155:16 176:18
  191:8 197:15
**hearings** 10:15
  11:2 154:22
**heavily** 83:13
  88:18

| | | | |
|---|---|---|---|
| height   182:20 | 6:6,10,16 7:14 | 79:4,8 80:19 | 133:3,12,17 |
| held   32:5 85:23 | 7:19 8:20 9:13 | 81:1,5 82:20 | 134:6,8,11,15 |
| 102:23 127:22 | 14:1,5,9 15:22 | 85:4 86:14,20 | 134:24 135:4 |
| 136:20 183:3 | 16:8 18:17 | 88:13 89:23 | 135:17,24 |
| hello   13:2 | 19:8 20:2,7,9 | 90:8 91:8,22 | 136:12 137:2,7 |
| help   7:21 10:20 | 20:15 21:7,17 | 92:1,20 93:7 | 137:24 138:4,8 |
| 39:12 104:23 | 22:3,14 27:12 | 94:12,23 96:2 | 138:12,18,23 |
| 146:2 | 28:6,10 29:13 | 96:10,12 97:8 | 139:15 142:4 |
| helped   151:18 | 34:21 36:3 | 97:18 98:6,12 | 143:21 144:12 |
| helpful   134:1 | 37:21 38:18 | 99:3,9 100:7 | 145:2,16 |
| 173:5 | 39:8 40:2,9,11 | 100:15,19 | 146:17,23 |
| henceforth | 40:13 41:1,5,9 | 101:17,20 | 147:4,10,12,15 |
| 113:10 | 41:17,21 42:1 | 102:5 103:3,9 | 148:13,21 |
| hey   170:8 | 42:11,21 43:1 | 104:6,9,12 | 149:6,9,14,18 |
| 194:14 | 44:10 45:3 | 105:7 106:1,8 | 149:24 150:7 |
| hidden   157:8 | 46:3,9,24 | 106:19 107:1,5 | 150:13,20 |
| high   32:13 | 47:14 48:1 | 107:9,13,15 | 151:2,9,12,14 |
| 87:16 | 49:7,14 50:3,6 | 108:6,16 111:2 | 153:2 154:2,8 |
| highest   159:19 | 50:10 51:3,24 | 112:17,20,23 | 154:15,20 |
| highly   84:2,13 | 52:5,13,20 | 113:18,22 | 155:15,22 |
| 87:15,17,24 | 54:1 55:23 | 114:11,20 | 156:6,13 |
| 105:19 | 58:10 59:16,20 | 115:4,10 | 157:17 158:1,7 |
| hindsight   34:17 | 59:24 60:5,9 | 116:10,22 | 158:13,18 |
| hired   56:8,12 | 60:12 61:14 | 117:1,12,15 | 159:4,13,19 |
| 62:1 69:24 | 62:14,23 63:5 | 118:11 119:7 | 160:10,20 |
| history   10:1 | 63:23 64:10,20 | 119:10,14,22 | 162:5,14,21 |
| hit   26:11 | 65:19 66:14 | 120:10,15,20 | 163:6,15 164:3 |
| 166:10 172:20 | 67:3,21 68:8 | 121:4,13,23 | 164:10,18 |
| 173:11 | 68:23 69:13 | 122:10 123:3 | 165:12 166:5 |
| hoag   129:10 | 70:4,11,15 | 124:7,21 125:1 | 166:17,23 |
| 134:18 137:9 | 71:6 72:6,15 | 125:4,14 | 167:15 168:11 |
| hochberg   1:11 | 72:21 73:4,12 | 126:14,18 | 168:20 170:22 |
| 4:1,8,16,23 5:3 | 74:4,22 76:1,4 | 129:12 132:6 | 173:7 174:4,9 |
| 5:6,9,13,19,24 | 77:5,9 78:1,17 | 132:13,20,23 | 174:12 175:8 |

175:11,16
176:8 179:3,5
180:14,20,22
181:5,11,19
182:5 184:3,17
185:23 186:13
186:15 187:23
190:1 191:6
192:5,16
193:17 194:19
195:10,18
**hold** 74:14
**holder** 124:12
**holders** 97:10
**holding** 172:12
193:22
**holiday** 34:23
**holidays** 29:2
142:17 188:18
190:10
**holmes** 2:9 6:17
**honestly** 153:3
178:9
**honor** 7:10
8:19 9:4,10
13:24 14:8,17
14:20 15:16
17:2,10 18:15
19:7 20:8,10
21:16 22:1
28:7,16,20
29:3,3 32:10
32:24 35:9
39:3 46:8 48:4

48:10 49:3
52:12,16 53:5
53:19 55:5
59:18 61:23
64:6,9 67:17
72:10,23 77:23
80:5 81:7,10
82:11,22 84:5
84:12 85:23
88:1 91:5,19
91:21 94:4,11
94:19 97:4
98:21 99:22
101:1 102:19
103:20 104:19
106:4,22 109:4
109:17,18,18
110:9,11 114:3
117:9 118:24
119:23 122:24
127:24 131:19
132:9 135:22
137:4,10
140:13,15
141:18 143:15
146:16 147:13
153:15 157:9
157:11,21
159:8 161:22
165:9 168:4,8
168:19 169:9
169:23 171:11
174:15,22
175:5,24 176:6

179:7 182:2,24
183:11 184:16
186:2 188:8,10
194:1 195:8
**honor's** 42:10
79:20 84:5
194:6,17
**hope** 12:9
119:21 125:1
180:12 194:17
**hopeful** 172:14
**hopefully** 70:23
77:9 79:8
188:24
**hopes** 165:22
**hoping** 186:23
**hospital** 56:10
81:15 87:8,12
87:22 96:20,24
161:3 162:23
167:22 169:8
169:14,20
170:16,17
171:6,16
172:10
**hospitals**
163:19
**hot** 132:15
**hotly** 47:10
**hour** 29:10
66:12,16,19
69:23 70:16
111:16 123:6
155:16 158:5

160:16
**hours** 66:13,15
66:15,22 67:5
68:15,18 79:12
122:3 123:4
159:11,13,16
189:1
**huge** 22:4 25:6
195:23
**human** 150:18
**hundreds**
37:18 103:6
137:14,18,19
142:10 152:13
168:9
**hypocrisy**
182:20
**hypothetical**
171:20,21

**i**

**idea** 24:20 34:8
145:11 192:19
**ideally** 124:9
**identical**
129:19 144:24
**identified** 5:2
23:20 24:24
41:17 50:11
57:21 134:2
161:7,19 175:6
175:19 176:13
177:2 183:3
189:15

identify  6:22
   9:7 22:19 39:8
   67:12 183:13
   189:18,22
identifying
   9:11 20:23
   21:3 22:7
   177:14
illinois  1:16
   2:12 17:6
   197:1,9,16
imagine  44:21
   152:17
immediate
   73:21 74:13,15
   159:19
immediately
   127:19 143:24
   159:18
immune  129:19
immunize
   130:11
impact  96:22
   97:6,13
impasse  30:11
impeachment
   176:21
impermissible
   128:7
implement
   166:16
importance
   68:14

important
   46:11 48:7,8
   62:11,13 64:14
   75:11 79:13
   84:18 94:20
   103:12 104:5
   104:24 136:5,6
   139:12 157:2
   188:11
importantly
   145:23 146:9
imposed
   104:19
impossible
   131:6
impression
   29:4 148:15
improper
   128:23
improperly
   188:22
inadequate
   179:12
inappropriate
   84:13
inclination
   66:18 195:11
inclined  98:22
   166:19 168:17
include  58:4
   75:24 99:1
   116:13 123:4
included  19:14
   19:15 49:5

89:17 116:7
includes  102:3
including  45:11
   54:9 89:1
   101:14
incomplete
   165:16
incorrect  22:4
   140:11 148:15
incredible
   180:16
indicate  71:4
   161:9,21 163:3
indicated  65:11
   82:24 99:22
   109:17 140:7
   157:21
indicates  17:16
   131:9
indicating
   17:18 83:23
indication
   15:13
indicative
   55:12
individual
   177:22 182:4
individuals
   174:21 175:1,3
   175:4,6 176:14
   176:16,17
   177:1,17
   178:20 179:4
   184:16

industry  48:18
inform  12:11
   12:11 145:8
information
   4:19 21:13,20
   44:4,18 50:23
   55:14 79:24
   80:2,8,11,13,15
   80:20 81:9,12
   81:20,21,23
   82:6,10,11,14
   82:18 83:24
   84:2,8,20,23
   85:1,12,15,21
   86:6,10,12,12
   86:16 89:11,16
   90:4,12,14,17
   91:16 92:7
   94:2 95:4
   101:8,10,13,23
   102:2,11,18
   103:2 107:10
   108:22 110:20
   117:22 118:6,9
   129:7 130:22
   131:3,24
   141:13 143:3,8
   143:10 146:9
   154:10 159:10
   165:19,24
   169:5 170:9
   171:4 172:7,13
   177:23 182:15
   184:8 185:6

189:2,13,24 190:3 192:15
**informed** 53:23 109:3 121:1 128:17 193:5
**inhouse** 9:8 190:14
**initial** 82:18 94:17 130:3 133:19 175:20 176:4 177:2 182:12 183:10 185:9 195:11
**initially** 16:6
**innocent** 65:5
**inquire** 171:13
**inquiring** 190:5
**inquiry** 24:2
**instance** 36:6 44:16 96:9 151:22 172:9 175:22 177:18
**instructed** 128:13 138:3 139:17 162:18 166:6,9 171:4
**instructing** 143:3
**instruction** 142:18 143:23 147:22 159:18 162:16
**instructions** 10:5 55:2

73:13 142:21 144:2 156:8,14 156:15,17
**insurance** 1:7 24:13 50:21 61:3,15,21 82:6 87:10 121:2
**insure** 150:24
**insured** 102:3
**insureds** 82:8 86:6,7
**intend** 9:2,6 28:8 95:18 104:2
**intended** 18:7 177:7
**intending** 73:7
**intent** 105:1
**intention** 15:16
**intentionally** 95:10
**inter** 98:5
**interactions** 96:4
**intercompany** 126:10,12
**interest** 9:21 117:24 118:17 118:23 119:2 119:24
**interesting** 127:4

**interests** 101:13
**interfered** 95:10
**interference** 87:19 94:4,24 95:3,9 96:1 105:21
**interject** 135:5 186:8
**internal** 40:22 41:1,10 66:9 81:15 88:23 97:2 119:2
**international** 115:18,19
**interpretation** 133:10
**interrelated** 95:19
**interrogatories** 48:16 68:5 72:1,18 77:16 77:18 87:5 95:20 161:5 165:24 172:4,6 173:9,23 174:2
**interrogatory** 48:20 71:13,16 71:17 72:11 172:15,17
**interrupt** 21:7
**interrupting** 17:8 180:21

**interruption** 47:2,6,9,13 53:16 61:13 87:9 127:8 169:17
**introduce** 7:9
**introduction** 5:22
**introductions** 8:10
**intruding** 16:21
**investigate** 126:7
**investigated** 117:21
**investigating** 24:12
**investigation** 114:4 115:15 116:8,14 121:1
**invited** 155:13
**invocation** 131:11,17
**invoked** 128:20
**invoking** 139:6
**involve** 35:24 39:21 114:4
**involved** 10:9 11:9 36:10,22 43:1,3 47:6 57:14 64:13 112:2

**involvement** 66:17 79:20 93:13 111:19 191:4

**involves** 47:19 148:14

**involving** 35:22 36:16 50:19 51:16

**ipads** 9:20

**ipc** 115:10

**ipz** 115:7,11,18

**irrelevant** 83:24

**issue** 5:1,1,15 5:18,20 6:4 7:12,12,18,18 15:23 16:3 18:5,11,14 22:15,21 23:3 23:4,6 27:4,11 29:22 30:2,11 31:15,21 33:1 42:4 45:4,20 46:12 48:8 49:1,2,5 50:5 52:7 53:1 54:20 55:20,23 59:18 60:4 66:4 72:22 74:2 79:14,19 90:20 96:16 100:4 101:6 102:7 103:20

104:14 105:19 108:7,11 109:2 110:23 112:12 112:24 113:8 114:17 123:20 123:24 124:14 125:14,23 126:21 127:16 128:6 130:6 142:13 143:19 144:7,9 145:24 145:24 146:6 146:12 150:2 150:17 151:5,6 152:23 154:21 158:4,16,17 159:15,20 160:3,16,22 161:1,13 165:9 169:1,2,2,3,23 171:11,12,16 175:18 186:12 187:8,8 188:1 188:3,7 191:15 191:16,17 192:6 194:7,8 194:13,19,23 195:12

