**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| MARK KRONFELD, AS TRUSTEE OF THE SHC CREDITOR LITIGATION TRUST,<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN GUARANTEE AND LIABILITY INSURANCE COMPANY and ZURICH AMERICAN INSURANCE COMPANY,<br><br>Defendants. | Civil Action No. 1:21-cv-11902 – PBS |

**PLAINTIFF'S EMERGENCY MOTION TO STAY DISCOVERY MASTER
ORDER NO. 26 PENDING APPEAL TO THIS COURT**

Plaintiff Mark Kronfeld, as Trustee of the SHC Creditor Litigation Trust ("**Plaintiff**"), respectfully moves on an emergency basis for a stay of Discovery Master Order No. 26 (ECF No. 281) (the "**Order**" or "**Order No. 26**")—which denied Plaintiff's motion for reconsideration of Section IV(B) of Order No. 22 as to Robert Gendron, CREF's CEO—pending this Court's review of Plaintiff's Forthcoming Objection thereto (the "**Forthcoming Objection**").

The need for emergency relief arises from a straightforward procedural problem. The Order Appointing the Discovery Master provides a seven-day objection period, which does not expire until *August 11, 2026*. Order Appointing Disc. Master at 4, ECF No. 149. Yet Order No. 26—issued on the afternoon of August 4, 2026—requires Plaintiff to produce the Gendron documents by *August 7, 2026*—four days *before* the objection period expires. A stay is necessary to preserve Plaintiff's ability to exercise the very right to review that the Appointment Order guarantees, and compelling production before the Court hears Plaintiff's Forthcoming Objection would severely impair that right.

1

Plaintiff left two voicemails with Judge Saris's chambers on August 5 and now files this motion in advance of its Forthcoming Objection, consistent with this Court's prior instruction that counsel file any stay motion in advance of the deadline and notify the Court in advance of filing any emergency stay request. *See* Tr. of Mot. Hr'g at 5:5–6:5, 18:19–21, ECF No. 268. Plaintiff seeks a temporary stay solely for the limited period necessary for this Court to resolve Plaintiff's Forthcoming Objection.

A stay is necessary to prevent the imminent and irreversible disclosure of privileged communications. Order No. 26 declined to extend functional equivalent status to Mr. Gendron and ordered that Plaintiff "produce, subject to clawback, the 1,749 withheld communications involving Mr. Gendron, regardless of whether Mr. Kidney or an attorney is on the communication" by August 7, 2026. Order No. 26 at 3. The 1,749 emails Plaintiff must otherwise produce pursuant to the Order are attorney-client communications between Steward and its outside counsel that contain legal advice relating to the very subject matter of this case, which Order 26 deems categorically waived solely because Mr. Gendron was copied. As courts have observed, once privileged materials are produced to opposing counsel, "[t]here is no way to unring those disclosure bells." *In re FirstEnergy Corp.*, 154 F.4th 431, 441 (6th Cir. 2025). This concern applies equally here because, as discussed below, opposing counsel cannot "un-see" privileged documents once they have been disclosed. *See Am. Nat'l Bank & Trust Co. v. Equitable Life Assurance Soc'y of U.S.*, 406 F.3d 867, 875 (7th Cir. 2005). Absent a stay, Plaintiff would be forced to disclose the very materials it seeks to protect, and there would be no way to undo the disclosure.

The factors governing issuance of a stay weigh heavily in Plaintiff's favor. In particular: (1) the Order itself supports the relief sought in the Objection because its legal conclusions

cannot be reconciled with its factual findings; (2) absent a stay, Plaintiff will suffer irreparable harm through disclosure of privileged materials, a harm that cannot be undone if Plaintiff's objection is successful; and (3) the prejudice to Plaintiff from disclosure far outweighs any minimal prejudice to Defendants from a brief delay.

For these reasons, Plaintiff respectfully requests that the Court stay Order No. 26 pending resolution of the Forthcoming Objection.

## BACKGROUND

On May 21, 2026, the Discovery Master issued Order No. 22, which addressed competing privilege disputes concerning communications with third-party consultants retained after the June 28, 2020 weather event that devastated Norwood Hospital. Section IV(B) of Order No. 22 governed Plaintiff's withholding of communications involving employees of CREF.

Plaintiff filed an objection to Section IV(B) on May 29, 2026, challenging the exclusion of other CREF employees from functional equivalent status—most notably Robert Gendron, CREF's CEO.  On June 26, 2026, this Court held a hearing on Plaintiff's objection, during which the Court expressly permitted Plaintiff to "move to reconsider on Gendron." Tr. of Mot. Hr'g at 10:18.

