**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| MARK KRONFELD, AS TRUSTEE OF THE SHC CREDITOR LITIGATION TRUST,<br><br>    Plaintiff,<br><br>    v.<br><br>AMERICAN GUARANTEE AND LIABILITY INSURANCE COMPANY and ZURICH AMERICAN INSURANCE COMPANY,<br><br>    Defendants. | Civil Action No. 1:21-cv-11902 – PBS |

**DECLARATION OF YONAH JAFFE IN SUPPORT OF**
**PLAINTIFF'S OBJECTION TO DISCOVERY MASTER ORDER NO. 26**

I, Yonah Jaffe, do hereby declare and state as follows:

1.      I am an attorney at Reid Collins & Tsai LLP ("Reid Collins"), and I represent Plaintiff Mark Kronfeld as Trustee of the SHC Creditor Trust ("Plaintiff") in this case. I submit this declaration in support of Plaintiff's Objection to Discovery Master Order No. 26 (ECF No. 281). Unless otherwise noted, I have personal knowledge of the facts stated herein.

2.      This declaration sets forth the facts demonstrating that Plaintiff's efforts in collecting, reviewing for privilege, and producing documents in discovery have been reasonable under the circumstances, including the volume of obligations imposed, the pace of deadlines, and the overlapping and evolving nature of those obligations.

3.      Attached as **Exhibit 1** is Plaintiff's motion for reconsideration, filed with the Discovery Master on July 13, 2026, with its exhibits A-L.

4.      I and other Reid Collins attorneys first filed appearances in this case on behalf of Plaintiff on June 3, 2026. At that time, Discovery Master Hochberg had recently issued Order

1

No. 22 on May 14, 2026, which addressed privilege disputes concerning communications with third-party consultants, including CREF. Order No. 22 was a 39-page ruling that addressed disputes over the withholding of documents involving communications with thirteen third-party consultants and more than 4,500 communications involving CREF employees. Order No. 22 ruled on a consultant-by-consultant basis and imposed different requirements for each—including in camera review submissions, production subject to clawback, and maintenance of privilege for certain categories. The Order required certain document categories to be produced by May 26, 2026 and other categories to be submitted for in camera review by May 29, 2026.

5.    On May 21, 2026, Josh Launer of Todd & Weld emailed the Discovery Master requesting "a very brief extension of the deadlines to (i) file any objection to [Order 22] and (ii) produce documents pursuant to those portions of the Order that are not being challenged until next Friday, May 29." Defendants did not oppose the request, which the Discovery Master granted that day.

6.    On May 29, 2026, Plaintiff produced documents ordered produced subject to clawback under Sections IV(A)(i)–(xiii) of Order No. 22. The production comprised 377 documents previously withheld entirely, including 290 emails produced per Order No. 22 plus privileged attachments, broken out by consultant.

7.    On June 5, 2026, Plaintiff produced previously redacted documents, treating Order No. 22 as applicable to redacted documents even though the Order did not expressly mention them. This production was made before the agreed June 8, 2026 date.

8.    On June 26, 2026, Judge Saris heard Plaintiff's objection to Section IV(B) of Order No. 22 and Plaintiff's motion for reconsideration. Judge Saris affirmed Order No. 22 but permitted Plaintiff to withhold documents pertaining to Robert Gendron until the Discovery Master ruled on

reconsideration, and directed that other documents being produced subject to clawback be produced as Attorneys' Eyes Only.

9.    Judge Saris also directed the parties to confer on an adjusted case schedule. On July 8, 2026, the parties jointly submitted an agreed revised schedule to the Discovery Master. The schedule included a briefing schedule for Plaintiff's Gendron reconsideration motion authorized by Judge Saris, as well as July 20, 2026 for Plaintiff to complete production under Order No. 22 of all withheld documents subject to clawback, and July 31, 2026 for Plaintiff to identify documents produced under Order No. 22 asserted to be subject to clawback.

10.    At Defendants' request, Plaintiff also agreed to produce by July 31 an updated privilege log and an index of previously redacted documents that had been produced.

11.    On July 20, 2026, Plaintiff timely produced more than 2,000 CREF-related communications pursuant to Order No. 22.

12.    On July 21, 2026—the day after Plaintiff timely made its production and before Defendants' own vendor had finished processing the more than 2,000 documents produced the prior evening—Defendants requested confirmation of certain issues by 9:30 a.m. the next morning and an index of withheld documents by close of business that same day.

13.    On July 22, 2026, I responded that demanding substantive responses by 9:30 that morning—and an index of withheld documents by close of business the prior day—before Defendants' own vendor had finished processing the production was neither reasonable nor productive, and that Plaintiff had met the agreed-upon July 20 production deadline with the next milestone being July 31.

