# Exhibit B

RILEY SAFER HOLMES & CANCILA LLP

Lucas T. Rael
(312) 471-8784
lrael@@rshc-law.com

July 24, 2026

**VIA EMAIL**

Hon. Faith S. Hochberg
Hochberg ADR, LLP
judgehochberg@judgehochberg.com

**Re: Mark Kronfeld, as Trustee of the SHC Creditor Litigation Trust v. American Guarantee and Liability Insurance Company, et al., Case No. 21-cv-11902-PBS (D. Mass.)**

Dear Judge Hochberg:

Defendants American Guarantee and Liability Insurance Company ("American Guarantee") and Zurich American Insurance Company ("Zurich American") (collectively, "Defendants"), write in response to Plaintiff's request that Your Honor reconsider Special Master Order No. 22, with respect to Robert Gendron, CREF's CEO.

Your Honor correctly ruled that Plaintiff could not categorically withhold under the attorney-client privilege or work-product doctrine, over 4,000 email communications involving third-party CREF. No Massachusetts court has ever held that an entire independent contractor could be treated as the functional equivalent of a party's employees for privilege purposes. Nor did Plaintiff demonstrate that the involvement of CREF employees (beyond Chris Kidney) was necessary to facilitate the seeking or rendering of legal advice, or that CREF's work—transmitting factual information on the scope, budget, and schedule of the Norwood Hospital repair from other contractors to Steward—was done in anticipation of litigation.

Plaintiff appealed Your Honor's CREF-related rulings to Judge Saris, who affirmed Your Honor's approach:

> You're being so aggressive on the assertion of this privilege and so tardy, according to the master, in the production of documents, you've lost credibility.
>
> So I agree with the master's approach that this be a clawback situation, and if there are documents you particularly care about, object.

Hr'g Tr. 10:15–21. Nevertheless, Judge Saris permitted Plaintiff to re-raise whether Robert Gendron meets the "functional equivalent" standard.

Your Honor should deny Plaintiff's request to reconsider Order No. 22 with respect to Mr. Gendron.[1] Your Honor previously concluded that "[n]o showing has been made that Mr. Gendron,

[1] "The granting of a motion for reconsideration is 'an extraordinary remedy which should be

the CEO of CREF, worked solely for Steward and warrants the 'functional employee' label." Order No. 22 at 37. In contrast to the handful of emails and argument Plaintiff now submits, Mr. Gendron's own testimony confirms that he does not meet the narrow functional-equivalent standard. Plaintiff still does not explain how or why Mr. Gendron's involvement in any withheld communications was "necessary" for Steward to seek or obtain legal advice. Order No. 22 at 13 (communications will be privileged only "if the client needed the consultant to help facilitate the rendition of legal advice by the lawyer or the implementation of that advice by the client.") (quoting *America's Test Kitchen, Inc. v. Kimball*, No. 1684CV03325BLS2, 35 Mass.L.Rptr. 75, at *2 (Mass. Super. Apr. 2, 2018)). Plaintiff therefore has not met his burden to establish categorically that Mr. Gendron is the functional equivalent of a Steward employee whose presence on otherwise privileged communications was necessary for Steward to seek or obtain legal advice.

Production of the communications subject to clawback—allowing the Court to review specific communications that Plaintiff contends are privileged—is the correct way to address the possibility that some emails involving Mr. Gendron may involve attorney-client privilege or attorney work-product materials. This approach is especially fair given Plaintiff's repeated overbroad approach to privilege, contrary to Massachusetts law. Judge Saris, reviewing documents that Plaintiff produced under Discovery Master Order No. 22, agreed:

> MR. JAFFE: We do. These are very privileged documents.
>
> THE COURT: I don't think they're very privileged. I've seen some of them. They're not very privileged. They're about the condition of the hospital, which is quintessentially at issue.

H'rg Tr. at 14:1–5; *see also* Order No. 22 at 36 ("Scope, budget and schedule are not the types of activities that require 'translation' for the attorney and client to seek or understand legal advice given."); Order No. 25 at 9–10 (denying clawback of emails regarding timing, accuracy, and dollar amounts of contractors revised schedules and budgets). Production subject to clawback properly balances privilege and work-product assertions against Defendants' substantial need to discover highly relevant information regarding the scope, budget, and schedule of repairs.

