# Exhibit A

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| MARK KRONFELD, AS TRUSTEE OF THE SHC CREDITOR LITIGATION TRUST,<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN GUARANTEE AND LIABILITY INSURANCE COMPANY and ZURICH AMERICAN INSURANCE COMPANY,<br><br>Defendants. | Civil Action No. 1:21-cv-11902 – PBS |

**PLAINTIFF'S REPLY IN SUPPORT OF PLAINTIFF'S OBJECTION TO DISCOVERY MASTER ORDER NO. 26**

Plaintiff Mark Kronfeld, as Trustee of the SHC Creditor Litigation Trust ("**Plaintiff**"), respectfully submits this reply brief to inform the Court of a development bearing on Plaintiff's pending Objection to Discovery Master Order No. 26 (ECF No. 285) (the "**Objection**") and to respond to Defendants' characterization of that development.

Since the filing of the Objection, in an email sent on Saturday, August 15 at 10:32 p.m., the Discovery Master directed Plaintiff to "immediately" produce, under threat of sanctions, 1,545 of the 1,745 communications that were ordered to be produced under Order No. 26.[1] Although Plaintiff obviously disagreed with the direction—and further believed it would profoundly prejudice Plaintiff in this litigation—Plaintiff had no choice but to comply under protest in order to avoid meritless sanctions. As a result, the scope of the Objection is now narrower: it concerns

---

[1] In the process of producing the documents subject to the Discovery Master's Saturday night directive, Plaintiff discovered that—of the 1,749 communications originally identified—four were mistakenly included in that number because Gendron is not present in those communications.

the 200 remaining communications that Plaintiff continues to withhold—direct communications between Mr. Gendron, Todd & Weld attorneys, and in some instances Mr. Kidney, with no other CREF employees present.

## I. BACKGROUND

Plaintiff's Objection sets forth the relevant procedural history. Defendants' Opposition, however, conflates the issues before this Court with a separate discovery dispute that remains pending before the Discovery Master. To clarify the record, Plaintiff provides the following additional background.

### A. Order No. 22 and the Functional-Equivalent Doctrine

On May 14, 2026, the Discovery Master issued Order No. 22 (ECF No. 224), which addressed the privilege status of communications involving CREF, a real estate management company that functioned as Steward's internal real estate division. Order No. 22 held that Chris Kidney, CREF's Senior Vice President who managed the day-to-day response to the Norwood loss, qualified as the "functional equivalent" of a Steward employee. Order No. 22 at 35–36. Critically, Order No. 22 held that Mr. Kidney's functional-equivalent status meant that "[i]f he is copied on otherwise privilege[d] communications between Todd & Weld and Steward . . . ***CREF employees' presence on the chain does not destroy that privilege***." Order No. 22 at 36 (emphasis added).

Order No. 22 did not, however, extend functional-equivalent status to any other CREF employees, including to CREF's CEO, Robert Gendron. Plaintiff objected to Order No. 22's treatment of Mr. Gendron, arguing that he should also qualify as a functional equivalent. On June 26, 2026, Judge Saris affirmed Order No. 22 in most respects but permitted Plaintiff to seek reconsideration from the Discovery Master as to Mr. Gendron's functional-equivalent status.

On July 13, 2026, in accordance with the parties' agreed-upon schedule, Plaintiff filed the motion for reconsideration contemplated by Judge Saris, requesting that the Discovery Master find

Mr. Gendron to be the functional equivalent of a Steward employee and afford him the same treatment as Mr. Kidney—namely, that his presence on otherwise privileged communications between Todd & Weld and Steward does not destroy the privilege. *See* Pl.'s Ex. 1. Pending resolution of Plaintiff's motion for reconsideration, Plaintiff withheld 1,745 communications involving Mr. Gendron pursuant to the same parameters Order No. 22 applied to Mr. Kidney. These communications fell into two categories: (1) 200 direct communications between Mr. Gendron and/or Mr. Kidney and Todd & Weld, with no other CREF employees present (the "**Remaining Communications**"); and (2) 1,545 communications between Mr. Gendron and/or Mr. Kidney and Todd & Weld that also include other CREF employees (the "**Copied CREF Communications**").

