**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| MARK KRONFELD, AS TRUSTEE OF THE SHC CREDITOR LITIGATION TRUST,<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN GUARANTEE AND LIABILITY INSURANCE COMPANY and ZURICH AMERICAN INSURANCE COMPANY,<br><br>Defendants. | Civ. Action. No. 21-cv-11902-PBS |

**DISCOVERY MASTER ORDER NO. 27:**
**Defendants' Motion to Compel and for Fees**

Document production of the CREF communications by the Plaintiff has been delayed for many months. This is an important time in the schedule for this case, with fact discovery nearing the cut-off date; with depositions already taken without the benefit of the ability to question witnesses about the 1,549 documents withheld against Court orders; and the potential effect on the schedule of this case, which has already been extended twice.

As has been stated many times by the Discovery Master, the sluggish pace of document production was exacerbated by the very late date when Plaintiff finally produced its privilege log. It was not exchanged with Defendants until late January 2026, and was amended in February 2026, and again recently.

Thousands of documents were withheld involving CREF, the privately held real estate consulting company founded by Robert Gendron at the suggestion of his associate, the former Steward CEO, Ralph de la Torre. Gendron and de la Torre privately owned the company [de la Torre bought 40% for $4M paid to Gendron; Gendron owned the other 60%]. When press attention focused on the shady financial practices of Steward and shed a negative light on Ralph de la Torre, Gendron paid $8M to him to buy back the 40%. There have been multiple motions seeking discovery of the CREF documents. The vast majority of the CREF withheld documents have been ruled to be unprivileged.

On May 14, 2026, the Discovery Master issued Order No. 22. This Order ruled that: CREF was a third-party consultant to Steward; CREF was not engaged as a non-testifying expert consultant; the CREF documents were ordered to be produced with only one narrow exception. Stretching the concept of "functional employee" in Plaintiff's favor — despite the First Circuit's

non-adoption of this basis for privilege — the Discovery Master permitted Plaintiffs to treat Mr. Kidney's communications as if he were an "employee" of Steward.

This narrow exception meant that Kidney's presence on an email with Todd & Weld counsel did not waive otherwise privileged communications with counsel, as would ordinarily occur for communications with a third party. Any other CREF personnel included on communications were third parties; documents involving such personnel were therefore not privileged, and were ordered to be produced. Order No. 22 was issued on May 14, 2026, in time for these documents to be examined in depositions. Plaintiffs did not produce them and filed an objection with the District Court on May 29, 2026.

On June 26, 2026, the District Court held oral argument on Plaintiff's objection. The Court upheld the Discovery Master's ruling with a single exception: The Court permitted the Plaintiff to seek reconsideration of whether Robert Gendron was a "functional employee" of Steward. This issue applied only to 200 emails. With the exception of the 200 emails on which counsel were communicating solely with Kidney and/or Gendron [pending reconsideration of his status], all other 1,549 CREF communications were ruled not privileged.

These 1,549 documents were ordered by Judge Saris to be produced forthwith. From their briefs and colloquy with the Court, it is clear that Plaintiff knew exactly which documents the Court had ordered Plaintiff to produce. Their nonproduction had persisted for months. Finally, the CREF documents were going to be produced, except for 200.

But that did not happen. Plaintiffs did not comply with the Court's order. Defendants were forced to file the instant motion to compel compliance with Order No. 22.

On July 24, 2026, Defendants submitted the instant Motion to Compel the Plaintiff to comply with Order No. 22, which Judge Saris had upheld a month before, in words mandating immediate production. Defendants also sought sanctions and attorneys' fees incurred by the need to seek the overdue production of the over 1,500 documents that Plaintiff continued to withhold, despite Court order.

On July 31, 2026, Plaintiff's response denied its non-compliance with Order No. 22, despite the clear directive of the Court. On August 2, 2026, Defendants filed a reply, arguing that Plaintiff has been aggressively continuing to improperly withhold over 1,500 documents that were clearly ordered by the Court to be produced.

