**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| MARK KRONFELD, AS TRUSTEE OF THE SHC CREDITOR LITIGATION TRUST,<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN GUARANTEE AND LIABILITY INSURANCE COMPANY and ZURICH AMERICAN INSURANCE COMPANY,<br><br>Defendants. | Civil Action No. 1:21-cv-11902-PBS |

**PLAINTIFF'S OBJECTION TO**
**DISCOVERY MASTER ORDER NO. 27**

Pursuant to Fed. R. Civ. P. 53(f) and the Order Appointing the Honorable Faith S. Hochberg as Discovery Master (ECF No. 149) (the "**Appointment Order**") at § III, Plaintiff Mark Kronfeld, as Trustee of the SHC Creditor Litigation Trust ("**Plaintiff**" or the "**Trustee**"), respectfully objects to and seeks an order vacating Discovery Master Order No. 27 (ECF No. 295) (the "**Order**" or "**Order 27**") and rejecting its recommendations concerning Defendants' Motion to Compel and for Sanctions submitted to the Discovery Master on July 24, 2026 (the "**Motion to Compel**") for alleged failure to comply with Discovery Master Order 22 (ECF No. 224) ("**Order 22**").

**PRELIMINARY STATEMENT**

Order 27 is built on a factually incorrect foundation. Its central narrative is that the Trustee wholly failed to comply with Order 22 and affirmatively concealed his withholding of 1,549 documents until the Discovery Master was "shocked" to learn of this "delay tactic" on August 15th. But the written record contradicts this narrative. An examination of the facts shows that the

Trustee fully and timely complied with every aspect of Order 22, producing thousands of documents other than the 1,549, including more than 2,000 documents containing Todd & Weld's communications that copied CREF employees ruled not to be functional equivalents. The Trustee withheld communications between Todd & Weld and the "functional equivalent" CREF employees when other CREF employees were copied in reliance on the plain language of Order 22, which held that if a functional equivalent CREF employee is copied "the CREF employees' presence on the chain does not destroy that privilege." Order No. 22 at 36–37, ECF No. 224. The Trustee disclosed his position openly and repeatedly to the Discovery Master weeks before August 15th, including in a July 27, 2026 declaration, a July 28, 2026 email to the Discovery Master confirming the exact document count, and his July 31, 2026 opposition brief to the Motion to Compel.

Order 27 disclaims any knowledge of weeks of written submissions and communications about these very documents. Without addressing the Trustee's arguments, the Order characterizes Plaintiff's legal position as "utterly frivolous," his reliance on a court-granted stay as a "lame pretense" and "rather pathetic," and his conduct as "emblematic of Plaintiff's approach to candor." Order No. 27 at 3, 8, ECF No. 295. None of these characterizations are remotely true or supported by the record. Order 27 rests on a factual narrative that contradicts the contemporaneous written submissions Plaintiff made to the Discovery Master throughout this dispute. This objection demonstrates that Order 27 proceeds from material factual errors that, once corrected, eliminate the foundation for any sanctions finding.

<u>Order 27's core premise that the Trustee concealed his withholding of the subject documents is incorrect</u>. Order 27 finds that "there was literally not even a ***pathetic excuse uttered*** for ***the entire time from June 26 until August 6***" for withholding these documents. Order No. 27

at 6. But far from a "pathetic excuse," the Trustee offered extensive written explanation of his position: a July 27, 2026 declaration to the Discovery Master detailing compliance with Order 22 and the textual basis for withholding the documents; a July 28, 2026 email to the Discovery Master confirming 1,749 documents withheld, including "1,549 [that] include Todd & Weld, Kidney and/or Gendron and at least one other CREF employee"; a July 31, 2026 opposition brief presenting the textual argument under Section IV(B)(2); and an August 4, 2026 surreply. *See* Ex. 1, Decl. of Yonah Jaffe (July 27, 2026) ("**July 27 Decl.**"); Declaration of Yonah Jaffe in Support of Plaintiff's Objection to Discovery Master Order No. 26 ¶¶ 20–21, 22, 26 (Aug. 11, 2026), ECF No. 285-1 ("**Aug. 11 Decl.**"). Order 27 does not acknowledge or engage with any of these submissions. It does not mention their content. Order 27 appears not to have considered them at all.

<u>Order No. 27 wrongly suggests Plaintiff failed to produce any documents pursuant to Order No. 22</u>. Order 22 characterizes Plaintiff's conduct as "egregious[] defiant noncompliance" by treating the 1,549 documents as if they were the entire universe of documents ordered produced under Order No. 22, and that not producing them constituted complete defiance. The Trustee produced thousands of other documents in response to Order 22 and met every deadline: 377 documents on May 29, 2026, covering all thirteen consultants addressed by Order No. 22; previously redacted documents before June 8, 2026; and over 2,000 CREF documents by the agreed-upon deadline of July 20, 2026, after the District Court overruled Plaintiff's objection. Ex. 1, July 27 Decl. ¶¶ 6–7; Aug. 11 Decl. ¶¶ 6–7, 11.

