UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MARK KRONFELD, AS TRUSTEE OF THE SHC CREDITOR TRUST,<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN GUARANTEE AND LIABILITY INSURANCE COMPANY and ZURICH AMERICAN INSURANCE COMPANY,<br><br>Defendants. | Civil Action No. 1:21-cv-11902 |

**DECLARATION OF JOSH L. LAUNER IN SUPPORT OF PLAINTIFF'S OBJECTION TO DISCOVERY MASTER ORDER NO. 27 (ECF NO. 295)**

I, Josh L. Launer, do hereby declare and state as follows:

1. I am an attorney at Todd & Weld LLP, and I represent the Plaintiff, Mark Kronfeld, as Trustee of the SHC Creditor Trust ("Plaintiff") in this case.

2. I have personal knowledge of the facts stated herein and make this declaration in support of Plaintiff's Objection to Discovery Master Order No. 27 (ECF No. 295) (the "Objection").

3. Prior to the Discovery Master's appointment on July 18, 2025 [ECF No. 149], Plaintiff produced 24,506 documents from five custodians in nine production volumes from April 9, 2025, to June 6, 2025. This is more documents than Defendants have produced in the entire case.

4. Hearings before the Discovery Master concerning document custodians and search terms were held on August 12 and 19, 2025. On Tuesday, September 9, 2025, the Discovery

Master issued Discovery Master Order No. 1 [ECF No. 159], which drastically expanded the scope of discovery.

5. Prior to the issuance of Order No. 1, Plaintiff produced 335 more documents between August 8, 2025, and September 2, 2025, including Steward Health Care System LLC's ("Steward") consolidated financial statements and audited financial statements going back to 2015.

6. Order No. 1 compelled Plaintiff to search the email files of eight additional custodians, bringing the total to 13, using 31 complex search terms. Each search term was to be used for different custodians and over varying dates ranges, some going as far back January 1, 2015, more than five years before the June 28, 2020, storm that caused catastrophic flooding at Norwood Hospital.

7. Order No. 1 required Plaintiff to produce to the Discovery Master the document review protocol given to the contract attorney documents review team. Plaintiff submitted his detailed 21-page protocol *in camera* on September 15 that, among many other things, explained the role of the CREF employees and potentially privilege documents. The Discovery Master never took issue with anything in Plaintiff's protocol, let alone ever commented on it in any fashion.

8. Order No. 1 also required Plaintiff to make productions every Friday and complete productions by October 31, 2025, all before the Discovery Master knew the volume of documents that would need to be reviewed—though Plaintiff had informed the Discovery Master in submissions and during the August hearings that it could be as many as one million documents.

9. Ultimately, because of Order No. 1, Plaintiff had to review over 600,000 documents, totaling millions of pages, in less than two months' time.

10. Plaintiff did not wait for Order No. 1 before making his next substantial production. On September 4, 2025, Plaintiff produced 7,561 responsive documents identified through search

parameters that Plaintiff anticipated would be included in Order No. 1 based on the parties' submissions to the Discovery Master.

11. Thereafter, Plaintiff's rolling Friday productions began on September 12, 2025. Between September 12, 2025, and November 1, 2025, Plaintiff produced 329,990 documents over 12 production volumes.

12. Of these, 191,232 were non-substantive calendar invites that were arguably responsive to Defendants' document requests, which Plaintiff produced in a single production volume. Calendar invites that included text and/or attached a document were *not* included in this universe.

13. After removing these non-substantive calendar invites from production statistics, Plaintiff produced 146,891 documents in just 50 days:

| Date | Number of Documents |
|---|---|
| 09/12/2025 | 4,961 |
| 09/19/2025 | 10,630 |
| 09/26/2025 | 11,555 |
| 10/03/2025 | 9,785 |
| 10/10/2025 | 43,511 |
| 10/17/2025 | 21 |
| 10/17/2025 | 16,276 |
| 10/24/2025 | 694 |
| 10/24/2025 | 19,973 |
| 10/31/2025 | 7,078 |
| 11/01/2025 | 14,274 |

14. The production on Saturday, November 1, 2025, completed Plaintiff's document productions pursuant to Order No. 1 except for those that required (i) redaction of Protected Health Information or Protected Identification Information and/or (ii) further assessment for potential protection from disclosure by the attorney-client privilege, work product doctrine, common interest privilege, and/or any other privileges or immunities.

15. Thousands, if not tens of thousands, of the custodial emails either included some derivation of attorney-client privilege or similar language in the subject line and/or included at least one in-house Steward attorney. Plaintiff explained during Discovery Master hearings and in numerous filings that he did not use these as rules governing privilege determinations—simply because the author of an email stated it was privileged and/or included in-house counsel does not make a document actually privileged.

