**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| MARK KRONFELD, AS TRUSTEE OF THE SHC CREDITOR LITIGATION TRUST,<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN GUARANTEE AND LIABILITY INSURANCE COMPANY and ZURICH AMERICAN INSURANCE COMPANY,<br><br>Defendants. | Civil Action No. 1:21-cv-11902 – PBS |

**PLAINTIFF'S OBJECTION TO THE MAGISTRATE'S ORDER ON PLAINTIFF'S OBJECTION TO DISCOVERY MASTER ORDER NO. 25 (ECF NO. 296)**

Plaintiff objects to United States Magistrate Judge M. Page Kelley's Order (ECF No. 296) (the "**Magistrate Order**"), which adopted Discovery Master Order No. 25 (ECF No. 270) ("**Order No. 25**") and overruled Plaintiff's Objection to that Order (ECF No. 271). Plaintiff continues to seek clawback of various iterations of three emails (the "**Three Emails**") to safeguard the attorney-client privilege and work product protection over them. *See* Ex. 1, Dkt. 271-1.[1]

Plaintiff recognizes that the Court has devoted substantial resources to this case. But Plaintiff cannot risk forfeiting privilege through acquiescence; he must preserve the record and object to an order that denies him the opportunity to claw back privileged documents. The Three Emails are a small fraction of the 377 documents Plaintiff produced, subject to clawback, in late May 2026 under Discovery Master Order No. 22 (ECF No. 224). Plaintiff seeks relief only as to these three emails because they reveal counsel's litigation strategy and mental impressions. For

[1] The exhibits cited herein refer to the exhibits attached to Plaintiff's Objection to Discovery Master Order No. 25 (ECF No. 271), which were filed on the docket on July 14, 2026.

the reasons below, the Magistrate Order should be set aside or modified so that Plaintiff may protect his privilege over the Three Emails.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Discovery in this case began in January 2025. Since then, the parties have engaged in extensive disputes over privilege claims involving third-party communications. On May 14, 2026, the Discovery Master issued Order No. 22 (ECF No. 224), a 39-page ruling addressing privilege disputes concerning communications with thirteen third-party consultants. Order No. 22 required certain documents to be produced subject to clawback, including a category of 377 documents that were produced on May 29, 2026.

The Three Emails at issue in this Objection are a subset of the 377 documents produced pursuant to Order No. 22. The Three Emails date from July 2021, after a failed mediation between MPT and its insurer Zurich and less than three months before Zurich filed suit against MPT. On June 4, 2026, Plaintiff notified Defendants that he was clawing back the first of the Three Emails; on June 10, 2026, Plaintiff expanded the clawback to include the two follow-up emails. The Discovery Master issued Order No. 25 on July 7, 2026, denying Plaintiff's clawback request. Plaintiff timely objected to Order No. 25 on July 14, 2026.

On August 28, 2026, the Magistrate Judge issued the Magistrate Order, which adopted Order No. 25 in its entirety and overruled Plaintiff's Objection. The Magistrate Order found that (1) the Three Emails were not protected by the work product doctrine, (2) any attorney-client privilege had been waived through disclosure to third parties, (3) any work product protection was likewise waived, and (4) Plaintiff failed to meet his burden to establish privilege. Plaintiff timely files this Objection to the Magistrate Order.

## II. STANDARD OF REVIEW

The Magistrate Order is subject to review under Federal Rule of Civil Procedure 72(a), which provides that the district judge must "modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A). A ruling is "clearly erroneous" when, "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made." *Cobell v. Norton*, 224 F.R.D. 266, 272 (D.D.C. 2004). A ruling is "contrary to law" when it "fails to apply or misapplies relevant statutes, case law, or rules of procedure." *Id.* For questions of law, "review is plenary under the 'contrary to law' branch of the Rule 72(a) standard." *PowerShare, Inc. v. Syntel, Inc.*, 597 F.3d 10, 15 (1st Cir. 2010) (collecting authority).

Here, where a privilege ruling "largely turns on a legal question" related to waiver, the appropriate standard of review is de novo. *Lluberes v. Uncommon Prods., LLC*, 663 F.3d 6, 22 (1st Cir. 2011); *see, e.g.*, *In re Keeper of Records (Grand Jury Subpoena Addressed to XYZ Corp.)*, 348 F.3d 16, 23 (1st Cir. 2003) (concluding that district court "erred as a matter of law" in its determinations on waiver).

