**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| MARK KRONFELD, AS TRUSTEE OF THE SHC CREDITOR LITIGATION TRUST,<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN GUARANTEE AND LIABILITY INSURANCE COMPANY and ZURICH AMERICAN INSURANCE COMPANY,<br><br>Defendants. | Civ. Action. No. 21-cv-11902-PBS |

**DISCOVERY MASTER ORDER NO. 30:**
**Special Master Recommendation on Plaintiff's Request for a Second 30(b)(6) Deposition of Defendant's Corporate Representative**

On November 4, 2026, about a month before fact discovery in this matter will close, the Parties informed the Discovery Master that a new discovery dispute had arisen. On October 23, 2026, Plaintiff served a second Rule 30(b)(6) Deposition Notice on Defendant American Guarantee and Liability Company ("Defendant"), seeking testimony on 14 broadly-worded topics pertaining to Defendant's Seventh Affirmative Defense. That Defense was added after Defendant's Motion to Amend was filed on March 6, 2026, and granted by the Court.

Defendant now petitions the Discovery Master for a protective order against Plaintiff's Notice, arguing that the Notice is improper on multiple grounds. Plaintiff opposes Defendant's requested remedy and further argues that it should be entitled to take a second Rule 30(b)(6) deposition.

The Parties submitted a Redfern chart and briefing by November 9, and the Discovery Master has reviewed all submissions and arguments provided by the Parties on an expedited basis.

Pursuant to the Court's Order appointing the undersigned as Discovery Master (ECF 149), the Discovery Master rules as follows.

**Timeline of Relevant Events:**

On March 6, 2026, Defendant filed a Motion to Amend its Answer and Defenses. (ECF 207). The Motion was accompanied by the proposed amendment, which added Defendant's

Seventh Affirmative Defense, alleging intentional concealment and misrepresentation of material facts by Plaintiff.

On March 10, 2026, Plaintiff took its 30(b)(6) deposition of Defendant's representative. The deposition was conducted pursuant to Plaintiff's February 18, 2026 30(b)(6) deposition notice, which listed 42 topics required to be knowledgeably covered by Defendant's representative at the first 30(b)(6) deposition.

On March 20, 2026, Plaintiff filed an Opposition to Defendants' Motion. (ECF 211). In the Opposition, Plaintiff asked the Court to deny Defendant's Motion. "In the alternative, Plaintiff request[ed] that [the] Court make appropriate orders to mitigate some of the prejudice to Plaintiff," and requested that the Court order the 30(b)(6) deposition of Mark Graves, Defendant's 30(b)(6) designee, "to resume at Plaintiff's convenience." (ECF 211 at p.20).

On April 3, 2026, the Court granted Defendant's Motion to Amend, upon a finding that "Plaintiff has not demonstrated any undue prejudice by a brief delay for limited additional discovery." (ECF 220). The Court additionally stated that although "Plaintiff also argues that the proposed amendment is futile, citing many extrinsic documents," "the merits are better resolved on a full record at summary judgment or at trial." (ECF 220). The Court then instructed the Discovery Master to "set a schedule for limited additional discovery necessitated by the amendment." (ECF 220).

The Court did not grant the Plaintiff's request to allow it to resume the 30(b)(6) deposition of Mr. Graves.

On April 3, the same day the Court issued its ruling on the Motion to Amend, the Discovery Master issued Discovery Master Order No. 20 (ECF 221), requesting that the Parties meet and confer and submit a new proposed case schedule by the following day. On April 4, the Parties submitted a proposed schedule that did not realistically account for the discovery delays that had occurred up to that point in this matter. In response, the Discovery Master asked that the Parties regroup and arrive at a more realistic schedule that would not have to be re-set again at a later date.

In response to the directive of the Special Master, the Parties submitted a new schedule for the "limited additional discovery" permitted by the Court: The Parties' submissions on April 7 jointly proposed only dates for "Deadline to serve additional written discovery (five document requests, five interrogatories, five requests to admit) relating to AGLIC's amended Answer." Plaintiff did not ask for any additional depositions, nor to either resume nor schedule a second 30(b)(6) deposition of Mr. Graves.

When the Parties submitted the new proposed schedule to the Discovery Master, she again sought to confirm that the Parties' proposal was as realistic as possible. To that end, the Discovery Master posed a series of questions to the Parties on April 9, including the following:

"There are no dates on the parties' proposed schedule for potential deposition based upon the Limited Amended Answer Documents and Withheld Documents. Would all of these be completed by the September 23, 2026 fact discovery deadline set out in the chart?"

The Parties jointly responded "YES."