**issued** 65:13 73:2 95:12 131:13 153:16 153:18 155:5

**issues** 5:19 6:4 6:23 8:3,19

11:8,12,19 12:10,22 15:10 15:12,17,24 16:2 26:22 28:23 29:12 30:5,7,9 33:22 34:15,22 35:6 36:1 45:5 47:10 52:19 60:21 64:23 70:20 71:9 72:10,19 73:13 75:2,16 78:12 78:17 101:3 106:14 108:1,6 108:10,18 111:13 122:9 125:15,17 126:2 137:11 137:18 146:7 161:11 172:23 174:10

**item** 171:2

**items** 117:20

### j

**j** 2:3

**jammed** 26:17

**january** 1:17 10:6 11:7,10 11:15,16,17,19 11:20,21,24 14:13 16:8 17:1,16 20:1,7

20:14,15 21:13 29:17 30:7 31:9 32:1 34:11 51:22 71:13 100:12 108:12,20,24 109:3,23 110:15,24 111:3,5,6 112:11 113:11 125:7 126:3 127:22,22,23 131:14 145:1 156:8 163:21 177:13 197:17

**jessie** 2:11 7:16

**jlauner** 2:6

**jmutch** 2:17

**job** 30:23,24 31:18 44:6 67:7 94:1 107:20 111:21 111:22 159:3

**joined** 73:14

**joint** 5:2,16 30:12 73:12,15 75:23 98:3 118:23,24 121:13 124:1 134:13,16,19 134:19 160:8 196:9

**jointly** 81:17 87:5 95:22

| | | | |
|---|---|---|---|
| 134:20 | 59:16,20,24 | 115:4,10 | 157:17 158:1,7 |
| **jonathan** 2:15 | 60:5,9,12 | 116:10,22 | 158:13,18 |
| 8:13 | 61:14 62:14,23 | 117:1,12,15 | 159:4,13,19 |
| **josh** 4:13 19:23 | 63:5,23 64:10 | 118:11 119:7 | 160:10,20 |
| **joshua** 2:2 | 64:20 65:19 | 119:10,14,22 | 162:5,14,21 |
| **js** 183:3 | 66:14 67:3,21 | 120:10,15,20 | 163:6,15 164:3 |
| **judge** 1:11 4:1 | 68:8,23 69:13 | 121:4,13,23 | 164:10,18 |
| 4:8,16,23 5:3,6 | 70:4,11,15 | 122:10 123:3 | 165:12 166:5 |
| 5:9,13,19,24 | 71:6 72:6,15 | 124:7,21 125:1 | 166:17,23 |
| 6:6,10,16 7:14 | 72:21 73:4,12 | 125:4,14 | 167:15 168:11 |
| 7:19 8:20 9:13 | 74:4,22 75:9 | 126:14,18 | 168:20 170:22 |
| 12:18 14:1,5,9 | 76:1,4 77:5,9 | 129:12 132:6 | 173:7 174:4,9 |
| 15:22 16:8 | 78:1,17 79:4,8 | 132:13,20,23 | 174:12 175:8 |
| 18:17 19:8 | 80:19 81:1,5 | 133:3,12,17 | 175:11,16 |
| 20:2,7,9,15 | 82:20 85:4 | 134:6,8,11,15 | 176:8 179:3,5 |
| 21:7,17 22:3 | 86:14,20 88:13 | 134:24 135:4 | 180:14,20,22 |
| 22:14 27:12 | 89:23 90:8,11 | 135:17,24 | 181:5,11,19 |
| 28:6,10 29:13 | 90:11 91:8,22 | 136:12 137:2,7 | 182:5 184:3,17 |
| 30:20 31:13 | 92:1,20 93:7 | 137:24 138:4,8 | 185:23 186:13 |
| 33:16 34:21 | 94:12,23 96:2 | 138:12,18,23 | 186:15 187:7 |
| 35:3 36:3 | 96:10,12 97:8 | 139:15 142:4 | 187:23 188:2 |
| 37:21 38:18 | 97:18 98:6,12 | 143:21 144:12 | 190:1 191:6 |
| 39:8 40:2,9,11 | 99:3,9 100:7 | 145:2,16,19 | 192:5,16 |
| 40:13 41:1,5,9 | 100:15,19 | 146:17,23 | 193:17 194:7,7 |
| 41:17,21 42:1 | 101:17,20 | 147:4,10,12,15 | 194:12,19,22 |
| 42:11,21,22 | 102:5 103:3,9 | 148:13,21 | 194:23 195:4 |
| 43:1 44:10 | 104:6,9,12 | 149:6,9,14,18 | 195:10,11,18 |
| 45:3 46:3,9,24 | 105:7 106:1,8 | 149:24 150:7 | 195:19 |
| 47:14 48:1 | 106:19 107:1,5 | 150:13,20 | **judge's** 103:10 |
| 49:7,14 50:3,6 | 107:9,13,15 | 151:2,9,12,14 | 155:2 |
| 50:10 51:3,24 | 108:6,16 111:2 | 153:2 154:2,8 | **judges** 68:12 |
| 52:5,13,20 | 112:17,20,23 | 154:15,20 | **judgment** |
| 54:1 55:23 | 113:18,22 | 155:15,22 | 13:21 14:4 |
| 57:17 58:10 | 114:11,20 | 156:6,13 | 26:6,18 75:10 |

92:8 105:24
**judicial** 28:23
**july** 10:4 36:8 42:16
**jump** 33:9 39:22
**jumping** 36:19 48:7 52:23
**jumps** 31:16 45:21
**juncture** 18:10 131:24 173:14
**june** 10:4 26:14 36:8 47:23 79:22 101:7 163:12 167:23 182:11,22 189:7
**jury** 98:4
**justifiably** 106:23
**justify** 61:12

**k**

**k** 197:3
**kaplan** 2:15 8:14
**katherine** 9:8
**keep** 23:2 29:12 35:4 42:2 63:24 78:8 100:9 106:13 125:18 170:16

**kelly** 85:23 90:24 102:22
**key** 23:19 25:2 26:23 36:9 38:21 48:14 51:14 61:8 62:12 68:23 69:3,19 89:1 105:2 135:6 143:19 176:15 183:4 184:16
**keyed** 55:8
**kind** 24:6 44:5 47:3 50:17 120:8 183:1
**kinds** 125:9
**knew** 30:4,7 31:5 61:11 167:15 176:1 178:6 184:21 184:24 188:12 188:12
**know** 6:13 8:22 8:23,23 9:18 10:16 12:4,8 16:24 25:4,4 25:19,24 26:9 26:9,12 28:11 30:9,13 31:23 32:2 34:21 36:19 38:14 42:17 43:4,12 44:4,23 52:11 52:12,22 54:5

54:12,19 55:6 55:19 62:3 63:18 65:15 68:18 69:13 71:15,19 76:16 78:13 92:12 93:18,21 95:3 96:13 99:22 103:4 108:16 112:15 114:12 118:2,4,18 121:5 123:6,8 123:10 124:2 124:11 125:24 131:2 133:5 135:14 136:12 139:15 145:11 148:20 149:19 150:10,22,23 155:24 165:15 168:20 174:6 177:8 178:1 180:7 184:14 186:7 187:2,6 187:7 190:6 191:16,16,19 192:12,21 193:20,23
**knowing** 43:21 86:17 184:22
**knowingly** 96:19
**knowledge** 30:11 32:13

71:14 176:14 176:17
**knowledgeable** 193:8
**known** 78:9 125:15,16 174:21 177:17 177:20 182:10 183:23 184:9
**knows** 22:1 48:4 103:5 176:20
**kronfeld** 1:2

**l**

**lack** 86:12
**lag** 30:1,2
**lagging** 10:22
**laid** 98:23 130:12
**language** 21:15 51:21
**large** 55:14 62:18 82:2 118:15,22 120:24 121:11
**largely** 7:7
**largest** 47:4
**late** 10:4 13:10 14:21 15:7 29:16 64:10 65:10 74:16 78:10 81:3 111:14 131:14

174:1
**lateness** 13:9
**launer** 2:2 4:12
  4:13 6:3,7,9,15
  12:22 13:22,24
  14:3,7 17:7,16
  18:2 19:21
  20:2,5,8,10,15
  20:17 21:9,19
  22:3,13 27:7
  27:13 28:5,7
  28:16 33:18
  35:9 36:6 38:2
  38:7,20 39:15
  40:8,10,12,14
  41:3,8,13,18,24
  42:6,9,16,23
  44:7,15 46:1,2
  46:4,17 47:2
  47:17 48:3
  49:9,21 50:4,8
  50:14 51:7
  52:3,10,15
  53:15 55:11
  59:17,18 63:6
  71:24 72:24
  73:6 74:3
  75:19 76:3,18
  76:21 77:7,15
  78:20 79:6
  124:20,22
  125:2,12 127:1
  128:24 132:10
  133:2 135:5,20

136:9,13,19
137:4,8 138:16
138:21 139:24
141:13,18
142:13 144:10
144:20 145:2
147:2,7,13,16
148:1,6,17,18
148:23 149:7
149:11,16,22
150:2,6,9,15,22
151:13,23
154:14,17,24
155:18 156:4
156:10 158:9
159:15 160:2
160:17 162:12
162:15 163:17
164:15,20,21
167:6,7,17
168:18 171:18
172:4,19 173:7
173:17 174:8
174:14,15
175:10 180:18
180:21 182:8,9
183:10 184:6
185:8,18 186:6
189:23 190:2,4
**launer's** 6:18
  20:12 51:22
  166:5 177:16
**lavoie** 2:19,19
  4:4,4 55:22

56:2 58:14
60:13,18 61:23
64:1,6 65:17
65:19,21 67:10
67:13 68:17,24
69:2,8,11 70:3
70:6,11
**lavoie's** 60:8
**law** 8:14 21:16
  21:22 32:6
  80:3 90:17
  153:23 171:21
  178:1,3 179:8
  182:3 186:15
  186:22,22
  188:6
**law.com** 2:13
**lawsuit** 15:21
  82:4
**lawyers** 58:11
  157:10,11
**lay** 33:24
**laying** 111:22
**layvoie** 66:24
**leaders** 48:18
**leads** 48:6
**learn** 142:15
**learned** 109:23
  110:23 127:23
  128:14 131:16
  176:24
**leave** 27:17,19
  29:14,16 30:16
  98:8

**leaving** 30:18
**left** 9:19 75:2
  97:24 148:16
  164:2 168:7
**legal** 51:10,19
  141:8 151:19
  159:23 175:11
**length** 18:2
  126:21
**lens** 152:8
**letter** 27:3 38:5
  44:17,19 50:16
  51:8,22 76:14
  76:15,16 88:16
  90:7 95:21
  97:4 98:23
  100:1 110:14
  110:18 117:14
  117:18 128:1,4
  129:15 132:18
  133:17,19,21
  134:3,4,17
  135:6,20,23
  136:14,15,24
  138:1,11
  139:20,22
  140:5,5,5
  142:15,16,19
  142:22 143:1
  144:15,22
  145:4,6,6
  146:14 148:2
  148:12 149:13
  150:6,13

151:12,23,24
153:9 155:1
157:2,5 160:11
165:21 195:7
**letters** 127:19
142:7,24
**level** 32:13
74:23 152:14
190:17 192:11
**liability** 1:7
47:7 53:16
**license** 197:21
**lies** 146:22
**likely** 53:10
192:15,17,22
195:11
**limit** 69:8
107:23 195:24
**limited** 101:14
102:4 191:13
194:15
**limiting** 51:7
**limits** 69:10
**line** 8:12 26:1
27:4 62:12
64:1 76:13
78:15 103:23
144:6,13,13
151:8 196:15
**lined** 53:4,6
**lines** 119:24
121:17 151:14
**list** 17:20 39:24
40:3,5 50:12

62:24 63:1
140:23 177:6
178:12 179:6
179:21 183:18
184:5 187:12
191:20 193:3
193:22 195:2
**listed** 155:11
175:19,23
193:1
**listen** 97:11
139:15
**listing** 176:17
**litigation** 1:3
22:22 23:13
24:1 25:22
32:4,21 35:20
36:1,2 37:24
41:12 44:20
49:17,20 51:20
82:10 134:4
136:22 149:8
152:3
**little** 192:16
**llc** 2:19
**llp** 2:2,9,15
**lo** 26:24
**load** 158:10
**log** 12:23 13:6
15:7 32:11
38:13,14,22
49:9 59:23
60:1,2,10,13
71:3,7,10

72:10 100:10
127:12,13
131:8 140:17
140:19,20,21
142:7,9 150:19
152:22 153:18
159:22 189:5
190:9
**logged** 152:2
**logic** 193:24
**logical** 54:5
**logs** 71:1 189:6
189:10
**long** 10:14
14:15 27:20
35:8 42:12
62:24 63:1
74:6 93:9 94:5
97:20 100:3
113:8 136:15
138:5 142:9
143:19 159:2
162:6 171:17
190:9
**longer** 8:2
12:20 50:12
96:23 97:12
113:13 115:13
146:18,19
192:7
**look** 9:18 34:7
45:20 78:11
80:22 89:24
91:8 92:3,6,6