On July 13, 2026, Plaintiff filed a motion for reconsideration, supported by extensive evidence demonstrating that Mr. Gendron satisfies every criterion that the Discovery Master applied to Mr. Kidney in granting functional equivalent status. *See* Ex. A, Pl.'s July 13, 2026 Mot. for Recons. at 2–5. Defendants filed their opposition to Plaintiff's motion for reconsideration on July 24, 2026.

On August 4, 2026, the Discovery Master issued Order No. 26, denying Plaintiff's motion for reconsideration. The Order declined to extend functional equivalent status to Mr.

3

Gendron, notwithstanding the substantial evidence that Mr. Gendron operated in the same high-level, highly trusted decision-making and guiding capacity as Mr. Kidney. As a result of Order No. 26, Plaintiff must now produce thousands of additional documents (including the 1,749 withheld emails and their attachments) involving Mr. Gendron that are currently on his privilege log, which include communications between Mr. Gendron and Steward's in-house and outside counsel concerning the Norwood loss, the insurance claim, mediation, and litigation strategy. Order 22 determines that these documents are "not privileged," which makes Plaintiff's grounds for clawback exceptionally narrow.

In accordance with the Court's instructions to call the Court in advance of seeking an emergency stay, *see* Tr. of Mot. Hr'g at 18:19–21, Plaintiff's counsel attempted to call the Court's clerk twice on August 5, 2026, and left a voicemail after each attempt. Plaintiff now files this emergency stay motion in advance of the August 7, 2026 production deadline imposed by Order No. 26.

## **ARGUMENT**

The Order Appointing the Discovery Master provides that "[a]ny party objecting to a ruling by the Discovery Master shall file a written objection with the Court within seven (7) days after service of the ruling." Order Appointing Disc. Master at 4; *see also* Fed. R. Civ. P. 53(f)(1) (requiring that the court "give the parties notice and an opportunity to be heard" before acting on a master's order). This objection period exists precisely so that a party may seek review before being required to comply with an adverse ruling. Yet Order No. 26 requires production by August 7, 2026—just three days after the Order was issued and four days before Plaintiff's objection period expires. If Plaintiff must produce the documents before it can even file its Objection, the right to object is substantially impaired.

4

Forcing production before Plaintiff has the opportunity to be heard by this Court would deprive Plaintiff of meaningful review and cause irreparable prejudice. The Seventh Circuit's decision in *American National Bank & Trust Co. of Chicago v. Equitable Life Assurance Society of the United States*, 406 F.3d 867 (7th Cir. 2005), is instructive. There, the district court imposed a sanction requiring wholesale disclosure of documents the defendant had asserted were privileged. The Seventh Circuit reversed, emphasizing that the sanction "forced [the defendant] to turn over privileged information to its litigation adversary" and that the defendant continued to "labor[] under a 'lingering disability' from the judgment" because "its adversary continues to possess sensitive and indisputably privileged information." *Id.* at 875. The court noted that the opposing party "uses [the defendant's] in-house counsels' evaluation of the lawsuit as support for [its] prevailing on the underlying claims," *id.*, underscoring the impossibility of fully remedying such disclosure after the fact.

The same danger exists here. Order No. 26 compels production of over 1,500 documents Plaintiff has designated as privileged, including communications between Mr. Gendron and both in-house and outside counsel.  Once opposing counsel has reviewed these documents, "[t]here is no way to unring those disclosure bells." *In re FirstEnergy Corp.*, 154 F.4th 431, 441 (6th Cir. 2025). A stay is necessary pending resolution of the Objection to preserve meaningful review.

The criteria governing stays pending appeal reinforce why a stay is necessary here. When determining whether to grant a stay pending appeal, courts consider: (1) whether the movant is likely to succeed on the merits; (2) whether the movant will suffer irreparable injury absent a stay; (3) whether issuance of the stay will substantially injure other parties; and (4) where the public interest lies. The first two factors are the most critical. *Dist. 4 Lodge of the Int'l Ass'n of*

5

*Machinists & Aerospace Workers Loc. Lodge 207 v. Raimondo*, 18 F.4th 38, 42 (1st Cir. 2021)

(internal quotations omitted). Plaintiff briefly addresses each factor below.