14.    On July 23, 2026, Defendants sent a joint Redfern chart and asked for Plaintiff's position by close of business that same day. I responded that Plaintiff invited Defendants to meet

and confer further, but Defendants declined, instead demanding production of the disputed documents by 5:00 p.m. on July 24, 2026, which would have been impossible. A copy of this July 21-24 email exchange with counsel for Defendants is attached as **Exhibit 2**.

15.     Rather than attempting to resolve the dispute, on July 24, 2026, Defendants proceeded to file a motion to compel with the Discovery Master.

16.     That same day, July 24, 2026, I asked Discovery Master Hochberg for an extension until August 3, 2026 to respond to Defendants' motion, explaining that Plaintiff was focused on meeting multiple imminent July 31 deadlines, including updating the privilege log, identifying clawback documents, and compiling other requested information, and that diverting resources to the motion would undermine those commitments.

17.     Discovery Master Hochberg responded that she normally grants extensions as a courtesy but could not extend if ordered documents were still unproduced, and requested a declaration by noon on Monday, July 27, 2026.

18.     On July 27, 2026, I submitted a declaration to the Discovery Master setting forth Plaintiff's compliance with Order No. 22 and renewed the request for an extension to respond to Defendants' motion. A copy of that declaration is attached as **Exhibit 3**.

19.     After receiving my declaration confirming compliance, Discovery Master Hochberg granted an extension until 8:00 p.m. on Friday, July 31, 2026—which undermined the basis for the request in the first place—rather than the requested Monday, August 3, 2026 date. This was the same date as multiple other deadlines Plaintiff was working to meet, including the privilege log update, the clawback identification, and the production of information Defendants had requested.

20. On July 27, 2026, the Discovery Master asked for a breakdown of the Gendron-related documents being withheld. On July 28, 2026, I confirmed that Plaintiff was withholding 1,749 emails under Section IV(B)(2) involving Kidney and/or Gendron and Todd & Weld, and that of those, approximately 200 emails included only Todd & Weld, Kidney and/or Gendron, and no other CREF employee, while the remaining 1,549 also included at least one other CREF employee.

21. On July 28, 2026, at 9:43 p.m., Discovery Master Hochberg questioned whether there were documents being withheld that were not on a privilege log and demanded an answer by the next morning. I responded that zero documents had been withheld that were not on a privilege log—every document currently being withheld had already been logged on each of the prior privilege logs. A copy of the email exchanges with Judge Hochberg between July 24-28 is attached as **Exhibit 4**.

22. With great effort, Plaintiff timely filed his opposition to the motion to compel on Friday, July 31, 2026.

23. Also on July 31, 2026, Plaintiff provided a list of the documents produced pursuant to Order 22 that were subject to clawback.

24. Also on July 31, 2026, Plaintiff timely produced an updated privilege log and spreadsheet identifying documents whose redactions were removed or altered pursuant to Order No. 22. The updated privilege log reduced CREF-related emails being withheld to 1,768 communications, down from 3,781 on the prior March log. Of those, 1,749 emails were withheld under Section IV(B)(2) involving Kidney and/or Gendron and Todd & Weld.

25. Plaintiff undertook a document-by-document review to prepare the updated log, and in doing so identified additional documents to produce in full, with redactions, or subject to clawback, and learned that many log entries unaffected by Order No. 22 were duplicate or lesser-

inclusive versions of already-produced email chains. On August 1, 2026, Plaintiff produced these additional documents.

26.    On Sunday evening, August 2, 2026, Defendants submitted an unauthorized reply in support of their motion to compel, even though they had "just beg[un]" to review Plaintiff's updated privilege log that Plaintiff had timely served on Friday. On August 3, 2026, I responded that Defendants' rush to the Discovery Master before digesting Plaintiff's submissions was consistent with their pattern of raising discovery complaints piecemeal, and I requested a chance to respond. Discovery Master Hochberg permitted Plaintiff to file a surreply by close of business August 4, 2026. A copy of these email exchanges with the Discovery Master is attached as **Exhibit 5**.

27.    On August 4, 2026 at approximately 3:49 p.m., Discovery Master Hochberg issued Order No. 26, denying Plaintiff's motion for reconsideration as to Robert Gendron. Order No. 26 required Plaintiff to produce, subject to clawback, the 1,749 withheld communications involving Mr. Gendron, regardless of whether Mr. Kidney or an attorney was on the communication, by August 7, 2026.