## I. Mr. Gendron's Testimony Confirms That He Is Not the "Functional Equivalent" of a Steward Employee.

Defendants do not dispute that Mr. Gendron managed communications on Steward's behalf regarding its insurance claim or that Steward was CREF's largest client during the relevant period.

---

used sparingly.'" *Palmer v. Champion Mortg.*, 465 F.3d 24, 30 (1st Cir. 2006) (internal quotation and citation omitted). "Generally, a court will not allow a motion to reconsider an interlocutory order unless a movant can demonstrate (1) an intervening change in the law, (2) the discovery of new evidence not previously available, or (3) a clear error of law in the first order." *Monsarrat v. Zaiger*, 303 F. Supp. 3d 164, 166 (D. Mass. 2018) (Saris, J.)

Gendron Tr. at 59:6–13. But Plaintiff's submission ignores critical facts in the record establishing that although Mr. Gendron communicated with Steward leadership and its lawyers, he was not the "functional equivalent" of a Steward employee.

Mr. Gendron testified that he performed general contracting work for Steward between 2012 and 2016, but all of CREF's and Mr. Gendron's work for Steward after the June 2020 flood at Norwood Hospital—including emergency response, mitigation, project management, and coordination of the insurance claim—was governed by a series of master services agreements executed after January 2018. *See* Gendron Tr. at 98:10–99:13.[2] As Your Honor has already recognized, these contracts establish that CREF was an independent contractor and disclaimed any agency relationship with Steward. *See* **Exhibit A** (CREF-Norwood_0002178) (Gendron Ex. 2); **Exhibit B** (CREF-Norwood_0002204) (Gendron Ex. 3); **Exhibit C** (CREF-Norwood_0002190) (Gendron Ex. 4); **Exhibit D** (CREF-Norwood_0002197) (Gendron Ex. 5).

In April 2021, CREF and Steward renegotiated CREF's master services agreement. **Exhibit E** (CREF-Norwood_0002100) (Gendron Ex. 6). That agreement specifically stated that "Steward's engagement of Contractor [CREF] under any Project Authorization shall be as an independent contractor for the performance of the Services." *Id.* at ¶ 3(d). The agreement further stated that, "[n]othing contained in this Agreement shall be deemed or construed to create any association, partnership, joint venture, or relationship of principal and agent, master and servant, or employer and employee between Contractor and Steward, or to provide a Party with the right, power, or authority, whether expressed or implied, to create any duty or obligation on behalf of the other Party." *Id.*

At his deposition, Mr. Gendron repeatedly disclaimed having significant decision-making authority on behalf of Steward. Mr. Gendron specifically denied: holding himself out as a Steward employee (Gendron Tr. at 179:18–180:3); hiring vendors for clients, rather than making recommendations on vendors (*id.* at 31:18–21); managing any of the $97.4 million of insurance proceeds that Steward received from American Guarantee (*id.* at 216:20–217:24); negotiating funding with MPT for Steward (*id.* at 223:24–224:16); or having any role with accountants in addressing Steward's business-interruption claim other than to "facilitate at CREF information back and forth" (*id.* at 184:5–185:22).

Instead, CREF employees—including Mr. Gendron—were part of a "project management team" that oversaw and coordinated Steward's other third-party contractors as they inspected and assessed the damage at Norwood Hospital. According to Mr. Gendron, CREF provided emergency response and initial mitigation services, along with project management and coordination of the

---

[2] Plaintiff describes CREF's contractual relationship with Steward as a "lift-out." Mr. Gendron testified that a "lift-out" is when a client "outsources a certain responsibility" that is outside its core business. *See* Gendron Tr. at 74:13–24. As part of the Steward "lift-out," CREF hired some people previously employed by Steward. *Id*.

insurance claim. (Gendron Tr. at 86:20–87:25). Mr. Gendron explained that Steward hired consultants to assist with the claim, and that CREF organized and presented information from the consultants to Steward. (Gendron Tr. at 164:3–22).