Before the Discovery Master's August 15 directive, the privilege status of both categories of documents depended on this Court's resolution of the Objection. For the Remaining Communications that do not include Mr. Kidney, Mr. Gendron's functional-equivalent status is determinative: if he qualifies as a functional equivalent, those communications are privileged attorney-client communications; if he does not (and Mr. Kidney was not copied), they were disclosed to a third party and would need to be produced. For the Copied CREF Communications, Mr. Gendron's functional-equivalent status also matters because Order No. 22 held that "CREF employees' presence on the chain does not destroy that privilege" when a functional equivalent (like Kidney) is "on otherwise privilege[d] communications between Todd & Weld and Steward." Order No. 22 at 36. If Gendron qualifies as a functional equivalent, then under Order No. 22's logic, the presence of other CREF employees on communications involving Gendron and/or Kidney and Todd & Weld should likewise not destroy the privilege.

### B. The Separate Order No. 22 Dispute (Not Before This Court)

On July 20, 2026, while Plaintiff's motion for reconsideration remained pending before the Discovery Master, Plaintiff produced over 2,000 CREF-related communications pursuant to Order

No. 22. Jaffe Decl. ¶ 11. The next day, before Defendants' own vendor had finished processing Plaintiff's production, Defendants raised a dispute regarding the proper interpretation of Order No. 22's language—specifically, whether communications between Todd & Weld and Mr. Kidney remain privileged when other CREF employees are copied on the email chain. Defendants demanded confirmation that Plaintiff was not withholding communications involving CREF employees other than Gendron and Kidney, threatening to file a motion to compel by the close of business on July 22. Jaffe Decl. ¶ 12.

Plaintiff disagreed with Defendants' interpretation of Order No. 22—which ignored the Discovery Master's directive that if Kidney is "on otherwise privilege[d] communications between Todd & Weld and Steward . . . CREF employees' presence on the chain does not destroy that privilege"—a directive that Defendants continue to ignore. Plaintiff's position applies Order No. 22's operative language mandating production of documents with CREF employees only "when no Todd & Weld attorney is part of the email." Order No. 22 at 36. Plaintiff nevertheless offered to meet and confer to attempt to resolve the dispute without motion practice. *See* Jaffe Decl. ¶¶ 13–15. But rather than meet and confer in good faith, Defendants rejected that compromise by filing their motion to compel the next day, before Plaintiff could have possibly complied with Defendants' demands. *Id.*; *see also* Pl.'s Ex. 2.

On July 24, 2026, prior to the issuance of Order No. 26, Defendants filed with the Discovery Master a motion to compel compliance with Order No. 22 (the "**Motion to Compel**"), contending that Plaintiff was required to produce all communications involving CREF employees other than Kidney and Gendron, even if Todd & Weld attorneys were on the communication. *See* Defs.' Ex. B.

Plaintiff opposed that motion on July 31, 2026, arguing that Order No. 22's plain language permits withholding of communications between Todd & Weld and Mr. Kidney even where other CREF employees are copied. Plaintiff's position was, and remains, that communications between Mr. Kidney or Mr. Gendron and Todd & Weld remain privileged regardless of whether other CREF employees are copied, because Order No. 22 expressly provides that "CREF employees' presence on the chain does not destroy that privilege" when Kidney is on an otherwise privileged communication with Todd & Weld. *See* Order No. 22 at 36.

That dispute—which relates to the proper interpretation of Order No. 22—is currently pending before the Discovery Master and is ***not at issue*** in Plaintiff's Objection to Order No. 26.

### C. The Discovery Master's August 15 Directive and Plaintiff's Compliance Under Protest

On August 4, 2026, the Discovery Master issued Order No. 26 (the "**Order**"), denying Plaintiff's motion for reconsideration and holding that Mr. Gendron is not the functional equivalent of a Steward employee for purposes of attorney-client privilege. Order No. 26 also made a finding as to Mr. Kidney—***not at issue here and the subject of Defendants' pending Motion to Compel***—that "<u>*not a single document other than those in which only Mr. Kidney and Todd & Weld and/or Foley Hoag attorneys are on the email is withheld*</u>," meaning that if any other CREF employee appeared on the communication, attorney-client privilege was destroyed. Order No. 26 at 7 (emphasis in original).[2]

[2] On the evening of August 4, 2026, Plaintiff sought clarification from the Discovery Master regarding the effect of Order No. 26, noting that "Order 26 appears to moot the Defendants' pending motion to compel by ordering disclosure of the subject communications regardless of Order 22." *See* Defs.' Ex. A at 7. On August 5, 2026, the Discovery Master responded that whether Defendants' motion to compel was mooted "is a question that will require briefing from both sides on mootness"—explicitly declining to find that the motion to compel had been mooted by Order No. 26. *Id.* at 6. Defendants agree that the dispute regarding the interpretation of Order No. 22's language remains pending and therefore not properly before this Court. *See* Defs.' Opp'n (ECF No. 291) at 6.