On August 4, the Discovery Master issued Order No. 26, ruling that, upon reconsideration, Gendron was not acting as a "functional employee" of Steward. Gendron facilitated Ralph de la Torre's act to "lift out" real estate management from the hospital to their jointly owned private consulting firm, CREF, which, in one year, was paid $37M from Norwich hospital funds. To put it bluntly, Gendron created the company that facilitated the hospital's CEO to enrich himself with hospital funds paid to CREF. Gendron owned a greater share of CREF than de la Torre. The Discovery Master held that Gendron is not a "functional employee" of Steward. At the relevant time, Gendron was a partner with de la Torre in a private business endeavor.

Magistrate Judge Kelley will review and determine whether or not Gendron should be treated as a "functional employee". Whatever the decision, the effect of Order No. 26 impacts only the subset of 200 documents involving solely Gendron and/or Kidney that Plaintiff continues to withhold — *Order No. 26 has absolutely nothing to do with the 1,549 CREF communications that were still being withheld by Plaintiff in violation of the Court's order.*

As Plaintiff continued to defy the Court's orders, it shifted its argument to claim that the Motion to Compel was moot. The briefing on purported "mootness" then took up more time, while the 1,549 communications were still withheld.

Finally, after a blunt email from the Discovery Master, stating that continued withholding had zero basis, and warning of sanctions, Plaintiffs belatedly produced the 1,549 documents on August 18, 2026.

The Motion to Compel is *not* moot. Plaintiff wrongfully withheld at least 1,549 CREF documents for over 2 critical months in the time span of this case — on a pretense that it was not wrongfully withholding these documents. The arguments made were so utterly frivolous — and Plaintiff's own words to the District Court so clearly showing that Plaintiff's own counsel knew full well all along that Order No. 22 mandated production of these communications — that this defiance of the Court's Orders cannot be brushed off as a miscommunication or misunderstanding. It was nothing of the kind.

**Relevant Prior Rulings:**

(i) Discovery Master Order No. 22:

On May 14, 2026, the Discovery Master issued Order No. 22 ruling on the Parties' various disputes related to Plaintiff's withholding of communications involving several third-parties who performed services for Steward. Section IV(B) of Order No. 22 ruled on Plaintiff's assertions of privilege and work product protection as grounds to withhold communications involving CREF, a third-party consulting company.[1]

Order No. 22, in relevant part, overruled Plaintiff's arguments that all CREF personnel were "functionally equivalent" to Steward employees. This was the basis on which Plaintiff was categorically withholding over 4,000 CREF documents. As stated above, the Discovery Master ordered that only one individual at CREF, Chris Kidney, held "a high-level, trusted decision-making or guiding role, equivalent to that of an employee." (Order No. 22 at 35-36). Therefore, if Kidney solely was copied on communications between Todd & Weld and Steward, his inclusion does not destroy the privilege between Steward and its counsel. The Discovery Master then expressly held that "[t]he other CREF employees who worked under Mr. Kidney do not meet the status of "a high-level, trusted decision-making or guiding role case for functional employees." (Order No. 22 at 37).

---

[1] A more fulsome recitation of the details of the relationship between CREF and Steward is set out in Order No. 26.

(ii) Judge Saris' June 26 Order Ruling on Plaintiff's Objection to Order No. 22:

Plaintiff objected to Discovery Master Order No. 22, including Section IV(B) relating to CREF personnel. Plaintiff's May 29 Objection submission filed with the Court (ECF 224) shows that Plaintiff knew full well the distinction between the few emails that could be withheld when Kidney alone was on emails with Todd & Weld, and the full set of over 1,500 CREF documents involving other CREF personnel that were not privileged, and could not be withheld.

On June 26, Judge Saris held a hearing to address Plaintiff's objection. At the hearing, Judge Saris denied Plaintiff's objection to the Discovery Master's Order No. 22, with one precise exception: Order No. 22 was affirmed "without prejudice to seeking the [functional employee] privilege with respect to Mr. Gendron." (Jun. 26, 2026 Hrg. Tr. at 14:11-14). In affirming Order No. 22, Judge Saris explained that "there is not one case that I've found that you cited that basically provides an entire corporation and all its employees that are separate from it with the attorney-client privilege. It doesn't exist." (Jun. 26, 2026 Hrg. Tr. at 10:4-7). Therefore, Judge Saris instructed Plaintiff to produce all of the CREF emails, with the sole exception of those that involved *only Kidney or Gendron + Todd & Weld* while the Discovery Master reconsidered Mr. Gendron's status as a potential "functional equivalent employee". The Court could not have been clearer in its directives to Plaintiff:

> "if it's just with Kidney and Gendron, they don't need to be produced with attorneys, subject to the clawback and subject to the judge looking at that issue, but everything else should be produced subject to a clawback. *And I need this to get moving."*

(Jun. 26, 2026 Hrg. Tr. at 16:10-14).