<u>Order No. 27's characterization of Plaintiff's textual argument as "utterly frivolous" ignores Order No. 22's express language.</u> Order No. 27 at 3. Section IV(B)(2) of Order 22 directed production only "when no Todd & Weld attorney is part of the email." Order No. 22 at 37. Order

22 further held that if Chris Kidney "is copied on otherwise privilege[d] communications between Todd & Weld and Steward . . . CREF employees' presence on the chain does not destroy that privilege." Order No. 22 at 36. All 1,549 withheld documents included a Todd & Weld attorney. Defendants never addressed this textual argument in their briefing; Order 27 does not engage with it. From the issuance of Order 22 through the production of the 1,549 documents, the Trustee acted based on a good faith interpretation of Order 22: communications involving Todd & Weld and Mr. Kidney did not need to be produced even if another CREF employee was copied. This is a good faith interpretation of Order No. 22 because it is what the order says.

Order 27 claims the Court's statements at the June 26 hearing rendered the Trustee's reliance on the plain language of Order 22 unsustainable. But the Court did not change or clarify Order 22. The Court affirmed it, so the language in Order 22 allowing the Trustee to retain communications involving Todd & Weld, Chris Kidney, and other CREF employees remained in place. The Trustee's interpretation of Order 22 was still reasonable and in good faith, and the Trustee explained his interpretation of Order 22, given the June 26 hearing, to counsel for Defendants on July 22, 2026. *See* Ex. 2, July 24, 2026 Email from Y. Jaffe to L. Rael, et al., at 5–6. At all times, the Trustee acted in good faith reliance on the language of Order 22.

<u>Order No. 27 faults Plaintiff for "forc[ing]" Defendants' Motion to Compel even though Defendants rejected Plaintiff's compromise offer.</u> On July 23, 2026, Plaintiff offered to produce the disputed documents subject to clawback, which would have made the Motion to Compel unnecessary. Ex. 2 at 3–4. Defendants rejected that offer at 6:54 p.m., demanding production by 5:00 p.m. the following day, which was an impossible deadline for Plaintiff's vendor to process these documents for production. *Id.* at 2. Defendants filed the Motion to Compel the next day. *See*

Ex. 3, Defs.' July 24, 2026 Mot. to Compel. Order 27 does not acknowledge this rejected compromise offer.

Order 27 misapprehends the current case schedule. Order 27 also states that "depositions [were] already taken without the benefit of the ability to question witnesses about the 1,549 documents." Order No. 27 at 1. This is wrong: no depositions have been taken since Order 22 was entered on May 14, 2026. Decl. of Yonah Jaffe in Supp. of Pl.'s Obj. to Disc. Master Order No. 27 ("**Jaffe Decl.**") ¶ 12.

Order No. 27 penalizes Plaintiff for exercising his procedural rights. The Appointment Order and Fed. R. Civ. P. 53(f) expressly authorize objections to Discovery Master orders. Plaintiff filed timely objections to both Order No. 22 and Order No. 26 (ECF No. 283). Following Plaintiff's emergency motion, the District Court granted a stay of Order No. 26 on August 6, 2026. *See* Order Allowing Pl.'s Emergency Mot. to Stay Order No. 26 (Aug. 6, 2026), ECF No. 284. Order 27's characterization of Plaintiff's reliance on a court-granted stay as a "lame pretense" disregards the Court's determination that Plaintiff's position warranted interim relief. The Order also mandates that if the Court upholds Order No. 26 (regarding reconsideration of Gendron), Plaintiff must produce the additional documents "the very next calendar day."[1] A sanctions order should not penalize a party for invoking procedural protections that the rules themselves provide.

Once Order 27's counterfactual narrative collapses, so does the entire basis for sanctions.

[1] In fact, Magistrate Judge Kelley affirmed Order 26 the afternoon of Friday, August 28, requiring production "forthwith and not later than September 7, 2026." ECF No. 297 (Text Order). Plaintiff produced them on Saturday, August 29th.

## STATEMENT OF FACTS

### I. Background

On November 23, 2021, Steward Health Care System LLC ("**Steward**") commenced this action against Defendants AGLIC and Zurich American Insurance Company for their failure to pay flood damage claims arising from the catastrophic loss at Norwood Hospital. *See* Compl., ECF No. 1. On May 6, 2024, Steward filed for Chapter 11 bankruptcy in the United States Bankruptcy Court for the Southern District of Texas. *See* Mot. of Mark Kronfeld, as Tr. of the SHC Creditor Litig., to Substitute as Pl. (Nov. 6, 2025) ¶ 2, ECF No. 165. On July 17, 2025, the SHC Creditor Litigation Trust (the "**Trust**") was established with Mark Kronfeld serving as Trustee. *Id.* ¶ 5. Pursuant to the Trust Agreement and Confirmation Order, the claims in this case were transferred to the Trust. *Id.* On November 6, 2025, the Trustee moved to substitute as Plaintiff under Fed. R. Civ. P. 25(c), *id.*, and Judge Saris granted that motion on November 25, 2025, *see* Order Granting the Mot. of Mark Kronfeld, as Tr. of the SHC Creditor Litig., to Substitute as Pl. (Nov. 25, 2025), ECF No. 173.