16. Due to these factors and the breadth of the scope of document discovery resulting from Order No. 1, Plaintiff's privilege review consisted of tens of thousands of documents.

17. On December 15, 2025, Plaintiff produced 13,584 documents that contained PHI and/or PII redactions or were downgraded from the universe of potentially privileged documents. Plaintiff made two further downgrade productions on December 23, 2025 (6,330 documents) and January 9, 2026 (21,057 documents).

18. Contrary to how it has been represented, Plaintiff's other productions in December 2025 and January 2026 were not in response to Order No. 1 but rather to direct requests by Defendants that Plaintiff search additional document repositories or for specific categories of documents.

19. On January 12, 2026, the Discovery Master issued Discovery Master Order No. 12 [ECF No. 179] which required the parties to submit all discovery disputes by January 14, 2026, and set a hearing for January 22, 2026.

20. On January 14, 2026, the parties submitted their respective discovery disputes. Defendants' submission included, among other things, Plaintiff's assertion of privilege over certain communications with their consultants. Plaintiff submitted a response two days later on January 16, 2026.

21. On January 18, 2026, the Discovery Master instructed the parties to submit any disputes concerning assertions of privilege and privilege logs by February 4, 2026.

22. On January 21, 2026, Plaintiff served his Privilege Log, which contained 9,666 entries; however, Plaintiff continued to review withheld documents to ensure such withholding was appropriate.

23. Plaintiff and Defendants served their respective privilege waiver letter briefs on February 4, 2026. Defendants' submission was less than 12 pages. Plaintiff's submission was 3 pages. Neither party submitted any documents for *in camera* review and the Discovery Master never asked that they do so until issuing Discovery Master Order No. 22 [ECF No. 224] more than three months later.

24. On February 8, 2026, the Discovery Master issued Discovery Master Order No. 14 [ECF No. 186]. Order No. 14 required the parties to provide, among other things, detailed information regarding their respective third-party consultants, privilege logs for each consultant, the legal basis for withholding documents for a particular consultant, and a compendium of case law the party deemed applicable to their assertions of privilege and/or work product.

25. "In order to expedite the resolution of these [privilege disputes] in a timely manner that the case may proceed according to schedule," Order No. 14 required that the parties submit this voluminous information within 72 hours by February 11.

26. Given the number of consultants and nearly 10,000 entries on his privilege log, Plaintiff asked the Discovery Master for two additional days in which to provide the requested voluminous information.

27. Instead, the Discovery Master granted the Plaintiff only one additional day because the Discovery Master's "ability to get to the bottom of this issue is crucial to completing discovery

without delay." However, more than three months elapsed before the Discovery Master ruled on the privilege disputes.

28. On February 12, 2026, Plaintiff served Defendants with his Amended Privilege Log that reduced the number of entries from 9,666 to 8,772. Plaintiff produced 277 documents in their entirety and 617 with redactions.

29. Plaintiff submitted the materials required by Order No. 14 to the Discovery Master that same day, including the Amended Privilege Log with individual logs containing communications involving each consultant.

30. On February 17, 2026, Plaintiff submitted a response to Defendants' February 4, 2026, Privilege Waiver Motion. Defendants never submitted a response to Plaintiff's Motion.

31. While the parties were compiling the materials for their respective responses to Order No. 14, there also was a dispute as to the case schedule.

32. Ultimately, the parties agreed that fact discovery should be extended to April 24, 2026, but disagreed over expert disclosures. Plaintiff proposed that he submit his initial expert reports on April 27, 2026, three days after the close of fact discovery. Defendants' proposal required Plaintiff to produce his initial expert reports on April 1, 2026, three weeks before fact discovery was to close.

33. The Discovery Master agreed with Defendants and issued Discovery Master Order No. 17 [ECF No. 198] on February 20, 2026. Order No. 17 set April 1, 2026, as the deadline for Plaintiff to produce his initial expert reports and April 20, 2026, as the deadline for fact discovery.

34. Approximately three more months elapsed before the Discovery Master finally ruled on the privilege disputes issuing Discovery Master Order No. 22 [ECF No. 224] on May 14,

2026—six weeks after Plaintiff produced his expert reports as required by the Discovery Master in Order No. 17.

35. On March 5, 2026, the Discovery Master issued Discovery Master Order No. 19 [ECF No. 206] which concerned Plaintiff's clawback of 44 documents produced by Consigli Construction on grounds of privilege that Plaintiff had identified in preparing the Rule 30(b)(6) deposition of Consigli.