## III. ARGUMENT

### A. The Magistrate Order Erroneously Adopted the Discovery Master's Ruling That the Three Emails Are Not Protected Work Product.

The work product doctrine "encompasses documents that are prepared in anticipation of litigation by a party's representative, including a party's consultant or agent." *Bryan Corp. v. Chemwerth, Inc.*, 296 F.R.D. 31, 38 (D. Mass. 2013) (citing Fed. R. Civ. P. 26(b)(3)). The applicable standard—known as the "because of" test—asks "whether in light of the nature of the document and the factual situation in the particular case the document can fairly be said to have been prepared or obtained because of the prospect of litigation." *Colonial Gas Co. v. Aetna Cas.*

*& Sur. Co.*, 144 F.R.D. 600, 604–05 (D. Mass. 1992). The "because of" standard is "intended to sweep in a broader universe of documents than simply those 'prepared primarily or exclusively to assist in litigation.'" *Doe v. Lahey Health Sys., Inc.*, 2020 WL 13561720, at *3 (D. Mass. Aug. 12, 2020); *see also Att'y Gen. v. Facebook, Inc.*, 164 N.E.3d 873, 889 (Mass. 2021) ("Anticipation of litigation does not have to be the primary purpose or motivation.").

The Three Emails are protected work product because they were created "because of" the prospect of litigation. Chris Kidney's July 14, 2021 email expressly references "ongoing legal efforts related to the MPT claim." By that date, mediation had failed and litigation was imminent: Steward had already served a written demand notifying its insurer that it intended to bring a bad faith claim. The email's references to "causation issues" and "how to prove the loss" reflect counsel's mental impressions and strategy—classic opinion work product. *Fleet Nat. Bank v. Tonneson & Co.*, 150 F.R.D. 10, 15 (D. Mass. 1993); *see also Kay v. Town of Concord*, 105 Mass. App. Ct. 366, 377 (2025) (work product doctrine applies to communications revealing "counsel's mental impressions" and "what counsel thought was important").

### 1. The Magistrate Order errs because it adopts Order No. 25's denial of work product protection to the Three Emails.

Order No. 25 denied work product protection to the July 2021 emails on several erroneous bases, each of which the Magistrate Order adopts.

***First***, the Magistrate Order incorrectly endorses Order No. 25's finding that the Three Emails could not have been written in anticipation of litigation. The Magistrate Order states that after the failed June 2021 mediation, "the parties returned with their full attention to the insurance claim adjustment process and the assessment of the insurance loss." Magistrate Order at 15 (quoting Order No. 25 at 7). On the contrary, the parties' inability to resolve their nine-figure, high-profile dispute at that mediation made litigation over the ongoing claim submission ***more likely***,

not less. Zurich sued MPT in early October 2021, less than three months after the Three Emails. Plaintiff's Original Complaint for Declaratory Judgment, *Zurich Am. Ins. Co. v. Med. Prop. Tr., Inc.*, No. 21-11621 (D. Mass. Oct. 4, 2021). Steward filed its own lawsuit about a month later.

The Magistrate Order also fails to address a direct conflict with Order No. 22 (ECF No. 224), which held that work-product protection involving Todd & Weld began on February 5, 2021—the date of counsel's demand letter. Order No. 22 at 37 ("Work product attaches when a communication is in anticipation of litigation, which the Discovery Master has ruled starts on the date that Todd & Weld sent the '93A letter' to the Defendants, even though the actual litigation started much later than that date."). The theory that a failed mediation dispelled a reasonable anticipation of litigation that had already attached months earlier cannot be squared with that holding.

***Second***, the Magistrate Order incorrectly concludes that the Three Emails serve only the business purpose of preparing an insurance claim. Order No. 25 at 8. They were prepared amid an ongoing and contentious process: Zurich had flatly denied MPT's claim, and mediation had just failed. The July 14 Email expressly refers to furthering the "next steps with the ongoing legal efforts related to the MPT claim," an effort that included preparing for the inevitable litigation. Analyzing a submitted claim is ordinary business for an insurer. For Steward, however, the loss was a one-off catastrophic event that was on a direct course to litigation. Finalizing the claim submission was not part of Steward's "ordinary course of business." Rather, it was the next step toward litigation in the wake of a bad faith letter.