The Discovery Master also asked "Does there need to be a 'deposition start date' for the potential new or resumed depo's based on the new documents demanded and produced re: the Amended Answer/Affirmative Defenses?"

On April 10, the Parties jointly responded:

"The parties have worked cooperatively to schedule depositions to date and do not believe this is necessary. In light of recent events, Defendants postponed a number of scheduled third-party depositions to minimize the inconvenience and cost to the witnesses and counsel of potentially needing a second deposition pending resolution of discovery motions. The parties anticipate rescheduling those depositions, and others that may need to be resumed or noticed, over the summer. We recognize that the summer months can be difficult for witnesses and counsel and will work to schedule the depositions well in advance once the pending discovery disputes are resolved."

None of the Parties' answers to the repeated queries of the Discovery Master raised any issue about a second 30(b)(6) deposition of Mr. Graves. After the Court had not granted that request, Plaintiffs did not press the issue any further.

After taking all the Parties' input into consideration, on April 17, 2026, the Discovery Master issued Order No. 21 (ECF 223), which included the following deadlines:

| **Event** | **Current Deadline (Discovery Master Order No. 17)** | **Proposed New Deadline** |
|---|---|---|
| Deadline to serve additional written discovery (five document requests, five interrogatories, five requests to admit) relating solely to AGLIC's amended Answer | -- | April 24, 2026 |
| Deadline to respond to written discovery | -- | May 15, 2026 |
| Deadline to complete any additional document production (limited solely to the new discovery relating to AGLIC's amended Answer) | -- | July 31, 2026 |

Order No. 21 also set the close of fact discovery for September 23, 2026. Neither party raised any objection to the Discovery Master's proposed schedule, which was then adopted by the Court on June 26, 2026. (ECF 266). [The fact discovery deadline was subsequently extended to December 16, 2026 after several delays in document production and related privilege disputes.] The months of June, July, August, September, and most of October went by with nary a word about a renewed request to take a second 30(b)(6) deposition of Mr. Graves.

But as the final fact discovery deadline loomed, Plaintiff decided to serve Defendant with a Notice for a second 30(b)(6) deposition on October 23, 2026, listing 14 extremely broad topics related to Defendant's Seventh Affirmative Defense. On October 31, Defendant objected to the Notice, and the Parties met and conferred on November 4. Plaintiff complains that Defendant did not address the breadth of the topics included in the Notice during their meet and confer. This will be addressed in the discussion below.

**<u>The Extraordinary Breadth of the Second Notice for 30(b)(6) Deposition Served As Discovery was Ending:</u>**

Both Parties know that the end of discovery has been extended multiple times by the Court. Both knew full well that the Discovery Master had taken pains to be sure that their proposed schedule after the Amended Answer was filed would include the further "limited additional discovery" permitted by the Court. Both knew full well that the Court had *not granted* the Plaintiff's motion to be permitted to resume the 30(b)(6) deposition of Mr. Graves.

And both Parties knew full well that discovery was finally about to close, so that summary judgment briefing could begin. After months of silent acquiescence to the schedule of written discovery, which had been granted at the Parties' *Joint* request, the last-minute Notice to take the second 30(b)(6) deposition was served. And, it sought an expanse of topics as wide as the great outdoors.

Plaintiff's October 23 Notice demanded a corporate representative to testify a second time, about all of the following Topics:

1. The allegations and statements set forth in the Seventh Affirmative Defense in AGLIC's Amended Answer, including Exhibits A through P cited within. This Topic also includes AGLIC's responses to any interrogatories, requests for production, or requests for admission served on AGLIC about the Seventh Affirmative Defense.

2. AGLIC's contention that the Policy is "void," including the date from which AGLIC contends it is void. This includes: each of the "multiple, distinct instances" of concealment or misrepresentation that AGLIC contends voids the Policy, including its date, speaker, recipients, and content; and the facts supporting AGLIC's contention that it was knowing, intentional, and willful.

3. The factual basis for each allegation in the Seventh Affirmative Defense made "on information and belief" (including Paragraphs 12, 29, 34, 37, 41, and 52).

4. The factual basis for AGLIC's allegations regarding Steward's motive, including that Steward sought a lump-sum payment to fund a new hospital and disclosed the New Hospital Plans only after AGLIC would not accept its "inflated settlement demand," and every settlement demand, offer, or discussion on which AGLIC relies.

5. The factual basis for AGLIC's contention that the Alleged Concealments and Misrepresentations were material, including how its investigation, adjustment, Period of Liability determination, or payments would have differed as a result of earlier disclosure of the New Hospital Plans, including each "investigatory step" AGLIC contends was unnecessary or could have been "substantially truncated in duration and cost."