92:15,22 99:7
99:23 101:2
106:6 111:16
117:14 133:7
148:2 152:17
153:19 159:21
166:14 167:18
168:8 173:24
190:12 192:1
195:10
**looked** 38:13
92:13 121:9
133:9 152:7
170:4,11
185:19
**looking** 20:12
22:15 106:9
124:11 129:14
138:18 177:5
**looks** 70:24
121:24 169:3,3
**loosely** 181:9
**lord** 103:5
**loss** 24:12 45:1
47:2,9,13,23
50:15 61:13
82:3 88:20
118:15,22
120:16,23,24
121:11 127:8
129:2 161:2,8
161:10 162:2
162:19,22
163:3,12,14,22

164:9 165:19
166:7,14 167:1
169:3,4,13
**losses** 21:12
121:10
**lost** 47:22
145:12 183:11
**lot** 19:1 34:4
64:21 68:11
70:12 76:10,17
84:3 106:22
112:18 141:10
190:21 194:19
**loud** 112:6
**love** 159:16
**lucas** 2:11 7:11
168:24

**m**

**ma** 2:6,16,20
**machinery**
40:19
**mad** 58:13
**made** 51:17
53:9 70:16,19
90:23,23
105:14 128:10
147:7 169:14
169:18 170:5
171:1,14,14,14
172:9 178:14
195:6
**magistrate**
85:23 102:22

103:9 194:23
195:4,19
**magnitude**
68:10
**mail** 14:21
16:15 18:6
20:13 21:9
28:17,21 39:17
56:19 62:5
76:7,13 88:18
93:8 151:22
162:9 174:19
**mailboxes**
176:2
**mailed** 17:17
72:23
**mails** 12:20
61:1,23 65:23
68:19 76:5
97:2 112:6
137:16 141:10
153:22 161:20
190:11,14
**main** 9:17
**maintain** 82:16
87:23 129:6
**maintaining**
170:2
**major** 68:3
88:7 118:15
120:24 126:20
145:10
**make** 8:2,9
12:21 29:2

32:5 34:19
54:7,18 55:21
56:8 66:6,15
67:13 84:18
86:21 89:5
90:9 92:4
98:17 99:16
113:17 117:3,4
149:2 153:24
167:7,11
171:23 172:22
173:18,19
178:5,7 182:23
190:16
**makes** 26:10
53:24 68:13
168:14
**making** 75:22
80:18 91:1
109:14 166:20
169:6 170:13
170:14 173:9
**manage** 187:5
**managed**
196:14
**mandated**
18:24
**manner** 87:15
93:20 95:18
**manual** 114:16
114:22,24
116:6,10
117:21 118:8
119:24 120:21

121:22
**manuals**
113:14,24
114:6 116:17
118:14 120:13
121:1
**map** 9:15
**march** 17:23
22:2,11 35:14
36:8 42:3
43:13,21 49:22
53:21,24 56:20
70:8 127:24
131:13 135:7
136:14 138:9
**marching**
196:3
**marginally**
64:13
**marine** 115:8
115:22,23,23
**mark** 1:2 2:19
4:4 84:24
171:4
**marked** 162:20
162:22 168:2
171:19
**marm** 31:15
**marsh** 40:14
50:12
**massachusetts**
1:1 16:18 17:5
89:8 97:22
98:8 184:4

master 16:12
16:21,24 32:11
56:23 88:1
90:11,24 96:7
161:16 187:6,6
masters 12:16
material
139:10 157:3
163:11
materials 15:13
116:2,8 117:6
117:7 139:2,4
161:8 170:12
matter 43:17
43:22 45:12,15
54:13 76:13
98:18 123:13
130:3 160:5
matters 52:18
52:22 76:10
152:3
mcdonough
2:19
mean 21:7
31:14 42:23
117:22 123:21
157:17 158:14
167:10
means 24:3
25:9,17 54:2,4
54:5 71:5,6
90:19 172:14
196:9

mediate 12:5
mediation 36:7
36:15 38:16,19
38:22 44:14,15
51:6,8 147:15
149:6,12 152:3
meet 12:21
19:2 28:19,22
29:10,22 30:3
30:9,14 34:12
45:6 71:9
72:17 74:6,11
74:11 76:23
77:10 78:2,4
100:12 109:4,6
109:8,23 118:4
125:8,12
127:21,23
128:11,16
160:5 169:22
170:7 173:24
186:23
meeting 33:19
73:19 122:8
155:13,14
176:24
memory 14:14
57:1
mention 142:14
mentioned
67:15 68:19
108:24 139:11
mercy 159:2

merely 84:10
message 112:6
met 13:9,15
18:2 73:10
110:16
metadata 159:9
mhlattys.com
2:21
michelin 2:11
7:9,16,16
160:23 161:1
162:8 163:2,8
164:3,5,12,22
165:13
microcosm
56:2
mid 127:13
152:1 170:7
midst 17:22
million 15:21
mind 100:9
105:2
minimization
186:9 188:12
minimize 44:5
173:6
minimizing
165:23
minimum
143:23 144:9
minute 22:3
26:22 37:22
44:3 63:5
111:17 180:20

minutes 123:15
misspoke 47:5
misstated
50:18
mistake 34:20
mlavoie 2:21
model 153:22
moment 6:13
8:9 29:20 64:5
86:19 92:17
moments 166:6
monday 75:19
77:19 156:11
195:8
money 28:24
96:20
month 26:12,19
29:22 30:20
38:21 39:1
74:10 97:21,24
152:20 179:11
months 8:4
10:15 14:12
19:3 23:4 26:6
26:16 30:17
31:13 110:17
112:5 113:2
125:22,22
140:2 143:9
146:5,5 158:3
168:16 178:11
180:7 182:17
183:22 189:5
189:13

morass 64:1
morning 5:11
  5:24 7:10 9:3
  158:5,15
  185:19 188:21
motion 79:21
  79:23 82:19
  85:9 86:13
  90:13,15 99:17
  101:6 104:22
  105:23 109:22
  153:15 176:19
  183:19
motions 13:21
  26:18 182:18
move 45:5 74:1
  93:24 107:3
  112:20 121:23
  151:11 157:12
moved 34:15
  94:8 105:22
  184:15 191:2
moves 8:2 67:1
moving 15:4
  23:2 54:1
  140:14 157:12
  165:4
mpt 81:12,14
  81:22 84:1,7,9
  85:20,22 86:2
  86:5,15,16
  87:3,7,17 88:4
  89:12,16 90:22
  96:8,10,19,20

96:21 97:9,20
98:2 100:21
101:14,17
102:4,6,12,16
102:24 105:18
105:20 110:1,7
129:11 134:7,9
mpt's 84:1,4
  87:11,15,22
  88:7 89:2
  95:17 102:13
  103:16 114:5
msa 163:18
  164:16 165:8
multi 15:21
  69:23
multiple 37:6
  39:21 67:19
  74:4 101:3,3
  115:1 127:6
  148:13 161:15
murky 47:1
mutch 2:15
  8:13,13,20
  65:11 140:5,14
  140:18 153:15
  154:24 193:6
mutch's 140:3
  153:23
myer's 85:13
  103:18
myers 2:4 4:14
  4:21,21,24 5:1
  5:17,20 82:20

82:21 86:15,19
86:23 88:15
90:5 91:1,12
91:19,22,24
92:11,17 93:24
95:7,20 96:18
98:15,19,20
99:24 100:12
105:11,12
114:6

**n**

n 3:1
nail 188:21
name 4:18
  40:15,18 184:9
named 40:24
names 39:24
  44:2 50:6,7
  181:3,10
  187:13
narrow 55:19
  152:8
narrowed
  183:17
narrowly 51:15
  60:22
national 40:16
nationwide
  68:4
nature 38:10
  95:8,24 116:18
  118:6

near 50:15
nearly 29:10
  135:7
necessary 9:21
  13:13 23:2
  35:4 58:1,9,15
  82:17 170:18
need 8:22 13:18
  16:10,10,16,24
  18:18 20:5
  24:2,3,5,9,16
  24:20,23 25:19
  25:24 30:6,10
  30:13 31:12
  32:2 34:21
  35:6 38:15
  41:6 43:12
  44:1,4 45:10
  49:2 54:12,20
  54:21,23 56:20
  58:4 59:5 60:9
  60:12,14 61:1
  61:17 62:4
  63:14,24 64:16
  64:23 66:8
  67:1,5,21
  68:21 70:3,4,5
  71:8,15 73:22
  76:3 78:13,17
  86:11,11,15,15
  93:7 94:9
  96:13 105:23
  108:22 111:16
  113:3,5 114:9

**[need - number]**

117:17 136:15 136:17 138:12 144:10 158:18 160:10 172:17 173:15 178:12 181:1 183:21 185:5 187:2 189:17 191:17 196:1

**needed** 58:2,16 107:11 108:3 154:4 177:5

**needs** 8:22 22:22 23:13,17 24:22 55:20 59:9 73:16 77:17 146:10

**negotiate** 61:3

**negotiations** 61:21 122:5

**neither** 186:22

**neutral** 66:5

**never** 11:13 51:1 53:2 60:6 61:6 65:12 67:23 69:24 94:7 100:23 105:22 123:13 146:21 180:24 180:24 181:12 181:24 183:24 185:16 193:6

**nevertheless** 129:9

**new** 8:1 10:21 17:21 31:21 42:5 44:2 77:18 174:13 181:12 182:14 184:18

**newly** 178:19 178:24 179:6 179:18

**nfa** 40:15,18

**nfcs** 50:12

**ngrna** 38:4,5

**night** 15:3,7 19:21 20:13 38:15 63:2 64:7,8 71:3 78:10 142:23 178:15 180:9 189:13

**nine** 26:16 88:2 96:7 98:19 105:11 106:5,7 109:16 125:2 126:10,15,15

**nodding** 74:12

**non** 25:23 33:1 36:4 43:8 49:15 55:5 146:19,23 148:21

**noneresponsi...** 83:18

**nonlawyers** 88:19

**nonparties** 8:15 63:18

**nonparty** 4:9,9 8:18 60:1

**nonprivilege** 48:12

**nonprivileged** 80:13 83:9

**nonstop** 28:19

**nontestifying** 22:21 23:6,23 24:5,8 25:21 26:24 27:3 32:3,15,19 33:7 35:19 37:13,22,23 38:7 43:16 44:9 50:4 128:22 129:1 129:13,18 130:4,8 133:20 134:20 139:23 148:19 151:16 181:21

**normal** 89:2

**normally** 12:11 30:16 76:11 126:5

**northern** 17:6

**norwood** 61:3 81:15 161:3 162:19,23 163:18,21 164:16 165:2

167:22 169:8

**notary** 1:14 197:5

**note** 78:22 84:18 94:3

**noted** 71:3 169:10 172:4

**notes** 97:5 179:8 183:14

**notice** 1:12 56:22 65:14 139:20,20 184:20 185:17 185:18 186:2

**noticed** 38:9 63:20 175:3 176:5 178:22 178:22 179:19 179:20,21 185:15,16

**notices** 73:2,5 122:1,20 193:4

**notify** 28:7

**notion** 184:14

**notwithstandi...** 10:10

**november** 11:3 11:5 60:17 81:4 127:12,13 137:9 142:7

**number** 7:18 7:18 13:1,2 19:15,17 21:20 27:6,9,10,14,14

42:10 56:21
62:15,18 64:3
65:23 68:21,22
72:5 84:21
88:2 95:24
96:7 98:19
102:23 105:8
105:11 106:5,7
109:16 122:5
124:11 126:10
126:15,15,19
134:23 140:15
146:6 160:14
160:22 161:1
168:24 169:2
171:2 174:7
177:14 195:23
**numbers** 39:19
**numerous**
38:11 88:21

**o**

**o** 197:3,3
**o'clock** 1:16
**oath** 96:21
**object** 65:20
67:18 73:8
77:22 128:3
168:10
**objected** 60:21
62:10 102:15
102:17 145:19
145:20 164:21
165:20 186:4

**objecting** 176:9
**objection** 9:14
65:1 102:21
103:10 161:13
164:23 167:5,8
167:11 168:15
170:2 173:9
**objections**
71:14,15,20
78:4 167:13
171:23
**obligated**
174:17
**obligation**
59:24 160:1
**obligations**
14:24 24:9
**obtained** 57:21
**obviously** 9:21
12:2 35:1,2
41:21 53:5
87:2 138:5
172:17 186:24
**ocavio** 184:24
**occur** 25:3
**occurred** 37:17
104:12
**octavio** 185:11
**october** 11:2
14:14 80:21,23
81:4 110:12
112:10 113:11
154:17