**First**, the Forthcoming Objection will demonstrate that Order No. 26 erred in declining to

extend functional equivalent status to Mr. Gendron and requiring production of every email on

Plaintiff's privilege log he was copied on, and will explain why the Order's reasoning cannot be

reconciled with the Discovery Master's own factual findings or with governing law. The record

before the Discovery Master showed that Mr. Gendron—as CEO of CREF—operated in a "high-

level, trusted decision-making or guiding role" and was indispensable to counsel's ability to

provide legal advice to Steward. *See generally* Ex. A.

**Second**, the Order will irreparably harm Plaintiff by forcing the disclosure of privileged

and confidential material before Plaintiff has the opportunity to exercise its right to object before

this Court.  As courts have repeatedly recognized, forced disclosure of privileged material

constitutes irreparable harm because the disclosure cannot be undone. *See In re Kellogg Brown*

*& Root, Inc.*, 756 F.3d 754, 761 (D.C. Cir. 2014) ("On the other hand, appeal after final

judgment will often come too late because the privileged materials will already have been

released."); *Adelson v. Smith (In re Smith)*, 397 B.R. 134, 146 (Bankr. D. Nev. 2008) ("Often, in

the context of the appeal of a discovery order, the movant can make a strong showing of

irreparable injury because once the allegedly privileged documents are disclosed, a reviewing

court cannot provide effective relief."). The documents at issue here—direct communications

between Mr. Gendron and counsel concerning legal advice, litigation strategy, and mediation—

are precisely the types of communications that warrant protection pending this Court's review.

**Third**, granting a stay will create no prejudice to Defendants. According to the current

case schedule, fact discovery does not close until September 23, 2026. No depositions are

currently scheduled in the immediate term, and Defendants have not identified any specific, time-sensitive need for the documents at issue. A brief stay to permit this Court to rule on the Forthcoming Objection will not meaningfully delay the case. Indeed, efficient resolution of this privilege dispute may avoid protracted satellite litigation over clawbacks and piecemeal implementation of the Order's requirements.

*Fourth*, courts consistently recognize a strong public interest in safeguarding privileged communications—a principle directly imperiled by Order No. 26. The Supreme Court has emphasized that the attorney-client privilege "encourages full and free discussion, better enabling the client to conform his conduct to the dictates of the law." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981); *see also Hanover Ins. Co. v. Rapo & Jepsen Ins. Services, Inc.*, 449 Mass. 609 (2007) ("The attorney-client privilege is so highly valued that . . . it is acknowledged that the 'social good derived from the proper performance of the functions of lawyers acting for their clients . . . outweigh[s] the harm that may come from the suppression of the evidence.'" (quoting *Commonwealth v. Goldman*, 395 Mass. 495, 502 (1985))). Compelling disclosure before this Court's review undermines that interest.

These interests firmly support maintaining the status quo while the Court considers the Objection.

**CONCLUSION**

WHEREFORE, Plaintiff Mark Kronfeld, as Trustee of the SHC Creditor Litigation Trust, respectfully requests that this Court enter an order staying Discovery Master Order No. 26 pending resolution of Plaintiff's Forthcoming Objection thereto.

Respectfully submitted,

**MARK KRONFELD, AS TRUSTEE OF THE SHC CREDITOR LITIGATION TRUST,**

By his Attorneys,

*/s/ Yonah Jaffe*
Howard M. Cooper (BBO No. 543842)
Seth J. Robbins (BBO No. 655146)
Josh L. Launer (BBO No. 673661)
**TODD & WELD LLP**
One Federal Street, 27th Floor
Boston, MA 02110
Tel: (617) 720-2626
hcooper@toddweld.com
srobbins@toddweld.com
jlauner@toddweld.com

William T. Reid IV (*pro hac vice*)
Jeremy Wells (*pro hac vice*)
Barbara Whiten Balliette (*pro hac vice*)
Julia P. Gokhberg (*pro hac vice*)
**REID COLLINS & TSAI LLP**
1301 S. Capital of Texas Hwy.
Building C, Suite 300
Austin, Texas 78746
Tel: (512) 647-6100
wreid@reidcollins.com
jwells@reidcollins.com
bballiette@reidcollins.com
jgokhberg@reidcollins.com

Jeffrey E. Gross (*pro hac vice*)
Yonah Jaffe (*pro hac vice*)
**REID COLLINS & TSAI LLP**
420 Lexington Avenue, Suite 2515
New York, NY 10170
Tel.: (212) 344-5200
jgross@reidcollins.com
yjaffe@reidcollins.com

Dated: August 6, 2026

## **CERTIFICATE OF SERVICE**

I, Yonah Jaffe, hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and that paper copies will be sent to those indicated as non-registered participants on August 6, 2026.

*/s/ Yonah Jaffe*
Yonah Jaffe