28.    Order No. 26 reflects a fundamental misunderstanding of Plaintiff's privilege review efforts. The Order characterized Plaintiff's withholding as a "pattern of continued excess-claiming of privilege" and stated there was "still too much 'blanket withholding.'" The Discovery Master relied on the fact that Plaintiff had voluntarily downgraded some documents during the in camera review process—which demonstrated Plaintiff's ongoing good-faith reassessment of its privilege positions—to conclude that this "strongly weighs against any further withholding for Gendron's communications." In other words, the Order treated Plaintiff's diligent re-review and

6

voluntary production of additional documents as evidence of wrongdoing rather than evidence of good faith.

29.     Order No. 26 imposed an extreme production requirement: any communication on which Mr. Gendron "is copied, or on which he is the recipient or sender," must be produced "regardless of whether Mr. Kidney or an attorney is on the communication." The Order further directed that communications involving Mr. Kidney could only be withheld if "only Mr. Kidney and Todd & Weld and/or Foley Hoag attorneys are on the email"—meaning that if any other CREF personnel or any third-party consultant appeared on the communication, it must be produced, even if the communication was otherwise between Steward and its attorneys seeking or providing legal advice.

30.     The Order Appointing the Discovery Master provides a seven-day objection period that did not expire until August 11, 2026, while Order No. 26 required production by August 7, 2026—four days before that objection period expired.

31.     As a result of Order No. 26, Plaintiff would have to produce thousands of additional documents, including the 1,749 withheld emails and their attachments, involving Mr. Gendron that include communications between Mr. Gendron and Steward's in-house and outside counsel concerning the Norwood loss, insurance claim, mediation, and litigation strategy.

32.     On the evening of August 4, 2026, after Order No. 26 issued, I sought clarification from Judge Hochberg, asking (1) whether the Order required production of communications between Todd & Weld and only Mr. Kidney without Mr. Gendron, and (2) whether any clawback grounds were preserved. On August 5, 2026, Discovery Master Hochberg responded that she would "quickly attempt to discern" our questions and "provide answers without asking for letter briefs" because the production deadline was near. The Discovery Master stated that

communications between Mr. Kidney and Todd & Weld did not need to be produced if Mr. Kidney was the only third party on the communication and it was otherwise attorney-client privileged. However, as to work product, the Discovery Master stated that work product "cannot be withheld any longer, because there has been too much over-withholding for far too long"—requiring Plaintiff to produce even work product documents, subject only to the possibility of a later clawback motion. These exchanges are also contained in Exhibit 5.

33.     On August 6, 2026, Plaintiff filed an Emergency Motion to Stay Order No. 26 in advance of the August 7, 2026 production deadline. The Court allowed the emergency stay motion on August 6, 2026 and directed that the objection be filed on August 11, 2026.

34.     The volume of documents Plaintiff has withheld is neither unusual nor disproportionate. Our vendor has confirmed that Plaintiff has produced 142,761 emails in this case, of which only 3,177 (approximately 2.2%) have been withheld as privileged. Of the emails involving CREF, Plaintiff has produced 73,119 CREF-related emails, of which only 2,364 (approximately 3.2%) have been withheld. These percentages are well within the normal range for complex commercial litigation involving communications with counsel. Indeed, approximately 5,912 of the emails Plaintiff has produced contain "Attorney Client Privileged" or similar language in the subject line—demonstrating that Plaintiff did not rely on labels but has endeavored to determine whether the documents still withheld are truly privileged.

35.     Plaintiff did nothing improper in withholding communications involving Mr. Gendron pending reconsideration. All parties understood that Plaintiff would continue to withhold Gendron-related communications pending the Discovery Master's ruling on reconsideration—that is precisely what Judge Saris ordered when she permitted Plaintiff to "move to reconsider on Gendron" while affirming the remainder of Order No. 22. At the time of the original privilege

review, Plaintiff's reviewers applied the privilege standards in good faith based on the governing law as it existed at the time of review. The Discovery Master's subsequent adverse ruling does not mean those assertions were made in bad faith. Ordering Plaintiff to produce over 1,700 communications—many involving direct attorney-client advice—in a matter of days, before the objection period expired, compounded the overreach.

36.    The fact that Plaintiff has refined its privilege log over time—reducing the total number of entries from 9,666 to 5,097, a reduction of nearly half—reflects good practice, not wrongdoing. In my experience, it is common and appropriate for parties to reassess privilege assertions as discovery progresses and legal rulings clarify the applicable standards. Refining a privilege log demonstrates diligence and good faith. Penalizing Plaintiff for voluntarily narrowing its privilege assertions would create a perverse incentive for parties to maintain overbroad privilege claims rather than engage in the ongoing reassessment that furthers the efficient administration of justice.

37.    As of this date, Plaintiff has made fifty document productions.


I, Yonah Jaffe, declare under penalty of perjury that the foregoing is true and correct. Executed on August 11, 2026.

/s/ Yonah Jaffe
Yonah Jaffe

9