Plaintiff continues to overstate the scope of the functional equivalent doctrine. As Your Honor correctly found, the general rule is that disclosing attorney-client communications to a third party breaks the privilege. Order No. 22 at 13 (citing *Cavallaro v. United States*, 284, F.3d 236, 246–47 (1st Cir. 2002)). Contrary to Plaintiff's argument, the functional equivalent doctrine is a narrow exception to that general rule and has almost never been applied in Massachusetts; several recent federal decisions have declined to apply it. *See United States ex rel. Long v. Janssen Biotech, Inc.*, 788 F. Supp. 3d 167, 171 (D. Mass. 2025) ("[T]he First Circuit has not adopted the functional-equivalent doctrine. This Court will nevertheless assume that under certain circumstances, third-party agents may essentially operate as employees, and that the disclosure to them of otherwise-privileged communications will not waive the privilege.") (internal citations omitted); *Lynx Sys. Devs., Inc. v. Zebra Enter. Solutions Corp.*, No. 15-12297-GAO, 2018 WL 1532614, at *4 (D. Mass. Mar. 28, 2018) ("As an initial matter, I note that the [functional-equivalent] doctrine has not been adopted within this Circuit or applied within this District.").

A contractor does not become the functional equivalent of its client for privilege purposes simply because that client occupies most of the contractor's time. *See Janssen Biotech, Inc.*, 788 F. Supp. 3d at 172 (D. Mass. 2025) ("But close collaboration is not enough to invoke the functional-equivalent doctrine. It is incumbent on the party asserting the privilege to put forth sufficient evidence to demonstrate that specific third-party individuals did in fact function as employees at the relevant time[.]"). An agency relationship is not enough to satisfy the standard. *See Banco do Brasil, S.A. v. 275 Washington Street Corp.*, No. 09-11343-NMG, 2012 WL 1247756, at *5–*6 (D. Mass. Apr. 12, 2012) (rejecting application of functional equivalent doctrine even though individual acted as party's agent). Rather, a third party must have acted "in a high-level, trusted decision-making or guiding role, equivalent to that of an employee[.]" Order No. 22 at 35 (quoting *America's Test Kitchen*, 35 Mass.L.Rptr. 75, at *2).

The information submitted regarding Mr. Gendron does not demonstrate that he meets this standard. Steward was a healthcare-services company that outsourced its real estate operations to CREF. As CREF's CEO, Mr. Gendron performed non-exclusive contractual services for Steward as an independent contractor. His own testimony makes clear that he was not a decisionmaker regarding Steward's insurance but instead oversaw the compilation and transmittal of information from other third-party contractors to Steward. Plaintiff has not met his burden to establish that Mr. Gendron acted "in a high-level, trusted decision-making or guiding role, equivalent to that of an employee."

**II. Mr. Gendron's Involvement in Communications Was Not Necessary for Lawyers to Provide Steward with Legal Advice.**

Even if Mr. Gendron satisfied the functional equivalent standard, that would not the end the analysis under Massachusetts law. The functional equivalent doctrine does not mean "that all communications regarding legal advice with consultants who perform functions similar to employees will be privileged." *America's Test Kitchen*, 35 Mass.L.Rptr., at *2. "Even if a consultant is the functional equivalent of an employee for some purposes, distribution of legal advice or other attorney-client communications to the consultant will only be privileged if the client **needed the consultant to help facilitate the rendition of legal advice by the lawyer or the implementation of that advice by the client.** *Id.* (emphasis added).

Plaintiff offers no explanation why Mr. Gendron's presence was necessary to facilitate legal advice rather than business advice. The "attorney-client privilege extends to communications between corporate officers and in-house counsel, but the communications must relate to legal matters, not business strategy or negotiation." *EEOC v. Texas Roadhouse, Inc.*, No. 11-cv-11732-DJC, 2015 WL 14031521, at *2 (D. Mass. Dec. 2, 2015) (citing *United States v. Windsor Cap. Corp.*, 524 F. Supp. 2d 74, 81 (D. Mass. 2007) (privilege does not apply when in-house counsel is engaged in nonlegal work, including business or technical advice unrelated to any legal issues)). As Your Honor correctly recognized, the preparation and submission of an insurance claim "may be reasonably considered to be business advice, rather than legal advice." Order No. 22 at 20. Here, "[t]he vast majority of the function of CREF employees was gathering and relaying information sought by counsel" and "[s]cope, budget and schedule are not the types of activities that require 'translation' for the attorney and client to seek or understand legal advice given." Order No. 22 at 36. Mr. Gendron's testimony confirms as much.