The Order then directed Plaintiff to produce "the 1,749 communications involving Mr. Gendron, regardless of whether Mr. Kidney or an attorney is on the communication." Order No. 26 at 7. The Order imposed a production deadline three days later, on August 7, 2026. *Id.*

On August 6, 2026, Plaintiff filed an Emergency Motion to Stay Order No. 26 (ECF No. 282), which specifically sought a stay of Plaintiff's compliance with Order No. 26. This Court allowed the stay that same day and directed that Plaintiff's Objection be filed by August 11, 2026. *See* Order Allowing Pl.'s Emergency Mot. to Stay Order No. 26 (ECF No. 284) (the "**Stay Order**"). On August 11, 2026, Plaintiff filed its Objection to Discovery Master Order No. 26 (ECF No. 285).

On Friday, August 14, 2026, at 5:23 p.m., without advising Plaintiff in advance, Defendants filed additional briefing with the Discovery Master, purporting to address the mootness issue, arguing that this Court's Stay Order did not apply to the Copied CREF Communications (the 1,545 communications involving CREF employees other than Gendron or Kidney). Defs.' Opp'n at 6.

On Saturday, August 15, 2026, at 8:14 a.m., the Discovery Master, after "read[ing] Defendant's letter," directed Plaintiff to "answer today" a question regarding the documents Plaintiff was withholding pursuant to the Stay Order. *See* Defs.' Ex. A at 1 (emphasis in original). At 6:08 p.m. that same day, Plaintiff informed the Discovery Master that Plaintiff had not yet produced approximately 1,700 documents because they were subject to the Court's Stay Order.

That same Saturday evening, at 10:32 p.m.—notwithstanding this Court's Stay Order and the pendency of Plaintiff's Objection, and without providing Plaintiff the opportunity to respond—the Discovery Master directed Plaintiff to "immediately" produce 1,545 of the 1,745 communications that were subject to the stay, under threat of sanctions pursuant to Rule 37(b)(2). *See* Defs.' Ex. A at 2 ("They [sic] other approximately 1500 must be produced immediately, subject

to clawback on the basis of work product. I am concerned that your continued withholding of these documents puts you at risk of sanctions.”).

Not only were these 1,545 documents the subject of this Court’s Stay Order and a still-pending Motion to Compel, but the Discovery Master also knew that Plaintiff had been withholding the Copied CREF Communications ***because Plaintiff had told her so on July 28, 2026***. Jaffe Decl. ¶ 20; *see also* Pl.’s Ex. 4. Indeed, Order No. 26 itself acknowledged (without finding that the withholding violated Order No. 22) that Plaintiff was “withholding 1,549 emails that ‘include Todd & Weld, Kidney and/or Gendron and at least one other CREF employee.’” Order No. 26 at 2 (citing a July 28, 2026 email from Plaintiff’s counsel). In her Saturday night email, the Discovery Master ***for the first time*** characterized these documents as falling within the scope of Order No. 22 rather than Order No. 26, ruling (via email on a weekend) that the involvement of CREF employees other than Mr. Gendron and Mr. Kidney independently waived the attorney-client privilege, and, without allowing any briefing from Plaintiff, found that these documents were not subject to the Stay Order and must be produced “immediately” under threat of sanctions. *See* Defs.’ Ex. A at 1–2.

On August 18, 2026, Plaintiff complied with this directive under protest and with full reservation of rights, including its right to clawback under Fed. R. Evid. 502(d), the Confidentiality Stipulation, and Order No. 22. Plaintiff does not concede that this production was required given that the documents were subject to this Court’s stay—and further believed that producing the documents before this Court ruled on the Objection could profoundly prejudice Plaintiff in this action—but had no choice other than to comply rather than face sanctions.