> "And the one that I'm just going to say the clawback, it was just communications involving Kidney, Gendron, and Todd & Weld or in-house counsel. That can be privileged."

(Jun. 26, 2026 Hrg. Tr. at 19:17-21).

In responding to comments by Defendants' counsel to confirm that for emails that copied other CREF personnel as to whom Plaintiff had not met its burden of proof before Discovery Master, those emails should be "produced in a timely fashion," Judge Saris agreed and instructed that:

> "Right, they should be produced under the clawback 'Attorneys eyes only.' But if it's just Gendron, Kidney, and Todd & Weld or in-house counsel, or whatever, and it's attorney-client, that should stay just privileged. But I do think it should be a master's decision as to whether or not Gendron qualifies."

(Jun. 26, 2026 Hrg. Tr. at 20:16-21:1).

The objection and Judge Saris' rulings at the June 26 hearing make clear that Plaintiff knew full well by June 26, 2026 that it was obligated to produce, subject to clawback, those documents involving any CREF personnel except for the 200 on which the *only CREF personnel communicating with Todd & Weld are Mr. Kidney and/or Mr. Gendron*.

(iii) Discovery Master Order No. 26:

Per Judge Saris' June 26 ruling, the Discovery Master reconsidered whether Robert Gendron should be treated the same as Kidney under the "functional employee" exception to third-party-disclosure waiver of privilege. After reviewing the relevant submissions, arguments, and authority, on August 4, 2026, the Discovery Master issued Order No. 26, finding that "there shall be no blanket withholding of the Gendron communications, nor selective withholding" based on treating Gendron as anything other than a third-party consultant; "Mr. Gendron is not a 'functional employee.'" (Order No. 26 at 7). Order No. 26 instructed that disclosure to Gendron is a disclosure to a third party. Therefore, Plaintiff must produce all communications in the 1,749 still-withheld documents that were disclosed to Gendron. (Order No. 26 at 7).

Due to the unduly late CREF document production, Order No. 26 instructed that documents be produced by August 7, 2026. Of the 1,749 withheld communications, Plaintiff confirmed that approximately 200 emails include "Todd & Weld, Kidney and/or Gendron, and no other CREF employee," while the remaining 1,549 "include Todd & Weld, Kidney and/or Gendron and at least one other CREF employee."

On August 6, 2026, Plaintiff filed an emergency motion to stay Order No. 26, pending the resolution of the objection to the Court (ECF 282). Judge Saris temporarily stayed Order No. 26 until Magistrate Judge Kelley was able to rule on it. (ECF 284).

The stay clearly and unequivocally only affected the subset of 200 documents, on which the sole persons copied were Gendron and/or Kidney and Todd & Weld, and only while Gendron's status is being reviewed by the Court. It had zero impact on the 1,549 communications on which disclosure was made to other CREF personnel.

**The Continued Refusal to Produce the Documents Ordered by the Court to be Produced on June 26, 2026; By August 7, Not a Single One of the 1,549 CREF Documents had been Produced**

While the Discovery Master was working in July on giving Plaintiff the opportunity to argue the reconsideration of Gendron's status, the Discovery Master assumed that Plaintiff had produced all of the 1,549 documents that the Court had ordered in June to be produced — saying: "And I need to get this moving." These were the documents that copied CREF personnel beyond "just Kidney and Gendron and the lawyers." Only the tranche of 200 documents was permitted to be withheld while Gendron's status was *sub judice.*

Astonishingly, the Plaintiff actually produced *none* of the 1,549 documents that the Court had clearly ruled must be produced. And, as stated above, the Plaintiff knew full well on June 26 that it must produce them.