The Trustee's mission is to rectify the wrongdoing perpetrated by Steward's former executives. Reid Collins & Tsai LLP, which represents the Trustee in several matters including a $3.4 billion lawsuit against Ralph de la Torre and Steward insiders, was engaged as lead counsel in this case alongside Todd & Weld in late 2025. Any recovery in this insurance coverage dispute will inure to the benefit of Steward's creditors, not to de la Torre or CREF. The Trustee has no conceivable interest in protecting de la Torre. But this insurance coverage dispute concerning Norwood Hospital's flood damage has nothing to do with any misappropriation of assets by Steward's former executives.

The Trustee's discovery compliance record is extensive and thoroughly documented. Prior to the Discovery Master's appointment on July 18, 2025, the Trustee produced 24,506 documents

from five custodians across nine production volumes, which are more documents than Defendants have produced in the entire case. Decl. of Josh L. Launer in Supp. of Pl.'s Obj. to Disc. Master Order No. 27 ("**Launer Decl.**") ¶ 3. Following Discovery Master Order No. 1 (ECF No. 152) on September 9, 2025, which dramatically expanded the discovery scope by requiring searches of eight additional custodians using 31 complex search terms, the Trustee produced 146,891 documents in just 50 days through rolling Friday productions from September 12, 2025 through November 1, 2025. *Id.* ¶¶ 6–9. Pursuant to Order No. 1, Plaintiff submitted a document review protocol to the Discovery Master that explained the role of the CREF employees and the handling of potentially privileged documents. *Id.* ¶ 7. The Discovery Master never took issue with anything in Plaintiff's protocol. *Id.*

Plaintiff's privilege log, originally served on January 21, 2026, with 9,666 entries, was voluntarily reduced to 7,690 entries by March 20, 2026, and has never been amended to add a single new entry. *Id.* ¶¶ 22, 28, 39. Meanwhile, more than three months elapsed between the parties' February 4, 2026 privilege submissions and the Discovery Master's May 14, 2026 ruling in Order 22; as of the date of filing, 95 documents submitted for in camera review on May 31, 2026, remain unreviewed. *Id.* ¶¶ 50–51.

## II. Plaintiff's Compliance with Order 22, and Defendants' Motion to Compel

On May 14, 2026, the Discovery Master issued Order 22, a 39-page ruling addressing privilege disputes concerning thirteen third-party consultants. *See* Order No. 22. Order 22 contained express language that formed the basis of Plaintiff's good-faith interpretation regarding CREF communications. Order 22 held that if Chris Kidney "is copied on otherwise privilege[d] communications between Todd & Weld and Steward . . . the CREF employees' presence on the chain does not destroy that privilege." *Id.* at 36. Section IV(B)(2) directed production of communications between Mr. Kidney and other CREF employees with third parties only "when

no Todd & Weld attorney is part of the email." *Id.* These were operative directives that formed the basis of Plaintiff's good-faith compliance throughout the following months. Ex. 1, July 27 Decl. ¶ 3; *see also* Decl. of Josh L. Launer in Supp. of Pl.'s Obj. to Section IV(B) of Disc. Master Order No. 22 (ECF No. 224) ¶¶ 3–5, ECF No. 238.

On May 29, 2026, Plaintiff filed an Objection to Section IV(B) of Order No. 22 (ECF No. 237). Plaintiff's objection focused on who at CREF could qualify as a functional equivalent of a corporate employee for privilege purposes, not whether privilege had been waived by copying other CREF employees. Plaintiff also produced all the documents required under the unchallenged portions of Order 22 regarding other consultants. Aug. 11 Decl. ¶ 6; Launer Decl. ¶ 48. On May 31, 2026, Plaintiff submitted all documents selected for in camera review as directed by Order 22, organized by consultant category with detailed privilege descriptions. Launer Decl. ¶¶ 50–51. On June 5, 2026, Plaintiff produced previously redacted documents even though the Order did not expressly mention them. Aug. 11 Decl. ¶ 7.

On June 26, 2026, Judge Saris held a hearing on Plaintiff's objection to Order 22. Judge Saris affirmed Order 22 with the single exception of Gendron's status, granting Plaintiff leave to "move for reconsideration on him because he was the CEO." June 26, 2026 Hr'g Tr. at 15:14–16:22. Judge Saris stated that the Court "would have to believe a CEO was" in the kind of "highly-trusted" position contemplated by the functional equivalence doctrine. *Id.* The issue of whether copying other CREF employees on communications with Todd & Weld destroyed privilege was not the subject of Plaintiff's objection and was not part of Judge Saris's ruling. Plaintiff continued to apply Order 22's parameters as written.