36. On Saturday, March 7, 2026, the Discovery Master emailed the parties requesting that they provide by 9:00 am the following morning information regarding the Consigli deposition, which proceeded on March 5, and much of the same information concerning the parties' respective consultants and privilege assertions that the Discovery Master already received the preceding month in response to Order No. 14.

37. Plaintiff responded the same day by letter reminding the Discovery Master that the same information was requested in Order No. 14, which Plaintiff provided twenty-three days earlier in his February 12, 2026, submission, and highlighted the need for prompt rulings on the privilege issues.

38. More than two months elapsed before the Discovery Master ruled on those privilege disputes in Order No. 22.

39. Plaintiff served Defendants his Second Amended Privilege Log ("Second Amended Log"), reduced to 7,690 entries, on March 20, 2026. Since their Amended Privilege Log Plaintiff produced another 637 documents in their entirety and 445 with redactions. Neither Plaintiff's Amended Log nor Second Amended Privilege Log contained a single new entry. Indeed, Plaintiff has not asserted privilege and/or work product protection over any document that was not included on his original privilege log served January 21, 2026.

40. On Wednesday, April 1, 2026, Plaintiff produced his initial reports from six experts as required by Order No. 17. To do so, Plaintiff had to take most depositions that he noticed despite numerous outstanding discovery disputes before the Discovery Master including regarding Defendants' answers to interrogatories and their responses to Plaintiff's F.R.C.P. Rule 30(b)(6) notices.

41. Two days later, on Friday, April 3, 2026, the Court allowed Defendants' motion for leave to amend their answer and assert a new affirmative defense, which Defendants filed on March 6, 2026, and permitted limited additional discovery related to this affirmative defense [ECF No. 220].

42. One hour later, the Discovery Master issued Discovery Master Order No. 20 [ECF No. 221]. Order No. 20 repeated the Discovery Master's belief that Plaintiff had made "unduly late" document productions and service of his privilege logs and stated that the Discovery Master was working diligently to address disputes regarding assertions privilege. It did not acknowledge that the privilege disputes had been pending before the Discovery Master for at least two months.

43. Order No. 20 required the parties to meet and confer to see if they could agree on an amended case schedule, which would not be further extended absent "extraordinary circumstances."

44. On Monday, April 6, 2026, Plaintiff emailed the Discovery Master asking when a "decision on the parties' respective privilege motions will be forthcoming [as] [t]his will factor into our ability to assess what a reasonable schedule might look like." A representative of the Discovery Master responded later that day that "the goal will be to have a decision on the privilege motions around April 30, give or take a week."

45. In light of the Discovery Master's statement that the decision on the parties' privilege motions would be on or around April 30, 2026, and anticipating that objections to the forthcoming ruling would be filed by one if not both parties, the parties submitted a joint proposed schedule on April 7, 2026, that included a fact discovery deadline of September 23, 2026.

46. On April 13, 2026, the Discovery Master asked the parties to respond to seven questions concerning the privilege disputes. The parties provided a joint response on April 17. Nearly one more month passed before the Discovery Master ruled on the privilege motions in Order No. 22.

47. While Plaintiff produced additional documents in February, March, and April 2026, aside from those downgraded from the privilege log none were produced pursuant to Order No. 1. Rather, these were productions of documents in response to further ongoing requests from Defendants and the custodial documents of three entirely new custodians Plaintiff was ordered to produce without any substantive review pursuant to Discovery Master Order No. 15 [ECF No. 187], dated February 13, 2026.

48. On May 29, 2026, Plaintiff filed a partial Objection to Order No. 22 [ECF No. 237] and produced documents previously withheld as privileged and/or on grounds of work product pursuant to those sections of Order No. 22 to which he was not objecting.

49. The Discovery Master left a number of privilege issues unresolved in Order No. 22 pending *in camera* review of select documents for each of Plaintiff's consultants. This was the first time that the Discovery Master asked to review any documents over which Plaintiff asserted privilege *in camera*.

50. On May 31, 2026, Plaintiff provided the Discovery Master with 201 documents *in camera* selected by Defendants, Plaintiff, and the Discovery Master directly pursuant to the express parameters set forth by the Discovery Master in Order No. 22.

51. Three months have passed and as of today, the Discovery Master has not completed *in camera* review of these documents. Based upon recent correspondence from the Discovery Master, there are 95 documents left to be reviewed.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: September 1, 2026

Josh L. Launer, Esq. (BBO No. 673661)