***Third***, the Magistrate Order adopts Order No. 25's reasoning that the Three Emails are not work product because the *responses* to them are not work product. Order No. 25 at 8 ("The responses received from Consigli and other third parties prepared in response to the July 14 Email

(and all of the Three Emails) further indicate that the request was not created 'because of' litigation."). Because the consultants responded with budgets and schedules that "would have been prepared in the same manner 'irrespective of the litigation,'" Order No. 25 concluded—without citing any authority—that the requests themselves were unprotected. *Id.* That is not the law. Courts protect the privileged side of a conversation even when the other side is discoverable. *See Frank v. L.L. Bean, Inc.*, No. CIV. 04-221-P-S, 2005 WL 2177062, at *1 (D. Me. Sept. 8, 2005) (permitting redaction of attorney's questions in an interview although the answers were discoverable). The Three Emails did more than request budgets and schedules: they revealed counsel's mental impressions and litigation strategy. Adopting Order No. 25's reasoning abrogates the heightened protection for opinion work product.

***Fourth***, the Magistrate Order adopts Order No. 25's reasoning that work product protection does not apply because in-house counsel, Ms. Hibble, was the only lawyer copied. Order No. 25 at 8. Plaintiff agrees that copying a lawyer does not by itself make a document privileged.[2] But the converse does not follow: a document does not lose work product protection merely because few lawyers appear on it. The doctrine "protects writings made by a party, even without any involvement by counsel." *Szulik v. State St. Bank & Tr. Co.*, 2014 WL 3942934, at *3 (D. Mass. Aug. 11, 2014); *see also Bryan Corp.*, 296 F.R.D. at 38; *Blattman v. Scaramellino*, 891 F.3d 1, 5 (1st Cir. 2018). What matters here is the attorney strategy and mental impressions the emails convey—not the identity of the recipients.

[2] Back in July 2020, less than a week after the Loss, Chris Kidney instructed others to label Norwood communications as protected by the attorney-client privilege. *See* Ex. 2. Plaintiff produced or withheld documents based on their *contents*, **not** based on that *instruction*. Regardless, the July 2020 email has no bearing on the privilege analysis for documents written a year later—after Zurich denied MPT's claim, after Steward sent a 93A letter, and after the failed mediation.

***Lastly***, the Magistrate Order misapplies the "because of" standard. The question is whether Steward, *in its ordinary business operations*, would have created the Three Emails in essentially the same form regardless of whether litigation was anticipated. It would not have. Steward was in the business of running hospitals, not pursuing claims for catastrophic flood losses, and it would not have had a legal team with outside litigation counsel deeply involved in the claims process but for the imminent litigation. Emails about a legal team's goals and strategies are not ordinary-course documents. Plaintiff does not claim work product over the consultants' proposals and schedules—only over the attorney's views.

The First Circuit's en banc decision in *United States v. Textron Inc. & Subsidiaries*, 577 F.3d 21, 27 (1st Cir. 2009) confirms that the Three Emails are work product. In *Textron*, documents prepared to set tax reserves on financial statements served an ordinary business purpose, even though litigation was a remote possibility. Those documents were not work product because they would not be needed in litigation; the tax filings themselves mattered, not the rationale behind them. *Id.* Here, by contrast, Steward's loss claim is at the center of the litigation, and Steward had a contractual obligation to submit a proof of loss before it could sue for breach of contract. *See, e.g.*, Ex. 3 at § 6.13.01.08, Dkt. 271-3 (requiring proof-of-loss submission).

The sole case cited in Order No. 25 for this point, *Maine v. U.S. Dep't of the Interior*, 298 F.3d 60, 70 (1st Cir. 2002), is not to the contrary. There, the First Circuit denied work product protection for documents about the Department of the Interior's "emergency listing process" for endangered species, which was a core part of the ordinary business of government entities subject to the Endangered Species Act. 50 C.F.R. § 424.20. Steward, by contrast, had no analogous routine: it operated hospitals, and nothing in its ordinary operations called for assembling a nine-figure catastrophic flood loss claim, under the direction of outside litigation counsel, following a bad

faith demand letter and a failed mediation. *Maine* therefore confirms rather than undermines the work product claim here.