6. The factual basis for AGLIC's contention that whether Norwood Hospital was repaired versus replaced affects Steward's time element recovery; and the positions AGLIC communicated to Steward on this topic before June 2021. This topic includes: the basis for AGLIC's allegation that the 29- versus 36-month difference added approximately $30 million; AGLIC's contentions regarding the "As-Was" and "Code Compliant" schedules; the allegation that Steward never supported a 36-month schedule; and whether any AGLIC or Zurich restoration schedule or Period of Liability analysis included time for code compliance.

7. AGLIC's procedures for first-party property and time element claims involving suspected insured misrepresentation, concealment, or fraud (including Special Investigations Unit referral criteria) and whether they were followed here; and any referral or report concerning suspected fraud by Steward to any SIU, fraud bureau, regulator, or law enforcement agency.

8. The facts and circumstances concerning when and how AGLIC or AGLIC's Consultants first learned of or suspected the New Hospital Plans, together with any inquiry made to Steward or MPT about whether Norwood Hospital would be repaired versus replaced and each response.

9. The facts and circumstances concerning AGLIC's adjustment of Steward's claim after the point in time when AGLIC alleges it first learned of the New Hospital Plans, including each later payment; any reservation of rights or position letter referencing concealment, misrepresentation, or fraud; and the non-privileged facts concerning when, how, and by whom AGLIC decided to assert that the Policy is void.

10. The February 2021 Submission, including AGLIC's contemporaneous review and understanding of it (including the statement that the buildings "must be rebuilt," the code and law- or-ordinance assertions, and its 36-month business interruption component).

11. The May 11, 2021 Presentation, including its attendees, any notes or internal communications about it by or between AGLIC, AGLIC's Consultants, Zurich, or Zurich Consultants, AGLIC's contemporaneous understanding of the statements made, whether AGLIC received or heard the "Opening Statement" (Exhibit P) or its contents, and any action AGLIC took or declined to take as a result.

12. The identity of each executive, representative, vendor, or agent whose statements or conduct AGLIC attributes to Steward in the Seventh Affirmative Defense, and the basis for contending each acted with Steward's authority.

13. The identity and knowledge of every person with knowledge of the facts alleged in the Seventh Affirmative Defense, and the non-privileged factual investigation AGLIC conducted to support it.

14. All other facts that AGLIC contends supports its Seventh Affirmative Defense.

In short, this Notice demanded a deponent to testify about each and every fact to support the Defendant's Defense. The Discovery Master does not begin to comprehend the strategy in lobbing this into play on the eve of the close of discovery.

Not surprisingly, it did not meet a positive reception upon receipt by Defendants.

**<u>Defendant's Objections to Plaintiff's Notice:</u>**

Defendant argues that Plaintiffs 'October 23 Notice is improper because:

1. It violates the Court's allowance of additional "limited written discovery" relating to the Seventh Affirmative Defense;
2. It violates the Rule 30(a)(2)(A)(ii) requirement that a party seek and obtain leave of court before serving a second deposition notice;
3. It violates the Rule 30(b)(6) requirement to describe topics with reasonable particularity; and
4. It violates the Rule 26(b)(1) requirements for relevance and proportionality.

Plaintiff disputes Defendant's assertions and argues that such a deposition is warranted.

The Discovery Master prioritized evaluation of this last-minute dispute, because the deadline for completion of fact discovery is so soon. The Discovery Master does *not* recommend that this deadline be extended again. Thus, although the Discovery Master has reviewed all of the Parties' arguments and supporting authority, for speed and brevity they will not all be exhaustively repeated here.

Defendant now argues that any attempt to get a second 30(b)(6) deposition at this juncture is untimely and in violation of other discovery requirements stated in its papers.

Plaintiff responds that depositions are not addressed in the Court's instructions or the Discovery Master's Order, other than setting a deadline to complete fact discovery. Plaintiff also disputes that its Notice is untimely because Defendants are still taking depositions.

**Analysis and Findings:**

The Discovery Master finds that the above-quoted Notice for an astonishingly broad set of topics would face a difficult hurdle even at the outset of litigation. But to be noticed now, at this late date, it is in contravention of the standards of proportional appropriate litigation that are the hallmarks of federal court practice. This is especially true in light of the undisputed fact that the Court, when asked last April, refused to grant this very thing now noticed without any Court imprimatur: the asserted right to "resume" a 30(b)(6) deposition many months after Defendant's Amended Answer. Plaintiff expressly sought that relief in its Opposition to Defendant's Motion to Amend last March, it was denied that relief on April 3, and now audaciously serves on Defendants at the end of discovery the very relief the Court did not grant last April.