**odd** 71:18
176:3
**offer** 75:22
80:4 91:3
113:17,18,19
113:23 191:14
**offered** 179:17
**offering** 87:17
**office** 140:3
141:7 147:8
154:24 155:6
185:13
**officer** 181:7
**offices** 68:4
**official** 40:18
**ofice** 140:3
**oftentimes**
81:16 89:12
**oh** 13:17 45:22
140:21
**okay** 6:6 7:19
20:15 34:7
45:3 55:1
91:23,24
103:23 109:5
155:10 168:23
**old** 10:11 42:20
112:7,7 156:23
**omitted** 103:13
139:5
**once** 23:7 34:11
**ones** 26:3 41:10
50:8,10 51:5
69:16 92:21,22

122:20 146:3
155:23 187:15
189:22,23
**ongoing** 15:19
**open** 26:15
76:16 78:15
87:23 108:6
170:16
**opening** 99:15
**operate** 87:14
96:24 188:8
**operated** 81:15
87:8
**operations**
87:24
**operative** 94:6
**opine** 58:23
**opining** 46:16
46:18,23 58:24
**opinion** 43:22
54:14
**opinions** 59:12
**opportunity**
55:10 110:6
132:19 156:22
177:11
**opposed** 90:15
151:20
**opposing** 73:17
152:18 169:24
**order** 11:22
13:1,2,2,8,10
13:14 23:1,2
24:7 25:18

27:8,9,9,10,14
27:14,21 28:1
31:19 42:8,10
44:19 55:2
57:1,17 70:13
78:7 82:22
83:2,20 84:5
84:11 85:24
86:11 87:1
88:1 91:9 94:9
96:7 98:8,19
99:4,20,22
100:2,20,21
102:19,21,23
103:1 104:8
105:7,8,10,23
106:5,7 108:17
109:15,24
112:16,22
114:14 125:21
130:11 137:4
138:14 139:13
140:13,15,15
141:8,19,24
145:17,17,18
145:21 146:7,8
153:7,16 154:1
154:13,16
155:3,22 156:3
157:14 158:24
160:14 161:17
163:24 166:16
166:18 168:12
168:16 187:15

196:5,10
**ordered** 10:2
  100:19 140:20
  155:24 156:2
  162:12 174:22
  176:7 191:3
  192:14
**orderly** 23:3
**orders** 89:19
  112:15 145:17
  154:19,21
  155:3
**ordinary** 89:6,9
  89:15
**organization**
  7:21
**organized**
  76:11
**original** 19:13
  48:23 64:18
  94:14 122:20
  176:12 187:12
**originally**
  17:13 34:18
  64:17
**ought** 195:3
**outline** 9:22
  58:8
**outlining** 57:22
  58:1,15
**outrageous**
  144:1
**outset** 59:4
  85:9 107:17

131:21 135:8
135:12 165:14
176:11 182:10
**outside** 40:21
  40:23 52:17
  160:21 189:19
**outstanding**
  15:10
**overcome**
  145:3
**overdue** 111:4
**overkill** 64:21
  64:22
**overly** 65:7
**own** 30:17,18
  46:13 86:17
  87:4 99:2,2
  100:21 168:20
  193:23
**owned** 87:7,8
**owner** 81:14
**ownership**
  87:11

## p

**p.m.** 28:9
**package** 94:15
**page** 31:16
  51:21 98:23
  160:10 167:23
**pages** 15:8
  59:14 97:5
  142:9 167:19
  188:16 191:5

**paid** 67:24 68:9
  82:15 97:23
**pain** 191:6
**papers** 35:17
  113:14,15
  130:12 169:10
**paragraph**
  54:15 139:5
  148:2 152:12
  169:9
**paragraphs**
  150:10
**paramount**
  124:8
**paraphrasing**
  97:15
**pardon** 119:7
**pared** 64:16
  65:18
**parent** 95:13
**part** 41:12 49:4
  49:5 53:22
  89:2 94:14
  103:13 120:18
  150:12 151:15
  169:2 170:2
  182:12
**participants**
  9:15 154:7
**participate**
  36:23,23
**participating**
  9:11

**[participation - physically]**

**participation**
  9:14 151:24
**particular**
  17:19 24:7
  72:4 76:9
**particularly**
  102:17
**parties** 4:9 9:4
  10:10 11:4,21
  12:1,21 15:11
  15:14 19:2
  28:7,18 29:5
  29:11 34:13
  36:9 38:15,17
  47:3 59:1,7
  62:9,18 63:3
  63:19 73:22
  78:20 82:24
  94:18 99:5
  108:11 122:7
  124:14 127:1
  134:10 136:1
  143:2 145:21
  158:22 174:2
  184:9 194:4
**party** 4:5,8
  8:12 23:5 33:3
  52:17 62:15
  63:8 64:12
  73:17,18 78:23
  79:5,11,13
  84:15 129:5
  135:24 136:1
  146:10 152:1

179:13 181:7,9
  183:7,15 184:7
  188:22
**password** 93:2
**past** 13:5 18:3
  35:5 78:14
  88:5,12 113:2
  127:2 155:16
  173:1
**patently** 57:15
  110:22
**pay** 98:2
**paying** 96:20
**pdf** 174:20
**pdfs** 76:6
**pelusa** 9:1,1
**peluso** 2:10
**pennies** 87:17
**pennsylvania**
  16:19
**penny** 20:22
  46:22
**people** 17:21
  31:24 43:24
  50:7 52:9
  63:13 65:6
  77:1 96:12
  104:23 106:24
  107:8 119:13
  148:10 170:14
  174:16 175:18
  175:22 176:2,5
  178:6,10,12
  179:1,6,18,20

179:22,24
  180:1,6,11,22
  182:17,21
  183:3,5,6,16,20
  183:22 184:15
  184:20,21
  185:11 187:10
  187:12 190:4
  192:2,12,14
  193:1,3,6,8,14
  193:20,23
  194:1,10,11
  195:2,21
**percent** 38:22
  40:1
**percipient**
  24:11 129:5
  130:7
**perfect** 26:19
**perform** 62:8
  152:16 164:13
**performing**
  129:20
**period** 38:16,21
  39:1 47:7,7,8
  53:16 105:4
  115:14 116:21
  125:13 143:20
  169:17 171:21
  171:22
**periods** 38:20
  47:15
**perla** 185:11,14

**permissible**
  43:11
**permit** 84:17
  91:21 184:7
**permits** 21:22
  83:21
**permitted**
  171:13
**person** 12:12
  27:1 52:21
  54:20 67:7
  95:14,21 123:6
  133:14 183:4
  192:21
**person's** 23:15
  24:4
**personal** 47:18
  53:17
**personally**
  185:10
**perspective**
  127:9
**pertains** 82:11
  89:15
**phase** 26:5
**phases** 23:18
**phone** 28:21
  131:10
**phonetic**
  104:17
**phraseology**
  48:19
**physically**
  145:13

pick 90:1 92:1
92:2,2 187:16
194:9
picked 92:10
92:21
picture 98:1
piece 25:7
62:11 64:14
103:12 158:20
176:15
pieces 68:14
pin 172:3
174:12
place 124:12
157:24
places 16:20
plaintiff 1:4
4:12,22 5:5,10
5:12,21,23 6:8
6:11 7:5 17:10
19:13 20:21
21:2,5 32:22
34:1 35:18
42:7 44:3,8
47:8,20,21
48:4 50:18,22
51:1 53:23
56:4 63:18
66:5 78:23
79:6,21 102:20
110:13 111:11
113:5 116:23
126:6 127:7,16
128:11 130:17

130:18 131:4
132:3 135:14
142:8 143:10
149:16 151:1
161:7,14,23
162:8 164:2
168:7 173:1
183:23
plaintiff's 6:11
6:24 7:17 8:18
14:23 15:13
21:12 32:17
46:20 50:20
51:18 56:19
57:9 61:8,13
71:3,12,16
72:18 79:14,16
103:23 107:9
161:13 183:8
plaintiffs 2:8
11:23 13:22
40:6 48:11
53:8 63:6
90:13 102:6
108:2 111:9
116:1 120:5
126:22 137:18
151:6 165:19
170:23 177:1
178:14,18
planet 150:1
planned 34:19
167:22

planning 195:1
plans 161:2,8
161:10,21
162:2,23 163:1
163:3 165:1
166:8,14 167:1
169:6 171:5
play 57:5,8
played 155:3
player 68:10
playing 125:18
pleadings
94:20 106:5,6
106:10 109:21
please 19:6
21:8 27:22
107:14 140:12
141:17 177:12
pleased 109:18
plenty 178:3
plus 15:8,9
37:3 38:8
39:12,13 40:9
50:11 128:23
136:20 178:24
180:5 189:4,15
point 6:18 18:4
39:16 40:20
43:8 55:24
56:4,24 61:2
65:1 89:5 90:6
95:9,9 99:17
101:11 103:18
104:5 130:13

131:3 133:13
134:23 143:14
147:7 151:10
157:13 168:5
174:14,15
177:16 183:11
185:19 188:10
193:13 194:5
pointed 170:8
points 113:20
135:6
policies 115:1,4
118:14,17
119:2 121:9
policing 31:3
policy 47:23
95:12 97:10
102:13 115:7,7
115:12,13,24
117:24 121:13
121:15,16
portion 105:7,9
127:3 164:24
portions
127:14 128:18
posed 131:20
position 7:3
19:11,17 34:2
46:20 48:12
49:20 50:16
51:1,2,3,23
55:12 59:1
79:16 85:7,17
86:9 98:10

110:8 128:6 143:10 144:24 165:18 173:1 182:21 195:12

**possess** 129:6

**possessed** 15:14

**possession** 80:16 147:19 150:3

**possible** 21:12 66:7 93:17 152:16 156:12 192:4

**possibly** 41:6 52:3

**post** 131:5 163:22

**postpone** 29:8

**potential** 22:5 23:19 25:6 126:21

**potentially** 25:23 88:4 139:10 183:21 184:23

**power** 189:19

**practically** 107:23

**practice** 176:19 184:4

**practices** 114:22,24 115:8 116:6,10

117:21 118:8 121:22

**pre** 161:2,8,10 162:2,19,22 163:3 165:19 166:7,14 167:1

**precarious** 98:10

**precipient** 27:1

**precisely** 21:12 21:21 157:1

**preclusion** 179:14

**preconstructi...** 56:8

**precurser** 13:12

**predates** 163:14

**prefer** 74:3 75:23 159:9

**prejudice** 14:24 15:19 131:23 143:19 148:14 152:19 157:16,22 175:21 178:16 186:10 188:23

**prejudicial** 179:13

**preliminary** 71:4,8

**preloss** 161:21

**preparation** 44:16 151:24 189:3

**prepare** 15:20 44:19 69:3 114:9 132:1 146:11 159:23 172:16

**prepared** 28:12 56:6,13 57:24 58:8,14,23 59:3 60:16 62:20 66:3,11 92:17 123:16 127:16 129:24 130:15,22 131:1 139:3 165:6

**preparing** 15:4 123:12 129:22 151:8

**present** 6:12 8:11,21 125:23

**presentations** 152:1

**presented** 11:15 169:23

**presiding** 12:12

**pretrial** 187:6,8

**pretty** 75:17

**prevail** 105:23

**prevent** 178:16

**previewed** 14:20

**previously** 9:9 60:20 66:24 80:7 85:21 97:23 177:18 177:21 178:20 178:21 179:19 185:3,7

**pricing** 61:7

**primary** 6:7,19 47:4

**principals** 41:15 78:8

**prior** 24:7 27:12 72:21 75:13 79:20 94:17 97:3 103:19 109:3 119:19 129:20 163:12 166:18 175:4

**prioritize** 189:18

**prioritized** 55:20

**privacy** 115:9

**privilege** 12:23 13:6 15:7,13 23:5 32:5,6,11 32:15 33:2 37:8,11 40:5 41:15 48:8,12 48:23 51:15,24 52:15 55:6 59:22 60:1,9

60:13 71:1,7 72:10 83:15 99:14 110:5 112:14 127:12 127:13,18 128:20 130:9 130:11 131:8 131:12,17 133:7,10 135:13 137:6 140:7,8,9,17,19 140:20,21,24 141:17,22 142:3,9 143:11 144:19,24 145:8 146:4 147:5,15,18 148:5,11 150:18 151:1 153:1,18 155:23 156:21 159:21 162:17 189:4,6,10 190:8,16,19

**privileged** 23:11 26:3 34:4 71:10 82:13,16 100:11 138:22 139:10 142:7 142:12 145:6 151:4 153:11 157:3 160:1 161:17 190:20

**probably** 10:6 14:21 15:1 18:6 73:21 185:5 194:23 195:3,18

**problem** 28:3 35:6 64:20 74:9 95:6 123:11 130:4 138:20 145:3

**problematic** 83:19

**problems** 19:1 78:19

**procedure** 1:13 25:13 50:24 51:12 89:19 128:8 155:3

**procedures** 18:23

**proceed** 8:6 125:21

**proceedings** 1:10 3:3 197:9 197:12,15

**process** 16:18 29:6,9 36:7,12 37:12,15 40:23 41:19,23 100:3 132:1 143:4 154:4 158:11 158:14,24 184:10

**processed** 159:9

**processes** 16:19

**processing** 158:20

**produce** 37:9 60:1,12 65:24 68:1 80:12 83:8,8,9 105:17 110:2 135:4 138:3,21 141:17,19,23 142:5,5 143:6 143:13 147:22 155:19,23 158:9 159:1 166:7,9 172:18 189:8 191:3