Plaintiff instead attaches several discrete emails to argue that Mr. Gendron worked closely with Steward's in-house and outside counsel. Pl. Letter at 6–7 (citing Exhibits H, J, K[3], and L). These emails confirm Mr. Gendron's testimony regarding his role:

- He communicated with MPT regarding coordination of the two entities insurance claims and relayed that information to Steward's in-house and outside counsel. **Exhibit F** (Pl. Letter Exhibit J); **Exhibit G** (Pl. Letter Exhibit L)

- He transmitted information and questions received from Steward's other third-party contractors, such as NFA. **Exhibit H** (Pl. Letter Exhibit H)

---

[3] While Plaintiff's letter describes Exhibit K as relating to mediation, the exhibit itself is an email from Mr. Gendron to Michael Crowley where Mr. Gendron appears to provide a "summary and discussion points." The exhibit does not include the attachment, and the email does not mention mediation. **Exhibit I** (Pl. Letter Exhibit K).

- He sought Steward's input and guidance on how to proceed with the insurance claim, deferring to Steward's decisions. **Exhibit J** (Pl. Letter Exhibit L) (seeking Steward's analysis of its legal responsibilities under the master lease with MPT and noting that differences in strategy with MPT "could have material effects on Steward's management of the claims process")

These emails do not establish that Mr. Gendron's involvement in each withheld email was necessary for the provision of legal advice. And they certainly do not establish that each and every withheld email involving Mr. Gendron relates to legal advice.

## III. Plaintiff Should Produce Documents Subject to Clawback.

Plaintiff's request to treat Mr. Gendron as the functional equivalent of a Steward employee is yet another attempt to categorically withhold relevant documents. Your Honor correctly found that approach unwarranted, as Plaintiff demonstrably over-withheld materials. Order No. 22 at 35–37. Judge Saris agreed:

> You cannot say -- there is not one case that I've found that you cited that basically provides an entire corporation and all its employees that are separate from it with the attorney-client privilege. It doesn't exist. If anything, every case that's existed has turned this down. So I understand functionally there may be communications directly with Kidney or Gendron – I'm leaving that one open -- but you would have to be able to prove that the cc to everyone under the sun was critical.

Hr'g Tr. at 10:3–11.

The attorney-client privilege is "well-established and its rationale is straightforward. By safeguarding communications between client and lawyer, the privilege encourages full and free discussion, better enabling the client to conform his conduct to the dictates of the law and to present legitimate claims and defenses if litigation ensues." *In re Keeper of Records (Grand Jury Subpoena Addressed to XYZ Corp.)*, 348 F.3d 16, 22 (1st Cir. 2003) (citing *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)). Still, "the privilege is not limitless, and courts must take care to apply it only to the extent necessary to achieve its underlying goals." *Id*. at 22 (citing *In re Grand Jury Subpoena (Custodian of Records, Newparent, Inc.)*, 274 F.3d 563, 571 (1st Cir. 2001)). "In other words, the attorney-client privilege must be narrowly construed because it comes with substantial costs and stands as an obstacle of sorts to the search for truth." *Id*. (citing *United States v. Nixon*, 418 U.S. 683, 709–10 (1974)); *see also Cavallaro v. United States*, 153 F. Supp. 2d 52, 57 (D. Mass. 2001) (citation omitted) ("Although the attorney-client privilege is well established, it is narrowly construed because any expansion of the privilege hinders the Court in its search for the truth."), *aff'd* 284 F.3d 236 (1st Cir. 2002).

Plaintiff's request to categorically cloak Mr. Gendron within the attorney-client privilege—without regard to the *substance* of any particular communication, and without analysis

of whether his presence was necessary for Steward to seek or receive legal advice, or whether the communication contains attorney work-product prepared in anticipation of litigation—should be rejected. Your Honor generously granted Plaintiff latitude to withhold direct communications between Mr. Kidney and counsel (subject to limited *in camera* review). But no doubt, if Mr. Gendron's communications are similarly treated, Plaintiff will undoubtedly seek to categorically withhold communications involving other third parties simply because Mr. Gendron was included.

Continued litigation over Plaintiff's categorical withholding has delayed and derailed this case. Your Honor's well-reasoned approach to the CREF-related communications should stand. Documents should be produced subject to clawback (and marked Attorney's Eyes Only).

Sincerely,

*/s/ Lucas T. Rael*

Lucas T. Rael