### D. The 200 Documents That Remain at Issue

As a result of the compelled production of the 1,545 communications—which, again, Plaintiff believes are privileged—the practical scope of Plaintiff’s pending Objection is now

focused on the Remaining Communications that Plaintiff continues to withhold pursuant to this Court's Stay Order. These 200 communications share a common characteristic: they are direct communications between Mr. Gendron and attorneys at Todd & Weld (Steward's outside litigation counsel), sometimes also including Mr. Kidney, but without any other CREF employees on the communication.

## II. <u>ARGUMENT</u>

The 200 Remaining Communications are the core of the privilege dispute: attorney-client communications between Steward's counsel and the individual who managed the Norwood insurance claim on Steward's behalf. The question before this Court remains the same regardless of the narrowed scope of documents at issue: whether Mr. Gendron qualifies as the functional equivalent of a Steward employee. If he does—as Plaintiff's Objection argues—these communications are privileged.

Defendants' Opposition recycles arguments from their briefing below without addressing the strongest evidence of Gendron's functional-equivalent status. Defendants do not mention that Gendron signed contracts on Steward's behalf using a Steward executive title (Ex. G), that Gendron had an @steward.org email address (Gendron Dep. at 117:5–14), that Gendron sat at the apex of Steward's internal "Norwood Hospital Team Structure"—above Kidney (Ex. F), or that Gendron delivered Steward's opening statement at mediation (Gendron Dep. at 270:12–22). Defendants focus on boilerplate contractual language while ignoring this unrebutted evidence.

Defendants also contend that Order No. 26 was not "punitive" but "a reasoned response to Plaintiff's continued discovery misconduct." Defs.' Opp'n at 14. The record shows otherwise. First, the fact that the Order's functional-equivalent analysis ***does not cite any substantive case law*** belies Defendants' attempt to present the Order as a "reasoned response." Second, Plaintiff has met every court-imposed deadline, made rolling productions beyond what was required, and

reduced privilege log entries by nearly half through document-by-document review. Jaffe Decl. ¶¶ 6–11, 22–26, 36.

Recent developments further confirm that the Order relied on purported over-withholding rather than the merits. As detailed in the Background, the Discovery Master compelled production of 1,545 documents under threat of sanctions on a Saturday night—rejecting outright, without allowing any briefing, Plaintiff's position that the 1,545 documents were subject to this Court's Stay Order—by characterizing them as falling under Order No. 22 rather than the stayed Order No. 26. The Discovery Master simultaneously refused to find that Order No. 26 mooted Defendants' pending Motion to Compel, leaving Plaintiff exposed to both directives. This process was coercive, not "reasoned."

## III. CONCLUSION

Given the compelled production of the 1,545 documents, Plaintiff's Objection to Order No. 26 now presents a focused question: whether Mr. Gendron qualifies as the functional equivalent of a Steward employee, such that the Remaining Communications that include Mr. Gendron remain privileged. Plaintiff respectfully requests that the Court find that Mr. Gendron is a functional equivalent of a Steward employee for purposes of attorney-client privilege and grant such other and further relief as it deems just and proper.

Respectfully submitted,

**MARK KRONFELD, AS TRUSTEE OF THE SHC CREDITOR LITIGATION TRUST,**

By his Attorneys,

*/s/ Yonah Jaffe*
Howard M. Cooper (BBO No. 543842)
Seth J. Robbins (BBO No. 655146)
Josh L. Launer (BBO No. 673661)
**TODD & WELD LLP**
One Federal Street, 27th Floor
Boston, MA 02110
Tel: (617) 720-2626
hcooper@toddweld.com
srobbins@toddweld.com
jlauner@toddweld.com

William T. Reid IV (*pro hac vice*)
Jeremy Wells (*pro hac vice*)
Barbara Whiten Balliette (*pro hac vice*)
Julia P. Gokhberg (*pro hac vice*)
**REID COLLINS & TSAI LLP**
1301 S. Capital of Texas Hwy.
Building C, Suite 300
Austin, Texas 78746
Tel: (512) 647-6100
wreid@reidcollins.com
jwells@reidcollins.com
bballiette@reidcollins.com
jgokhberg@reidcollins.com

Jeffrey E. Gross (*pro hac vice*)
Yonah Jaffe (*pro hac vice*)
**REID COLLINS & TSAI LLP**
420 Lexington Avenue, Suite 2515
New York, NY 10170
Tel.: (212) 344-5200
jgross@reidcollins.com
yjaffe@reidcollins.com

Dated: August 20, 2026