Yet, at the time of Plaintiff's August motion seeking an emergency stay from the Court on Order 26, the Plaintiff had not even complied with the Court's June 26 order that the 1,549 documents be produced on a forthwith basis. Plaintiff was seeking an exceptional judicial stay in August at the same time that it was acting in disregard of the Court's ruling in June. Plaintiff still had produced ***none*** of the 1,549 communications which included CREF personnel other than Mr. Kidney and/or Mr. Gendron. These 1,549 communications fit the exact description of those documents that the Court had ordered to be produced over a month before, on June 26.

Throughout the remainder of June, the entire month of July, and much of August, the documents that Judge Saris had ordered to be produced when she upheld the Discovery Master's Order No. 22 remained withheld.

When the Discovery Master learned of this disregard of the Court's ruling, and demanded an answer from the Plaintiff, the response was head-spinning: on August 15, Plaintiff justified its continued withholding as permitted by Judge Saris' stay of the Gendron status decision! In an email exchange with the Discovery Master on August 15, 2026, Plaintiff astonishingly argued that "The District Court's Stay Order (Dkt. 284) and pending Plaintiff's Objection to Discovery Master Order 26 apply here, so Plaintiff has not yet produced the approximately 1700 documents that contain CREF personnel other than Chris Kidney." In other words, Plaintiff drove a truck through the narrow stay, that only applied to the communications on which Gendron was the sole CREF personnel copied on an email to or from counsel, and used it as an excuse to continue to withhold what the Court had just ordered could no longer be withheld.

Order No. 26 was devoted to explaining why, on reconsideration, Gendron did not deserve "functional employee" status. It had one sentence that reiterated [again!] what Order No. 22 had required to be produced. Nobody who graduated from law school could credibly believe that this sentence in Order No. 26 actually meant that Judge Saris was reversing her ruling on Order No. 22, in unequivocal words, that these 1,549 documents must be produced immediately, to "get this moving".

Moreover, the shallow fallacy—and lack of candor— of this excuse for defiance of the Court's June 26th order is laid bare when one notes that Plaintiff did not even read Order 26 until August 4th (the date it was issued), at the earliest, and didn't object to it until August 6th. Thus, there was literally not even a pathetic excuse uttered for the entire time from June 26 until August 6 — when the documents continued to be withheld despite the orders of the Court.

The Discovery Master learned of this latest delay tactic on the evening of August 15. Shocked, the Discovery Master responded to Plaintiff's counsel's email late at night, to express how outrageous this continued withholding was:

> This response is an incorrect reading of what the District Court stayed. The District Court stayed Order 26, solely because it ruled on Gendron's status. The stay

permits the Plaintiff to continue to withhold the Gendron emails where either he alone, or together with Kidney, communicated with Todd & Weld.

The District Court overruled your objection to Order 22, which ruled that all other CREF personnel, are third parties. Judge Saris permitted you to seek reconsideration of Order 22 only as to Gendron, and nobody else.

Judge Saris did NOT give you leave to seek reconsideration of the other personnel of CREF, as ordered in Order No. 22. Order 26 ONLY ruled on your motion to reconsider Gendron's status. Although the Order further explained and reiterated what is required to be produced pursuant to Order No. 22, its only new ruling was to deny your motion to reconsider as to Gendron's status. ONLY Gendron's emails with Todd & Weld, which <u>exclude</u> any other CREF personnel (other than Kidney), are stayed to be considered by Magistrate Judge Kelley.

Gendron's or Kidney's emails that <u>include</u> other CREF personnel are equivalent to disclosure to a third party, and therefore are not privileged, as ruled in Order 22.

Judge Saris did *not* give you permission to seek reconsideration of Order 22; your objection was denied, except as to the right to seek reconsideration of Gendron. Therefore, all emails where any other CREF employee was copied, is the same as disclosure to a third party, and unprivileged. Those emails were ordered to be produced the moment that Judge Saris denied your objection to Order No. 22. To continue to withhold them risks sanctions.

Therefore, Order 22, as stayed by the stay of Order 26 ONLY for the emails where Gendron alone is communicating, requires production of the 1500 documents that include the third party personnel of CREF. *The 200 that are only with either Kidney or Gendron and Todd & Weld may continue to be withheld until Magistrate Judge Kelley rules on Gendron's status*. *<u>Every other document is overdue for production,</u> subject to clawback for work product claims*.