On July 8, 2026, the parties jointly submitted an adjusted case schedule as Judge Saris had directed. The schedule required Plaintiff to file his Gendron reconsideration motion by July 13,

2026; produce withheld CREF documents subject to clawback by July 20, 2026; and provide his clawback assertions authorized by Order 22 by July 31, 2026. Aug. 11 Decl. ¶ 9. At Defendants' request, Plaintiff also agreed to produce by July 31 an updated privilege log and an index of previously redacted documents that had been produced. *Id.* ¶ 10. Plaintiff met every one of these deadlines. On July 13, 2026, Plaintiff timely filed his motion for reconsideration with the Discovery Master regarding Gendron's functional-equivalent status, and on July 20, 2026, Plaintiff produced more than 2,000 CREF documents on the agreed deadline. Ex. 1, July 27 Decl. ¶¶ 6–7; Aug. 11 Decl. ¶ 11.

But beginning the day after Plaintiff's July 20 production and as Plaintiff worked to meet the multiple July 31 deadlines, Defendants began escalating demands. On July 21, 2026, at 2:33 p.m., Defendants sent an email raising "serious concerns" about whether Plaintiff had complied with Order 22, asserting that "the involvement of CREF employees (other than Chris Kidney) on communications waives the attorney client privilege" and demanding that Plaintiff "confirm by 9:30 a.m. CT tomorrow" whether it was withholding communications involving other CREF employees and threatening to "file a motion seeking to compel production by the close of business tomorrow, July 22, reserving all rights to seek any appropriate relief, including sanctions." Ex. 2 at 8. Defendants also demanded that Plaintiff "identify by Privilege Log Sort Order number . . . the CREF-related documents that Plaintiff is continuing to withhold" by close of business that same day. *Id.* On July 22, 2026, Plaintiff's counsel responded that "[d]emanding substantive responses by 9:30 this morning—and an index of withheld documents by close of business yesterday—before your vendor has even finished processing the more than 2,000 documents we produced Monday night is neither reasonable nor productive, and your threat of sanctions on that basis is frivolous." *Id.* at 5–6. Plaintiff's counsel also quoted Order 22's language that Kidney's

presence "does not destroy that privilege" even when other CREF employees are on the chain and explained Plaintiff's textual basis for withholding the disputed communications. *Id.* This put Defendants on notice of Plaintiff's argument, but Defendants never responded to it. On July 23, 2026, at 1:14 p.m., Defendants sent Plaintiff a Redfern chart and demanded Plaintiff's position "by close of business today." *Id.* at 4. At 5:26 p.m. that same day, Plaintiff offered a compromise: "We would be willing to consider producing communications involving Kidney and/or Gendron where other CREF employees are also on the chain, subject to clawback." *Id.* at 3–4. Defendants effectively rejected this offer at 6:54 p.m., stating they would only agree if the records were produced by 5 p.m. the next day. *Id.* at 2. Plaintiff responded at 1:53 a.m. on July 24, 2026, explaining that it would be impossible for Plaintiff's vendor to process the production so quickly, and asking Defendants to explain the extreme urgency to receive the production on a Friday afternoon rather than on Monday. *Id.* at 1–2.

Defendants did not respond. Instead, on Friday, July 24, 2026, Defendants filed a Motion to Compel. *See* Ex. 3. That evening, Plaintiff's counsel requested an extension from the Discovery Master until Monday, August 3, 2026, to respond, explaining that Plaintiff was in the midst of trying to meet multiple imminent deadlines by July 31 and that forcing Plaintiff to divert resources to opposing this motion at the same time would undermine Plaintiff's ability to fulfill these commitments. Ex. 4, July 28, 2026 Email from Y. Jaffe to Discovery Master, at 7. At 9:46 p.m. that same evening, the Discovery Master conditioned her grant of an extension on Plaintiff submitting a declaration about the status of the production by the following day at noon. *Id.* at 6.

On July 27, 2026, Plaintiff submitted the requested declaration by the noon deadline, confirming that Plaintiff had already produced all categories of documents ordered to be produced under Order 22 and setting forth Plaintiff's compliance with Order No. 22 and the textual basis for

withholding the disputed documents. *Id.* at 5; *see also* Ex. 1, July 27 Decl. ¶¶ 1–8. Plaintiff again requested that the responsive letter brief be due August 3. Ex. 4 at 6. At 5:23 p.m. the Discovery Master granted only a partial extension, setting the opposition deadline at "8PM this Friday, July 31." *Id.* at 4. This was the ***same date as Plaintiff's three other simultaneous deadlines***.

The same day, the Discovery Master asked for the number of documents still withheld involving Kidney and/or Gendron with Todd & Weld on the email chain. *Id.* at 5. On July 28, 2026, Plaintiff's counsel confirmed the exact breakdown of withheld documents: of 1,749 emails withheld under Section IV(B)(2) involving Kidney and/or Gendron and Todd & Weld, approximately 200 included only Todd & Weld, Kidney and/or Gendron, and no other CREF employee, while the remaining 1,549 also included at least one other CREF employee. *Id.* at 3; *see also* Aug. 11 Decl. ¶ 20.