### 2. The Magistrate Order errs because Defendants did not meet their burden to establish substantial need.

Rule 26(b)(3) imposes a burden on the party seeking disclosure—here, Defendants—to establish a substantial need in order to overcome work product protection for non-opinion work product. Fed. R. Civ. P. 26(b)(3); *see Bryan Corp.*, 296 F.R.D. at 42. "Work product is generally discoverable if a party demonstrates that it has substantial need for the materials and cannot obtain, without undue hardship, their substantial equivalent by other means." *Doe*, 2020 WL 13561720, at *3 (citing Fed. R. Civ. P. 26(b)(3)(A)). "The substantial need inquiry requires a careful examination of whether non-disclosure will impair the truth-seeking function of discovery." *Id.* Courts in the First Circuit "distinguish between 'opinion' work product, which includes 'materials that contain the mental impressions, conclusions, opinions, or legal theories of an attorney,' and 'ordinary' work product, which includes everything else that is eligible for protection as work product, and accord greater protection to the former." *In re Grand Jury Subpoena*, 220 F.R.D. 130, 144 (D. Mass. 2004).

Order No. 25 correctly acknowledged that the bar to obtain opinion work product is much higher. Order No. 25 at 7 ("Discovery of opinion work product is subject to a higher standard than that of fact work product.") (citing *In re Grand Jury Subpoena*, 220 F.R.D. at 144). The Magistrate Order is nonetheless contrary to law, because it adopts both Order No. 25's use of the wrong substantial-need standard and its misapplication of the facts to the law.

***First,*** the Magistrate Order incorrectly determines that the Three Emails are not opinion work product because they "do not reflect attorney mental impressions, and would not be entitled to any higher standards" under the substantial need inquiry. Order No. 25 at 10. The Clawback

Documents contain opinion work product that reveals the MPT and Steward legal teams' mental impressions and thoughts on the information they believed was important and necessary for litigating the case. *See Kay*, 105 Mass. App. Ct. at 377 (holding that work product doctrine applies to an email that "reveals . . . counsel's mental impressions" and "shows what counsel thought was important, and what information would be necessary or useful for litigating the case").

In the Three Emails, Kidney recounts what "MPT Lawyers are looking for," including what he describes as "causation issues." He explains that the legal team "want[s] to prove the loss," conveys questions the "legal team asked" and for which they sought the consultants' input, states the legal team's specific "direction," lists "Task[s] for the team," and identifies "Next Steps" to implement counsel's directives. *See* Ex. 1; *see also Colonial Gas*, 144 F.R.D. at 606 (counsel's view of insurance coverage, after the insured received the insurer's reservation of rights, constitutes opinion work product). Kidney thus prepared these communications ***at the direction of MPT's and Steward's legal teams*** to "advance next steps" in their "ongoing legal efforts" just weeks after a failed mediation. Ex. 1; *see also* Order No. 22 at 11. The conclusory finding that the Three Emails are not opinion work product is contrary to law.

***Second***, even if the Three Emails were fact work product—they are not—the Magistrate Order misapplies the substantial need inquiry in finding that Defendants have a substantial need for them. Order No. 25 at 9. The Discovery Master found, without explanation, that the Three Emails "could not have been accessed any other way than through discovery." *Id.* But Defendants never showed that they could not learn the "timing of, accuracy of, and dollar amounts of the[] contractors' revised schedules and budgets" by other means, such as deposing the third-party consultants. *Id.*

Contrary to Order No. 25's finding, the Three Emails are ***not*** essential to any disputed issue. Defendants' new fraud defense concerns the decision whether to repair or rebuild the hospital, and the Three Emails do not bear directly on that defense. Nor are July 2021 emails essential to explaining a Consigli estimate revision that occurred much later, in 2022. *See* Order No. 25 at 9 (finding that Defendants "have sufficiently stated a substantial need to understand the bases for these estimates and why they changed so significantly"). Defendants can obtain the underlying facts from non-privileged sources, and they have already deposed Consigli about how its analysis changed over time. Ex. 4, Consigli Dep. at 185:12–20, 186:12–19, 187:8–18, Dkt. 271-4. The actual loss calculations, Consigli's expert analyses, and the contemporaneous business records underlying the claim submission are all available through ordinary discovery without piercing work product protection.