The Plaintiff cannot deny that it failed to persuade the Court to grant this second 30(b)(6) deposition; instead, its legal support for this Deposition Notice is that the Court remarked, when granting Defendant's motion to Amend its Answer, and denying Plaintiff's opposition to that motion, that: "the merits are better resolved on a full record at summary judgment or at trial" (ECF 220). This perfectly logical comment, stated in the same ruling where the Court *did not grant* the Plaintiff's request to resume the 30(b)(6) deposition of Mr. Graves, hardly supports the Notice to do exactly that which was denied.

The Discovery Master is concerned about both respect for the Court and for its processes, including the case and summary judgment motion schedule. Litigation doesn't condone serving a last-minute, stupefyingly broad, discovery demand. Defendant filed its Motion to Amend over eight months ago, on March 6, 2026, setting out its Seventh Affirmative Defense. In its Opposition to the Motion, Plaintiff expressly sought the right to "resume" 30(b)(6) depositions, which the Court did not grant when it allowed Defendant's amendment over seven months ago. Plaintiff never re-asserted this request. Why, now, is it timely, proportionate, and appropriate? The answer can only be that it is not.

After the Court ruled in April, Plaintiff did not even raise the possibility of additional 30(b)(6) depositions in case scheduling discussions with the Discovery Master after Defendant's Amended Answer, even when explicitly asked by the Discovery Master last April about depositions. And now, just a few weeks before the close of discovery, Plaintiff issues a second 30(b)(6) notice on 14 exceedingly broad topics — Topics so broad that no representative could possibly prepare for them.

Plaintiff now complains that Defendant has not adequately conferred on the breadth of the 30(b)(6) topics, and so the dispute on this issue is not ripe for review. But you cannot serve an impossibly broad set of topics 6 weeks before discovery closes, after having waited many months to do so, and expect to sit down and negotiate to get something that the Court denied long ago. We are now less than a month away from the close of fact discovery, a deadline that has been repeatedly moved, in large part due to Plaintiff's consistent discovery delays. These repeated delays have forced the Court to readjust its demanding schedule on multiple occasions, and Plaintiff's over-broad requests threaten to do so again. The Discover Master recommends against disrupting the Court's schedule yet again.

Defendant's amendments were allowed over seven months ago. Any time during these seven months Plaintiff could have approached Defendant, stated its intent to again seek Court leave to take a second 30(b)(6) deposition of Mr. Graves on a narrow, targeted list of specific missing information that it was seeking. That never happened. To now complain that Defendant did not agree to negotiate over this preposterously broad topics list rings hollow.

The only discovery request now presented to the Discovery Master to rule upon is hopelessly broad. If Plaintiff had properly sought a very limited and specific item of discovery, (other than a second 30(b)(6) deposition that the Court has already denied), the Discovery Master's analysis and ruling may well have been different. The Discovery Master cannot now be asked to guess what would be a proper and limited discovery request here. It is too close to the finish line for that, especially when the Amended Defense has been known for over 7 months.

As the Court stated in *Gonfrade*, "If the noticing party does not describe the topics with sufficient particularity or if the topics are overly broad, the responding party is subject to an impossible task." *Gonfrade v. Transamerica Life Insurance Co.*, No. CV 25-10096-BEM, 2025 WL 1520487, at *2 (D. Mass. May 28, 2025). This Notice presents a classic set of topics "so overly broad on its face and thus violates Rule 30(b)(6)." *Id.* The requirement of litigants is to seek appropriate discovery. A party cannot thoughtlessly demand all that can possibly be known about a topic under the guise that this will then be narrowed. If the time ever existed when it was acceptable to do so, it ended decades ago.

As stated above, justifying this approach by pointing to the Court's language that "the merits are better resolved on a full record at summary judgment or at trial" (ECF 220), is entirely unconvincing. Plaintiff bears a duty to propound reasonable and acceptable discovery requests, particularly at this late stage of the case. It cannot cry foul when it fails to meet this duty. Almost seven months went by with not a word about a further discovery dispute relating to what Defendant produced. Only when the second extended deadline for fact discovery loomed, did the Plaintiff suddenly claim a need for a kitchen sink of unspecified deposition topics. It is not for the Discovery Master to attempt to divine what an appropriately narrow, targeted request could be.

The Discovery Master recommends that Defendant's request for a protective order blocking Plaintiff's Notice of an improper second 30(b)(6) deposition be granted.

**SO ORDERED**

Dated: November 21, 2026 /s/ *Faith S. Hochberg*
Hon. Faith S. Hochberg, U.S.D.J. (ret.)