**produced** 24:10,16,20 26:2 32:22 36:16 37:18 39:6,17,22 42:7 45:1 59:13,23 60:24 62:2 67:11 70:1 80:7 81:3 81:7,19 83:4 90:18 101:23 102:2 103:16 108:3 110:11 115:1,2 116:6 116:11,12 118:8 129:15

130:17 134:15 134:22,24 137:3,13,17,18 137:22 142:6 144:17 145:7 149:19 152:9 153:10 156:16 156:18 157:1,4 157:6 158:9 161:7,15,21 163:20 164:1 165:10 168:3,5 170:1,6,7,23 173:10 188:15 190:11,14,18 190:20,22 191:4

**producing** 34:3 37:14 141:6,15 158:22

**product** 36:11 39:4,7 41:15 44:23 52:2,3 110:5 139:1

**production** 35:8 42:5,12 59:17,21 79:17 79:24 80:14 85:10,24 91:20 102:9,14,15,18 103:1 106:14 124:9,16 127:11 139:7 161:4,8,12,14

161:18 162:1 163:10 164:6 189:7

**productions** 34:6,14 170:4 170:11,11

**productive** 143:16

**professional** 115:17 116:3 118:5 120:9

**professional's** 116:18

**professionals** 169:12

**project** 61:6 153:14

**promise** 143:13

**prompt** 75:18

**promptly** 12:21 71:8 110:16 138:2 152:18 173:16 194:18

**proof** 113:17 113:18,23

**proper** 130:5 130:13

**properly** 15:20

**property** 47:19 47:19,21 53:18 87:9 120:15

**proposal** 129:15,21 178:14 179:3

179:18

**proposed** 60:13 167:21 186:14

**proprietary** 84:19

**protected** 41:14 93:3 139:3,5 190:18

**protective** 86:10

**protocol** 120:23 161:23 162:4,6 167:19

**protocols** 120:13

**prove** 94:10 95:18 104:22

**provide** 19:21 21:19,20 33:4 44:18 52:18 58:5 97:17 101:9,12 110:20 120:9 135:10 136:24 162:12 164:13 165:4 181:16 190:7

**provided** 16:4 19:16 43:23 51:5 55:15 56:17 57:19,20 60:18,24 82:14 85:16 90:16 94:18 96:5,6

101:9 107:10 120:6 121:22 143:9 167:19 185:7

**providing** 35:12 36:14 51:18 53:6 151:19

**provision** 36:14 51:10

**provisions** 65:7

**public** 1:15 120:2 197:6

**pull** 9:20 48:19 145:10 163:9 196:13

**punished** 193:11,12

**purported** 130:23

**purportedly** 129:18

**purpose** 51:18 61:20 98:11 104:22 167:9

**purposes** 9:10 32:4 36:15 39:5 46:11 50:17 81:16 127:7 134:4 136:22

**pursuant** 1:11 1:12 42:8

**purview** 195:14

**put** 25:15 29:24 30:15 37:21 48:20 53:10 57:3,11 62:2 68:22 70:21 76:17 77:1 83:18 95:20 100:3,20 110:6 130:8 133:24 138:4,6 151:7 151:23 158:12 172:3 174:12 176:20,21 177:24

**putting** 12:10 49:3 83:13 131:19 163:15

**puzzled** 175:13

**q**

**qualifications** 62:2

**quantity** 69:9 170:6

**question** 14:16 18:5 69:22 86:20 96:15 105:20 107:18 110:13 111:14 111:17 113:11 113:12 117:16 118:12,21,21 119:6,9 123:17

125:4,5 131:20
142:24 146:22
148:16 169:16
185:21,24
186:13 187:10
187:17 191:7
**questioning**
69:23 173:8
**questions** 7:6
32:12 59:11
61:11,15 64:15
66:3,21 67:6,7
67:11,13,14
69:16 98:14
107:17 120:11
123:11 165:3,7
166:24 167:5
168:23 174:5
**quick** 65:9
**quickly** 7:23
10:15,17 23:3
24:22 34:15
54:12 66:23
69:6 79:9
148:15 152:15
159:6 160:1
**quite** 80:14
153:2 178:15
**quote** 11:12
83:4 90:2
97:16 100:2
111:22

**r**
**r** 39:13,15,15
41:3
**rael** 2:11 7:8,10
7:11 32:10
168:24 169:1
171:1
**raise** 8:3 15:18
18:7 77:23
108:10 123:24
124:22 160:2
196:6,8
**raised** 8:5 16:3
71:14 72:3
77:17 78:1
102:8,8 108:12
110:13,23
117:20 125:17
151:6 185:8
**raising** 34:2
108:8 112:10
126:2 150:2
**ralph** 176:1
**ramifications**
186:18
**range** 123:12
**rather** 195:4
**reach** 30:11
123:1 156:1
185:12
**reached** 18:3
33:23 82:24
123:13 160:7

**read** 58:10,12
58:21 75:5
99:24 103:11
128:4 136:24
140:1 149:13
151:12 162:14
168:1
**reading** 23:20
54:6 183:13
**ready** 10:2,8
13:20 30:19,24
31:7 74:16,24
75:9 111:9
112:3
**real** 41:3 61:21
69:6
**reality** 15:5
25:16 188:13
**really** 59:14
60:9 79:13
101:2 182:3
184:18 187:3
187:17
**realm** 188:7
**reapply** 69:6
**reason** 7:20 8:7
12:9,23 13:12
27:23 29:7
31:20 87:24
96:15 107:21
109:20 124:7
127:4 154:1
160:14 162:24
190:8 191:1

**reasonable**
39:1 65:2
69:10 178:15
182:16,19
190:1
**reasonably**
21:13 189:20
**reasoned** 113:8
**reasoning**
54:14
**reasons** 83:19
**rebuild** 96:20
169:8
**rebuttal** 25:14
32:16 43:24
44:2 45:16
53:6,12,21
54:9,21
**rebuttals** 45:17
**recall** 29:13
77:19 80:22
81:13 84:5
**receive** 34:9
74:3 163:9,11
**received** 15:5,7
16:6 17:16
49:9 60:3
61:10 65:12,16
71:2,22 75:18
110:14,18
127:11,13
128:2 130:19
142:22 143:1
150:15 162:10

162:10 163:13 164:6 177:13

**receives** 86:7

**recent** 8:8 12:20 16:1 27:10 163:10

**recently** 83:11 100:4,7 102:22 161:5 163:13 164:6

**recognize** 46:10 64:14 187:13

**recommending** 10:21

**record** 9:8 19:6 20:20 50:17 55:13 70:21 72:16 76:21 79:22 91:4 101:21 109:9 111:3,23 115:24 117:4 197:14

**records** 162:9

**red** 5:2,16 6:23 6:24 7:13,20 11:18 15:24 18:11 25:5 30:12 31:7 40:12 45:7 46:10 49:4 50:11 55:7,17 55:24 70:17,19

73:12,15,16,23 74:2,3,18 75:21 77:1,4 77:12 78:14 79:15 108:1,13 122:6,18 124:2 160:8,11,18 196:8,9

**redact** 84:14 85:2 89:18 100:9

**redacted** 81:21 81:23 82:6 83:13 88:14,18 88:24 90:4 91:15 100:5,10 162:10,11

**redaction** 100:23 101:12

**redactions** 80:7 81:6 83:4,17 83:22 88:22 95:7,8 99:13 100:13 110:3 110:14,19 112:14

**redeposed** 26:23

**redevelop** 165:2

**redevelopment** 162:19,23 167:1

**redo** 24:17 75:6

**redoing** 168:12

**ref** 41:4

**refer** 90:5 94:10 109:11 165:9

**reference** 39:16 94:21 109:14 134:5

**referenced** 115:21 117:20

**references** 114:21 115:1,5 115:6

**referred** 27:13 53:15 109:21

**referring** 94:17 106:3 109:11 117:13 118:2

**refers** 25:17

**reflect** 91:4

**reflects** 79:3

**regard** 42:19 48:12 169:7,19 171:1,11

**regarding** 76:15 78:18 100:19,21 121:10,13 139:13 165:18 171:5,12

**regardless** 26:21

**regularly** 28:20

**rehash** 156:23

**reinsurance** 79:24 80:11,17 81:9,12,18,21 85:11 90:14 101:8,23 102:2

**reinsuurance** 80:8

**reiterate** 38:11 44:7

**rejected** 179:2 180:4

**relatable** 87:18

**relate** 126:12

**related** 36:1,13 41:18 50:20 62:14 69:1 73:1 81:22 87:11 90:15 101:7 129:7 161:8 166:11 169:2 172:6 179:14

**relates** 73:1 80:17 81:8,12 84:1 95:17 101:24 105:14 163:21

**relating** 80:1,9 80:11 102:12 102:16 110:7 120:13 127:15 129:3 152:10

171:5
**relationship**
33:21 95:11
98:3,5 142:1
**relatively** 8:7
**relevance**
83:17 84:15
85:3,19 87:3
88:5 90:21,22
99:16 100:4,6
100:14,24
101:16 161:13
165:19 167:4,8
167:10,11,13
170:3 171:12
171:23 172:2
173:10
**relevant** 80:3
81:22 82:7
84:2,4,9 85:24
87:16 88:1,7
88:12 89:10,14
90:3,12,17
91:2,16 99:18
100:16 102:17
102:24 105:21
114:1,8,12
115:14 116:21
129:6 165:21
165:22 166:3
169:5,15
171:20 172:13
173:2,19
176:16 177:23

**reliable** 61:10
65:24
**reliance** 195:20
**relied** 20:24
48:17 49:12
61:19 68:6
115:2,16 116:2
116:17 117:7
117:10 119:16
127:7,17
130:18,23
**relief** 18:8
170:23 176:9
186:5,19,20
191:14,15
**reluctant**
195:12
**rely** 8:3 32:21
48:22 52:17
62:9 72:5
92:18 119:17
172:16 176:14
176:18 177:7
177:19 178:1,8
178:19 179:23
180:10 182:7,9
182:17 183:6
183:19 186:13
189:16
**relying** 21:5
52:1 98:16
102:6 105:8
113:6,6 166:15

**remain** 43:10
88:18
**remaining**
47:17
**remains** 25:8
122:17
**remedy** 179:14
179:16 194:9
**remember**
28:11
**remind** 19:23
70:24
**reminder** 74:19
**reminding**
77:14
**remiss** 48:9
**remove** 179:5
**removed** 19:17
60:20
**rendering**
141:7
**renovate** 171:5
**reopen** 87:10
169:20
**reopened** 87:13
**reopening**
87:22
**repair** 57:22
169:7,19
170:17 171:5
171:15
**repairing** 56:10
**repairs** 58:2,16

**repeat** 196:17
**repeated**
128:10
**repeatedly**
35:18 147:2
148:7 168:2
171:18
**replace** 169:20
**replaced**
169:15
**reply** 85:5
**report** 1:10 3:3
22:18,20 23:18
25:13,14,16,20
43:14 44:4
46:6 54:4,7,15
54:22
**reported** 197:9
197:11
**reporter** 4:2,18
8:22 39:11
58:11 197:7
**reporters** 58:13
**reports** 22:8,9
23:21 24:24
35:12 43:21
44:23 45:12,13
46:1 53:1,4
75:3 129:24
**repository**
177:23
**represent** 4:3,4
8:14 9:1
132:10,14

191:22,24
**representation**
  60:8 101:5
  117:5 119:20
  166:6,12
  168:22 182:23
**representations**
  171:1
**representatives**
  132:3
**represented**
  161:15 166:8
  169:24
**representing**
  8:12 9:5 65:12
  65:18 134:11
**represents**
  193:7
**reproduce** 83:4
**request** 4:6
  11:1,2 27:18
  27:20 29:14,16
  31:12 45:17
  74:11 116:15
  117:9 121:8
  124:12,18
  131:22 146:20
  150:4 158:23
  161:3,18
  165:11 166:20
  170:22 176:4
  184:11,13
  195:6

**requested**
  21:14 56:14
  117:6 123:18
  157:5 161:16
  175:14 192:10
**requesting**
  118:22
**requests** 79:14
  132:18 136:1
  150:23 164:1
**require** 31:23
  184:6
**required** 11:8
  11:19 19:11
  27:16 54:2
  83:2,6 192:8
**requires** 19:12
  93:12 95:3
  141:3 190:17
**reread** 100:21
**reservation**
  124:13
**reservations**
  123:19,22
**reserve** 82:13
  82:17 95:3
  101:18 102:2
  103:19 123:20
**reserved**
  171:24
**reserves** 79:17
  79:24 80:7,11
  80:16 81:8,11
  81:17,20 82:12