You are misreading of the District Court's stay ruling to claim that Judge Saris was staying Order No. 22 as to all the other CREF personnel. The only effect of the stay is the 200 emails where only Gendron and/or Kidney are communicating with Todd & Weld.

[The] other approximately 1500 must be produced immediately, subject to clawback on the basis of work product. I am concerned that your continued withholding of these documents puts you at risk of sanctions.

(Special Master's August 15, 2026 email to the Parties).

Only then, after being ordered again and again for months to produce these documents, were they finally produced to the Defendants on August 18. It took many hours of time; motions that should not have been needed to be filed; repeated work by the Discovery Master; and

precious time lost to the Defendants late in the fact discovery period, to elicit production of significant documents that were withheld in defiance of the Court's orders and instructions.

On August 18, the Plaintiff finally informed the Discovery Master that the 1,549 documents would be produced on that day. To finally do what had been ordered by the Court 2 months earlier does not moot the noncompliance. To even so contend is below the standards of the Court.

**Analysis**:

Plaintiff contends that it has finally, at long last, produced the 1,549 communications, and that the issue is therefore resolved and Defendants' motion to compel compliance with Order No. 22 is moot. Wrong.

First, there is the defiance of the Court's June 26th Order upholding Order No. 22; the continued withholding through August 18; the lame pretense of misunderstanding the Court's stay of Order No. 26; the lack of any excuse at all for continued non-production from June 26 until August 6; the more than 2 months of continued delay to Defendants' ability to complete deposition discovery on over 1,500 documents, in a case that has already been unduly been delayed by many months due to Plaintiff's unduly sluggish document production.

Nor does the recent production address the other aspects of Defendants' motion to compel: the extreme delay and unnecessary and costly litigation to ensure the production of these documents despite several orders from the Discovery Master and the Court expressly ordering their production. Judge Saris clearly instructed that Plaintiff produce documents that do not include Kidney and/or Gendron (the 1,549 communications) on June 26, 2026, in tones of urgency as to the time delays and the need to "get this moving," and yet for over 2 months they still had not been produced. Just finally producing these documents does not right this wrong.

The lame — rather pathetic — argument of Plaintiff's counsel's August 15 email that he believed that the stay order allowed him to continue to withhold the very documents that the Court had been crystal clear must be produced under Order No. 22 is emblematic of the Plaintiff's approach to candor in its discovery obligations as to CREF. CREF is the very same consulting firm created by Gendron at the suggestion of Steward's deposed CEO de la Torre to "lift out" the hospital real estate management and instead of doing the work internally, use the "lift out" to send hospital funds to Gendron and de la Torre's private company.

Plaintiff has not been straightforward with the Court or the Discovery Master. Plaintiff has violated multiple Court Orders and forced Defendants to expend significant time and resources to rectify the situation. Even now, Defendants must use precious time to play catch-up with discovery. How many depositions will need to be retaken is unknown. How many more must be squeezed into the short period of time remaining to complete discovery is unknown. Whether the Court must revise its trial schedule for this case, yet again is unknown.

When a party fails to comply with a court order, sanctions are warranted under Rule 37(b)(2). And although the sanctions authorized by Rule 27(b)(2)(A) are discretionary, the

payment of expenses pursuant to Rule 37(b)(2)(C) is mandatory: "the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees caused by the failure" to comply with the Court's order. *See United States v. Toth*, 2018 WL 4963172, at *5 (D. Mass. Oct. 15, 2018).

The Discovery Master therefore recommends to the Court that Plaintiff be ordered to pay for all costs and attorneys' fees incurred by Defendants in their repeated efforts to obtain compliance with the Discovery Master's Order No. 22; and the Court's order upholding Order No. 22; the Motion to Compel; the claims of mootness pertaining to CREF document production; as well as the future costs and attorneys' fees of any deposition that must be re-taken to elicit testimony about any of the 1,549 documents.

Further, if the Court upholds Order No. 26 on Gendron's status, any documents in the tranche of 200 documents that copied Gendron must be produced the very next calendar day. The Discovery Master further orders that the Plaintiff shall comply with any choice of date and location for any deposition or re-deposition sought by Defendants regarding CREF.

**SO ORDERED**

Dated: August 25, 2026

/s/ *Faith S. Hochberg*
Hon. Faith S. Hochberg, U.S.D.J. (ret.)