Later that evening, the Discovery Master questioned Plaintiff's counsel about the need for a new privilege log, assuming Plaintiff had been adding to its privilege log. Ex. 4 at 2. Plaintiff's counsel confirmed that "zero documents have been withheld that are not on a privilege log. Every document currently being withheld has already been logged on each of the prior privilege logs." *Id.*

On July 31, 2026, Plaintiff timely met three simultaneous deadlines: (1) filing a detailed opposition to the Motion to Compel, Aug. 11 Decl. ¶ 22; (2) providing clawback designations, *id.* ¶ 23; and (3) producing an updated privilege log that reduced CREF-related emails being withheld from 3,781 (on the prior March log) to 1,768 communications, *id.* ¶ 24.

In sum, Plaintiff disclosed his withholding of these 1,549 documents repeatedly and candidly to Defendants and the Discovery Master: In his July 20, 2026 production letter, Plaintiff laid out his position on the 1,549 documents. Ex. 5, July 20, 2026 Prod. Ltr. On July 22, Plaintiff's

counsel sent an email quoting Order 22's text and requesting Defendants explain their position. Ex. 2 at 5–6. On July 23, Plaintiff offered a compromise, proposing to produce the disputed documents subject to clawback, which Defendants rejected. *Id.* at 3–4. On July 27, Plaintiff submitted a sworn declaration to the Discovery Master explaining his position. Ex. 4 at 6. On July 28, Plaintiff confirmed the exact breakdown (200 plus 1,549) directly to the Discovery Master via email. *Id.* at 3. On July 31, Plaintiff filed a detailed opposition presenting his textual argument under Section IV(B)(2). *See* Ex. 6, Pl.'s July 31, 2026 Opp'n Ltr. Brief. And on August 4, Plaintiff filed a surreply. Ex. 7, Pl.'s Aug. 4, 2026 Surreply Ltr. Brief. These disclosures dispel any notion that the Trustee was purposely flouting a court order and concealing his non-compliance.

## III. Order No. 26, the District Court's Stay, and the Saturday Evening Email Threatening Sanctions.

While the Motion to Compel was being briefed, Plaintiff's reconsideration motion regarding Gendron remained pending before the Discovery Master. On August 4, 2026, the Discovery Master issued Order No. 26, denying reconsideration of Gendron's functional-equivalent status and independently directing production of all 1,749 withheld documents involving Gendron "regardless of whether Mr. Kidney or an attorney is on the communication." Order No. 26 at 7, ECF No. 281. Order No. 26 thus required production of the same 1,549 documents at issue in the Motion to Compel but on a separate legal basis, distinct from Order 22's functional-equivalent analysis. Critically, Order No. 26 expressly acknowledged that these 1,549 documents were being withheld, yet ordered their production on this alternative ground. *Id.* at 2.

Order No. 26 required production "forthwith, without further delay, and not later than August 7, 2026" which was just three days after the Order issued, and four days before the objection period under the Appointment Order expired on August 11, 2026. Order No. 26 at 7. On August 5, 2026, the Discovery Master stated by email that she would "not answer the remainder

of the request regarding mootness without briefing from both parties." Ex. 9, Aug. 15, 2026 Email from Discovery Master to Counsel, at 7. On August 6, 2026, Plaintiff filed an Emergency Motion to Stay Order No. 26 (ECF No. 282), arguing that the extraordinarily short compliance deadline would require production before Plaintiff could even file an objection. That same day, the District Court granted the stay, staying Order No. 26 and Plaintiff's obligations thereunder pending resolution of Plaintiff's forthcoming objection. *See* Order Allowing Pl.'s Emergency Mot. to Stay Order No. 26 (Aug. 6, 2026), ECF No. 284.

On August 11, 2026, Plaintiff timely filed his Objection to Order No. 26 (ECF No. 285). In his objection, Plaintiff argued that Gendron, who was the CEO of CREF, Steward's internal real estate division, satisfied the functional-equivalent test and that Order No. 26's categorical waiver of privilege was unsupported by law. *See generally* Pl.'s Obj. to Disc. Master Order No. 26 (Aug. 11, 2026), ECF No. 285. On August 14, 2026, a Friday afternoon, Defendants filed a letter brief arguing that the Motion to Compel was not moot despite Order No. 26's independent directive. Ex. 8, Defs.' Aug. 14, 2026 Suppl. Ltr. Brief. At 6:02 p.m., the Discovery Master acknowledged receipt and asked: "When can I expect to receive Plaintiff's response?" Ex. 9 at 4. At 8:52 p.m., Plaintiff's counsel requested one week from that day to serve a response. *Id.* at 3.

The next morning, Saturday, August 15, 2026, after initially granting Plaintiff's request, less than two hours later, at 8:13 a.m. the Discovery Master reversed course and required his response by Noon on Tuesday, August 18." *Id.* at 3. In the same email, the Discovery Master demanded that Plaintiff answer "today" (Saturday) how many documents involving CREF personnel were still being withheld, asking: "Are you withholding only the set of 200 documents described in Defendants' letter? Or are you still withholding over 1,700 documents . . . that include CREF personnel who have already been ruled by the District Court to be third parties? Just the

facts, please." *Id.* At 6:08 p.m. that evening, Plaintiff's counsel responded, explaining that "[t]he District Court's Stay Order (Dkt. 284) and pending Plaintiff's Objection to Discovery Master Order 26 apply here, so Plaintiff has not yet produced the approximately 1700 documents that contain CREF personnel other than Chris Kidney," and noting that if the Court affirmed the Discovery Master's ruling, "Plaintiff has already prepared to produce these documents promptly, which as we will explain in our letter brief on Tuesday, would moot this motion." *Id.* at 2.