Given that the substantial need standard for opinion work product is even more rigorous than the standard for fact work product, Defendants cannot come close to meeting it.

**3. The Magistrate Order errs because Plaintiff did not waive work product protections over the Three Emails.**

The Magistrate Order erroneously concluded that, even if the Three Emails were work product, Plaintiff waived that protection "[b]y sending the email to thirteen people who were not protected by privilege, Mr. Kidney greatly increased the Defendant's chances of discovering them." Magistrate Order at 17. This finding is contrary to law.

The Magistrate Order conflates the standard for attorney-client privilege waiver with the standard for work product waiver. While attorney-client privilege may be waived by disclosure to third parties outside the privilege, work product protection has a different and narrower waiver standard. Under First Circuit law, work product waiver occurs only when a party discloses "material in a way inconsistent with keeping it from an adversary." *United States v. Massachusetts*

*Inst. of Tech.*, 129 F.3d 681, 687 (1st Cir. 1997). Work product waiver thus requires disclosure that "substantially increases the opportunity for potential adversaries to obtain the information." *Murphy v. Harmatz*, No. 13-cv-12839-MAP, 2016 WL 7104831, at *6 (D. Mass. Dec. 5, 2016).

The consultants who received the Three Emails were aligned with Steward in the insurance claim process—they were not adversaries and were not aligned with the Defendants. Disclosure to a party's own consultants and agents does not waive work product protection. *See Roy v. Volkswagen of Am., Inc.*, 2023 WL 7116755, at *5 (D. Mass. Oct. 27, 2023) (finding no waiver due to disclosure to company's own contracting partners); *Wade v. Touchdown Realty Grp., LLC*, No. 17-10400-PBS, 2018 WL 575848, at *4 (D. Mass. Jan. 26, 2018) (disclosure "to an individual aligned with the plaintiffs . . . did not constitute a waiver of the protection afforded by the work product doctrine"). Here, the consultants were Steward's own agents working on the insurance claim; they were not potential adversaries, and sharing work product with them did not increase the Defendants' ability to obtain the information.

**B. The Three Emails are Protected by the Attorney-Client Privilege.**

Under Massachusetts law, "the [attorney-client] privilege attaches not only to communications between the client and the client's attorney, but also to communications 'between representatives of the client' that are 'made for the purpose of obtaining . . . legal services.'" *Kay*, 105 Mass. App. Ct. at 371 (quoting Mass. G. Evid. § 502(b)(4)). "Where a communication does not include an attorney, the ultimate standard for determining whether it was made for the purpose of obtaining legal advice is ***whether the communication revealed legal advice from, or the intent to request legal advice from, an attorney in some fashion***." *Id.* at 373 (emphasis added). So long as the communication is "primarily or predominantly of a legal character, the privilege is not lost merely because it also dealt with matters that might more fairly be characterized as business

matters." *Rain v. Conn. Gen. Corp.*, 2022 WL 2294061, at *3 (D. Mass. June 23, 2022); *see also United States v. Windsor Cap. Corp.*, 524 F. Supp. 2d 74, 81 (D. Mass. 2007).

The Three Emails are protected by the attorney-client privilege because Kidney's communication conveys legal advice from counsel to the consultants who had to implement it. *Kay*, 105 Mass. App. Ct. at 371(under Massachusetts law, "the privilege attaches not only to communications between the client and the client's attorney, but also to communications 'between representatives of the client' that are 'made for the purpose of obtaining . . . legal services'"). The emails on what deliverables were needed to "advance next steps" in the ongoing legal efforts—a clear legal purpose. *Rain*, 2022 WL 2294061, at *3 (legal purpose need not be exclusive).