84:1 85:11,19
  86:5 87:16
  88:21 90:14
  101:8,12,23
  104:22,24
**reserving** 46:4
**resisted** 80:2
  102:13
**resolution**
  11:19 122:17
  123:2 180:11
**resolve** 11:9
  28:23 78:22
  178:16
**resolved** 22:23
  31:18,19 49:2
  78:18 122:16
  125:3
**resources**
  28:23 189:2
**respect** 7:4
  8:17 15:10
  33:2,5,11,17
  41:22 53:15
  75:16 79:16
  81:17 85:5
  87:21 102:5
  127:5 143:11
  157:8 172:10
  186:9
**respectfully**
  62:6 67:17
  106:21 107:4
  155:9 192:18

**respectively**
  77:2
**respond** 28:5
  36:20 55:10
  66:3 79:18
  162:22 180:18
**responded**
  75:19
**responding**
  12:24 28:2
  89:21
**response** 11:22
  32:17 45:4
  48:14 51:14
  65:12 73:21
  85:10 109:5
  111:8 131:15
  140:19 142:23
  146:7 155:4
  162:1 183:8
**responses**
  71:13,16,18
  72:18 175:7
**responsive** 83:9
  84:9 89:10
  91:16 100:16
  110:2,3 116:5
  161:18 162:3
  162:20 165:10
  167:9,21 168:3
  170:9 171:4,19
  173:2
**responsiveness**
  83:22 84:15

85:3 90:3
165:15
**rest** 64:10
164:11
**restoration**
47:7 62:11
143:20
**restore** 57:22
**result** 47:23
99:21 140:14
141:5 166:16
**resulting** 14:24
112:8
**resume** 87:23
**retain** 46:5
82:15 134:14
134:20
**retained** 22:22
23:12,24 24:14
25:22 32:3,20
35:20 37:12
47:20 53:12
58:19,22
129:10,17
134:6,8 181:15
**retention** 37:2
130:23 134:17
**retired** 35:1
**retraction**
146:13
**reveal** 83:15
**revealed** 83:12
**review** 58:20
71:8 75:13

83:3,6 89:24
90:2 91:7
98:22 132:19
132:21 133:20
136:18 141:4,9
141:22 145:14
145:15 150:24
152:15 155:20
156:22 157:3
161:22,24
162:5 167:9,13
190:17
**reviewed** 37:5
99:12 132:11
135:21,23
141:15 144:22
163:22
**reviewers**
162:17,18
171:3
**reviewing**
132:4 161:6
**revised** 60:19
71:10 164:9
**revisit** 103:24
104:4,7
**revisiting** 104:6
106:10
**rewind** 191:12
**rhyme** 153:24
**right** 9:19 10:7
18:11 20:19
25:18 49:14
61:16 69:17,22

94:21 97:20
100:17,18
104:15,20
120:10 124:17
144:3 146:1
150:12 156:24
157:16 164:19
166:17 179:16
185:23 194:6
**rights** 46:4
123:19,20,22
124:13
**riley** 2:9 6:17
**ring** 28:4
**rip** 196:13
**ripe** 11:12,13
11:14 12:22
**road** 9:15
24:18 44:6
55:1
**robbin** 181:6
**robbins** 2:3
5:22,23,24 6:2
8:14 51:13,13
93:23 94:14
95:6 96:4,11
96:15 97:9,21
98:9,14,21
99:7,10 100:9
100:18 101:2
103:8,12 104:8
104:11,13
105:10,13
106:3,18,21

107:1,4,7,12,14
108:4,9 109:3
111:15 112:13
112:19,21
113:20 114:6
117:3,14
118:13 119:10
119:12,15,20
120:12,18,24
122:7,21 139:7
139:24 143:4
145:5 146:21
147:2,7,11
149:1 151:17
153:6 154:8,18
156:15 157:19
158:16,20
175:14,17
181:23 185:21
186:1,9 189:6
191:22 192:8
192:10,18
193:19 195:3
**robins** 2:15
**robinskaplan....**
2:17
**rocks** 1:14
197:5,20
**role** 6:13 9:3
16:23 31:2
57:5,8 65:3
128:22 181:9
**rolling** 76:17
96:19 189:10

**rolls** 16:14
**room** 9:16
  45:18
**roughly** 32:1
**round** 48:7
**rshc** 2:13
**rule** 7:4 9:24
  16:4 17:3,12
  19:13 22:2
  35:15 44:9,12
  51:24 54:3,3
  70:22 71:23
  72:1 78:5,5
  90:12 102:5
  113:14 133:21
  173:18 176:12
  179:15 183:12
  184:6 186:21
  188:6,6 191:9
  192:6 193:18
  196:3
**ruled** 35:7 42:2
  102:21 103:11
  108:4 113:3
  123:1 125:20
  136:21 155:8
**rules** 1:12 8:2
  18:1 25:11,12
  43:10 50:24
  51:11 83:21
  84:16 89:7,18
  128:7 174:18
  178:4

**ruling** 7:23,24
  26:8 27:5,6,7
  42:2 45:8
  91:17 103:10
  103:10,14,15
  105:14 106:9
  113:15 173:2
  194:20 196:5
**rulings** 78:6
  106:13 113:5,6
**run** 70:9 75:8
  113:13 169:24
**ruslov** 104:16

**s**

**s** 2:12
**sacrosanct**
  75:14
**safer** 2:9 6:17
**safest** 93:20
**sal** 185:14
**salem** 2:20
**salvage** 115:8
  115:22
**samuel** 2:4 4:14
  4:21
**saris** 194:7,12
  194:22
**satisfactory**
  126:14,17
**satisfy** 171:16
**saturday** 34:23
**save** 28:23,24

**saw** 10:9 18:6
  49:10 62:15
  134:17 140:20
  180:8 183:24
**saying** 12:23
  13:2,8,9,10
  25:6 29:20
  31:12 33:13
  42:3 49:18,24
  56:20 73:22
  77:5 89:12
  93:19 95:2
  97:10,19 98:6
  99:3,6 100:15
  100:22 106:18
  108:2,17 111:8
  111:15 112:1
  119:15,16
  121:4 132:23
  139:17,22
  141:18 144:19
  146:14,18
  151:18 153:23
  154:8,11 155:1
  162:21,24
  166:23 170:23
  187:1 193:11
  193:21
**says** 25:10
  45:22 57:18
  61:4 65:23
  76:15 100:16
  110:2 132:18
  133:18,22

  141:13 142:5
  149:21 182:7,9
  197:6
**scenes** 106:22
**schedule** 10:21
  13:15,16 15:2
  17:22 25:8,17
  31:23 45:18,21
  46:11 49:3,6
  53:20 56:6,8
  56:13,17 58:1
  58:8,15 59:3,6
  60:16,19,23
  61:2,4,5,10,12
  61:18,22 62:2
  62:10,21 63:9
  65:14,24 68:1
  68:6,8 70:1
  72:9 78:10,12
  79:2 127:5
  129:23 160:13
  178:23 180:6,9
  191:13
**scheduled** 15:3
  63:11 75:12
  79:2 136:9,10
  152:21 186:3
**schedules**
  18:21 46:12
  127:6,15
  130:15,17
  131:1
**scheduling**
  12:10 44:5

**[scheduling - served]**                                              Page 52

58:21 78:18,19
**school** 31:15
**scolding** 31:15
**scope** 57:21
  60:14 129:23
  130:10 131:16
  166:21 188:9
**scratch** 10:12
**screen** 9:17
  133:24 138:5,6
  144:23 148:1
  148:11 149:22
  163:16
**screeners** 166:7
**screens** 9:16,19
**scroll** 138:19
  150:11 151:13
  151:14
**scurry** 43:24
**search** 163:23
  166:11,15,18
  166:21 168:4
  168:14,18
  170:1 172:21
  173:11 174:22
  176:2,7
**searches** 80:10
  166:13
**seat** 132:15
**second** 71:24
  77:18 81:23
  83:23 94:5,16
  114:2 130:13
  151:15 152:11

**secondly**
  146:13
**seconds** 109:10
**secret** 87:3
**sections** 89:1
**sector** 117:24
  120:14
**see** 9:23 15:1
  16:13 18:23
  25:6 34:8
  37:18 45:8
  52:13 63:1
  74:12 76:13,15
  78:3 91:9 92:6
  98:22 100:1
  109:19 113:5
  117:17 136:15
  138:7 141:9
  144:7 145:24
  150:6,7,12
  151:2,15
  152:11 153:19
  156:13 163:6
  164:11 174:4
  185:18 196:17
**seeing** 29:14
  170:12,20,21
  181:10
**seek** 14:1,3,10
  14:18 60:22
  165:24 178:19
  179:16 180:9
**seeking** 15:17
  56:1,4,19 57:7

64:4 82:21
  84:10 101:15
  102:11 118:10
  172:19 176:10
  178:23 179:22
**seem** 16:9
  165:16
**seems** 71:18
  124:18 144:4
  190:1
**seen** 39:9 46:12
  70:12 134:16
  134:22 163:4
  170:13 172:8
  181:4
**select** 182:15
  187:16
**send** 20:9 30:12
  31:13 67:10
  68:16,23 73:19
  93:18 94:15,22
  94:24 103:3
  112:6 114:3
  138:1 139:10
  139:22 140:12
  140:22 144:13
  144:14 146:15
  146:17 153:3
  155:11 158:13
  195:18
**sending** 113:1
  141:1 150:4
**sends** 153:8
  194:22

**sense** 26:10
  66:16 68:13
  143:2 192:20
**sensible** 65:2
**sensitive** 84:19
  85:1 93:19
**sent** 15:2 16:10
  17:10 38:5
  58:3 64:7,8
  76:19,19 94:12
  94:13 127:19
  128:1 135:9
  136:13 142:7
  143:1 162:8
  181:24
**sentence** 51:14
  105:14
**sentences** 45:14
  54:15
**separate** 9:20
  102:13 121:9
  137:17 160:19
  184:22
**september**
  14:14 42:9
  130:1 162:9
**seriously**
  123:14
**serve** 22:18
**served** 16:7
  17:3,13 34:18
  63:10 65:10
  76:24 77:17,24
  122:23 161:5

**[served - situation]**

165:24 172:4
173:23 182:22
**server** 152:5
**service** 51:5
73:7 76:22,24
126:10
**services** 33:4
164:13,14
**servicing**
126:12
**serving** 174:1
**set** 8:1 10:5
11:3,9,10,16
12:15 14:5,19
18:23 19:6
20:21 27:19
50:16 77:18
80:16 84:1,5
86:5 94:19,19
95:21 114:10
121:9 132:9
165:21
**seth** 2:3 5:23
51:13
**sets** 96:17
144:23
**setting** 18:20
85:20 87:16
**settled** 86:16,17
87:12 97:20,21
122:13
**settlement**
85:22 86:4
98:7 102:12,18

102:24
**settling** 91:1
**setup** 82:17
**seven** 8:19
66:12,14,15,16
79:12 113:12
122:3 123:5
124:11
**several** 74:10
96:12 107:24
112:5
**severity** 169:13
**shaking** 23:9,9
**share** 93:14,14
144:23 148:1
148:11 149:22
150:5 158:12
158:13 168:5
**sharing** 93:10
**shawmut** 2:18
2:22 4:4,8,11
5:8 57:24 58:7
58:14,23,24
59:3,5,9,23
60:14,15,23,24
61:17 62:1,4,9
62:14 63:24
64:4 65:10,12
65:18 68:6
127:3,5
**shawmut's**
55:19 56:19
57:10 58:4,20
63:7

**shc** 1:3
**sheet** 16:12,13
103:5
**sheeted** 39:6
**shield** 50:22
**shielded** 188:22
**shifting** 144:9
**ship** 70:9,12
**short** 45:14
55:3 66:7
107:20
**shorthand**
197:7,11
**shortly** 10:19
17:17
**show** 68:5 69:2
138:16 148:11
163:6
**showing** 81:20
86:11,14
**shown** 160:16
**shows** 80:16
168:13
**shut** 165:2
**side** 12:10
74:14,15,17
160:13 186:22
**sided** 192:6
195:7
**sides** 24:3 28:1
28:14,19 30:4
32:2 41:24
101:21 158:10
193:16 196:9

**sign** 39:13
**signature**
197:20
**significance**
175:12
**significant**
14:22 16:22
17:19 30:2
33:8 72:4
91:20 127:14
170:5,6
**significantly**
145:23
**silence** 11:24
**silent** 191:10
**similar** 120:8
**simply** 29:21
55:13 118:21
179:23 182:4
**single** 9:22 37:8
74:17,18 97:4
103:7 105:13
108:13 131:4
135:13 136:19
141:16 147:3
147:18 149:3
192:20
**sit** 104:15
**sitting** 74:16
131:14 136:4
143:12 188:14
**situation** 57:6
93:9 121:20
128:23 136:3