At 10:31 p.m. that same Saturday night, the Discovery Master sent a lengthy email rejecting Plaintiff's position and demanding immediate production under threat of sanctions. *Id.* at 1. The Discovery Master determined in that email that the District Court's stay only applied to the 200 documents, not the other 1,549 communications Order 26 had specifically ordered produced. *Id.* The Discovery Master then concluded (for the very first time and contrary to the language of Order 22) that any email with other CREF employees copied constituted a waiver of privilege, and that "[t]o continue to withhold them risks sanctions. . . . [T]he approximately 1500 must be produced immediately, subject to clawback on the basis of work product. I am concerned that your continued withholding of these documents puts you at risk of sanctions." *Id.* This directive came on a Saturday night, without any opportunity for Plaintiff to respond to Defendants' Friday-afternoon mootness letter brief and contrary to the Discovery Master's own August 5 statement that the mootness question required "briefing from both sides." *Id.* at 7.

Although Plaintiff still disagreed with the Discovery Master's interpretation of Order 22, Plaintiff complied promptly in order to avoid threatened sanctions. On August 18, 2026, Plaintiff produced all 1,549 documents and submitted a letter brief addressing Defendants' mootness arguments. Ex. 10, Pl.'s Aug. 18, 2026 Ltr. Reply Brief. Plaintiff's mootness argument was straightforward: Order No. 26 independently directed production of all 1,749 documents

"regardless of whether Mr. Kidney or an attorney is on the communication," Order No. 26 at 7, which necessarily encompassed the 1,549 documents that were the subject of the Motion to Compel, Ex. 10. The documents were being produced; the Motion to Compel had nothing left to accomplish and was moot.

**IV. Order No. 27**

On August 25, 2026, the Discovery Master issued Order 27, granting Defendants' Motion to Compel and recommending sanctions against Plaintiff. *See* Order No. 27. The Order's findings and characterizations are striking: Order 27 states that Plaintiff's conduct was "emblematic of the Plaintiff's approach to candor in its discovery obligations." *Id.* at 8. It characterizes Plaintiff's mootness argument as "below the standards of the Court." *Id.* It describes Plaintiff's reliance on the District Court's stay of Order No. 26 as a "lame pretense" and "rather pathetic." *Id.* It finds that "there was literally not even a pathetic excuse uttered for the entire time from June 26 until August 6" for withholding the 1,549 documents. *Id.* at 6.

Each of these *ad hominem* characterizations conflicts with the record. Plaintiff disclosed his position in the July 27 Declaration, the July 28 email to the Discovery Master, the July 31 Opposition, and the August 4 Surreply, all of which explained Plaintiff's textual argument under Order 22 and confirmed the exact documents being withheld. The Discovery Master's statement that there was "not even a pathetic excuse uttered" for withholding the documents ignores these submissions entirely. *Id.* And the assertion that depositions were taken without access to the 1,549 documents is also incorrect: no depositions have been taken in this case since Order No. 22 was entered on May 14, 2026. Jaffe Decl. ¶ 12.

Order 27 recommends that the District Court award Defendants their "reasonable expenses, including attorney's fees," incurred in connection with the Motion to Compel. Order No. 27 at 8. The Order does not acknowledge Plaintiff's July 23 compromise offer, which Defendants rejected

before filing the Motion to Compel. It does not address Plaintiff's textual argument under Section IV(B)(2) on the merits. And it does not explain why Plaintiff's reliance on a stay granted by the District Court itself constitutes sanctionable conduct. It assumes (incorrectly) that "depositions [were] already taken without the benefit of the ability to question witnesses about the 1,549 documents." *Id.* at 1. It recommends that Plaintiff "be ordered to pay for all costs and attorneys' fees incurred by Defendants in their repeated efforts to obtain compliance with the Discovery Master's Order No. 22; and the Court's order upholding Order No. 22; the Motion to Compel; the claims of mootness pertaining to CREF document production; as well as the future costs and attorneys' fees of any deposition that must be re-taken to elicit testimony about any of the 1,549 documents." *Id.* at 9. As explained above, no such depositions were taken since before Order 22 was issued in mid-May. Jaffe Decl. ¶ 12.