The Magistrate Order errs by adopting Order No. 25's characterization of Steward's engineering and architectural professionals as mere "vendors." Order No. 25 at 10. Those professionals acted as agents of the principals who retained them. Architects and engineers are licensed professionals subject to registration requirements, disciplinary oversight, and malpractice liability under Massachusetts law, and that recognized professional status supports treating them as agents rather than as mere independent contractors. Mass. Gen. Laws Ann. ch. 112, § 60G (architects); ch. 112, § 81P (engineers); *see also LeBlanc v. Logan Hilton Joint Venture*, 463 Mass. 316, 974 N.E.2d 34 (2012) (architects must exercise the skill and judgment expected of similar professionals). For purposes of the MPT claim, the architects and engineers on the Three Emails functioned as extensions of Steward's internal team, not as arm's-length vendors supplying commodity services. The purpose of the communications confirms their privileged character: the Three Emails transmit counsel's directives rather than gather business information.

Notwithstanding the broad-brush ruling about attorney agents in Order No. 22, these specific emails fall within the attorney-client privilege under Massachusetts law.[3]

### C. Plaintiff Had Not Previously Waived Attorney-Client Privilege over the Three Emails, and the Magistrate Order Erred in Finding Waiver.

The Magistrate Order is contrary to law where it adopted Order No. 25's finding that Plaintiff waived attorney-client privilege for the Three Emails under *Amgen*.

#### 1. The Magistrate Order measures the wrong period of delay: the clawback followed the relevant disclosure by six days, not four months.

Plaintiff produced documents under Order No. 22 on May 29, 2026, and clawed back the subject email ***just hours*** after Defendants stated on June 4 that they intended to file it with the Court. That response was prompt under the governing rule, because "delay is measured from the time the producing party learns of the disclosure, not the time of the disclosure itself," and the "relevant analysis begins" when the party becomes aware that privileged material was disclosed. *Kaneka Corp. v. Cocrystal Tech. (Jiaxing) Co.*, 801 F. Supp. 3d 164, 173–74 (E.D.N.Y. 2025). Six days elapsed between May 29 and June 4, which makes the clawback timely. *See, e.g.*, *United States ex rel. Omni Healthcare, Inc. v. MD Spine Solutions LLC*, 736 F. Supp. 3d 75, 84–85 (D. Mass. 2024) (holding that waiver turned on defendants' failure to review for two years ***after the government made the party aware of the privileged documents***, not on when the documents were first produced).

The Magistrate Order relies on Order No. 25's *Amgen* analysis, but *Amgen* does not support a different timing rule. The *Amgen* court did not hold that five days was a legally meaningful period; it observed that—unlike here—opposing counsel had drawn the producing party's attention

[3] *See* Order No. 22 at 17 (applying overarching rules to certain categories of documents instead of on a document-by-document review basis).

to the privileged documents. *Amgen*, 190 F.R.D. at 292–93. Consigli's November 2025 production therefore could not start the clock on Plaintiff's clawback, and treating that third-party production as the starting point renders the Magistrate Order contrary to law. In any event, even measured from Consigli's production, the totality of the circumstances supports Plaintiff's clawback.

**2. On de novo review, there was no waiver under *Amgen*.**

The *Amgen* factors—reasonable precautions, timing, scope of production, extent of disclosure, and fairness—support only one result here: Plaintiff did not waive privilege or work-product protection. *Amgen*, 190 F.R.D. at 291. The clawback was timely for the above reasons; the other relevant *Amgen* factors also support a finding that there was no waiver here:

<u>*The precautions were reasonable*</u>. Four circumstances confirm the reasonableness of Plaintiff's precautions: (i) the vast volume of potentially responsive documents; (ii) the very short production deadlines; (iii) Steward's status as an insolvent company; and (iv) the Court's use of a "quick peek" procedure, under which documents were ordered produced before a full pre-production privilege review. The parties, their primary consultants, and key unaffiliated third parties have produced nearly half a million documents totaling more than three million pages. Order No. 25 relies heavily on Consigli's production of various versions of the emails, but Consigli produced them in response to a subpoena through its own separate counsel, and it never gave Steward an opportunity to review the production in advance.

<u>*The scope and extent of the clawback are narrow*</u>. The Three Emails are part of one group of emails on the same subject matter very close in time. *Cf. Amgen*, 190 F.R.D. at 293 (denying clawback for about 200 documents covering nearly 4,000 pages).