188:13
**situations** 52:16
**six** 7:18 10:14 18:3 88:17 114:23,24 116:7 140:16 164:24 184:1
**size** 192:13
**sjc** 42:18
**slew** 124:5
**slide** 82:1
**slip** 31:3 39:6
**slipping** 31:4
**slow** 42:13,13 96:19 98:11,13 125:8 136:2
**slowed** 30:14
**slowly** 58:10
**slowness** 19:1 191:9
**small** 68:2 69:18
**smaller** 94:19
**smith** 163:8,9 164:5,7
**smoothly** 11:1
**snippet** 58:3,5
**somebody** 12:8 24:11 26:22 40:17 43:15 65:3 121:19 123:16 188:4

**soon** 31:24 110:20 148:7 192:4
**sooner** 22:23 24:2 112:18 191:19 195:4
**sorry** 31:20 33:18 101:19 117:1 147:11 147:16 156:6
**sort** 12:18 82:2 82:5 106:16 115:22 138:8 154:4 157:3 179:21
**sought** 4:10 79:23 81:5 82:18 85:10,16 85:22 86:13 124:15 161:2 169:5 185:4 186:5
**sound** 31:15
**sounded** 117:15
**sounds** 64:15 66:19 124:13 125:5 168:21 192:13
**source** 22:5 154:23
**sources** 10:13
**speak** 6:2 22:24 61:23 63:21

70:6 86:19 107:7,8 109:8 121:11 138:13 165:13 169:1
**speaking** 4:2,13 4:20 5:7,14,15 5:17,21 6:1,13 6:19 7:12,17 8:17,21,23 9:2 9:6,10 54:24
**speaks** 62:5
**special** 12:16 16:12,20,23 56:23
**specific** 6:22 20:3 32:12 117:6,8,20 155:4 162:16 163:20 172:6
**specifically** 35:11 36:1 41:18 82:13 84:21 95:7 100:16 118:14 118:15,16 165:7
**speech** 111:22
**speed** 58:11 124:7 159:19
**spell** 4:17 39:10 39:11,13 41:1
**spending** 12:24
**spent** 84:3 158:3,5 160:16

**spiel** 111:17
**spirit** 122:24 179:17
**ss** 197:2
**stage** 18:18 78:6
**stand** 195:13
**standard** 108:9 108:11,14,17 108:17
**standing** 33:15
**stands** 115:18
**start** 10:12 101:22 128:19
**started** 10:22 34:11 43:3 65:17 70:22 101:6 164:8 189:24 191:7 196:16
**starting** 186:10
**state** 1:15 72:15 105:1 197:1,9,16
**stated** 29:4,7 48:16 130:20 137:22 147:2 153:21 174:19 174:19
**statements** 128:10
**states** 1:1,13 128:4 129:22 130:2 138:2

195:3
**stating** 173:10
**statistics** 191:4
**stats** 35:21
38:23
**status** 7:6
122:4
**stay** 76:10
**stayed** 42:16,18
**stays** 78:15
**steal** 145:13
**stems** 36:18,21
**step** 44:20
187:1,2 188:1
**stephen** 9:5
**steps** 15:18
**stern** 8:7 30:22
**steward** 40:22
41:2,12 80:9
80:12 81:2,14
81:20 82:3,12
85:11 86:8
87:7,8,10
89:12,15 90:15
95:11,19 96:22
97:10,22,24
98:8 100:20
101:17 110:1
127:20 128:5
129:2 131:5,12
132:18 134:7
134:11 138:2
139:23 142:19
152:6 156:8

166:13 169:6
169:19 170:14
177:2,3 181:7
181:15 190:15
**steward's** 80:1
80:17 87:23
89:3 98:10
101:7,13,24
102:24 128:6
129:3 131:17
132:2 142:21
161:2
**stip** 99:5,6
100:15
**stipulate** 59:2
**stipulation**
83:1 84:20
85:2,5,8,9,19
89:19 90:19
91:17 99:7,11
99:20 102:8
110:7,10
**stipulations**
83:20
**stop** 35:13
147:20 153:14
157:3 162:20
**stopping**
103:21
**storage** 76:6,9
**store** 76:5,6,8
**storm** 88:11,14
165:6

**street** 2:5,12,16
2:20
**stretch** 92:5
**strike** 113:4
187:18
**strong** 187:17
**struck** 88:3
179:1
**stuff** 16:13 67:7
78:3 94:9
105:20 113:1
196:12
**stymied** 143:12
**subject** 19:19
21:2,24 43:17
43:22,22 45:12
45:15 46:21
54:13 76:12,14
76:14,16 98:18
157:14 160:17
173:18
**subjects** 45:13
**submission**
33:11 85:13
98:18,22
114:23 116:7
116:13 128:21
182:12
**submissions**
30:1 90:23
122:15 175:4
**submit** 18:13
71:9 72:19
73:9,11 75:20

91:6 109:6
161:23 178:3
187:20 195:16
**submitted**
18:12 107:6
108:21 109:15
111:6,8 122:14
175:24 180:9
182:11
**subpoena**
65:10,13 76:24
128:3 131:13
140:19 155:4,7
155:7 182:1
183:8 185:19
189:19
**subpoenaed**
124:15 127:10
**subpoenas**
63:10,20 73:7
75:17,18
**subsequent**
102:8,9 130:23
**subset** 67:10
68:16
**substantive**
76:5,12
**sudden** 10:22
42:5 43:24
75:4
**suddenly** 98:1
**suffering**
143:18

**sufficient** 30:5 66:19 173:14
**suggest** 57:14 65:23 98:13 154:5 164:19
**suggested** 192:23
**suggestion** 59:7 65:22 109:13
**suite** 2:12,16,20
**summaries** 99:1
**summarizing** 94:1
**summary** 13:20 14:4 26:6,18 75:10 105:24
**summer** 10:3 127:12 177:1
**sunday** 34:23
**supplement** 19:22 20:13 160:11 175:15 176:4 184:7
**supplemental** 57:19 71:24 72:11 175:23
**supplementing** 193:24
**supplements** 118:1
**supplied** 121:14

**supply** 57:6 60:21
**support** 53:11 106:5,6 183:15 187:3
**supposed** 121:21 187:5
**supposedly** 120:1
**sur** 44:3 45:17
**sure** 8:9 26:20 29:2 32:5 38:10 41:7 54:18 55:21 67:13 71:4 85:7 93:2,23 117:3,4 121:17 122:2 124:3 129:10 149:2 155:18 157:15 172:22 173:19 177:16 187:14
**surprise** 184:18 187:11
**surprised** 69:5 181:23
**surprises** 43:19 45:16 55:1
**surprisingly** 70:15
**sweet** 66:7
**swiftly** 78:7
**switzerland** 66:6

**sword** 33:12
**sworn** 197:6
**system** 76:6,9 93:14

---

**t**

**t** 146:24
**t's** 51:10
**tab** 114:23,24 116:7,13
**table** 123:21
**tabs** 88:10,15 88:16 89:24 90:5 91:18 92:19
**tag** 167:21
**take** 18:18 31:2 55:7 57:10 67:18 89:23 91:8 92:6,22 104:1 119:20 130:7 146:10 152:23 159:11 178:12,17 183:22 184:19 185:4,6 186:5 186:24 187:24 188:18 191:21 194:15,16 195:13,19
**taken** 1:14 15:19 51:1 57:11 140:22 157:23 173:1

179:21 189:3 192:20
**takes** 26:12 97:12 145:14 152:13 159:2 160:21 190:20
**talk** 22:11 43:18 48:9 66:23 72:6,9 95:7 103:19 118:24 136:17 136:17 139:9 173:21 174:3 193:16 194:14
**talked** 49:22 69:19 70:20 142:13 181:20
**talking** 24:13 24:14 25:10 34:5 35:10,11 35:13,14 38:18 39:16 66:8 68:18 77:16 102:10 108:6 120:16 126:19 127:2 133:12 159:14 181:19 190:24 191:8
**talks** 107:15
**targeted** 60:22 64:15
**task** 27:24
**tasked** 53:6

**taught** 141:6
**team** 72:14
133:15 188:16
190:10
**tear** 169:20
170:18 171:15
**tearing** 172:10
**technical** 52:18
52:18 158:16
**tee** 34:15 45:7
78:5
**teed** 24:22
**tell** 4:2 12:18
24:3 27:23
43:15 45:10
46:9 60:18
64:24 100:10
107:13 121:6
132:17 133:19
137:16 138:14
155:22 162:15
179:23 191:23
**telling** 13:4
124:18 160:15
**tells** 138:24
139:2
**ten** 13:1,2
27:14 67:16,18
108:21 111:5
178:24 194:16
195:24
**tend** 104:22
**tens** 168:6
194:2

**tentative** 78:24
79:7
**term** 168:14
173:12
**terms** 6:22
10:13 47:22
86:4 116:17
118:3 163:23
166:11,15,18
168:4,18 170:1
172:21 178:9
181:3
**terrain** 54:14
**terrible** 132:7
**terse** 112:5
**testified** 63:14
**testifies** 67:14
**testify** 45:14
52:8 136:7
164:24 176:21
176:22 193:21
195:21
**testifying** 22:20
25:24 32:16,17
33:2 35:12
36:5 43:9
45:11 46:5
48:13 49:15,16
50:8 52:7,21
53:7,12,20
54:3 55:6
128:5 146:20
146:24 148:22
188:4 194:12

**testimony** 21:3
21:24 25:12
46:21 64:4
**testing** 97:11
**thank** 8:20
27:12 70:9
77:13 141:14
141:14 153:9
**thing** 8:2 12:14
37:3 76:3,4
77:15 86:24
90:9 93:23
96:1 97:16
108:13 111:7
115:21 117:3
125:9,10 130:5
139:11 150:7
160:3 165:14
174:12 180:14
182:6
**things** 9:20
13:5,13 18:19
18:22 20:6
30:13 34:12,16
38:17 45:10
80:6 83:2 89:1
93:16 100:10
103:6 106:16
116:15 117:23
119:5 121:7
125:9,20 141:2
144:10 157:9
165:4 180:19
191:9

**think** 7:19 18:4
18:14,24 20:18
23:21 27:9
28:18,21 33:20
42:1 43:10
44:1 47:3 50:5
50:16 55:11
66:12 68:21
69:5 70:3,14
73:3,11 77:17
77:18 78:8,20
84:13 87:14,24
88:2 92:6
94:10,13 96:6
101:4 105:13
106:21 113:20
115:20 119:6
126:24 131:19
137:20 139:1
143:15 145:12
152:21,24
158:24 159:24
162:24 166:12
166:14 167:3
168:11 171:10
171:16 172:10
173:14 176:19
179:7 181:3
185:21 186:1
186:11 187:13
187:14 188:10
191:17 194:5,6
194:6 195:14

**thinks** 164:4
**third** 4:8 15:11
  15:14 23:5
  34:13 52:17
  61:5 62:15,18
  63:8,19 64:12
  78:22 79:4,11
  124:14 135:24
  136:1 143:2
  145:21 181:7,9
  183:7 188:21
**thomas** 93:13
**thought** 28:16
  31:10 35:7
  42:6 104:12
  109:17 127:2
  144:3 176:3
  178:15 180:24
  187:15
**thousand** 152:9
**thousands**
  152:8,8,14
  168:6,9
**three** 5:15,20
  6:4,24 7:12,12
  30:10 31:13
  38:2,21,24
  48:1 49:21
  50:13 67:1,3
  67:15 68:5
  71:11 72:19
  73:14 77:11,24
  81:9 88:11,14
  88:16 89:24

90:1,5 91:5,18
92:1,2,3,11,20
98:23 106:11
113:14 116:24
117:2 126:2
129:9 140:15
148:2 150:10
160:3,10
168:24 169:1,3
171:12 172:7
174:7 183:3
196:7
**threshold**
  118:21 121:10
**tight** 70:9
**time** 9:21 12:24
  14:7,9 18:12
  21:3 27:20
  28:14,24 29:13
  29:19,23 30:1
  30:2 31:7,9,22
  38:15,16,20
  42:12 43:21
  44:22 45:6
  46:7 47:8,15
  50:15 52:12
  57:3 58:1,8,12
  58:15 59:9
  62:12 64:11
  70:23 74:20
  75:12 80:23
  84:3 92:14,15
  99:19 101:3
  102:1,11 105:4

106:17,20
107:15,22,23
108:7 110:13
111:1 113:9
115:14 116:21
125:13,21
127:24 129:20
133:12 136:2
140:4,22
142:23 144:3,6
144:12,13
146:11 148:3
151:8 152:13
153:19 154:4
155:9,16
159:17 167:12
169:17 171:7
171:24 179:10
189:2,8 190:20
190:21 192:7
196:15
**timeliness**
  77:22
**timely** 8:3
  106:14 107:6,9
  108:2 110:22
  111:15 112:3
  146:6 154:10
  196:12
**times** 10:23
  39:10 96:12
  161:15
**timing** 56:9
  132:7 145:24