## ARGUMENT

### I. Legal Standard

A district court reviews a discovery master's order under the "clearly erroneous or contrary to law" standard. Fed. R. Civ. P. 53(f)(3)-(4); 28 U.S.C. § 636(b)(1)(A). A finding is "clearly erroneous" when, although there is evidence to support it, the reviewing court is left with the "definite and firm conviction that a mistake has been made." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985). An order is "contrary to law" if it fails to apply or misapplies relevant statutes, case law, or rules of procedure. *Haines v. Liggett Grp. Inc.*, 975 F.2d 81, 91 (3d Cir. 1992). This Court owes no deference to the Discovery Master's legal conclusions and reviews them de novo. *Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*, 572 U.S. 559, 563 (2014).

Rule 37(b)(2) authorizes sanctions for failure to obey a discovery order. But the rule presupposes that a party has actually violated a specific court order, not that it interpreted the order differently than the tribunal ultimately concludes was correct. *See R.W. Int'l Corp. v. Welch Foods,*

*Inc.*, 937 F.2d 11, 20 (1st Cir. 1991) (reversing dismissal where "no specific discovery order was in effect and thereafter violated by the plaintiffs"). "Any ambiguities or uncertainties in [a] [discovery] order must be read in a light favorable to the person charged with contempt." *Sunbeam Corp. v. Black & Decker (U.S.) Inc.*, 151 F.R.D. 11, 15 (D.R.I. 1993). Rule 37(b)(2)(C) requires payment of reasonable expenses "caused by the failure" to obey unless "the failure was substantially justified" or "other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C). A position is "substantially justified" if it has a "reasonable basis in law and fact." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). "[I]mposing sanctions is not 'just'" when based on an ambiguous discovery order. *See, e.g.*, *Pascale v. G. D. Searle & Co.*, 90 F.R.D. 55, 59 (D.R.I. 1981).

Rule 37(a)(5)(A) provides that if a motion to compel is granted, the court "must" order the losing party to pay the movant's reasonable expenses, including attorneys' fees, "unless" the nondisclosure was "substantially justified" or "other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(A). Courts must consider "all the circumstances" before imposing fee-shifting sanctions, and the burden is on the losing party to demonstrate substantial justification. *Devaney v. Cont'l Am. Ins. Co.*, 989 F.2d 1154, 1163 (11th Cir. 1993). Critically, the fee-shifting provision is subject to express exceptions that apply here.

## II. The Order should be vacated because it is based on incorrect facts.

Order 27 rests on a factual narrative that is contrary to the contemporaneous record. The Order's core finding that Plaintiff concealed his withholding of 1,549 documents and "defied" Order 22 cannot be reconciled with five separate written submissions Plaintiff made to the Discovery Master between July 27 and August 6, 2026. Where a sanctions order proceeds from erroneous factual premises, it cannot stand. *See In re Williams*, 215 B.R. 289, 296 (D.R.I. 1997) (vacating sanction where record did not support bankruptcy court's findings); *see also Anderson*,

470 U.S. at 573 (finding is "clearly erroneous" when reviewing court has "definite and firm conviction that a mistake has been made"). As the First Circuit has recognized, sanctions under Rule 37(b)(2) require a showing that a party actually violated a specific order, not that it disagreed with an opposing party's interpretation. *R.W. Int'l Corp.*, 937 F.2d at 19.

Order 27 also imposes sanctions based on the incorrect assumption that "depositions [were] already taken without the benefit of the ability to question witnesses about the 1,549 documents." Order No. 27 at 1. This is demonstrably wrong. No depositions have been taken in this case since Order 22 was entered on May 14, 2026. Jaffe Decl. ¶ 12. Order 27 thus imposes sanctions based on prejudice to Defendants that did not occur. A sanctions order that relies on nonexistent facts is "contrary to law" and cannot stand. *See Anderson*, 470 U.S. at 573.

**III. Discretionary sanctions are not warranted.**

Even setting aside the factual errors, Order 27's discretionary sanctions recommendation fails because the undisputed record shows good-faith conduct, not willful disobedience. Sanctions are inappropriate where a party's noncompliance "was due to inability fostered neither combatively nor deliberately." *Societe Internationale Pour Participations Industrielles et Commerciales, S.A. v. Rogers*, 357 U.S. 197, 212 (1958). More specifically, sanctions are not warranted where a party's conduct reflects a reasonable interpretation of an ambiguous order. *See Sunbeam Corp.*, 151 F.R.D. at 16 (recommending denial of sanctions where party's "overly narrow interpretation" of deposition notice was "not totally without basis").

Order 27 dismisses Plaintiff's textual argument as "utterly frivolous." Order No. 27 at 3. But the Order never explains why. Plaintiff withheld the 1,549 documents based on the plain language of Section IV(B)(2). Order No. 22 at 38. Whether this reading was ultimately determined to be correct is a separate question from whether it was advanced in bad faith. Defendants never addressed the textual argument in their briefing; Order 27 does not engage with it on the merits.

At a minimum, Plaintiff's interpretation was "not totally without basis." *See Sunbeam*, 151 F.R.D. at 16. An argument is not "frivolous" merely because it is rejected, especially when the opposing party declines to address it and the tribunal declines to explain why it fails.