<u>*Fairness supports clawback here*</u>. Clawback would not prejudice Defendants. They already questioned a witness about a duplicate copy of the Three Emails, and that testimony established no basis for further discovery. *See* Ex. 5 at 16–17, Dkt. 271-5 ("If [Defendants] want to use

something that's actually deemed to be privileged, then, you know, once – you will have the right to claw back any documents that you have a legitimate claim as to privilege about. They can go through the documents. And you know, if in fact it comes up at a deposition or later that some of the documents they are relying on have something that you are claiming is privilege . . . . But they can go through it. If they are using a document that there is a claw back on, you will make your claw back. That's the whole purpose of a claw backs."); Ex. 4, Consigli Dep. at 185:12–20, 186:12–19, 187:8–18. Defendants remain free to obtain the underlying facts and the nonprivileged consultant work through ordinary discovery.

*Clawback is proper because the Three Emails go directly to the kind of candid communications between lawyers and clients that courts hold sacrosanct*. On their face, one of the emails at issue followed a "call just hosted with the MPT/Steward Legal Teams" concerning "ongoing legal efforts related to the MPT claim," conveyed what the "MPT Lawyers are looking for," identified "causation issues," described how the legal team wanted to "prove the loss," relayed questions the "legal team asked," stated counsel's "direction," and assigned tasks to implement counsel's directives.

In sum, permitting clawback is the only result that can be squared with *Amgen*'s adoption of a "middle test" based on the totality of the circumstances and its rejection of a more extreme approach that always finds a waiver. *Amgen*, 190 F.R.D. at 291 (noting that Massachusetts applies "middle test").

## IV. CONCLUSION

The Magistrate Order errs in applying both the attorney-client privilege and the work product doctrine to the Three Emails, and the redaction remedy it endorses does not cure the resulting prejudice. Order No. 25 at 11. The privileged content is not merely the labels "legal team(s)" or "lawyers"; it is counsel's substantive direction about what issues mattered, what facts needed development, and what deliverables were needed to make Steward's loss position defensible. Substituting "Steward" for counsel would still disclose counsel's mental impressions and strategy. The proper remedy is therefore clawback or, at minimum, redaction of all language revealing counsel's direction, causation framing, and "defensible position" analysis.

For the foregoing reasons, Plaintiff respectfully requests that the Court set aside or modify the Magistrate Order; hold that the Three Emails are protected by the attorney-client privilege and the work-product doctrine and that neither protection was waived, or in the alternative that Defendants have not met their burden to establish a substantial need; and permit Plaintiff to claw back the Three Emails.

Respectfully submitted,

**MARK KRONFELD, AS TRUSTEE OF THE SHC CREDITOR LITIGATION TRUST,**

By his Attorneys,

*/s/ Jeremy H. Wells*
Howard M. Cooper (BBO No. 543842)
Seth J. Robbins (BBO No. 655146)
Josh L. Launer (BBO No. 673661)
**TODD & WELD LLP**
One Federal Street, 27th Floor
Boston, MA 02110
Tel: (617) 720-2626
hcooper@toddweld.com
srobbins@toddweld.com
jlauner@toddweld.com

William T. Reid IV (*pro hac vice*)
Jeremy H. Wells (*pro hac vice*)
Barbara Whiten Balliette (*pro hac vice*)
Julia P. Gokhberg (*pro hac vice*)
**REID COLLINS & TSAI LLP**
1301 S. Capital of Texas Hwy.
Building C, Suite 300
Austin, Texas 78746
Tel: (512) 647-6100
wreid@reidcollins.com
jwells@reidcollins.com
bballiette@reidcollins.com
jgokhberg@reidcollins.com

Jeffrey E. Gross (*pro hac vice*)
Yonah Jaffe (*pro hac vice*)
**REID COLLINS & TSAI LLP**
420 Lexington Avenue, Suite 2515
New York, NY 10170
Tel.: (212) 344-5200
jgross@reidcollins.com
yjaffe@reidcollins.com

Dated: September 11, 2026

**CERTIFICATE OF SERVICE**

I, Jeremy H. Wells, Esq., hereby certify that the foregoing was filed through the Court's CM/ECF system on September 11, 2026, and will therefore be sent electronically to all counsel of record who have appeared in this matter as identified on the Notice of Electronic Filing (NEF).

*/s/ Jeremy H. Wells*
Jeremy H. Wells