146:12 148:14
148:14 151:4
173:21 174:5
180:15
**title** 67:7
  190:11
**today** 4:13 5:21
  6:1 8:17,21
  9:14 15:18
  18:15 60:4
  92:16,24
  128:11 135:4
  158:8 159:1
  171:10 181:13
**today's** 53:2
  71:11
**todd** 2:2 141:10
  159:23
**toddweld.com**
  2:6
**toes** 188:2
**together** 49:3
  89:13 180:16
**told** 11:14,23
  12:4 15:8 37:7
  49:7 73:6
  107:16,16
  131:10 135:11
  136:16 138:19
  144:4 147:23
  148:4,6,9
  164:21 168:2
**tomorrow**
  73:23 158:15

**[tone - two]**                                                          Page 59

**tone** 8:7 12:19 126:4
**took** 19:17 21:15 145:15 152:17 154:4 155:8 184:1 190:9
**tooth** 188:21
**top** 189:15
**topic** 4:23 46:10 55:8 60:19 70:14 72:21 76:16 93:24 116:23 116:24 117:2 120:11 121:24 122:5 123:14 126:9 155:17 164:24 166:24 167:5 172:6,6 173:4 186:16
**topics** 5:6,13 6:24 7:1 22:10 46:15 53:2,14 54:9,9,23 60:20 63:14 64:3,11,16,24 65:8,14,18,20 70:18 122:2,3 122:5,22 123:12,17 161:4 166:1,1 169:15 172:23 173:3 193:9

**torn** 169:14
**tortious** 87:19 94:3,24 95:2,9 96:1 105:21
**tortiously** 96:3
**total** 150:10 152:4 165:20 178:24
**touched** 15:23
**towards** 15:15 43:7
**track** 78:8 82:2
**tracking** 82:1
**traded** 120:2
**traditional** 10:13 61:5
**traffic** 74:23
**transcribed** 197:12
**transcript** 57:2 173:13 197:14
**transparency** 157:8
**transparent** 193:13
**treated** 41:9
**tremendous** 189:1
**trial** 10:2,7,15 10:20 14:13 30:19,23 75:1 75:9,13 112:3 114:10 125:11 167:12 172:1

176:19 177:7 177:19 179:24 180:3 182:18 183:1,17,18,20 184:23 187:1,5 189:21 191:13 192:17,22 193:4 194:7,12 195:13
**tried** 133:6
**tripled** 192:13
**troubling** 143:22,22
**true** 130:14 148:6 197:14
**trust** 1:3
**trustee** 1:2 180:4
**try** 76:18 158:4 180:6 189:17 192:1
**trying** 17:22 21:9 28:23 39:8 57:14 59:13 78:22 112:2 121:18 132:1 143:8 151:15
**tuesday** 64:8 75:20
**tune** 125:18
**turn** 22:24 125:19 132:20 142:19 143:12

143:17 146:3 156:2,9 159:11
**turned** 12:7 74:24 130:21 132:4
**turns** 104:3 153:9
**twenty** 67:22
**two** 5:2,19 6:24 7:18 8:1 9:19 9:19 11:6 20:21 21:1,17 25:23 26:5 29:10 30:6,8 38:24 45:14 46:17,20,22,23 47:5,12,14 54:15 66:13,20 66:21 67:5 68:15,17,24 76:24 80:6 81:8,16 83:2 83:19 87:4 97:5,6 106:11 108:12,18 110:17 113:14 121:20 131:16 137:17 139:5 142:8 147:13 149:23 158:3 160:22 161:1 161:11 165:5 165:14 169:2,3 171:2,11 172:6

178:11 179:11 180:7 181:4 183:5,22 185:11 190:4 190:12 192:6 195:7

**ty** 41:7

**type** 84:22 90:17 94:9 97:16 98:3 152:24 175:20

**types** 84:22 88:17 170:13 170:13,19

**typically** 17:4 90:18

**u**

**ultimately** 21:21 56:13

**unable** 85:15

**undecided** 122:17

**undeniable** 131:22 143:18

**under** 22:2 25:11,12 33:7 41:14 44:11 47:22 50:23 85:2 86:10 90:12 96:21 102:13 109:10 128:7 130:8,10 133:20 141:2

171:21 173:18 174:17 179:15 188:23

**underlying** 36:11 44:22 62:9 129:15

**understand** 7:20 13:22 15:12 44:11 49:4 61:14,18 69:20,21 71:17 82:17 86:1,23 90:2 93:10 97:18,19 101:4 103:11 111:20 112:24 118:3 119:11 121:5 121:19 124:4 132:13 136:12 136:16 142:11 143:21 144:18 153:8 159:11 166:5 171:9 175:11 182:5 192:5

**understanding** 33:10 122:7

**understands** 168:12

**understood** 15:22 32:10 44:7 61:20 74:21 77:9 99:10 117:5

121:4 188:5 195:16

**undertaken** 141:9 143:5

**undue** 28:1

**unequivocal** 171:18

**unfathomable** 131:12

**united** 1:1,13

**universe** 168:6

**universes** 147:14 149:23

**unquote** 90:3 111:23

**unredact** 80:8

**unredacted** 83:5 91:10 92:7,24

**unredactions** 81:1

**unripe** 12:22

**untimely** 108:14

**untrue** 110:22

**update** 16:4,5 17:12 20:3 177:12 193:17

**updated** 17:3 17:13 19:16,22 192:7

**updates** 17:18

**upheld** 102:23

**urge** 79:11

**urgency** 126:5

**urgent** 12:5 13:13

**use** 33:1 58:22 61:3 66:1,10 67:20,21,22 76:6,9 79:12 92:8 126:5 128:21 174:20 183:15 195:9

**used** 61:12 115:17 120:7 122:23

**useful** 159:10 187:22

**using** 96:12 126:4

**usual** 67:6

**utilized** 116:17

**v**

**v** 114:2

**vacuum** 186:12

**vague** 159:5

**validate** 61:2

**valuable** 29:18

**valuation** 47:19 47:21

**value** 86:3,17

**various** 29:24 45:10

**vendor** 158:11 158:14 159:1,2

159:4,9,16,17
**version**  162:10
**versions**  116:20
**versus**  133:11
**victoria**  1:14
181:6 197:5,20
**video**  28:22
**viewed**  186:12
**violate**  141:24
**violated**  99:6
109:24 112:15
112:22
**violation**  100:2
**vogel**  9:5,5
**voice**  31:1
**vs**  1:5

**w**

**wait**  22:3,11
44:3 53:1 55:9
57:11 125:13
**waited**  111:10
**waiting**  42:3
113:10 119:4
125:7,22
**waived**  130:15
**waiver**  49:1
**waiving**  162:15
**wake**  129:2
**walk**  163:3
**walked**  98:11
**walking**  98:13
**want**  11:13
20:10,20 29:2

29:17 33:9
35:9 42:22
44:3 49:16
50:15 51:13
55:7,10 57:10
59:15 60:5
64:16 65:3
66:10 67:8
69:13,16,21
72:13 73:12
74:17,22 76:4
77:23 79:18
84:18,23 85:4
85:6 86:1 89:5
90:2,9 92:1
93:18 94:10,23
97:11 99:23
103:9 107:17
109:9 112:24
113:2,19 117:3
118:4,20
122:12,12
124:8 127:4
133:19 141:19
141:23,24
142:2 144:5,13
146:3 149:2
151:2 155:18
156:13,23
157:13 158:5
158:14 160:19
161:11 165:15
166:2 167:18
172:22 173:19

178:10 182:5
188:1,2 192:6
193:10,19
194:5,8,9,14
196:3,17
**wanted**  10:16
29:8 41:7
55:21 91:4
150:24 166:21
185:12
**wants**  40:17
66:1 137:4
158:23 168:8
186:1,5 188:8
**war**  65:4
**wastes**  29:18
**water**  57:23
58:2,16 181:16
**waving**  162:17
**way**  5:22 24:24
26:10 35:2
41:10 43:18
61:6,18 64:12
64:16,21 65:22
70:1 71:7 75:8
76:16 86:13
93:3,12 94:18
99:18 113:13
120:4 123:7
138:23 141:5
154:10 156:24
158:21 159:6
193:11 196:13
196:14

**we've**  28:22
29:1 42:24
50:5 72:23
121:1,24 132:4
143:8 150:23
171:7 172:20
190:23
**wear**  186:11
**wearing**  121:20
**weather**  91:13
**weeds**  79:9
**week**  10:6
14:21 16:5
19:17 37:5
49:10 56:18
72:12 73:11
88:11 132:12
132:22,24
133:4 135:11
135:22,23
136:23 141:1,2
143:5 144:5,21
145:2,15
150:16 172:5
177:13 185:9
**weeks**  88:11,14
131:16 142:8
184:1
**welcome**  70:11
**weld**  2:2
141:10 159:23
**went**  24:6
27:21 36:8
43:20 44:24,24

**[went - write]**

96:7 140:2
141:3 146:5
177:14 183:20
**whatsoever**
152:19
**wheel** 69:23
**whichever**
61:15
**wide** 26:15
**william** 2:3
4:15 5:4 59:19
**willing** 18:15
35:5 66:20
92:5 189:11
**window** 38:18
99:15
**wish** 62:16
144:15
**withdraw**
146:20
**withdrawing**
139:19 143:23
148:4 164:22
**withdrawn**
146:21
**withdrew**
185:2
**withheld** 23:11
23:23 24:4,16
24:21 25:21
26:23 33:8
35:22,23 36:9
36:17 37:1
38:11 39:3,18

39:20 40:3
41:16,20,22
44:11,22 45:2
49:24 51:4,11
55:15 75:5
98:7 127:17
131:9,11
136:19 137:23
142:11 144:20
144:21 159:22
163:1 171:22
172:1
**withhold** 36:24
39:24 99:13
142:2 143:3
152:11 156:20
**withholding**
32:6,14 35:18
36:3 40:5 44:8
44:10,13 48:24
49:10 50:18
110:4 128:12
128:17 135:17
140:24 142:18
146:24 148:18
149:1,4,15,16
149:20 151:21
153:20
**witness** 17:20
24:11,24 27:2
66:3 67:23
69:3 127:10
133:21 136:5
164:17,19,19

176:20 177:9
177:24 184:23
185:1 187:1
191:18 193:22
195:13
**witnesses** 18:10
33:4 68:9 72:5
105:3 129:6
130:8 166:24
168:23 176:13
177:14,19
178:20 179:15
180:5,23
183:14 189:16
189:19
**wonder** 65:1
168:14
**wonderful**
107:2,19
**word** 9:23
11:13 25:15
54:2,6 119:18
120:4 144:14
**wording** 25:9
**words** 16:11
96:13 99:2,2
167:4 173:20
179:5 186:18
192:12
**work** 27:1,2
30:16,18 32:21
36:11 39:4,7
41:15 44:22
52:2,3 56:7,12

57:21 62:9
63:14 65:5
66:11 69:12
77:10 78:3
79:2 93:2,17
96:8,10,11
97:12 110:5
122:8 123:3
129:3,17,20
130:2,9 131:7
133:6,6 139:1
151:20 153:13
156:10 159:24
174:4 180:16
196:7
**worked** 35:3
69:24 155:12
174:23
**working** 15:1
15:15 28:19
29:1,12 33:20
35:2 43:7
45:24 47:20
53:4,13 63:8
63:19 78:21
125:24 150:18
188:17 190:10
**works** 70:7
**worried** 73:18
**worry** 41:5
**wound** 143:7
**wrapped** 171:2
**write** 126:20
133:17 145:5,6

**[writing - zurich's]**                                                                 Page 63

| | |
|---|---|
| **writing** 25:19 46:6 132:14 145:9 147:8,9 165:4 184:10 | **yesterday** 37:7 128:14 135:21 138:17 150:15 150:21 152:21 152:22 165:5 183:4 |
| **written** 135:3 165:24 175:6 | |
| **wrong** 96:13 137:15 168:15 | **z** |
| **wrongfully** 188:3 | **zurich** 9:9 56:7 56:16 57:20,22 58:19,22 73:6 77:2 82:2,5,8 82:15 86:5,6 87:6,15,21 88:19 95:10,13 95:14,14 96:11 96:18 98:7 102:3,12,24 104:9,16,16 115:6,7,11,12 118:4 120:1 |
| **wrongly** 159:24 | |
| **wrote** 11:21 27:5 105:9 135:20,23 138:16 140:5 141:13 144:22 145:1 149:13 154:24 | |
| **x** | |
| **x** 3:1 56:21 74:7 | **zurich's** 57:11 79:16 82:8 95:4 99:2 104:1,10 |
| **y** | |
| **y** 39:15 | |
| **year** 42:20 56:3 65:11 125:9 127:11,24 129:12 131:14 135:7 153:5 162:9 185:15 | |
| **years** 42:24 46:12 70:1 165:5 173:22 174:24 | |