**IV. Mandatory sanctions are not warranted because imposition would be unjust.**

Both Rule 37(b)(2)(C) and Rule 37(a)(5)(A)'s fee-shifting provisions include two express exceptions: fees are not required where the nondisclosure was "substantially justified" or where "other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(A)(i)–(ii), (b)(2)(C). Both exceptions apply here, and either alone is sufficient to preclude an award.

A position is "substantially justified" if it has a "reasonable basis in law and fact." *Pierce*, 487 U.S. at 565. Order No. 27 characterizes Plaintiff's textual argument as lacking any basis, but the record shows otherwise. Plaintiff's withholding of the 1,549 documents was grounded in the express text of Order 22, which directed production "when no Todd & Weld attorney is part of the email." Order No. 22 at 38. All 1,549 documents included a Todd & Weld attorney. Order 22 separately held that "the CREF employees' presence on the chain does not destroy that privilege." *Id.* at 36. Plaintiff disclosed this textual basis to the Discovery Master in multiple sworn submissions. Ex. 1, July 27 Decl. ¶¶ 4–6, 22–25; Aug. 11 Decl. ¶¶ 18, 22. Tellingly, Defendants never addressed the textual argument in their briefing. A position that rests on the plain language of a court order, and that the opposing party declines to address, has a "reasonable basis in law." Order 27's conclusory label of "frivolous" cannot transform a text-based argument into one lacking substantial justification.

Courts must consider "all the circumstances" before imposing fee-shifting sanctions, and several circumstances here render an award unjust. ***First***, Defendants rejected Plaintiff's compromise offer before filing the Motion to Compel, which Order 27 does not acknowledge. A fee award is unjust where the prevailing party refused a reasonable settlement that would have

obviated the need for motion practice. *See* Fed. R. Civ. P. 37(a)(5)(A)(i). Any fees Defendants incurred after rejecting that offer were caused by their own litigation choice, not by Plaintiff's conduct. ***Second***, Order 27 relies on prejudice that did not occur: it states that "depositions [were] already taken without the benefit of the ability to question witnesses about the 1,549 documents," Order No. 27 at 1, but no depositions have been taken since Order No. 22 was entered on May 14, 2026, Jaffe Decl. ¶ 12. ***Third***, the August 15 Saturday-night sanctions directive came without any opportunity for Plaintiff to respond to Defendants' Friday-afternoon mootness letter. Ex. 9 at 1. Imposing fees under these circumstances would be fundamentally unjust.

## V. The sanctions imposed are not tied to any harm to Defendants.

Even if sanctions were otherwise warranted, the fee-shifting sanction Order 27 recommends bears no rational connection to any harm Defendants suffered. Discovery sanctions serve two purposes: compensating the aggrieved party for actual expenses caused by the violation, and deterring future misconduct. *See Roadway Express, Inc. v. Piper*, 447 U.S. 752, 763–64.

Here, Defendants suffered no prejudice. Order No. 27's assertion that "depositions [were] already taken without the benefit of the ability to question witnesses about the 1,549 documents" is incorrect. No depositions have been taken since Order 22 was entered on May 14, 2026. Jaffe Decl. ¶ 12. Defendants cannot show that they were prejudiced by Plaintiff's withholding during the period from July 20 to August 18, 2026, because no discovery events that would have used the 1,549 documents occurred.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court vacate Order No. 27 and deny Defendants' request for sanctions.

Respectfully submitted,

**MARK KRONFELD, AS TRUSTEE OF THE SHC CREDITOR LITIGATION TRUST,**

By his Attorneys,

*<u>/s/ Yonah Jaffe</u>*
Howard M. Cooper (BBO No. 543842)
Seth J. Robbins (BBO No. 655146)
Josh L. Launer (BBO No. 673661)
**TODD & WELD LLP**
One Federal Street, 27th Floor
Boston, MA 02110
Tel: (617) 720-2626
hcooper@toddweld.com
srobbins@toddweld.com
jlauner@toddweld.com

William T. Reid IV (*pro hac vice*)
Jeremy Wells (*pro hac vice*)
Barbara Whiten Balliette (*pro hac vice*)
Julia P. Gokhberg (*pro hac vice*)
**REID COLLINS & TSAI LLP**
1301 S. Capital of Texas Hwy.
Building C, Suite 300
Austin, Texas 78746
Tel: (512) 647-6100
wreid@reidcollins.com
jwells@reidcollins.com
bballiette@reidcollins.com
jgokhberg@reidcollins.com

Jeffrey E. Gross (*pro hac vice*)
Yonah Jaffe (*pro hac vice*)
**REID COLLINS & TSAI LLP**
420 Lexington Avenue, Suite 2515
New York, NY 10170
Tel.: (212) 344-5200
jgross@reidcollins.com
yjaffe@reidcollins.com

Dated: September 1, 2026

**CERTIFICATE OF SERVICE**

I, Yonah Jaffe, Esq., hereby certify that the foregoing was filed through the Court's CM/ECF system on September 1, 2026, and will therefore be sent electronically to all counsel of record who have appeared in this matter as identified on the Notice of Electronic Filing (NEF).

*/s/ Yonah Jaffe*
Yonah Jaffe